1   STEVEN H. GURNEE, ESQ. SB# 66056
   DAVID M. DANIELS, ESQ. SB# 170315
2   NICHOLAS P. FORESTIERE, SB# 125118
   GURNEE & DANIELS LLP
3   2240 Douglas Boulevard, Suite 150
   Roseville, CA  95661-3805
4   Telephone    (916) 797-3100
   Facsimile     (916) 797-3131
5
   Attorneys for Defendants
6
7   SERVICE CORPORATION INTERNATIONAL,
   SCI FUNERAL AND CEMETERY PURCHASING
8   COOPERATIVE, INC., SCI EASTERN MARKET
   SUPPORT CENTER, L.P. SCI WESTERN
9   MARKET SUPPORT CENTER, L.P., SCI
   HOUSTON MARKET SUPPORT CENTER, L.P.,
10   JANE D. JONES, GWEN PETTEWAY, THOMAS
11   RYAN and CURTIS BRIGGS

12                UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                 (SAN FRANCISCO DIVISION)

15

| | |
|---|---|
| CLAUDE BRYANT, et al., on behalf of themselves and all other employees and former employees similarly situated,<br><br>           Plaintiffs,<br><br>    vs.<br><br>SERVICE CORPORATION INTERNATIONAL et al.<br><br>          Defendants. | No.  CV 08-01190 JSW<br><br>**DEFENDANTS' CONSOLIDATED REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR RESPECTIVE MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINT  AND SERVICE CORPORATION INTERNATIONAL'S MOTION TO STAY ACTION AND FOR ATTORNEY'S FEES [FRE 201(b)]**<br><br>Date:       April 25, 2008<br>Time:      9:00 a.m.<br>Dept.:      2<br><br>**TRIAL DATE:    NONE SET** |

        For purposes of considering the motions to dismiss filed by the respective defendants in this action, as well as the motion by defendant Service Corporation International for a stay of the action and payment of attorney's fees by plaintiffs pursuant to FRCP 41(d), Defendants hereby request that the Court take judicial notice pursuant to FRE 201(b) of the following documents and

DEFENDANTS' CONSOLIDATED REQUEST FOR JUDICIAL NOTICE           1
Case No. 08-01190 JSW

rulings attached hereto (*See also, International Board of Teamsters v. Zantop Air Transportation Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("[A] court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"); *U.S. v. City of St. Paul*, 258 F.3d 750, 753 (8th Cir. 2001) *cert. denied*, 535 U.S. 904 (writing showing an agency's interpretation of its own regulations is entitled to judicial notice absent showing the interpretation is unreasonable or inconsistent with the statutory authority):

**Exhibit A**:    Transcript of Hearing on Thursday, April 19, 2007 in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit B**:    Transcript of Hearing on September 6, 2007 in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit C**    Transcript of Nov. 15, 2007 Hearing Plaintiffs.' Motion for Leave to File Second Amended Complaint in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania.

**Exhibit D**    Declaration of Judith M. Marshall attached as Appendix B to the Class Action Complaint entitled *James Stickle et al v. SCI Western Market Support Center, L.P. et al*, U.S. District Court, District of Arizona, Phoenix Division, Case No. 08-CV-83.

**Exhibit E**    Plaintiffs.' Motion for Leave to File Second Amended Complaint in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania.

**Exhibit F**    Amended Complaint in *William Helm, et al. v. Alderwoods Group, Inc., and Service Corporation International*, Case No. C 07-CV-5140-MJJ.

**Exhibit G**    Defendants' Notice of Removal in *William Helm, et al. v. Alderwoods Group, Inc., and Service Corporation International*, Case No. C 07-CV-5140-MJJ.

1

**Exhibit H**    Defendants' Memorandum of its Motion to Dismiss in *William Helm, et al.*

2  *v. Alderwoods Group, Inc., and Service Corporation International*, Case No. C 07-CV-5140-MJJ.

3

**Exhibit I**    Plaintiff's Notice of Voluntary Dismissal in *William Helm, et al. v.*

4  *Alderwoods Group, Inc., and Service Corporation International*, Case No. C 07-CV-5140-MJJ.

5

**Exhibit J**    Complaint filed in *Bryant, et al. v. Alderwoods Group, Inc., and Service*

6  *Corporation International, et al.*, Case No. 3:07-CV-5696-SI.

7

**Exhibit K** consisting of the Amended Complaint filed in *Bryant, et al. v. Service*

8  *Corporation International, et al.* Case No. RG-07359593, which have been removed to this court.

9

**Exhibit L** consisting of the Amended Complaints filed in *Helm, et al. v. Alderwoods*

10  *Group, Inc. et al.*, Case No. RG-07359602, which have been removed to this court.

11

**Exhibit M** consisting of the Class Action Complaint filed in *Stickle, et al. v. SCI Western*

12  *Market Support Center, L.P., et al.,* U.S. District Court, District of Arizona, Phoenix Division,

13  Case No. 08-CV-83.

14

**Exhibit N** consisting of the Class Action Complaint filed in *Prise et al. v. Alderwoods*

15  *Group, Inc.*, U.S. District Court, Western District of Pennsylvania, Case No. 06-1641.

16  Dated:  March 5, 2008.                    GURNEE & DANIELS LLP

17

18                                           By _____

19                                              STEVEN H. GURNEE, ESQ.
                                               DAVID M. DANIELS, ESQ.
20                                              NICHOLAS P. FORESTIERE, ESQ.
                                               Attorneys for Defendants
21                                              SERVICE CORPORATION
                                               INTERNATIONAL, SCI FUNERAL AND
22                                              CEMETERY PURCHASING
                                               COOPERATIVE, INC., SCI EASTERN
23                                              MARKET SUPPORT CENTER, L.P., SCI
                                               WESTERN MARKET SUPPORT CENTER,
24                                              L.P., SCI HOUSTON MARKET SUPPORT
                                               CENTER, L.P., JANE D. JONES, GWEN
25                                              PETTEWAY, THOMAS RYAN and CURTIS
                                               BRIGGS
26

27

28

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

DEBORAH PRISE, et al

Plaintiffs

vs.                                    Civil Action No. 06-1641

ALDERWOODS GROUP, INC., et al

Defendants

---

PROCEEDINGS

Transcript of Hearing on Thursday, April 19, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Honorable Joy Flowers Conti, District Judge.

APPEARANCES:

For the Plaintiffs:          J. Nelson Thomas, Esq.
                             Charles H. Saul, Esq.
                             Patrick J. Solomon, Esq.
                             Liberty J. Weyandt, Esq.
                             Justin Cordello, Esq.
                             Michael Lingle, Esq.

For the Defendants:          Matthew W. Lampe, Esq.
                             Amy E. Dias, Esq.


                             Reported by:
                             Michael D. Powers
                             Official Court Reporter
                             Room 5335 USPO & Courthouse
                             Pittsburgh, Pennsylvania 15219
                             (412) 208-7572


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

1                    P R O C E E D I N G S

2    (Court reconvened on Thursday, April 19, 2007, at 4:00 p.m.)

3            THE COURT:  This is a hearing on a motion for

4    expedited collective action notification and a motion to

5    strike in the civil action Prise versus Alderwoods Group

6    Inc., Civil Action No. 06-1641.

7            Will counsel please enter your appearance.

8            MR. THOMAS:  Yes, Your Honor.  Nelson Thomas on

9    behalf of the plaintiffs.

10           MR. SOLOMON:  Patrick Solomon on behalf of the

11   plaintiffs.

12           MR. SAUL:  Charles Saul on behalf of the

13   plaintiffs.

14           MS. WEYANDT:  Liberty Weyandt on behalf of the

15   plaintiffs.

16           THE COURT:  I am sorry?

17           MS. WEYANDT:  Liberty Weyandt on behalf of the

18   plaintiffs.

19           MR. CORDELLO:  Justin Cordello on behalf of

20   plaintiffs.

21           MR. LINGLE:  Michael Lingle on behalf of the

22   plaintiffs.

23           THE COURT:  Who is going to be speaking for the

24   plaintiffs?

25           MR. THOMAS:  Your Honor, I will be.  Nelson Thomas.

1          THE COURT:  Nelson Thomas.

2          MR. LAMPE:  Matthew Lampe on behalf of the

3     defendants.

4          MS. DIAS:  Amy Dias on behalf of the defendants.

5          THE COURT:  Who will be speaking on behalf of the

6     defendants?

7          MR. LAMPE:  I will, Your Honor.  Matthew Lampe.

8          THE COURT:  This is a hearing on a motion for an

9     expedited collective action notice to go out, and I have

10    already had sort of a preliminary hearing on this previously,

11    and that was held on January 31st, 2007, of this year.

12         And the standards that the Court went through there

13    in considering a motion for expedited class notification

14    pursuant to Section 216(b) of the Fair Labor Standards Act --

15    and I will call that throughout this hearing the FLSA -- the

16    potential plaintiffs must opt into a collective action suit

17    and affirmatively notify the Court of their intentions to

18    join the suit.

19         In order to facilitate that notice, the

20    representative plaintiffs must show that the potential

21    plaintiffs are similarly situated to the representative

22    plaintiffs and that the action should go forward as a

23    representative action.  To establish that the absent

24    collective action member is similarly situated, plaintiffs

25    must, one, be or have been employed in the same corporate

1  department, division and location; two, have advanced similar

2  claims; and, three, have sought substantially the same form

3  of relief.

4         And that is from Asencio versus Tyson Foods, Inc.,

5  130 F.Supp. 660, Eastern District of Pa., 2001, citing

6  Lockhart versus Westinghouse Credit Corp., 879 F.2d 43,

7  Third Circuit, 1989.

8         There is a two-tier approach that courts often use

9  with respect to determining whether plaintiffs are similarly

10  situated.  Mooney versus Aramco Service Company,

11  54 F.3d 1207, Fifth Circuit, 1995.  The first stage or the

12  first tier is what is called the notice phase.  And that

13  begins when the plaintiff seeks authorization to issue notice

14  to the other prospective class members which would permit

15  them to be notified that they could opt into the action.

16         This notice usually occurs at an early stage and

17  the Court will determine the viability of a possible class

18  based upon the claim and affidavits in support of that claim.

19         Morisky versus Public Service Electric and Gas

20  Company, 111 F.Supp.2d 493, District of New Jersey, 2000.  At

21  this first tier, there is a relatively low burden to show the

22  similarly situated requirement.

23         And from Asencio, 130 F.Supp.2d at 663, the Court

24  may conditionally certify the class for the purposes of

25  notice and discovery under a comparatively liberal standard,

1    that is, by showing that or by determining that the members

2    of the punitive class, quote, were together the victims of a

3    single decision, policy or plan, close quote.

4            Sperling versus Hoffmann-LaRoche, 118 F.R.D. 392,

5    District New Jersey affirmed 862 F.2d 439, Third Circuit,

6    1988.

7            And after the first tier, then the second tier will

8    occur where all the consents have come in and there will be

9    further discovery to determine whether or not the defendant

10   violated the FLSA and the matter is ready for trial.  And at

11   that second tier, the Court will reconsider the class

12   certification issue in light of the similarly situated

13   standard.  And will conduct a specific fact review with

14   respect to the class members who have opted in, and will look

15   at matters such as employment setting, defenses and other

16   procedural issues.

17           The Court finds that at the second tier, if they

18   are not similarly situated, then the conditional class is

19   de-certified.

20           At this stage, we are at what I would classify the

21   first tier.  It's a question of whether the notice should go

22   out.  And given that this is a collective action under

23   Section 216(b) of the FLSA, there is potential prejudice if

24   notice doesn't go out because as the clock goes on,

25   individuals will lose their rights because they may be barred

1    in whole or in part for some claims that they may
2    legitimately have if, down the road after discovery is
3    completed, or whatever discovery is relevant to what we would
4    normally do in a Rule 23 class action situation, having a
5    more robust hearing and a more lengthy time prior to the
6    determination of class certification, valuable rights could
7    be lost.

8         So, I think that's why the courts do take an
9    approach at this stage to be fairly liberal in approaching
10   the decision-making process.

11        My preliminary sense, having read the various
12   briefing, is that at least with respect to Alderwoods, the
13   questions of whether there is a common policy with respect to
14   the five classes, I think there would have to be some
15   refinement of the notice that would go out and a refinement
16   of the punitive classes that, at this preliminary stage
17   without really looking at the merits, just looking at some of
18   the filings that were made and the allegations, that there is
19   arguably enough to move forward on.

20        And the things that the Court would look to at this
21   stage would be the affidavits.  I know there is a motion to
22   strike that is there, but -- and some of it is set forth as
23   being hearsay.  But, some of the things that are hearsay --
24   and I will hear some argument on this -- I am not sure is
25   hearsay.  It may be admissions if a manager is making a

1  statement.  If it would fall within that party admission, it

2  is not hearsay.

3       I can tell you if a superior or representative of

4  the company tells me something and that is adverse to the

5  company, I can certainly put that in an affidavit because it

6  might be a party admission and, therefore, could come in.

7       So, you know, it may not be -- everything that was

8  arguably set forth as hearsay doesn't necessarily fall within

9  that.  And then there is an affidavit from someone who is or

10  was a manager and had a familiarity and said that they were

11  familiar with the corporate policies across the board, and

12  whether, on cross-examination, if they are deposed and it

13  comes out that they really lack a complete foundation for

14  that, I think that's a different story.  But, just to take

15  the affidavit at face valid may be enough at this stage to

16  move forward.

17       I am more troubled about the issues with respect to

18  Service Corporation International.  There is, in the

19  defendant's response, a statement that Service Corporation

20  International is, itself, just a holding company and that has

21  no employees.  That's typically the way -- or if they do have

22  employees, they are generally the very high-up officers of

23  the company, would not be the hourly employees of the nature

24  that would be the punitive class members in this case.

25       So, if that is the case, even though you have a

1    10K, a 10K is usually, you know, is usually done on a

2    consolidated basis where they are representing a multiple

3    tier of companies. And I know, and I did look over the 10K

4    where it used the words, we have this and we have that. But,

5    as a legal matter, maybe they don't have employees. And I

6    have sufficient concerns about that, but I don't think I can

7    rely purely on a 10K in making that assessment.

8            So, my question would be if you have -- if you

9    operate as a holding company and you have fifty subsidiaries,

10   say, you have a subsidiary in each state, you have a separate

11   entity in each state, do you have to sue each separate

12   subsidiary and then you can bring them all together? Or can

13   you just, in this context, sue the parent and make them

14   liable for the overtime or FLSA infractions that are at issue

15   here? I don't know.

16           I don't have an answer to that and it wasn't

17   robustly briefed by the parties, but I am troubled by that.

18   So, I am not sure that I would be able to move forward and

19   certify a class of employees if the defendant is merely a

20   holding company and really wouldn't have those type of

21   employees.

22           So, what good have we done to send out the notice?

23   We will get a flurry of people coming back. But, if you tell

24   the defendants to send it out to your employees, you know,

25   they will send it out maybe to the head officers who won't be

9

1    within that class.

2              So, those are sort of the issues that I see here

3    today.

4              So, I will let the defendants be heard first on the

5    Alderwoods situation because my preliminary assessment would

6    be in favor of the plaintiffs, albeit I think there is some

7    refinements that have to be made to the punitive classes, as

8    well as to the form of notice that they are proposing to

9    send.

10             MR. LAMPE:  Thank you, Your Honor.  Good afternoon.

11   I am not sure if this is on or if I am speaking loudly

12   enough.  May I address the SCI issue first?

13             THE COURT:  Yes.  I am sort of going in your favor

14   that way.

15             MR. LAMPE:  I understand.  I wasn't sure if

16   procedurally you wanted me to speak second to him on that.

17             THE COURT:  I sort of found for you.  I would like

18   to hear from the other side if I have it wrong unless you

19   know something I don't.

20             MR. LAMPE:  I would like to point out there was an

21   allegation made in the plaintiff's reply brief as to Service

22   Corporation International relying on, and you alluded to it,

23   relying on the annual report and the 10K.  And what I think

24   is important to point out to Your Honor is, I have the -- all

25   three of them here and would be happy to submit them, but in

1   the annual report, there is the annual report and then the

2   10K is right behind, it's a booklet.

3           And if you open the annual report and look at the

4   very first page, there is a reference to the Service

5   Corporation International and it goes on to speak about it,

6   and there is an asterisk after Service Corporation

7   International.  If you go down to the bottom of the page, you

8   will see the very point that you were making, and that is

9   that, as used here, SCI and the company refer to Service

10  Corporation International and companies owned directly or

11  indirectly by Service Corporation International.

12          So, there is simply nothing inconsistent with our

13  affidavit that we submitted indicating that this is a holding

14  company that has no employees.  It's not just a few.  It has

15  none.  And these annual reports -- because, as you said, this

16  is a consolidated report and the footnote very specifically

17  says that at the top --

18          THE COURT:  That would be -- my understanding would

19  be consistent with how public companies handle their 10K

20  reporting requirements.

21          MR. LAMPE:  So, as to SCI, it is a holding company.

22  It has no employees.  It would be pointless to issue notice

23  to its employees.  There are none.

24          And you are right that there was no briefing or

25  discussion of the other question that you raised about

1    whether or not --

2            THE COURT:  You could just sue the parent and bring

3    them all in?

4            MR. LAMPE:  Right.

5            THE COURT:  In a normal case, you wouldn't be able

6    to do that.  I don't know if there is some exception in these

7    circumstances.

8            MR. LAMPE:  Under the FLSA, there is a doctrine

9    called the single employer, also referred to as the joint

10   employer doctrine.  It is, as you would expect, the parent

11   can be held liable based on the fact of the -- based on the

12   six factor test, whether there is interlocutory boards,

13   whether the formalities are observed --

14           THE COURT:  We don't have any of that.

15           MR. LAMPE:  Right, Your Honor.  There has been no

16   evidence at all to suggest that the parent could be liable

17   for the acts of these various and myriad subsidiaries spread

18   around the country.

19           So, we would submit that your tentative views on

20   the issue of SCI are correct and that no notice to the order

21   should be issued at this time.

22           THE COURT:  At this time.

23           MR. LAMPE:  I am going to try convince you that

24   your preliminary views to Alderwoods is not right.  In a case

25   like this, as you said again, you previewed the law.  The

1    issue is, is there evidence of a common unlawful policy?

2        THE COURT:  Right.  And you have a number of

3    affidavits, some of which is hearsay.  So, the hearsay, I

4    will tell you I will disregard the hearsay or give it very

5    little weight.

6        It is very different at this stage where it is

7    not -- I am not making factual findings, so there are a

8    number of other cases, none that are precedential for this

9    Court, that have discussed the motion to strike in this

10   context.  That's Crawford versus Lexington-Fayette Urban

11   County Government, 2007 Westlaw 293865, Eastern District

12   Kentucky, January 26, 2007, showing the relaxed standard.

13       But, I think most Judges would say at this stage

14   when you are reviewing this type of information, if it is

15   true hearsay, you give it very little weight, if at all, and

16   I can disregard it and I can treat each of those affidavits

17   in an appropriate fashion.

18       There is some other aspect of the affidavits,

19   however, that I don't find would be hearsay and would have

20   some evidential value with respect to these matters and I

21   just commented on a few of those aspects.

22       MR. LAMPE:  In these cases, they set up, as you

23   said, is there evidence of a common unlawful policy?  And

24   there is a distinction in the cases between, on the one hand,

25   evidence of wage problems that could suggest a common,

1    unlawful corporate policy.

2            On the other hand, there is cases that deal with

3    allegations of wage problems that were very apparently

4    violations of company policy and certainly not the sum and

5    substance of company policy.

6            THE COURT:  I understand that there are.  I

7    understand from the record, and I will put this on there,

8    that there are corporate policies that Alderwoods have that

9    would be clearly in compliance with the law.  So, the formal

10   policies are in compliance with the law.

11           The question is whether, notwithstanding the

12   corporate policy, there was an unwritten policy to, in

13   effect, violate the written policies and to, say, disregard

14   that and do something different which the plaintiffs argue is

15   violative of the FLSA.

16           MR. LAMPE:  And that was exactly what I was going

17   to say, and let me move to the next step.

18           What we have then is, we have lawful policies that

19   state employees are to be paid for all of their hours.  We

20   have allegations from five affiants, there was a sixth

21   Alderwoods affiant included in the plaintiff's reply brief

22   that said your order said they weren't allowed.  There are

23   five Alderwoods affiants; three of them are from the

24   Pittsburgh area, two others are from other areas.  All five

25   are in one of twenty-five nonexempt positions represented and

1    these five individuals do, in fact, claim that they

2    experienced wage problems.

3            In the context of the evidence before the Court,

4    and there is the cases such as Harrison versus McDonald's and

5    Flores versus Lifeway and England versus New Century, they

6    say that the mere fact that there are some allegations is not

7    sufficient to justify conditional certification.

8            And the Flores case, for instance, dealt with a

9    situation where there were two allegations out of fifty

10   employees and the Court said that is not enough.

11           The England case, in that case, there were two

12   hundred affidavits, but it did not show any kind of a nexus

13   to any sort of corporate policy. And the Court said that is

14   not enough. These are local complaints. They are

15   insufficient to establish a company policy.

16           THE COURT: That is why I made reference to the one

17   fellow that was the manager. That was the one that was most

18   compelling. Let's talk about him.

19           MR. LAMPE: McDonald's -- Harrison versus

20   McDonald's, this is a case where there were comments

21   attributed to a manager who supposedly said that there was

22   improper wage violations going on in that unit and the Court

23   said -- the Court did not find that to be sufficient to

24   justify notice and denied the motion. And there is only one

25   manager here and this is a manager whose name is --

15

```
 1              THE COURT:  Deborah Prise?
 2         MR. LAMPE:  Prise is the plaintiff, right.
 3              THE COURT:  Who was the manager?
 4         MR. LAMPE:  There is a manager.
 5              THE COURT:  In this case.
 6         MR. LAMPE:  There is a manager named --
 7              THE COURT:  She says as a manager, she was aware of
 8    the defendant's company-wide policy, policies, and was
 9    responsible for the enforcement of those policies at her
10    facility and the policies were issued from the defendant's
11    Cincinnati, Ohio headquarters and most were contained in the
12    defendant's policy and procedures binder.  Then goes on to
13    describe those.
14              So, I am not -- you know, so this, what is the one
15    that is speaking to company-wide policy?
16              MR. LAMPE:  Let me raise -- address the very point
17    that you mentioned.  She said that there are policies kept in
18    a binder.  She does not say that the policies that she is
19    about to describe were among those in the binder.
20              THE COURT:  Says most were contained.
21              MR. LAMPE:  And she goes on to describe policies.
22    She does not say they are in the binder.  There is a policy
23    that says you have to work in the community.  So, I think
24    that there is -- I think that is a little misleading.  There
25    are no written policies that reflect these five supposedly
```

16

1  unlawful policies and she -- saying she enforced those

2  policies at other her locations.

3          I would pose this question:  If there is a written

4  policy everyone needs to get paid for all of their hours of

5  work and there is some unwritten company policy that says you

6  violated the written policy, what foundation is there in the

7  record that this woman, who worked at one location in the

8  Pittsburgh area, would have knowledge of these practices that

9  occurred in other locations throughout the forty states where

10  this company operates?

11          It would be different if she had a written policy

12  that said you are supposed to work off --

13          THE COURT:  But, then you will never, ever have a

14  case based on an unwritten policy.  A lot of the things may

15  be fodder for depositions and cross-examination of the

16  witness.  But, this is a person who purports, because of the

17  position that she held, to be aware of company-wide policies.

18          MR. LAMPE:  Yeah.

19          THE COURT:  So, I don't know what more -- and then

20  goes on with some specificity to talk about those and some of

21  the indications that they have.

22          MR. LAMPE:  We would submit that in a case where

23  there is a written policy that's lawful where there is no

24  production of an unlawful written policy and where there is

25  no explanation in the record for how this individual, who

1   worked in one place, supposedly had knowledge of practices
2   across the country, and that is insufficient, and it is a
3   very isolated instance.

4           And this case does line up with the other ones in
5   which notice was denied because in the context of how many
6   employees and how many states there are operations, the
7   allegations are insufficient to justify notice at this point.

8           Let me move to another point.  You mentioned the
9   class definition.

10          THE COURT:  Before you go there, you would agree
11  with me then, wouldn't you, at least as to the locale in
12  which she was operating, whether it would be Pennsylvania or
13  the areas that she would be in, as well as some of the other
14  employees that are here, that you could have class issues
15  with respect to -- you could have at least a subclass that
16  may survive?

17          MR. LAMPE:  We would say that, at the very most,
18  notice would issue for two locations, Brandt and Hirsch.
19  Those are two facilities where she was involved.

20          THE COURT:  Before we move off of that, I would
21  like to hear from the plaintiffs with respect to this
22  particular affidavit and this particular manager because this
23  is the most compelling support for the class, the nationwide
24  notification.

25          MR. THOMAS:  To the podium it is better?

18

```
 1              THE COURT:  You don't have anything further on this
 2   issue, on this affidavit?
 3              MR. LAMPE:  I have more on Alderwoods, but not on
 4   this one.
 5              THE COURT:  On this one, right.  It is easier for
 6   me if I keep the issues together.
 7              MR. THOMAS:  Your Honor, I would note several
 8   things.
 9              First of all, the vast majority of cases, as this
10   Court has cited and held, go contrary to the very few
11   outliners on which defendants rely and, in fact, even the
12   cases on which they rely, they are patently distinguishable
13   from this case here.
14              But, let me leave that aside because I think the
15   standard has been set by the Court and we are in agreement
16   with that.
17              In terms of Alderwoods, it is not correct to say
18   that we have one manager's testimony.  We have Deborah Prise,
19   who is a manager.
20              THE COURT:  But, I think his issue -- and this is
21   what you need to focus on.  You need somebody that is going
22   to speak to company-wide things.
23              It would be one thing if you had a hundred
24   affidavits that would include several from each state or
25   locale that you would be involved with.  But, his argument
```

1  is, your affidavits are discretely tied to just certain

2  locations, and then the one that has the real company-wide

3  issues is Miss Prise.

4          MR. THOMAS:  Actually, that is not true.  There is

5  Miss Prise as a manager.  There is Bob Pramik, who is a

6  general market manager and a location manager.  We also have

7  Michael Lanza from Puyallup, Washington State, where I

8  heard -- where the regional manager and his manager admitted

9  the same policy existed.  We have --

10          THE COURT:  Those are the admissions that I was

11  talking about that arguably the Court could consider.

12          MR. THOMAS:  Jack Reddick from Independence,

13  Kansas, where his manager and the district manager made the

14  same admissions about company policies.

15          At this stage, where we are, without any discovery

16  and given the great bridges to the people out there, to say

17  that we have two managers directly stating that these are the

18  policies, followed up by affiants and managers in multiple

19  other locations, Kansas, Washington State, making the same

20  points, as well as all of those employees confirming that all

21  of the locations all across the country were experiencing the

22  same violations, that is well more than enough to meet the

23  lenient standards.

24          It is not the case that we need to go to each state

25  or each location and solicit an affidavit from each of them

1    saying that's what this is.  But, when the company managers

2    say repeatedly this is our policy and it is enforced

3    nationwide, that meets the lenient standard that is here.

4            THE COURT:  Okay.

5            MR. THOMAS:  Would you --

6            THE COURT:  That is fine.

7            MR. THOMAS:  Should I go on to any points I have or

8    step down?

9            THE COURT:  How about SCI?

10           MR. THOMAS:  SCI.  Two responses on SCI.

11           First of all, leaving aside their 10K and annual

12   report, perhaps more damaging are the additional exhibits we

13   have submitted from their own website which they refer to as

14   having employees.  You can apply for their jobs, on this

15   website to SCI jobs.  They say that we have one of the most

16   diverse and dedicated workforces in the county.  It says our

17   people, employees of SCI continually strive to exceed

18   expectations.

19           THE COURT:  That is all sort of that colloquial way

20   that holding companies often hold themselves out because they

21   all talk about we, us, our, and it would not be uncommon for

22   them to have a website that would be reflecting the same

23   kinds of things that you saw in the 10K.

24           But, as a matter of law, when we have to ask, who

25   is the employee who is going to be responsible for any FLSA

1    violations, that's what I need to look at.  And at this
2    stage, I have some sufficient concerns that SCI may not be
3    the right defendant unless, you know, when you go through the
4    other tests that were articulated to see if they are a single
5    employer, you can impose that burden on them.

6             But, there is no evidentiary support for that here.
7             MR. THOMAS:  Two things.
8             First of all, the standard under the Supreme Court
9    is that the FLSA -- and this is in our papers -- that a
10   broader or more comprehensive coverage of employees would be
11   difficult to frame, and that anybody who has suffered or
12   permitted to work, whose work benefits a company or
13   individual, is considered that person's employer.

14            I will be glad to brief this in more depth on the
15   joint employer issue, but it is a standard that is even more
16   liberal than the Title VII standard for consideration of who
17   the employer is, and Courts routinely say that you are.

18            THE COURT:  The holding company is routinely held
19   liable just because they are the holding company?

20            MR. THOMAS:  Correct.  Because they suffer for or
21   permit the people to work.

22            MR. LAMPE:  We completely disagree with that.  As I
23   mentioned, there is a test that deals with this very
24   situation.

25            THE COURT:  It's sort of like piercing the

1   corporate veil.  That's what I was hearing.  I don't have it
2   in front of me, but it just struck me when I was reading
3   through this, because it really wasn't briefed in any fashion
4   when the issue was raised.

5       And the response was, well, look at the 10K.  To my
6   mind, knowing something, not an extensive amount about 10K's,
7   it's just they are consolidated documents and you can't, I
8   don't think, point to someone being an employer just because
9   there is a 10K, and I think that would be the same thing for
10  a website.

11      Now, it may be evidence when you get into this
12  other issues as to how they are holding themselves out, but
13  how do they hold themselves out to these employees?  How were
14  their checks written?  Who did they understand the employer
15  to have been?  Where are the personnel directors and the bank
16  accounts?

17      These are the types of issues, and if you have some
18  evidence that would indicate that, maybe it would be enough
19  to get the initial notification going out.

20      But, on the record before the Court today, I don't
21  have that evidential base, even though it's a somewhat
22  liberal standard as I indicated, that I would be comfortable
23  in staying that I am going to send out a notice to SCI's --
24  anyone who may have been on call during that period of time.
25                 MR. THOMAS:  Your Honor, if I understand what you

1  have said, I think, you will see the good news is -- at least
2  the good news for us and maybe the good news for the Court in
3  dealing with this -- it is not a piercing-the-veil standard.
4  It is a very low standard.
5       THE COURT:  I don't have that in front of me and I
6  am not prepared to rule on it and -- if a 10K is enough to
7  get you there, I would be probably surprised if that were the
8  case, but I would have to withhold judgment on that.
9       MR. THOMAS:  With Your Honor's permission, could we
10  submit supplemental briefing or a motion to reconsider on an
11  expedited fashion on the joint employer position?
12       THE COURT:  What I would do is, I would deny the
13  motion with respect to SCI, but it would be without prejudice
14  for you to file a subsequent motion if you feel that you have
15  the support to do it.
16       So, it is not going to be a reconsideration.  It
17  just would be a new motion and it would take on -- it would
18  have its own life.
19       MR. THOMAS:  Thank you, Your Honor.
20       THE COURT:  Okay.
21       MR. LAMPE:  So, back to Alderwoods then.
22       The sum and substance of the record before the
23  Court is that there are two managers.  Mr. Thomas mentioned
24  them.  There is Pramik and Prise; prise at two locations in
25  the Pittsburgh area; Pramik at two locations; one in

1   Harrisburg; the other one in Camp Hill.  And that is it in
2   terms of managerial evidence in this case.

3           THE COURT:  See, a manager -- and at this lenient
4   standard, you know, if the manager at that level has certain
5   knowledge of and exposure to the corporate policies on a
6   nationwide basis, that may be enough at this stage.

7           MR. LAMPE:  I would just say the "if" that you just
8   said is not presented in the form of evidence before the
9   Court.  There is no evidence that these two local managers
10  had knowledge of what was going on --

11          THE COURT:  They said they have personal knowledge
12  because of their position.

13          MR. LAMPE:  That takes us all the way back to the
14  hearing on January 31st where you said conclusory allegations
15  wouldn't be enough.

16          And I think all this needs to be looked at in the
17  context of a company whose formal pay policies are completely
18  lawful and necessary individuals.  They are speaking of some
19  unwritten policy that is supposedly in effect throughout the
20  entire country.

21          How do they know that when they have only been
22  responsible for applying these practices in their own locale?
23  Our view is, there isn't sufficient evidence beyond the four
24  locations.

25          And let me move to another point, and that is the

1    class definition issue that you raised.  We think it's an
2    important issue.

3            When the brief was filed, the request was that
4    notice issued to these five subclasses, and we pointed out
5    that it is impossible to know which employees are within
6    these subclasses because they are built on the allegations in
7    the case.

8            And there is good authority from this Court in
9    Mueller versus CBS that indicates that a class cannot be
10    certified where you have to do a little mini-adjudication on
11    the merits to find out who is the class member.

12            There is a very practical problem here.  If you
13    order us to issue a notice, we need to know which employees
14    to issue the notice to.  And the way the class definition
15    reads is, for instance, class number one, the people in the
16    class are those people who have been required to work in the
17    community but have not been paid for that.

18            In our view, there is no one that meets that
19    definition.  That's what's in dispute in the case.

20            THE COURT:  I think the response there would be --
21    and this is a problem.  I said there had to be some
22    refinement.

23            My understanding is that the people that had
24    required that were the funeral directors around the country
25    who were hourly employers and the theory would be that it is

1    all of those people who worked during that period of time are
2    punitive class members.
3          MR. LAMPE:  Well, I think that would have been a
4    more reasonable position for the plaintiff to take, and I can
5    I can see that the Court might reach that view, but that is
6    not what the plaintiffs argued in their papers.
7          We raised this issue of the --
8          THE COURT:  I think someone who is an hourly
9    employee at one of these funeral homes who is doing
10   janitorial work is not going to be required to do community
11   service work.  So, I think that is the type of refinement
12   that is necessary here, although I can read enough of the
13   papers that have been prepared to discern what they are
14   really looking at.
15         MR. LAMPE:  Well, their explicit response, when we
16   pointed out the class definition problem was, if that
17   definition is wrong, we actually mean all nonexempt
18   employees.
19         THE COURT:  I don't think that is the case either.
20         MR. LAMPE:  No, Your Honor.  In fact, we would
21   encourage the Court to look at our exhibits and, in
22   particular, we have an Exhibit F, and this exhibit lists all
23   of the different nonexempt positions within Alderwoods.
24   There is twenty-five of them and there is many of these
25   positions that you have assumed.  There is grave digger,

1  grounds keeper, maintenance --

2         THE COURT:  Those people are not going to fall

3  within this, and I am not sure they are on call, those

4  people.  Maybe they are.  I don't know.

5         Let me hear from the plaintiff's side.

6         MR. LAMPE:  One other point.

7         THE COURT:  Yes.

8         MR. LAMPE:  In the chart that is Exhibit F, what we

9  have done is, we have taken the position descriptions for

10  these twenty-five positions and we put a check next to any

11  position that lines up with any of these policies that are

12  supposedly at issue in the case.

13         THE COURT:  Just for future reference, any time

14  there are going to be any lengthy documents like this filed,

15  if you could supply the Court with a courtesy copy that's

16  tabbed and marked, I would really appreciate it.

17         MR. LAMPE:  We will certainly do that, Your Honor.

18  I apologize.

19         THE COURT:  It is tough to find it here because I

20  don't have it tabbed.

21         MR. LAMPE:  The last piece of paper in our brief is

22  the summary of those position descriptions, none of the

23  nonexempt employees whose job description --

24         THE COURT:  Okay.

25         MR. LAMPE:  You are exactly right.  Look at the

1  on-call responsibility of the twenty-five positions.  There

2  are only three that have that.  There are only three that are

3  involved in selling insurance, only three that are

4  commissioned, and there are six that are involved --

5        THE COURT:  And the notice would not go out to

6  everybody, because somebody is going to get a notice, you

7  hope, gee, I am going to get a big benefit here.  If I opt

8  in, I am going to get money, but they are not going to ever

9  be in at one of those classes.

10        MR. LAMPE:  Our position is that there should be no

11  notice --

12        THE COURT:  It has to be tailored to those that are

13  affected and there is going to have to be some way to

14  identify which class they are in.

15        MR. LAMPE:  The only evidence before the Court as

16  to all of these positions, with the exception of funeral

17  director, is the evidence that we put forward.  There are no

18  affiants who are not funeral directors or assistant funeral

19  directors, and that simply is not spoken to in the record.

20        THE COURT:  They may be the bulk of the class

21  because those are the ones that are in all categories.

22        MR. LAMPE:  The funeral directors is, but a

23  fraction of the potential all nonexempt employee group, you

24  are absolutely right about that.

25        THE COURT:  It is not going to be all nonexempt

1   employees, it can't be, because I don't think the facts would
2   support that.

3            MR. LAMPE:  So, we think it should be four
4   locations and limited to funeral directors or funeral
5   director types as indicated on our chart here that could
6   possibly have been involved in these policies.

7            But, again, we think that, in light of the fact
8   that we have written lawful policies and we are talking about
9   such a very few, five affidavits out of over thousands and
10  thousands of employees, it's just insufficient under the
11  standards to justify any notice.  Thank you.

12           MR. THOMAS:  Your Honor, I think there is probably
13  less disagreement about this point than most of the other
14  issues in the case.

15           We don't have any desire to send notice out to
16  people who I think there were two competing -- we don't have
17  any desire to send out notice to people who do not fall
18  within --

19           THE COURT:  Who have the responsibilities which
20  would have generated these FLSA issues?

21           MR. THOMAS:  Correct.  It is not in our good or the
22  Court's.

23           The other practical problem though, in having dealt
24  with these cases many, many, many of these cases is, the
25  clock is ticking right now.  And the problem is, if we spend

1    years, months, weeks sorting out who could potentially be in
2    the class and who could not, the time could run out on these
3    people.
4            THE COURT:  But, you can't send it out to
5    everybody.  There got to be a practical solution here where
6    you get a list and see who had these positions during this
7    period of time and that's who the notice goes to.
8            MR. THOMAS:  The problem is, I am not sure that
9    the -- this is the bigger concern.  And the other concern is,
10   if you don't send it out to everyone who is supposed to get
11   notice, you have people hanging out there whose claims are
12   lost because of a mistake.
13           THE COURT:  There is not much we can do unless you
14   want to give a notice in a national newspaper, or something
15   like that.  But, I don't think that that is cost justified in
16   this type of case.
17           What do you want to have happen here?
18           MR. THOMAS:  What I would like to have happen is
19   notice to go to anybody who could potentially have a claim.
20           THE COURT:  If you are the defendant -- that is too
21   broad.  I mean, that's putting a terrible burden on them.
22   You have to have some -- I am sympathetic to the individuals
23   who are losing rights.
24           But, on the other hand, you can't tell a defendant,
25   at your own peril, you better notify everybody in the world

1    that they may have it. You have people on your side who are
2    knowledgeable about the structuring of these entities and who
3    did what and how they did it. And if this exhibit is
4    correct, these are the people that would get it. And if one
5    or two are lost, you have a lot of word of mouth among these
6    people, I am sure, all around the country, or you put out
7    some notification in a journal, or something, that would
8    attract their attention, some other way to deal with that
9    concern that you have.
10        MR. THOMAS:  I think what I would suggest is this:
11   Here's another concern I have --
12        THE COURT:  I am not going to have you put a burden
13   on the defendant that is too broad-based and makes them
14   having to flail around and spend a lot of time and money when
15   it has to be more focused.
16        MR. THOMAS:  What I would propose is this:
17        First of all, I am concerned about relying on job
18   titles alone because often in these locations, you have
19   issues where the person may be listed as an embalmer. That's
20   what their official job title is. That's what they are coded
21   as. But, they are, in fact, doing funeral director
22   responsibilities and always have been and sort of known for
23   doing that, but just for the sake of internal company
24   documents, they are referred to differently.
25        I think that if we did two things, one is liberally

1    see anybody who could be within the group and, number two,

2    make sure that the notices are posted at the funeral homes to

3    say, listen, notices have gone out to people who appear to be

4    within this group.  However, if you didn't receive a notice

5    but you were doing these type of things, we are informing you

6    that you may have a claim and you need to do something about

7    it, and put that posting up for ninety days.

8              THE COURT:  I just have to take a break because I

9    have a criminal matter -- I have to just go off the bench for

10   a moment.

11             Talk about, when I am out of here, if there is a

12   way to refine how you can identify these individuals.

13   (Court recessed at 4:40 p.m.)

14   (Court reconvened at 4:45 p.m.)

15             THE COURT:  Okay.  Please be seated.  Okay.

16             MR. THOMAS:  Your Honor, I had a chance to confer

17   briefly with my side on this, but I haven't had a chance to

18   talk the other side, but I think we may have -- let me put a

19   proposal here that may make some sense.

20             What we would be prepared to do is to talk -- speak

21   to Mr. Lampe over the next, I would say -- first, while the

22   toll is in effect, so people aren't losing their rights, we

23   have a toll in effect.

24             THE COURT:  I thought the total was over --

25             MR. THOMAS:  It started again if we are cutting

1   people's time off --

2         THE COURT:  I think the defendants said no to that

3   in the past and I think they would say no again.

4         My preliminary assessment -- and it is going to be

5   my final assessment -- is that a collective action notice

6   would be appropriate to go out, but I have to have an

7   appropriate class and the notice has to be appropriate.

8         I have trouble with the breadth of the parties, we

9   just talked about that, I have trouble with, how do we say

10  who is in which class, you know, the five subclasses.  The

11  notice that was attached to your form doesn't deal with any

12  of that.  It seems to talk broadly in terms of the hourly

13  employees, and all of that.

14        So, I will permit the class notification to go out,

15  but I need you to re-submit a form of notice and a

16  redefinition of the classes that is more narrowly drawn, and

17  some of the -- I just want to get to --

18        You have, like, number one for Alderwoods current

19  and former hourly employees of defendants.

20        Well, that's not going to be the case.  It is going

21  to be some discrete subset of those hourly -- it is not all

22  hourly employees.  So, it is how do you define those hourly

23  employees who would be in the community work policy?  And

24  there appear to be five categories.  So, you are going to

25  have to refine that.

1       Then you go on to say who were suffered or
2  permitted.  I think it has to be who were required because I
3  don't think it is a violation if somebody just permitted you
4  to do community work service.  I think that would be --
5             MR. THOMAS:  Tied more to the regulation.
6             THE COURT:  Right.  So, it has to be -- because
7  there is no violation if they weren't required as part of
8  their job to --
9             MR. THOMAS:  I think the regulation is encouraged.
10            THE COURT:  Okay.
11            MR. THOMAS:  We can tailor that to the regulation.
12            THE COURT:  Whatever it is.  I mean, it is
13 something where it is -- as a condition of their employment,
14 there was something that they were expected to do if they
15 were going to keep their job.  That's the way I understand
16 it, you get paid for that, if there is a violation, and the
17 same thing as with two.  And then they -- the training
18 policy, that's the same issue, and the people that would be
19 in that, and four and five.  So, those are -- all have the
20 same similar kinds of issues.
21            And then when you look at the form of the notice, I
22 didn't have attached to it the form of consent that they
23 would be -- at least my copy didn't have a consent form so we
24 could see what they would be sending back.  And the question
25 is, who sends out the notice?  You know, does that -- do you

1    give the notice to the defendant?

2         MR. THOMAS:  We would bear the burden of the cost

3    for that, unless they want to pay for it.

4         THE COURT:  But, you need to coordinate how you are

5    going to get the list, the mailing list, you just give that

6    to them and they certify that they sent it, however you want

7    to do it, but I need that process done, so I need a

8    restatement of the classes that comport with what I discussed

9    here today.

10        We need the revised notice, you know, that it would

11   be appropriate.  And the notice, how it is going to go.  Is

12   it going to go by mail to these individuals?  How do you get

13   the list?  Do you turn it over to the defendants?

14        You need to coordinate with the defendant so I have

15   a way of understanding that.  And then I need to see the form

16   of the consent that they are signing, that they will be

17   expected to sign as well.

18        So, the sooner you get that in, the sooner the

19   order will be able to go out, because my order won't become

20   final until I have the refined classes and the appropriate

21   form of notice that I feel is appropriate.

22        MR. THOMAS:  Your Honor, we sincerely appreciate

23   all of your efforts to issue quick decisions when I know

24   there is a lot on your docket.

25        One request, which is typically done in these

36

1   cases, and I request that we do it here, that is within
2   fourteen days, the sides either submit to you an agreed --
3   mutually agreed notice and form.  If that's not done --
4           THE COURT:  It would be without prejudice to the
5   other side's right to preserve -- but, I mean, they are going
6   to be objecting to what I have done here today, I am
7   assuming.
8           MR. LAMPE:  In part.
9           THE COURT:  So, if you can agree that whatever that
10  is produced is consistent with my order, it does not mean
11  that you are agreeing that I made the right decision, but if
12  you can mutually agree that this comports with what I have
13  ordered today, that would be helpful and we can move on.
14          MR. THOMAS:  If there are issues that we can't
15  agree on, both sides --
16          THE COURT:  Then you have to come back here
17  promptly.
18          MR. THOMAS:  We'd submit our notice, their proposed
19  notice so you can see the difference.
20          MR. LAMPE:  That makes sense to us.  If there is a
21  disagreement, it may go to the content or manner of
22  distribution.  We will try to work that out, both sides.
23          THE COURT:  And I am going to impose on both sides
24  an obligation to work diligently because I am finding that it
25  is the collective notice -- I will say there will be a

37

1  determination at the first tier that the class will be
2  conditionally certified along the lines that I described.
3  They have to be narrowly limited to those employees who would
4  fit within the work issues that were raised, and the workers
5  have to be, the classes have to be refined to reflect that
6  and to be more consistent with the regulations, and then we
7  need to work out how the notifications will go out and the
8  form of the notice has to be changed to reflect what we have
9  talked about.

10       MR. THOMAS:  Your Honor, one last issue on the
11  joint employer SCI issue.  We may be able to submit that
12  briefing to you without any additional discovery, but we
13  would request an order today that if we need limited
14  discovery on that issue, that that be expedited and begin
15  immediately and be turned around in less than fifteen days.

16       THE COURT:  It depends on what kind of volume of
17  material you are asking for.

18       MR. THOMAS:  I don't think much.  But, we have had
19  disagreements with defense counsel about whether discovery
20  can proceed.  But, we would request that the Court's
21  direction be that it be done immediately and in an expedited
22  basis.  We will try to work cooperatively with them, but we
23  would like there to be an understanding that discovery on
24  that issue is to be going forward as quickly as possible
25  since it is so important.

1      MR. LAMPE:  Your Honor recalls from the hearing in
2  January that Mr. Thomas indicated he did not need any
3  discovery and he was confident he could settle with what he
4  had --
5      THE COURT:  At least I am concerned today that at
6  SCI, that that's not the case.
7      MR. LAMPE:  If he wants to go take discovery,
8  obviously as you said in the hearing, it has to be a two-way
9  street and there can't be any parameters on how many days
10 because they don't know what we want and I don't know what
11 they want.  We need to discuss it before there is any sort of
12 restriction.
13     THE COURT:  You meet and confer on a discovery
14 plan, okay?  And find out what you are going to need, what
15 you are going to be asking for.  You should have a meet and
16 confer sometime next week as to what the parameters are.  It
17 is a two-way street when you are going down there.  That way,
18 if you feel you need some limited discovery with respect to
19 this issue that is contemplated, that can happen.
20     So, you need to do that.  And if you want to get
21 together again, if you can agree on it, you can just start.
22 If you have to know something, say what you want and how long
23 you need to take it, and the other side can respond.  We will
24 let you file something like that, but you have to notify the
25 other side that you are asking for an expedited hearing.  The

1   response turn-around should be two business days, and I will
2   try to have a hearing within a week on that.

3          So, that the sooner you get working and seeing what
4   you need to do, you know, you will be protecting the interest
5   of the parties that you are seeking to represent as class
6   members here. But, so it is up to you really to do that.
7   So, just work together, to the extent that you can, if they
8   want discovery.

9          On the other hand, to be responding to it, you are
10  going to have to make that available as well.

11         MR. THOMAS:  Certainly, Your Honor.

12         MR. LAMPE:  We just would reserve the right to
13  object to having to turn anything around in two days.  If
14  there is a brief we have to file within two days of getting
15  their brief, it may not be possible.  We may be asking for
16  additional time to do that.

17         THE COURT:  It is going to depend.  But, I think
18  that should be the goal.  If they can get something out two
19  days from now and you can respond in two days, I think if it
20  is somewhat short, that is fine.  We can have a more full
21  dialogue and a telephone conference if necessary.

22         MR. THOMAS:  Your Honor, those issues --

23         THE COURT:  That is the goal, is what I am saying.
24  I am not ordering that that is the case.  That would be the
25  goal.  Because if they are going to ask for an expedited

40

1    hearing, you have to ask for it.

2              MR. LAMPE:  Right.

3              THE COURT:  If you feel you can't do it, you

4    respond that way.

5              THE COURT:  Okay?  So, we need to set a time for

6    the argument on the motion to dismiss.  There just wasn't

7    enough time to get all of this in today.

8              How about June 8th at two o'clock?

9              MR. THOMAS:  That's fine with us, Your Honor.

10             MR. LAMPE:  That is fine with us, Your Honor.

11             THE COURT:  That's a Friday at two o'clock.  Okay?

12   And so I will look for you, and it is so ordered on the

13   record today that the findings that I made with respect to

14   the evidentiary materials that support the plaintiffs'

15   motion, as well as the lack thereof with respect to

16   Alderwoods, and the lack thereof with respect to SCI, the

17   Court will conditionally certify the class as reflected on

18   the record today, and it's subject though to the plaintiffs'

19   filing with the Court the revised class description, a

20   revised notice that comports with what the Court has said

21   today, as well as a plan for notice which would include how

22   the notice is going to go out, and I will need to see the

23   consent form that's an exhibit to the file.

24             Anything else I overlooked?

25             MR. LAMPE:  Your Honor, I wanted to ask one

41

1  question.

2        Have you reached a conclusion yet about the

3  geographic scope?

4        THE COURT:  The geographic scope, I am going to say

5  is national.  I think the -- I am sufficiently -- at this

6  stage of the proceedings, applying the liberal standard

7  looking at the managers who are professing to have personal

8  knowledge in their positions of the corporate policies, the

9  Court finds at this stage that that is sufficient.

10        MR. THOMAS:  Thank you, Your Honor.

11        THE COURT:  Okay?  It is all subject to

12  reconsideration at the second stage.

13        MR. LAMPE:  Yes, Your Honor.  Thank you.

14  (Court adjourned on Thursday, April 19, 2007, at 4:30 p.m.)

15

16                    *  *  *  *  *

17        I certify that the forgoing is a correct transcript

18  from the record of proceedings in the above-entitled matter.

19

20                              S/Michael D. Powers
                                Michael D. Powers
21                              Official Reporter

22        *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

23

24

25

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al.,

          Plaintiffs,

                                        Civil Action

          vs.
                                        No. 06-1641

ALDERWOODS GROUP, INC., et al.,

          Defendants.

_____


     Transcript of proceedings on September 6, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge


APPEARANCES:

For the Plaintiffs:          J. Nelson Thomas, Esq.
                             Patrick J. Solomon, Esq.
                             Charles H. Saul, Esq.
                             Liberty J. Weyandt, Esq.
                             Justin M. Cordello, Esq.


For the Defendants:          Matthew W. Lampe, Esq.
                             Amy E. Dias, Esq.




Court Reporter:              Richard T. Ford, RMR, CRR
                             619 U.S. Courthouse
                             Pittsburgh, PA  15219
                             (412) 261-0802



Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

2

1        (Proceedings held in open court; September 6, 2007).

2            THE COURT:  This is a hearing in Prise versus

3   Alderwoods Group, Inc., Civil Action No. 06-1641.  The hearing

4   concerns a question as to whether or not notice should be sent

5   to employees of Service Corporation International.

6            Will counsel please enter your appearance.

7            MR. THOMAS:  Yes, Your Honor, Nelson Thomas, Dolin,

8   Thomas & Solomon.

9            MR. LAMPE:  Matt Lampe, Your Honor, Jones Day, on

10  behalf of the Defendants.

11           THE COURT:  I notice a number of other people are

12  present here.  Are the two that have just entered your

13  appearance the ones who will make the argument?

14           MR. THOMAS:  Yes, Your Honor.

15           THE COURT:  Would the others just like to be on the

16  record so we know who is present.

17           MR. SOLOMON:  Patrick Solomon for the Plaintiffs.

18           MR. SAUL:  Charles Saul of the firm Margolis

19  Edelstein for the Plaintiffs.

20           MR. CORDELLO:  Justin Cordello.

21           MS. WEYANDT:  Liberty Weyandt from the firm

22  Margolis Edelstein.

23           MS. DIAS:  Amy Dias for the Defendant.

24           THE COURT:  Thank you.  The briefing of the parties

25  is, quite frankly, like two ships passing in the night because

1 the views of the law are just dramatically different from each

2 side.  So I just want to take a moment and reset the framework

3 for this.

4        The Plaintiffs are requesting that a collective

5 action notification be sent as a result of alleged violations

6 of the Fair Labor Standards Act, the FLSA.  The subclass

7 proposed as to the Defendant that is at issue here -- because

8 one notification has already gone out with respect to the

9 Alderwoods Group, Inc., I might be mistaken on that, there are

10 some other issues coming up on that.  The question concerns

11 the ultimate parent of the organization, which is Service

12 Corporation International.

13        The class would be current and former hourly

14 employees of Defendants who were suffered or permitted to

15 perform work by handling calls and other work related issues

16 after hours, but not compensated by Defendant for such work

17 performed after the workday off-site from the funeral home --

18 the on-call pay policy.

19        The Plaintiffs are asserting that the Defendant --

20 we will call the Defendant SCI for ease of reference -- is

21 their employer under the FLSA.  The Defendant says no, it is a

22 mere holding company and has no employees.

23        The problem I had was that the Plaintiff in the

24 briefing set forth a lot of factors which, if they were true,

25 would implicate an employment/employer relationship, which is

1   a very broad concept for purposes of the Fair Labor Standards
2   Act.

3         But Defendant has set forth affidavits, which have
4   not been contradicted to this Court's knowledge, showing that
5   those allegations are simply not true.

6         Just to give a preview, the definition of employer
7   under the FLSA, as set forth in 29 United States Code,
8   Section 203(d), provides that an employer includes any person
9   acting directly or indirectly in the interest of an employer
10  in relation to an employee.

11        The courts have to look at an economic reality test
12  and a totality of the circumstances test that the courts look
13  at, and the courts have noted that there's a broad definition,
14  it's broader than what would normally be the case in a
15  traditional common-law sense.  Those cases are Rutherford Food
16  Corp. versus McComb, 331 US 722, 1947; Zavala versus Wal-Mart
17  Stores, Inc., 393 Fed Supp. 2d 295, District of New Jersey,
18  2005.  There are a number of others that stand for that same
19  proposition.

20        The cases -- and I have read all of the seminal
21  Supreme Court cases that were decided, as well as the other
22  cases cited by the Plaintiffs in this situation, and also the
23  regulation which is set forth in 29 Code of Federal
24  Regulations, Section 791, and I think it's (b) -- I have to
25  get my copy of that.  The one that has the applicability in

1  this case is (b)(3), but I did want to quote for purposes of

2  the record the exact language of (b)(3), which I had printed.

3  Can you reprint that for me?

4           THE LAW CLERK:  I will.

5           THE COURT:  Thank you.

6           I also read the cases that were cited in the

7  WESTLAW version of the Code of Fed Regulations that are cited

8  under that section.  Quite frankly, the cases that are

9  implicated here mainly deal with individuals who are

10 shareholders or officers of a corporation.  As the

11 shareholder, they may have been the majority shareholder or

12 controlling shareholder.  The courts have found those

13 individuals in certain circumstances to be employers.

14          But there was generally some affirmative conduct

15 that was involved, direct involvement in the operations of the

16 business such that the courts could find some relationship,

17 more than just being a shareholder.  That there was direction

18 and control actually being exercised.

19          When I looked at the cases that the Plaintiff has

20 cited, the cases of the Plaintiff generally dealt with

21 situations where there was some affirmative action being taken

22 by the person sought to be held as the employer.

23          For example, in the Alba versus Loncar case, which

24 was 2004 WESTLAW 1144052, Northern District of Texas,

25 May 20, 2004, the Court there was considering whether an

1   individual's control over the employees of a corporation were
2   sufficient to warrant a finding of an employer/employee
3   status.

4           The Court there found that there were certain
5   managerial responsibilities and substantial control over the
6   terms and conditions of the employment.  So they were looking
7   for operational control in some sense.  I don't think it had
8   to be complete, but it had to be substantial.

9           Indeed the seminal decision of the Supreme Court,
10  and they all seem to be fairly old cases going back into the
11  1940s and the most recent being the 1973 decision of the
12  Supreme Court in Falk versus Brennan, 414 US 190.  In that
13  case there was a partnership that was providing management
14  services for a number of real estate apartment complexes, and
15  the Supreme Court there found that even though the individuals
16  may have been paid by the separate -- at issue may have been
17  paid by the separate apartment complexes, the partnership
18  could actually be an employer as well, and what they looked
19  for was -- this is on Page 431 -- they looked at the extent of
20  the managerial responsibility at each of the buildings, which
21  gave that partnership substantial control of the terms and
22  conditions of the work of the employees.  So they were looking
23  really to the actions.

24          When you look at the regulation that's been raised
25  here, there were two things that I wanted to bring to bear

1   here.   The first is that the Plaintiffs cite Section 791.2(a)
2   for the proposition that there has to be some kind of a
3   showing that they are completely disassociated.  But if you
4   read that phrase in context, what the entire sentence says is:
5   If all the relevant facts establish that two or more employers
6   are acting entirely independently of each other and are
7   completely disassociated with respect to the employment of a
8   particular employee who during the same work week performs
9   work for more than one employer, each employer may disregard
10  all work performed by the employee for the other employer.
11        So in (a) they are not dealing with a
12  parent/subsidiary relationship we have here; they were talking
13  about someone who works part-time for one entity in a week and
14  part-time for someone else in a week.
15        The question is when can you lump those two
16  employers together, and the Court in that circumstance -- I
17  mean the regulation in that circumstance was looking for some
18  kind of complete disassociation because of the nature of how
19  the work was being performed during the same week.  So I think
20  you can't take that completely disassociated just out of
21  context in terms of what was the concern being addressed in
22  Section 791.2(a).
23        Then when you get to (b), because I think this is
24  the one that is more directly relevant here, because what
25  they're concerned with in (b) is a benefit.  It is where the

1   employee performs work which simultaneously benefits two or
2   more employers or works for two or more employers at different
3   times during the work week, a joint employment generally --
4   relationship generally will be considered to exist in
5   situations such as.

6          So at best what you have here is, arguably,
7   performing work which will simultaneously benefit two entities
8   because you could argue going up the chain that whoever is
9   working at the lowest tier subsidiary, there could be some
10  indirect benefit flowing up to the parent level.

11         Then when you get to subpart (1), it has to deal
12  with if there is an agreement to share, and I don't think
13  there is any issue here that there is any sharing of the
14  employee.

15         The second aspect of that regulation is where one
16  employer is acting directly or indirectly in the interest of
17  the other employer in relation to the employee.  And I think
18  that's probably the management kind of services.  If you are
19  stepping in and providing management services and you're doing
20  that in relation to the particular employer, maybe you could
21  be caught up in the parameters of the regulation.

22         The final one, which is the only one I think that
23  has some, arguably, applicability here, is (3), where the
24  employers are not completely disassociated with respect to the
25  employment of a particular employee.  And I don't know what

1  completely disassociated means in this context, and it could
2  mean that you're providing some services for one, some
3  services to another.

4          But it goes on to say that:  May be deemed to share
5  control of the employee, directly or indirectly, by reason of
6  the fact that one or more employer controls or is controlled
7  by or is under common control with the other employer.

8          The cases that are cited there are the same kinds
9  of cases that the Plaintiff was citing where there was some
10 individual generally who was actually providing the hands-on
11 management and was interfacing and making decisions, directs
12 decisions, relevant to the particular employee or employees in
13 question.

14         So these were not the cases where you have a parent
15 company and a subsidiary, and that's the sole relation that
16 you have, and you don't have the parent actually managing the
17 business of human relations or anything else like that.

18         So that's why when you first read the Plaintiffs'
19 brief, the Plaintiff is making all the arguments, they're
20 providing human relations services, they're providing the
21 benefits, they're providing policies, all of that type thing.

22         The response by the Defendant shown by affidavit
23 said that was not the case.  That there were other entities.
24 So there may be other employers here who may be appropriate to
25 be brought in, but it doesn't appear that it would be SCI if

1    SCI as the corporate board is not doing something overtly to

2    be involved in the management or the operational control of

3    the businesses.

4         So that's the problem that I see here for the

5    Plaintiffs.  So I will hear from the Plaintiffs first.

6         MR. THOMAS:  Your Honor, you -- I understand your

7    position on that, and I don't think -- I will leave it be.  I

8    understand where you are coming out on that.  I think that

9    probably what makes the most sense is for us to, if the test

10   is going to be focusing on the operational control, they have

11   certainly listed those entities in their papers and we will

12   either file a new complaint or amend this one to bring those

13   in, and then we will tee up the issue on that score.

14        THE COURT:  Right.  One other thing I wanted to

15   mention, when you look at the definition in Section 203(d)

16   where it defines the person, and it says any person acting

17   directly, so that in itself connotes there has to be some

18   affirmative action.  It can't be just totally passive.

19        There are a number of lower court decisions where

20   you have just the pure parent/subsidiary relationship where

21   the parent really is a pure holding company and has no

22   operational functions of any kind.  The lower courts that have

23   considered this view that as not being an employer for

24   purposes of this statute.

25        MR. THOMAS:  That's fine.  We can bring in those

1  individuals potentially and we will see where we go.  But the

2  operational people have been identified and the operational

3  entities, and that may be a better approach, and we have that

4  in their papers and I think that would be the next step.

5           THE COURT:  So I will deny this motion.  And I

6  think also that would give me the grounds to grant the summary

7  judgment at this stage without prejudice if you are going to

8  continue to try -- are you going to continue to try to keep

9  SCI in?

10          MR. THOMAS:  Yes, Your Honor, and maybe I would

11  make the motion now for leave to amend the complaint to add in

12  the -- at least the entities they have identified in their

13  papers, which are the SCI Eastern Market Support Center LLP,

14  SCI Western Market Support Center, Houston Market Support

15  Center, and the SCI Funeral and Cemetery Publishing -- or

16  Purchasing Cooperative.

17          So we request that that be deferred until we make

18  our motion to amend and motion for notice for those people.

19  We may be adding in individuals or different entities, I don't

20  know.

21          THE COURT:  Because that seems to be what they are

22  looking for.  In all the cases -- and I did read the

23  Defendants' cases and the Plaintiffs, and particularly the

24  Supreme Court cases, and they were all looking for some kind

25  of exercise of control, not just the mere power to control,

1   but somebody that was actually an entity or a person that was
2   actually, you know, involved with the employee.
3           MR. THOMAS:  And I think from their papers you have
4   that there.  They say these were the ones that did the HR
5   functions, these are the ones that interfaced.  If it is
6   simply a question of putting in the new party that has that,
7   we request leave to amend and put those in.
8           THE COURT:  Okay.  I will hear from the Defendant.
9           MR. LAMPE:  Well, since the Court has decided to
10  deny the motion, I am not going to speak to that.
11          I think the two issues that you want to hear from
12  me on is, first of all, you raised the point about the summary
13  judgment motion.
14          THE COURT:  Right.  I specifically said it wouldn't
15  be argued today here.  But in light of their statement that
16  they're willing to -- or they want to amend the complaint, I
17  just don't know if that should be denied without prejudice at
18  this time because I don't know -- it is really difficult when
19  you have serial summary judgments and that type of thing.  So
20  that for judicial economy would be my question where to go
21  from here.
22          MR. LAMPE:  The two named Plaintiffs, Prise and
23  Rady, they never worked for SCI or even an affiliate of SCI.
24  During the time that they were employed by Alderwoods,
25  Alderwoods was a competitor.

1       THE COURT:  So they would have to amend the

2   complaint to bring in another Plaintiff too then.

3       MR. LAMPE:  Right.  We think as to SCI, the named

4   Defendant in this case, these two named Plaintiffs couldn't

5   possibly have a claim against them.  You have already

6   determined that SCI is not an employer, and even if it were --

7       THE COURT:  At least they haven't presented

8   anything to get the notification.

9       MR. LAMPE:  Correct.  But even if they were an

10  employer, they certainly wouldn't be Ms. Prise and Rady's

11  employer because those two people left Alderwoods before there

12  was any association of any kind between Alderwoods and SCI.

13  We think -- we do think it makes sense to dismiss SCI from the

14  case.  There certainly aren't any facts that would suggest the

15  two named Plaintiffs could have any kind of a claim against

16  them.

17      Then as to the request to amend the complaint, I

18  think -- I would need to look to see whether we would have

19  grounds in the law to oppose that.  I know the rules on

20  amendments are fairly liberal, but I am also sort of struck by

21  the fact that we were together back in April and Mr. Thomas

22  raised back then the fact that he needed to take some

23  discovery to find out what the interrelationships were among

24  these various corporate entities.  We agreed to that, and they

25  have taken no discovery.  A half a year has now passed and it

1  seems to me that the time to investigate which corporate

2  Defendants should be brought into the case was a half a year

3  ago, not now. This case is coming up on a year old and we're

4  talking about trying to bring two completely separate

5  corporations into this lawsuit.

6          This class period, if you go back three years, to

7  the vast majority of this class period, Alderwoods and SCI are

8  competitors. There is no relationship at all. As of November

9  of last year they became related. But there's no request for

10 injunctive relief in this case. This is a damages case.

11         Again, I would want to research this and be able to

12 formally respond, but I think our inclination would be it is

13 too late to try to continue to dredge up some SCI entity to

14 drag into this case which is an Alderwoods case.

15         THE COURT: If at the time -- I think what they are

16 saying is if at the time in issue, unless you have some other

17 Plaintiffs that come up later, their argument is that these

18 Plaintiffs don't have anything to do with any SCI entity.

19         MR. THOMAS: Your Honor, that was addressed in our

20 summary judgment papers, which is --

21         THE COURT: I haven't really spent a lot of time on

22 that.

23         MR. THOMAS: Exactly. I was not prepared today to

24 be dealing with that based on the Court's decision.

25         However, what we point out in those papers is there

1   is currently over 50 Plaintiffs in this case who are -- and

2   actually substantially more -- who are SCI employees and who

3   under --

4            THE COURT:  I think what you need to address is

5   whether you need additional -- you can amend to add Plaintiffs

6   as well.  But if they are not -- if they don't have the same

7   basis, I mean, if this all happened under Alderwoods and SCI

8   just inherited them because of their acquisition, they may

9   have inherited the liabilities through the Alderwoods entity

10  that they acquired and they may have to be indirectly

11  financially responsible.  But as a separate entity, maybe they

12  don't have a role to play here.

13           MR. THOMAS:  Actually, Your Honor, when I

14  referred -- there is over 500 Plaintiffs in this lawsuit.

15  Under the FLSA, they are actually party Plaintiffs, they

16  actually become parties, so there is actually over 500 party

17  Plaintiffs here.  Over 50 of those are direct SCI employees.

18  So I think that Mr. Lampe's point is not well-founded in terms

19  of this.  We do have over 50 SCI Plaintiffs.

20           That said, based on what I just heard, we will have

21  to evaluate all of our options.

22           I guess another -- I too am concerned about -- I

23  want to get this case moving forward.

24           THE COURT:  Right.

25           MR. THOMAS:  It may be easier for us, and we will

1    evaluate everything, I don't know what we conclude, we may

2    conclude just simply filing another complaint against SCI and

3    name these people officially, we may choose that.  We may

4    speak to Mr. Lampe to see if he consents.  We may bring a

5    motion to amend.

6              THE COURT:  Is there any concern the same activity

7    is still continuing?

8              MR. THOMAS:  Yes, Your Honor, it is.  Again, the

9    statute of limitations of people is dropping off and we are

10   very concerned about that.  So, again, much like Mr. Lampe, I

11   don't want to answer today not having done the research on the

12   statute of limitations and the parties and the best course,

13   but I think that really whether it's by -- this issue is not

14   going to disappear, it is either going to be by separate

15   complaint or motion to amend, we will get this teed up as soon

16   as possible so we can get these employees -- and, you know,

17   the Defendants, although they say they are concerned about the

18   length of the case, they have knocked off a third of their

19   liability by the length that has gone on already and we want

20   to put that -- we want to put that to an end now.  So we are

21   going to move as quickly as we can so that these employees

22   shouldn't be bearing the cost of what has --

23             THE COURT:  So this motion will be denied on the

24   notification for the reason that there wasn't sufficient

25   evidence presented to the Court to implicate an

1    employer/employee relationship with SCI.  And I will cite the

2    standards of the Falk decision and -- there is a recent

3    Maryland case, Glunt versus GES Exposition Services, Inc., 123

4    Fed Supp. 2d, 847, District of Maryland, 2000.  There's a

5    couple other decisions like this that are cited.  Those are

6    the lower courts I said that have considered this, just a

7    simple parent/subsidiary relationship.

8            But if you wish to amend the complaint, you will

9    file a motion to do that and it can be responded to in due

10   course.  If you want to meet and confer to try to expedite

11   this, it isn't good for either party to have these issues

12   languishing.  So I think we need to move on from there so that

13   the case can progress.

14           MR. THOMAS:  Your Honor, we would like to get, once

15   the motion is made, as expedited a schedule as possible to get

16   that done.  Procedurally how would you prefer us to request

17   when we file the motion that there be --

18           THE COURT:  Ask for an expedited hearing.  File a

19   separate motion asking for an expedited hearing and a

20   shortened briefing schedule.  The other side has to have an

21   opportunity to respond.  So if you ask for an expedited

22   briefing schedule and an expedited hearing, I will see those

23   as they come in.

24           MR. THOMAS:  Thank you, Your Honor.

25           THE COURT:  Okay.  Anything further?

1            MR. LAMPE:  Not from me, Your Honor, thank you.

2            THE COURT:  Thank you all.

3        (Record closed).

4

5

6

7                    *        *        *        *        *

8

9

10

11              C E R T I F I C A T E

12            I, Richard T. Ford, certify that the foregoing

13   is a correct transcript from the record of proceedings in the

14   above-titled matter.

15   S/Richard T. Ford    _____

16

17

18

19

20

21

22

23

24

25

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE AND HEATHER RADY | Civil Action No. 06-1470 |
| Plaintiffs, | |
| v. | Judge Joy Flowers Conti |
| ALDERWOODS GROUP, INC., BURTON L. HIRSCH FUNERAL HOME, INC., H. P. BRANDT FUNERAL HOME, INC., H. SAMSON, INC., NEILL FUNERAL HOME, INC, & SERVICE CORPORATION INTERNATIONAL | JURY TRIAL DEMANDED |
| Defendants. | |

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

NOW COME, the Plaintiffs, Deborah Prise and Heather Rady, by and through their attorneys, MARGOLIS EDELSTEIN, CHARLES H. SAUL, ESQUIRE and LIBERTY J. WEYANDT, ESQUIRE, and file the following Motion for Leave to File Second Amended Complaint and aver as follows:

1.     This civil action was originally filed by Plaintiffs Prise and Rady on November 6, 2006, which sought relief against Defendants Alderwoods Group, Inc., Burton L. Hirsch Funeral Home, Inc., H. P. Brandt Funeral Home, Inc., H. Samson, Inc., Neill Funeral Home, Inc., under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e), *et. seq* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206 ("EPA").

2.     Plaintiffs filed an Amended Complaint on February 23, 2007, in which Plaintiffs added Service Corporation Inc., as a Defendant in the case. Upon information and belief, Plaintiffs

1

averred that Alderwoods and SCI merged on or about November 28, 2006, via an "Agreement and Plan of Merger," dated April 2, 2006 (see Exhibit 1), which occurred after the filing of Plaintiffs' original Complaint.

3.     It was Plaintiffs' intention to include SCI as a Defendant under a theory of successor liability. However, Defendants interpreted Plaintiffs' Amended Complaint differently, and believed that Plaintiffs' claimed that SCI was the actual employer of Plaintiffs during the time period of the alleged incidents.

4.     Defendants' interpretations of what Plaintiffs' Complaint alleges are hypo-technical and exaggerated, in light of this Court's liberal notice-pleading requirements. It has been confirmed to Defendants that Plaintiffs do not claim that SCI was their employer during the time period in which the incidents alleged in the Complaint occurred, but that SCI is alleged to be liable under a successor liability theory.

5.     Plaintiffs' counsel offered to amend the Complaint to clarify Plaintiffs' position with respect to Defendant SCI in order to resolve this conflict. However, Defendants' counsel refused to consent to Plaintiffs' filing of a Second Amended Complaint, (to resolve the problems which Defendants complained of), but instead demanded the Complaint be withdrawn, or Defendants would request Rule 11 sanctions[1].

6.     Defendants' counsel then claimed that Alderwods and SCI did not merge. Defendants asserted that Alderwoods and SCI are two separate and distinct corporations, and, therefore, Defendants claim that SCI is not a proper party in this action.

---

[1] Plaintiffs believe that Defendants wanted Plaintiffs to withdraw their Complaint, such that when a new Complaint was filed, Defendants could then assert that the statute of limitations had expired.

7.     The parties appeared before the Court on May 23, 2007, for a status conference, during which the above issues were discussed. The Court permitted Plaintiffs the opportunity to file a Motion requesting leave to file a Second Amended Complaint and also permitted Defendants to file a response thereto[2].

8.     Upon information and belief, Plaintiffs aver that Alderwoods and SCI effectively merged on or about November 28, 2006, through the use of a subsidiary corporation, Coronado Acquisition Corporation ("Coronado"), created solely for the purpose of SCI's acquisition of Alderwoods. The merge of SCI's interests with that of Alderwoods has been scrutinized at length by the Federal Trade Commission. The two entities signed what has been publically referred to as "Agreement and Plan of Merger." (Exhibit 1). Public records also state that SCI acquired Alderwoods. The merger of the two entities is somewhat complicated, and without the benefit of discovery, Plaintiffs are unable to ascertain for certain the true relationship between Alderwoods, SCI and SCI's wholly owned subsidiary, Coronado.

9.     SCI has already legitimately been named as a party in Plaintiffs' First Amended Complaint. In all fairness, Plaintiffs' request to amend the Complaint again, with respect to Defendant SCI, stems from Defendants' complaints about the amendment. In all fairness, the relationship between the two entities is complicated and confusing with numerous filings with the SEC. Defendants have stated that another entity, namely Coronado Acquisition Group ("Coronado"), was created to effectuate the acquisition of Alderwoods. Coronado is believed to be a wholly owned subsidiary of SCI. According to documents filed by SCI with the SEC, Alderwoods

---

[2] Should the Court grant Plaintiffs' Motion, new deadlines for Responsive pleadings and responses thereto will need to be set.

and Coronado merged, and became a wholly owned subsidiary of SCI, which is now called Alderwoods (see Exhibit 1). Plaintiffs contend that this makes SCI a successor in interest to Alderwoods.

10.     Upon information and belief SCI has acquired all the stock and assets of Alderwoods. It is also Plaintiffs understanding that SCI agreed to assume all of Alderwood's liabilities, based upon a review of limited documents which have been available for review.    Since the merger between Alderwoods and SCI took place after the filing of this suit, and after the EEOC investigation, SCI either knew, or should have known of the action and, therefore, should have been aware that they would also be taking on responsibility for the liabilities of Alderwoods that have been alleged in the Complaint.

11.     A true and correct copy of Plaintiff's proposed Second Amended Complaint is attached hereto and marked as Exhibit 2.

12.     Additionally, Plaintiffs also wish to amend their Complaint to include allegations under the Pennsylvania Human Relations Act.    Subsequent to the filing of the First Amended Complaint, Plaintiffs received Notices of Rights from the Pennsylvania Human Relations Commission, dated April 17, 2007.    Therefore, Plaintiffs wish to amend their Complaint to include causes of action which arise under the Pennsylvania Human Relations Act ("PHRA"), of which this Court has supplement jurisdiction. See attachments to Exhibit 2.

13.     No party is prejudiced by the filing of the Second Amended Complaint.    Defendant SCI has already been named as a party to the action via Plaintiffs' First Amended Complaint.    The Amendment with respect to SCI is to clarify Plaintiffs' position that SCI is liable under a successor

4

liability theory, which is being done in part to rectify Defendants' complaints with respect to the pleading. The amendment with respect to the PHRA claims is the type of amendment which is routinely granted by the Court, in light of the fact that Plaintiffs could not have included such causes of action in their Complaint until they were given the right to do so by the PHRC. Furthermore, the PHRA claim, mirrors the claims already pled under Title VII.

WHEREFORE, Plaintiffs, respectfully requests that this Court grant the instant Motion for Leave to Amend Complaint.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date:  6/8/07                                   /s/ Liberty J. Weyandt

CHARLES H. SAUL, ESQUIRE
PA I.D. #19938

LIBERTY J. WEYANDT, ESQUIRE
P.A. I.D. #87654

525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256

Attorneys for Plaintiff

5

**Other Supporting Documents**
3:07-cv-05140-MJJ Prise v. Alderwoods Group, Inc. et al
ADRMOP, E-Filing

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available* .
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at for more information.

The following transaction was received from by Daniels, David entered on 11/6/2007 2:49 PM PST and filed on 11/6/2007
**Case Name:**         Prise v. Alderwoods Group, Inc. et al
**Case Number:**     3:07-cv-5140
**Filer:**                   Service Corporation International
                              Alderwood Group, Inc.
**Document Number:** 19

**Docket Text:**
MEMORANDUM in Support *of Motion to Dismiss First Amended Complaint* filed byAlderwood Group, Inc., Service Corporation International. (Attachments: # (1) Exhibit Memorandum of Points & Authorities in Support of Motion To Dismiss First Amended Complaint (Part 2 of 2))(Daniels, David) (Filed on 11/6/2007)

**3:07-cv-5140 Notice has been electronically mailed to:**

David Merrill Daniels     david@gurneelaw.com

Amy E. Dias      aedias@jonesday.com

Steven Hazard Gurnee      steve@gurneelaw.com

John A. Mason    john@gurneelaw.com, candace@gurneelaw.com

Maria V. Morris    mmorris@rbg-law.com, e_file_sd@csgrr.com, e_file_sf@csgrr.com

Lori Rifkin    lrifkin@rbalaw.com, lrifkin@rbg-law.com, abelardino@theemploymentattorneys.com, agifford@theemploymentattorneys.com, jcordello@theemploymentattorneys.com, nthomas@theemploymentattorneys.com, psolomon@theemploymentattorneys.com

Sanford Jay Rosen    srosen@rbg-law.com, smillham@rbg-law.com

**3:07-cv-5140 Notice has been delivered by other means to:**

Nicholas Pierre Forestiere
Gurnee Wolden & Daniels LLP
2240 Douglas Blvd #150
Roseville, CA 95661-3875

Charles Saul
Margolis Edelstein
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219

J. Nelson Thomas
Dolin, Thomas & Solomon LLP
693 East Avenue
Rochester, NY 14607

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**G:\Prise v. Alderwoods\Scan-Mtn to Dismiss (filed docs)\Notice of Motion (12-18-07 hearing date).pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=11/6/2007] [FileNumber=3892349-0]
[aab3d0f022f95563b7ef44dd567b845c52fd50500c2865e36af5f132868bcab5a62c0
80251bf8b3f511728b81e592e8872e99ea4f26dd6976934303e2ea1a783]]

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al.,

       Plaintiffs,

         vs.

ALDERWOODS GROUP, INC., et al.,

       Defendants.

Civil Action

No. 06-1641

_____

Transcript of proceedings on November 15, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge

APPEARANCES:

For the Plaintiffs:         J. Nelson Thomas, Esq.
                       Patrick J. Solomon, Esq.
                       Charles H. Saul, Esq.
                       Annette M. Gifford, Esq.
                       Michael J. Lingle, Esq.
                       Kyle T. McGee, Esq.

For the Defendants:        Matthew W. Lampe, Esq.
                       Amy E. Dias, Esq.

Court Reporter:            Richard T. Ford, RMR, CRR
                       619 U.S. Courthouse
                       Pittsburgh, PA  15219
                       (412) 261-0802

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1             (Proceedings held in open court; November 15, 2007).

2             THE COURT:   This is a hearing on various motions

3   that have been filed in the Prise versus Alderwoods Group,

4   Inc., Civil Action 06-1641.

5             Will counsel please enter your appearance.

6             MR. THOMAS:   Your Honor, Nelson Thomas on behalf of

7   the Plaintiffs.

8             MR. SOLOMON:   Patrick Solomon on behalf of the

9   Plaintiffs.

10            MR. SAUL:   Charles Saul on behalf of the

11  Plaintiffs.

12            MS. GIFFORD:   Annette Gifford on behalf of

13  Plaintiffs.

14            MR. LINGLE:   Mike Lingle on behalf of Plaintiffs.

15            THE COURT:   Who is going to be arguing for the

16  Plaintiffs?

17            MR. THOMAS:   Your Honor, I will be, Mr. Thomas.

18            THE COURT:   Thank you.

19            MR. LAMPE:   Matt Lampe, Your Honor, from Jones Day,

20  for the Defendants, and I will be doing the argument.

21            MS. DIAS:   And Amy Dias as well for the Defendants,

22  Your Honor.

23            THE COURT:   Thank you.   There were a number of

24  motions that have been filed.   The first motion has to do with

25  the motion for summary judgment that was filed by the

1  Defendants.  It essentially related to whether or not SCI is a
2  proper Defendant.

3      It strikes the Court that that matter is really
4  moot now in terms of the ultimate parent group.  Not -- they
5  are not seeking to pursue SCI as the ultimate parent.

6      MR. LAMPE:  I think, Your Honor, that in the
7  amended complaint that they are proposing to file SCI is
8  listed as a Defendant.  So I don't think that --

9      THE COURT:  I thought it was all different
10  subsidiaries.

11      MR. THOMAS:  Your Honor, we do have SCI listed as a
12  Defendant in the amended complaint, but we are not doing it --
13  we are not seeking to hold them liable as a shareholder.

14      THE COURT:  What's the purpose --

15      MR. THOMAS:  Your Honor, it would be as a successor
16  in interest; however, I know this Court has ruled on that
17  issue.

18      THE COURT:  Right, I have already ruled on it.  I
19  will make that ruling that they cannot be a Defendant, I will
20  grant the motion for summary judgment.

21      MR. THOMAS:  Your Honor, in the Prise versus
22  Alderwoods discrimination matter you also said that discovery
23  would be liberally granted.  We would just ask that the --
24  their removal from the amended complaint or their dismissal be
25  under the same terms that was in the discrimination case,

4

1   which, Your Honor, I believe was --

2           THE COURT:  That will be true.  It will be without

3   prejudice.  If you find some basis through the discovery that

4   would warrant reconsideration, the Court will consider that at

5   the appropriate time.

6           So the Court will grant the motion for summary

7   judgment and it will be without prejudice at a later time to

8   raise additional information if you find things in discovery.

9           MR. THOMAS:  Thank you, Your Honor.

10          THE COURT:  Okay.  So the motion for summary

11  judgment will be granted as stated.

12          The motion to amend the complaint -- I am going to

13  take up some of the matters that I think are less

14  controversial first.  The motion to amend the complaint, there

15  are several claims that are being amended.  One would be to

16  include the -- include allegations relating to a violation of

17  the FLSA by requiring employees to obtain certifications and

18  participate in training.

19          I don't see a problem with adding that expansion of

20  the allegations in the complaint.  So that would be my

21  preliminary assessment on that.  There are some other

22  corrections and revisions to the complaint along those lines

23  that would be permitted.

24          Another thing is to include all of these opt-in

25  Plaintiffs.  The Defendant has filed a -- Defendants have

5

1  filed a motion saying that all of those opt-in Plaintiffs,
2  some of them are not proper.  But really for the Court at this
3  stage to get into that, it would be akin to having a summary
4  judgment motion and it would be very -- we are going to be
5  moving forward with this case one way or the other, so I would
6  deny that motion without prejudice to raise this issue on who
7  the proper Plaintiffs are at a time when summary judgment
8  motions are filed.

9          MR. THOMAS:  Your Honor, you granted the motion to
10  amend on that issue.

11         THE COURT:  I will let you put all of those
12  Plaintiffs in.  I don't see any great prejudice.  For me not
13  to do that now, I would have to have a hearing, because we are
14  dealing with other people's rights and there may be some other
15  discovery that has to be done with respect to those
16  individuals, and at this stage of the proceedings I think it's
17  best just to move on without prejudice to deal with those
18  individuals subsequently.

19         MR. LAMPE:  Does that mean then you are also
20  denying the separately filed motion to strike?  Are we at that
21  point yet?

22         THE COURT:  Yes, because I think those are less
23  controversial.  It seems to me the big issues are who should
24  be the Defendants in this case.

25         MR. LAMPE:  If I could just have a few words on the

1  issue.

2           THE COURT:   Sure.

3           MR. LAMPE:   We really think that a number of these

4  Plaintiffs that are identified in our motion to strike aren't

5  even colorably, arguably, possibly capable of being in this

6  case.  For instance, in the list of the people whose claims

7  are time barred, the first person on the list was terminated

8  in 1995, Adams I think his name is.  So those sorts of

9  people --

10          THE COURT:   This is the kind of thing, quite

11  frankly, that counsel, if you are doing, you know, diligence

12  going through here, you should meet and confer over these

13  things.  If people don't want to be here, they should be

14  eliminated.

15          MR. THOMAS:   Your Honor, we have sent to Mr. Lampe

16  over 42 stipulations of dismissal.  They have not been

17  returned to us.  As we find people, we send them to him on

18  almost a weekly basis.  We have not heard from him on any of

19  those.  They have not been signed.

20          We would be glad to meet and confer on any of it.

21  But we have been doing our best to get people out of the case

22  who don't belong here.

23          THE COURT:   Why should you move to include them as

24  a named Plaintiff?

25          MR. THOMAS:   I don't believe we are moving to

 1  include.  We are only moving to include people who we -- if we

 2  have information they should not be included, we are asking --

 3            THE COURT:  Why don't you meet and confer.  Why

 4  don't you go through the list of the ones you think are

 5  absolutely not proper and if -- because it's not that they are

 6  excluded.  If they turn out to be properly named and they have

 7  properly opted in, they are in.  It is a question of whether

 8  we have this expansive listing.

 9            MR. THOMAS:  They opted into the lawsuit, I am not

10  saying we moved to dismiss them from the caption of the case.

11  Those people who we sent --

12            THE COURT:  Why would they get to be a Plaintiff

13  here -- why should we list them as a Plaintiff?

14            MR. THOMAS:  We are not asking they be listed as

15  Plaintiffs.  We ask they be dismissed because they filed

16  opt-ins, so we have --

17            THE COURT:  They will not be listed as a Plaintiff.

18  That's what I am talking about.

19            MR. LAMPE:  That is a very, very small number.  Of

20  the people they you sent us dismissal entries for, there are

21  only eight that are subject to our motion.  What I would

22  propose is, to Mr. Thomas, he needs to tell us for everybody

23  listed in our motion, does he in fact feel he has a claim that

24  could surpass Rule 11 standards.

25            THE COURT:  So you have eight individuals.

8

1    MR. LAMPE:  There's eight individuals among the
2    hundreds that we are asking to be struck that Plaintiffs have
3    actually sent us a dismissal entry for.  There are hundreds
4    still outstanding that we think never worked for either of the
5    Defendants.

6    THE COURT:  You can have an ongoing process here to
7    go through those; and as some people should not be in here,
8    then there can be just a simple motion to strike them from the
9    caption.

10    MR. THOMAS:  Your Honor, the problem is the list
11    that the Defendants filed with this Court, which they
12    represented as true and accurate, turns out it wasn't.  They
13    included people on that list who they had already said were
14    within the time period and held the job titles.

15    THE COURT:  I think we need to move this case
16    forward and it is not -- it isn't going to end the case.  I
17    don't think it is going to duly expand it.  I would have to
18    sit through and hear -- have some kind of an evidentiary
19    hearing essentially on each one of those people.  I just don't
20    think it's efficient use of the Court's time.

21    I think you do need to meet and confer in good
22    faith.  People that should not be included in the caption
23    shouldn't be there.  People should be dismissed from the case
24    as you go forward and you will have an ongoing duty to meet
25    and confer over that.

1              MR. THOMAS:   Thank you, Your Honor.

2              MR. LAMPE:   I just have one idea, you might find

3     this to be a good idea.

4              THE COURT:   Okay.

5              MR. LAMPE:   We would propose that within a certain

6     set period of time, to be determined by the Court, the

7     Plaintiffs have to tell us for all the people that are subject

8     to our motion, that they have had a conversation with the

9     person and can say, satisfactory with Rule 11, that in fact

10    that person has a claim, has a timely claim.  Because I think

11    that would weed out a great number of people that are

12    otherwise in the case, we have retention obligations with

13    respect to them.  And if they haven't even had a conversation

14    with these clients yet, I think there should be a deadline

15    imposed on them to come forward yes or no.  Not ultimately if

16    they are going to agree we have a good argument on the merits,

17    but if they are going to continue forward with those people.

18    The ones they want to continue forward with, we can have

19    discovery.  But two-thirds of them probably will not and then

20    they can be dismissed and we can move on.

21             MR. THOMAS:   Your Honor, we believe that there

22    certainly is a process that needs to occur here, conferring in

23    good faith.  We need to see the employee records, we need to

24    get contact info.

25             THE COURT:   Why don't you meet and confer and set

1   up a timetable where this can be accomplished and the Court

2   will approve the timetable for a review of each of the

3   Plaintiffs listed in the caption.

4            MR. LAMPE:  Thank you, Your Honor.

5            MR. THOMAS:  Thank you, Your Honor.

6            THE COURT:  So I will deny that motion to strike

7   without prejudice because what we will do is the parties are

8   required to meet and confer to set forth a process and a

9   timeline to complete the process for review of the named

10  Plaintiffs to determine whether each of the Plaintiffs has a

11  colorable claim to move forward with.  You can file that with

12  the Court.  When do you think, right after Thanksgiving, would

13  that be good, because we are coming on the heels of

14  Thanksgiving?

15           MR. LAMPE:  I think that sounds like a good date,

16  the earlier the better from our perspective.

17           THE COURT:  How about by the 29th if you could have

18  that filed just by what time frame you will use and what

19  process.

20           MR. THOMAS:  The other thing, Your Honor, it may be

21  helpful to have that part of a proposed discovery plan for the

22  case in general.

23           THE COURT:  Right.

24           MR. THOMAS:  With that still -- because the case

25  has sort of moved in different directions, we have not

1  submitted that to the Court.  My proposal would be that the

2  parties sit down and formulate a joint discovery plan on all

3  outstanding issues, including this.

4           THE COURT:  That would make sense to me by the

5  29th.  Because we have to start moving the case forward.

6           MR. LAMPE:  We agree with that.

7           THE COURT:  So it will be the whole -- you will

8  have to have that refinement in there about the process for

9  identifying the Plaintiffs that don't belong.

10           MR. THOMAS:  Thank you, Your Honor.

11           THE COURT:  So that takes two of those.  The other

12  two motions relate to motion to certify the class for

13  expedited collective action notification.

14           I don't know if you are familiar with the

15  Bell Atlantic versus Twombly case.  Have you reviewed that

16  case from the Supreme Court?

17           MR. THOMAS:  Yes, Your Honor.

18           THE COURT:  In that case the Supreme Court

19  clarified I think what has been an issue in the federal courts

20  for many years.  That is, what is the import of Federal Rule

21  of Civil Procedure 8, which requires that a plain statement be

22  filed.  That's the threshold requirement.

23           Now, the Supreme Court in Bell Atlantic Corporation

24  versus Twombly, 127 Supreme Court 1955, decided May 21, 2007,

25  stated that -- these are things that have been recognized for

1   a number of years -- that:  While a complaint attacked by a
2   Rule 12(b)(6) motion to dismiss does not need detailed factual
3   allegations, a Plaintiff's obligation to provide the grounds
4   of his entitlement to relief requires more than labels and
5   conclusions, and a formulaic recitation of the elements of a
6   cause of action will not do.

7          It also went on to state, quote:  The pleading must
8   contain something more than a statement of facts that merely
9   creates a suspicion of a legally cognizable right of action on
10  the assumption that all the allegations in the complaint are
11  true, even if doubtful in fact.

12         So you can move forward even if you have some
13  doubt, but you have to have enough factual allegations to
14  raise a right to relief above a speculative level.

15         And the Court referred specifically to its decision
16  in Conley versus Gibson, 355 US 41, 1957.  In that case, it
17  was famous for the statement that a complaint should not be
18  dismissed for failure to state a claim unless it appears
19  beyond doubt that the Plaintiff can prove no set of facts in
20  support of his claim which would entitle him to relief.

21         That no set of facts has been interpreted I think
22  by many district courts over the years to mean you can conjure
23  up any number of things and almost any claim could pass muster
24  on a rule to dismiss.

25         I think what is particularly telling about the

1   Twombly case is the statement that the Court -- that the Court
2   made:   That phrase about no set of facts is best forgotten as
3   being -- and it stated that this famous observation has earned
4   its retirement.   The phrase is best forgotten as an
5   incomplete, negative gloss on an accepted pleading standard:
6   Once a claim has been stated adequately, it may be supported
7   by showing any set of facts consistent with the allegations in
8   the complaint.

9          So what the Court is doing now is saying, we look
10  for plausibility, are there enough factual allegations set
11  forth in the complaint that go beyond mere factual
12  allegations, you know, which are disguised legal conclusions,
13  so you have to look for some plausibility in the actual
14  factual allegations from which the Court could determine that
15  there is a claim for relief which is stated.

16         Now, the Court noted:   This is not Rule 9, you
17  don't have to a heightened pleading standard.   However, you do
18  have to have enough in the complaint that the Court can apply
19  an appropriate standard.

20         And I have to say, going through this complaint,
21  this proposed amended complaint with respect to the new
22  Defendants, it doesn't meet the standard, it's just replete
23  with conclusion after conclusion after conclusion.   I went
24  through it and when you go through paragraph by paragraph
25  going through there, it's all essentially saying:   At all

1  relevant times -- this is Paragraph 45 -- SCI and SCI managing
2  entities are or have been Plaintiffs' employers.

3        It goes on and make conclusions that, in
4  Paragraph 50, that they comprise a single integrated
5  enterprise.  I think that's a disguised legal conclusion,
6  there is no factual support for that.

7        Just paragraph after paragraph saying that they
8  exercise control, they do this, they do that.  But it is
9  stated as really a very broad-based conclusion.  There's no
10 factual underpinning from which the Court could find any
11 plausible claim here.

12       I am always very troubled because, as pointed out
13 by the Defendants in there opposition to the filing of this
14 amended complaint, Alderwoods was acquired by SCI.  Many of
15 the Plaintiffs, especially the named Plaintiffs here, never
16 worked when SCI was in control of Alderwoods, even if we
17 assume there could be some control.  So you have an extended
18 period of time where we are going to be looking at what
19 Alderwoods was doing -- I will put Alderwoods in quotes, I
20 will call it the old Alderwoods was doing.  So you have all
21 these facts relating to Alderwoods.

22       In the complaint it talks about at all relevant
23 times SCI was in control of them.  That simply can't be true
24 from what the Court has seen from the other motion to dismiss
25 where the merger documents were attached.  There isn't any

1   question here about the point in time at which Alderwoods was

2   acquired by SCI.  You cannot have a successor in interest

3   during those periods except for the entity that was acquired,

4   what I will call the new Alderwoods.

5   So you have the Alderwoods Group as a stand-alone,

6   you have SCI as a stand-alone entity and group of companies.

7   SCI acquired Alderwoods through a triangular merger where

8   Alderwoods wound up being a wholly owned, essentially a

9   wholly -- the new Alderwoods was a wholly owned subsidiary of

10  SCI.   That new Alderwoods is a proper Defendant, they are a

11  successor in interest because it just changed shareholders,

12  it's the same entity, it's the same business operation.  So

13  that is proper, yes.

14  To the extent actions continued in the new

15  Alderwoods like in the old Alderwoods and you had any

16  individuals directly involved in that continuation, you know,

17  involved in that action, so you can say these individuals who

18  are the employers for FLSA purposes because they had hands-on

19  involvement in that or if another subsidiary of SCI for that

20  subsequent conduct specifically related to the Alderwoods

21  entity had some of that type of involvement, maybe they could

22  be if the Defendant's conduct is ongoing to some of the

23  Plaintiffs.

24  So beyond that, to pluck out all of these

25  subsidiaries, I work for SCI, and -- and I am particularly

1  worried about the individuals.  Because the individuals, I
2  looked at some of the references to them and they say they
3  worked for SCI for years prior to the acquisition of
4  Alderwoods.  So how could they have been involved at all
5  relevant times with Alderwoods?  It doesn't make any sense to
6  me.

7          And you can't be a successor in interest in the way
8  I think you want them to be to pick up all of these other
9  entities.

10         So I just can't see, one, under Twombly, I don't
11  think it passes muster.

12         Two, under -- even if it would, I don't see under
13  Rule 20 that you can have this joinder where you have really
14  discrete transactions involved.  What SCI was doing prior to
15  the acquisition with its subsidiaries and other subsidiaries,
16  it just doesn't mesh.  You are going to be too confusing here.

17         If you want to bring a separate lawsuit against
18  what SCI was doing with its other -- or I guess any SCI entity
19  that was operating outside of the Alderwoods context, you can
20  bring another lawsuit.  I just don't know that it's proper
21  here.

22         MR. THOMAS:  Your Honor, if I can -- I understand
23  your concerns.  If I can make several comments.

24         First of all, you picked up the allegations at
25  Paragraph 45, and I understand what you are saying about

1   those.  However, from Paragraphs 7 through 43, that's where we
2   lay out the factual allegations involving the different
3   entities.  So, for instance --
4           THE COURT:  But this all gets back to, these are
5   SCI people, they had nothing to do during the bulk of the
6   time.  How does that work?
7           MR. THOMAS:  Your Honor, maybe we need to be --
8   maybe I need to be making this clearer in the complaint.  The
9   violations -- there are industry-wide practices in the funeral
10  home industry.  Both Alderwoods and SCI were engaging in
11  similar pay practices in the industry.  We know that from our
12  conversations with SCI people.
13          THE COURT:  It doesn't cut it, though, because the
14  conduct in question has to do with what Alderwoods was doing.
15  Whether SCI was doing the same thing doesn't make them liable
16  for the Alderwoods people for that period of time.
17          MR. THOMAS:  It doesn't, but there are SCI people
18  in this case who never worked for Alderwoods.
19          THE COURT:  They shouldn't be here.
20          MR. THOMAS:  And, Your Honor, here is the issue --
21  and I will be glad to split the cases up.  But when we were
22  doing the case for case management purposes, our view is --
23  and if the Court disagree, I don't have any problem.  We
24  ourselves have wrestled with the issue, is it better to be
25  done in one lawsuit or separate lawsuits.

1          The reason we concluded that one lawsuit made more

2    sense was that you have people, you take an Alderwoods

3    employee who became employed by SCI.  If there were two

4    lawsuits, they would file claims in one and then in the other.

5    That's okay.  But our thought was it's easier if you have an

6    employee who has continued in both and who has violations

7    under both, that they be in the same lawsuit together.

8          I would also say --

9          THE COURT:  That would be true if that was all just

10   the same Alderwoods people who then became employed by SCI.

11   But now you are picking up all these other SCI people who had

12   no connections with Alderwoods.

13         MR. THOMAS:  There are probably three universes of

14   employees, at least three universes of employees we are

15   dealing with:

16         People who worked for SCI who never worked for

17   Alderwoods and have their own violations and who now are

18   working for SCI side-by-side with people who used to work with

19   Alderwoods and they both have the same violations, so you have

20   that universe.

21         You have the universe of people who worked for

22   Alderwoods, but never became employed by SCI.

23         And you have the universe of people who worked for

24   Alderwoods and then ended up working for SCI.

25         Our thought had been and the reason we are putting

1   those together is at least at the initial stage it is easier
2   for the case to be managed with all of those together.
3   However, as we noted in our papers, if the Defendants' concern
4   is and the Court's concern is that those should be in separate
5   lawsuits, the problem then becomes -- the solution for that is
6   a motion to sever and to say, there should be an SCI suit --

7          THE COURT:   There is not and SCI suit now, so you
8   just need to file a new one.

9          MR. THOMAS:   Correct.  Well, yes, I guess with
10  SCI's dismissal, correct, if the motion to amend is not
11  granted, that's correct.

12         But then I would say to Your Honor, I would be
13  glad -- we are glad to file them as separate lawsuits and
14  really --

15         THE COURT:   See, I think it would just be so
16  confusing for the Court and for the jury because people will
17  be talking out of both things.  What we need to focus on here,
18  because that's the thrust of this, what was Alderwoods doing.
19  There may be some continuation issues with SCI; and if you
20  could pin the continuation for Alderwoods to SCI, to some
21  other entity other than the new Alderwoods, that's something
22  that the Court could consider later.

23         But right now I think you have to focus on
24  Alderwoods because that's what it is and you can't have
25  Alderwoods being tainted by what SCI was doing at the same

1   time with separate employees and totally unconnected entities.

2                  MR. THOMAS:  That is fine, Your Honor, we will file

3   a separate lawsuit against SCI.  Would Your Honor prefer that

4   that -- for the -- we have the Alderwoods --

5                  THE COURT:  See, we have to get this case moving.

6                  MR. THOMAS:  Correct.  Let's assume there is a

7   person who has opted into the Alderwoods action, an Alderwoods

8   Plaintiff.  They have worked at Alderwoods.  They then worked

9   with the SCI employing entities.  Would Your Honor think that

10  from a confusion and case management perspective it is better

11  to take the post-merger claims and those would be in the

12  lawsuit against SCI or a totally separate lawsuit?  Or -- what

13  would be the -- we are glad to do it any way --

14                 THE COURT:  I think anybody that has continued in

15  the new Alderwoods, they should all stay together.

16                 MR. THOMAS:  Okay.

17                 THE COURT:  People who have never worked for

18  Alderwoods should not be included in this.

19                 What's the thought of the Defendant?

20                 MR. LAMPE:  We agree completely with that.

21  Alderwoods continues.  It's still Alderwoods.  It was before

22  the merger and after.

23                 THE COURT:  You can find some of this is

24  continuing, you can have some good factual grounds to bring in

25  an individual who is currently employed and through one of the

1  SCI entities where you can have a plausible claim against
2  their employer, I will consider that if you can file a motion
3  to amend that has the sufficient factual background that takes
4  it beyond the realm of the conclusions.

5          MR. THOMAS:   What I would -- Your Honor, at that
6  point, just so I'm sure I am not going to do something that
7  confuses things more, at that point you will have in the
8  Alderwoods lawsuit, because it does continue and these
9  individuals that we have named would be -- we would seek to
10 add them, those individuals will now be named in two lawsuits.
11 One is the Alderwoods and continuation --

12         THE COURT:   I am not going to permit them at this
13 stage to be named in this lawsuit because I don't see enough
14 facts in here to bring them in.  So I am not going to permit
15 the amendment to bring up the additional Defendants, whether
16 they're the corporate entities or the individuals.  But it's
17 going to be without prejudice if through your discovery you
18 can discern that there are some facts or something that would
19 give rise to a proper amendment that could be made.

20         MR. THOMAS:   The amendment, Your Honor, we know
21 enough already to know the practices are continuing when they
22 have gone over to SCI, so we will be adding those SCI
23 individuals.  So those SCI individuals and those entities will
24 be in two lawsuits.

25         THE COURT:   I am going to remind you when you talk

1  about somebody being an employer, you have to talk about

2  somebody hands-on.  Somebody at a higher level, just because

3  they are the CEO, they have control over everything, that

4  would mean every CEO through every chain or subsidiary of

5  every corporation in America is going to be a Defendant in one

6  of these cases.  That's not what is contemplated.  You are

7  talking about somebody who is hands-on, that has -- that is

8  involved.  Am I mistaken on what the law is?

9          MR. THOMAS:  Your Honor, generally CEOs of

10  companies are almost always found to be employers.  That is, I

11  think -- I have yet to see a case where a CEO was not found to

12  meet --

13          THE COURT:  The CEO of Alderwoods, if they have

14  some --

15          MR. THOMAS:  If they have an active management of

16  the company, they are not a figurehead CEO, but actively

17  managing the company --

18          THE COURT:  We are talking about the CEOs of all of

19  these other entities you are trying to bring in.

20          MR. THOMAS:  But also too, I mean, I believe -- we

21  can cite the cases and we will go through that.  I understand

22  your concerns about a CEO.  Certainly in terms of the Western

23  Market Support Center, Eastern Market Support Center, they

24  have said that all the HR functions flow to them, they are

25  separate corporations, I believe that those certainly meet the

 1   active hands-on.  We have the director of HR, active hands-on
 2   management.  I guess the CEO and other --
 3          THE COURT:  The active hands-on management, that is
 4   a conclusion.  So you have to have, what did they do.
 5          MR. THOMAS:  We have their affidavits saying that
 6   Eastern Market Support Center administered all HR
 7   administrative functions for employees in that area.  I think
 8   that's more than a conclusion, that's an affidavit from them
 9   saying that's what they did.  So that would be our basis for
10   it.  That would be our basis.
11          That's fine, we will file the new complaint against
12   SCI --
13          THE COURT:  I think you need to meet and confer.
14   You will probably have the same counsel on the other side too.
15   So you can try to achieve some efficiencies and economies in
16   terms of doing discovery.  But I have to try to keep the cases
17   separate because this one has Alderwoods, the old and the new.
18   The other one would just have whatever SCI entity would be
19   appropriate.
20          MR. THOMAS:  And particularly, Your Honor, that's
21   why, because of discovery, among other things, that's why we
22   thought it would be better, not at trial or post-discovery --
23          THE COURT:  You can consolidate things for purposes
24   of discovery, but they have to be discrete cases.  You can
25   certainly meet and confer about that.  But we have to move

1   this case forward.  This is an '06 case.  We are now coming to

2   the end of '07.  It doesn't get any better and you haven't

3   really started -- when are you going to have the amended

4   complaint filed?

5           MR. THOMAS:  I would think by the 29th as well we

6   would try to have an amended complaint in and probably try to

7   file a new complaint by then as well, maybe two new

8   complaints.

9           THE COURT:  Okay.  So then the answer should be due

10  20 days after the filing.

11          MR. THOMAS:  Your Honor, we would move immediately

12  for notice --

13          THE COURT:  Mr. Lampe, is that right?

14          MR. LAMPE:  Yes, Your Honor, 20 days would be fine.

15          THE COURT:  Do you wish to be heard about the other

16  issues the Court said would be okay to amend?

17          MR. LAMPE:  No, Your Honor.

18          THE COURT:  Okay.

19          MR. THOMAS:  Your Honor, we will refile the SCI

20  notice motion immediately upon --

21          THE COURT:  So the amended complaint will be filed

22  on the 29th.  Your discovery plan, the 26(f) plan will be

23  filed on the 29th.  We will have a conference to schedule the

24  discovery, let's pick a date for that so we can schedule that

25  all right now.  Can we do that at 5 o'clock on December 5th?

1            MR. LAMPE:  That day, Your Honor, I am going to be
2    on the west coast.
3            THE COURT:  Okay.  How about the 10th at 5 o'clock?
4            MR. LAMPE:  That works fine for me, Your Honor.
5            THE COURT:  I am sorry, let me check.
6            MR. THOMAS:  Your Honor --
7            THE COURT:  You can't do it at that time?
8            MR. THOMAS:  I have an appearance in federal court
9    that day.
10           THE COURT:  At 5 o'clock?
11           MR. THOMAS:  That morning.  But to get down here
12   might be tough.  I could certainly try.
13           THE COURT:  You are in town here?
14           MR. THOMAS:  No, the one I have the oral argument
15   for is in Rochester.
16           THE COURT:  Let's do another date then.  Just a
17   second.  We can do this by phone call too.  We have seen each
18   other enough now, I don't need to worry about whether the
19   lawyers are talking and we can set up discussions for
20   settlement.
21           MR. THOMAS:  That will be fine then.
22           THE COURT:  We will do telephone for everyone.
23   Also, this is the type of situation where the Court at this
24   stage would say, have the parties talked seriously about
25   mediation or an alternative dispute mechanism?  That's going

1  to be part of our discussions in getting ready for the
2  Rule 26(f).  So really think about how that should come about.
3         New cases that are filed in January will all be
4  subject to mandatory ADR, the Court has approved that.  So we
5  are really intent upon having parties speaking as early as
6  possible to see if there can be an amicable resolution.  So
7  talk seriously about what vehicle would be appropriate in this
8  case.
9         We will do it 5 o'clock on the 10th.  We will do it
10  by conference call, that way we won't be delaying things.
11        And you should start implementing your discovery
12  plan as soon as you have agreed on it.  Don't wait for the
13  Court to order it, you can start your discovery.  You could
14  have had discovery prior to this, but I understand there
15  hasn't been a lot done.
16        So the motion for collective action, the Court is
17  not going to approve, that's moot because the Court did not
18  permit the amendment.
19        MR. THOMAS:  Your Honor, could we get a schedule in
20  place because we will be moving against SCI on the same,
21  largely the same affidavits and same basis for the new
22  lawsuit.  Could -- we can file that motion probably
23  simultaneously with the complaint on the 29th, and their
24  answer and their response to that 20 days later?
25        MR. LAMPE:  I think it is completely inappropriate

1  to talk about the schedule for a motion in a case that hasn't
2  even been filed yet.
3              THE COURT:  Well, what I am going to ask you to do
4  is meet and confer.  You are going to be filing that.  As soon
5  as you file it, you should be talking with the other side
6  about this and you will be filing your motion for expedited
7  hearing on the notice.  And the Court will set a schedule, if
8  that is filed, for them to respond to that and we will have a
9  hearing.  It will probably be sometime in early January will
10 probably be about the best that will happen, just from a sense
11 of timing.
12             MR. THOMAS:  Thank you, Your Honor.
13             THE COURT:  Okay.
14             MR. THOMAS:  Very good.
15             THE COURT:  Anything else to come before the Court?
16             MR. LAMPE:  Not from us, Your Honor.
17             THE COURT:  Thank you.
18             MR. THOMAS:  Thank you.
19         (Record closed).
20
21             C E R T I F I C A T E
22             I, Richard T. Ford, certify that the foregoing
23 is a correct transcript from the record of proceedings in the
24 above-titled matter.
25 S/Richard T. Ford        _____

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY
on behalf of themselves and all employees
similarly situated,

        Plaintiffs,

        v.

ALDERWOODS GROUP, INC. and
SERVICE CORPORATION
INTERNATIONAL,

        Defendants.

Civil Action No. 06-1641

Judge Joy Flowers Conti

## DECLARATION OF JUDITH M. MARSHALL

    I, Judith M. Marshall, do hereby declare and state as follows:

    1.    I am over 21 years of age, have personal knowledge of the facts set forth in this declaration, and could testify to them competently if called to do so.

    2.    I am currently employed by SCI Funeral & Cemetery Purchasing Cooperative, Inc. in the position of Senior Legal Assistant. I have held this position since January, 2003.

    3.    As Senior Legal Assistant, I have served as Corporate Secretary for SCI Funeral & Cemetery Purchasing Cooperative, Inc. As part of my job duties, I am familiar with the corporate structure of Service Corporation International ("Service Corp"), which is the ultimate parent company of my employer. Based upon my own personal knowledge, Service Corp is a holding company that has no employees.

    4.    As a holding company without any employees, Service Corp does not provide direction or issue policies and procedures to its subsidiary companies. It does not have a human resources function. Rather, day-to-day human resources services and support for individual

1

locations are provided by three separate companies – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., and SCI Houston Market Support Center, L.P. Each of these entities has a Management Services Agreement with the locations in their region of the country that states that they will provide all executive, management, administrative, accounting, data processing, and human resources services for the locations. Consistent with the Management Services Agreement, these entities are responsible for fielding questions related to human resources issues for the companies for which they provide services. In turn, each of these companies has entered into a separate contract with SCI Funeral & Cemetery Purchasing Cooperative, Inc. to provide additional human resources services and support for Service Corp's subsidiaries.

5.    Service Corp also does not distribute any employee handbooks or manuals, nor has it sponsored any employee benefit plans within the time frame of this lawsuit, or provide any services to its subsidiaries. Service Corp has no payroll system. Service Corp does not have any management, or control over the labor relations of its subsidiaries. Service Corp is not responsible for, and plays no role in, hiring and terminating any employees.

6.    Service Corp does not provide training to employees of its subsidiaries and affiliated companies. Rather, on-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with the various human resources providers – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., SCI Houston Market Support Center, L.P., and SCI Funeral & Cemetery Purchasing Cooperative, Inc. Service Corp also does not provide Dignity University training programs – Dignity University training is provided by SCI Funeral & Cemetery Purchasing Cooperative, Inc.

2

7.     Service Corp does not issue communications to employees of its subsidiaries and affiliated companies. The weekly newsletter "Frontline," is a publication of SCI Funeral & Cemetery Purchasing Cooperative, Inc. (A copy of "Frontline" is attached hereto as Ex. A.) Likewise, the "Global Village" intranet site also is operated and maintained by SCI Funeral & Cemetery Purchasing Cooperative, Inc. Moreover, while I understand that Plaintiffs claim that Service Corp communicated to employees through e-mails from "President Tom Ryan," Tom Ryan is not an employee of Service Corp, but rather an employee of SCI Executive Services, Inc. Mr. Ryan holds the title of President and Chief Executive Officer of Service Corp

8.     I am aware that four individuals have submitted affirmations in this case asserting that they were non-exempt employees of Service Corp. Consistent with my statements above, none of these individuals were Service Corp employees. Rather, Johnny Coleman was employed by SCI Kansas Funeral Services, Inc.; James Stickle was employed by SCI Arizona Funeral Services, Inc.; James Stark was an employee of SCI Washington Funeral Service, Inc.; and Scott Gullett was an employee of SCI Funeral Services of Florida, Inc. These entities are just four of approximately 180 Service Corp subsidiaries and affiliated companies nationwide that directly own and operate funeral service locations.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

July _5_, 2007

_Judith M. Marshall_
Judith M. Marshall

3

**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE AND HEATHER RADY | Civil Action No. 06-1470 |
| Plaintiffs, | |
| v. | Judge Joy Flowers Conti |
| ALDERWOODS GROUP, INC., BURTON L. HIRSCH FUNERAL HOME, INC., H. P. BRANDT FUNERAL HOME, INC., H. SAMSON, INC., NEILL FUNERAL HOME, INC, & SERVICE CORPORATION INTERNATIONAL | JURY TRIAL DEMANDED |
| Defendants. | |

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

NOW COME, the Plaintiffs, Deborah Prise and Heather Rady, by and through their attorneys, MARGOLIS EDELSTEIN, CHARLES H. SAUL, ESQUIRE and LIBERTY J. WEYANDT, ESQUIRE, and file the following Motion for Leave to File Second Amended Complaint and aver as follows:

1.      This civil action was originally filed by Plaintiffs Prise and Rady on November 6, 2006, which sought relief against Defendants Alderwoods Group, Inc., Burton L. Hirsch Funeral Home, Inc., H. P. Brandt Funeral Home, Inc., H. Samson, Inc., Neill Funeral Home, Inc., under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e), *et. seq* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206 ("EPA").

2.      Plaintiffs filed an Amended Complaint on February 23, 2007, in which Plaintiffs added Service Corporation Inc., as a Defendant in the case. Upon information and belief, Plaintiffs

1

averred that Alderwoods and SCI merged on or about November 28, 2006, via an "Agreement and Plan of Merger," dated April 2, 2006 (see Exhibit 1), which occurred after the filing of Plaintiffs' original Complaint.

3.     It was Plaintiffs' intention to include SCI as a Defendant under a theory of successor liability. However, Defendants interpreted Plaintiffs' Amended Complaint differently, and believed that Plaintiffs' claimed that SCI was the actual employer of Plaintiffs during the time period of the alleged incidents.

4.     Defendants' interpretations of what Plaintiffs' Complaint alleges are hypo-technical and exaggerated, in light of this Court's liberal notice-pleading requirements. It has been confirmed to Defendants that Plaintiffs do not claim that SCI was their employer during the time period in which the incidents alleged in the Complaint occurred, but that SCI is alleged to be liable under a successor liability theory.

5.     Plaintiffs' counsel offered to amend the Complaint to clarify Plaintiffs' position with respect to Defendant SCI in order to resolve this conflict. However, Defendants' counsel refused to consent to Plaintiffs' filing of a Second Amended Complaint, (to resolve the problems which Defendants complained of), but instead demanded the Complaint be withdrawn, or Defendants would request Rule 11 sanctions[1].

6.     Defendants' counsel then claimed that Alderwods and SCI did not merge. Defendants asserted that Alderwoods and SCI are two separate and distinct corporations, and, therefore, Defendants claim that SCI is not a proper party in this action.

---

[1] Plaintiffs believe that Defendants wanted Plaintiffs to withdraw their Complaint, such that when a new Complaint was filed, Defendants could then assert that the statute of limitations had expired.

2

7.    The parties appeared before the Court on May 23, 2007, for a status conference, during which the above issues were discussed. The Court permitted Plaintiffs the opportunity to file a Motion requesting leave to file a Second Amended Complaint and also permitted Defendants to file a response thereto[2].

8.    Upon information and belief, Plaintiffs aver that Alderwoods and SCI effectively merged on or about November 28, 2006, through the use of a subsidiary corporation, Coronado Acquisition Corporation ("Coronado"), created solely for the purpose of SCI's acquisition of Alderwoods. The merge of SCI's interests with that of Alderwoods has been scrutinized at length by the Federal Trade Commission. The two entities signed what has been publically referred to as "Agreement and Plan of Merger." (Exhibit 1). Public records also state that SCI acquired Alderwoods. The merger of the two entities is somewhat complicated, and without the benefit of discovery, Plaintiffs are unable to ascertain for certain the true relationship between Alderwoods, SCI and SCI's wholly owned subsidiary, Coronado.

9.    SCI has already legitimately been named as a party in Plaintiffs' First Amended Complaint. In all fairness, Plaintiffs' request to amend the Complaint again, with respect to Defendant SCI, stems from Defendants' complaints about the amendment. In all fairness, the relationship between the two entities is complicated and confusing with numerous filings with the SEC. Defendants have stated that another entity, namely Coronado Acquisition Group ("Coronado"), was created to effectuate the acquisition of Alderwoods. Coronado is believed to be a wholly owned subsidiary of SCI. According to documents filed by SCI with the SEC, Alderwoods

_____

[2] Should the Court grant Plaintiffs' Motion, new deadlines for Responsive pleadings and responses thereto will need to be set.

3

and Coronado merged, and became a wholly owned subsidiary of SCI, which is now called Alderwoods (see Exhibit 1). Plaintiffs contend that this makes SCI a successor in interest to Alderwoods.

10.    Upon information and belief SCI has acquired all the stock and assets of Alderwoods. It is also Plaintiffs understanding that SCI agreed to assume all of Alderwood's liabilities, based upon a review of limited documents which have been available for review.    Since the merger between Alderwoods and SCI took place after the filing of this suit, and after the EEOC investigation, SCI either knew, or should have known of the action and, therefore, should have been aware that they would also be taking on responsibility for the liabilities of Alderwoods that have been alleged in the Complaint.

11.    A true and correct copy of Plaintiff's proposed Second Amended Complaint is attached hereto and marked as Exhibit 2.

12.    Additionally, Plaintiffs also wish to amend their Complaint to include allegations under the Pennsylvania Human Relations Act.  Subsequent to the filing of the First Amended Complaint, Plaintiffs received Notices of Rights from the Pennsylvania Human Relations Commission, dated April 17, 2007. Therefore, Plaintiffs wish to amend their Complaint to include causes of action which arise under the Pennsylvania Human Relations Act ("PHRA"), of which this Court has supplement jurisdiction. See attachments to Exhibit 2.

13.    No party is prejudiced by the filing of the Second Amended Complaint.  Defendant SCI has already been named as a party to the action via Plaintiffs' First Amended Complaint. The Amendment with respect to SCI is to clarify Plaintiffs' position that SCI is liable under a successor

4

liability theory, which is being done in part to rectify Defendants' complaints with respect to the pleading. The amendment with respect to the PHRA claims is the type of amendment which is routinely granted by the Court, in light of the fact that Plaintiffs could not have included such causes of action in their Complaint until they were given the right to do so by the PHRC. Furthermore, the PHRA claim, mirrors the claims already pled under Title VII.

WHEREFORE, Plaintiffs, respectfully requests that this Court grant the instant Motion for Leave to Amend Complaint.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date: 6/8/07

/s/ Liberty J. Weyandt

CHARLES H. SAUL, ESQUIRE
PA I.D. #19938

LIBERTY J. WEYANDT, ESQUIRE
P.A. I.D. #87654

525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256

Attorneys for Plaintiff

5

## Candace Nelson

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **Sent:** | Tuesday, November 06, 2007 2:58 PM |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 3:07-cv-05140-MJJ Prise v. Alderwoods Group, Inc. et al Request for Judicial Notice |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
***If there is no second hyperlink, there is no electronic document available .***
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from by Daniels, David entered on 11/6/2007 2:57 PM PST and filed on 11/6/2007

| | |
|---|---|
| **Case Name:** | Prise v. Alderwoods Group, Inc. et al |
| **Case Number:** | 3:07-cv-5140 |
| **Filer:** | Service Corporation International |
| | Alderwood Group, Inc. |

**Document Number:** 20

**Docket Text:**
Request for Judicial Notice *in Support of Motion to Dismiss First Amended Complaint* filed byAlderwood Group, Inc., Service Corporation International. (Attachments: # (1) Exhibit Part 2 to Request for Judicial Notice in Support of Motion to Dismiss First Amended Complaint)(Daniels, David) (Filed on 11/6/2007)

**3:07-cv-5140 Notice has been electronically mailed to:**

**EXHIBIT F**

1  Sanford Jay Rosen, State Bar No. 62566
   Maria V. Morris, State Bar No. 223903
2  Lori E. Rifkin, State Bar No. 244081
   ROSEN, BIEN & GALVAN, LLP
3  315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com

6  [Additional Counsel Listed on Following Page]

7

8  Attorneys for Plaintiffs

ENDORSED
FILED
ALAMEDA COUNTY

SEP 0 4 2007

CLERK OF THE SUPERIOR COURT
By KMEL DHILLON Deputy

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF ALAMEDA

11  WILLIAM HELM, DEBORAH PRISE,          ) Case No. RG07334642
    HEATHER P. RADY, [see Complaint and   )
12  Appendices for a listing of plaintiffs] et al., on ) **CLASS ACTION**
    behalf of themselves and all other employees )
13  and former employees similarly situated, ) **AMENDED COMPLAINT**
                                           )
14                      Plaintiffs,        ) **(1) VIOLATION OF CALIFORNIA
                                           )     LABOR LAWS**
15  v.                                     ) **(2) FAILURE TO MAINTAIN PROPER
                                           )     RECORDS**
16  SERVICE CORPORATION                    ) **(3) STATE WAGE AND HOUR LAWS**
    INTERNATIONAL and                         **(4) UNJUST ENRICHMENT/
17  ALDERWOODS GROUP, INC.,                     RESTITUTION**
                                              **(5) CONVERSION**
18                      Defendants.           **(6) FRAUD AND DECEIT**
                                              **(7) MISREPRESENTATION**
19                                            **(8) BREACH OF CONTRACT**
                                              **(9) BREACH OF IMPLIED COVENANT
20                                                OF GOOD FAITH AND FAIR
                                                  DEALING**
21                                            **(10)  QUANTUM MERUIT**
                                              **(11)  UNLAWFUL BUSINESS
22                                                   PRACTICES**

23  ──────────────────────────────        **DEMAND FOR JURY TRIAL**

24

25

26

27

28

1

Additional Attorneys for Plaintiffs, who will
submit applications for admission *pro hac vice*:

2

J. Nelson Thomas, NY Attorney No. 2579159

3

Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765

4

Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870

5

DOLIN, THOMAS & SOLOMON LLP
693 East Avenue

6

Rochester, NY 14607
Telephone: (585) 272-0540

7

Facsimile: (585) 272-0574
nthomas@theemploymentattorneys.com

8

Charles H. Saul, PA State Bar No.19938

9

Liberty J. Weyandt, PA State Bar No. 87654
MARGOLIS EDELSTEIN

10

525 William Penn Place
Suite 3300

11

Pittsburgh, PA 15219
Telephone: (412) 281-4256

12

Facsimile: (412) 642-2380
csaul@margolisedelstein.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, and file the following Class Action Complaint:

## I. INTRODUCTION

1. This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, under the laws of California and other laws of the various States in which defendants do business.

2. Plaintiffs' state law claims asserted herein were previously dismissed from the United States District Court for the Western District of Pennsylvania on or about June 8, 2007 and have been tolled since that time pursuant to 28 U.S.C. § 1367, as well as the tolling rules applied to class actions.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over defendants because defendants conduct business in this State.

4. Venue as to each defendant is proper in this judicial district, pursuant to Code of Civil Procedure § 395.5 and Corporations Code § 2105.

5. Upon information and belief, defendant Service Corporation International, Inc. is a foreign corporation which has not obtained a certificate of qualification to do business in California.

6. Upon information and belief, defendant Alderwoods Group, Inc. is a foreign corporation which has obtained a certificate of qualification to do business in California, but which has not designated a principal place of business within the State of California.

7. Venue is also proper in this judicial district because defendants maintain and operate one or more business locations, transact business, and/or have agents in Alameda County, as well as in other counties in the State of California, and are otherwise within this Court's jurisdiction for purposes of service of process. Obligations and/or liabilities of the

1   defendants arose in this County because defendants have contracted to employ or have

2   employed plaintiffs in Alameda County, as well as in other counties in the State of California.

3   Some of the claims in this matter arose from contracts for employment which were to be

4   performed, at least in part, in Alameda County, as well as in other counties in the State of

5   California. Some of the unlawful acts alleged herein occurred in Alameda County, as well as

6   in other counties in the State of California, and have a direct effect on plaintiffs within

7   Alameda County and within the State of California.

8   **III.   PARTIES**

9       **A. Plaintiffs**

10          8.      The class members ("Class Members") are those employees and former

11   employees of defendants who were suffered or permitted to work by defendants and not paid

12   their regular or statutorily required rate of pay for all hours worked. Class Members expressly

13   include, among others, those identified in the caption, together with Appendix A and Appendix

14   B to this Complaint. As more fully set forth in paragraphs 3 and 7, which Class Members

15   incorporate by reference as if fully set forth herein, Class Members' claims are connected to

16   Alameda County as some of those claims arose from contracts to be performed in Alameda

17   County, some of the unlawful acts alleged herein occurred in Alameda County, and some of

18   those acts have a direct effect on Class Members within Alameda County.

19      **B. Defendants**

20          9.      Defendant Service Corporation International ("SCI") is a corporation with its

21   headquarters being at 1929 Allen Parkway, Houston, Texas 77019, which does business in the

22   State of California, and in the County of Alameda.

23          10.     Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its

24   headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202, which does

25   business in the State of California, and in the County of Alameda.

26          11.     Defendants maintain and operate one or more business locations, transact

27   business and/or have agents in Alameda County. Defendants' obligations and/or liabilities

28   arose in this County, defendants employ or have employed Class Members in Alameda

1  County, as well as in other counties in California.  Defendants employed Class Members

2  pursuant to contracts for employment which were to be performed, at least in part, in Alameda

3  County, as well as in other counties in California.  Some the unlawful acts alleged herein

4  occurred in Alameda County, as well as in other counties in the State of California, and have a

5  direct effect on Class Members within Alameda County and within the State of California.

6      12.    At all relevant times, defendants have suffered or permitted Class Members to

7  perform work for them.

8      ***SCI Is Liable to All Class Members***

9      13.    At all relevant times, defendant SCI has suffered or permitted Class Members to

10 perform work for it at its funeral service locations.

11     14.    At all relevant times, defendant SCI is liable for the employment of Class

12 Members in this action.  This includes liability for Class Members employed by SCI's

13 affiliates, including without limitation Alderwoods (the "SCI Affiliates").

14     15.    Class Members are or have been employed by SCI and its funeral service

15 locations and/or have been jointly employed by SCI and Alderwoods and their funeral service

16 locations.

17     16.    SCI operates locations, either directly or through the SCI Affiliates, and therefore

18 is the employer of Class Members who are or were employed at all locations.

19     17.    At all relevant times, SCI and the SCI Affiliates have suffered or permitted Class

20 Members to perform work for them.

21     18.    Business operations of the funeral service locations are centrally controlled by

22 SCI.

23     19.    At all relevant times, SCI maintains centralized control of employment relations.

24     20.    At all relevant times, the human resource functions of the funeral service

25 locations report directly or indirectly to SCI.

26     21.    In addition to centralized control of employment relations, SCI exercises

27 common management of its various funeral service locations.

28

1    22.    Further, SCI owns all of its funeral service locations and exercises financial

2    control over the business operations of those locations.

3    23.    Class Members are informed and believe, and therefore allege, that SCI and the

4    SCI Affiliates operate interrelated business operations.

5    24.    Class Members are informed and believe, and therefore allege, that SCI and the

6    SCI Affiliates exercise central control of labor relations.

7    25.    Class Members are informed and believe, and therefore allege, that SCI and the

8    SCI Affiliates operate under common management.

9    26.    Class Members are informed and believe, and therefore allege, SCI and the SCI

10   Affiliates have common ownership and financial control.

11   27.    In light of the economic realities of the enterprise operated by SCI and the SCI

12   Affiliates, SCI is a joint employer of all Class Members for purposes of state laws.

13   28.    Collectively, SCI and the SCI Affiliates, and all of their funeral service locations,

14   comprise a single, integrated enterprise, as they perform related activities through common

15   control for a common business purpose.

16   ***SCI and Alderwoods Are Liable to Class Members Employed by Alderwoods***

17   29.    At all relevant times, defendants SCI and Alderwoods have suffered or permitted

18   Class Members to perform work for them. This includes Class Members employed by

19   Alderwoods's affiliates (the "Alderwoods Affiliates").

20   30.    Class Members are or have been employed by SCI and Alderwoods and

21   Alderwoods's funeral service locations.

22   31.    SCI and Alderwoods operate locations, either directly or through the Alderwoods

23   Affiliates, and therefore are the employer of Class Members who are or were employed at all

24   Alderwoods locations.

25   32.    At all relevant times, the funeral service locations of Alderwoods and the

26   Alderwoods Affiliates have employed Class Members.

27

28

33.    Class Members who are or have been employed by Alderwoods and/or its funeral service locations have been jointly employed by SCI and Alderwoods and their funeral service locations.

34.    Class Members are informed and believe, and therefore allege, that Alderwoods, through its shareholders, has adopted the merger agreement by and between Alderwoods and SCI (collectively, "Merged Entities").

35.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, continue business operations in substantially the same form as before the merger.

36.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, continue to use substantially the same workforce as before the merger, with substantially the same supervisors and same working conditions.

37.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, provide essentially the same services as before the merger and use the same facilities, equipment and method of providing services.

38.    Class Members are informed and believe, and therefore allege, that thus, SCI is a successor-in-interest to defendant Alderwoods's liability.

39.    Class Members are informed and believe, and therefore allege, that the Merged Entities, under the merger agreement, operate interrelated business operations.

40.    Class Members are informed and believe, and therefore allege, that the Merged Entities exercise central control of labor relations.

41.    Class Members are informed and believe, and therefore allege, that the Merged Entities operate under common management.

42.    Class Members are informed and believe, and therefore allege, that the Merged Entities have common ownership and financial control.

43.    In light of the economic realities of the Merged Entities' enterprise, defendants are joint employers of Class Members for purposes of state laws.

44.   Collectively, defendants named herein and all of their funeral service locations comprise a single, integrated enterprise, as they perform related activities through common control for a common business purpose.

45.   Business operations of the Alderwoods funeral service locations are centrally controlled by SCI and Alderwoods.

46.   At all relevant times, SCI and Alderwoods maintained centralized control of employment relations at the Alderwoods funeral service locations.

47.   At all relevant times, the human resource functions of the Alderwoods funeral service locations report directly or indirectly to SCI and Alderwoods.

48.   In addition to centralized control of employment relations, Alderwoods and SCI exercise common management of the Alderwoods funeral service locations.

49.   Further, Alderwoods and SCI own all of the Alderwoods funeral service locations and exercise financial control over the business operations of those locations.

IV.   **CLASS ACTION ALLEGATIONS**

50.   The claims arising under the state wage laws set forth below are properly maintainable as a class action under Cal. Civ. Proc. § 382.

51.   Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

52.   The class size is believed to be over 10,000 employees, a significant percentage of whom are within California.

53.   Common questions of law and fact predominate in this action because the claims of all Class Members are based on whether defendants' practice of not paying nonexempt employees their regular or statutorily required rate of pay for all hours worked violates California state law and the state laws of the various other states in which defendants do business.

54.   Common questions of law and fact include, but are not limited to, the following:

     a.   Whether Class Members are entitled to payment for all of the time they

worked for defendants.

b. Whether Class Members are entitled to payment at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

c. Whether defendants' employment policies violated defendants' legal obligation to pay Class Members for all of the time they worked for defendants.

d. Whether defendants' employment policies violated defendants' legal obligation to pay Class Members at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

e. Whether defendants failed to maintain proper and accurate records regarding Class Members' employment.

55.    The named plaintiffs' claims are typical of, and concurrent to, the claims of Class Members, because they are similarly situated. The named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for overtime work.

56.    The named plaintiffs will fairly and adequately represent and protect the interests of Class Members. The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members' claims. The class counsel are experienced in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

57.    There are no known conflicts of interest between and among Class Members.

58.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each Class Member has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering, and/or failing to pay employees their regular or statutorily required rate of pay for all hours

worked.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

## V.    FACTUAL BACKGROUND

59.    Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

60.    Defendants' policy and/or practice was to not compensate Class Members their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

61.    Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

62.    Defendants' practice is to be deliberately indifferent to violations of the statutory overtime requirements.

63.    The failure to pay overtime is willful.

64.    Examples of defendants' policies and practices to deprive Class Members of their earned wages and wage premiums are set forth below:

  a. Defendants implemented a "Community Work Policy."  Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants.  Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

  b. Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

  c. Defendants' policy required that certain hourly employees train for and obtain certain licenses.  Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

  d. Defendants' policy required that certain hourly employees take other types of

training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

e.  Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were beyond the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not to be paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f.  Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants no longer paid for lunch breaks. Defendants did, however, suffer and permit its employees to perform work during such meal breaks, but pursuant to defendant's "Meal Break Deduction Policy" time spent on meal "breaks" was still to be deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g.  Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h.  Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted Class Members to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i.  Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of the Class Members' overtime.

65.    Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

66.    More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)

67.    Class Members hereby incorporate by reference paragraphs 1 through 66 of this Complaint as if fully set forth herein.

### Failure to Pay Overtime Compensation

68.    Defendants willfully violated their obligations under California law, including those under California Labor Code §1194, *et seq.*, by failing to pay Class Members the legal overtime compensation applicable to Class Members.

69.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

### Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation

70.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, *et seq.*, by willfully failing to pay Class Members who have been discharged or laid off all wages earned and unpaid at the time of discharge or layoff.

71.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours thereafter.

72.    Defendants did not pay Class Members who were discharged, were laid off or resigned their regular or statutorily required rate of pay for all hours worked, as required by California law. Defendants' failure to pay those amounts is ongoing.

73.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

74.    Defendants are liable to Class Members for civil penalties, pursuant to California Labor Code § 203, in the amounts set forth therein.

**Failure to Provide Required Meal and Rest Periods**

75.    Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226.7 and 512, et seq., by willfully failing to provide Class Members with legally required meal and rest periods.

76.    Defendants repeatedly and regularly interrupted Class Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.

77.    Defendants failed to compensate Class Members for missed meal and rest breaks.

78.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Furnish Timely and Accurate Wage Statements**

79.    Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226(a) and 226.3, et seq., by willfully failing to provide Class Members with timely and accurate wage statements as required by California law.

80.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

81.    Wherefore, Class Members request relief as described below.

### SECOND CAUSE OF ACTION

**FAILURE TO MAINTAIN PROPER RECORDS (by all plaintiffs against all defendants)**

82.    Class Members hereby incorporate by reference paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.    Defendants willfully violated their obligations under California law, including those under  California Labor Code § 1174, et seq., by failing to make, keep, and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day,

1    the total hours worked each work week, and/or the total overtime compensation for each work
2    week.

3        84.   Defendants are liable to Class Members for civil penalties, pursuant to California
4    Labor Code §§ 1174.5 and 2698, *et seq.*, in the amounts set forth therein.

5        85.   Wherefore, Class Members request relief as described below.

6    <u>**THIRD CAUSE OF ACTION**</u>

7    **STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)**

8        86.   Class Members hereby incorporate by reference paragraphs 1 through 85 of this
9    Complaint as if fully set forth herein.

10       87.   Defendants willfully violated their obligations to properly compensate Class
11   Members under the wage laws of the states in which defendants do business including:

12       a.  Alaska Stat. § 23.10.050, *et seq.*;

13       b.  Arizona Rev. Stat. § 23-201, *et seq.*;

14       c.  Arkansas Code § 11-4-201, *et seq.*;

15       d.  Colorado Rev. Stat. § 8-6-101, *et seq.*; Colorado Code Regs. § 1103-1, *et*
16          *seq.*;

17       e.  Connecticut Gen. Stat. § 31-58, *et seq.*;

18       f.  820 Illinois Comp. Stat. 105/1, *et seq.*; 820 Illinois Comp. Stat. 105/12(a);
19         820 Illinois Comp. Stat. 115/1, *et seq.*;

20       g.  Indiana Code § 22-2-2-1, *et seq.*; Indiana Code § 22-2-2-4, *et seq.*; Indiana
21         Code § 22-2-5-1, *et seq.*; Indiana Code § 22-2-9-2, *et seq.*;

22       h.  Kansas Stat. § 44-1201, *et seq.*;

23       i.  Louisiana Rev. Stat. § 23:631, *et seq.*;

24       j.  Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

25       k.  Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*; Massachusetts Gen. Laws
26         Ch. 149, § 148, *et seq.*; Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

27       l.  Michigan Comp. Laws § 408.381, *et seq.*;

28       m.  Minnesota Stat. § 177.21, *et seq.*; Minnesota Stat. § 181.13, *et seq.*;

n.  Montana Code § 39-3-401, *et seq.*;

o.  Nevada Rev. Stat. § 608.005, *et seq.*;

p.  New Jersey Stat. § 34.11-56a, *et seq.*;

q.  New Mexico Stat. § 50-4-1, *et seq.*;

r.  New York Lab. Law § 160, *et seq.*;

s.  North Carolina Gen. Stat. § 95-25.1, *et seq.*;

t.  Ohio Rev. Code § 4111.01, *et seq.*;

u.  Oregon Rev. Stat. § 653.005, *et seq.*;

v.  43 Pennsylvania Stat. § 333.101, *et seq.*;  43 Pennsylvania Stat. § 206.3, *et seq.*;

w.  29 Laws of Puerto Rico §250, *et seq.*;

x.  Rhode Island Gen. Laws § 28-12-1, *et seq.*;

y.  South Carolina Code § 41-10-10, *et seq.*;

z.  Washington Rev. Code § 49.46.005, *et seq.*;

aa. West Virginia Code § 21-5C-1, *et seq.*;

bb. Wisconsin Stat. § 104.001, *et seq.*

88.    As a direct and proximate cause of defendants' violations of these statutes, Class Members have suffered damages.

89.    Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION

**UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)**

90.    Class Members hereby incorporate by reference paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.    Defendants have received financial gain at the expense of Class Members.

92.    Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

93.    Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members.  As a result of this conduct,  the common laws and state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

94.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

95.    Wherefore, Class Members request relief as described below.

### FIFTH CAUSE OF ACTION
### CONVERSION (by all plaintiffs against all defendants)

96.    Class Members hereby incorporate by reference paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.    At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due.  The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Class Members.

98.    In refusing to pay wages and overtime to Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Class Members for defendants' own use, purpose and benefit.  At the time the conversion took place, Class Members were entitled to immediate possession of the amount of wages and

1  overtime earned. As a result, Class Members have been denied the use and enjoyment of their

2  property and have been otherwise damaged in an amount to be proven at trial. This conversion

3  was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the

4  rights of the Class Members. This conversion was concealed from Class Members.

5      99.     Defendants willfully violated their obligations under the common laws and the

6  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,

7  Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts,

8  Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico,

9  New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode

10 Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and

11 are liable to Class Members.

12     100.    As a result of defendants' actions, Class Members were damaged and are entitled

13 to all funds converted by defendants with interest thereon, all profits resulting from such

14 conversion, and punitive or exemplary damages.

15     101.    Wherefore, Class Members request relief as described below.

16                            **SIXTH CAUSE OF ACTION**

17              **FRAUD AND DECEIT (by all plaintiffs against all defendants)**

18     102.    Class Members hereby incorporate by reference paragraphs 1 through 101 of this

19 Complaint as if fully set forth herein.

20     103.    Defendants, through their corporate publications and through statements of their

21 agents, represented that wages would be paid legally and in accordance with defendants'

22 obligations pursuant to applicable federal and state laws. Some examples include defendants'

23 statements in their policy manuals that "[a]ll non-exempt employees will be compensated for

24 all hours worked" and that defendants "will comply with all applicable federal, state and local

25 laws. If any of the provisions of this policy conflict with any federal, state or local laws or

26 regulations, then the laws or regulations will supersede the Company's policy in those specific

27 locations."

28

1       104.   Defendants, however, at all times intended to violate applicable federal and state

2 laws by failing to pay Class Members their regular or statutorily required rate of pay for all

3 hours worked.

4       105.   These misrepresentations were material to the terms of Class Members'

5 employment contracts, and Class Members relied on the misrepresentations in agreeing to

6 accept and continue employment with defendants. This reliance was reasonable, as Class

7 Members had every right to believe that defendants would abide by their obligations pursuant

8 to applicable federal and state law.

9       106.   Defendants willfully violated their obligations by committing fraud against Class

10 Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

11 California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas,

12 Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

13 Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,

14 Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia,

15 Washington, and West Virginia and are liable to Class Members.

16       107.   As a direct and proximate cause of the fraud committed by defendants, Class

17 Members did not receive the statutorily mandated wages for overtime and suffered damages.

18       108.   Defendants acted maliciously when they committed the wrongful acts which

19 constitute this cause of action such that it warrants the imposition of punitive and exemplary

20 damages.

21       109.   Wherefore, Class Members request relief as described below.

22 **SEVENTH CAUSE OF ACTION**

23 **MISREPRESENTATION (by all plaintiffs against all defendants)**

24       110.   Class Members hereby incorporate by reference paragraphs 1 through 109 of this

25 Complaint as if fully set forth herein.

26       111.   In particular, Class Members incorporate and refer to paragraphs 103 through

27 105 above, regarding the material misrepresentations made by defendants.

28

112.   When defendants hired Class Members, they represented to Class Members that they would be fully compensated for all services performed, as more fully set forth above.

113.   There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees their regular or statutorily required rate of pay for all hours worked.

114.   Class Members relied upon defendants' representations by performing work and services for defendants. This reliance was reasonable, as Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable federal and state law.

115.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia by misrepresenting to Class Members that they would be fully compensated for all services performed and are liable to Class Members.

116.   As a result of their reliance upon defendants' misrepresentations, Class Members suffered damages because they were not appropriately compensated with the regular or statutorily required rate of pay for all hours worked.

117.   As a direct and proximate result of defendants' negligent misrepresentation, Class Members suffered damages.

118.   Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION

### BREACH OF CONTRACT (by all plaintiffs against all defendants)

119.   Class Members hereby incorporate by reference paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120.   By entering into an employment relationship, defendants and each Class Member entered into a contract for employment.

121.   Each such contract included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable state and federal law.

122.   Defendants willfully breached the implied contract term by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

123.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

124.   As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

125.   Wherefore, Class Members request relief as described below.

## NINTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(by all plaintiffs against all defendants)**

126.   Class Members hereby incorporate by reference paragraphs 1 through 125 of this Complaint as if fully set forth herein.

127.   The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state or federal law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract.

128.   Defendants breached the implied covenant of good faith and fair dealing by failing to pay Class Members the wages and overtime that was due to Class Members.

129.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

130.   As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Class Members have suffered damages.

131.   Wherefore, Class Members request relief as described below.

## TENTH CAUSE OF ACTION

### QUANTUM MERUIT (by all plaintiffs against all defendants)

132.   Class Members hereby incorporate by reference paragraphs 1 through 131 of this Complaint as if fully set forth herein.

133.   Defendants willfully violated their obligations by failing to pay Class Members for the reasonable value of the services performed by Class Members for defendants under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members under quantum meruit.

134.   As a direct and proximate cause of defendants' failure to pay Class Members for the reasonable value of services performed by Class Members for defendants, Class Members suffered damages.

135.   Wherefore, Class Members request relief as described below.

## ELEVENTH CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)

136.    Class Members hereby incorporate by reference paragraphs 1 through 135 of this Complaint as if fully set forth herein.

137.    Defendants' failure to pay Class Members for all time worked constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code § 17200, *et seq.*

138.    The conduct of defendants in failing to pay Class Members for all time worked constitutes and was intended to constitute unfair competition and unlawful unfair and fraudulent business acts and practices within the meaning of California Business and Professional Code § 17200, *et seq.*

139.    As a result of defendants' violations of California Business and Professional Code § 17200, *et seq.*, defendants have unjustly enriched themselves at the expense of Class Members.

140.    To prevent their unjust enrichment, defendants should be required, pursuant to California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains for purpose of making full restitution to all injured Class Members.  Defendants should also be permanently enjoined from continuing their violations of California Business and Professional Code § 17200, *et seq.*

141.    Defendants willfully violated their obligations under the California Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

142.    Wherefore, Class Members request relief as described below.

## PRAYER FOR RELIEF

WHEREFORE, Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

1   (b)   an award of the value of Class Members' unpaid wages;

2   (c)   liquidated, compensatory, consequential and punitive damages;

3   (d)   an award of reasonable attorneys' fees, expenses, expert fees and costs incurred
4         in vindicating Class Members' rights;

5   (e)   an award of pre- and post-judgment interest; and

6   (f)   such other and further legal or equitable relief as this Court deems to be just and
7         appropriate.

8                                  **JURY DEMAND**

9   Class Members demand a jury to hear and decide all issues of fact.

10

11                                            Respectfully Submitted,

12                                            ROSEN, BIEN & GALVAN, LLP

13  Date: September 4, 2007                   By: _Maria Morris_

14                                            Sanford Jay Rosen, State Bar No. 62566
15                                            Maria V. Morris, State Bar No. 223903
                                              Lori E. Rifkin, State Bar No. 244081
16                                            315 Montgomery Street, Tenth Floor
                                              San Francisco, CA 94104
17                                            Telephone: (415) 433-6830

18                                            DOLIN, THOMAS & SOLOMON LLP
                                              J. Nelson Thomas, NY Attorney No. 2579159
19                                            Patrick J. Solomon, NY Attorney No. 2716660
                                              Michael J. Lingle, NY Attorney No. 3925765
20                                            Justin Cordello, NY Attorney No. 4131447
                                              Annette Gifford, NY Attorney No. 4105870
21                                            693 East Avenue
                                              Rochester, NY 14607
22                                            Telephone: (585) 272-0540

23                                            MARGOLIS EDELSTEIN
                                              Charles H. Saul, PA State Bar No.19938
24                                            Liberty J. Weyandt, PA State Bar No. 87654
                                              525 William Penn Place, Suite 3300
25                                            Pittsburgh, PA 15219
                                              Telephone: (412) 281-4256
26                                            Attorneys for Plaintiffs

27

28

1

## APPENDIX A

2

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

3

ROBERT CHERNETSKY, JEFFREY AYDELOTTE, ROBERT JONES, JAMES STICKLE,
4   HENRY KLEIN, STACEY WEINSTEIN, JEFFREY SACHS, JOHNNY COLEMAN, JOHN
KEATH, CHAD WICKHAM, CLAYTON CALLOWAY, EMILY MADDEN, LORI
5   PHOENIX, JAMES CROUCH, JOHNNY JOHNSON, RICKIE HAMILTON, SANDY
THOMAS, ROGER HUGO, ROBERT SHAW, BETTY KNIGHT, STEPHANIE RIGGS,
6   CLAUDINE YOUNG, LARRY HAMMOCK, STEVEN TILLER, STROTHER FULCHER,
MARY HOLDEN, JAMES STARK

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX B

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

Consent forms are attached in this Appendix for the following individuals:

ROBERT A. ACEVEZ, FREDERICK R. ALDRICH, MERLIN ALEXANDER, KENNETH R. ALLEN, ELIAS ALVIDREZ, STEVEN A. ARNOLD, JAMES A. BAASCH, ROBERT BOWEN, MICHELE BREINDEL, MARC BROOKS, LAWRENCE F. CAMP, WILLIAM CASTELLARIN, DEBBIE K. CHATMAN (BRANDT), COREY W. CLARY, KATHRYN COSPER, DIANE CRAIG, JEFFREY A. DIGGS, KATHRYN DILDY, LOUIE DOMINGUEZ, MARC A. DUMONT, JAMES C. DURDEN, SCOTT J. ECKERT, STEPHEN ESCOBAR, LARRY FAIR, JOHN R. FERGUSON, DARIN D. FORAN, ROBERT IDEMOTO, KENNETH GIACONE, ELIZABETH M. GRANT, JUDONA M. GREEN, WILLIAM O. GWYN, LINDA T. HAGERTY, DOUGLAS HAZEN, CARRIE HENDERSON, JAMES HENDERSON, BERNARD M. HIRREL, JAMES HOLDER, RHAELYN HOLLAND, WILLIAM HUDSON III, JULIUS E. JOHNSON, WILTON KING, EDDIE KIRKPATRICK, W. SCOTT KOLWYCK, RONALD LANGLEY, FRANK LEWIS, CHARLES LOWTHER, SARAH MALMI, STEVEN L. MARTZ, EUGENIA C. MATTHEWS, NICK MCFERRAN, PAUL D. MEIZLER, HAROLD E. METCALF, MICHAEL NAPERALSKY, MARVIN L. NEVEU, SEAN J. OBERSKI, RICHARD E. PETERSEN, STEVEN PIERCE, J.D. POOL, MELISSA RAY, JACK L. REDDICK, DENNIS ROBERTSON, RICHARD E. SALHUS, JOHN SCHABLOSKI, DAVID SCHNELL, WARREN L. SEIZ, WILLIAM H. SHUFF, MARK SILEO, HOLLY SLAMOWITZ, MYRA S. SLOAN, MONECIA SMITH, JODY P. SPIESE, MIKAL STAMPKE, FRANCIS STEINHOFF, GREGORY STUMP, TORREY SUMMERS, WILLIAM T. SUTTER III, JOSEPH G. TAFOYA JR., STEPHEN TAKESIAN, JERRY TAWNEY, TORI TAYLOR, PHILIP R. TILLMAN, FLORINDA D. TREJO, GAYLE WALKER, DAVID W. WALLACE, ERIC WALLAND, JAMES WHALEY, GEORGE T. WHITE, BARRY WIEN, DAVID WYATT, JOHN S. ZALESKI

**EXHIBIT G**

1  David M. Daniels (SBN 170315)
2  Steven H. Gurnee (SBN 66056)
   Nicholas P. Forestiere (SBN 125118)
3  Gurnee & Daniels, LLP
   2240 Douglas Boulevard., Suite 150
4  Roseville, CA 95661-3875
   Telephone: (916) 797-3100
5  Facsimile: (916) 797-3131

6  Amy E. Dias (pro hac vice motion pending)
   aedias@jonesday.com
7  JONES DAY
   500 Grant Street, Suite 3100
8  Pittsburgh, PA 15219-2502
   Telephone: (412) 391-3939
9  Facsimile: (412) 394-7959

10 Matthew W. Lampe (pro hac vice motion pending)
   mwlampe@jonesday.com
11 JONES DAY
   325 John H. McConnell Boulevard, Suite 600
12 P.O. Box 165017
   Columbus, OH 43216-5017
13 Telephone: (614) 469-3939
   Facsimile: (614) 461-4198

14 Attorneys for Defendants
15 Alderwoods Group, Inc. and Service Corporation
   International

16

17            UNITED STATES DISTRICT COURT

18           NORTHERN DISTRICT OF CALIFORNIA

19

20 Deborah Prise, et al., on behalf of          Case No.
   themselves and all other employees
21 similarly situated,

22            Plaintiffs,

23       v.                                       DEFENDANTS' NOTICE OF
                                                  REMOVAL OF CIVIL ACTION
24 Alderwoods Group, Inc., et al.,                FROM STATE COURT
                                                  [28 U.S.C. §§ 1332, 1441 (B) AND
25            Defendants.                          1446]

26

27

28

COI-1377479v2                    1              NOTICE OF REMOVAL

1

2    TO THE CLERK OF THE ABOVE ENTITLED COURT:

3        PLEASE TAKE NOTICE THAT Alderwoods Group, Inc. ("Alderwoods")

4    and Service Corporation International ("SCI") (collectively "Defendants"),

5    Defendants in the above-titled action, hereby remove this matter to the United

6    States District Court for the Northern District of California, pursuant to 28 U.S.C.

7    §§ 1332, 1441 and 1446.  The grounds for removal are as follows:

8                    **Compliance with Statutory Requirements**

9        1.    On or about July 9, 2007, Plaintiffs filed a Class Action Complaint in

10   the Superior Court of the State of California for the County of Alameda, Case No.

11   RG 07334642. ("Complaint")  In their Complaint, Plaintiffs assert claims for

12   violation of the California Labor Code, Failure to Maintain Proper Records

13   (California Labor Code), Breach of Contract (under the laws of 38 states and

14   territories), violation of State Wage and Hour Laws (under the laws of 38 states and

15   territories), Unjust Enrichment (under the laws of 38 states and territories), Fraud

16   and Deceit (under the laws of 38 states and territories), Quantum Meruit (under the

17   laws of 38 states and territories), Negligent Misrepresentation (under the laws of 38

18   states and territories), Negligence (under the laws of 38 states and territories), and

19   Unfair Competition (California Business and Professional Code § 17200 et seq.).

20   Attached as Exhibit A is a true and correct copy of the Complaint.

21       2.    Plaintiffs served Defendants with the Summons ("Summons") and a

22   copy of the amended Class Action Complaint on or after September 5, 2007.

23   Defendants' removal of this action is timely because Defendants are removing this

24   matter within 30 days of being formally served with a Summons and a copy of the

25   Amended Complaint.  *See* 28 U.S.C. § 1446(b);  *Murphy Bros., Inc. v. Michetti*

26   *Pipe Stringing, Inc.*, 526 U.S. 344 (1999).  Attached as Exhibit B are true and

27   correct copies of the Summons, civil case cover sheet, ADR information package,

28

2

1    notice of hearing for a complex determination and case management conference,

2    minutes and order of September 7, 2007.

3        3.    Attached as Exhibit C is a true and correct copy of the Amended Class

4    Action Complaint received by the Defendants.  *See* 28 U.S.C. § 1446(a).  To the

5    Defendants' knowledge, there are no other process, pleadings, or orders in this

6    action than those set forth herein.

7        4.    Pursuant to 28 U.S.C. § 1446(d), Defendants promptly will provide

8    written notice of removal of the action to Plaintiffs, and promptly will file a copy of

9    this Notice of Removal with the Clerk of the Superior Court of the State of

10   California, County of Alameda.

11
                              **Intradistrict Assignment**
12

13       5.    Plaintiffs filed this case in the Superior Court of California, County of

14   Alameda; therefore, this case properly may be removed to the Oakland or San

15   Francisco Divisions of the Northern District of California.  *See* 28 U.S.C. §

16   1441(a); Civ. L. R. 3-2 (c), (d), 3-5(b).

17
                                   **Jurisdiction**
18

19       6.    This Court has original jurisdiction over this matter pursuant to 28

20   U.S.C. § 1332(d) (as amended by the Class Action Fairness Act of 2005, Pub. L.

21   No. 109-2, 119 Stat. 14 ("CAFA")).  Under Section 1332(d), federal courts have

22   original diversity jurisdiction over a class action whenever:  (1) "any member of a

23   [putative] class of plaintiffs is a citizen of a State different from any defendant," 28

24   U.S.C. § 1332(d)(2)(A), and (2) "the matter in controversy exceeds the sum or

25   value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2).  Both

26   requirements are satisfied in this case.

27       7.    In this matter, diversity of citizenship exists because the Defendants

28   and at least one proposed class member are citizens of different states.  *See* 28

1  U.S.C. § 1332(c)(1). Alderwoods is a corporation incorporated under the laws of

2  the State of Delaware and has its principal place of business in Ohio. SCI is a

3  corporation incorporated under the laws of the State of Texas and has its principal

4  place of business in that State. Plaintiff Deborah Prise was a citizen of

5  Pennsylvania at the time Plaintiffs filed this action, and she still is.

6      8.     Further, though Defendants concede neither liability on Plaintiffs'

7  claims nor the propriety or breadth of the class as alleged by Plaintiffs, the

8  Complaint places in controversy a sum greater than $5,000,000. *See* 28 U.S.C.

9  § 1332(d)(2). Plaintiffs claims defendants had a policy and practice of willfully not

10  compensating them for all of their regular hours worked and overtime hours worked

11  in excess of 8 hours a day and 40 hours a week. Amended Complaint, ¶¶ 54, 56.

12  The Complaint does not allege a specific dollar amount in damages, but Plaintiffs

13  seek unpaid wages, liquidated damages, compensatory damages, consequential

14  damages, punitive damages and attorneys' fees on behalf of themselves and each of

15  the purported class members. Amended Complaint, Prayer 20:25-26:27.

16      9.     Plaintiffs' claims in this case establish an amount in controversy that

17  exceeds $5,000,000. Specifically, as of September 2007, while Defendant SCI is a

18  holding company with no employees, Defendants and/or their affiliates employ

19  more than 15,000 non-exempt employees in the United States. *See* Declaration of

20  Judith Marshall ("Marshall Dec."), attached as Exhibit D, at ¶ 2. Assuming an

21  average hourly wage of $16.00 – by comparison, Plaintiffs Deborah Prise's and

22  Heather Rady's most recent non-exempt wages were $18.60 and $17, respectively –

23  these individuals would need to average only 14 hours of overtime during the

24  relevant statutory periods to meet the minimum amount in controversy.

25      10.    Moreover, the amount in controversy in this matter is substantially

26  higher than $5,000,000. As noted, the information discussed in the preceding

27  paragraph relates only to <u>current</u> employees. Thus, the calculations do not include

28  claims by former employees of Defendants and/or their affiliates included within

1    Plaintiffs' putative class definition, nor does it include potential damages related to

2    Plaintiffs' claims for penalties and other types of damages under the laws of 38

3    states and territories or any of the other claims set forth in the Amended Complaint.

4    Amended Compl., Ex. A, at ¶¶ 53, 87, 93, 99, 106, 115, 123, 129, and 133.

5         11.    In asserting the basis for diversity jurisdiction, Defendants do not

6    concede that Plaintiffs are entitled to overtime pay or that Plaintiffs ever worked

7    more than forty hours per workweek or more than eight hours per day.  Nor do the

8    Defendants concede that any or all non-exempt employees are class members or

9    that any class could be certified.

10         WHEREFORE, the above-titled action is hereby removed to this Court from

11    the Superior Court of the State of California, County of Alameda.

12

13    Dated:        October 5, 2007

14

15                       By:

16                           Steven H. Gurnee
                          David M. Daniels

17                           Nicholas P. Forestiere

18                           Attorneys for Defendant
                          ALDERWOODS GROUP, INC. AND

19                           SERVICE CORPORATION
                          INTERNATIONAL

20

21

22

23

24

25

26

27

28

**EXHIBIT H**

1   STEVEN H. GURNEE, ESQ. SB# 66056
    DAVID M. DANIELS, ESQ. SB# 170315
2   GURNEE & DANIELS LLP
    2240 Douglas Boulevard, Suite 150
3   Roseville, CA  95661-3805
    Telephone      (916) 797-3100
4   Facsimile      (916) 797-3131

5   AMY E. DIAS (pro hac vice motion pending)
    JONES DAY
6   500 Grant Street, Suite 3100
    Pittsburg, PA 15219-2502
7   Telephone:     (412) 391-3939
    Facsimile:     (412) 384-7959
8
    MATTHEW W. LAMPE (pro hac vice motion pending)
9   JONES DAY
    325 John H. McConnell Boulevard, Suite 600
10  Columbus, OH 43216-5017
    Telephone:     (614) 469-3939
11  Facsimile:     (614) 461-4198

12  Attorneys for Defendants
    ALDERWOODS GROUP, INC. and
13  SERVICE CORPORATION INTERNATIONAL

14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16

17  Deborah Prise, et al., on behalf of themselves   )   No.  C 07-05140 EDL
    and all other employees similarly situated,      )
18                                                    )
                                                      )
19                  Plaintiffs,                       )   **MEMORANDUM OF POINTS AND**
              vs.                                     )   **AUTHORITIES IN SUPPORT OF**
20                                                    )   **DEFENDANTS' MOTION TO DISMISS**
                                                      )
21  Alderwoods Group, Inc., et al.                    )   Date:    December 4, 2007
                                                      )   Time:    9:00 a.m.
22                  Defendants.                       )   Ctrm:    E
                                                      )
23  _____        )   Trial Date:    None Set

24

25

26

27

28
    **POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION TO DISMISS**
    **Case No. C 07-05140 EDL**

## TABLE OF CONTENTS

I.     INTRODUCTION .......................................................................................1

II.    BACKGROUND .......................................................................................3

III.   ARGUMENT .......................................................................................4

    A.    Plaintiff's Rule 23 Class Allegations And Certification Request Should be Dismissed for Failure to Satisfy the Requirements of Rule 23.................................4

        1.    Plaintiffs Cannot Certify A Class Under Rule 23 Because they Cannot Establish That There Are Common Issues Or That Common Issues Predominate Where the court Would Be Required to Apply The Laws of 38 Jurisdiction........................................................5

        2.    Plaintiffs Cannot Certify a Class Under Rule 23(b)(1) Because They Cannot Establish A Risk of Inconsistent Judgments Nor That There Is A Limited Pool of Funds........................................................9

        3.    Plaintiffs Cannot Certify A Class Under rule 23(b)(2) Because Montegary Relief Predominates Over Any Request for Injunctive Relief ........................................................11

    B.    Plaintiffs' Rule 23 Claims Are Incompatible With A Section 216(b) Action And Must Therefore Be Dismissed........................................................12

    C.    Plaintiffs' Claims Against SCI Should Be Dismissed Because SCI Is Not An Employer and Is Note A Successor-In-Interest To Alderwoods' Liability ........................................................16

    D.    Plaintiffs' First and Second Causes of Action Should Be Dismissed Because They Have Failed to Comply with California Labor Code Section 2699..............19

1

2    IV.    CONCLUSION.................................................................................................................21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

**Cases**

*Abarca v. Manheim Services Corp.*, No. 05 C 3873, 2006 U.S. Dist. LEXIS 13777, * 10-
  11 (N.D. Ill. March 24, 2006) ....................................................................................... 16

*Allison v. Citgo Pet. Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) ..................................... 11, 12

*Caliber Bodyworks, Inc. v. Superior Court, (2005) 134 Cal.App.4th 365* .......................... 20

*Chao v. A-One Med. Serv., Inc.*, 346 F.3d 908, 920-923 (9th Cir. 2003) ......................... 14

*Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1991 WL 284083 (N.D. Cal.
  June 14, 1991) ....................................................................................................... 7, 9

*Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) ........................................... 8

*Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002 .......... 11

*Edwards v. City of Long Beach*, No. CV 05-8990, 2006 U.S. Dist. LEXIS 93141 at *10
  (C.D. Cal. Dec. 12, 2006) .......................................................................... 5, 13, 14, 15

*Glewwe v. Eastman Kodak Co.*, No. 05-CV-6462T, 2006 U.S. Dist. LEXIS 33449 at *7
  (W.D.N.Y. May 25, 2006) ........................................................................................... 1, 4

*Glewwe v. The Eastman Kodak Co.*, 2006 WL 1455476 (W.D.N.Y. May 25, 2006) .......... 6

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. Dec. 12, 1996) .................... 7

*Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11,
  2006) ...................................................................................................................... 5, 13

*Himmelman v. Continental Cas. Co.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5
  (D.N.J. Aug. 11, 2006) ............................................................................................... 4, 13

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) ................................... 12, 15

*Hopkins v. Texas Mast Climbers, LLC*, No. H-04-1884, 2005 U.S. Dist. LEXIS 38721, *12
  (S.D. Tex. Dec. 14, 2005) ........................................................................................... 16

*In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 312 (S.D.N.Y. 2004) 7

*In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005) .................................... 10

*In re: Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. Jan. 10, 2003) ...................................... 8

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975)...................................5, 16

*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) ("Rule 23 and § 216(b)
    ...............................................................................................................13

*LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)......................13, 15

*Letouzel v. The Eastman Kodak Co.*, 2006 WL 1455478 (W.D.N.Y. May 25, 2006).........6

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004). ...............13

*Lewis v. Ward*, 852 A.2d 896, 906 (Del. Super. Ct. 2004) ...............................................18

*Luciano v. The Eastman Kodak Co.*, 2006 WL 1455477 (W.D.N.Y. May 25, 2006)..........6

*Madrigal v. Green Giant Co.*, No. C-78-157, 1981 U.S. Dist. LEXIS 15325 at *9 (E.D.
    Wash. July 27, 1981)..................................................................................................13

*McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) ......................12, 14

*McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975)
    ...............................................................................................................10

*Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006)..................16

*Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378 (W.D. Pa.
    2006) ..........................................................................................................19

*Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1035 (S.D. Miss. 2005) .................18

*Nelsen v. King Cty.*, 895 F.2d 1248, 1255 (9th Cir. 1990). .................................................11

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999) .......................................................10

*Otto v. Pocono Health Sys.*, 457 F.Supp.2d 522 (M.D. Pa. 2006 .........................4, 14, 15

*Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567 (D. S.C. 2006)...8

*Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No.
    33 .............................................................................................................18

*Sepulveda v. Wal-Mart Stores, Inc.*, 245 F.R.D. 229, 245 (C.D. Cal. 2006) ................9, 10

*Tran v. Le French Baker, Inc.*, No. C-94-0482 VRW, 1995 U.S. Dist. LEXIS 8371 (N.D.
    Cal. 1995)..................................................................................................14

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998) .......................................................18

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. C 07-05140 EDL                                                              Page iv

*Zinser v. Accuflix Research Inst.*, 253 F.3d 1180, 1188-90 (9th Cir. 2001 ................ 2, 7, 10

*Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)…................................................... 19

**Statutes**

F.R.C. P. Rule 23 ........................................................…............ 1, 2, 3, 4, 5, 12, 13, 14, 15, 21

F.R.C.P. Rule 12(b)(6) ................................…..................................................... 4, 5, 12

F.R.C.P. Rule 12(f) ......................................................................................... 12

F.R.C.P. Rule 23(a) ..................................................................................... 5, 6, 9

F.R.C.P. Rule 23(a)(2) ............................................................................. 2, 5, 9, 12

F.R.C.P. Rule 23(b) .................................................................................... 6, 9

F.R.C.P. Rule 23(b)(1) ........................................................................... 2, 6, 9, 11

F.R.C.P. Rule 23(b)(2) ........................................................................ 2, 6, 11, 12

F.R.C.P. Rule 23(b)(3) ................................................................................... 2, 5

F.R.C.P. Rule 23(c)(1) ....................................................................................... 4

F.R.C.P. Section 23(b) ................................................................................ 5, 12

F.R.C.P. Section 23(d) ...................................................................................... 16

F.R.C.P. Section Rule 23(b)(1)(A) ................................................................... 9, 10

F.R.C.P. Section Rule 23(b)(1)(B) ................................................................... 9, 10

F.R.C.P. Section Rule 23(b)(3) ........................................................................ 5, 9

F.R.C.P. Section Rule 23(c) .............................................................................. 16

Fair Labor Standards Act Section 216(b) ........................................ 1, 2, 3, 4, 12, 14, 13, 15

Labor Code Section 2699 .......................................................................... 19, 20

Labor Code Section 2699.3(a)(1) ......................................................................... 20

Labor Code Section 2699.3(a)(2)(A) ..................................................................... 20

Labor Code Section 2699.3(a)(2)(B) ..................................................................... 20

Labor Code Section 2699.5 ................................................................................ 19

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                            **Page v**

**Other Authorities**

5 Moore's Federal Practice § 23.42 .................................................................11

Balotti and Finkelstein, The Delaware Law of Corporations and Business Organizations §

    9.7 (Aspen Law & Business 1998) .................................................................18

Civil Rights Act of 1964 ....................................................................................18

Civil Rights Act of 1991 ....................................................................................18

Equal Pay Act, 29 U.S.C. § 206 .........................................................................18

Private Attorney General Act of 2004....................................................................19

## I.    INTRODUCTION

On December 8, 2006, Plaintiffs Deborah Prise ("Prise") and Heather Rady ("Rady") filed a complaint in the U.S. District Court for the Western District of Pennsylvania alleging that Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI") violated the Fair Labor Standards Act and the wage and hour laws of 38 states and territories by failing to compensate employees for overtime, missed meal and break periods, and certain types of off-the-clock work that they allegedly performed. Prise and Rady sought to certify both a collective action under FLSA Section 216(b), and a class action for their state claims under Rule 23 of the Federal Rules of Civil Procedure. The District Court denied Plaintiffs' motions for collective action notification to purported SCI employees on two occasions, on April 19, 2007 and on September 6, 2007, finding that SCI was a holding company, and not an employer against whom a class could be certified. Plaintiffs' Rule 23 claims were dismissed on June 8, 2007 when the District Court declined to assert supplemental jurisdiction over the state law claims.

Now, Prise and Rady, along with more than a hundred additional named plaintiffs (collectively "Plaintiffs"), seek to bring in this Court claims against both SCI and Alderwoods covering 38 states and territories, and seek to certify those claims in a single class action. However, Plaintiffs can maintain neither their Rule 23 class claims nor their claims against SCI in this action and both should be dismissed from this case.

First, Plaintiffs' class claims must be dismissed. It is well established that a court may dismiss class claims pursuant to Rule 12(b)(6) where a plaintiff cannot meet Rule 23's requirements. *See, e.g., Glewwe v. Eastman Kodak Co.*, No. 05-CV-6462T, 2006 U.S. Dist. LEXIS 33449 at *7 (W.D.N.Y. May 25, 2006). Here, Plaintiffs cannot certify a class under Rule

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 1

23(a)(2) or (b)(3) because common issues do not exist and the class method is not superior where the Court would be required to engage in a conflict of law analysis, and potentially interpret the laws, of 38 states and territories. *See, e.g., Zinser v. Accuflix Research Inst.*, 253 F.3d 1180, 1188-90 (9th Cir. 2001). Plaintiffs also cannot certify a class under Rule 23(b)(1) because they cannot establish that there is a risk of inconsistent judgments or a limited pool of funds. And Plaintiffs certainly cannot certify a class under Rule 23(b)(2) since their claims for compensatory damages clearly predominate over any request for injunctive relief because this Court would be required to perform individual damages calculations for each Plaintiff's wage and hour claims.

Plaintiffs' class claims also must be dismissed for the separate and independent reason that their request for Rule 23 certification is, to quote one court, "inherently incompatible" with their Section 216(b) FLSA collective action in the Western District of Pennsylvania. Courts routinely deny Rule 23 class certification where plaintiffs also seek collective action certification under Section 216(b) because Rule 23 class actions thwart the purpose of the collective action, and create confusion for class members who receive both opt-in and opt-out notices.

Second, Plaintiffs' claims against SCI must be dismissed in their entirety. As the U.S. District Court for the Western District of Pennsylvania determined, SCI is a holding company without any employees, and thus is not a proper defendant in this wage and hour litigation. In addition, Plaintiffs have no "successor-in-interest" claim against SCI because Alderwoods still exists and SCI is only a parent company of the entity that acquired Alderwoods.

Accordingly, for the reasons described in detail below, Defendants respectfully request that this Court issue an order dismissing and/or striking Plaintiffs' Rule 23 class certification allegations (specifically, First Amended Compl., ("FAC") ¶¶ 8, 50-58; and all references to "Class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL** Page 2

Members" and "Subclasses" contained in the First Amended Complaint), and dismissing SCI from this case with prejudice.

## II.    BACKGROUND

On December 8, 2006, Prise and Rady filed a complaint against Alderwoods and SCI in the U.S. District Court for the Western District of Pennsylvania alleging violations of the Fair Labor Standards Act of 1938 (Counts I-II) and the statutory and common laws of 38 states and territories, including California (Counts III-IX).    They brought their claims in the Western District of Pennsylvania based on their allegations that they were former employees of Alderwoods (but not SCI) in that judicial district and that the Defendants did business in that district.    They sought to bring a collective action pursuant to FLSA Section 216(b) for their FLSA claims and a Rule 23 class action for their state law claims.    On April 19, 2007, and again on September 6, 2007, the Honorable Judge Joy Flowers Conti denied Prise's and Rady's motion for FLSA collective action certification and expedited notice as to SCI employees, finding that SCI is a holding company that did not have any employees.    Judge Conti granted-in-part and denied-in-part their motion with respect to Alderwoods' employees, limiting notice to only seven job titles.    On June 8, 2007, Judge Conti dismissed Prise's and Rady's Rule 23 class allegations, finding that it was inappropriate to exercise supplemental jurisdiction over the state law claims where such claims would overwhelm the FLSA claims that were the basis for federal jurisdiction.

Prise and Rady, along with more than 100 other named plaintiffs filed the instant lawsuit on July 9, 2007.    In the First Amended Complaint, Plaintiffs acknowledge that "the state law claims asserted herein were previously dismissed from the United States District Court for the Western District of Pennsylvania on or about June 8, 2007."  (FAC ¶ 2.)  Indeed, Plaintiffs allege here the exact same state law causes of action previously dismissed by the Western District of Pennsylvania

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                      **Page** 3

– including claims for state wage and hour law (third cause of action), unjust enrichment/restitution (fourth cause of action) fraud and deceit (sixth cause of action), misrepresentation (seventh cause of action) breach of contract (eighth cause of action) and quantum meruit (tenth cause of action) – plus claims for violations of the California Labor Code and Business and Professions Code. Plaintiffs' Complaint seeks to certify a class of the exact same employees that they sought to cover in their collective action in the Western District of Pennsylvania.

## III.    ARGUMENT

### A.    Plaintiffs' Rule 23 Class Allegations And Certification Request Should Be Dismissed For Failure To Satisfy The Requirements Of Rule 23.

Plaintiffs' class allegations and certification request must be dismissed because it is clear, even at this stage of the litigation, that Plaintiffs' proposed class or subclasses cannot meet the requirements for a viable class pursuant to Rule 23. Although Plaintiffs have not yet moved for class certification, "courts may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class. In fact, Rule 23(c)(1) encourages courts to 'at an early practicable time determine by order whether to certify the action as a class action.'" *Glewwe*, 2006 U.S. Dist. LEXIS 33449 at *7 (internal citations omitted). Accordingly, many district courts have appropriately dismissed deficient Rule 23 class allegations pursuant to Rule 12(b)(6). *See, e.g., Otto v. Pocono Health Sys.*, 457 F.Supp.2d 522 (M.D. Pa. 2006) (granting motion to dismiss plaintiffs' Rule 23 state law class claims under Rule 12(b)(6) on grounds that Rule 23 opt-out state law class action claims could not proceed accompanied by a § 216(b) opt-in action); *Himmelman v. Continental Cas. Co.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                        **Page** 4

allegations because Rule 23 certification of state law claims is legally incompatible with FLSA claim); *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11, 2006) (granting defendant's Rule 12(b)(6) motion to dismiss Rule 23 class action allegations because they are incompatible with FLSA collective action).

To maintain a Rule 23 class action, a plaintiff must satisfy all the prerequisites of Rule 23(a). Fed.R.Civ.P. 23(a). Additionally, a plaintiff must fulfill the requirements for at least one of the three types of class actions enumerated in Rule 23(b). Fed.R.Civ.P. 23(b); *see also Edwards v. City of Long Beach*, No. CV 05-8990, 2006 U.S. Dist. LEXIS 93141 at *10 (C.D. Cal. Dec. 12, 2006). This is true even at this early stage of the litigation. *See, e.g., Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) (affirming district court's order granting defendant's motion, brought at inception of the case, to dismiss plaintiff-appellants' class action and striking class allegations from their first amended complaint for failure to satisfy requirements of Rule 23(b)(3)).

Here, Plaintiffs seek to bring a class action based on claims brought under the wage and hour laws and common laws of 38 states and territories. Plaintiffs cannot establish that such a purported class meets the requirements of Rule 23.

**1.     Plaintiffs Cannot Certify A Class Under Rule 23 Because They Cannot Establish That There Are Common Issues Or That Common Issues Predominate Where The Court Would Be Required To Apply The Laws Of 38 Jurisdictions.**

Federal courts throughout the country have held that class claims may not be certified pursuant to Rule 23(a)(2) or (b)(3) where they require the application of the laws of multiple states. The Western District of New York recently addressed the issue of multiple state claims in a class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                    **Page** 5

action in three similar cases: *Glewwe v. The Eastman Kodak Co.*, 2006 WL 1455476 (W.D.N.Y. May 25, 2006), *Luciano v. The Eastman Kodak Co.*, 2006 WL 1455477 (W.D.N.Y. May 25, 2006), and *Letouzel v. The Eastman Kodak Co.*, 2006 WL 1455478 (W.D.N.Y. May 25, 2006) (collectively the "*Kodak* cases"). In the *Kodak* cases, like here, the plaintiffs sought damages under the FLSA and the wage and hour laws of over 30 states. In addition, the plaintiffs brought claims under the common laws of more than 40 states. In dismissing the state claims in each action, the Court held that the plaintiffs failed to establish both commonality under Rule 23(a) and the predominance of common issues as required by Rule 23(b)(3). *Glewee*, 2006 WL 1455476, at *2-4; *Luciano*, 2006 WL 1455477, at *2-5; *Letouzel*, 2006 WL 1455478, at *2-4. With respect to Rule 23(a), the court noted that each state's wage law had its "own peculiar requirements and defenses," and that adjudication of the wage and contract claims "would require the interpretations and application of several different laws of several different states and territories," and thus found that the plaintiffs' claims were not common to the class. *Glewwe*, 2006 WL 1455476, at *2; *Luciano*, 2006 WL 1455477, at * 2; *Letouzel*, 2006 WL 1455478, at *2. In addition, the court concluded that even if the plaintiffs could satisfy Rule 23(a), they failed to satisfy Rule 23(b), explaining that:

> [t]he employees at issue were employed in several different states at several different locations subject to different terms and conditions, and different state laws. Different remedies are available in each state, and the methods of overtime calculation vary from state to state. Because the issues common to the purported class members are actually subordinate to the issues unique to each of the individual members, I find that the plaintiffs failed to establish a basis for a class action pursuant to Rule 23(b)(3).

*Glewwee*, 2006 WL 1455476, at *3 (also stating that there was no risk of inconsistent adjudications as contemplated under Rule 23(b)(1) and that Rule 23(b)(2) was inapplicable to claims for damages); *Letouzel*, 2006 WL 1455478, at *3 (same). *See also Luciano*, 2006 WL

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                          **Page** 6

1455477, at *4 (same).

Notably, Courts in the Ninth Circuit also have held that a class is not certifiable under Rule 23 where the class action would require the analysis and application of the laws of multiple states. In *Zinser*, 253 F.3d at 1188-90, the Ninth Circuit Court of Appeals affirmed the District Court's denial of class certification where the class claims required the application of the laws of up to 48 states. In doing so, the Court of Appeals noted that common questions of fact and law do not predominate to the extent that "the laws of forty-eight states must be consulted to answer" questions related to class members' claims. *Id.* at 1189-90. Likewise, this Court previously has denied certification of state law claims involving multiple jurisdictions where the Court determined that certification of such claims would require application of California's choice of law principles to each state law claim. *Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1991 WL 284083 (N.D. Cal. June 14, 1991). In *Church*, this Court reasoned that:

> Given the number of causes of actions, the jurisdictions involved, and the presumed interest of each forum in regulating the employment relationships within its jurisdiction, the number of resolutions this Court must make even before approaching the merits of the action as to which law to apply is overwhelming. On this issue alone, then, a class action is not the superior method of adjudicating the interests implicated as determination of the choice of law issue would require numerous 'mini-trials' in and of itself.

*Id.* at *12.

Numerous other courts throughout the country also have found that the application of different states' laws militates against allowing a class action. *See e.g., Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. Dec. 12, 1996) (denying certification in a tort action and holding that even if the state laws were relatively similar, the fact that the Court had to reference so many laws weighed against class certification); *In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 312 (S.D.N.Y. 2004) (denying certification because variations in state

laws governing fraud, unconscionability, bad faith and unjust enrichment predominated over any common issues); *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) (denying certification of a nationwide class involving breach of express and implied warranty claims under 48 states' laws); *Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567 (D. S.C. 2006) (denying certification because individualized factual inquiries precluded adjudication of negligence, breach of warranty and indemnity claims on a class wide basis and several different contract laws, with different requirements and defenses, were involved).

Here, Plaintiffs assert claims for breach of contract, wage and hour violations, unjust enrichment, fraud and deceit, quantum meruit, negligent misrepresentation, and negligence under the laws of 38 states and territories. (FAC. third – tenth causes of action.) Plaintiffs' Complaint requires this Court to apply the laws governing these various claims in 38 different jurisdictions, all of which have an equal interest in regulating employment relationships. Given the different requirements and available defenses under each state law, common issues of fact and law do not exist, and they clearly do not predominate in this case.

Importantly, subclasses would not remedy the defects of the proposed class. For instance, in *In re: Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. Jan. 10, 2003), the plaintiffs proposed that putative class members in states with similar laws be grouped into subclasses. The Central District denied certification and held that the subclass approach did not create a manageable trial plan because the plaintiffs failed to show that the differences between the state laws (that were grouped together within the proposed subclasses) were nonmaterial. *Id.* at 543-45. The court also noted that there was a question of whether due process rights would be violated by combining different state laws to create a new legal standard for each subclass. *Id..* Moreover, as this Court previously has found, the burden of reviewing the different laws of 38 jurisdictions itself would require a

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page 8**

finding that the class method is not superior because of the numerous mini-trials that would be required simply to conduct the choice of law analysis. *See Church*, 1991 WL 284083 at *12.

At bottom, Plaintiffs' class certification request would require the Court to apply the laws of 38 different jurisdictions, all of which have an interest in regulating employment relationships. The potential analysis and application of so many different laws creates an unmanageable case, where any common issues would be severely outweighed by individual state law analyses. Plaintiffs thus cannot meet the requirements of Rule 23(a)(2), nor can they meet the requirements of Rule 23(b)(3).

**2.    Plaintiffs Cannot Certify A Class Under Rule 23(b)(1) Because They Cannot Establish A Risk Of Inconsistent Judgments Nor That There Is A Limited Pool Of Funds.**

Plaintiffs' allegations likewise do not satisfy the requirements of Rule 23(b)(1). To satisfy Rule 23(b)(1), a plaintiff must satisfy either Rule 23(b)(1)(A), which allows for certification of a class (where Rule 23(a) is satisfied) if "the prosecution of separate actions ... would create a risk of ... inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class;" or Rule 23(b)(1)(B), which requires a showing of a risk of adjudications with respect to individual members of the class that would be dispositive of the interests of other members not parties to the adjudications or substantially impair their ability to protect their interests. Fed.R.Civ.P. 23(b)(1)(A) & (B); *see also Sepulveda v. Wal-Mart Stores, Inc.*, 245 F.R.D. 229, 245 (C.D. Cal. 2006). Plaintiffs cannot meet either of these standards.

In this case, Plaintiffs do not, and indeed cannot, allege any facts in their Complaint that would establish a risk that separate actions would produce incompatible judgments. The Ninth

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL                                                                 Page** 9

Circuit in particular has adopted an "extremely conservative view" on whether this prong of the class test is met, requiring a finding that either: "(1) rulings in separate actions would subject defendant to incompatible judgments requiring inconsistent conduct to comply with the judgment; or (2) a ruling in the first of a series of separate actions will 'inescapably alter the substance of the rights of others having similar claims.'" *Sepulveda*, 245 F.R.D. at 245 (quoting *McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975)). The Ninth Circuit also has held that Rule 23(b)(1)(A) certification should not be granted where the plaintiffs' claims are primarily for monetary relief. *See, e.g., Zinser*, 253 F.3d 1180; *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005).

Here, as discussed below, Plaintiffs primarily seek monetary damages and therefore this case falls outside of the limited circumstances where plaintiffs in the Ninth Circuit have been able to satisfy the Rule 23(b)(1)(A) requirement for class certification. *Id.* In addition, there is no risk of inconsistent judgments. This case primarily involves Plaintiffs' claims that they were required to perform off-the-clock work, missed meal and rest periods and overtime payment. To recover, Plaintiffs would be required to individually prove they were required to work while off-the-clock, were not given meal and rest periods and to establish their individual damages. The ability of one plaintiff to establish that she worked while off-the-clock will have no bearing on the claims of others, thus negating any concern over inconsistent judgments.

Nor can Plaintiffs succeed under Rule 23(b)(1)(B), which requires that Plaintiffs demonstrate that the case involves a "fund with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability." *Zinser*, 253 F.3d at 1197 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999)). Rule 23(b)(1)(B) applies only where there is a limited, fixed pool of money available to cover the

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                              **Page** 10

would-be class members' damages and where the claims brought contain no "unique facts or individual relationships with" the party opposing class certification. 5 Moore's Federal Practice § 23.42. Because Plaintiffs do not, and cannot, claim that Defendants have only a limited pool of funds to satisfy the class claims, and because the claims seek individualized monetary damages, Plaintiffs' class allegations cannot satisfy the requirements of Rule 23(b)(1).

### 3. Plaintiffs Cannot Certify A Class Under Rule 23(b)(2) Because Monetary Relief Predominates Over Any Request For Injunctive Relief.

Nor can Plaintiffs satisfy the requirements of Rule 23(b)(2). It is well established, both in the Ninth Circuit and elsewhere, that class certification under Rule 23(b)(2) is not appropriate where the relief relates "exclusively or predominately to money damages." *Nelsen v. King Cty.*, 895 F.2d 1248, 1255 (9th Cir. 1990). *See also Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002) (reversing District Court's grant of class certification and finding that injunctive relief did not predominate); *Allison v. Citgo Pet. Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) ("We, like nearly every other circuit, have adopted the position taken by the advisory committee that monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or monetary.") Moreover, "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief...." *Id.* at 413. Where the requested compensatory relief requires individualized damages determinations, injunctive relief does not predominate and the class should not be certified under Rule 23(b)(2). *Id.*. at 415.

There is no question here that Plaintiffs' request for compensatory relief predominates over any claims for injunctive relief. Plaintiffs' claims in this case relate to off-the-clock work, and missed meal and rest periods for which they allege they were not compensated. Indeed, Plaintiffs'

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page 11**

Complaint alleges seven different forms of off-the-clock work, plus a claim regarding improper calculation of overtime, that they claim pertain to employees in 38 jurisdictions. Compensatory damages for each of these claims, if proven, would have to be individually determined based on the number of hours each employee allegedly performed such work. Injunctive relief simply does not predominate where damages are dependent "on the intangible, subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. Thus, Plaintiffs cannot seek certification under Rule 23(b)(2).

In short, Plaintiffs' cannot, under any circumstances, meet the requirements of Rule 23(a)(2) or (b). Thus, this Court should dismiss Plaintiffs' class action allegations.

**B.       Plaintiffs' Rule 23 Claims Are Incompatible With A Section 216(B) Action And Must Therefore Be Dismissed.**

This Court should strike Plaintiffs' class action allegations and certification request under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure for the separate and independent reason that Plaintiffs cannot maintain a Rule 23 opt-out action here while continuing to pursue their FLSA Section 216(b) opt-in collective action claims in the U.S. District Court for the Western District of Pennsylvania. Congress created the opt-in procedure under the FLSA "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Allowing a plaintiff to circumvent the opt-in requirement and bring unnamed parties into court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement would undermine Congress's intent to limit these types of claims to collective actions. *See, e.g., McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004).

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                                  **Page** 12

Consistent with the Congressional purpose behind the FLSA, courts in the Ninth Circuit have found Rule 23 class actions inherently incompatible with Section 216(b) claims. *See, e.g.,* *Edwards,* 2006 U.S. Dist. LEXIS 93141; *Madrigal v. Green Giant Co.,* No. C-78-157, 1981 U.S. Dist. LEXIS 15325 at *9 (E.D. Wash. July 27, 1981) (dismissing plaintiffs' state law wage claims on the grounds that "their inclusion in the complaint as alternative remedies for enforcing the FLSA runs afoul of the intent of Congress in enacting the FLSA"). As the Court in *Edwards* explained, "allowing both a § 216(b) collective action and a Rule 23 class action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions." *Edwards,* 2006 U.S. Dist. LEXIS 93141 at *17. Indeed, "the policy behind requiring FLSA plaintiffs to opt-in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." *Id.* (quoting *Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 470 (N.D. Cal. 2004). *See also Himmelman.,* No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class allegations because state law class allegations are legally incompatible with FLSA claim); *Herring v. Hewitt Assoc., Inc.,* No. 06-267, 2006 U.S. Dist. LEXIS 56189, at *5 (D. N.J. Aug. 11, 2006) ("[T]hese two schemes are inherently incompatible."); *see also Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859, 862 (9th Cir. 1977) ("Rule 23 and § 216(b) class actions are 'mutually exclusive' and 'irreconcilable'"); *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975) (observing that the "two types of class actions are mutually exclusive and irreconcilable" and stating "[i]t is crystal clear that §216(b) precludes pure Rule 23 class actions in FLSA suits" (emphasis added)).

In addition, allowing Plaintiffs to assert concurrent Rule 23 class claims here would defeat

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. C 07-05140 EDL                                                        Page 13

Section 216(b)'s intent to afford individuals a substantive right to control the adjudication of their

wage claims. As noted by one court:

> It is clear that Congress labored to create an opt-in scheme when it created
> Section 216(b) specifically to alleviate the fear that absent individuals
> would not have their rights litigated without their input or knowledge. To
> allow a Section 216(b) opt-in action to proceed accompanied by a Rule 23
> opt-out state law class action claim would essentially nullify Congress's
> intent in crafting Section 216(b) and eviscerate the purpose of Section
> 216(b)'s opt-in requirement.

*Otto v. Pocono Health Sys.*, 457 F Supp. 2d 522, 524 (M.D. Pa. 2006). Allowing a Rule 23 class

to proceed here would effectively circumvent these substantive FLSA rights because any

individuals who choose not to opt-in to the FLSA collective action will nevertheless have their

wage claims resolved through the Rule 23 opt-out class action, and the collateral estoppel and/or

*res judicata* doctrine will foreclose their ability to bring their own wage claims. *See e.g., Chao v.

A-One Med. Serv., Inc.*, 346 F.3d 908, 920-923 (9th Cir. 2003) (dismissing the FLSA claims of one

employee (out of 8) on *res judicata* grounds because she had previously filed state law overtime

claims against her employer); *Tran v. Le French Baker, Inc.*, No. C-94-0482 VRW, 1995 U.S.

Dist. LEXIS 8371 (N.D. Cal. 1995) (finding plaintiff's FLSA collective action claims barred by the

*res judicata* effect of plaintiff's prior state administrative claim for unpaid overtime).

Indeed, Courts in the Ninth Circuit have held that a Rule 23 class action cannot be

maintained simultaneously with an FLSA collective action because "confusion would result from

requiring potential plaintiffs to both opt-in and opt-out of the claims in the suit." *Edwards*, 2006

U.S. Dist. LEXIS 93141 at *14-15. *See also McClain*, 222 F.R.D. at 577 (noting "the inherently

contrasting nature of opt-in versus opt-out actions would create challenges were these actions to

proceed simultaneously in federal court" because, among other things, it is confusing for a

potential class member to receive a notice indicating that they must opt out of some claims and opt

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                      **Page** 14

in to others). Such confusion could result in the loss of rights by Rule 23 plaintiffs, whose interests Plaintiffs purport to represent, because those who do not opt-out of a Rule 23 class are bound by the judgment. *See LaChapelle*, 513 F.2d at 288.

The decisions of this Court's sister courts, and courts nationwide, apply with equal force to Plaintiffs' Rule 23 claims in this case even though Plaintiffs' FLSA opt-in claims are being litigated in a different court. Indeed, there is no substantive difference as far as the purpose and intent of the FLSA is concerned between bringing the incompatible opt-in and opt-out claims in the same court or in different courts. Under either scenario, Plaintiffs' Rule 23 opt-out class claims defeat the purpose of the FLSA's opt-in procedure, whether the purpose is to protect the employer "from the burden of representative actions," *Hoffman-La Roche*, 493 U.S. at 173, or to provide absent class members with the power to control the adjudication of their claims, *Otto*, 457 F Supp. 2d at 523-24. Regardless of whether the claims are brought in one court or two courts, Plaintiffs seek to backdoor Rule 23 claims to attain a broader class than would be attained under a Section 216(b) collective action, at the expense of both the Defendants and putative class members who choose not to opt in to the collective action. Moreover, the potential for confusion that concerned the *Edwards* court is even greater in a case such as this because not only would putative class members receive conflicting opt-in and opt-out forms, but such forms would come from two separate courts, thus – understandably – increasing the potential for confusion for putative class members who may not understand why essentially the same claims are being litigated in two different federal courts, using two different class procedures, in different parts of the country.

Plaintiffs thus can neither meet the requirements for class certification under Rule 23, nor can they bring Rule 23 claims consistent with their Section 216(b) collective action claims. Their class allegations and certification request therefore should be stricken from the Complaint.

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 15

According to the Ninth Circuit, it is appropriate to strike such allegations at the inception of the case. *See, e.g., Kamm*, 509 F.2d 205 (9th Cir. 1975) (affirming district court's order granting defendant's motion to dismiss brought at inception of case pursuant to Rule 23(c) and (d) and dismissing plaintiff-appellants' class action and striking class allegations from their first amended complaint on the ground that the alleged class action was not the superior method for resolving the alleged controversy).

### C.    Plaintiffs' Claims Against SCI Should Be Dismissed Because SCI Is Not An Employer And Is Not A Successor-In-Interest To Alderwoods' Liability.

The Court should dismiss Plaintiffs' claims against SCI in their entirety because the Western District of Pennsylvania already has determined that SCI is a holding company without any employees and, as such, is not the employer of any of the Plaintiffs in this action. Indeed, it is well established that that holding companies are not employers in the context of wage and hour litigation. *See, e.g., Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006) (holding that company with no employees or payroll is not an employer); *Hopkins v. Texas Mast Climbers, LLC*, No. H-04-1884, 2005 U.S. Dist. LEXIS 38721, *12 (S.D. Tex. Dec. 14, 2005) (dismissing claims against holding company and finding holding company not an "employer" under federal law); *Abarca v. Manheim Services Corp.*, No. 05 C 3873, 2006 U.S. Dist. LEXIS 13777, * 10-11 (N.D. Ill. March 24, 2006) (holding that a parent corporation is considered an employer under federal law "only where it exercises day-to-day control over the employees at issue.")

Here, the U.S. District Court for the Western District of Pennsylvania has found – on two occasions – that SCI is a holding company without any employees and, accordingly, that a class cannot be certified against it. Specifically, on April 19, 2007, Judge Joy Flowers Conti denied

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 16

conditional certification with respect to SCI, stating "I am not sure that I would be able to move forward and certify a class of employees if [SCI] is merely a holding company and really wouldn't have those type of [non-exempt] employees." (Apr. 19 Tr. at 8:18-21, attached hereto as Ex. "A".) However, Judge Conti allowed Prise and Rady to conduct additional discovery with respect to SCI and to renew their request for conditional certification, which they did on June 8, 2007. At a hearing on that renewed motion on September 6, 2007, Judge Conti again held that SCI was not an employer and thus could not be responsible for any of the conduct alleged by Prise and Rady. In so holding, Judge Conti rejected Prise's and Rady's arguments that SCI could be liable as a parent corporation, stating that "SCI as the corporate board is not doing something overtly to be involved in the management or the operation control of the business." (Sept. 6 Tr. at 10-11, attached hereto as Ex. "B".) Notably, all of the Plaintiffs in this lawsuit also have opted-in, or attempted to opt-in, as plaintiffs in the Pennsylvania lawsuit, meaning that Judge Conti's determination that SCI is not an employer applies directly to the Plaintiffs in this action.

Plaintiffs thus know, from their experience in the Western District of Pennsylvania, that SCI is not an employer and is not a proper defendant in their lawsuits seeking overtime pay from the Defendants. Plaintiffs were fully motivated to litigate this issue in Pennsylvania and twice fully briefed and argued the question of SCI's status. But, having been denied twice in Pennsylvania, Plaintiffs seek to take another bite out of the apple here, hoping for a different result in a different forum. This Court should not countenance Plaintiffs' tactics, and should dismiss SCI from this case.

SCI also cannot be held liable, as alleged in the Complaint (FAC. ¶ 38), as "a successor-in-interest to Defendant Alderwoods' liability" because SCI did not enter into any merger transaction with Alderwoods. Indeed, Plaintiffs have acknowledged in yet another case filed in the Western

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 17

District of Pennsylvania[1] that Alderwoods merged, not with SCI, but with an SCI subsidiary, Coronado Acquisition Corporation, on or about November 28, 2006. The surviving corporation is Alderwoods Group, Inc., a wholly-owned subsidiary of SCI. *See Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33 (Pls.' Mot. for Leave to File Second Amd. Compl. ¶ 9, attached hereto as Ex. "C".) This is a standard "triangle" merger, a "common" and "legitimate" form of merger under the law. *See Lewis v. Ward*, 852 A.2d 896, 906 (Del. Super. Ct. 2004); *see also Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1035 (S.D. Miss. 2005) (quoting Balotti and Finkelstein, The Delaware Law of Corporations and Business Organizations § 9.7 (Aspen Law & Business 1998), explaining "A triangle merger permits A, the acquiring company, to acquire control of T, the target company, without A being a constituent corporation, by forming a new Delaware subsidiary, (S), into which T is merged.").

Plaintiffs' claim that SCI is liable as a successor-in-interest to Alderwoods' liability based on this transaction is contrary to basic corporate law principles. A parent corporation, except in extraordinary circumstances, is not liable for its subsidiaries' actions. As the United States Supreme Court has noted, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Likewise, the "[m]ere ownership of a subsidiary does not justify the imposition of liability on a parent corporation. Such liability only is appropriate 'when the court must prevent fraud, illegality or injustice, or when

---

[1] On November 6, 2006, Plaintiffs Prise and Rady filed a Complaint in the U.S. District Court for the Western District of Pennsylvania, Court, Civil Action No. 2:06-cv-01470-JFC, against Alderwoods Group, Inc. and certain Alderwoods subsidiaries alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *at seq.* and the Equal Pay Act, 29 U.S.C. § 206.

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                    **Page** 18

recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" *Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378 (W.D. Pa. 2006) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)).

Plaintiffs here have not alleged any form of fraud, illegality or injustice that would require SCI to be a party to this lawsuit. To the contrary, Alderwoods merged with an SCI subsidiary and continues to exist as a corporation, separate and distinct from SCI. As a matter of law, SCI, as a parent company, cannot be liable as a successor-in-interest to Alderwoods. Thus, to the extent that Plaintiffs assert claims against SCI as a "successor-in-interest" to Alderwoods (FAC. ¶ 19), those claims must be dismissed.

**D.     Plaintiffs' First and Second Causes of Action Should Be Dismissed Because They Have Failed to Comply with California Labor Code Section 2699.**

Plaintiffs' First and Second causes of action allege technical violations of the California Labor Code which are subject to the provisions of Labor Code Section 2699, the "Labor Code Private Attorneys General Act of 2004" (hereinafter "PAGA"). The First and Second causes of action must necessarily fail because Plaintiffs have not and cannot plead and prove their compliance with PAGA.

The recently enacted Private Attorney General Act of 2004, allows aggrieved employees to bring civil actions to recover penalties for violations of the Labor Code when the Labor Commissioner fails to act. A civil action seeking civil remedies available under the Act, which are enumerated in Section 2699.5 may not be commenced (or a pending action amended to include a Section 2699 claim) until the following statutory requirements have been met:

////

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                                              **Page** 19

A. ***Written notice to the employer and the state:*** The aggrieved party must give written notice *by certified mail* to the employer and the Labor and Workforce Development agency specifying the Labor Code provisions violated, 'including the facts and theories to support the alleged violation.' Lab C § 2699.3(a)(1); and,

B. ***Agency Action:*** If the Agency does not intend to investigate the alleged violation, it must so notify the aggrieved employee and the employer by certified mail within 30 days after the employee's was postmarked. The aggrieved employee may file a §2699 action upon receipt of the Agency's notice; or if the Agency fails to provide notice, within 33 days after the employee's notice was postmarked. Lab.C. §2699.3(a)(2)(A). If the Agency intends to investigate the alleged violation, it must so notify the aggrieved employee and the employer with 33 days after the employee's notice was postmarked. It then has 120 days to issue a citation. Lab.C. § 2699.3(a)(2)(B).

*See also, Caliber Bodyworks, Inc, v. Superior Court, (2005) 134 Cal.App.4th 365.*

*[holding that causes of action, and portions thereof, seeking civil remedies available under the Act were subject to notice and exhaustion perquisites under the Act.]*

Here, Plaintiffs First and Second causes of action seek civil penalties which are subject to the PAGA notice and exhaustion requisites. Plaintiffs have not and cannot plead that they have properly satisfied these statutory prerequisite prior to filing their civil action. They have not provided written notice to either defendant, or the State. Consequently, Plaintiffs cannot plead that the State has taken any action in response to alleged Labor Code violations by defendants. The First and Second cause of action must therefore be dismissed.

////

////

////

////

////

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 EDL**                                          **Page** 20

### IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court issue an order dismissing and/or striking Plaintiff's Rule 23 class certification allegations (specifically, FAC., ¶¶ 8, 50-58; and all references to "Class Members" and "Subclasses" contained in the Complaint), and dismissing SCI with prejudice.

Dated:  October 12, 2007                                GURNEE & DANIELS LLP


                                By _____ s/Steven H. Gurnee _____
                                   STEVEN H. GURNEE, ESQ.
                                   DAVID M. DANIELS, ESQ.
                                   Attorneys for Defendants
                                   ALDERWOODS GROUP, INC. and
                                   SERVICE CORPORATION
                                   INTERNATIONAL

**EXHIBIT I**

1  Sanford Jay Rosen, SBN 62566
   Maria V. Morris, SBN 223903
2  Lori E. Rifkin, SBN 244081
   ROSEN, BIEN & GALVAN, LLP
3  315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830;
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com
6
   [Additional Counsel Listed on Following Page]
7
   Attorneys for Plaintiffs
8

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11

12 WILLIAM HELM, DEBORAH PRISE,          Case No. C 07-05140 MJJ
   HEATHER P. RADY, et al., on behalf of
13 themselves and all other employees and former
   employees similarly situated,
14
                   Plaintiffs,
15                                        **Notice of Voluntary Dismissal**
            v.
16
   SERVICE CORPORATION NTERNATIONAL
17 and ALDERWOODS GROUP, INC.,
18          Defendants.

19

20

21

22

23

24

25

26

27

28

1    Additional Attorneys for Plaintiffs who have not yet applied to be
     admitted *pro hac vice*:
2
     J. Nelson Thomas, NY Attorney No. 2579159
3    Patrick J. Solomon, NY Attorney No. 2716660
     Michael J. Lingle, NY Attorney No. 3925765
4    Justin Cordello, NY Attorney No. 4131447
     Annette Gifford, NY Attorney No. 4105870
5    DOLIN, THOMAS & SOLOMON LLP
6    693 East Avenue, Rochester, NY 14607
     Telephone: (585) 272-0540;
7    Facsimile: (585) 272-0574
     nthomas@theemploymentattorneys.com
8
     Charles H. Saul, PA SBN 19938
9    Liberty J. Weyandt, PA SBN 87654
     MARGOLIS EDELSTEIN
10   525 William Penn Place, Suite 3300
     Pittsburgh, PA 15219
11   Telephone: (412) 281-4256;
     Facsimile: (412) 642-2380
12   csaul@margolisedelstein.com
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2                            **NOTICE OF VOLUNTARY DISMISSAL**

3          Pursuant to Federal Rule of Civil Procedure 41(a)(1), it is hereby stipulated that

4    plaintiffs in the above-captioned action hereby discontinue their claims without prejudice.

5

6                                             Respectfully Submitted,

7                                             ROSEN, BIEN & GALVAN, LLP

8

9    Dated: November 28, 2007                 By:_ /s/ Lori Rifkin_____

10                                            Sanford Jay Rosen, State Bar No. 62566
                                              Maria V. Morris, State Bar No. 223903
11                                            Lori E. Rifkin, State Bar No. 244081
                                              315 Montgomery Street, Tenth Floor
12                                            San Francisco, CA 94104
                                              Telephone: (415) 433-6830
13
                                              DOLIN, THOMAS & SOLOMON LLP
14                                            J. Nelson Thomas, NY Attorney No.
                                              2579159
15                                            Patrick J. Solomon, NY Attorney No.
                                              2716660
16                                            Michael J. Lingle, NY Attorney No.
                                              3925765
17                                            Justin Cordello, NY Attorney No. 4131447
                                              Annette Gifford, NY Attorney No. 4105870
18                                            693 East Avenue
                                              Rochester, NY 14607
19                                            Telephone: (585) 272-0540

20                                            MARGOLIS EDELSTEIN
                                              Charles H. Saul, PA State Bar No.19938
21                                            Liberty J. Weyandt, PA State Bar No.
                                              87654
22                                            525 William Penn Place, Suite 3300
                                              Pittsburgh, PA 15219
23                                            Telephone: (412) 281-4256
                                              Attorneys for Plaintiffs
24

25

26

27

28

**EXHIBIT J**

1  Sanford Jay Rosen, State Bar No. 62566
   Maria V. Morris, State Bar No. 223903
2  Lori E. Rifkin, State Bar No. 244081
   ROSEN, BIEN & GALVAN, LLP
3  315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com

6  Attorneys for Plaintiffs

7  [Additional Counsel Listed on Following Page]

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11            SAN FRANCISCO/OAKLAND DIVISION

12
   CLAUDE BRYANT, CRAIG FULCHER,        CV  07      5696
13 SANFORD LEVINE and THOMAS
   THOMPSON,                            Case No.
                                        **COMPLAINT— Collective Action**
14 on behalf of themselves              **DEMAND FOR JURY TRIAL**
   and all employees similarly situated,

15
        Plaintiffs,
16                     - vs -

17 ALDERWOODS GROUP, INC., SERVICE
   CORPORATION INTERNATIONAL, SCI
18 FUNERAL AND CEMETERY PURCHASING
   COOPERATIVE, INC., SCI EASTERN
19 MARKET SUPPORT CENTER, L.P., SCI
   WESTERN MARKET SUPPORT CENTER,
20 L.P. a/k/a SCI WESTERN MARKET
   SUPPORT CENTER, INC., SCI HOUSTON
21 MARKET SUPPORT CENTER, L.P., JANE D.
   JONES, GWEN PETTEWAY, THOMAS
22 RYAN, PAUL A. HOUSTON and CURTIS
   BRIGGS,
23
        Defendants.
24

25

26

27

28

1    Additional Attorneys for Plaintiffs, who will
     submit applications for admission *pro hac vice*:
2
     Patrick J. Solomon, NY Attorney No. 2716660
3    Annette Gifford, NY Attorney No. 4105870
     DOLIN, THOMAS & SOLOMON LLP
4    693 East Avenue
     Rochester, NY 14607
5    Telephone: (585) 272-0540
     Facsimile:  (585) 272-0574
6    psolomon@theemploymentattorneys.com

7    Charles H. Saul, PA State Bar No.19938
     Liberty J. Weyandt, PA State Bar No. 87654
8    MARGOLIS EDELSTEIN
     525 William Penn Place
9    Suite 3300
     Pittsburgh, PA 15219
10   Telephone: (412) 281-4256
     Facsimile: (412) 642-2380
11   csaul@margolisedelstein.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COLLECTIVE ACTION COMPLAINT

**AND NOW** come Plaintiffs Claude Bryant, Craig Fulcher, Sanford Levine, Thomas Thompson, et al., on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP, and Margolis Edelstein and file the following Collective Action Complaint:

## I.    INTRODUCTION

1.    This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to Plaintiffs Claude Bryant, Craig Fulcher, Sanford Levine, Thomas Thompson, et al., as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S. C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, and under 29 U.S.C. §216 (b).

3.    Venue is appropriate in the Northern District of California since some of the unlawful acts alleged were committed in this district and because defendants conduct business in this district.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

4.    Intradistrict Assignment.   This is a nationwide collective action notification involving violations which occurred across the country, including some which occurred in the Northern District of California.

## III.    PARTIES

### A.    Plaintiffs

5.    The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  Plaintiffs expressly include each individual identified

1 | in the caption, together with any similarly situated current or former employees who may file
2 | consent forms to opt-in to this collective action.

3 |      6.    Attached to this complaint in its Appendix A are the current Plaintiffs' consent
4 | forms to opt-in to this collective action. Each of these individuals, as well as any individual who
5 | opts-in to this action after the date of this complaint has full party status pursuant to 29 U.S.C. §
6 | 216 (b).

7 |      7.    All of the defendants except for Alderwoods Group, Inc. are liable to all plaintiffs
8 | either directly as an employer or as successor-in-interest to plaintiffs' direct employer.

9 |      8.    Defendant Alderwoods Group, Inc. ("Alderwoods") is liable to those plaintiffs who
10 | worked at funeral locations owned by Alderwoods and/or its affiliates (the "Alderwoods
11 | Employees").

12 | **B.**    **Defendants**

13 |      9.    Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its
14 | headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202.

15 |     10.    Defendant Service Corporation International ("SCI") is a corporation with its
16 | headquarters being at 1929 Allen Parkway, Houston, Texas 77019.

17 |     11.    Defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI
18 | Cooperative") is a Delaware corporation which is owned by SCI.

19 |     12.    Defendant SCI Eastern Market Support Center, L.P. ("SCI Eastern") is a limited
20 | partnership which is owned by SCI.

21 |     13.    Defendant SCI Western Market Support Center, L.P. a/k/a SCI Western Market
22 | Support Center, Inc. ("SCI Western") is a limited partnership or corporation which is owned by
23 | SCI.

24 |     14.    Defendant SCI Houston Market Support Center, L.P. ("SCI Houston") is a limited
25 | partnership which is owned by SCI.

26 |     15.    Defendants SCI Eastern, SCI Western and SCI Houston are referred to herein
27 | collectively as the "SCI Support Centers."

28 |

16.     The SCI Support Centers and the SCI Cooperative are referred to herein collectively as the "SCI Managing Entities."

17.     Defendants Alderwoods, SCI, and the SCI Managing Entities are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

18.     Upon information and belief, the SCI Managing Entities conduct human resources and other employment-related functions for defendants and their funeral locations.

19.     Upon information and belief, the SCI Support Centers provide all executive, management, administrative, accounting, data processing, and human resources services for defendants and their funeral locations.

20.     Upon information and belief, the field personnel and training departments of the SCI Managing Entities provide on-site training for defendants and their funeral locations.

21.     Upon information and belief, the SCI Cooperative, through agreements with the SCI Support Centers, provides additional human resources services and support for defendants and their funeral locations.

22.     Upon information and belief, the SCI Cooperative creates and distributes employee handbooks for defendants and their funeral locations.

23.     Upon information and belief, the SCI Cooperative provides Dignity University training for defendants and their funeral locations.

24.     Upon information and belief, the SCI Cooperative produces communications to employees of defendants and their funeral locations, including the weekly newsletter "Frontline," and the intranet site "Global Village."

25.     Upon information and belief, the SCI Cooperative administers benefit plans for the employees and has contracted with third-party benefit providers to respond to questions related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information.

26.     Upon information and belief, the SCI Managing Entities facilitate implementation of corporate strategies, policies and procedures.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

27.    Upon information and belief, the SCI Managing Entities are directly involved in the operations of defendants' business with respect to plaintiffs' employment.

28.    Upon information and belief, the SCI Managing Entities exercise or have exercised managerial responsibilities and substantial control over the terms of plaintiffs' employment.

29.    Upon information and belief, the SCI Managing Entities provided management services to SCI and its affiliates in relation to plaintiffs' employment.

30.    Upon information and belief, the SCI Managing Entities are not completely disassociated from SCI and its affiliates with respect to plaintiffs' employment.

31.    Upon information and belief, the SCI Managing Entities are controlled by or are under common control with SCI and its affiliates.

32.    Defendant Jane D. Jones has acted as Vice President of Human Resources for defendant SCI since 2005.

33.    Upon information and belief, Ms. Jones oversees human resources, training and education, and payroll and commission services – activities that assist approximately 20,000 employees in North America.

34.    Defendant Gwen Petteway has acted as Human Resources Director of defendant SCI Houston since February 2005.

35.    Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising human resources services to the subsidiary and affiliate companies of SCI, as well as training and benefits provided to those companies.

36.    Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising day-to-day human resources service and support for defendants' funeral home locations.

37.    Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

38.    Upon information and belief, Mr. Ryan's responsibilities include actively managing SCI.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    39.    Defendant Paul A. Houston is President, Chief Executive Officer and a Director of

2  Alderwoods.

3    40.    Upon information and belief, Mr. Houston has been Chief Executive Officer of

4  Alderwoods since in or around 2002.

5    41.    Upon information and belief, Mr. Houston's responsibilities include actively

6  managing Alderwoods.

7    42.    Defendant Curtis Briggs is President and/or Vice President of various entities

8  owned by SCI.

9    43.    Upon information and belief, Mr. Briggs is:

10        a.  Vice President for the General Partner of SCI Eastern

11        b.  Vice President for the General Partner of SCI Houston

12
13        c.  President and/or Vice President of the SCI Cooperative

14        d.  President and/or Vice President of SCI Western

15    44.    Upon information and belief, Mr. Briggs's responsibilities include actively

16  managing the SCI Managing Entities.

17    45.    Defendants Jones, Petteway, Ryan, Houston and Briggs are referred to herein

18  collectively as the "Individual Defendants."

19  ***SCI and the SCI Managing Entities Are Liable to Plaintiffs***

20    46.    Plaintiffs are employees and former employees of defendants who were suffered or

21  permitted to work by defendants and not paid their regular or statutorily required rate of pay for

22  all hours worked.  Plaintiffs expressly include each individual identified in the caption, together

23  with any similarly situated current or former employees who may file consent forms to opt-in to

24  this collective action.  Any individual who opts-in to this action has full party status pursuant to

25  29 U.S.C. § 216 (b).

26    47.    At all relevant times, SCI and the SCI Managing Entities are or have been

27  Plaintiffs' employers.

28

5

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    48.    At all relevant times, SCI and/or the SCI Managing Entities have suffered or

2    permitted Plaintiffs to perform work for them.

3    49.    At all relevant times, SCI and/or the SCI Managing Entities are or have been liable

4    for the employment of Plaintiffs.

5    50.    At all relevant times, Plaintiffs have acted directly or indirectly in the interest of

6    SCI and/or the SCI Managing Entities.

7    51.    At all relevant times, SCI and/or the SCI Managing Entities have operated

8    locations, either directly or through the SCI Affiliates, and therefore are the employers of

9    Plaintiffs who are or were employed at all locations.

10    52.    Collectively, SCI, the SCI Affiliates, the SCI Managing Entities and their funeral

11    service locations comprise a single, integrated enterprise, as they perform related activities

12    through unified operation or common control for a common business purpose.

13    53.    Upon information and belief, SCI and the SCI Affiliates exercise complete

14    dominion and control over the various funeral service locations.

15    54.    At all relevant times, Plaintiffs are or have been jointly employed by SCI, the SCI

16    Affiliates and/or the SCI Managing Entities at their funeral service locations.

17    55.    At all relevant times, the funeral service locations of SCI, the SCI Affiliates and/or

18    the SCI Managing Entities are or have been the Plaintiffs' employer.

19    56.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing

20    Entities operate interrelated business operations.

21    57.    At all relevant times, business operations of the funeral locations are or have been

22    centrally controlled by SCI and/or the SCI Managing Entities.

23    58.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing

24    Entities exercise common control of labor relations.

25    59.    Upon information and belief, SCI and/or the SCI Managing Entities own all of the

26    funeral service locations and exercise financial control over the business operations of those

27    locations.

28

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    60.    At all relevant times, SCI and/or the SCI Managing Entities maintain or have
2  maintained centralized control of employment relations.

3    61.    At all relevant times, the human resource functions of the funeral service locations
4  report or have reported directly or indirectly to SCI and/or the SCI Managing Entities.

5    62.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing
6  Entities operate under common management.

7    63.    Upon information and belief, SCI and/or the SCI Managing Entities exercise
8  common management of the various funeral locations.

9    64.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing
10  Entities have common ownership and financial control.

11    65.    In light of the economic realities of the enterprise operated by SCI, the SCI
12  Affiliates and the SCI Managing Entities, SCI and the SCI Managing Entities are joint employers
13  of all Plaintiffs.

14    66.    At all relevant times, Plaintiffs' work simultaneously benefited all of SCI, the SCI
15  Affiliates and the SCI Managing Entities.

16    67.    At all relevant times, the SCI Managing Entities acted directly or indirectly in the
17  interest of SCI in relation to Plaintiffs.

18    68.    At all relevant times, SCI acted directly or indirectly in the interest of the SCI
19  Managing Entities in relation to Plaintiffs.

20    69.    SCI and the SCI Managing Entities are not completely disassociated with respect to
21  the employment of Plaintiffs and the SCI Managing Entities are controlled by and/or are under
22  common control with SCI.

23    70.    In light of the economic realities of SCI, the SCI Affiliates and the SCI Managing
24  Entities' enterprise, at all relevant times SCI and the SCI Managing Entities were integrated
25  enterprises, employers, joint employers and/or single employers of Plaintiffs for purposes of
26  federal laws.

27

28

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

*All Defendants Are Liable to the Alderwoods Employees*

71.    All defendants are liable to those plaintiffs who worked at funeral locations owned by Alderwoods and/or its affiliates prior to the time Alderwoods was acquired by defendant Service Corporation International (the "Alderwoods Employees"), either directly or as successors-in-interest.

72.    At all relevant times, Alderwoods has been the employer of the Alderwoods Employees.

73.    At all relevant times, Alderwoods has suffered or permitted the Alderwoods Employees to perform work for Alderwoods.

74.    At all relevant times, Alderwoods has been liable for the employment of the Alderwoods Employees.

75.    At all relevant times, the Alderwoods Employees have acted directly or indirectly in the interest of Alderwoods.

76.    At all relevant times, Alderwoods has operated locations, either directly or through the Alderwoods Affiliates, and therefore is the employer of Plaintiffs who were employed at all Alderwoods locations.

77.    Collectively, Alderwoods, the Alderwoods Affiliates and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

78.    Upon information and belief, Alderwoods has exercised complete dominion and control over the Alderwoods funeral service locations.

79.    At all relevant times, the Alderwoods Employees have been jointly employed by Alderwoods and the Alderwoods Affiliates at their funeral service locations.

80.    At all relevant times, the funeral service locations of Alderwoods and the Alderwoods Affiliates have been the Alderwoods Employees' employer.

81.    Upon information and belief, Alderwoods and the Alderwoods Affiliates operate interrelated business operations.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    82.   At all relevant times, business operations of the funeral locations have been
2  centrally controlled by Alderwoods.

3    83.   Upon information and belief, Alderwoods has exercised common control of labor
4  relations.

5    84.   Upon information and belief, Alderwoods has owned all of the Alderwoods funeral
6  service locations and has exercised financial control over the business operations of those
7  locations.

8    85.   At all relevant times, Alderwoods has maintained centralized control of
9  employment relations.

10    86.   At all relevant times, the human resource functions of the Alderwoods funeral
11  service locations have reported directly or indirectly to Alderwoods.

12    87.   Upon information and belief, Alderwoods and the Alderwoods Affiliates operate
13  under common management.

14    88.   Upon information and belief, Alderwoods has exercised common management of
15  the various Alderwoods funeral home locations.

16    89.   Upon information and belief, Alderwoods and the Alderwoods Affiliates have
17  common ownership and financial control.

18    90.   In light of the economic realities of the enterprise operated by Alderwoods and the
19  Alderwoods Affiliates, Alderwoods is a joint employer of the Alderwoods Employees.

20    91.   At all relevant times, the Alderwoods Employees' work simultaneously benefited
21  Alderwoods and the Alderwoods Affiliates.

22    92.   At all relevant times, the Alderwoods Affiliates acted directly or indirectly in the
23  interest of Alderwoods in relation to the Alderwoods Employees.

24    93.   Alderwoods and the Alderwoods Affiliates have not been completely disassociated
25  with respect to the employment of the Alderwoods Employees and the Alderwoods Affiliates
26  have been controlled by and/or under common control with Alderwoods.

27    94.   Although SCI and the SCI Managing Entities were not the Alderwoods
28  Employees' direct employers at the time of some of the FLSA violations alleged herein,

1  Plaintiffs assert that SCI and the SCI Managing Entities, as further described below, are liable for
2  all violations alleged, either as an employer or under a successor liability theory.

3      95.    Upon information and belief, Coronado Acquisition Group ("Coronado"), at
4  relevant times hereto, was a wholly owned subsidiary of SCI, which was formed by SCI for the
5  sole purpose of merging with Alderwoods. At relevant times hereto, SCI and Coronado had the
6  same offices, telephone numbers, and corporate officers.

7      96.    Upon information and belief, Alderwoods, through its shareholders, has adopted a
8  merger agreement by and between Alderwoods, Coronado and/or SCI.

9      97.    Upon information and belief, SCI, through its shareholders, has adopted a merger
10  agreement between Alderwoods, Coronado and/or SCI.

11      98.    Upon information and belief, as of approximately November 2006, Alderwoods
12  and/or Coronado ("Merged Entities") became a wholly owned subsidiary of SCI.

13      99.    Upon information and belief, the Merged Entities, under the merger agreement,
14  continue business operations in substantially the same form as before the merger.

15      100.    Upon information and belief, the Merged Entities, under the merger agreement,
16  continue to use substantially the same workforce as before the merger, with substantially the
17  same supervisors and same working conditions as Alderwoods.

18      101.    Upon information and belief, the Merged Entities, under the merger agreement,
19  provide essentially the same services as before the merger and use the same facilities, equipment
20  and method of providing services as Alderwoods.

21      102.    Upon information and belief, SCI and the SCI Managing Entities are successors-in-
22  interest to Alderwoods' liability. As a successors-in-interest, SCI and the SCI Managing Entities
23  are jointly and severally liable for all of the unlawful conduct of Alderwoods alleged herein.

24      103.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are
25  or have been the employer of the Alderwoods Employees.

26      104.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have
27  suffered or permitted the Alderwoods Employees to perform work for them.

28

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    105.   At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are
2 or have been liable for the employment of the Alderwoods Employees.

3    106.   At all relevant times, the Alderwoods Employees have acted directly or indirectly
4 in the interest of SCI, the SCI Managing Entities and the Merged Entities.

5    107.   At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have
6 operated locations, either directly or through the SCI Affiliates, and therefore are the employers
7 of the Alderwoods Employees.

8    108.   Collectively, SCI, the SCI Managing Entities and the Merged Entities and their
9 funeral service locations comprise a single, integrated enterprise, as they perform related
10 activities through unified operation or common control for a common business purpose.

11    109.   Upon information and belief, SCI and/or the SCI Managing Entities, under the
12 merger agreement, exercise complete dominion and control over Alderwoods and its funeral
13 service locations.

14    110.   At all relevant times, the Alderwoods Employees are or have been jointly
15 employed by SCI, the SCI Managing Entities and the Merged Entities at their funeral service
16 locations.

17    111.   At all relevant times, the funeral service locations of Alderwoods are or have been
18 the Alderwoods Employees' employer.

19    112.   Upon information and belief, SCI, the SCI Managing Entities and the Merged
20 Entities operate interrelated business operations.

21    113.   At all relevant times, business operations of the funeral locations are or have been
22 centrally controlled by SCI, the SCI Managing Entities and the Merged Entities.

23    114.   Upon information and belief, SCI, the SCI Managing Entities and the Merged
24 Entities exercise common control of labor relations.

25    115.   Upon information and belief, SCI, the SCI Managing Entities and/or the Merged
26 Entities own all of the funeral service locations and exercise financial control over the business
27 operations of those locations.

28

116. At all relevant times, SCI, the SCI Managing Entities and/or the Merged Entities maintain or have maintained centralized control of employment relations.

117. At all relevant times, the human resource functions of the funeral service locations report or have reported directly or indirectly to SCI, the SCI Managing Entities and/or the Merged Entities.

118. Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities operate under common management.

119. Upon information and belief, SCI, the SCI Managing Entities and/or the Merged Entities exercise common management of the various funeral home locations.

120. Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities have common ownership and financial control.

121. In light of the economic realities of the enterprise operated by SCI, the SCI Managing Entities and the Merged Entities, each of the defendants are joint employers of the Alderwoods Employees.

122. At all relevant times, the Alderwoods Employees' work simultaneously benefited all of SCI, the SCI Managing Entities and the Merged Entities.

123. At all relevant times, the Merged Entities acted directly or indirectly in the interest of SCI and the SCI Managing Entities in relation to the Alderwoods Employees.

124. SCI, the SCI Managing Entities and the Merged Entities are not completely disassociated with respect to the employment of the Alderwoods Employees and the SCI Managing Entities and the Merged Entities are controlled by and/or are under common control with SCI.

125. In light of the economic realities of SCI, the SCI Managing Entities and the Merged Entities' enterprise, at all relevant times SCI, the SCI Managing Entities and the Merged Entities were integrated enterprises, employers, joint employers, single employers and/or successor employers of Plaintiffs for purposes of federal laws and/or SCI and the SCI Managing Entities constitute successors-in-interest to Alderwoods.

12

1 | *The Individual Defendants Are Liable to Plaintiffs*

2      126.   At all relevant times, the Individual Defendants are or have been the employer of
3 | Plaintiffs.

4      127.   At all relevant times, the Individual Defendants have suffered or permitted the
5 | Plaintiffs to perform work for them.

6      128.   At all relevant times, the Individual Defendants are or have been liable for the
7 | employment of Plaintiffs.

8      129.   At all relevant times, the Individual Defendants were responsible for defendants'
9 | human resources and employment functions with respect to Plaintiffs.

10      130.   Upon information and belief, Individual Defendants' responsibilities for
11 | defendants' human resources and employment functions included drafting, approving,
12 | distributing, supervising, enforcing and/or monitoring defendants' human resources and
13 | employment policies, including those related to the hours Plaintiffs worked, the recordkeeping
14 | associated with those hours, and the compensation Plaintiffs received.

15      131.   Upon information and belief, Individual Defendants were directly involved in the
16 | operations of defendants' business with respect to these human resources and employment
17 | functions.

18      132.   Upon information and belief, Individual Defendants exercised direction and control
19 | with respect to the defendants' human resources and employment functions.

20      133.   Upon information and belief, Individual Defendants actively managed defendants'
21 | human resources and employment policies, interfaced with the other defendants and their funeral
22 | locations regarding those policies, and made decisions regarding the policies and the manner in
23 | which the policies were applied to Plaintiffs.

24      134.   At all relevant times, Plaintiffs have acted directly or indirectly in the interest of
25 | the Individual Defendants.

26      135.   At all relevant times, Plaintiffs are or have been jointly employed by the Individual
27 | Defendants.

28

1    136.   At all relevant times, the Individual Defendants acted directly or indirectly in the

2    interest of SCI and/or the SCI Managing Entities in relation to Plaintiffs.

3    **IV.   FACTUAL BACKGROUND**

4    137.   Plaintiffs worked for defendants and were not paid their regular or statutorily

5    required rate of pay for all hours worked and were not paid at time and one-half for hours they

6    worked over 40 in a week.

7    138.   Defendants' policy and/or practice was to not compensate Plaintiffs for work it

8    suffered or permitted Plaintiffs to perform.

9    139.   Defendants knew Plaintiffs were supposed to receive such wages, however,

10   defendants willfully failed to pay for all hours when Plaintiffs worked.

11   140.   Defendants' practice is to be deliberately indifferent to these violations of the

12   statutory overtime requirements.

13   141.   The failure to pay overtime is willful.

14   142.   Examples of defendants' policies and practices to deprive Plaintiffs of their earned

15   wages and wage premiums are set forth below:

16   a.   **Subclass A:**  Defendants implemented a "Community Work Policy."  Under
17        the policy, defendants suffered or permitted their employees to perform
18        "Community Work" so as to increase revenues for defendants. Defendants did
          not compensate the employees for such time spent in Community Work in
19        furtherance of the employer's business under the "Community Work Policy."

20   b.   **Subclass B:**  Defendants implemented an "On Call Pay Policy."  Under the
          policy, employees were suffered or permitted to perform work by handling calls
21        and other work related issues after normal business hours, but defendants would
          not compensate employees for work performed outside the regular workday,
22        off-site from the funeral home.

23   c.   **Subclass C:**  Defendants' policy required that certain hourly employees train
24        for and obtain certain licenses.  Defendants did not pay for the training, test
          taking and continuing education requirements for those licenses despite
25        suffering or permitting employees to perform such work.

26   d.   **Subclass D:**  Defendants' policy required that certain hourly employees take
27        other types of training.  Defendants did not pay for such training, despite
          suffering or permitting employees to perform such work.
28

14

e. **Subclass E:** Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f. **Subclass F:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for lunch breaks. Defendants did, however, suffer and permit their employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g. **Subclass G:** Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h. **Subclass H:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted plaintiffs to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i. **Subclass I:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

143. Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

144. More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

**CLAIM I**

**FLSA**

145.    The preceding paragraphs are incorporated herein as if fully set forth herein.

146.    Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs.

**CLAIM II**

**FAILURE TO MAINTAIN PROPER RECORDS**

147.    The preceding paragraphs are incorporated herein as if fully set forth herein.

148.    Defendants violated provisions of the FLSA by failing to make, keep, and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week, and/or the total overtime compensation for each work week and are liable to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award of the value of Plaintiffs' unpaid wages;

(c)    liquidated, compensatory, consequential and punitive damages;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

1

## JURY DEMAND

2

3    Plaintiffs demand a jury to hear and decide all issues of fact.

4                                    Respectfully Submitted,
5                                    ROSEN, BIEN & GALVAN, LLP
6
7    Date: November __, 2007         By: _____
8                                    Sanford Jay Rosen, State Bar No. 62566
                                     Maria V. Morris, State Bar No. 223903
9                                    Lori E. Rifkin, State Bar No. 244081
                                     315 Montgomery Street, Tenth Floor
10                                   San Francisco, CA 94104
                                     Telephone: (415) 433-6830
11
12                                   DOLIN, THOMAS & SOLOMON LLP
                                     Patrick J. Solomon, NY Attorney No. 2716660
13                                   Annette Gifford, NY Attorney No. 4105870
                                     693 East Avenue
14                                   Rochester, NY 14607
                                     Telephone: (585) 272-0540
15
16                                   MARGOLIS EDELSTEIN
17                                   Charles H. Saul, PA State Bar No.19938
                                     Liberty J. Weyandt, PA State Bar No. 87654
18                                   525 William Penn Place, Suite 3300
                                     Pittsburgh, PA 15219
19                                   Telephone: (412) 281-4256
20
21                                   Attorneys for Plaintiff
22
23
24
25
26
27
28

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1

## **APPENDIX A**

2

3    Consent forms for sixty-two plaintiffs to this action are hereby filed as attachments in this Appendix.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT K**

1  Sanford Jay Rosen, State Bar No. 62566
   Maria V. Morris, State Bar No. 223903
2  Lori E. Rifkin, State Bar No. 244081
   ROSEN, BIEN & GALVAN, LLP
3  315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com

6  [Additional Counsel Listed on Following Page]

7

8  Attorneys for Plaintiffs

~~ENDORSED~~
FILED
ALAMEDA COUNTY

JAN 2 5 2008

CLERK OF THE SUPERIOR COURT
By _____ S. Halcrombe _____
                                    Deputy

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       COUNTY OF ALAMEDA

11  CLAUDE BRYANT, JOSEPH BIERNACKI,  )   Case No. RG 07359593
    GORDON FARMER, RHEALYN            )
12  HOLLAND, JAMES STICKLE, ELEANOR   )   **CLASS ACTION**
    RIGGIO, FRANK ACUNA, RICHARD      )
13  LAMASTERS, KENNETH ALLEN, CRAIG   )   **AMENDED COMPLAINT**
    FULCHER, SANFORD LEVINE and       )
14  THOMAS THOMPSON, on behalf of     )   (1)  **VIOLATION OF CALIFORNIA**
    themselves and all other employees and former )        **LABOR LAWS**
15  employees similarly situated,     )   (2)  **STATE WAGE AND HOUR**
                                      )        **LAWS**
16              Plaintiffs,           )   (3)  **UNJUST ENRICHMENT/**
                                      )        **RESTITUTION**
17  v.                                )   (4)  **CONVERSION**
                                      )   (5)  **FRAUD AND DECEIT**
18  SERVICE          CORPORATION      )   (6)  **MISREPRESENTATION**
    INTERNATIONAL, SCI FUNERAL AND    )   (7)  **BREACH OF CONTRACT**
19  CEMETERY          PURCHASING      )   (8)  **BREACH OF IMPLIED**
    COOPERATIVE, INC., SCI EASTERN    )        **COVENANT OF GOOD FAITH**
20  MARKET SUPPORT CENTER, L.P., SCI  )        **AND FAIR DEALING**
    WESTERN MARKET SUPPORT CENTER,    )   (9)  **QUANTUM MERUIT**
21  L.P. a/k/a SCI WESTERN MARKET     )   (10) **UNLAWFUL BUSINESS**
    SUPPORT CENTER, INC., SCI HOUSTON )        **PRACTICES**
22  MARKET SUPPORT CENTER, L.P., JANE )
    D. JONES, GWEN PETTEWAY, THOMAS   )
23  RYAN, and CURTIS BRIGGS,          )   **DEMAND FOR JURY TRIAL**
                                      )
24              Defendants.           )
    _____   )

25

26

27

28

1

2   Additional Attorneys for Plaintiffs, who will
    submit applications for admission *pro hac vice*:
3
    J. Nelson Thomas, NY Attorney No. 2579159
4   Patrick J. Solomon, NY Attorney No. 2716660
    Michael J. Lingle, NY Attorney No. 3925765
5   Justin Cordello, NY Attorney No. 4131447
    Annette Gifford, NY Attorney No. 4105870
6   DOLIN, THOMAS & SOLOMON LLP
    693 East Avenue
7   Rochester, NY 14607
    Telephone: (585) 272-0540
8   Facsimile: (585) 272-0574
    nthomas@theemploymentattorneys.com
9
    Charles H. Saul, PA State Bar No.19938
10  Liberty J. Weyandt, PA State Bar No. 87654
    Kyle T. McGee, PA State Bar No. 205661
11  MARGOLIS EDELSTEIN
    525 William Penn Place
12  Suite 3300
    Pittsburgh, PA 15219
13  Telephone: (412) 281-4256
    Facsimile: (412) 642-2380
14  csaul@margolisedelstein.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CLASS ACTION COMPLAINT

AND NOW come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, and file the following Class Action Complaint:

## I.    INTRODUCTION AND PROCEDURAL HISTORY

1.    This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, under the laws of California and other laws of the various States in which defendants do business.

2.    On December 12, 2006, Service Corporation International ("SCI"), a named defendant in this action, was named in a complaint filed in the Western District of Pennsylvania. That complaint also named Alderwoods Group, Inc. ("Alderwoods") as a defendant in that action.

3.    Prior to the filing of the Pennsylvania complaint, SCI had acquired Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary. After the merger, SCI continued to operate the vast majority of both its own funeral homes and those of Alderwoods.

4.    The Pennsylvania complaint was filed as a class and collective action alleging, *inter alia*, that employees who worked at defendants' funeral home locations were not properly paid for all the time they worked for defendants. It asserted violations of both the Fair Labor Standards Act ("FLSA") and state wage and hour laws.

5.    The employees (whether they worked only at an Alderwoods location that became an SCI location, or at any other SCI location) shared a number of factual similarities: they suffered similar pay violations; SCI and/or its agents were their joint employers; SCI was liable for the violations of the entities it had acquired.

6.    Because of the overlapping legal liability of defendants, as well as the overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in the interests of judicial efficiency for defendants to be named in a common action.

7.    The Court in the Western District of Pennsylvania conditionally certified an

FLSA class of employees and directed that notice be sent to those individuals who worked at an Alderwoods location.

8.    In response to that notice, hundreds of current and former employees opted-in to the Pennsylvania action.

9.    On or about June 8, 2007, the Court in the Western District of Pennsylvania declined to exercise supplemental jurisdiction over any of the state law claims alleged in that action. Therefore, on or about July 9, 2007, the employees of SCI and Alderwoods reasserted their state law claims in a Class Action Complaint filed in the Superior Court of the State of California for the County of Alameda, Case No. RG 07334643 (the "Combined State Law Action").

10.    Subsequently, the Court in the Western District of Pennsylvania determined it would only hear claims on behalf of employees who worked only for Alderwoods, and that claims of employees who had worked only at other SCI locations should be heard in a separate action.

11.    Therefore, based on defendants' position that resulted in that ruling, the Combined State Law Action was voluntarily dismissed so that the state law claims of the employees who worked at locations managed by Alderwoods could be heard separately from those who worked at other SCI locations.

12.    In the instant action, employees who worked at funeral locations owned and managed by SCI and its subsidiaries and affiliates assert violations of various state laws based upon defendants' failure to pay employees their regular or statutorily required rate of pay for all hours worked.

13.    The plaintiffs in this lawsuit include employees who worked at all SCI funeral locations, including those employed at Alderwoods locations after the time SCI and its subsidiaries and affiliates assumed management of those locations.

## II.    JURISDICTION AND VENUE

14.    This Court has jurisdiction over defendants because defendants conduct business in this State.

15.    Venue is proper in this judicial district, pursuant to Code of Civil Procedure § 395.5 and Corporations Code § 2105.

16.    Upon information and belief, defendant Service Corporation International ("SCI") is a foreign corporation which has not obtained a certificate of qualification to do business in California.

17.    Upon information and belief, defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. is a foreign corporation which has not obtained a certificate of qualification to do business in California.

18.    Venue is also proper in this judicial district because defendants maintain and operate one or more business locations, transact business, and/or have agents in Alameda County, as well as in other counties in the State of California, and are otherwise within this Court's jurisdiction for purposes of service of process.  Obligations and/or liabilities of the defendants arose in this County because defendants have contracted to employ or have employed plaintiffs in Alameda County, as well as in other counties in the State of California. Some of the claims in this matter arose from contracts for employment which were to be performed, at least in part, in Alameda County, as well as in other counties in the State of California.  Some of the unlawful acts alleged herein occurred in Alameda County, as well as in other counties in the State of California, and have a direct effect on plaintiffs within Alameda County and within the State of California.

III.    **PARTIES**

**A. Plaintiffs**

19.    The class members ("Class Members") are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  As more fully set forth in the foregoing paragraphs, which Class Members incorporate by reference as if fully set forth herein, Class Members' claims are connected to Alameda County as some of those claims arose from contracts to be performed in Alameda County, some of the unlawful acts alleged

1  herein occurred in Alameda County, and some of those acts have a direct effect on Class

2  Members within Alameda County.

3              **B. Defendants**

4          20.    Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the

5  "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western Market

6  Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P. ("SCI

7  Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston") (collectively, SCI

8  Western, SCI Eastern and SCI Houston are referred to as the "SCI Support Centers"), are

9  enterprises engaged in interstate commerce with an annual gross volume of sales not less than

10  $500,000.

11  *The SCI Support Centers Are Liable to Class Members*

12          21.    SCI Western is a limited partnership or corporation which is owned, directly or

13  indirectly, by SCI.

14          22.    SCI Eastern is a limited partnership which is owned, directly or indirectly, by

15  SCI.

16          23.    SCI Houston is a limited partnership which is owned, directly or indirectly, by

17  SCI.

18          24.    The primary functions of the SCI Support Centers are to help facilitate the

19  execution of corporate strategies, coordinate communications between the field and corporate

20  offices, and serve as liaisons for the implementation of policies and procedures.

21          25.    The SCI Support Centers provide day-to-day human resources services and

22  support for individual locations, including all executive, management, administrative,

23  accounting, data processing, and human resources services for defendants' locations.

24          26.    On-site training at funeral homes and cemeteries is provided by field personnel

25  and training departments affiliated with the SCI Support Centers.

26          27.    Each SCI Support Center has an ownership interest in the SCI Cooperative and

27  together the SCI Support Centers collectively own a majority of the SCI Cooperative.

28

28.    The SCI Support Centers, through their controlling interest in the SCI Cooperative, provide "Dignity University training programs" by which defendants ensure uniform services at their nationwide locations, publish and maintain the weekly newsletter "Frontline," and the "Global Village" intranet site, through which defendants communicate with their nationwide employees, and administer benefit plans for employees and contract with third-party benefit providers to respond to questions related to day-to-day benefits services.

29.    Additionally, the SCI Support Centers, through their controlling interest in the SCI Cooperative, maintain a payroll department and database which centralize information regarding Class Members, including employment records and payroll information.

30.    SCI and the entities it owns, directly or indirectly, including the SCI Support Centers, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

31.    The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

32.    Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, are actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

33.    Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy

-5-
AMENDED COMPLAINT-CLASS ACTION
Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593

regarding the calculation of Class Members' overtime.

34.    Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively ensure defendants' compliance or non-compliance with the state and common laws asserted in this action.

35.    Upon information and belief, the SCI Support Centers, in concert with others, play a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

36.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set employees' schedules, hours and standard benefit levels.

37.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set standard pay scales.

38.    Upon information and belief, the SCI Support Centers, in concert with others, determine and draft policies, answer questions regarding human resources issues and policies, resolve issues regarding policies and their application, counsel locations on human resources issues, and communicate with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

39.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

40.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

41.    Upon information and belief, the SCI Support Centers' primary function of facilitating the execution of corporate strategies includes maintaining and directing a single, integrated set of operations across the SCI network.

42.    Upon information and belief, the SCI Support Centers are responsible for, and subject to, centralized management directions and decisions.

43.    The SCI Support Centers are owned, directly or indirectly, by defendant SCI. Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI Cooperative that is owned by the SCI Support Centers.

44.    Upon information and belief, the SCI Support Centers are part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

45.    Because the SCI Support Centers have authority to hire or fire employees, provide day-to-day support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, the SCI Support Centers have the power to hire and fire employees.

46.    Because the SCI Support Centers have authority to establish employees' work schedules and/or conditions of employment, provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employees' benefit programs, the SCI Support Centers supervise and control employees' work schedules and/or conditions of employment.

47.    Because the SCI Support Centers have authority to establish employees' rate and method of payment and centrally control payroll functions, the SCI Support Centers determine

the rate and method of employees' payment.

48.    Because the SCI Support Centers play a central role in the keeping of centralized records, including a database, regarding employees' employment records, the SCI Support Centers maintain employees' employment records.

49.    For all of the foregoing reasons, among others, including the SCI Support Centers' services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, the SCI Support Centers provide centralized control over defendants' labor relations.

50.    Because the SCI Support Centers provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employee's benefit programs, they are affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in relation to the employment of Class Members.

51.    Because the SCI Support Centers are actively involved in the creation of the illegal policies complained of in this case, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensure defendants' compliance or non-compliance with the state and common laws asserted in this action, the SCI Support Centers actively participate in the violations complained of in this action.

52.    Because the SCI Support Centers, together with the SCI Cooperative, are owned by SCI, directly or indirectly, the SCI Support Centers and other defendants share common ownership.

53.    Because the SCI Support Centers are subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Support Centers and other defendants share common management.

54.    Because the SCI Support Centers are subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Support Centers and other defendants share functional integration of operations.

55.    Because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to employees, centrally control the payroll functions related to employees' employment, provide services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, and are subject to a network-wide single line management model, the SCI Support Centers are not completely disassociated with respect to employees' employment.

56.    The SCI Support Centers may be deemed to share control of employees, directly or indirectly, by reason of the fact that they are under common control with the SCI Cooperative and the funeral home locations because they are all owned by SCI, directly or indirectly, and because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to Class Members, centrally control the payroll functions related to employees' employment, provide services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, and are subject to a network-wide single line management model.

57.    Because the SCI Support Centers are part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Support Centers are an alter ego of SCI and the other entities SCI owns.

58.    Based upon the foregoing, the SCI Support Centers are liable to Class Members because of their active role in operating the business, their role in the violations complained of in this action, their status as employer, joint employer, single employer, alter ego, or otherwise

1  according to state statutory and common law.

2

3  *The SCI Cooperative Is Liable to Class Members*

4      59.    The SCI Cooperative is a Delaware corporation which is owned, directly or

5  indirectly, by SCI and the SCI Support Centers.

6      60.    The SCI Cooperative, through agreements with the SCI Support Centers,

7  provides additional human resources services and support for the funeral home locations.

8      61.    On-site training at funeral homes and cemeteries is provided by field personnel

9  and training departments affiliated with the SCI Cooperative.

10     62.    The SCI Cooperative publishes and maintains the weekly newsletter "Frontline,"

11  and the "Global Village" intranet site, publications through which defendants communicate

12  with their nationwide employees.

13     63.    The SCI Cooperative administers benefits by contracting with third-party benefit

14  providers to respond to questions related to day-to-day benefits services, such as local provider

15  questions, access to online services, and benefits provider contact information.  To the extent

16  that those third-party providers cannot respond to questions, the SCI Cooperative will respond.

17     64.    The SCI Cooperative maintains a payroll department and a database that contains

18  information on current and former employees of SCI subsidiaries.

19     65.    SCI and the entities it owns directly or indirectly, including the SCI Cooperative,

20  employ a single line management model in an effort to streamline the organization and ensure

21  that operational efficiencies are achieved throughout the SCI network.

22     66.    The funeral home locations that SCI owns, directly or indirectly, are organized

23  into various regions and within each region the funeral home locations share common

24  resources including personnel, preparation services and vehicles.

25     67.    Upon information and belief, the SCI Cooperative, due in part to its role of

26  providing additional human resources services and support, in concert with others, is actively

27  involved in the creation of the illegal policies complained of in this case, including, but not

28  limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy,

-10-
AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

68.     Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

69.     Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action.

70.     Upon information and belief, the SCI Cooperative, in concert with others, plays a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

71.     Upon information and belief, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents, make decisions that set employees' schedules, hours, and standard benefit levels.

72.     Upon information and belief, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents, make decisions that set standard pay scales.

73.     Upon information and belief, the SCI Cooperative determines and drafts policies, answers questions regarding human resources issues and policies, resolves issues regarding policies and their application, counsels locations on human resources issues, and communicates with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

74.    Upon information and belief, the SCI Cooperative provides employees with information regarding benefit plans and providers, oversees the implementation and execution of benefit plans, retains ultimate authority for providing information and responding to questions regarding the benefit plans, maintains records regarding the benefit plans, makes determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and is responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

75.    Upon information and belief, the SCI Cooperative maintains payroll records regarding employees and, in concert with others, the SCI Cooperative has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

76.    Upon information and belief, the SCI Cooperative's functions in providing services and support regarding human resources, training, benefits administration, and payroll include a function maintaining and directing a single, integrated set of operations across the SCI network.

77.    Upon information and belief, the SCI Cooperative is responsible for, and subject to, centralized management directions and decisions.

78.    The SCI Cooperative is owned, directly or indirectly, by defendants SCI and the SCI Support Centers.  Additionally, SCI owns the SCI Support Centers, directly or indirectly.

79.    Upon information and belief, the SCI Cooperative is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

80.    Because the SCI Cooperative has authority to hire or fire Class Members, provides day-to-day support regarding human resources issues, including the hiring and firing

1  of Class Members, and controls the drafting and enforcement of the policies which govern the
2  hiring and firing of employees, the SCI Cooperative has the power to hire and fire employees.
3      81.    Because the SCI Cooperative has authority to establish employees' work
4  schedules and/or conditions of employment, provides day-to-day support regarding human
5  resources issues, including employees' work schedules and/or conditions of employment,
6  controls the drafting and enforcement of the policies which govern employees' schedules
7  and/or conditions of employment, and administers employees' benefit programs, the SCI
8  Cooperative supervises and controls employees' work schedules and/or conditions of
9  employment.
10     82.    Because the SCI Cooperative has authority to establish employees' rate and
11 method of payment and centrally control payroll functions, the SCI Cooperative determines the
12 rate and method of employees' payment.
13     83.    Because the SCI Cooperative keeps centralized records, including a database,
14 regarding employees' employment records, the SCI Cooperative maintains employees'
15 employment records.
16     84.    For all of the foregoing reasons, among others, including the SCI Cooperative's
17 human resources services and support, training function, publication of communications across
18 the SCI network, administration of benefit programs, and maintenance of the payroll
19 department, the SCI Cooperative provides centralized control over defendants' labor relations.
20     85.    Because the SCI Cooperative provides day-to-day support regarding human
21 resources issues, including employees' work schedules and/or conditions of employment,
22 controls the drafting and enforcement of the policies which govern employees' schedules
23 and/or conditions of employment, and administers employees' benefit programs, it is
24 affirmatively, directly, and actively involved in operations of the defendants' business
25 functions, particularly as it relates to the employment of Class Members.
26     86.    Because the SCI Cooperative is actively involved in the creation of the illegal
27 policies complained of in this case, actively advises defendants' agents on the enforcement of
28 the illegal policies complained of in this case and actively ensures defendants' compliance or

-13-
AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

1  non-compliance with the state and common laws asserted in this action, the SCI Cooperative
2  actively participates in the violations complained of in this action.
3       87.    Because the SCI Cooperative, together with the SCI Support Centers, is owned
4  by SCI, directly or indirectly, the SCI Cooperative and other defendants share common
5  ownership.
6       88.    Because the SCI Cooperative is subject to centralized management directions and
7  decisions that govern the entities owned by SCI, including a single line management model
8  applicable to the entire SCI network, the SCI Cooperative and other defendants share common
9  management.
10      89.    Because the SCI Cooperative is subject to a single line management model
11  applicable to the entire SCI network for the purpose of streamlining the organization and
12  achieving operational efficiencies, the SCI Cooperative and other defendants share functional
13  integration of operations.
14      90.    Because the SCI Cooperative controls the drafting and enforcement of the
15  employment and human resources policies related to employees, centrally controls the payroll
16  functions related to employees' employment, provides services and support with respect to
17  human resources, training, and nationwide communications with employees, and is subject to a
18  network-wide single line management model, the SCI Cooperative is not completely
19  disassociated with respect to employees' employment.
20      91.    The SCI Cooperative may be deemed to share control of employees, directly or
21  indirectly, by reason of the fact that it is under common control with the SCI Support Centers
22  and the funeral home locations because they are all owned by SCI, directly or indirectly, and
23  because the SCI Cooperative controls the drafting and enforcement of the employment and
24  human resources policies related to employees, centrally controls the payroll functions related
25  to employees' employment, provides services and support with respect to human resources,
26  training, and nationwide communications with employees, and is subject to a network-wide
27  single line management model.
28

92.    Because the SCI Cooperative is part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Cooperative is an alter ego of SCI and the other entities SCI owns.

93.    Based upon the foregoing, the SCI Cooperative is liable to Class Members because of its active role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to state statutory and common law.

***SCI Is Liable to Class Members***

94.    Defendant SCI is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019.

95.    SCI owns, directly or indirectly, various funeral home locations and various other companies or entities, including the SCI Cooperative and the SCI Support Centers, in a nationwide enterprise.

96.    SCI and the entities it owns directly or indirectly, including the SCI Cooperative and the SCI Support Centers, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

97.    The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

98.    Upon information and belief, at all relevant times all functions at all entities in the SCI network, including the SCI Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

99.    Upon information and belief, at all relevant times SCI maintained control and authority, directly or indirectly, over all functions at the entities in the SCI network, including the SCI Cooperative and the SCI Support Centers.

100.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

101.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning advising defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members' overtime.

102.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning defendants' compliance or non-compliance with the state and common laws asserted in this action.

103.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

104.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' schedules, hours and standard benefit levels.

105.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning standard pay scales.

106.   Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the determination and drafting of policies, answering questions regarding human resources issues and policies, resolving issues regarding policies and their application, counseling locations on human resources issues, and

1  communicating with employees about company issues and human resources issues and

2  policies, including issues related to hours worked and payment for such hours worked.

3      107.   Upon information and belief, SCI, in concert with others, has the authority to,

4  and does, through its agents, make decisions concerning providing employees with information

5  regarding benefit plans and providers, overseeing the implementation and execution of benefit

6  plans, providing information and responding to questions regarding the benefit plans,

7  maintaining records regarding the benefit plans, making determinations, either directly or

8  indirectly, regarding the scope and amount of benefits available to employees, and providing

9  employees, directly or indirectly, with information regarding their benefits, including benefits

10 statements and information regarding their 401(k) plans.

11     108.   Upon information and belief, SCI, in concert with others, has the authority to,

12 and does, through its agents, make decisions concerning the issuance of payroll checks,

13 directly or indirectly.

14     109.   SCI, in concert with others, has the authority to, and does, through its agents,

15 make decisions concerning maintaining and directing a single, integrated set of operations

16 across the SCI network.

17     110.   Upon information and belief, SCI, in concert with others, has the authority to,

18 and does, through its agents, make decisions concerning centralized management directions

19 and decisions.

20     111.   Upon information and belief, SCI is part of an extensive and complex network of

21 corporations which SCI has created and owns in an effort to operate its nationwide locations in

22 a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to

23 avoid liability for paying its common employees and prevents employees from accurately

24 identifying their employers.

25     112.   Because SCI, in concert with others, has the authority to, and does, through its

26 agents, make decisions concerning hiring or firing employees, providing support regarding

27 human resources issues, including the hiring and firing of Class Members, and controlling the

28

1  drafting and enforcement of the policies which govern the hiring and firing of employees, SCI

2  has the power to hire and fire employees.

3        113.   Because SCI, in concert with others, has the authority to, and does, through its

4  agents, make decisions concerning employees' work schedules and/or conditions of

5  employment, providing support regarding human resources issues, including Class Members'

6  work schedules and/or conditions of employment, controlling the drafting and enforcement of

7  the policies which govern employees' schedules and/or conditions of employment, and

8  administering employees' benefit programs, SCI supervises and controls employees' work

9  schedules and/or conditions of employment.

10       114.   Because SCI, in concert with others, has the authority to, and does, through its

11 agents, make decisions concerning employees' rate and method of payment and centrally

12 controlling payroll functions, SCI determines the rate and method of employees' payment.

13       115.   Because SCI, in concert with others, has the authority to, and does, through its

14 agents, make decisions concerning centralized records, including a database, regarding

15 employees' employment records, SCI maintains employees' employment records.

16       116.   For all of the foregoing reasons, among others, including SCI's authority and

17 exercise of authority with respect to human resources services and support, training function,

18 publication of communications across its network, administration of benefit programs, and

19 maintenance of the payroll department, SCI provides centralized control over defendants' labor

20 relations.

21       117.   Because SCI, in concert with others, has the authority to, and does, through its

22 agents, make decisions concerning human resources issues, including employees' work

23 schedules and/or conditions of employment, controlling the drafting and enforcement of the

24 policies which govern employees' schedules and/or conditions of employment, and

25 administering employees' benefit programs, it plays a central role in operations of defendants'

26 business functions, particularly in regards to the employment of Class Members.

27       118.   Because SCI, in concert with others, has the authority to, and does, through its

28 agents, make decisions concerning the illegal policies complained of in this case, advising of

1  defendants' agents on the enforcement of the illegal policies complained of in this case and

2  ensuring defendants' compliance or non-compliance with the state and common laws asserted

3  in this action, SCI plays a central role in the violations complained of in this action.

4      119.   Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI

5  Support Centers, SCI and the other defendants share common ownership.

6      120.   Because SCI maintains and is subject to centralized management directions and

7  decisions that govern the entities it owns, directly or indirectly, including a single line

8  management model applicable to the entire SCI network, SCI and the other defendants share

9  common management.

10     121.   Because SCI maintains and is subject to a single line management model

11  applicable to the entire SCI network for the purpose of streamlining the organization and

12  achieving operational efficiencies, SCI and the other defendants share functional integration of

13  operations.

14     122.   Because SCI, in concert with others, has the authority to, and does, through its

15  agents, make decisions concerning drafting and enforcing employment and human resources

16  policies related to employees, centrally controlling the payroll functions related to employees'

17  employment, providing services and support with respect to human resources, training, and

18  nationwide communications with employees, and is subject to a network-wide single line

19  management model, SCI is not completely disassociated with respect to employees'

20  employment.

21     123.   SCI may be deemed to share control of employees, directly or indirectly, by

22  reason of the fact that it is under common control with the SCI Cooperative, the SCI Support

23  Centers and the funeral home locations, all of which are owned by SCI, directly or indirectly,

24  and because SCI plays a central role in the drafting and enforcement of the employment and

25  human resources policies related to employees, centrally controlling the payroll functions

26  related to employees' employment, providing services and support with respect to human

27  resources, training, and nationwide communications with employees, and maintains and is

28  subject to a network-wide single line management model.

1      124.   Because SCI maintains and is part of an extensive and complex network through

2    which it promotes a fraud or injustice in attempting to shield from liability itself and other

3    entities which are responsible for employees' employment and in preventing employees from

4    accurately determining the identity of their employers, SCI is an alter ego of the other

5    defendants and the other entities it owns.

6      125.   Based upon the foregoing, SCI is liable to employees because of its central role

7    in operating the business, its role in the violations complained of in this action, its status as

8    employer, joint employer, single employer, alter ego, or otherwise according to state statutory

9    and common law.

10   *Jane D. Jones Is Liable to Class Members*

11     126.   Defendant Jane D. Jones has acted as Vice President of Human Resources for

12   SCI since 2005.

13     127.   Ms. Jones oversees human resources, training and education, and payroll and

14   commission services for approximately 20,000 employees in North America.

15     128.   Upon information and belief, Ms. Jones is responsible for, provides direction and

16   control over, and is authorized to direct all aspects of human resources functions across SCI's

17   network.

18     129.   Upon information and belief, due in part to her role of overseeing human

19   resources, training and education, and payroll and commission services, in concert with others,

20   Ms. Jones is actively involved in the creation of the illegal policies complained of in this case,

21   including, but not limited to, the On Call Pay Policy, Community Work Policy, Training

22   Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-

23   Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding

24   the calculation of Class Members' overtime.

25     130.   Upon information and belief, due in part to her role of overseeing human

26   resources, training and education, and payroll and commission services, in concert with others,

27   Ms. Jones actively advises defendants' agents on the enforcement of the illegal policies

28   complained of in this case, including, but not limited to, the On Call Pay Policy, Community

1  Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break
2  Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and
3  the policy regarding the calculation of Class Members' overtime.

4       131.   Upon information and belief, due in part to her role of overseeing human
5  resources, training and education, and payroll and commission services, in concert with others,
6  Ms. Jones actively ensures defendants' compliance or non-compliance with the state and
7  common laws asserted in this action.

8       132.   Upon information and belief, Ms. Jones, in concert with others, is actively
9  involved in reviewing and counseling defendants regarding employment decisions, including
10  hiring and firing of Class Members.

11       133.   Upon information and belief, Ms. Jones, in concert with others, is actively
12  involved in decisions that set employees' schedules, hours and standard benefit levels.

13       134.   Upon information and belief, Ms. Jones, in concert with others, is actively
14  involved decisions that set standard pay scales.

15       135.   Upon information and belief, Ms. Jones, in concert with others, is actively
16  involved in the determination and drafting of human resources policies, the resolution of issues
17  and disputes regarding policies and their application, the counseling locations receive
18  regarding human resources issues, and communications with employees about human
19  resources issues and policies.

20       136.   Upon information and belief, Ms. Jones, in concert with others, is actively
21  involved in defendants' employment and human resources records, including the systems for
22  keeping and maintaining those records.

23       137.   Upon information and belief, Ms. Jones, in concert with others, is actively
24  involved in training and education functions across SCI's network.

25       138.   Upon information and belief, Ms. Jones, in concert with others, is actively
26  involved in determining the type and scope of training employees must attend as well as any
27  compensation they receive for attending training.

28

139.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in payroll and commission functions across SCI's network.

140.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

141.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in benefit plans across SCI's network.

142.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

143.   Because Ms. Jones has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Jones has the power to hire and fire employees.

144.   Because Ms. Jones has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Jones supervises and controls employees' work schedules and/or conditions of employment.

145.   Because Ms. Jones has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Jones determines the rate and method of employees' payment.

146.   Because Ms. Jones has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Jones maintains employees' employment records.

147.   Because Ms. Jones provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Class Members.

148.   Because Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action, Ms. Jones actively participates in the violations complained of in this action.

149.   Based upon the foregoing, Ms. Jones is liable to Class Members because of her active role in operating the business, her role in the violations complained of in this action, her status as an employer, or otherwise according to state statutory and common law.

*Gwen Petteway Is Liable to Class Members*

150.   Defendant Gwen Petteway has acted as Human Resources Director of defendant SCI Houston since 2005.

151.   Ms. Petteway's job responsibilities include familiarity with the human resources services of the subsidiary and affiliate companies of SCI, as well as training and benefits provided to those companies.

152.   As Human resources Director, Ms. Petteway's job responsibilities include providing and/or supervising day-to-day human resources services and support for defendants' funeral home locations.

153.   Upon information and belief, due in part to her role as Human Resources

1   Director, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in

2   the creation of the illegal policies complained of in this case, including, but not limited to, the

3   On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs

4   Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy,

5   Unrecorded Work Time Policy, and the policy regarding the calculation of Class Members'

6   overtime.

7       154.   Upon information and belief, due in part to her role as Human Resources

8   Director, Ms. Petteway, in concert with others, actively, and in a central role, advises

9   defendants' agents on the enforcement of the illegal policies complained of in this case,

10  including, but not limited to, the On Call Pay Policy, Community Work Policy, Training

11  Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-

12  Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding

13  the calculation of Class Members' overtime.

14      155.   Upon information and belief, due in part to her role as Human Resources

15  Director, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in

16  ensuring defendants' compliance or non-compliance with the state and common laws asserted

17  in this action.

18      156.   Upon information and belief, Ms. Petteway, in concert with others, is actively

19  involved, and plays a central role, in human resources functions across SCI's network.

20      157.   Upon information and belief, Ms. Petteway, in concert with others, is actively

21  involved, and plays a central role, in day-to-day human resources services and support.

22      158.   Upon information and belief, Ms. Petteway, in concert with others, is actively

23  involved, and plays a central role, in reviewing and counseling defendants regarding

24  employment decisions, including hiring and firing of Class Members.

25      159.   Upon information and belief, Ms. Petteway, in concert with others, is actively

26  involved, and plays a central role, in decisions that set employee's schedules, hours and

27  standard benefit levels.

28      160.   Upon information and belief, Ms. Petteway, in concert with others, is actively

1  involved, and plays a central role, in decisions that set standard pay scales.

2       161.  Upon information and belief, Ms. Petteway, in concert with others, is actively
3  involved, and plays a central role, in defendants' human resources policies, resolving issues
4  and disputes regarding policies and their applications, counseling locations receive regarding
5  human resources issues, providing day-to-day services and support regarding human resources
6  issues, and communications with employees about human resources issues and policies.

7       162.  Upon information and belief, Ms. Petteway, in concert with others, is actively
8  involved in defendants' employment and human resources records, including the systems for
9  keeping and maintaining those records.

10      163.  Upon information and belief, Ms. Petteway, in concert with others, is actively
11 involved, and plays a central role, in training and education functions across SCI's network.

12      164.  Upon information and belief, Ms. Petteway, in concert with others, is actively
13 involved, and plays a central role, in decisions that determine the type and scope of training
14 employees must attend as well as any compensation they receive for attending training.

15      165.  Upon information and belief, Ms. Petteway, in concert with others, is actively
16 involved, and plays a central role, in payroll and commission functions across SCI's network.

17      166.  Upon information and belief, Ms. Petteway, in concert with others, is actively
18 involved in the system for keeping and maintaining employees' payroll records, the timing and
19 method with which payment is conveyed to employees, and the manner and method in which
20 employees receive payroll information including their payroll checks.

21      167.  Upon information and belief, Ms. Petteway, in concert with others, is actively
22 involved, and plays a central role, in defendants' benefit plans.

23      168.  Upon information and belief, Ms. Petteway, in concert with others, is actively
24 involved, and plays a central role, in the type and scope of benefits available to employees, the
25 method and manner in which information regarding those plans is conveyed to employees, and
26 the system for keeping and maintaining records related to employees' benefits.

27      169.  Because Ms. Petteway has authority to hire or fire employees, provide and direct
28 support regarding human resources issues, including the hiring and firing of Class Members,

1    and control the drafting and enforcement of the policies which govern the hiring and firing of
2    employees, Ms. Petteway has the power to hire and fire employees.

3        170.    Because Ms. Petteway has authority to establish work schedules and/or
4    conditions of employment, provide and direct support regarding human resources issues,
5    including work schedules and/or conditions of employment, control the drafting and
6    enforcement of the policies which govern employees' schedules and/or conditions of
7    employment, establish the type and scope of training employees receive, and administer
8    employees' benefit programs, including standard benefit levels and the type and scope of
9    benefits available to employees, Ms. Petteway supervises and controls employees' work
10   schedules and/or conditions of employment.

11       171.    Because Ms. Petteway has authority to establish employees' rate and method of
12   payment and centrally control payroll functions, including standard pay scales, the provision of
13   payroll information, and the timing of payment, Ms. Petteway determines the rate and method
14   of employees' payment.

15       172.    Because Ms. Petteway has authority with respect to defendants' centralized
16   records, including a database regarding employees' employment records, and systems for
17   keeping and maintaining payroll, benefits, and other employment-related records, Ms.
18   Petteway maintains employees' employment records.

19       173.    Because Ms. Petteway is actively involved, or plays a central role, in day-to-day
20   support regarding human resources issues, including employees' work schedules and/or
21   conditions of employment, controls the drafting and enforcement of the policies which govern
22   employees' schedules and/or conditions of employment, and administers employees' benefit
23   programs, she is affirmatively, directly, and actively involved in operations of defendants'
24   business functions, particularly in regards to the employment of Class Members.

25       174.    Because Ms. Petteway is actively involved, or plays a central role, in the creation
26   of the illegal policies complained of in this case, actively advises defendants' agents on the
27   enforcement of the illegal policies complained of in this case and actively ensures defendants'
28   compliance or non-compliance with the state and common laws asserted in this action, she

1    actively participates, or plays a central role, in the violations complained of in this action.

2        175.    Based upon the foregoing, Ms. Petteway is liable to Class Members because of

3    her status as an employer according to state statutory and common law.

4    *Thomas Ryan Is Liable to Class Members*

5        176.    Defendant Thomas Ryan has acted as President and Chief Executive Officer of

6    SCI since in or around 2003.

7        177.    Upon information and belief, Mr. Ryan's responsibilities include actively

8    managing SCI and its network.

9        178.    Upon information and belief, in concert with others, Mr. Ryan has the authority

10    to, and does, make decisions that concern the policies defendants adopt and the implementation

11    of those policies.

12        179.    Upon information and belief, in concert with others, Mr. Ryan has the authority

13    to, and does, make decisions that concern defendants' operations, including functions related to

14    employment, human resources, training, payroll, and benefits.

15        180.    Upon information and belief, due in part to his role as President and Chief

16    Executive Officer, Mr. Ryan is actively involved in the creation of the illegal policies

17    complained of in this case, including, but not limited to, the On Call Pay Policy, Community

18    Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break

19    Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and

20    the policy regarding the calculation of Class Members' overtime.

21        181.    Upon information and belief, due in part to his role as President and Chief

22    Executive Officer, Mr. Ryan actively advises defendants' agents on the enforcement of the

23    illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy,

24    Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,

25    Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time

26    Policy, and the policy regarding the calculation of Class Members' overtime.

27        182.    Upon information and belief, due in part to his role as President and Chief

28    Executive Officer, Mr. Ryan actively ensures defendants' compliance or non-compliance with

1   the state and common laws asserted in this action.

2        183.   Upon information and belief, in concert with others, Mr. Ryan has the authority

3   to, and does, make decisions that concern the reviewing and counseling of defendants

4   regarding employment decisions, including hiring and firing of Class Members.

5        184.   Upon information and belief, in concert with others, Mr. Ryan has the authority

6   to, and does, make decisions that concern employees' schedules, hours and standard benefit

7   levels.

8        185.   Upon information and belief, in concert with others, Mr. Ryan has the authority

9   to, and does, make decisions that concern standard pay scales.

10       186.   Upon information and belief, in concert with others, Mr. Ryan has the authority

11  to, and does, make decisions that concern defendants' human resources policies, the resolution

12  issues and disputes regarding policies and their applications, the counsel locations receive

13  regarding human resources issues, and communications with employees about human

14  resources issues and policies.

15       187.   Upon information and belief, in concert with others, Mr. Ryan has the authority

16  to, and does, make decisions that concern defendants' employment and human resources

17  records, including the systems for keeping and maintaining those records.

18       188.   Upon information and belief, in concert with others, Mr. Ryan has the authority

19  to, and does, make decisions that concern training and education functions across SCI's

20  network.

21       189.   Upon information and belief, in concert with others, Mr. Ryan has the authority

22  to, and does, make decisions that concern the type and scope of training employees must attend

23  as well as any compensation they receive for attending training.

24       190.   Upon information and belief, in concert with others, Mr. Ryan has the authority

25  to, and does, make decisions that concern payroll and commission functions across SCI's

26  network.

27       191.   Upon information and belief, in concert with others, Mr. Ryan has the authority

28  to, and does, make decisions that concern the system for keeping and maintaining employees'

1  payroll records, the timing and method with which payment is conveyed to employees, and the
2  manner and method in which employees receive payroll information including their payroll
3  checks.

4      192.  Upon information and belief, in concert with others, Mr. Ryan has the authority
5  to, and does, make decisions that concern benefit plans across SCI's network.

6      193.  Upon information and belief, in concert with others, Mr. Ryan has the authority
7  to, and does, make decisions that concern the type and scope of benefits available to
8  employees, the method and manner in which information regarding those plans is conveyed to
9  employees, and the system for keeping and maintaining records related to employees' benefits.

10     194.  Because Mr. Ryan has authority to hire or fire employees, provide and direct
11 support regarding human resources issues, including the hiring and firing of Class Members,
12 and control the drafting and enforcement of the policies which govern the hiring and firing of
13 employees, Mr. Ryan has the power to hire and fire employees.

14     195.  Because Mr. Ryan has authority to establish work schedules and/or conditions of
15 employment, provide and direct support regarding human resources issues, including work
16 schedules and/or conditions of employment, control the drafting and enforcement of the
17 policies which govern employees' schedules and/or conditions of employment, establish the
18 type and scope of training employees receive, and administer employees' benefit programs,
19 including standard benefit levels and the type and scope of benefits available to employees,
20 Mr. Ryan supervises and controls employees' work schedules and/or conditions of
21 employment.

22     196.  Because Mr. Ryan has authority to establish employees' rate and method of
23 payment and centrally control payroll functions, including standard pay scales, the provision of
24 payroll information, and the timing of payment, Mr. Ryan determines the rate and method of
25 employees' payment.

26     197.  Because Mr. Ryan has authority with respect to defendants' centralized records,
27 including a database regarding employees' employment records, and systems for keeping and
28 maintaining payroll, benefits, and other employment-related records, Mr. Ryan maintains

1    employees' employment records.

2        198.   Because Mr. Ryan provides day-to-day support regarding human resources
3    issues, including employees' work schedules and/or conditions of employment, controls the
4    drafting and enforcement of the policies which govern employees' schedules and/or conditions
5    of employment, and administers employees' benefit programs, he is affirmatively, directly, and
6    actively involved in operations of the defendants' business functions, particularly in regards to
7    the employment of Class Members.

8        199.   Because Mr. Ryan is actively involved in the creation of the illegal policies
9    complained of in this case, actively advises defendants' agents on the enforcement of the
10   illegal policies complained of in this case and actively ensures defendants' compliance or non-
11   compliance with the state and common laws asserted in this action, he actively participates in
12   the violations complained of in this action.

13       200.   Based upon the foregoing, Mr. Ryan is liable to Class Members because of his
14   active role in operating the business, his status as an employer, or according to state statutory
15   and common law.

16   *Curtis Briggs Is Liable to Class Members*

17       201.   Defendant Curtis Briggs is President and/or Vice President of various entities
18   owned by SCI, some of which are also related to the SCI Cooperative and/or the SCI Support
19   Centers.

20       202.   Mr. Briggs is Vice President for the General Partner of SCI Eastern; Vice
21   President for the General Partner of SCI Houston; President and/or Vice President of the SCI
22   Cooperative; President and/or Vice President of SCI Western.

23       203.   Additionally, Mr. Briggs has executed employment contracts with various
24   executives in his role as Vice President of SCI Executive Services, Inc.

25       204.   Upon information and belief, Mr. Briggs's responsibilities include actively
26   managing the entities for which he is an officer and the defendants' network.

27       205.   Upon information and belief, in concert with others, Mr. Briggs has the authority
28   to, and does, make decisions that concern the policies defendants adopt and for the

1    implementation of those policies.

2        206.   Upon information and belief, in concert with others, Mr. Briggs has the authority
3    to, and does, make decisions that concern defendants' operations, including functions related to
4    employment, human resources, training, payroll, and benefits.

5        207.   Upon information and belief, due in part to his numerous roles, Mr. Briggs is
6    actively involved in the creation of the illegal policies complained of in this case, including,
7    but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation
8    Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for
9    Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation
10   of Class Members' overtime.

11       208.   Upon information and belief, due in part to his numerous roles, Mr. Briggs
12   actively advises defendants' agents on the enforcement of the illegal policies complained of in
13   this case, including, but not limited to, the On Call Pay Policy, Community Work Policy,
14   Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy,
15   Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy
16   regarding the calculation of Class Members' overtime.

17       209.   Upon information and belief, due in part to his numerous roles, Mr. Briggs
18   actively ensures defendants' compliance or non-compliance with the state and common laws
19   asserted in this action.

20       210.   Upon information and belief, in concert with others, Mr. Briggs has the authority
21   to, and does, make decisions that concern the reviewing and counseling of defendants
22   regarding employment decisions, including hiring and firing of Class Members.

23       211.   Upon information and belief, in concert with others, Mr. Briggs has the authority
24   to, and does, make decisions that concern the setting of employees' schedules, hours and
25   standard benefit levels.

26       212.   Upon information and belief, in concert with others, Mr. Briggs has the authority
27   to, and does, make decisions that concern the setting of standard pay scales.

28       213.   Upon information and belief, in concert with others, Mr. Briggs has the authority

1  to, and does, make decisions that concern defendants' human resources policies, issues and

2  disputes regarding policies and their applications, the counsel locations receive regarding

3  human resources issues, and communications with employees about human resources issues

4  and policies.

5      214.   Upon information and belief, in concert with others, Mr. Briggs has the authority

6  to, and does, make decisions that concern defendants' employment and human resources

7  records, including the systems for keeping and maintaining those records.

8      215.   Upon information and belief, in concert with others, Mr. Briggs has the authority

9  to, and does, make decisions that concern training and education functions across defendants'

10  network.

11     216.   Upon information and belief, in concert with others, Mr. Briggs has the authority

12  to, and does, make decisions that concern the type and scope of training employees must attend

13  as well as any compensation they receive for attending training.

14     217.   Upon information and belief, in concert with others, Mr. Briggs has the authority

15  to, and does, make decisions that concern payroll and commission functions across defendants'

16  network.

17     218.   Upon information and belief, in concert with others, Mr. Briggs has the authority

18  to, and does, make decisions that concern the system for keeping and maintaining employees'

19  payroll records, the timing and method with which payment is conveyed to employees, and the

20  manner and method in which employees receive payroll information including their payroll

21  checks.

22     219.   Upon information and belief, in concert with others, Mr. Briggs has the authority

23  to, and does, make decisions that concern benefit plans across defendants' network.

24     220.   Upon information and belief, in concert with others, Mr. Briggs has the authority

25  to, and does, make decisions that concern the type and scope of benefits available to

26  employees, the method and manner in which information regarding those plans is conveyed to

27  employees, and the system for keeping and maintaining records related to employees' benefits.

28     221.   Because Mr. Briggs has authority to hire or fire employees, provide and direct

1  support regarding human resources issues, including the hiring and firing of employees, and

2  control the drafting and enforcement of the policies which govern the hiring and firing of

3  employees, Mr. Briggs has the power to hire and fire employees.

4      222.  Because Mr. Briggs has authority to establish work schedules and/or conditions

5  of employment, provide and direct support regarding human resources issues, including work

6  schedules and/or conditions of employment, control the drafting and enforcement of the

7  policies which govern employees' schedules and/or conditions of employment, establish the

8  type and scope of training employees receive, and administer employees' benefit programs,

9  including standard benefit levels and the type and scope of benefits available to employees,

10  Mr. Briggs supervises and controls employees' work schedules and/or conditions of

11  employment.

12      223.  Because Mr. Briggs has authority to establish employees' rate and method of

13  payment and centrally control payroll functions, including standard pay scales, the provision of

14  payroll information, and the timing of payment, Mr. Briggs determines the rate and method of

15  employees' payment.

16      224.  Because Mr. Briggs has authority with respect to defendants' centralized records,

17  including a database regarding employees' employment records, and systems for keeping and

18  maintaining payroll, benefits, and other employment-related records, Mr. Briggs maintains

19  employees' employment records.

20      225.  Because Mr. Briggs provides support regarding human resources issues,

21  including employees' work schedules and/or conditions of employment, controls the drafting

22  and enforcement of the policies which govern employees' schedules and/or conditions of

23  employment, and administers employees' benefit programs, he is affirmatively, directly, and

24  actively involved in operations of defendants' business functions, particularly in regards to the

25  employment of Class Members.

26      226.  Because Mr. Briggs is actively involved in the creation of the illegal policies

27  complained of in this case, actively advises defendants' agents on the enforcement of the

28  illegal policies complained of in this case, and actively ensures defendants' compliance or non-

1    compliance with the state and common laws asserted in this action, Mr. Briggs actively
2    participates in the violations complained of in this action.

3       227.   Based upon the foregoing, Mr. Briggs is liable to Class Members because of his
4    active role in operating the business, his status as an employer, or according to state statutory
5    and common law.

6    **IV.   CLASS ACTION ALLEGATIONS**

7       228.   The claims arising under the state wage laws set forth below are properly
8    maintainable as a class action under Cal. Civ. Proc. § 382.

9       229.   Class Members are those employees and former employees of defendants who
10   were suffered or permitted to work by defendants and not paid their regular or statutorily
11   required rate of pay for all hours worked.

12      230.   The class size is believed to be over 10,000 employees, a significant percentage
13   of whom are within California.

14      231.   Common questions of law and fact predominate in this action because the claims
15   of all Class Members are based on whether defendants' practice of not paying nonexempt
16   employees their regular or statutorily required rate of pay for all hours worked violates
17   California state law and the state laws of the various other states in which defendants do
18   business.

19      232.   Common questions of law and fact include, but are not limited to, the following:

20          a.   Whether Class Members are entitled to payment for all of the time they
21               worked for defendants.

22          b.   Whether Class Members are entitled to payment at overtime rates for all of
23               the time they worked for defendants in excess of 40 hours per week and/or in
                 excess of 8 hours per day.

24          c.   Whether defendants' employment policies violated defendants' legal
25               obligation to pay Class Members for all of the time they worked for
26               defendants.

27          d.   Whether defendants' employment policies violated defendants' legal
28               obligation to pay Class Members at overtime rates for all of the time they
                 worked for defendants in excess of 40 hours per week and/or in excess of 8

hours per day.

233.   The named plaintiffs' claims are typical of, and concurrent to, the claims of Class Members, because they are similarly situated.  The named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for overtime work.

234.   The named plaintiffs will fairly and adequately represent and protect the interests of Class Members.  The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members' claims.  The class counsel are experienced in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

235.   There are no known conflicts of interest between and among Class Members.

236.   A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each Class Member has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering, and/or failing to pay employees their regular or statutorily required rate of pay for all hours worked.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

## V.    FACTUAL BACKGROUND

237.   Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

238.  Defendants' policy and/or practice was to not compensate Class Members their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

239.  Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

240.  Defendants' practice is to be deliberately indifferent to violations of the statutory overtime requirements.

241.  The failure to pay overtime is willful.

242.  Examples of defendants' policies and practices to deprive Class Members of their earned wages and wage premiums are set forth below:

a.  Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed.

b.  Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

c.  Defendants' implemented a "Training Compensation Policy." Under the policy, defendants suffered or permitted their employees to take various types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

d.  Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases.  To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

e.  Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for meal breaks.  Defendants did, however, suffer and permit employees to perform work during such meal breaks, but

1    pursuant to defendants' "Meal Break Deduction Policy," time spent on meal
2    "breaks" was still deducted from the employee's pay even when defendants
     suffered or permitted work to be performed during such "breaks."
3
4    f.   Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under
          this policy, defendants only permitted payments for overtime if the overtime
5         was pre-approved. Defendants suffered or permitted employees to work
          overtime and therefore, employees were entitled to overtime payments.
6         However, defendants refused to make the legally required payments because
          the time was not "pre-approved" as required under the "Pre-Approval for
7         Overtime Pay Policy."

8    g.   Defendants implemented an "Unrecorded Work Time Policy." Under this
9         policy, defendants suffered or permitted employees to perform work, but
          directed that such work not be recorded. Defendants then refused to pay for
10        the time worked under the "Unrecorded Work Time Policy" because, even
          though defendants knew such time had been worked, it had not been
11        "recorded."

12
13   h.   Defendants' policy was to not include all remuneration (such as bonuses and
          commissions) in the calculation of Class Members' overtime.
14
     243.   Defendants also failed to make, keep and preserve adequate and accurate records
15
     of the employment of Class Members concerning their wages, hours and other conditions of
16
     employment.
17
     244.   More specifically, the records kept by defendants failed to adequately and
18
     accurately disclose among other things, hours worked each work day, the total hours worked
19
     each work week and/or the total overtime compensation for each work week.
20
     245.   Defendants failed to pay full compensation to Class Members who are no longer
21
     employed by defendants promptly after those Class Members were discharged, laid off or
22
     resigned. In fact, defendants' failure to fully compensate those Class Members is continuing.
23

24                              **FIRST CAUSE OF ACTION**
25   **VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)**
26   246.   The preceding paragraphs are incorporated as if fully set forth herein.
27   **Failure to Pay Overtime Compensation**
28

247.   Defendants willfully violated their obligations under California law, including those under California Labor Code §1194, *et seq.*, by failing to pay Class Members the legal overtime compensation applicable to Class Members.

248.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation**

249.   Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, *et seq.*, by willfully failing to pay Class Members who have been discharged or laid off all wages earned and unpaid at the time of discharge or layoff.

250.   Defendants willfully violated their obligations under California law, including those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours thereafter.

251.   Defendants did not pay Class Members who were discharged, were laid off or resigned their regular or statutorily required rate of pay for all hours worked, as required by California law. Defendants' failure to pay those amounts is ongoing.

252.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

253.   Defendants are liable to Class Members for statutory penalties, pursuant to California Labor Code § 203, in the amounts set forth therein.

**Failure to Provide Required Meal and Rest Periods**

254.   Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226.7 and 512, *et seq.*, by willfully failing to provide Class Members with legally required meal and rest periods.

255.   Defendants repeatedly and regularly interrupted Class Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.

256.   Defendants failed to compensate Class Members for missed meal and rest breaks.

-38-

257.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Furnish Timely and Accurate Wage Statements**

258.   Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226(a) and 226.3, *et seq.*, by willfully failing to provide Class Members with timely and accurate wage statements as required by California law.

259.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

260.   Wherefore, Class Members request relief as described below.

## SECOND CAUSE OF ACTION

### STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)

261.   The preceding paragraphs are incorporated as if fully set forth herein.

262.   Defendants willfully violated their obligations to properly compensate Class Members under the wage laws of the states in which defendants do business including:

    a. Alaska Stat. § 23.10.050, *et seq.*;

    b. Arizona Rev. Stat. § 23-201, *et seq.*;

    c. Arkansas Code § 11-4-201, *et seq.*;

    d. Colorado Rev. Stat. § 8-6-101, *et seq.*;  Colorado Code Regs. § 1103-1, *et seq.*;

    e. Connecticut Gen. Stat. § 31-58, *et seq.*;

    f. D.C. Code § 32-1001, *et seq.*;

    g. 820 Illinois Comp. Stat. 105/1, *et seq.*;  820 Illinois Comp. Stat. 105/12(a); 820 Illinois Comp. Stat. 115/1, *et seq.*;

    h. Indiana Code § 22-2-2-1, *et seq.*;  Indiana Code § 22-2-2-4, *et seq.*;  Indiana Code § 22-2-5-1, *et seq.*;  Indiana Code § 22-2-9-2, *et seq.*;

    i. Kansas Stat. § 44-1201, *et seq.*;

    j. Kentucky Rev. Stat. § 337.010, *et seq.*;

    k. Louisiana Rev. Stat. § 23:631, *et seq.*;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

l.  Maine Rev. Stat. Tit. 26 § 665 *et seq.*;

m. Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

n.  Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 148, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

o.  Michigan Comp. Laws § 408.381, *et seq.*;

p.  Minnesota Stat. § 177.21, *et seq.*;  Minnesota Stat. § 181.13, *et seq.*;

q.  Missouri Stat. § 290.500 *et seq.*;

r.  Montana Code § 39-3-401, *et seq.*;

s.  Nevada Rev. Stat. § 608.005, *et seq.*;

t.  New Hampshire Rev. Stat. § 279:1, *et seq.*;

u.  New Jersey Stat. § 34.11-56a, *et seq.*;

v.  New Mexico Stat. § 50-4-1, *et seq.*;

w. New York Lab. Law § 160, *et seq.*;

x.  North Carolina Gen. Stat. § 95-25.1, *et seq.*;

y.  Ohio Rev. Code § 4111.01, *et seq.*;

z.  Oregon Rev. Stat. § 653.005, *et seq.*;

aa. 43 Pennsylvania Stat. § 333.101, *et seq.*;  43 Pennsylvania Stat. § 206.3, *et seq.*;

bb. 29 Laws of Puerto Rico §250, *et seq.*;

cc. Rhode Island Gen. Laws § 28-12-1, *et seq.*;

dd. South Carolina Code § 41-10-10, *et seq.*;

ee. Washington Rev. Code § 49.46.005, *et seq.*;

ff. West Virginia Code § 21-5C-1, *et seq.*;

gg. Wisconsin Stat. § 104.001, *et seq.*

263.  As a direct and proximate cause of defendants' violations of these statutes, Class Members have suffered damages.

-40-

264.    Wherefore, Class Members request relief as described below.

### THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)

265.    The preceding paragraphs are incorporated as if fully set forth herein.

266.    Defendants have received financial gain at the expense of Class Members.

267.    Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

268.    Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members.  As a result of this conduct,  the common laws and state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

269.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

270.    Wherefore, Class Members request relief as described below.

### FOURTH CAUSE OF ACTION

### CONVERSION (by all plaintiffs against all defendants)

271.    The preceding paragraphs are incorporated as if fully set forth herein.

272.    At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due.  The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for

-41-
AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

1   services performed are the property of the Class Members.

2        273.   In refusing to pay wages and overtime to Class Members, defendants knowingly,

3   unlawfully and intentionally took, appropriated and converted the wages and overtime earned

4   by Class Members for defendants' own use, purpose and benefit.  At the time the conversion

5   took place, Class Members were entitled to immediate possession of the amount of wages and

6   overtime earned.  As a result, Class Members have been denied the use and enjoyment of their

7   property and have been otherwise damaged in an amount to be proven at trial.  This conversion

8   was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the

9   rights of the Class Members.  This conversion was concealed from Class Members.

10       274.   Defendants willfully violated their obligations under the common laws and the

11  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District

12  of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky,

13  Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

14  Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

15  Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

16  Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin and are liable to

17  Class Members.

18       275.   As a result of defendants' actions, Class Members were damaged and are entitled

19  to all funds converted by defendants with interest thereon, all profits resulting from such

20  conversion, and punitive or exemplary damages.

21       276.   Wherefore, Class Members request relief as described below.

22                          **FIFTH CAUSE OF ACTION**

23             **FRAUD AND DECEIT (by all plaintiffs against all defendants)**

24       277.   The preceding paragraphs are incorporated as if fully set forth herein.

25       278.   Defendants, through their corporate publications and through statements of their

26  agents, represented that wages would be paid legally and in accordance with defendants'

27  obligations pursuant to applicable federal and state laws.  For example, defendants falsely

28  stated in their policy manuals that "[o]vertime is defined as any hours worked in excess of 40

1  hours per week as mandated by federal law. … Nonexempt employees shall be paid at a rate of

2  one and one-half (1) times their hourly rate for all overtime hours worked."

3      279.   Defendants, however, at all times intended to violate applicable federal and state

4  laws by failing to pay Class Members their regular or statutorily required rate of pay for all

5  hours worked.

6      280.   These misrepresentations were material to the terms of Class Members'

7  employment contracts, and Class Members relied on the misrepresentations in agreeing to

8  accept and continue employment with defendants.  This reliance was reasonable, as Class

9  Members had every right to believe that defendants would abide by their obligations pursuant

10 to applicable federal and state law.

11     281.   Defendants willfully violated their obligations by committing fraud against Class

12 Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

13 California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho,

14 Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts,

15 Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire,

16 New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,

17 Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia,

18 Washington, West Virginia, and Wisconsin and are liable to Class Members.

19     282.   As a direct and proximate cause of the fraud committed by defendants, Class

20 Members did not receive the statutorily mandated wages for overtime and suffered damages.

21     283.   Defendants acted maliciously when they committed the wrongful acts which

22 constitute this cause of action such that it warrants the imposition of punitive and exemplary

23 damages.

24     284.   Wherefore, Class Members request relief as described below.

25              **SIXTH CAUSE OF ACTION**

26       **MISREPRESENTATION (by all plaintiffs against all defendants)**

27     285.   The preceding paragraphs are incorporated as if fully set forth herein.

28

286.    In particular, Class Members incorporate and refer to paragraphs 278 through 280 above, regarding the material misrepresentations made by defendants.

287.    When defendants hired Class Members, they represented to Class Members that they would be fully compensated for all services performed, as more fully set forth above.

288.    There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees their regular or statutorily required rate of pay for all hours worked.

289.    Class Members relied upon defendants' representations by performing work and services for defendants. This reliance was reasonable, as Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable federal and state law.

290.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin by misrepresenting to Class Members that they would be fully compensated for all services performed and are liable to Class Members.

291.    As a result of their reliance upon defendants' misrepresentations, Class Members suffered damages because they were not appropriately compensated with the regular or statutorily required rate of pay for all hours worked.

292.    As a direct and proximate result of defendants' negligent misrepresentation, Class Members suffered damages.

293.    Wherefore, Class Members request relief as described below.

## SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT (by all plaintiffs against all defendants)

294.   The preceding paragraphs are incorporated as if fully set forth herein.

295.   By entering into an employment relationship, defendants and each Class Member entered into a contract for employment.

296.   Each such contract included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable state and federal law.

297.   Defendants willfully breached the implied contract term by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

298.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin and are liable to Class Members.

299.   As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

300.   Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (by all plaintiffs against all defendants)

301.   The preceding paragraphs are incorporated as if fully set forth herein.

302.   The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good

-45-

1  faith and to refrain from doing any act that would violate any state or federal law governing the

2  employment relationship or any act that would deprive Class Members of the benefits of the

3  contract.

4      303.   Defendants breached the implied covenant of good faith and fair dealing by

5  failing to pay Class Members the wages and overtime that was due to Class Members.

6      304.   Defendants willfully violated their obligations under the common laws and the

7  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District

8  of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky,

9  Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

10  Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

11  Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

12  Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin and are liable to

13  Class Members.

14      305.   As a direct and proximate cause of defendants' breach of the implied covenant of

15  good faith and fair dealing, Class Members have suffered damages.

16      306.   Wherefore, Class Members request relief as described below.

17  **NINTH CAUSE OF ACTION**

18  **QUANTUM MERUIT (by all plaintiffs against all defendants)**

19      307.   The preceding paragraphs are incorporated as if fully set forth herein.

20      308.   Defendants willfully violated their obligations by failing to pay Class Members

21  for the reasonable value of the services performed by Class Members for defendants under the

22  common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

23  Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa,

24  Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota,

25  Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New

26  Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico,

27  Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia,

28  and Wisconsin and are liable to Class Members under quantum meruit.

1      309.  As a direct and proximate cause of defendants' failure to pay Class Members for

2  the reasonable value of services performed by Class Members for defendants, Class Members

3  suffered damages.

4      310.  Wherefore, Class Members request relief as described below.

5                            **TENTH CAUSE OF ACTION**

6  **UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)**

7      311.  The preceding paragraphs are incorporated as if fully set forth herein.

8      312.  Defendants' failure to pay Class Members for all time worked constitutes unfair

9  competition and unlawful, unfair, and fraudulent business acts and practices in violation of

10  California Business and Professional Code § 17200, *et seq.*

11      313.  The conduct of defendants in failing to pay Class Members for all time worked

12  constitutes and was intended to constitute unfair competition and unlawful unfair and

13  fraudulent business acts and practices within the meaning of California Business and

14  Professional Code § 17200, *et seq.*

15      314.  As a result of defendants' violations of California Business and Professional

16  Code § 17200, *et seq.*, defendants have unjustly enriched themselves at the expense of Class

17  Members.

18      315.  To prevent their unjust enrichment, defendants should be required, pursuant to

19  California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains

20  for purpose of making full restitution to all injured Class Members.  Defendants should also be

21  permanently enjoined from continuing their violations of California Business and Professional

22  Code § 17200, *et seq.*

23      316.  Defendants willfully violated their obligations under the California Unfair

24  Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

25      317.  Wherefore, Class Members request relief as described below.

26                            **PRAYER FOR RELIEF**

27      **WHEREFORE**, Class Members demand judgment against defendants in their favor

28  and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award of the value of Class Members' unpaid wages;

(c)    liquidated, compensatory, consequential and punitive damages;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Class Members' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Class Members demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

ROSEN, BIEN & GALVAN, LLP

Date: January 25, 2008        By: _____

Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256
Attorneys for Plaintiffs

-48-
AMENDED COMPLAINT-CLASS ACTION
*Bryant et al v. Service Corp. Int'l. et al - Case No. RG 07359593*

**EXHIBIT L**

1  Sanford Jay Rosen, State Bar No. 62566
   Maria V. Morris, State Bar No. 223903
2  Lori E. Rifkin, State Bar No. 244081
   ROSEN, BIEN & GALVAN, LLP
3  315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com

6  [Additional Counsel Listed on Following Page]

7
   Attorneys for Plaintiffs
8

ENDORSED
FILED
ALAMEDA COUNTY

JAN ₺ ₿ 2008

CLERK OF THE SUPERIOR COURT
By _____ S. Halcrombe _____
                              Deputy

9             SUPERIOR COURT OF THE STATE OF CALIFORNIA

                        COUNTY OF ALAMEDA
10

11 | WILLIAM HELM, DEBORAH PRISE, | ) | Case No. RG 07359602
   | HEATHER P. RADY, [see Complaint and | ) |
12 | Appendices for a listing of plaintiffs] et al., on | ) | **CLASS ACTION**
   | behalf of themselves and all other employees | ) |
13 | and former employees similarly situated, | ) | **AMENDED COMPLAINT**

14 |                          Plaintiffs, | ) | **(1)**   **VIOLATION OF CALIFORNIA**
   |                                      | ) |          **LABOR LAWS**
15 | v.                                   | ) | **(2)**   **STATE WAGE AND HOUR**
   |                                      | ) |          **LAWS**
16 | ALDERWOODS GROUP, INC., PAUL A. | ) | **(3)**   **UNJUST ENRICHMENT/**
   | HOUSTON, SERVICE CORPORATION | ) |          **RESTITUTION**
17 | INTERNATIONAL, SCI FUNERAL AND | ) | **(4)**   **CONVERSION**
   | CEMETERY PURCHASING | ) | **(5)**   **FRAUD AND DECEIT**
18 | COOPERATIVE, INC., SCI EASTERN | ) | **(6)**   **MISREPRESENTATION**
   | MARKET SUPPORT CENTER, L.P., SCI | ) | **(7)**   **BREACH OF CONTRACT**
19 | WESTERN MARKET SUPPORT CENTER, | ) | **(8)**   **BREACH OF IMPLIED**
   | L.P. a/k/a SCI WESTERN MARKET | ) |          **COVENANT OF GOOD FAITH**
20 | SUPPORT CENTER, INC., and SCI | ) |          **AND FAIR DEALING**
   | HOUSTON MARKET SUPPORT CENTER, | ) | **(9)**   **QUANTUM MERUIT**
21 | L.P., | ) | **(10)**  **UNLAWFUL BUSINESS**
   |       | ) |          **PRACTICES**
22 |                          Defendants. | ) |

23 | ─────────────────────────────── | ) | **DEMAND FOR JURY TRIAL**

24

25

26

27

28

1    Additional Attorneys for Plaintiffs, who will
     submit applications for admission *pro hac vice*:
2
     J. Nelson Thomas, NY Attorney No. 2579159
3    Patrick J. Solomon, NY Attorney No. 2716660
     Michael J. Lingle, NY Attorney No. 3925765
4    Justin Cordello, NY Attorney No. 4131447
     Annette Gifford, NY Attorney No. 4105870
5    DOLIN, THOMAS & SOLOMON LLP
     693 East Avenue
6    Rochester, NY 14607
     Telephone: (585) 272-0540
7    Facsimile:  (585) 272-0574
     nthomas@theemploymentattorneys.com
8
     Charles H. Saul, PA State Bar No. 19938
9    Liberty J. Weyandt, PA State Bar No. 87654
     Kyle T. McGee, PA State Bar No. 205661
10   MARGOLIS EDELSTEIN
     525 William Penn Place
11   Suite 3300
     Pittsburgh, PA 15219
12   Telephone: (412) 281-4256
     Facsimile: (412) 642-2380
13   csaul@margolisedelstein.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, and file the following Class Action Complaint:

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

1.    This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, under the laws of California and other laws of the various States in which defendants do business.

2.    On December 12, 2006, Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI"), both named defendants in this action, were named in a complaint filed in the Western District of Pennsylvania.

3.    Prior to the filing of the Pennsylvania complaint, SCI had acquired Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary. After the merger, SCI continued to operate the vast majority of both its own funeral homes and those of Alderwoods.

4.    The Pennsylvania complaint was filed as a class and collective action alleging, *inter alia*, that employees who worked at defendants' funeral home locations were not properly paid for all the time they worked for defendants. It asserted violations of both the Fair Labor Standards Act ("FLSA") and state wage and hour laws.

5.    The employees (whether they worked only at an Alderwoods location that became an SCI location, or at any other SCI location) shared a number of factual similarities: they suffered similar pay violations; SCI and/or its agents were their joint employers; SCI was liable for the violations of the entities it had acquired.

6.    Because of the overlapping legal liability of defendants, as well as the overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in the interests of judicial efficiency for defendants to be named in a common action.

7.    The Court in the Western District of Pennsylvania conditionally certified an FLSA class of employees and directed that notice be sent to those individuals who worked at

-1-
AMENDED COMPLAINT-CLASS ACTION
*Helm et al v. Alderwoods et al - Case No. RG 07359602*

1   an Alderwoods location.

2        8.     In response to that notice, hundreds of current and former employees opted-in to

3   the Pennsylvania action.

4        9.     On or about June 8, 2007, the Court in the Western District of Pennsylvania

5   declined to exercise supplemental jurisdiction over any of the state law claims alleged in that

6   action.  Therefore, on or about July 9, 2007, the employees of SCI and Alderwoods reasserted

7   their state law claims in a Class Action Complaint filed in the Superior Court of the State of

8   California for the County of Alameda, Case No. RG 07334643 (the "Combined State Law

9   Action").

10       10.    Subsequently, the Court in the Western District of Pennsylvania determined it

11  would only hear claims on behalf of employees who worked only for Alderwoods, and that

12  claims of employees who had worked only at other SCI locations should be heard in a separate

13  action.

14       11.    Therefore, based on defendants' position that resulted in that ruling, the

15  Combined State Law Action was voluntarily dismissed so that the state law claims of the

16  employees who worked at locations managed by Alderwoods could be heard separately from

17  those who worked at other SCI locations.

18       12.    In the instant action, employees who worked at funeral locations managed by

19  Alderwoods assert violations of various state laws based upon defendants' failure to pay

20  employees their regular or statutorily required rate of pay for all hours worked.

21       13.    The plaintiffs in this lawsuit include employees who worked at all Alderwoods

22  funeral locations prior to the time that SCI or its affiliates assumed activities related to

23  plaintiffs' employment.  SCI and its affiliates are named in this action on the basis of their

24  liability as successors-in-interest to Alderwoods.

25       14.    To extent that plaintiffs suffered the violations alleged in this action *after* SCI

26  or its affiliates began assuming activities related to plaintiffs' employment, those claims have

27  been separately asserted in the action *Bryant, et al. v. Service Corporation International, et. al,*

28  Case No. RG07359593.

## II.    JURISDICTION AND VENUE

15. This Court has jurisdiction over defendants because defendants conduct business in this State.

16. Venue is proper in this judicial district, pursuant to Code of Civil Procedure § 395.5 and Corporations Code § 2105.

17. Upon information and belief, defendant Alderwoods Group, Inc. ("Alderwoods") is a foreign corporation which has not obtained a certificate of qualification to do business in California.

18. Upon information and belief, defendant Service Corporation International ("SCI") is a foreign corporation which has not obtained a certificate of qualification to do business in California.

19. Upon information and belief, defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. is a foreign corporation which has not obtained a certificate of qualification to do business in California.

20. Venue is also proper in this judicial district because defendants maintain and operate one or more business locations, transact business, and/or have agents in Alameda County, as well as in other counties in the State of California, and are otherwise within this Court's jurisdiction for purposes of service of process. Obligations and/or liabilities of the defendants arose in this County because defendants have contracted to employ or have employed plaintiffs in Alameda County, as well as in other counties in the State of California. Some of the claims in this matter arose from contracts for employment which were to be performed, at least in part, in Alameda County, as well as in other counties in the State of California. Some of the unlawful acts alleged herein occurred in Alameda County, as well as in other counties in the State of California, and have a direct effect on plaintiffs within Alameda County and within the State of California.

III.    PARTIES

        A.  Plaintiffs

      21.    The class members ("Class Members") are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  As more fully set forth in the foregoing paragraphs, which Class Members incorporate by reference as if fully set forth herein, Class Members' claims are connected to Alameda County as some of those claims arose from contracts to be performed in Alameda County, some of the unlawful acts alleged herein occurred in Alameda County, and some of those acts have a direct effect on Class Members within Alameda County.

        B.  Defendants

      22.    Defendants Alderwoods, SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P. ("SCI Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston"), are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

      23.    The SCI Cooperative, SCI Western, SCI Eastern and SCI Houston are all entities which are owned, directly or indirectly, by SCI.  Together with SCI, those entities are referred to collectively as the "SCI Defendants."

      24.    At all relevant times, Alderwoods was plaintiffs' employer and is thus liable to plaintiffs as an employer, joint employer, single employer and/or otherwise according to statutory and common law.

*Paul A. Houston is Liable to Class Members*

      25.    Defendant Paul A. Houston has acted as Chief Executive Officer and Director of Alderwoods since in or around 2002.

      26.    Upon information and belief, in concert with others, Mr. Houston has the authority to, and does, make decisions that concern the policies defendants adopt and the

1  implementation of those policies.

2      27.    Upon information and belief, in concert with others, Mr. Houston has the
3  authority to, and does, make decisions that concern defendants' operations, including functions
4  related to employment, human resources, training, payroll, and benefits.

5      28.    Upon information and belief, due in part to his role as Chief Executive Officer
6  and Director, Mr. Houston is actively involved in the creation of the illegal policies
7  complained of in this case, including, but not limited to, the On Call Pay Policy, Community
8  Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break
9  Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and
10  the policy regarding the calculation of Class Members' overtime.

11     29.    Upon information and belief, due in part to his role as Chief Executive Officer
12  and Director, Mr. Houston actively advises defendants' agents on the enforcement of the
13  illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy,
14  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,
15  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time
16  Policy, and the policy regarding the calculation of Class Members' overtime.

17     30.    Upon information and belief, due in part to his role as President and Chief
18  Executive Officer, Mr. Houston actively ensures defendants' compliance or non-compliance
19  with the state and common laws asserted in this action.

20     31.    Upon information and belief, in concert with others, Mr. Houston has the
21  authority to, and does, make decisions that concern the reviewing and counseling of defendants
22  regarding employment decisions, including hiring and firing of Class Members.

23     32.    Upon information and belief, in concert with others, Mr. Houston has the
24  authority to, and does, make decisions that concern employees' schedules, hours and standard
25  benefit levels.

26     33.    Upon information and belief, in concert with others, Mr. Houston has the
27  authority to, and does, make decisions that concern standard pay scales.

28     34.    Upon information and belief, in concert with others, Mr. Houston has the

-5-
AMENDED COMPLAINT-CLASS ACTION
*Helm et al v. Alderwoods et al* - Case No. RG 07359602

1   authority to, and does, make decisions that concern defendants' human resources policies, the

2   resolution issues and disputes regarding policies and their applications, the counsel locations

3   receive regarding human resources issues, and communications with employees about human

4   resources issues and policies.

5        35.    Upon information and belief, in concert with others, Mr. Houston has the

6   authority to, and does, make decisions that concern defendants' employment and human

7   resources records, including the systems for keeping and maintaining those records.

8        36.    Upon information and belief, in concert with others, Mr. Houston has the

9   authority to, and does, make decisions that concern training and education functions across

10  SCI's network.

11       37.    Upon information and belief, in concert with others, Mr. Houston has the

12  authority to, and does, make decisions that concern the type and scope of training employees

13  must attend as well as any compensation they receive for attending training.

14       38.    Upon information and belief, in concert with others, Mr. Houston has the

15  authority to, and does, make decisions that concern payroll and commission functions across

16  SCI's network.

17       39.    Upon information and belief, in concert with others, Mr. Houston has the

18  authority to, and does, make decisions that concern the system for keeping and maintaining

19  employees' payroll records, the timing and method with which payment is conveyed to

20  employees, and the manner and method in which employees receive payroll information

21  including their payroll checks.

22       40.    Upon information and belief, in concert with others, Mr. Houston has the

23  authority to, and does, make decisions that concern benefit plans across SCI's network.

24       41.    Upon information and belief, in concert with others, Mr. Houston has the

25  authority to, and does, make decisions that concern the type and scope of benefits available to

26  employees, the method and manner in which information regarding those plans is conveyed to

27  employees, and the system for keeping and maintaining records related to employees' benefits.

28       42.    Because Mr. Houston has authority to hire or fire employees, provide and direct

1  support regarding human resources issues, including the hiring and firing of Class Members,
2  and control the drafting and enforcement of the policies which govern the hiring and firing of
3  employees, Mr. Houston has the power to hire and fire employees.

4      43.    Because Mr. Houston has authority to establish work schedules and/or conditions
5  of employment, provide and direct support regarding human resources issues, including work
6  schedules and/or conditions of employment, control the drafting and enforcement of the
7  policies which govern employees' schedules and/or conditions of employment, establish the
8  type and scope of training employees receive, and administer employees' benefit programs,
9  including standard benefit levels and the type and scope of benefits available to employees,
10  Mr. Houston supervises and controls employees' work schedules and/or conditions of
11  employment.

12     44.    Because Mr. Houston has authority to establish employees' rate and method of
13  payment and centrally control payroll functions, including standard pay scales, the provision of
14  payroll information, and the timing of payment, Mr. Houston determines the rate and method
15  of employees' payment.

16     45.    Because Mr. Houston has authority with respect to defendants' centralized
17  records, including a database regarding employees' employment records, and systems for
18  keeping and maintaining payroll, benefits, and other employment-related records, Mr. Houston
19  maintains employees' employment records.

20     46.    Because Mr. Houston provides day-to-day support regarding human resources
21  issues, including employees' work schedules and/or conditions of employment, controls the
22  drafting and enforcement of the policies which govern employees' schedules and/or conditions
23  of employment, and administers employees' benefit programs, he is affirmatively, directly, and
24  actively involved in operations of the defendants' business functions, particularly in regards to
25  the employment of Class Members.

26     47.    Because Mr. Houston is actively involved in the creation of the illegal policies
27  complained of in this case, actively advises defendants' agents on the enforcement of the
28  illegal policies complained of in this case and actively ensures defendants' compliance or non-

1    compliance with the state and common laws asserted in this action, he actively participates in
2    the violations complained of in this action.

3        48.    Based upon the foregoing, Mr. Houston is liable to Class Members because of
4    his active role in operating the business, his status as an employer, or according to state
5    statutory and common law.

6    *The SCI Defendants Are Liable to Class Members as Successors-in-Interest*

7        49.    In or about November, 2006, SCI acquired Alderwoods and Alderwoods became
8    SCI's wholly-owned subsidiary. After the merger, the SCI Defendants continued to operate
9    the vast majority of both their own funeral homes and those of Alderwoods.

10       50.    Upon information and belief, Coronado Acquisition Group ("Coronado"), at
11   relevant times hereto, was a wholly owned subsidiary of SCI, which was formed by SCI for the
12   sole purpose of merging with Alderwoods. At relevant times hereto, SCI and Coronado had
13   the same offices, telephone numbers, and corporate officers.

14       51.    Upon information and belief, Alderwoods, through its shareholders, has adopted
15   a merger agreement by and between Alderwoods, Coronado and/or one or more of the SCI
16   Defendants.

17       52.    Upon information and belief, SCI, through its shareholders, has adopted a merger
18   agreement between Alderwoods, Coronado and/or one or more of the SCI Defendants.

19       53.    Upon information and belief, as of approximately November 2006, Alderwoods
20   and/or Coronado ("Merged Entities") became a wholly owned subsidiary of SCI.

21       54.    Upon information and belief, the Merged Entities, under the merger agreement,
22   continue business operations in substantially the same form as before the merger.

23       55.    Upon information and belief, the Merged Entities, under the merger agreement,
24   continue to use substantially the same workforce as before the merger, with substantially the
25   same supervisors and same working conditions as Alderwoods.

26       56.    Upon information and belief, the Merged Entities, under the merger agreement,
27   provide essentially the same services as before the merger and use the same facilities,
28   equipment and method of providing services as Alderwoods.

57.    Upon information and belief, the SCI Defendants are successors-in-interest to Alderwoods' liability.  As a successors-in-interest, the SCI Defendants are jointly and severally liable for all of the unlawful conduct of Alderwoods alleged herein.

## IV.    CLASS ACTION ALLEGATIONS

58.    The claims arising under the state wage laws set forth below are properly maintainable as a class action under Cal. Civ. Proc. § 382.

59.    Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

60.    The class size is believed to be several thousands of employees, a significant percentage of whom are within California.

61.    Common questions of law and fact predominate in this action because the claims of all Class Members are based on whether defendants' practice of not paying nonexempt employees their regular or statutorily required rate of pay for all hours worked violates California state law and the state laws of the various other states in which defendants do business.

62.    Common questions of law and fact include, but are not limited to, the following:

   a.  Whether Class Members are entitled to payment for all of the time they worked for defendants.

   b.  Whether Class Members are entitled to payment at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

   c.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members for all of the time they worked for defendants.

   d.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

1    63.    The named plaintiffs' claims are typical of, and concurrent to, the claims of Class

2   Members, because they are similarly situated. The named plaintiffs and all Class Members

3   were subjected to defendants' policies and practices of failing to compensate employees for

4   overtime work.

5    64.    The named plaintiffs will fairly and adequately represent and protect the interests

6   of Class Members. The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas &

7   Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members'

8   claims. The class counsel are experienced in employment litigation, and their attorneys are

9   experienced in class action litigation, including class actions arising under federal and state

10  wage and hour laws.

11   65.    There are no known conflicts of interest between and among Class Members.

12   66.    A class action is superior to other available means for the fair and efficient

13  adjudication of this controversy. Individual joinder of all Class Members is not practicable,

14  and questions of law and fact common to the Class predominate over any questions affecting

15  only individual members of the Class. Each Class Member has been damaged and is entitled

16  to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering,

17  and/or failing to pay employees their regular or statutorily required rate of pay for all hours

18  worked. Class action treatment will allow those similarly situated persons to litigate their

19  claims in the manner that is most efficient and economical for the parties and the judicial

20  system.

21  **V.    FACTUAL BACKGROUND**

22   67.    Class Members are those employees and former employees of defendants who

23  were suffered or permitted to work by defendants and not paid their regular or statutorily

24  required rate of pay for all hours worked.

25   68.    Defendants' policy and/or practice was to not compensate Class Members their

26  regular or statutorily required rate of pay for work defendants suffered or permitted Class

27  Members to perform.

28

1    69.    Defendants knew Class Members were supposed to receive such wages,

2    however, defendants willfully failed to pay for all hours when Class Members worked.

3    70.    Defendants' practice is to be deliberately indifferent to violations of the statutory

4    overtime requirements.

5    71.    The failure to pay overtime is willful.

6    72.    Examples of defendants' policies and practices to deprive Class Members of

7    their earned wages and wage premiums are set forth below:

8    a. Defendants implemented a "Community Work Policy." Under the policy,
defendants suffered or permitted their employees to perform "Community

9    Work" so as to increase revenues for defendants. Defendants did not
compensate the employees for such time spent in Community Work in

10   furtherance of the employer's business under the "Community Work Policy."

11

12   b. Defendants implemented an "On Call Pay Policy." Under the policy,
employees were suffered or permitted to perform work by handling calls and

13   other work related issues after normal business hours, but defendants would
not compensate employees for all work performed.

14

15   c. Defendants' implemented a "Training Compensation Policy." Under the
policy, defendants suffered or permitted their employees to take various types

16   of training. Defendants did not pay for such training, despite suffering or
permitting employees to perform such work.

17

18   d. Defendants implemented a "Pre-Needs Appointment Policy." Defendants
suffered or permitted employees to meet with clients to discuss pre-need

19   purchases. To the degree that such appointments were not considered part of
the employees' schedule, the employees were suffered or permitted to

20   continue the appointments, but were not paid for such time worked under the
"Pre-Needs Appointment Policy." Defendants' management would

21   sometimes attempt to justify this policy on the grounds that the employee
would likely receive a commission if the client purchased a pre-needs

22   product.

23

24   e. Defendants implemented a "Meal Break Deduction Policy." Under the
policy, defendants did not pay for meal breaks. Defendants did, however,

25   suffer and permit employees to perform work during such meal breaks, but
pursuant to defendants' "Meal Break Deduction Policy," time spent on meal

26   "breaks" was still deducted from the employee's pay even when defendants
suffered or permitted work to be performed during such "breaks."

27

28   f. Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under

-11-

1   this policy, defendants only permitted payments for overtime if the overtime

2   was pre-approved. Defendants suffered or permitted employees to work

overtime and therefore, employees were entitled to overtime payments.

3   However, defendants refused to make the legally required payments because

the time was not "pre-approved" as required under the "Pre-Approval for

4   Overtime Pay Policy."

5

g.  Defendants implemented an "Unrecorded Work Time Policy." Under this

6       policy, defendants suffered or permitted employees to perform work, but

7       directed that such work not be recorded. Defendants then refused to pay for

the time worked under the "Unrecorded Work Time Policy" because, even

8       though defendants knew such time had been worked, it had not been

"recorded."

9

h.  Defendants' policy was to not include all remuneration (such as bonuses and

10      commissions) in the calculation of Class Members' overtime.

11      73.     Defendants also failed to make, keep and preserve adequate and accurate records

12  of the employment of Class Members concerning their wages, hours and other conditions of

13  employment.

14      74.     More specifically, the records kept by defendants failed to adequately and

15  accurately disclose among other things, hours worked each work day, the total hours worked

16  each work week and/or the total overtime compensation for each work week.

17      75.     Defendants failed to pay full compensation to Class Members who are no longer

18  employed by defendants promptly after those Class Members were discharged, laid off or

19  resigned. In fact, defendants' failure to fully compensate those Class Members is continuing.

20                          **FIRST CAUSE OF ACTION**

21  **VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)**

22      76.     The preceding paragraphs are incorporated as if fully set forth herein.

23  **Failure to Pay Overtime Compensation**

24      77.     Defendants willfully violated their obligations under California law, including

25  those under California Labor Code §1194, *et seq.*, by failing to pay Class Members the legal

26  overtime compensation applicable to Class Members.

27

28

78.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation**

79.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, *et seq.*, by willfully failing to pay Class Members who have been discharged or laid off all wages earned and unpaid at the time of discharge or layoff.

80.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours thereafter.

81.    Defendants did not pay Class Members who were discharged, were laid off or resigned their regular or statutorily required rate of pay for all hours worked, as required by California law.  Defendants' failure to pay those amounts is ongoing.

82.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

83.    Defendants are liable to Class Members for statutory penalties, pursuant to California Labor Code § 203, in the amounts set forth therein.

**Failure to Provide Required Meal and Rest Periods**

84.    Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226.7 and 512, *et seq.*, by willfully failing to provide Class Members with legally required meal and rest periods.

85.    Defendants repeatedly and regularly interrupted Class Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.

86.    Defendants failed to compensate Class Members for missed meal and rest breaks.

87.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Furnish Timely and Accurate Wage Statements**

88.    Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226(a) and 226.3, *et seq.*, by willfully failing to provide Class Members with timely and accurate wage statements as required by California law.

89.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

90.    Wherefore, Class Members request relief as described below.

**SECOND CAUSE OF ACTION**

**STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)**

91.    The preceding paragraphs are incorporated as if fully set forth herein.

92.    Defendants willfully violated their obligations to properly compensate Class Members under the wage laws of the states in which defendants do business including:

    a.  Alaska Stat. § 23.10.050, *et seq.*;

    b.  Arizona Rev. Stat. § 23-201, *et seq.*;

    c.  Arkansas Code § 11-4-201, *et seq.*;

    d.  Colorado Rev. Stat. § 8-6-101, *et seq.*;  Colorado Code Regs. § 1103-1, *et seq.*;

    e.  Connecticut Gen. Stat. § 31-58, *et seq.*;

    f.  820 Illinois Comp. Stat. 105/1, *et seq.*;  820 Illinois Comp. Stat. 105/12(a); 820 Illinois Comp. Stat. 115/1, *et seq.*;

    g.  Indiana Code § 22-2-2-1, *et seq.*;  Indiana Code § 22-2-2-4, *et seq.*;  Indiana Code § 22-2-5-1, *et seq.*;  Indiana Code § 22-2-9-2, *et seq.*;

    h.  Kansas Stat. § 44-1201, *et seq.*;

    i.  Louisiana Rev. Stat. § 23:631, *et seq.*;

    j.  Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

    k.  Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 148, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

    l.  Michigan Comp. Laws § 408.381, *et seq.*;

-14-
AMENDED COMPLAINT-CLASS ACTION
*Helm et al v. Alderwoods et al - Case No. RG 07359602*

1    m. Minnesota Stat. § 177.21, *et seq.*; Minnesota Stat. § 181.13, *et seq.*;

2    n. Montana Code § 39-3-401, *et seq.*;

3    o. Nevada Rev. Stat. § 608.005, *et seq.*;

4
5    p. New Hampshire Rev. Stat. § 279:1 *et seq.*;

6    q. New Mexico Stat. § 50-4-1, *et seq.*;

7    r. New York Lab. Law § 160, *et seq.*;

8    s. North Carolina Gen. Stat. § 95-25.1, *et seq.*;

9    t. Ohio Rev. Code § 4111.01, *et seq.*;

10   u. Oregon Rev. Stat. § 653.005, *et seq.*;

11
     v. 43 Pennsylvania Stat. § 333.101, *et seq.*; 43 Pennsylvania Stat. § 206.3, *et
12      seq.*;

13   w. 29 Laws of Puerto Rico §250, *et seq.*;

14   x. Rhode Island Gen. Laws § 28-12-1, *et seq.*;

15   y. South Carolina Code § 41-10-10, *et seq.*;

16
     z. Washington Rev. Code § 49.46.005, *et seq.*;
17
     aa. West Virginia Code § 21-5C-1, *et seq.*;
18
19       93.    As a direct and proximate cause of defendants' violations of these statutes, Class

20   Members have suffered damages.

21       94.    Wherefore, Class Members request relief as described below.

22                              **THIRD CAUSE OF ACTION**

23      **UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)**

24       95.    The preceding paragraphs are incorporated as if fully set forth herein.

25       96.    Defendants have received financial gain at the expense of Class Members.

26       97.    Defendants have received that financial gain under such circumstances that, in

27   equity and good conscience, defendants ought not to be allowed to profit at the expense of

28   Class Members.

98.     Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members. As a result of this conduct, the common laws and state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

99.     As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

100.    Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION

### CONVERSION (by all plaintiffs against all defendants)

101.    The preceding paragraphs are incorporated as if fully set forth herein.

102.    At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due. The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Class Members.

103.    In refusing to pay wages and overtime to Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Class Members for defendants' own use, purpose and benefit. At the time the conversion took place, Class Members were entitled to immediate possession of the amount of wages and overtime earned. As a result, Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial. This conversion was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Class Members. This conversion was concealed from Class Members.

104.  Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to Class Members.

105.  As a result of defendants' actions, Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

106.  Wherefore, Class Members request relief as described below.

## FIFTH CAUSE OF ACTION

### FRAUD AND DECEIT (by all plaintiffs against all defendants)

107.  The preceding paragraphs are incorporated as if fully set forth herein.

108.  Defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable federal and state laws.  Some examples include defendants' false statements in their policy manuals that "[a]ll non-exempt employees will be compensated for all hours worked" and that defendants "will comply with all applicable federal, state and local laws.  If any of the provisions of this policy conflict with any federal, state or local laws or regulations, then the laws or regulations will supersede the Company's policy in those specific locations."

109.  Defendants, however, at all times intended to violate applicable federal and state laws by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

110.  These misrepresentations were material to the terms of Class Members' employment contracts, and Class Members relied on the misrepresentations in agreeing to accept and continue employment with defendants.  This reliance was reasonable, as Class

-17-

1  Members had every right to believe that defendants would abide by their obligations pursuant
2  to applicable federal and state law.

3      111.   Defendants willfully violated their obligations by committing fraud against Class
4  Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,
5  California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas,
6  Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,
7  Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,
8  Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia,
9  Washington, and West Virginia and are liable to Class Members.

10     112.   As a direct and proximate cause of the fraud committed by defendants, Class
11  Members did not receive the statutorily mandated wages for overtime and suffered damages.

12     113.   Defendants acted maliciously when they committed the wrongful acts which
13  constitute this cause of action such that it warrants the imposition of punitive and exemplary
14  damages.

15     114.   Wherefore, Class Members request relief as described below.

16                        **SIXTH CAUSE OF ACTION**

17          **MISREPRESENTATION (by all plaintiffs against all defendants)**

18     115.   The preceding paragraphs are incorporated as if fully set forth herein.

19     116.   In particular, Class Members incorporate and refer to paragraphs 107 through
20  109 above, regarding the material misrepresentations made by defendants.

21     117.   When defendants hired Class Members, they represented to Class Members that
22  they would be fully compensated for all services performed, as more fully set forth above.

23     118.   There was no reasonable basis for defendants to believe these representations
24  because defendants had a continuing practice and policy of failing to pay their employees their
25  regular or statutorily required rate of pay for all hours worked.

26     119.   Class Members relied upon defendants' representations by performing work and
27  services for defendants. This reliance was reasonable, as Class Members had every right to

28

1  believe that defendants would abide by their obligations pursuant to applicable federal and
2  state law.

3       120.   Defendants willfully violated their obligations under the common laws and the
4  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,
5  Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts,
6  Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New
7  Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico,
8  Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia by
9  misrepresenting to Class Members that they would be fully compensated for all services
10  performed and are liable to Class Members.

11       121.   As a result of their reliance upon defendants' misrepresentations, Class Members
12  suffered damages because they were not appropriately compensated with the regular or
13  statutorily required rate of pay for all hours worked.

14       122.   As a direct and proximate result of defendants' negligent misrepresentation,
15  Class Members suffered damages.

16       123.   Wherefore, Class Members request relief as described below.

17                      **SEVENTH CAUSE OF ACTION**

18          **BREACH OF CONTRACT (by all plaintiffs against all defendants)**

19       124.   The preceding paragraphs are incorporated as if fully set forth herein.

20       125.   By entering into an employment relationship, defendants and each Class Member
21  entered into a contract for employment.

22       126.   Each such contract included an implied or express term that defendants agreed to
23  fulfill all of their obligations pursuant to applicable state and federal law.

24       127.   Defendants willfully breached the implied contract term by failing to pay Class
25  Members for all of the time Class Members worked and by failing to pay Class Members their
26  regular or statutorily required rate of pay for all hours worked.

27       128.   Defendants willfully violated their obligations under the common laws and the
28  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,

1 | Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts,
2 | Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New
3 | Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico,
4 | Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and
5 | are liable to Class Members.

6 | 129.  As a direct and proximate cause of defendants' breach of their contracts with
7 | Class Members, Class Members have suffered damages.

8 | 130.  Wherefore, Class Members request relief as described below.

9 | **EIGHTH CAUSE OF ACTION**
10 | **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
11 | **(by all plaintiffs against all defendants)**

12 | 131.  The preceding paragraphs are incorporated as if fully set forth herein.

13 | 132.  The unwritten contract for at-will employment between Class Members and
14 | defendants contained an implied covenant of good faith and fair dealing, which obligated
15 | defendants to perform the terms and conditions of the employment contract fairly and in good
16 | faith and to refrain from doing any act that would violate any state or federal law governing the
17 | employment relationship or any act that would deprive Class Members of the benefits of the
18 | contract.

19 | 133.  Defendants breached the implied covenant of good faith and fair dealing by
20 | failing to pay Class Members the wages and overtime that was due to Class Members.

21 | 134.  Defendants willfully violated their obligations under the common laws and the
22 | state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,
23 | Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts,
24 | Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New
25 | Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico,
26 | Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and
27 | are liable to Class Members.

28 |

135.  As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Class Members have suffered damages.

136.  Wherefore, Class Members request relief as described below.

### NINTH CAUSE OF ACTION

#### QUANTUM MERUIT (by all plaintiffs against all defendants)

137.  The preceding paragraphs are incorporated as if fully set forth herein.

138.  Defendants willfully violated their obligations by failing to pay Class Members for the reasonable value of the services performed by Class Members for defendants under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia are liable to Class Members under quantum meruit.

139.  As a direct and proximate cause of defendants' failure to pay Class Members for the reasonable value of services performed by Class Members for defendants, Class Members suffered damages.

140.  Wherefore, Class Members request relief as described below.

### TENTH CAUSE OF ACTION

#### UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)

141.  The preceding paragraphs are incorporated as if fully set forth herein.

142.  Defendants' failure to pay Class Members for all time worked constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code § 17200, *et seq.*

143.  The conduct of defendants in failing to pay Class Members for all time worked constitutes and was intended to constitute unfair competition and unlawful unfair and fraudulent business acts and practices within the meaning of California Business and Professional Code § 17200, *et seq.*

144.   As a result of defendants' violations of California Business and Professional Code § 17200, *et seq.*, defendants have unjustly enriched themselves at the expense of Class Members.

145.   To prevent their unjust enrichment, defendants should be required, pursuant to California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains for purpose of making full restitution to all injured Class Members.  Defendants should also be permanently enjoined from continuing their violations of California Business and Professional Code § 17200, *et seq.*

146.   Defendants willfully violated their obligations under the California Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

147.   Wherefore, Class Members request relief as described below.

### PRAYER FOR RELIEF

**WHEREFORE**, Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award of the value of Class Members' unpaid wages;

(c)   liquidated, compensatory, consequential and punitive damages;

(d)   an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Class Members' rights;

(e)   an award of pre- and post-judgment interest; and

(f)   such other and further legal or equitable relief as this Court deems to be just and appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## JURY DEMAND

2    Class Members demand a jury to hear and decide all issues of fact.

3

4                                        Respectfully Submitted,

5                                        ROSEN, BIEN & GALVAN, LLP

6    Date: January 25, 2008              By: _____

7                                        Sanford Jay Rosen, State Bar No. 62566
                                         Maria V. Morris, State Bar No. 223903
8                                        Lori E. Rifkin, State Bar No. 244081
                                         315 Montgomery Street, Tenth Floor
9                                        San Francisco, CA 94104
                                         Telephone: (415) 433-6830
10
                                         DOLIN, THOMAS & SOLOMON LLP
11                                       J. Nelson Thomas, NY Attorney No. 2579159
                                         Patrick J. Solomon, NY Attorney No. 2716660
12                                       Michael J. Lingle, NY Attorney No. 3925765
                                         Justin Cordello, NY Attorney No. 4131447
13                                       Annette Gifford, NY Attorney No. 4105870
                                         693 East Avenue
14                                       Rochester, NY 14607
                                         Telephone: (585) 272-0540
15
                                         MARGOLIS EDELSTEIN
16                                       Charles H. Saul, PA State Bar No.19938
                                         Liberty J. Weyandt, PA State Bar No. 87654
17                                       Kyle T. McGee, PA State Bar No. 205661
                                         525 William Penn Place, Suite 3300
18                                       Pittsburgh, PA 15219
                                         Telephone: (412) 281-4256
19                                       Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

1

## **APPENDIX A**

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

2

ROBERT CHERNETSKY, ROBERT JONES, HENRY KLEIN, STACEY WEINSTEIN,

3

JEFFREY SACHS, JOHNNY COLEMAN, JOHN KEATH, CHAD WICKHAM, JAMES CROUCH, JOHNNY JOHNSON, RICKIE HAMILTON, SANDY THOMAS, ROGER

4

HUGO, ROBERT SHAW, BETTY KNIGHT, STEPHANIE RIGGS, LARRY HAMMOCK, STEVEN TILLER, STROTHER FULCHER, MARY HOLDEN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-

AMENDED COMPLAINT-CLASS ACTION

*Helm et al v. Alderwoods et al* - Case No. RG 07359602

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX B**

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

Consent forms are attached in this Appendix for the following individuals:
ROBERT A. ACEVEZ, FREDERICK R. ALDRICH, MERLIN ALEXANDER, ELIAS ALVIDREZ, STEVEN A. ARNOLD, JAMES A. BAASCH, ROBERT BOWEN, MICHELE BREINDEL, LAWRENCE F. CAMP, WILLIAM CASTELLARIN, DEBBIE K. CHATMAN (BRANDT), COREY W. CLARY, KATHRYN COSPER, DIANE CRAIG, JEFFREY A. DIGGS, KATHRYN DILDY, LOUIE DOMINGUEZ, MARC A. DUMONT, JAMES C. DURDEN, STEPHEN ESCOBAR, JOHN R. FERGUSON, DARIN D. FORAN, ROBERT IDEMOTO, KENNETH GIACONE, ELIZABETH M. GRANT, JUDONA M. GREEN, WILLIAM O. GWYN, LINDA T. HAGERTY, DOUGLAS HAZEN, CARRIE HENDERSON, JAMES HENDERSON, BERNARD M. HIRREL, JAMES HOLDER, WILLIAM HUDSON III, JULIUS E. JOHNSON, WILTON KING, EDDIE KIRKPATRICK, W. SCOTT KOLWYCK, RONALD LANGLEY, FRANK LEWIS, CHARLES LOWTHER, SARAH MALMI, STEVEN L. MARTZ, EUGENIA C. MATTHEWS, NICK MCFERRAN, PAUL D. MEIZLER, HAROLD E. METCALF, MICHAEL NAPERALSKY, SEAN J. OBERSKI, RICHARD E. PETERSEN, J.D. POOL, MELISSA RAY, JACK L. REDDICK, DENNIS ROBERTSON, RICHARD E. SALHUS, JOHN SCHABLOSKI, DAVID SCHNELL, WARREN L. SEIZ, WILLIAM H. SHUFF, MYRA S. SLOAN, MONECIA SMITH, JODY P. SPIESE, MIKAL STAMPKE, FRANCIS STEINHOFF, GREGORY STUMP, TORREY SUMMERS, WILLIAM T. SUTTER III, JOSEPH G. TAFOYA JR., STEPHEN TAKESIAN, JERRY TAWNEY, TORI TAYLOR, PHILIP R. TILLMAN, FLORINDA D. TREJO, GAYLE WALKER, JAMES WHALEY, GEORGE T. WHITE, DAVID WYATT, JOHN S. ZALESKI

**EXHIBIT M**

1  Tod F. Schleier, State Bar No. 004612
   Bradley H. Schleier, State Bar No. 011696
2  SCHLEIER LAW OFFICES, P.C.
   3101 N. Central Avenue
3  Suite 1090
   Phoenix, AZ 85012
4  Telephone: (602) 277-0157
   Facsimile: (602) 230-9250
5  tod@schleierlaw.com
   brad@schleierlaw.com
6
   Attorneys for Plaintiffs
7
   [Additional Counsel Listed on Following Page]
8

9              UNITED STATES DISTRICT COURT

10                 DISTRICT OF ARIZONA

11                  PHOENIX DIVISION

12
   JAMES STICKLE; ELEANOR RIGGIO;        )  Case No.
13 FRANK ACUNA; JOSEPH BIERNACKI;        )
   GORDON FARMER; RHEALYN                )  **COMPLAINT— Class Action**
14 HOLLAND; RICHARD LAMASTERS;           )  **DEMAND FOR JURY TRIAL**
   KENNETH ALLEN, et. al,                )
15 on behalf of themselves               )
   and all employees similarly situated, )
16                                        )
           Plaintiffs,                    )
17                                        )
                    - vs -                )
18                                        )
   SCI WESTERN MARKET SUPPORT            )
19 CENTER, L.P. a/k/a SCI WESTERN        )
   MARKET SUPPORT CENTER, INC.; SCI      )
20 EASTERN MARKET SUPPORT CENTER,        )
   L.P.; SCI HOUSTON MARKET SUPPORT      )
21 CENTER, L.P.; SCI FUNERAL AND         )
   CEMETERY PURCHASING                   )
22 COOPERATIVE, INC.; SERVICE            )
   CORPORATION INTERNATIONAL; JANE       )
23 D. JONES; GWEN PETTEWAY; THOMAS       )
   RYAN; CURTIS BRIGGS; THE SCI 401K     )
24 RETIREMENT SAVINGS PLAN; and JULIE    )
   DOUGLAS,                              )
25                                        )
           Defendants.                    )
26 _____   )

27

COMPLAINT— Class Action, DEMAND FOR JURY TRIAL

Additional Attorneys for Plaintiffs, who will
submit applications for admission *pro hac vice*:

J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Annette Gifford, NY Attorney No. 4105870
Justin Cordello, NY Attorney No. 4131447
DOLIN, THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540
Facsimile: (585) 272-0574
nthomas@theemploymentattorneys.com

Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
MARGOLIS EDELSTEIN
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256
Facsimile: (412) 642-2380
csaul@margolisedelstein.com

1

**CLASS ACTION COMPLAINT**

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Schleier Law Offices, P.C., Dolin, Thomas & Solomon LLP, and Margolis Edelstein, and file the following Class Action Complaint:

**I.    INTRODUCTION**

1.    This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1332(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1059(a)(1), for defendants' failure to maintain accurate payroll records and credit plaintiffs' 401(k) plans with their non-reduced weekly wages and correct overtime compensation; and under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, for defendants' pattern of activity in employing the mails to pursue a scheme of improperly obtaining plaintiffs' property by means of false or fraudulent pretenses or representations.

**II.    JURISDICTION AND VENUE**

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under 28 U.S.C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, under 29 U.S.C. §216 (b), and under 18 U.S.C. § 1964(a) and (c).

3.    Venue is appropriate in the District of Arizona because unlawful acts alleged in this complaint were committed in this district and because defendants conduct business in this District.  Additionally, several plaintiffs, including James Stickle, Eleanor Riggio and Frank Acuna, were employed by defendants, suffered violations, and currently reside

2

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  in this District.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

2  **III.    PROCEDURAL HISTORY**

3          4.      On December 12, 2006, Service Corporation International ("SCI"), a named

4  defendant in this action, was named in a complaint filed in the Western District of

5  Pennsylvania.

6          5.      The Western District of Pennsylvania complaint also named Alderwoods

7  Group, Inc. ("Alderwoods") as a defendant in that action.

8          6.      Prior to the filing of the Pennsylvania complaint, SCI had acquired

9  Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary.

10         7.      After the merger, SCI continued to operate the vast majority of both its own

11  funeral homes and those of Alderwoods.

12         8.      The Pennsylvania complaint was filed as a class and collective action

13  alleging, *inter alia*, that employees who worked at defendants' funeral home locations

14  were not properly paid for all the time they worked for defendants.

15         9.      The employees (whether they worked only at an Alderwoods location that

16  became an SCI location, or at any other SCI location) shared a number of factual

17  similarities: they suffered similar pay violations; SCI and/or its agents were their joint

18  employers; SCI was liable for the violations of the entities it had acquired.

19         10.     Because of the overlapping legal liability of defendants, as well as the

20  overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in

21  the interests of judicial efficiency for defendants to be named in a common action.

22         11.     The Court in the Western District of Pennsylvania certified a class of

23  employees and directed that notice be sent to those individuals who worked at an

24  Alderwoods location.

25         12.     In response to that notice, hundreds of current and former employees opted-

26  in to the Pennsylvania action.

27         13.     Eventually, the Court in the Western District of Pennsylvania determined it

3

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    would only hear claims on behalf of employees who worked only for Alderwoods, and that

2    claims of employees who had worked only at other SCI locations should be heard in a

3    separate action.

4        14.    Therefore, plaintiffs bring this separate action for SCI employees who did

5    not work at an Alderwoods location.

6        15.    In the instant action, employees who worked at funeral locations owned by

7    SCI and its subsidiaries and affiliates allege violations of certain federal laws, including

8    the Fair Labor Standards Act, against SCI as well as its holdings and employees who were

9    responsible for the policies which resulted in the violations and which, therefore, are liable

10   as employers under federal law.

11       16.    The plaintiffs in this lawsuit include employees who worked at all SCI

12   funeral locations.

13   **IV.    CLASS ACTION ALLEGATIONS**

14       17.    The claims arising under ERISA and RICO are properly maintainable as a

15   class action under Federal Rule of Civil Procedure 23.

16       18.    The class action is maintainable under subsections (1), (2) and (3) of Rule

17   23(b).

18       19.    The class consists of current and former employees of defendants whose

19   401(k) plans were not credited with their non-reduced weekly wages and correct overtime

20   compensation.    Additionally, the class consists of current and former employees of

21   defendants who were injured by defendants' scheme to cheat employees out of their

22   property and to convert the employees' property, including their wages and/or overtime

23   pay, by misleading employees about their rights under the FLSA.

24       20.    The class size is over 50 employees.

25       21.    Plaintiffs will adequately represent the interests of the class members

26   because they are similarly situated to the class members and their claims are typical of, and

27   concurrent to, the claims of other class members.

22.    There are no known conflicts of interest between Named Plaintiffs and other class members.

23.    The class counsel, Schleier Law Offices, P.C., Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate the class members' claims.

24.    The class counsel is experienced in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal statutes.

25.    Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation is a violation of ERISA or was part of a scheme to defraud plaintiffs in violation of RICO.

26.    The class action is maintainable under subsections (2) and (3) of Rule 23(b) because plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

V.    **PARTIES**

A.    **Plaintiffs**

27.    The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked. "Plaintiffs" expressly includes each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action.

28.    Attached to this complaint in its **Appendix A** are the current Plaintiffs' consent forms seeking recovery against their employers in an FLSA action. Each of these individuals, as well as any individual who opts-in to this action, has full party status pursuant to 29 U.S.C. § 216 (b).

29.    Defendants are liable to Plaintiffs as employers, joint employers, single

1   employers, alter egos and/or otherwise according to federal and state common law.

2   **B.    Defendants**

3         30.    Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc.

4   (the "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western

5   Market Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P.

6   ("SCI Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston")

7   (collectively, SCI Western, SCI Eastern and SCI Houston are referred to as the "SCI

8   Support Centers"), are enterprises engaged in interstate commerce with an annual gross

9   volume of sales not less than $500,000.

10         31.    Defendant The SCI 401K Retirement Savings Plan (the "Plan") is a 401(k)

11   plan in which Plaintiffs are or were eligible to participate.

12         32.    Defendant SCI sponsors the Plan and defendants the SCI Cooperative and

13   the SCI Support Centers benefit from the Plan.

14         33.    Defendant Julie Douglas is the administrator of the Plan.

15         34.    Upon information and belief, defendants are Plaintiffs' fiduciaries with

16   respect to the Plan.

17         35.    At all times relevant to this action, defendants are employers of Plaintiffs

18   within the meaning of 29 U.S.C. § 203 (d) and comprise an "enterprise" engaged in

19   commerce as defined in 20 U.S.C. §§ 203(r), 203(s).

20   ***The SCI Support Centers Are Liable to Plaintiffs***

21         36.    SCI Western is a limited partnership or corporation which is owned, directly

22   or indirectly, by SCI.

23         37.    SCI Eastern is a limited partnership which is owned, directly or indirectly, by

24   SCI.

25         38.    SCI Houston is a limited partnership which is owned, directly or indirectly,

26   by SCI.

27         39.    The primary functions of the SCI Support Centers are to help facilitate the

1   execution of corporate strategies, coordinate communications between the field and
2   corporate offices, and serve as liaisons for the implementation of policies and procedures.

3       40.    The SCI Support Centers provide "day-to-day human resources services and
4   support for individual locations," including "**all** executive, management, administrative,
5   accounting, data processing, and **human resources services** for [defendants'] locations."
6   **Appendix B**, declaration of Judith M. Marshall dated July 5, 2007, at ¶4 (emphasis added).

7       41.    "[O]n-site training at funeral homes and cemeteries is provided by field
8   personnel and training departments affiliated with" the SCI Support Centers.  Appendix B
9   at ¶ 6.

10       42.    Each SCI Support Center has an ownership interest in the SCI Cooperative
11   and together the SCI Support Centers collectively own a majority of the SCI Cooperative.

12       43.    The SCI Support Centers, through their controlling interest in the SCI
13   Cooperative, provide "Dignity University training programs" by which defendants ensure
14   uniform services at their nationwide locations, publish and maintain the weekly newsletter
15   "Frontline," and the "Global Village" intranet site, through which defendants communicate
16   with their nationwide employees, and administer benefit plans for employees and contract
17   with third-party benefit providers to respond to questions related to day-to-day benefits
18   services.  Appendix B at ¶¶6-7; **Appendix C**, declaration of Gwen Petteway dated July 9,
19   2007, at ¶5.

20       44.    Additionally, the SCI Support Centers, through their controlling interest in
21   the SCI Cooperative, maintain a payroll department and database which centralize
22   information regarding Plaintiffs, including employment records and payroll information.
23   **Appendix D**, declaration of Liana Jensen dated October 4, 2007, at ¶3.

24       45.    Defendants' public filings reflect that SCI and the entities it owns, directly or
25   indirectly, including the SCI Support Centers, employ "a single line management model in
26   an effort to streamline the organization and ensure that operational efficiencies [are]
27   achieved throughout the SCI network."

46.    Defendants' public filings reflect that the funeral home locations that SCI owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

47.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, are actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

48.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

49.    Upon information and belief, including defendants' admissions, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

50.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, play a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

51.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set employees' schedules, hours and standard benefit levels.

52.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set standard pay scales.

53.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, determine and draft policies, answer questions regarding human resources issues and policies, resolve issues regarding policies and their application, counsel locations on human resources issues, and communicate with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

54.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

55.    Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

56.    Upon information and belief, including defendants' admissions, the SCI Support Centers' primary function of facilitating the execution of corporate strategies includes maintaining and directing a single, integrated set of operations across the SCI

9

1    network.

2       57.    Upon information and belief, including defendants' admissions, the SCI

3   Support Centers are responsible for, and subject to, centralized management directions and

4   decisions.

5       58.    The SCI Support Centers are owned, directly or indirectly, by defendant SCI.

6   Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI

7   Cooperative that is owned by the SCI Support Centers.

8       59.    Upon information and belief, the SCI Support Centers are part of an

9   extensive and complex network of corporations which SCI has created and owns in an

10   effort to operate its nationwide locations in a unified, consistent manner. This network

11   promotes a fraud or injustice, in that it attempts to avoid liability for paying its common

12   employees and prevents employees from accurately identifying their employers.

13       60.    Because the SCI Support Centers have authority to hire or fire employees,

14   provide day-to-day support regarding human resources issues, including the hiring and

15   firing of employees, and control the drafting and enforcement of the policies which govern

16   the hiring and firing of employees, the SCI Support Centers have the power to hire and fire

17   employees.

18       61.    Because the SCI Support Centers have authority to establish employees'

19   work schedules and/or conditions of employment, provide day-to-day support regarding

20   human resources issues, including employees' work schedules and/or conditions of

21   employment, control the drafting and enforcement of the policies which govern

22   employees' schedules and/or conditions of employment, and administer employees'

23   benefit programs, the SCI Support Centers supervise and control employees' work

24   schedules and/or conditions of employment.

25       62.    Because the SCI Support Centers have authority to establish employees' rate

26   and method of payment and centrally control payroll functions, the SCI Support Centers

27   determine the rate and method of employees' payment.

63.    Because the SCI Support Centers play a central role in the keeping of centralized records, including a database, regarding employees' employment records, the SCI Support Centers maintain employees' employment records.

64.    For all of the foregoing reasons, among others, including the SCI Support Centers' services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, the SCI Support Centers provide centralized control over defendants' labor relations.

65.    Because the SCI Support Centers provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employee's benefit programs, they are affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in relation to the employment of Plaintiffs.

66.    Because the SCI Support Centers are actively involved in the creation of the illegal policies complained of in this case, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, the SCI Support Centers actively participate in the violations complained of in this action.

67.    Because the SCI Support Centers, together with the SCI Cooperative, are owned by SCI, directly or indirectly, the SCI Support Centers and other defendants share common ownership.

68.    Because the SCI Support Centers are subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Support Centers and other defendants share common management.

1    69.    Because the SCI Support Centers are subject to a single line management
2    model applicable to the entire SCI network for the purpose of streamlining the
3    organization and achieving operational efficiencies, the SCI Support Centers and other
4    defendants share functional integration of operations.

5    70.    Because the SCI Support Centers control the drafting and enforcement of the
6    employment and human resources policies related to employees, centrally control the
7    payroll functions related to employees' employment, provide services and support with
8    respect to "all executive, management, administrative, accounting, data processing, and
9    human resources services," training, and nationwide communications with employees, and
10    are subject to a network-wide single line management model, the SCI Support Centers are
11    not completely disassociated with respect to employees' employment.

12    71.    The SCI Support Centers may be deemed to share control of employees,
13    directly or indirectly, by reason of the fact that they are under common control with the
14    SCI Cooperative and the funeral home locations because they are all owned by SCI,
15    directly or indirectly, and because the SCI Support Centers control the drafting and
16    enforcement of the employment and human resources policies related to Plaintiffs,
17    centrally control the payroll functions related to employees' employment, provide services
18    and support with respect to "all executive, management, administrative, accounting, data
19    processing, and human resources services," training, and nationwide communications with
20    employees, and are subject to a network-wide single line management model.

21    72.    Because the SCI Support Centers are part of an extensive and complex
22    network through which SCI promotes a fraud or injustice in attempting to shield from
23    liability itself and other entities which are responsible for employees' employment and in
24    preventing employees from accurately determining the identity of their employers, the SCI
25    Support Centers are an alter ego of SCI and the other entities SCI owns.

26    73.    Based upon the foregoing, the SCI Support Centers are liable to Plaintiffs
27    because of their active role in operating the business, their role in the violations

12

1    complained of in this action, their status as employer, joint employer, single employer,

2    alter ego, or otherwise according to federal and state common law.

3    ***The SCI Cooperative Is Liable to Plaintiffs***

4         74.    The SCI Cooperative is a Delaware corporation which is owned, directly or

5    indirectly, by SCI and the SCI Support Centers.

6         75.    The SCI Cooperative, through agreements with the SCI Support Centers,

7    "provide[s] additional human resources services and support" for the funeral home

8    locations. Appendix B at ¶4.

9         76.    "[O]n-site training at funeral homes and cemeteries is provided by field

10   personnel and training departments affiliated with" the SCI Cooperative. Appendix B at

11   ¶6.

12        77.    The SCI Cooperative publishes and maintains the weekly newsletter

13   "Frontline," and the "Global Village" intranet site, publications through which defendants

14   communicate with their nationwide employees. Appendix B at ¶7.

15        78.    The SCI Cooperative administers benefits by "contract[ing] with third-party

16   benefit providers to respond to questions related to day-to-day benefits services, such as

17   local provider questions, access to online services, and benefits provider contact

18   information. To the extent that those third-party providers cannot respond to questions,

19   [the SCI Cooperative] will respond." Appendix C at ¶5.

20        79.    The SCI Cooperative maintains a payroll department and "a database that

21   contains information on current and former employees of SCI subsidiaries." Appendix D

22   at ¶3.

23        80.    Defendants' public filings reflect that SCI and the entities it owns directly or

24   indirectly, including the SCI Cooperative, employ "a single line management model in an

25   effort to streamline the organization and ensure that operational efficiencies [are] achieved

26   throughout the SCI network."

27        81.    Defendants' public filings reflect that the funeral home locations that SCI

owns, directly or indirectly, "are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles."

82.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of plaintiffs' overtime.

83.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of plaintiffs' overtime.

84.    Upon information and belief, including defendants' admissions, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

85.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, plays a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

86.    Upon information and belief, including defendants' admissions, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents,

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  make decisions that set employees' schedules, hours, and standard benefit levels.

2      87.    Upon information and belief, including defendants' admissions, the SCI
3  Cooperative, in concert with others, has the authority to, and does, through its agents,
4  make decisions that set standard pay scales.

5      88.    Upon information and belief, including defendants' admissions, the SCI
6  Cooperative determines and drafts policies, answers questions regarding human resources
7  issues and policies, resolves issues regarding policies and their application, counsels
8  locations on human resources issues, and communicates with employees about company
9  issues and human resources issues and policies, including issues related to hours worked
10 and payment for such hours worked.

11     89.    Upon information and belief, including defendants' admissions, the SCI
12 Cooperative provides employees with information regarding benefit plans and providers,
13 oversees the implementation and execution of benefit plans, retains ultimate authority for
14 providing information and responding to questions regarding the benefit plans, maintains
15 records regarding the benefit plans, makes determinations, either directly or indirectly,
16 regarding the scope and amount of benefits available to employees, and is responsible for
17 providing employees, directly or indirectly, with information regarding their benefits,
18 including benefits statements and information regarding their 401(k) plans.

19     90.    Upon information and belief, including defendants' admissions, the SCI
20 Cooperative maintains payroll records regarding employees and, in concert with others, the
21 SCI Cooperative has the authority to, and does, through its agents, make decisions
22 concerning the issuance of payroll checks, directly or indirectly.

23     91.    Upon information and belief, including defendants' admissions, the SCI
24 Cooperative's functions in providing services and support regarding human resources,
25 training, benefits administration, and payroll include a function maintaining and directing a
26 single, integrated set of operations across the SCI network.

27     92.    Upon information and belief, including defendants' admissions, the SCI

1   Cooperative is responsible for, and subject to, centralized management directions and

2   decisions.

3       93.    The SCI Cooperative is owned, directly or indirectly, by defendants SCI and

4   the SCI Support Centers. Additionally, SCI owns the SCI Support Centers, directly or

5   indirectly.

6       94.    Upon information and belief, the SCI Cooperative is part of an extensive and

7   complex network of corporations which SCI has created and owns in an effort to operate

8   its nationwide locations in a unified, consistent manner. This network promotes a fraud or

9   injustice, in that it attempts to avoid liability for paying its common employees and

10  prevents employees from accurately identifying their employers.

11      95.    Because the SCI Cooperative has authority to hire or fire Plaintiffs, provides

12  day-to-day support regarding human resources issues, including the hiring and firing of

13  Plaintiffs, and controls the drafting and enforcement of the policies which govern the

14  hiring and firing of employees, the SCI Cooperative has the power to hire and fire

15  employees.

16      96.    Because the SCI Cooperative has authority to establish employees' work

17  schedules and/or conditions of employment, provides day-to-day support regarding human

18  resources issues, including employees' work schedules and/or conditions of employment,

19  controls the drafting and enforcement of the policies which govern employees' schedules

20  and/or conditions of employment, and administers employees' benefit programs, the SCI

21  Cooperative supervises and controls employees' work schedules and/or conditions of

22  employment.

23      97.    Because the SCI Cooperative has authority to establish employees' rate and

24  method of payment and centrally control payroll functions, the SCI Cooperative

25  determines the rate and method of employees' payment.

26      98.    Because the SCI Cooperative keeps centralized records, including a

27  database, regarding employees' employment records, the SCI Cooperative maintains

1    employees' employment records.

2        99.    For all of the foregoing reasons, among others, including the SCI
3    Cooperative's human resources services and support, training function, publication of
4    communications across the SCI network, administration of benefit programs, and
5    maintenance of the payroll department, the SCI Cooperative provides centralized control
6    over defendants' labor relations.

7        100.    Because the SCI Cooperative provides day-to-day support regarding human
8    resources issues, including employees' work schedules and/or conditions of employment,
9    controls the drafting and enforcement of the policies which govern employees' schedules
10    and/or conditions of employment, and administers employees' benefit programs, it is
11    affirmatively, directly, and actively involved in operations of the defendants' business
12    functions, particularly as it relates to the employment of the plaintiffs.

13        101.    Because the SCI Cooperative is actively involved in the creation of the
14    illegal policies complained of in this case, actively advises defendants' agents on the
15    enforcement of the illegal policies complained of in this case and actively ensures
16    defendants' compliance or non-compliance with federal law, including the requirements of
17    the FLSA, ERISA and RICO, the SCI Cooperative actively participates in the violations
18    complained of in this action.

19        102.    Because the SCI Cooperative, together with the SCI Support Centers, is
20    owned by SCI, directly or indirectly, the SCI Cooperative and other defendants share
21    common ownership.

22        103.    Because the SCI Cooperative is subject to centralized management directions
23    and decisions that govern the entities owned by SCI, including a single line management
24    model applicable to the entire SCI network, the SCI Cooperative and other defendants
25    share common management.

26        104.    Because the SCI Cooperative is subject to a single line management model
27    applicable to the entire SCI network for the purpose of streamlining the organization and

1    achieving operational efficiencies, the SCI Cooperative and other defendants share
2    functional integration of operations.

3        105.   Because the SCI Cooperative controls the drafting and enforcement of the
4    employment and human resources policies related to employees, centrally controls the
5    payroll functions related to employees' employment, provides services and support with
6    respect to human resources, training, and nationwide communications with employees, and
7    is subject to a network-wide single line management model, the SCI Cooperative is not
8    completely disassociated with respect to employees' employment.

9        106.   The SCI Cooperative may be deemed to share control of employees, directly
10   or indirectly, by reason of the fact that it is under common control with the SCI Support
11   Centers and the funeral home locations because they are all owned by SCI, directly or
12   indirectly, and because the SCI Cooperative controls the drafting and enforcement of the
13   employment and human resources policies related to employees, centrally controls the
14   payroll functions related to employees' employment, provides services and support with
15   respect to human resources, training, and nationwide communications with employees, and
16   is subject to a network-wide single line management model.

17       107.   Because the SCI Cooperative is part of an extensive and complex network
18   through which SCI promotes a fraud or injustice in attempting to shield from liability itself
19   and other entities which are responsible for employees' employment and in preventing
20   employees from accurately determining the identity of their employers, the SCI
21   Cooperative is an alter ego of SCI and the other entities SCI owns.

22       108.   Based upon the foregoing, the SCI Cooperative is liable to Plaintiffs because
23   of its active role in operating the business, its role in the violations complained of in this
24   action, its status as employer, joint employer, single employer, alter ego, or otherwise
25   according to federal and state common law.

26   ***SCI Is Liable to Plaintiffs***

27       109.   Defendant SCI is a corporation with its headquarters being at 1929 Allen

18

1  Parkway, Houston, Texas 77019.

2      110.   SCI owns, directly or indirectly, various funeral home locations and various

3  other companies or entities, including the SCI Cooperative and the SCI Support Centers, in

4  a nationwide enterprise.

5      111.   Defendants' public filings reflect that SCI and the entities it owns directly or

6  indirectly, including the SCI Cooperative and the SCI Support Centers, employ "a single

7  line management model in an effort to streamline the organization and ensure that

8  operational efficiencies [are] achieved throughout the SCI network."

9      112.   Defendants' public filings reflect that the funeral home locations that SCI

10  owns, directly or indirectly, "are organized into various regions and within each region the

11  funeral home locations share common resources including personnel, preparation services

12  and vehicles."

13      113.   Upon information and belief, including defendants' admissions, at all

14  relevant times all functions at all entities in the SCI network, including the SCI

15  Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

16      114.   Upon information and belief, including defendants' admissions, at all

17  relevant times SCI maintained control and authority, directly or indirectly, over all

18  functions at the entities in the SCI network, including the SCI Cooperative and the SCI

19  Support Centers.

20      115.   Upon information and belief, including defendants' admissions, SCI, in

21  concert with others, has the authority to, and does, through its agents, make decisions

22  concerning the creation of the illegal policies complained of in this case, including, but not

23  limited to, the On Call Pay Policy, Community Work Policy, Training Compensation

24  Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for

25  Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the

26  calculation of Plaintiffs' overtime.

27      116.   Upon information and belief, including defendants' admissions, SCI, in

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  concert with others, has the authority to, and does, through its agents, make decisions
2  concerning advising defendants' agents on the enforcement of the illegal policies
3  complained of in this case, including, but not limited to, the On Call Pay Policy,
4  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,
5  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work
6  Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

7       117.   Upon information and belief, including defendants' admissions, SCI, in
8  concert with others, has the authority to, and does, through its agents, make decisions
9  concerning defendants' compliance or non-compliance with federal law, including the
10 requirements of the FLSA, ERISA and RICO.

11      118.   Upon information and belief, including defendants' admissions, SCI, in
12 concert with others, has the authority to, and does, through its agents, make decisions
13 concerning reviewing and counseling defendants regarding employment decisions,
14 including hiring and firing of Plaintiffs.

15      119.   Upon information and belief, including defendants' admissions, SCI, in
16 concert with others, has the authority to, and does, through its agents, make decisions
17 concerning employees' schedules, hours and standard benefit levels.

18      120.   Upon information and belief, including defendants' admissions, SCI, in
19 concert with others, has the authority to, and does, through its agents, make decisions
20 concerning standard pay scales.

21      121.   Upon information and belief, including defendants' admissions, SCI, in
22 concert with others, has the authority to, and does, through its agents, make decisions
23 concerning the determination and drafting of policies, answering questions regarding
24 human resources issues and policies, resolving issues regarding policies and their
25 application, counseling locations on human resources issues, and communicating with
26 employees about company issues and human resources issues and policies, including
27 issues related to hours worked and payment for such hours worked.

122.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning providing employees with information regarding benefit plans and providers, overseeing the implementation and execution of benefit plans, providing information and responding to questions regarding the benefit plans, maintaining records regarding the benefit plans, making determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

123.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

124.   SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning maintaining and directing a single, integrated set of operations across the SCI network.

125.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized management directions and decisions.

126.   Upon information and belief, SCI is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

127.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning hiring or firing employees, providing support regarding human resources issues, including the hiring and firing of Plaintiffs, and controlling the drafting and enforcement of the policies which govern the hiring and firing

1    of employees, SCI has the power to hire and fire employees.

2        128.    Because SCI, in concert with others, has the authority to, and does, through

3 its agents, make decisions concerning employees' work schedules and/or conditions of

4 employment, providing support regarding human resources issues, including Plaintiffs'

5 work schedules and/or conditions of employment, controlling the drafting and enforcement

6 of the policies which govern employees' schedules and/or conditions of employment, and

7 administering employees' benefit programs, SCI supervises and controls employees' work

8 schedules and/or conditions of employment.

9        129.    Because SCI, in concert with others, has the authority to, and does, through

10 its agents, make decisions concerning employees' rate and method of payment and

11 centrally controlling payroll functions, SCI determines the rate and method of employees'

12 payment.

13        130.    Because SCI, in concert with others, has the authority to, and does, through

14 its agents, make decisions concerning centralized records, including a database, regarding

15 employees' employment records, SCI maintains employees' employment records.

16        131.    For all of the foregoing reasons, among others, including SCI's authority and

17 exercise of authority with respect to human resources services and support, training

18 function, publication of communications across its network, administration of benefit

19 programs, and maintenance of the payroll department, SCI provides centralized control

20 over defendants' labor relations.

21        132.    Because SCI, in concert with others, has the authority to, and does, through

22 its agents, make decisions concerning human resources issues, including employees' work

23 schedules and/or conditions of employment, controlling the drafting and enforcement of

24 the policies which govern employees' schedules and/or conditions of employment, and

25 administering employees' benefit programs, it plays a central role in operations of

26 defendants' business functions, particularly in regards to the employment of Plaintiffs.

27        133.    Because SCI, in concert with others, has the authority to, and does, through

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

its agents, make decisions concerning the illegal policies complained of in this case,
advising of defendants' agents on the enforcement of the illegal policies complained of in
this case and ensuring defendants' compliance or non-compliance with federal law,
including the requirements of the FLSA, ERISA and RICO, SCI plays a central role in the
violations complained of in this action.

134.    Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI
Support Centers, SCI and the other defendants share common ownership.

135.    Because SCI maintains and is subject to centralized management directions
and decisions that govern the entities it owns, directly or indirectly, including a single line
management model applicable to the entire SCI network, SCI and the other defendants
share common management.

136.    Because SCI maintains and is subject to a single line management model
applicable to the entire SCI network for the purpose of streamlining the organization and
achieving operational efficiencies, SCI and the other defendants share functional
integration of operations.

137.    Because SCI, in concert with others, has the authority to, and does, through
its agents, make decisions concerning drafting and enforcing employment and human
resources policies related to employees, centrally controlling the payroll functions related
to employees' employment, providing services and support with respect to human
resources, training, and nationwide communications with employees, and is subject to a
network-wide single line management model, SCI is not completely disassociated with
respect to employees' employment.

138.    SCI may be deemed to share control of employees, directly or indirectly, by
reason of the fact that it is under common control with the SCI Cooperative, the SCI
Support Centers and the funeral home locations, all of which are owned by SCI, directly or
indirectly, and because SCI plays a central role in the drafting and enforcement of the
employment and human resources policies related to employees, centrally controlling the

payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and maintains and is subject to a network-wide single line management model.

139.    Because SCI maintains and is part of an extensive and complex network through which it promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, SCI is an alter ego of the other defendants and the other entities it owns.

140.    Based upon the foregoing, SCI is liable to employees because of its central role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to federal and state common law.

**Jane D. Jones Is Liable to Plaintiffs**

141.    Defendant Jane D. Jones has acted as Vice President of Human Resources for SCI since 2005.

142.    Defendants' public filings reflect that Ms. Jones "oversees human resources, training and education, and payroll and commission services – activities that assist approximately 20,000 employees in North America."

143.    Upon information and belief, including defendants' admissions, Ms. Jones is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across SCI's network.

144.    Upon information and belief, including defendants' admissions, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

1  Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of
2  Plaintiffs' overtime.

3      145.   Upon information and belief, including defendants' admissions, due in part
4  to her role of overseeing human resources, training and education, and payroll and
5  commission services, in concert with others, Ms. Jones actively advises defendants' agents
6  on the enforcement of the illegal policies complained of in this case, including, but not
7  limited to, the On Call Pay Policy, Community Work Policy, Training Compensation
8  Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for
9  Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the
10 calculation of Plaintiffs' overtime.

11     146.   Upon information and belief, including defendants' admissions, due in part
12 to her role of overseeing human resources, training and education, and payroll and
13 commission services, in concert with others, Ms. Jones actively ensures defendants'
14 compliance or non-compliance with federal law, including the requirements of the FLSA,
15 ERISA and RICO.

16     147.   Upon information and belief, including defendants' admissions, Ms. Jones,
17 in concert with others, is actively involved in reviewing and counseling defendants
18 regarding employment decisions, including hiring and firing of Plaintiffs.

19     148.   Upon information and belief, including defendants' admissions, Ms. Jones,
20 in concert with others, is actively involved in decisions that set employees' schedules,
21 hours and standard benefit levels.

22     149.   Upon information and belief, including defendants' admissions, Ms. Jones,
23 in concert with others, is actively involved decisions that set standard pay scales.

24     150.   Upon information and belief, including defendants' admissions, Ms. Jones,
25 in concert with others, is actively involved in the determination and drafting of human
26 resources policies, the resolution of issues and disputes regarding policies and their
27 application, the counseling locations receive regarding human resources issues, and

1  communications with employees about human resources issues and policies.

2      151.    Upon information and belief, including defendants' admissions, Ms. Jones,

3  in concert with others, is actively involved in defendants' employment and human

4  resources records, including the systems for keeping and maintaining those records.

5      152.    Upon information and belief, including defendants' admissions, Ms. Jones,

6  in concert with others, is actively involved in training and education functions across SCI's

7  network.

8      153.    Upon information and belief, including defendants' admissions, Ms. Jones,

9  in concert with others, is actively involved in determining the type and scope of training

10  employees must attend as well as any compensation they receive for attending training.

11      154.    Upon information and belief, including defendants' admissions, Ms. Jones,

12  in concert with others, is actively involved in payroll and commission functions across

13  SCI's network.

14      155.    Upon information and belief, including defendants' admissions, Ms. Jones,

15  in concert with others, is actively involved in the system for keeping and maintaining

16  employees' payroll records, the timing and method with which payment is conveyed to

17  employees, and the manner and method in which employees receive payroll information

18  including their payroll checks.

19      156.    Upon information and belief, including defendants' admissions, Ms. Jones,

20  in concert with others, is actively involved in benefit plans across SCI's network.

21      157.    Upon information and belief, including defendants' admissions, Ms. Jones,

22  in concert with others, is actively involved in determining the type and scope of benefits

23  available to employees, the method and manner in which information regarding those

24  plans is conveyed to employees, and the system for keeping and maintaining records

25  related to employees' benefits.

26      158.    Because Ms. Jones has authority to hire or fire employees, provide and direct

27  support regarding human resources issues, including the hiring and firing of employees,

1    and control the drafting and enforcement of the policies which govern the hiring and firing
2    of employees, Ms. Jones has the power to hire and fire employees.

3        159.    Because Ms. Jones has authority to establish work schedules and/or
4    conditions of employment, provide and direct support regarding human resources issues,
5    including work schedules and/or conditions of employment, control the drafting and
6    enforcement of the policies which govern employees' schedules and/or conditions of
7    employment, establish the type and scope of training employees receive, and administer
8    employees' benefit programs, including standard benefit levels and the type and scope of
9    benefits available to employees, Ms. Jones supervises and controls employees' work
10   schedules and/or conditions of employment.

11       160.    Because Ms. Jones has authority to establish employees' rate and method of
12   payment and centrally control payroll functions, including standard pay scales, the
13   provision of payroll information, and the timing of payment, Ms. Jones determines the rate
14   and method of employees' payment.

15       161.    Because Ms. Jones has authority with respect to defendants' centralized
16   records, including a database regarding employees' employment records, and systems for
17   keeping and maintaining payroll, benefits, and other employment-related records, Ms.
18   Jones maintains employees' employment records.

19       162.    Because Ms. Jones provides day-to-day support regarding human resources
20   issues, including employees' work schedules and/or conditions of employment, controls
21   the drafting and enforcement of the policies which govern employees' schedules and/or
22   conditions of employment, and administers employees' benefit programs, she is
23   affirmatively, directly, and actively involved in operations of defendants' business
24   functions, particularly in regards to the employment of Plaintiffs.

25       163.    Because Ms. Jones is actively involved in the creation of the illegal policies
26   complained of in this case, actively advises defendants' agents on the enforcement of the
27   illegal policies complained of in this case and actively ensures defendants' compliance or

1  non-compliance with federal law, including the requirements of the FLSA, ERISA and
2  RICO, Ms. Jones actively participates in the violations complained of in this action.

3      164.   Based upon the foregoing, Ms. Jones is liable to Plaintiffs because of her
4  active role in operating the business, her role in the violations complained of in this action,
5  her status as an employer, or otherwise according to federal and state common law.

6  ***Gwen Petteway Is Liable to Plaintiffs***

7      165.   Defendant Gwen Petteway has acted as Human Resources Director of
8  defendant SCI Houston since 2005.

9      166.   Ms. Petteway's job responsibilities include familiarity "with the human
10  resources services of the subsidiary and affiliate companies of SCI, as well as training and
11  benefits provided to those companies."  Appendix C at ¶3.

12      167.   As Human resources Director, Ms. Petteway's job responsibilities include
13  providing and/or supervising "day-to-day human resources services and support for
14  [defendants'] funeral home locations."  Appendix C at ¶3.

15      168.   Upon information and belief, including defendants' admissions, due in part
16  to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively
17  involved, and plays a central role, in the creation of the illegal policies complained of in
18  this case, including, but not limited to, the On Call Pay Policy, Community Work Policy,
19  Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction
20  Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the
21  policy regarding the calculation of Plaintiffs' overtime.

22      169.   Upon information and belief, including defendants' admissions, due in part
23  to her role as Human Resources Director, Ms. Petteway, in concert with others, actively,
24  and in a central role, advises defendants' agents on the enforcement of the illegal policies
25  complained of in this case, including, but not limited to, the On Call Pay Policy,
26  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,
27  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work

1  Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

2      170.   Upon information and belief, including defendants' admissions, due in part
3  to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively
4  involved, and plays a central role, in ensuring defendants' compliance or non-compliance
5  with federal law, including the requirements of the FLSA, ERISA and RICO.

6      171.   Upon information and belief, including defendants' admissions, Ms.
7  Petteway, in concert with others, is actively involved, and plays a central role, in human
8  resources functions across SCI's network.

9      172.   Upon information and belief, including defendants' admissions, Ms.
10 Petteway, in concert with others, is actively involved, and plays a central role, in day-to-
11 day human resources services and support.

12      173.   Upon information and belief, including defendants' admissions, Ms.
13 Petteway, in concert with others, is actively involved, and plays a central role, in reviewing
14 and counseling defendants regarding employment decisions, including hiring and firing of
15 Plaintiffs.

16      174.   Upon information and belief, including defendants' admissions, Ms.
17 Petteway, in concert with others, is actively involved, and plays a central role, in decisions
18 that set employee's schedules, hours and standard benefit levels.

19      175.   Upon information and belief, including defendants' admissions, Ms.
20 Petteway, in concert with others, is actively involved, and plays a central role, in decisions
21 that set standard pay scales.

22      176.   Upon information and belief, including defendants' admissions, Ms.
23 Petteway, in concert with others, is actively involved, and plays a central role, in
24 defendants' human resources policies, resolving issues and disputes regarding policies and
25 their applications, counseling locations receive regarding human resources issues,
26 providing day-to-day services and support regarding human resources issues, and
27 communications with employees about human resources issues and policies.

177. Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

178. Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in training and education functions across SCI's network.

179. Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that determine the type and scope of training employees must attend as well as any compensation they receive for attending training.

180. Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in payroll and commission functions across SCI's network.

181. Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

182. Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in defendants' benefit plans.

183. Upon information and belief, including defendants' admissions, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

184. Because Ms. Petteway has authority to hire or fire employees, provide and

1  direct support regarding human resources issues, including the hiring and firing of

2  Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring

3  and firing of employees, Ms. Petteway has the power to hire and fire employees.

4        185.   Because Ms. Petteway has authority to establish work schedules and/or

5  conditions of employment, provide and direct support regarding human resources issues,

6  including work schedules and/or conditions of employment, control the drafting and

7  enforcement of the policies which govern employees' schedules and/or conditions of

8  employment, establish the type and scope of training employees receive, and administer

9  employees' benefit programs, including standard benefit levels and the type and scope of

10 benefits available to employees, Ms. Petteway supervises and controls employees' work

11 schedules and/or conditions of employment.

12       186.   Because Ms. Petteway has authority to establish employees' rate and method

13 of payment and centrally control payroll functions, including standard pay scales, the

14 provision of payroll information, and the timing of payment, Ms. Petteway determines the

15 rate and method of employees' payment.

16       187.   Because Ms. Petteway has authority with respect to defendants' centralized

17 records, including a database regarding employees' employment records, and systems for

18 keeping and maintaining payroll, benefits, and other employment-related records, Ms.

19 Petteway maintains employees' employment records.

20       188.   Because Ms. Petteway is actively involved, or plays a central role, in day-to-

21 day support regarding human resources issues, including employees' work schedules

22 and/or conditions of employment, controls the drafting and enforcement of the policies

23 which govern employees' schedules and/or conditions of employment, and administers

24 employees' benefit programs, she is affirmatively, directly, and actively involved in

25 operations of defendants' business functions, particularly in regards to the employment of

26 Plaintiffs.

27       189.   Because Ms. Petteway is actively involved, or plays a central role, in the

31

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, she actively participates, or plays a central role, in the violations complained of in this action.

190.    Based upon the foregoing, Ms. Petteway is liable to Plaintiffs because of her status as an employer according to federal and state common law.

***Thomas Ryan Is Liable to Plaintiffs***

191.    Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

192.    Upon information and belief, including defendants' admissions, Mr. Ryan's responsibilities include actively managing SCI and its network.

193.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

194.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

195.    Upon information and belief, including defendants' admissions, due in part to his role as President and Chief Executive Officer, Mr. Ryan is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

196.    Upon information and belief, including defendants' admissions, due in part

32

1   to his role as President and Chief Executive Officer, Mr. Ryan actively advises defendants'
2   agents on the enforcement of the illegal policies complained of in this case, including, but
3   not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation
4   Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for
5   Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the
6   calculation of Plaintiffs' overtime.

7       197.   Upon information and belief, including defendants' admissions, due in part
8   to his role as President and Chief Executive Officer, Mr. Ryan actively ensures defendants'
9   compliance or non-compliance with federal law, including the requirements of the FLSA,
10  ERISA and RICO.

11      198.   Upon information and belief, including defendants' admissions, in concert
12  with others, Mr. Ryan has the authority to, and does, make decisions that concern the
13  reviewing and counseling of defendants regarding employment decisions, including hiring
14  and firing of Plaintiffs.

15      199.   Upon information and belief, including defendants' admissions, in concert
16  with others, Mr. Ryan has the authority to, and does, make decisions that concern
17  employees' schedules, hours and standard benefit levels.

18      200.   Upon information and belief, including defendants' admissions, in concert
19  with others, Mr. Ryan has the authority to, and does, make decisions that concern standard
20  pay scales.

21      201.   Upon information and belief, including defendants' admissions, in concert
22  with others, Mr. Ryan has the authority to, and does, make decisions that concern
23  defendants' human resources policies, the resolution issues and disputes regarding policies
24  and their applications, the counsel locations receive regarding human resources issues, and
25  communications with employees about human resources issues and policies.

26      202.   Upon information and belief, including defendants' admissions, in concert
27  with others, Mr. Ryan has the authority to, and does, make decisions that concern

1  defendants' employment and human resources records, including the systems for keeping
2  and maintaining those records.

3     203.   Upon information and belief, including defendants' admissions, in concert
4  with others, Mr. Ryan has the authority to, and does, make decisions that concern training
5  and education functions across SCI's network.

6     204.   Upon information and belief, including defendants' admissions, in concert
7  with others, Mr. Ryan has the authority to, and does, make decisions that concern the type
8  and scope of training employees must attend as well as any compensation they receive for
9  attending training.

10    205.   Upon information and belief, including defendants' admissions, in concert
11 with others, Mr. Ryan has the authority to, and does, make decisions that concern payroll
12 and commission functions across SCI's network.

13    206.   Upon information and belief, including defendants' admissions, in concert
14 with others, Mr. Ryan has the authority to, and does, make decisions that concern the
15 system for keeping and maintaining employees' payroll records, the timing and method
16 with which payment is conveyed to employees, and the manner and method in which
17 employees receive payroll information including their payroll checks.

18    207.   Upon information and belief, including defendants' admissions, in concert
19 with others, Mr. Ryan has the authority to, and does, make decisions that concern benefit
20 plans across SCI's network.

21    208.   Upon information and belief, including defendants' admissions, in concert
22 with others, Mr. Ryan has the authority to, and does, make decisions that concern the type
23 and scope of benefits available to employees, the method and manner in which information
24 regarding those plans is conveyed to employees, and the system for keeping and
25 maintaining records related to employees' benefits.

26    209.   Because Mr. Ryan has authority to hire or fire employees, provide and direct
27 support regarding human resources issues, including the hiring and firing of Plaintiffs, and

1    control the drafting and enforcement of the policies which govern the hiring and firing of
2    employees, Mr. Ryan has the power to hire and fire employees.

3         210.    Because Mr. Ryan has authority to establish work schedules and/or
4    conditions of employment, provide and direct support regarding human resources issues,
5    including work schedules and/or conditions of employment, control the drafting and
6    enforcement of the policies which govern employees' schedules and/or conditions of
7    employment, establish the type and scope of training employees receive, and administer
8    employees' benefit programs, including standard benefit levels and the type and scope of
9    benefits available to employees, Mr. Ryan supervises and controls employees' work
10   schedules and/or conditions of employment.

11        211.    Because Mr. Ryan has authority to establish employees' rate and method of
12   payment and centrally control payroll functions, including standard pay scales, the
13   provision of payroll information, and the timing of payment, Mr. Ryan determines the rate
14   and method of employees' payment.

15        212.    Because Mr. Ryan has authority with respect to defendants' centralized
16   records, including a database regarding employees' employment records, and systems for
17   keeping and maintaining payroll, benefits, and other employment-related records, Mr.
18   Ryan maintains employees' employment records.

19        213.    Because Mr. Ryan provides day-to-day support regarding human resources
20   issues, including employees' work schedules and/or conditions of employment, controls
21   the drafting and enforcement of the policies which govern employees' schedules and/or
22   conditions of employment, and administers employees' benefit programs, he is
23   affirmatively, directly, and actively involved in operations of the defendants' business
24   functions, particularly in regards to the employment of Plaintiffs.

25        214.    Because Mr. Ryan is actively involved in the creation of the illegal policies
26   complained of in this case, actively advises defendants' agents on the enforcement of the
27   illegal policies complained of in this case and actively ensures defendants' compliance or

1  non-compliance with federal law, including the requirements of the FLSA, ERISA and

2  RICO, he actively participates in the violations complained of in this action.

3      215.  Based upon the foregoing, Mr. Ryan is liable to Plaintiffs because of his

4  active role in operating the business, his status as an employer, or according to federal and

5  state common law.

6  ***Curtis Briggs Is Liable to Plaintiffs***

7      216.  Defendant Curtis Briggs is President and/or Vice President of various entities

8  owned by SCI, some of which are also related to the SCI Cooperative and/or the SCI

9  Support Centers.

10      217.  Mr. Briggs is Vice President for the General Partner of SCI Eastern; Vice

11  President for the General Partner of SCI Houston; President and/or Vice President of the

12  SCI Cooperative; President and/or Vice President of SCI Western.

13      218.  Additionally, Mr. Briggs has executed employment contracts with various

14  executives in his role as Vice President of SCI Executive Services, Inc.

15      219.  Upon information and belief, including defendants' admissions, Mr. Briggs's

16  responsibilities include actively managing the entities for which he is an officer and the

17  defendants' network.

18      220.  Upon information and belief, including defendants' admissions, in concert

19  with others, Mr. Briggs has the authority to, and does, make decisions that concern the

20  policies defendants adopt and for the implementation of those policies.

21      221.  Upon information and belief, including defendants' admissions, in concert

22  with others, Mr. Briggs has the authority to, and does, make decisions that concern

23  defendants' operations, including functions related to employment, human resources,

24  training, payroll, and benefits.

25      222.  Upon information and belief, including defendants' admissions, due in part

26  to his numerous roles, Mr. Briggs is actively involved in the creation of the illegal policies

27  complained of in this case, including, but not limited to, the On Call Pay Policy,

Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

223.   Upon information and belief, including defendants' admissions, due in part to his numerous roles, Mr. Briggs actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

224.   Upon information and belief, including defendants' admissions, due in part to his numerous roles, Mr. Briggs actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

225.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

226.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the setting of employees' schedules, hours and standard benefit levels.

227.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern  the setting of standard pay scales.

228.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern defendants' human resources policies, issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

communications with employees about human resources issues and policies.

229.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

230.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern training and education functions across defendants' network.

231.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

232.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern payroll and commission functions across defendants' network.

233.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

234.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern benefit plans across defendants' network.

235.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping

1    and maintaining records related to employees' benefits.

2        236.    Because Mr. Briggs has authority to hire or fire employees, provide and
3    direct support regarding human resources issues, including the hiring and firing of
4    employees, and control the drafting and enforcement of the policies which govern the
5    hiring and firing of employees, Mr. Briggs has the power to hire and fire employees.

6        237.    Because Mr. Briggs has authority to establish work schedules and/or
7    conditions of employment, provide and direct support regarding human resources issues,
8    including work schedules and/or conditions of employment, control the drafting and
9    enforcement of the policies which govern employees' schedules and/or conditions of
10   employment, establish the type and scope of training employees receive, and administer
11   employees' benefit programs, including standard benefit levels and the type and scope of
12   benefits available to employees, Mr. Briggs supervises and controls employees' work
13   schedules and/or conditions of employment.

14       238.    Because Mr. Briggs has authority to establish employees' rate and method of
15   payment and centrally control payroll functions, including standard pay scales, the
16   provision of payroll information, and the timing of payment, Mr. Briggs determines the
17   rate and method of employees' payment.

18       239.    Because Mr. Briggs has authority with respect to defendants' centralized
19   records, including a database regarding employees' employment records, and systems for
20   keeping and maintaining payroll, benefits, and other employment-related records, Mr.
21   Briggs maintains employees' employment records.

22       240.    Because Mr. Briggs provides support regarding human resources issues,
23   including employees' work schedules and/or conditions of employment, controls the
24   drafting and enforcement of the policies which govern employees' schedules and/or
25   conditions of employment, and administers employees' benefit programs, he is
26   affirmatively, directly, and actively involved in operations of defendants' business
27   functions, particularly in regards to the employment of Plaintiffs.

39

241.    Because Mr. Briggs is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, Mr. Briggs actively participates in the violations complained of in this action.

242.    Based upon the foregoing, Mr. Briggs is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to federal and state common law.

## VI.    **FACTUAL BACKGROUND**

243.    Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

244.    Defendants' policy and/or practice was to not compensate Plaintiffs for work they suffered or permitted Plaintiffs to perform.

245.    Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

246.    Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

247.    The failure to pay overtime is willful.

248.    Examples of defendants' policies and practices to deprive Plaintiffs of their earned wages and wage premiums are set forth below:

      a.    **Subclass A:**  Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed outside.

      b.    **Subclass B:**    Defendants implemented a "Community Work Policy."

40

1   Under the policy, defendants suffered or permitted their employees to

2   perform "Community Work" so as to increase revenues for defendants.

3   Defendants did not compensate the employees for such time spent in

4   Community Work in furtherance of the employer's business under the

5   "Community Work Policy."

6     c.  **Subclass C:**    Defendants' implemented a "Training Compensation

7         Policy."    Under the policy, defendants suffered or permitted their

8         employees to take various types of training.  Defendants did not pay for

9         such training, despite suffering or permitting employees to perform such

10        work.

11    d.  **Subclass D:**    Defendants implemented a "Pre-Needs Appointment

12        Policy." Defendants suffered or permitted employees to meet with clients

13        to discuss pre-need purchases.  To the degree that such appointments

14        were not considered part of the employees' schedule, the employees were

15        suffered or permitted to continue the appointments, but were not paid for

16        such  time  worked  under  the  "Pre-Needs  Appointment  Policy."

17        Defendants' management would sometimes attempt to justify this policy

18        on the grounds that the employee would likely receive a commission if

19        the client purchased a pre-needs product.

20    e.  **Subclass E:** Defendants implemented a "Meal Break Deduction Policy."

21        Under the policy, defendants did not pay for meal breaks.  Defendants

22        did, however, suffer and permit employees to perform work during such

23        meal breaks, but pursuant to defendants' "Meal Break Deduction Policy,"

24        time spent on meal "breaks" was still deducted from the employee's pay

25        even when defendants suffered or permitted work to be performed during

26        such "breaks."

27    f.  **Subclass F:** Defendants implemented a "Pre-Approval for Overtime Pay

41

COMPLAINT— Collective Action. DEMAND FOR JURY TRIAL

Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted employees to work overtime and therefore, employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g. **Subclass G:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted employees to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew such time had been worked, it had not been "recorded."

h. **Subclass H:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

249. Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

250. More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

251. Defendants failed to keep accurate records of all time worked by employees. By failing to keep such records, defendants' records are legally insufficient to determine benefits.

252. Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits. Defendants, while acting as fiduciaries exercising discretion over the administration of the Plan, breached their duties to act

prudently and solely in the interest of the Plan's participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime or to investigate whether such hours should be credited.  Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants' participation vesting and accrual of rights.

253.    As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, any matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

254.    Plaintiffs allege that Defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs out of their property and to convert Plaintiffs' property, including their wages and/or overtime pay (the "Scheme").  Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs their regular or statutorily required rate of pay for all hours worked in violation of federal law, employing the various policies described previously in this Complaint.

255.    Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs.  The Scheme involved depriving Plaintiffs of their lawful entitlement to overtime.

256.    In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs or between defendants' business locations.  These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

257.    The payroll checks were false and deceptive because they mislead Plaintiffs about the amount of wages to which they were entitled, as well as their status and rights

under the FLSA. Plaintiffs relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' injuries.

258.    Defendants' predicate acts of mailing the misleading payroll checks in furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts. The relationship was reflected because the acts were connected to each other in furtherance of the Scheme. Continuity was reflected by both the repeated nature of the mailings during and in furtherance of the Scheme and the threat of similar acts occurring in the future. The threat was reflected by the continuing and ongoing nature of the acts.

259.    Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiffs for the economic benefit of defendants and members of the enterprise); results (retention of wages and overtime pay); participants (defendants and other members of the enterprise); victims (Plaintiffs); and methods of commission (the Scheme and other acts described in the Complaint). The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

260.    At all relevant times, in connection with the Scheme, defendants acted with malice, intent, knowledge, and in reckless disregard of Plaintiffs' rights.

261.    Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

262.    Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

263.    Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in or the activities of which affected interstate and foreign commerce.

1    264.   Each defendant received income from a pattern of conduct unlawful under
2  RICO, in which defendants participated through continuous instances of providing
3  Plaintiffs with misleading documents which defendants mailed and upon which Plaintiffs
4  relied to their detriment.

5    265.   Plaintiffs were injured in their business and property under 18 U.S.C. §
6  1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

7                                **CLAIM I**
8                                **FLSA**
9    266.   The preceding paragraphs are incorporated herein as if fully set forth herein.
10    267.   Defendants willfully violated their obligations under the FLSA and are liable
11  to Plaintiffs.

12                               **CLAIM II**
13                                **ERISA**
14    268.   The preceding paragraphs are incorporated herein as if fully set forth herein.
15    269.   Plaintiffs bring these claims under 29 U.S.C. § 1132(a)(3), which confers on
16  Plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

17    270.   Defendants failed to keep accurate records of all time worked by Plan
18  participants. By failing to keep such records, defendants' records are legally insufficient to
19  determine benefits. Defendants failed to keep records "sufficient to determine the benefits
20  due or which may become due" under the terms of the Plan as required by ERISA §
21  209(a)(1), 29 U.S.C. § 1059(a)(1).

22                               **CLAIM III**
23                                **ERISA**
24    271.   The preceding paragraphs are incorporated herein as if fully set forth herein.
25    272.   Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

26
27

<u>**CLAIM IV**</u>

**RICO**

273.   The preceding paragraphs are incorporated herein as if fully set forth herein.

274.   Plaintiffs bring these claims under 18 U.S.C. § 1964(c), which confers on private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C. § 1962.

275.   Defendants' conduct, and the conduct of other members of the enterprise, injured Plaintiffs by refusing to pay their regular or statutorily required rate of pay for all hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme to obtain Plaintiffs' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed.

**WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award of the value of Plaintiffs' unpaid wages;

(c)   liquidated, compensatory, consequential, punitive and treble damages;

(d)   an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e)   an award of pre- and post-judgment interest; and

(f)   such other and further legal or equitable relief as this Court deems to be just and appropriate.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1

2

**JURY DEMAND**

3
Plaintiffs demand a jury to hear and decide all issues of fact.

4

5
Respectfully Submitted,
SCHLEIER LAW OFFICES, P.C.

6

7

8
Date: January 15, 2008

By: /s/ Tod F. Schleier

Tod F. Schleier
9
Bradley H. Schleier
3101 N. Central Avenue
10
Suite 1090
Phoenix, AZ 85012
11
Telephone: (602) 277-0157

12
DOLIN, THOMAS & SOLOMON LLP
13
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
14
Michael J. Lingle, NY Attorney No. 3925765
Annette Gifford, NY Attorney No. 4105870
Justin Cordello, NY Attorney No. 4131447
15
693 East Avenue
Rochester, NY 14607
16
Telephone: (585) 272-0540

17
MARGOLIS EDELSTEIN
18
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
19
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
20
Pittsburgh, PA 15219
Telephone: (412) 281-4256
21

22
Attorneys for Plaintiffs

23

24

25

26

27

47

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

**EXHIBIT N**

1    IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,              Civil Action No.
on behalf of themselves and all other
employees similarly situated,

                    *Plaintiffs*,                      Judge:

                                                      COMPLAINT-CLASS ACTION
v.                                                    JURY TRIAL DEMANDED

ALDERWOODS GROUP, INC. and
SERVICE CORPORATION
INTERNATIONAL,

                    *Defendants*.

## CLASS ACTION COMPLAINT

**AND NOW** come Plaintiffs Deborah Prise and Heather Rady, on behalf of themselves

and all others similarly situated, by and through their attorneys, Margolis Edelstein, Charles H.

Saul, Esquire, and Liberty J. Weyandt, Esquire, and file the following Class Action Complaint:

## I.    INTRODUCTION

1.    This is a proceeding for declaratory relief and monetary damages to redress the

deprivation of rights secured to Named Plaintiffs Deborah Prise and Heather Rady

individually, as well as all other employees similarly situated, under the Fair

Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"); and

other laws of the various States in which defendant does business.

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C.

1343 (3) and (4) conferring original jurisdiction upon this Court of any civil

action to recover damages or to secure equitable relief under any Act of Congress

providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring

jurisdiction of any civil action arising under any Act of Congress regulating

interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201,

and under 29 U.S.C. § 216 (b).

3.      This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant

to 28 U.S.C. §1367.

4.      Venue is appropriate in the Western District of Pennsylvania since some of the

unlawful acts alleged were committed in this district and plaintiffs reside in this

district.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

## III.    CLASS ACTION ALLEGATIONS

5.      The claims arising under the state wage laws set forth above are properly

maintainable as a class action under Federal Rule of Civil Procedure 23.

6.      The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.      The class consists of current and former employees of defendants who were

suffered or permitted to work time for which they were not compensated,

including time for which premium pay was owed but not paid.

8.      The class size is believed to be over 50 employees.

9.      The Named Plaintiffs will adequately represent the interests of the class members

because they are similarly situated to the class members and their claims are

typical of, and concurrent to, the claims of the other class members.

10.     There are no known conflicts of interest between the Named Plaintiffs and the

other class members.

11.  The class counsel, Margolis Edelstein, is qualified and able to litigate the class members' claims.

12.  The class counsel is experienced in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

13.  Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' practice of not paying nonexempt employees for all hours worked and/or statutory overtime for hours worked over 40 per week violates Pennsylvania State law and the state laws of the various other states in which defendants do business.

14.  The class action is maintainable under subsections (2) and (3) of Rule 23(b) because plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## IV.  PARTIES

### A.  Defendants

15.  At all relevant times, Defendants Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI") has suffered or permitted the plaintiffs to perform work for them.

16.  At all relevant times, Defendants Alderwoods and SCI have been plaintiffs' employers.

17.  Upon information and belief, Alderwoods, through its shareholders, has adopted the merger agreement by and between Alderwoods and Defendant Service

Corporation International ("SCI") (collectively, "Merged Entities" or

"Defendants").

18.    Upon information and belief, the Merged Entities, under the merger agreement,

continue business operations in substantially the same form as before the merger.

19.    Upon information and belief, the Merged Entities, under the merger agreement,

continue to use substantially the same workforce as before the merger, with

substantially the same supervisors and same working conditions.

20.    Upon information and belief, the Merged Entities, under the merger agreement,

provide essentially the same services as before the merger and use the same

facilities, equipment and method of proving services.

21.    Upon information and belief, thus, SCI is a successor-in-interest to Defendant

Alderwoods's liability.

22.    Upon information and belief, the Merged Entities, under the merger agreement,

operate interrelated business operations.

23.    Upon information and belief, the Merged Entities, exercise central control of labor

relations.

24.    Upon information and belief, the Merged Entities operate under common

management.

25.    Upon information and belief, the Merged Entities have common ownership and

financial control.

26.    In light of the economic realities of the Merged Entities' enterprise, defendants

constitute joint, single, and/or successor employers of plaintiffs for purposes of

the federal and state laws.

27.     Collectively, all of defendants named herein and all of their funeral service
        locations comprise a single, integrated enterprise, as they perform related
        activities through common control for a common business purpose.

28.     Upon information and belief, SCI, under the merger agreement, exercises
        complete dominion and control over Alderwoods and their funeral service
        locations.

29.     SCI, Alderwoods and their funeral service locations constitute alter egos of the
        other.

30.     At all relevant times, defendants have suffered or permitted plaintiffs to perform
        work for them. At all relevant times, Alderwoods' and SCI's funeral service
        locations have been plaintiffs' employer.

31.     The Class Members are jointly employed by Alderwoods and SCI and their
        funeral service locations; and/or Alderwoods and SSI are successor employers of
        each other's employees.

32.     Business operations of the funeral service locations are centrally controlled by
        Alderwoods and SCI.

33.     At all relevant times, Alderwoods and SCI maintained centralized control of
        employment relations.

34.     At all relevant times, the human resource functions of the funeral service locations
        report directly or indirectly to Alderwoods and/or SCI.

35.     In addition to centralized control of employment relations, Alderwoods and SCI
        exercises common management of their various funeral service locations.

36.     Further, Alderwoods and SCI own all of their funeral service locations and exercise financial control over the business operations of those locations.

37.     Alderwoods is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202 and does business in the Western District of Pennsylvania.

38.     Service Corporation International is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019 and does business in the Western District of Pennsylvania.

39.     Defendants are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

**B.      Plaintiffs**

***Named Plaintiffs***

40.     Named Plaintiff Deborah Prise is a resident of the Commonwealth of Pennsylvania and resides within this judicial district.

41.     Named Plaintiff Heather Rady is a resident of the Commonwealth of Pennsylvania and resides within this judicial district.

***Class and Collective Action Members***

42.     The class and collective action members ("Class Members") are those employees of defendants similarly situated to Named Plaintiffs who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

**V.      FACTUAL BACKGROUND**

S:\data\70000-Plaintiff Work\CSaul\00187-Prise & Rady v. Alderwoods Group, Inc\Class Action Complaint FLSA.doc
Last printed

43.     Named Plaintiffs and the other Class Members worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

44.     Defendants' policy and/or practice was to not compensate Named Plaintiffs and Class Members for work it suffered or permitted the Named Plaintiffs and Class Members to perform.

45.     Defendants knew plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Named Plaintiffs and Class Members worked.

46.     Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

47.     The failure to pay overtime is willful.

48.     Examples of defendants' policies and practices to deprive the Named Plaintiffs and Class Members of their earned wages and wage premiums are set forth below:

   a.   **Subclass A:** Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

   b.   **Subclass B:** Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

   c.   **Subclass C:** Defendants policy required that certain hourly employees train for and become licensed insurance agents. Defendants did not pay for the training, test taking and continuing education requirements for those positions despite suffering or permitting employees to perform such work.

   d.   **Subclass D:** Defendants implemented a "Pre-Needs Appointment Policy."

Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were beyond the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not to be paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

e.  **Subclass E:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants no longer paid for lunch breaks. Defendants did, however, suffer and permit its employees to perform work during such meal breaks, but pursuant to defendant's "Meal Break Deduction Policy" time spent on meal "breaks" was still to be deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

f.  **Subclass F:** Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g.  **Subclass G:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted plaintiffs to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

h.  **Subclass H:** Defendants policy was to not include all remuneration (such as bonuses and commissions) in the calculation of the plaintiffs' overtime.

49.  Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Named Plaintiffs concerning their wages, hours and other conditions of employment.

50.  More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total

hours worked each work week and/or the total overtime compensation for each work week.

**COUNT I**
**FLSA**

51.   The preceding paragraphs are incorporated herein as if fully set forth herein.

52.   Defendants willfully violated their obligations under the FLSA and are liable to plaintiffs.

**COUNT II**
**FAILURE TO MAINTAIN PROPER RECORDS**

53.   The preceding paragraphs are incorporated herein as if fully set forth herein.

54.   Defendants violated provisions of the FLSA by failing to make, keep, and preserve adequate and accurate records of the employment of Named Plaintiffs concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week, and/or the total overtime compensation for each work week and are liable to plaintiffs.

**COUNT III**

**BREACH OF CONTRACT**

55.   Plaintiffs reallege the above paragraphs as if fully restated herein.

56.   Defendants willfully violated their obligations under the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan,

Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New

Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania,

Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia,

Washington, and West Virginia and are liable to plaintiffs.

## COUNT IV
## STATE WAGE AND HOUR LAWS

57.  Plaintiffs reallege the above paragraphs as if fully restated herein.

58.  Defendants willfully violated their obligations under the wage laws of the states in

which defendants do business including; Pennsylvania Wage Law including, but

not limited to, PMWA and PWPCL; Alaska Law including, but not limited to, the

Alaska Wage and Hour Act; Arizona Wage Law; Arkansas Wage Law including,

but not limited to, the Arkansas Minimum Wage Act;  California Law, including,

but not limited to, the California Labor Code; Colorado Wage Law;  Connecticut

Wage Law; Illinois Wage Law; Indiana Wage Law; Kansas Law including, but

not limited to, the Kansas Minimum Wage and Maximum Hours Act; Maryland

Wage Law; Massachusetts Wage Law; Michigan Wage Law; Minnesota Fair

Labor Standards Act; Montana Wage Law; Nebraska Wage Law; Nevada Wage

Law; New Hampshire Wage Law including, but not limited to, New Hampshire

Minimum Wage Law; New Mexico Wage Law including, but not limited to, New

Mexico Minimum Wage Law; New York Labor Law; North Carolina Law

including, but not limited to, the North Carolina Wage and Hour Act; Ohio Wage

Law; Oregon Wage Law; Puerto Rico Law including, but not limited to, the

Puerto Rico Working Hours and Days Act; Rhode Island Wage Law; Washington

Wage Law; and West Virginia Wage Law and are therefore liable to plaintiffs.

## COUNT V
## UNJUST ENRICHMENT

59.    Plaintiffs reallege the above paragraphs as if fully restated herein.

60.    Defendants willfully violated their obligations and have been unjustly enriched to

the determinant of plaintiffs and others similarly situated for worked performed

for defendants under the common laws and state laws of Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho,

Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan,

Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New

Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania,

Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia,

Washington, and West Virginia and are liable to plaintiffs.

## COUNT VI
## FRAUD AND DECEIT

61.    Plaintiffs reallege the above paragraphs as if fully restated herein.

62.    Defendants willfully violated its obligations by committing fraud against plaintiffs

and others similarly situated under the common laws and the state laws of

Alabama, Alaska, Arizona, Arkansas, California (including the California Unfair

Competition Law, California Business and Professions § 17200), Colorado,

Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio,

Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to

plaintiffs.

## COUNT VII
## QUANTUM MERUIT

63.    Plaintiffs reallege the above paragraphs as if fully restated herein.

64.    Defendants willfully violated their obligations by failing to pay plaintiffs for the

reasonable value of the services performed by plaintiffs for defendants under the

common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana,

Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi,

Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North

Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island,

South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and

are liable to plaintiffs under quantum meruit.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

65.    Plaintiffs reallege the above paragraphs as if fully restated herein.

66.    Defendants willfully violated their obligations under the common laws and the

state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio,

Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

Tennessee, Texas, Virginia, Washington, and West Virginia by misrepresenting to

plaintiffs that they would be fully compensated for all services performed and are

liable to plaintiffs.

## COUNT IX
## NEGLIGENCE

67.   Plaintiffs reallege the above paragraphs as if fully restated herein.

68.   Defendants willfully violated their obligations under the common laws and the

state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio,

Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

Tennessee, Texas, Virginia, Washington, and West Virginia by negligently failing

to properly compensate plaintiffs and are liable to plaintiffs.

**WHEREFORE**, plaintiffs demand judgment against defendants in their favor and that

they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in
      the aforementioned pay violations;

(b)   an award of the value of plaintiffs' unpaid wages;

(c)   liquidated, compensatory, consequential and punitive damages;

(d)     an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e)     an award of pre- and post-judgment interest; and

(f)     such other and further legal or equitable relief as  this Court deems to be just and appropriate.

## **JURY DEMAND**

Plaintiffs demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

MARGOLIS EDELSTEIN

Date: 12/8/06

____/s/  Charles H. Saul_____
Charles H. Saul, Esquire
PA ID No. 19938

___/s/ Liberty J. Weyandt_____
PA ID No. 87654
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256
Attorney for Plaintiffs