1  STEVEN H. GURNEE, ESQ. SB# 66056
   DAVID M. DANIELS, ESQ. SB# 170315
2  NICHOLAS P. FORESTIERE, SB# 125118
   GURNEE & DANIELS LLP
3  2240 Douglas Boulevard, Suite 150
   Roseville, CA  95661-3805
4  Telephone     (916) 797-3100
   Facsimile     (916) 797-3131
5
   Attorneys for Defendants
6  SERVICE CORPORATION INTERNATIONAL,
   SCI FUNERAL AND CEMETERY PURCHASING
7  COOPERATIVE, INC., SCI EASTERN MARKET
   SUPPORT CENTER, L.P. SCI WESTERN
8  MARKET SUPPORT CENTER, L.P., SCI
   HOUSTON MARKET SUPPORT CENTER, L.P.,
9  JANE D. JONES, GWEN PETTEWAY, THOMAS
   RYAN and CURTIS BRIGGS
10
11

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                     (SAN FRANCISCO DIVISION)

16
   CLAUDE BRYANT, JOSEPH BIERNACKI,  )   No.  CV 08-01190 SI
17 GORDON FARMER, RHEALYN            )
   HOLLAND, JAMES STICKLE, ELEANOR   )   And Related Cases of:
18 RIGGIO, FRANK ACCUNA, RICHARD     )
   LAMASTERS, KENNETH ALLEN, CRAIG   )   *Helm et al v. Alderwoods Group, Inc. et al.*
19 FULCHER, SANFORD LEVINE and       )   Case No. 08-cv-01184-SI; and
   THOMAS THOMPSON, on behalf of     )   *Bryant et al v. Service Corporation*
20 themselves and all other employees and former )   *International et al.* Case No. 07-CV-5696-SI
21 employees similarly situated,     )
                                     )   **Judge Susan Illston**
22              Plaintiffs,          )
                                     )   **DEFENDANTS' CONSOLIDATED**
23        vs.                        )   **REQUEST FOR JUDICIAL NOTICE IN**
                                     )   **SUPPORT OF THEIR OPPOSITIONS TO**
24 SERVICE CORPORATION               )   **PLAINTIFF'S MOTIONS TO REMAND**
   INTERNATIONAL, SCI FUNERAL AND    )   **[FRE 201(b)]**
25 CEMETERY PURCHASING               )
   COOPERATIVE, INC., SCI EASTERN    )   Date:      May 9,  2008
26 MARKET SUPPORT CENTER, L.P. SCI   )   Time:      9:00 a.m.
27 WESTERN MARKET SUPPORT CENTER,    )   Dept.:     10
   L.P. a/k/a SCI WESTERN MARKET     )
28 SUPPORT CENTER, INC., SCI HOUSTON  )

MARKET SUPPORT CENTER, L.P. JANE D.)
JONES, GWEN PETTEWAY, THOMAS     )
RYAN and CURTIS BRIGGS,          )
                                 )
            Defendants.          )
_____)

Defendants hereby request that the Court take judicial notice pursuant to FRE 201(b) of the following documents and rulings attached hereto (*See also, International Board of Teamsters v. Zantop Air Transportation Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("[A] court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"); *U.S. v. City of St. Paul*, 258 F.3d 750, 753 (8th Cir. 2001) *cert. denied*, 535 U.S. 904 (writing showing an agency's interpretation of its own regulations is entitled to judicial notice absent showing the interpretation is unreasonable or inconsistent with the statutory authority):

**Exhibit A**:    Plaintiffs' Response And Memorandum Of Law In Opposition to Defendants' Motion To Dismiss Certain Claims and To Strike Class Action Allegations and Certification Request In Plaintiffs Class Action Complaint, page 10 filed in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 151, United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit B**:    Transcript of Hearing on Friday, June 8, 2007 in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit C**:    Plaintiffs' Motion for Leave to File Second Amended Complaint in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania.

**Exhibit D**:    Plaintiffs' original complaint filed in the case known as *Bryant et al. v. SCI et al.* on December 5, 2007 in the Alameda Superior Court.

**Exhibit E**:    Plaintiffs' original complaint filed in the case known as *Helm et al. v. Alderwoods et al.* on December 5, 2007 in the Alameda Superior Court.

1    Dated: _4-1-18_____, 2008.          GURNEE & DANIELS LLP

2

3                                    By _Nicholas P. Forestiere_____

4                                       STEVEN H. GURNEE, ESQ.
                                        DAVID M. DANIELS, ESQ.
5                                       NICHOLAS P. FORESTIERE, ESQ.
                                        Attorneys for Defendants
6                                       SERVICE CORPORATION
                                        INTERNATIONAL, SCI FUNERAL AND
7                                       CEMETERY PURCHASING
                                        COOPERATIVE, INC., SCI EASTERN
8                                       MARKET SUPPORT CENTER, L.P., SCI
                                        WESTERN MARKET SUPPORT CENTER,
9                                       L.P., SCI HOUSTON MARKET SUPPORT
                                        CENTER, L.P., JANE D. JONES, GWEN
10                                      PETTEWAY, THOMAS RYAN and CURTIS
                                        BRIGGS
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

DEBORAH PRISE, ET AL.,
                        PLAINTIFFS

        VS.                          CIVIL ACTION NO. 06-1641

ALDERWOODS GROUP, INC.,
                        DEFENDANT

---

PROCEEDINGS

        Transcript of MOTIONS HEARING, commencing on FRIDAY,
JUNE 8, 2007, 2:00 P.M., in the United States District Court,
U.S. Courthouse, Fifth Floor, Pittsburgh, Pennsylvania, before
Honorable JOY FLOWERS CONTI, UNITED STATES DISTRICT COURT
JUDGE FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

APPEARANCES:

For the Plaintiff:  By:  Patrick Solomon, Esquire
                         J. Nelson Thomas, Esquire
                         Charles Saul, Esquire

For the Defendant:  By:  Matthew Lampe, Esquire
                         Amy Dias, Esquire


Reported by:             Sandra Wenger
                         Official Court Reporter
                         Fifth Floor, U.S. Courthouse
                         Pittsburgh, Pennsylvania 15219
                         412.261.6254


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

2

```
 1

 2                     P R O C E E D I N G S

 3                          -  -  -

 4          (Whereupon, the following was had in open Court.)

 5          THE COURT:  Thank you.  Please be seated.  This is

 6   the hearing on a motion to dismiss filed in Prise versus

 7   Alderwoods Group, Inc.  It is Case Civil Action No. 06-1641.

 8          Will counsel please enter your appearance?

 9          MR. SOLOMON:  Pat Solomon, for the plaintiffs.

10          THE COURT:  Are you the one that's going to be

11   arguing?

12          MR. SOLOMON:  I will.

13          THE COURT:  Who is with you?

14          MR. THOMAS:  Nelson Thomas, attorney for plaintiffs.

15          Mr. SAUL:  And Charles Saul, Your Honor.

16          MR. LAMPE:  Matthew Lampe, for the defendants.  I

17   will be doing the argument.  And Amy Diaz is with me today.

18          THE COURT:  Thank you.

19          I just want to go through briefly and give you my

20   preliminary assessment of the case.  Let you know how to

21   direct your issues.

22          There are numerous claims that have been filed in

23   this lawsuit.  The first two claims are not challenged in this

24   motion to dismiss.  Those two claims are Count One and Count

25   Two.  The first count is a claims under The Fair Labor
```

3

1    Standards Act and the second count is also a claim related to

2    The Fair Labor Standards Act, dealing with the failure to

3    maintain proper records.  The remaining counts raise issues of

4    state law.

5        The, they are and, also, class action status is

6    being asserted with respect to those, so that there's no

7    pending motion for class certification.

8        They range under the -- the counts range from a

9    straightforward breach of contract claims violation of the

10   state wage and labor laws and then a number of tort claims,

11   including fraud and deceit on a merit negligent

12   misrepresentation, negligence, et cetera.  And the counts that

13   are, that the motion to dismiss has been filed with respect to

14   this are Counts Three, Four, Five, Six, Seven, Eight, Nine.

15       So, essentially, all the state law claims are what

16   are sought to be dismissed.  There are various bases for

17   dismissal that have been raised.  The breach of contract being

18   argued there -- I should take that back a moment and say that

19   the defendant has asserted that all of those claims should be

20   dismissed for lack of standing and that the others -- there's

21   also a preemption argument that those claims have been

22   preempted of by the Federal Fair Labor Standards Act.

23       The motion to dismiss is one which tests the legal

24   sufficiency of the complaint, Kost v. Kozakiewicz, 1 Fed.

25   Third 176, 183, Third Circuit, 1993.  In deciding a motion to

4

1   dismiss, the Court is not opining on whether the plaintiff
2   will be likely to prevail on the merits.  Rather, when
3   considering a motion to dismiss, the Court accepts as true all
4   factual allegations in the complaint and views them in the
5   light most favor to the plaintiff.  U.S. Express Lines Limited
6   versus Higgins, 281 Fed. Third 383, 388, Third Circuit, 2002.
7   A motion to dismiss pursuant to Rule 12(b)(6) should be
8   granted only if accepting true the facts alleged and all
9   reasonable inferences that can be drawn therefrom, there is no
10  reasonable reading upon which the plaintiff may be entitled to
11  relief.  Vallies versus Sky Bank, 432 Fed. Third 493, Third
12  Circuit 2006.
13         There were a number of concerns that have been
14  raised by the defendant.  And as you go through them, I'm
15  going to first deal with the fair labor -- excuse me -- the
16  state wage claims under the applicable state law.
17         There's two-fold problems there.  The plaintiffs are
18  all from Pennsylvania.  The allegations, if a class claim
19  would go forward, deal with a multitude of states, at least
20  thirty-eight states, that could be implicated in, in these, in
21  these actions.
22         At this stage, I would find that the plaintiffs do
23  not have standing under, at least under the prudential test
24  for standing asserting State of Pennsylvania law claims
25  arising out of the laws of other states, because they do not

1    have -- that the litigant, when you are dealing with the

2    prudential prong, the prudential limitations on the right of a

3    party to maintain an action, these are necessary to prevent

4    the Courts from deciding abstract questions where other

5    government institutions might be competent and where judicial

6    intervention may be unnecessary to protect individual rights.

7          The United States Court of Appeals for the Third

8    Circuit has stated that prudential considerations constitute a

9    supplemental aspect of the basic standing.  The analysis says

10   and address concerns for the need for judicial review.  Oxford

11   Associates versus Waste System, Fed. Third 271, Fed. Third,

12   140, Third Circuit, 2001.  And the Court of Appeals there

13   recognized that the considerations that are applicable when

14   considering prudential standing, first.  And then

15   considerations require, one, a litigant assert his or her own

16   legal interests, rather that be those of third parties.

17         Two, Courts refrain from adjudicating abstract

18   questions of wide public significance which amount to

19   generalities.

20         Litigant demonstrates his or her arguments are

21   within the zone intended to be protected by the statute, rule,

22   or constitutional provision in which the claim is based.

23         Now, that aspect of the prudential standing

24   considerations that are implicated in this case is the first

25   one, which is the litigant has to assert his or her own legal

6

1   interests, rather than those of third parties.  And, here, you
2   have plaintiffs who are not affected by the loss of the other
3   states seeking to raise the rights of other third parties who
4   might be affected by those states.  So, they don't have a
5   direct interest in the underlying legal claim that would be
6   raised because they're not affected by the laws of those
7   states.

8           Now, one could say -- or we are in a very
9   preliminary stage.  I think this is one of the arguments that
10  the plaintiff raises, well, you don't need to worry about it,
11  yet, because we've got other plaintiffs that could step into
12  line, plaintiffs from all those other states.

13          So, that is a fact that the Court, you know, could
14  postpone and maybe allow an amendment down the road, if it
15  became appropriate.

16          But, more compelling than that is the issues that
17  were raised by the United States Court of Appeals for the
18  Third Circuit in a similar situation.  And that's DeAsencio
19  versus Tyson Foods, Inc., 342 Fed. Third, 301 Third Circuit,
20  2003.  And in the DeAsencio case, the Court was concerned with
21  a decision by a District Court in which the District Court
22  permitted a class claims to be asserted under the Pennsylvania
23  Wage Payment and Collection Law, similar to the law that's
24  raised, would be raised in this case.

25          In order for that to move forward with a Fair Labor

1    Standards Act case, the decision by our Chief Judge Sirica was
2    of concern because the state claims are only brought in the
3    federal Court in this context because of supplemental
4    jurisdiction.  The question was whether or not the District
5    Court abused its discretion in bringing in the state claims as
6    a matter of supplemental jurisdiction.

7              The Court of Appeals found that the District Court
8    had abused its discretion under those circumstances.  And why
9    was that?  The Court there recognized that had the employees,
10   whose rights were in issue, did not work under an employment
11   contract or a collective bargaining agreement.  I believe
12   that's the situation that we have here.

13             There is no employment contract and there is no
14   collective bargaining agreement.  So, we have an analogous
15   situation to the DeAsencio case.  The Tyson, the employees
16   there, like here, did not work under an employment agreement
17   or collective bargaining agreement.  In order to proceed under
18   the Pennsylvania wage and payment collection law, the
19   plaintiffs would have to establish that there was an implied
20   word contract that existed between the employer and the
21   employee.

22             And the Court also recognized that, even then,
23   whether an implied contract may give rise to a claim under the
24   WPCL has never been addressed by the Pennsylvania state Courts
25   and will require additional testimony and proof to

8

1    substantiate beyond that required for the FLSA action.  Given

2    the importance of the wage protection legal scheme in

3    Pennsylvania, the scope of the state issues may substantially

4    predominate over the more straightforward federal scheme.

5         The Court also was concerned because there was a

6    countervailing interest in relegating the WPCL claims to the

7    State court because Congress has expressed in the FLSA statute

8    that this would be an opt-in action.  The state claims, if

9    they're proceeding as a cause claim, of course, would be

10   opt-out, rather than opt-in.  And the Court was concerned

11   because, if there were policy reasons that Congress had given

12   for the opt-in provisions, which was intended to limit the

13   copy of representative actions for overtime pay and minimum

14   wage violations.  So, then, the Court said those are the

15   concerns on one side.  The Court said, keeping them together,

16   you know, could be an interest that the Court should still,

17   still consider, and went on to discuss the arguments of the

18   plaintiff.

19        At the end, they noted that it is sufficient to note

20   that mandating an opt-in class or an opt-out class is a

21   crucial policy decision.  Congress has selected an opt-in

22   class for FLSA actions.  And, in essence, it would find that

23   you could have a disparity in numbers between the persons that

24   would opt in versus the persons that would be covered in the

25   class action.  And the Court felt that that would cause the

9

1   federal tail, represented by the comparative small number of

2   plaintiffs, to wag what is, in substance, a state dog.

3           With respect to the contractual issue and the fact

4   that the Pennsylvania law was uncertain on this basis, the

5   Court noted that those issues were -- that are raised in that

6   case, which would be the same ones raised here, are novel and

7   complex questions of state law.

8           And those were whether a WPCR may rest on implied

9   employment contract that relies on alleged oral

10  representations and whether the WPCL pertains to at-will, not

11  collective bargaining employees.

12          The Court felt that, the Court of Appeals felt that

13  those issues were better left to the Pennsylvania state

14  Courts.

15          At the end, the Court concluded that the District

16  Court did not exercise sound discretion in granting

17  supplemental jurisdiction over the WPCL action.  They did,

18  though, note a footnote, however.  That it wouldn't

19  necessarily preclude the exercise of supplemental jurisdiction

20  where all plaintiffs with state law claims have opted into the

21  FLSA class.

22          I don't know how that could ever be determined, you

23  know.  Then you would just have, you know, you would know

24  exactly who, who were the plaintiffs and there would be no

25  other ones in the state class action.  That would be the only

1    kind of situation where the Court found that there may be an

2    exception.  But it still doesn't overcome the other issue that

3    was raised in terms of the novelty of the state law question.

4    That hasn't been resolved by the federal Courts.

5         And that would be compounded in this case, because

6    if the intent is not just to resolve Pennsylvania state law

7    issues, but similar laws of thirty-seven other states, you

8    know, we're just going to be compounding this problem in terms

9    of looking at, are those different state laws, how are they

10    different, what's the issues?

11         And, so, you get into, again, a situation where the

12    state, the federal claims here would just be the tail that is

13    wagging all those state law claims.

14         So, the, this Court would feel that the DeAsencio

15    rationale would be applicable and the Court would have to

16    follow that precedent and find that it would be appropriate,

17    even if there is standing, to decline to exercise supplemental

18    jurisdiction over the state wage claim, the claims under the

19    state laws.

20         Now, with respect to the other state claims that are

21    raised here, there's, that is where the issue of preemption

22    comes in.  And the law here is somewhat murky.  And a lot the

23    decisions that discuss these quite summarily indicate there is

24    a preemption or not preemption.  And having reviewed the cases

25    cited by both sides, the cases that were cited by the

1    plaintiffs here all are distinguishable because the claims,
2    the state law claims were really based on other matters beyond
3    the mere failure to pay overtime.

4         For example, failure to supervise was in one of the
5    cases.  Or there was a promise made.  There was one case, I
6    think, that involved a misrepresentation where the employer
7    had said, if you don't, if you don't want into that FSLA
8    action, you'll, you know, you'll have your job here.  We're
9    going to be around.  And, wouldn't you know, they get shut
10   down shortly thereafter.

11        So, that was a misrepresentation.  So, it was really
12   conduct that was separate and apart from the claims for
13   overtime.

14        Now, I have read the complaint and it strikes this
15   Court that what is being sought is solely over payment for
16   overtime.  And, so, when you have solely payment for overtime,
17   you have a situation where the tort is really the state common
18   -- state law claims are riding on the back of a federal claim.
19   The state law claims would be you violated a federal law
20   because you didn't pay the overtime.  And, so, now, we have a
21   tort that we can sue you for.

22        I didn't see any cases which say that state law
23   claims can exist if what they're really doing is saying, you
24   violated federal law.  Therefore, you have a state law claim.
25   So, I'm not sure this is really a question of preemption or

1  not preemption, because state law claims, when you go through
2  the preemption analysis, are not necessarily preemption.

3        You know, most preemption cases would be these types
4  of claims are always going to be preemptive or they're not
5  preemptive.  There's three tests that the Supreme Court
6  considers when they're discussing preemption.

7        Their first is, states fundamentally a question of
8  congressional intent.  So, the first Congress can decide
9  explicity is the extent to which action preempts state law.
10  That didn't happen here in the FLSA context.  Congress didn't
11  expressly state that it would be preempting the field.

12        Second is, in the absence of explicit statutory
13  language, state law is preempted where it regulates conduct in
14  the field that Congress intended the federal government to
15  occupy exclusively.  This is where you look to whether there
16  is a scheme of federal regulation so pervasive as to make
17  reasonable inference that Congress left no room for the states
18  to implement.  That's sort of called like field preemption.
19  That's not the explicit statutory preemption, but it's field
20  preemption.

21        Again, I don't see that that's implicated in this
22  context, because we do know that fair labor standards conduct
23  contemplates that state labor laws are explicitly not
24  preempted to the extent that they would be stronger or more
25  stringent than the federal law.

1          Thus, leads on to the third issue that you can raise

2     with respect to considering a preemption, that's to consider

3     whether the state law is preempted to the extent that it

4     actually conflicted with federal law.

5          Now, I'm not certain that we have a conflict here.

6     But what I think you have here is a state common law claims

7     who are not really common law.  What they're saying is you

8     violated federal law.  Therefore, you owe us under state law.

9          I just see a disconnect there.  But there were no

10    discussion of that or clarity in the briefing.  But it just

11    strikes the Court that you can't have a state law claim for

12    violation of a federal law unless there is some, you know,

13    something that I am missing here in terms of trying to analyze

14    and assess the, the issues that are raised.

15          And beyond all, all that, you, again, have the

16    question of the exercise of supplemental jurisdiction and the

17    level of complexity that would be brought into this, which

18    would be astronomically compounded if there are thirty-eight

19    states that the Court would have to look to.  And then you

20    have, you know, you can argue, well, you have different

21    subclasses, but you really don't have one class, you know.

22          A lot of times when you have class claims, you would

23    have a class, then you will have various subclasses.  But

24    there's one claim that the entire class has under, under the

25    class all in common.  You don't have that here because The

14

1  Fair Labor Standards Act is not the class claim because it
2  has, it's a collective action.  It cannot be a class action.
3         So, what you have in this circumstance would be
4  thirty-eight separate classes.  And then there may be subsets
5  within each of these classes, depending on, on the nature of
6  complexities of the arrangements that they had.  We've already
7  seen some of that in terms of who is going to be notified, who
8  is going to be part of the group that could, could have opt
9  in.
10         So, when you go beyond all of that, I think that the
11  DeAsencio analysis, with respect to the state claims wagging
12  the tail of the federal claims here, is applicable at least by
13  analogy.  So, if the wage claims, which clearly would not be
14  preempted under the state, state law, so we don't have the
15  preemption.  But if those are the types of claims in the
16  context of the, this case, that the Court has been instructed
17  by the Court of Appeals in DeAsencio, should decline to
18  exercise supplemental jurisdiction over, then arguably the
19  Court should also decline to exercise supplemental
20  jurisdiction over all of these other state claims, especially
21  where I'm not even sure that you could have a valid state
22  claim if all you're saying is we have been injured because you
23  didn't comply with federal law.  What you have there, in
24  essence, is a smoke screen for a federal claim.
25         And, so, those are the, those are the issues that I

1  have given.  In, in this, in this context, I just want to give
2  you a couple citations on some of these matters, so that we
3  have it for purposes of the, of the record.

4          As I said, the preemption issue is an interesting
5  one.  Although, I'm not sure it's absolutely applicable in the
6  context of the, this case, for the reasons that I, that I have
7  given.

8          With respect to the preemption cases, the one
9  that's, the one that's here, there is a New Jersey case,
10  Moek, M-O-E-K, versus Grace Supply Company, 2006 WestLaw,
11  42368, District New Jersey, January 6, 2006.  The District
12  Court in that decision addressed the issue of preemption.

13          The Court first acknowledged that the law is
14  unsettled as to whether the FLSA preempts state common law
15  causes of action.  The Court noted that, generally, claims
16  directly covered by the FLSA must be brought under the FLSA.
17  The Court reasoned that where the FLSA and state Commonwealth
18  claims are grounded on the same facts, the FLSA preempts the
19  state common law claims.

20          The decision on which the District Court relied was
21  a District Court decision in Petras versus Johnson, 1993,
22  WestLaw 228014, Southern District New York, June 22, 1993.
23  And there, there had been the decision in Petras that the
24  plaintiff's fraud and negligent misrepresentational claims
25  were preempted by the FLSA.

1    And, as I said, there were other decisions that
2  seemed to go the other way, which would be Williamson versus
3  General Dynamics, 208 Fed. Third, 1144 Ninth Circuit, 2000.
4  But, in Williamson, the Court had -- this was the case that I
5  was describing earlier, where the employer was, essentially,
6  promising its employees that they would have career jobs if
7  they didn't opt into the FLSA action and the employees that,
8  in context, had both FLSA claims, but state common law claims
9  based on the fraudulent misrepresentation.

10    So, it wasn't just merely that they were not being
11  paid.  There were, there was a fraudulent inducement not to
12  join in the FLSA claims, so that they had missed out on their
13  collective action claim.

14    Now, I think I have already discussed the issues of
15  the standing and set forth, at least with respect to the
16  prudential standing, the constitutional standing is a little
17  more complicated issue.

18    Here, I think without even getting to it, under
19  our -- the prudential standing, there, arguably, would not be
20  standing to assert, for Pennsylvania plaintiffs to assert
21  state law claims on behalf of other plaintiffs who are
22  residents of other states and subject to other state laws.
23  But I don't know that I need, even need to get there at this,
24  at this stage.

25    So, that's the concerns and the issues in my

17

1    preliminary assessment.  Since it's going against the
2    plaintiffs, I'll let you address the issues that I've raised.
3              MR. SOLOMON:  Thank you, Your Honor.
4              I perceive that the Court has reached its decision,
5    and we will -- I just have a few points I'll make that may
6    be -- that may assist you in --
7              THE COURT:  Okay.  My one question, namely, are all
8    the plaintiffs going to be, all the plaintiffs in the opt-in?
9    Or is it conceivable that there would be other plaintiffs who
10    would be covered by the class action that wouldn't, wouldn't
11    be opting in?
12              MR. SOLOMON:  Well, we have, right now, there is,
13    there's about one hundred seventy-five opt-ins.  Those opt-ins
14    represent, approximately, sixty percent of the states where
15    SCI and Alderwoods does business.  If, if the standing issue
16    is based on whether they've -- we've moved to amend the
17    complaint to add them as a named plaintiff, then that would be
18    --
19              THE COURT:  You could, theoretically, do as I said.
20    That's really something that maybe I would consider in other
21    circumstances.  But, in this case, it's really a question of
22    whether the Court should exercise supplemental jurisdiction
23    over those claims, as well as the fair, you know, the state
24    workers, state wage claim and law.
25              MR. SOLOMON:  Right.  And as I perceive it, the

18

1    standing is something that can be resolved.  I don't know

2    that's the biggest concern.  The bigger concern is how we're

3    going to manage all this.  Is there an inherent conflict.

4            THE COURT:  Right.

5            MR. SOLOMON:  There is -- we certainly do believe

6    that the standing issue, we would -- that that one can be set

7    aside, because we have, have people.  And with the opt-in

8    process going on, we're going to have more people opting in.

9    Probably every state will be represented on the preemption.

10            I understood the Court to be indicating that, I

11    think that the law is murky.  In the more detailed analysis

12    that the Court did and Eleventh Circuit, Ninth Circuit Court

13    of Appeals did, it is apparent, based on that, that there is

14    no preemption, per se, of the state law.

15            THE COURT:  I think there is no preemption in the

16    broad sense under state common law claims.  The question is

17    whether, as I am seeing it, you have a state claim that just

18    is piggy-backing a federal violation.  I know you have a

19    violation of the state tort because you violated federal law.

20    And there is no discussion of that in the, in the briefing.

21            And I'm not aware of any decisions, you know, that

22    would say you could have a state claim for violating a federal

23    law.  And that's, really, that's where I think the cases are

24    saying they're preemptive, in that circumstance.  It's really

25    because there is no state law claim.  The state lawsuit claim

1   is saying you violated federal law.  So, you are liable to me
2   in tort.  But I think that's sort of a non-starter, if you
3   will.  What you really have is a federal claim.

4        I don't -- there hasn't been any briefing on that
5   aspect of it, and I wouldn't want to make a final ruling on
6   that without affording you an opportunity to do so.  I don't
7   even know I need to go there because of DeAsencio.  I think
8   the DeAsencio rationale is applicable to all the state claims.
9   It wouldn't matter if it was just Pennsylvania claims.

10       We don't even need to consider all of the other
11  states.  I think that just further compounds and makes more,
12  more -- gives more import to DeAsencio in this context.

13       MR. SOLOMON:  And I think our position on DeAsencio
14  doesn't preclude the Court from exercising supplemental
15  jurisdiction.

16       THE COURT:  Exercising supplemental jurisdiction.

17       MR. SOLOMON:  But the Court would need to do the
18  analysis that we have been talking about as to whether those
19  claims can --

20       THE COURT:  Well, that, so when you start down the
21  road and you say this is the same background in terms of the
22  novel state issues are present in this case, as they that were
23  present in DeAsencio, you still -- we did some research and
24  there's been no intervening decision after the -- by the state
25  Courts after DeAsencio that would have clarified this issue.

1          So, you don't have -- there's been no change since
2     DeAsencio said you've really got novel issues here.  You've
3     got, under the, the standards for looking to whether a Court
4     should exercise supplemental jurisdiction when you have got
5     novel state laws.  There is one reason the Court should not
6     get involved.  Then, when you layer on to that the policy
7     issue between having opt-in, opt-out, and having really all of
8     those state law plaintiffs, really, state claims, controlling
9     over the federal claims, they felt, as a policy basis, that
10    would be something that the Court should not get involved
11    with.  And we should be concerned, we should decline the
12    supplemental jurisdiction.
13          That was very unusual, I think, for a Court of
14    Appeal.  So, they say there was an abuse of discretion in
15    exercising supplemental jurisdiction, which is what they found
16    in DeAsencio.  So, I would think, under similar circumstances,
17    I don't see any big difference here in this case from
18    DeAsencio.
19          And DeAsencio is a precedental decision.  If it
20    would go -- if I would rule otherwise, I would be not
21    complying with the precedent of DeAsencio.  It would be up to
22    the Circuit to say, no, you know, this is a different
23    standard, now.  We're going to change the DeAsencio standard.
24    That's why I just wanted to -- I don't see any difference
25    between what was the issue, what were the issues in DeAsencio

1  versus the issues in this case.

2          So, I think they're fairly squarely on point, at

3  least with respect to the looking at the state wage laws

4  versus the FLSA.

5          MR. SOLOMON:  We would respectfully take exception

6  to the Court's decision.

7          THE COURT:  I understand.

8          MR. SOLOMON:  But, thank you.

9          THE COURT:  Okay.  I mean, I'm giving you an

10  opportunity.  Is there something different that I haven't

11  seen?

12          MR. SOLOMON:  Not other than everything we've

13  briefed in our papers.

14          THE COURT:  Papers.  Okay.  Thank you.

15          MR. SOLOMON:  Thank you, Your Honor.

16          MR. LAMPE:  Your Honor, the only point that I want

17  to make is that I think your decision should also recognize a

18  case that was in our briefs, which is Otto versus Pocono

19  Health.  And it was not a supplemental jurisdiction case.

20          But that reached the same, very similar result to

21  what the DeAsencio reached.  And it's the published decision.

22  It's from the Middle District of Pennsylvania, and it says in

23  there that the District Courts in the Third Circuit have, and

24  this is a quote, blazed a clear path, unquote, in saying that

25  opt-in and opt-out wage claims should not be brought in the

22

1    same case.

2         THE COURT:  It's a very short opinion.

3         MR. LAMPE:  Yes, it is.  It's a published decision

4    and it's a basis for --

5         THE COURT:  That's true.  4507 Fed. Second 522,

6    Middle District, 2006.

7         MR. LAMPE:  Yes.  I raise it only because I think

8    it's an issue of supplemental jurisdiction, but also an issue

9    of the Court striking the state law claims on the face of the

10   complaint as the Otto case did and the other cases mentioned

11   in that decision, because you simply could not ever certify an

12   opt-out class in a wage case under the FLSA, because having

13   opt-out and opt-in in the same case --

14        THE COURT:  Well, that was the policy issue I think

15   that the DeAsencio was concerned with --

16        MR. LAMPE:  Absolutely.

17        THE COURT:  -- and raised there.

18        MR. LAMPE:  Right.  That's exactly, that's exactly

19   right.  Same outcome, but it's on a different base.  I think

20   both bases are legitimate and should be recognized.  Thank

21   you, Your Honor.

22        THE COURT:  Okay.  So, hearing nothing further,

23   then, is there anything else?

24        MR. SOLOMON:  There is one more thing, Your Honor.

25        THE COURT:  Okay.

1          MR. SOLOMON:  We had, we had briefed the issue of

2     the CAFA, which is The Class Action Fairness Act, providing

3     the Court original jurisdiction over, essentially, a diversity

4     claim.  The Courts and the statute have created original

5     jurisdiction that would, basically, be solving the DeAsencio

6     problem, because it's not a supplemental jurisdiction question

7     at that point, but it would be an original jurisdiction issue.

8     We, we raised it, Your Honor, on page --

9          THE COURT:  I did take a quick look at CAFA and I

10     didn't see that it would be available here.  But maybe I'm --

11     where did you raise this?

12          MR. SOLOMON:  Page 10, Your Honor, of our brief,

13     memo of law.

14          THE COURT:  I think I left those cases back on my

15     desk.  If you can get those?

16          MR. SOLOMON:  The DeAsencio decision came down prior

17     to The Class Action Fairness Act of 2005.  The -- as the

18     papers note, our current complaint does not allege

19     jurisdiction based on CAFA.

20          THE COURT:  Right.

21          MR. SOLOMON:  So, we would need to amend the

22     complaint to do that or file -- simply be filing a new action

23     as another alternative.  But I did want to raise that with the

24     Court.

25          It was, it was discussed and it would certainly

1    solve that question of whether it's a supplemental

2    jurisdiction, whether the Court would be analyzing whether the

3    two claims could co-exist, because it's an original

4    jurisdiction issue.

5         I wanted to preserve for purposes of discussion, and

6    preserving our claim on that, we, we would need to amend the

7    complaint and seek leave to do that.  But I wanted to preserve

8    that point, as well.

9         THE COURT:  There's $5 million at issue here.

10        MR. SOLOMON:  Yes, Your Honor.

11        THE COURT:  You know, if you are going to brief that

12   issue, I think what you have to address, though, is that

13   there's not one CAFA claim.  You know, there are thirty-eight

14   or I don't know how many states are, ultimately, going to be,

15   involved in this, but there are separate class actions.

16   There's -- it's not like there is one class action.

17        So, you have to look at each state, I think, and

18   satisfy the jurisdiction for that class action.  It's -- these

19   are not subclasses, as I see them.

20        Am I mistaken in that there isn't one over-arching

21   class?  There is not one common claim in that sense.  These

22   are all separate state claims.  So, the class would have to be

23   state specific.  And, so, each state would have to have

24   $5 million in issue to satisfy that threshold there.

25        And, then, I think you have to ask yourself, is this

1    the Court that you can file all of those class actions in?

2    You know, I think Pennsylvania, certainly, maybe you could,

3    you could argue that that would come before this Court.  And I

4    don't know, what's the amount at stake for the Pennsylvania?

5    Is it over five million?

6             MR. SOLOMON:  I would have to check.  I don't know

7    the answer to that, Your Honor.

8             THE COURT:  So, I mean, you have to deal with that

9    level of detail.  And, then, how is it appropriate for this

10   Court to have the appropriate venue for those classes?  You

11   would have to look at what the venue standards are for CAFA

12   for the other state claims.

13            Then, I think at the end of the day, you really have

14   to ask yourselves, too, if all you are seeking, the overtime

15   payments, what are you really going to be getting out of those

16   state claims without adding a whole lot of legal work and

17   problems for yourself, you know?

18            It's different in those other situations where they

19   talked about no preemption of the state claims, because there

20   were different issues that were presented there.  But if all

21   you're really seeking is the, is the overtime pay and, plus,

22   you have -- I think it's, you know, add on for that you can't

23   get punitives, as I understand it, in this context because

24   there's already built into the statute the doubling of the

25   recovery.

26

1           MR. SOLOMON:  Your Honor, some of the issues are
2    that the state laws provide that the federal law doesn't --
3    would be a longer statute of limitations in some
4    jurisdictions.  Basically, what the provision of the statute
5    says is to the extent the state laws create a greater
6    recovery.  So, there are some.
7           THE COURT:  I understand.  But those would be -- I,
8    again, I think you are going to have to look at what is the
9    class.  I don't think they can be subclasses in this context.
10          So, you are going to have thirty-eight, fifty
11   different classes, and how they all get here, and will each
12   one of those have to satisfy that CAFA standard.
13          You may be able to sue in federal court in another
14   state with, with those issues, but you'll have to -- I can't,
15   I won't consider that here today because you didn't assert
16   jurisdiction on that basis.  So, you, maybe you can move to
17   reconsider or amend.  But, you know, if you do, make sure you
18   address those concerns that I am raising.
19          MR. SOLOMON:  Thank you, Your Honor.
20          THE COURT:  Okay?
21          Now, we have the motion for expedited collective
22   action notification.  This is the one for the parent company,
23   this SCI.  How do you want to proceed with that?
24          MR. THOMAS:  Yes, Your Honor.
25          THE COURT:  Have you done discovery on that?

1          MR. THOMAS:  No.  We filed it last night, Your

2    Honor.  Or this morning.  Those papers filed last night or

3    this morning, this goes back to the issue the Court had raised

4    when we moved for notification to the SCI employees.  There

5    was an issue of joint employment and whether these, whether

6    SCI would be considered the employer of the class members.

7          THE COURT:  Right.

8          MR. THOMAS:  We filed a motion addressing that issue

9    with support.

10          What we're really seeking right now is just if we

11    could get a briefing schedule and oral argument date,

12    expedited motion, so as soon as possible.  As soon as the

13    Court can accommodate us.

14          THE COURT:  I see the motion.  Is there a brief

15    filed with this?

16          MR. THOMAS:  Yes.  Extensive papers.

17          THE COURT:  I just reviewed the motion.  When will

18    the defendant be ready to respond to that?

19          MR. LAMPE:  Your Honor, I haven't even read the

20    papers, yet.  That came in, I think, at, literally, at two

21    this morning.  It's -- the stack is about an inch thick.  So,

22    we would like to have thirty days to respond to the motion.

23          MR. THOMAS:  Fifteen days for a reply.

24          THE COURT:  Okay.  So, that will take us -- today's

25    the eighth of June.  How about July 9, to respond?  That's a

28

1    Monday.  The Sunday would be on the eighth of July.  So that

2    -- so, the ninth of July for response?

3            And then the seventeenth to file the reply?  I can

4    try to do something on the -- maybe the afternoon of the

5    twentieth of July?

6            Let's see.  Why don't we make that in the morning,

7    at 10:30?  At 10:30 on the twentieth.  Okay?

8            MR. THOMAS:  Thank you, Your Honor.

9            MR. LAMPE:  Thank you, Your Honor.

10           THE COURT:  So, that's what we'll do, then.

11           Is there anything else further to come before the

12   before the Court today?

13           My preliminary assessment that I stated on the

14   record will become the final decisions of the Court, and it

15   will be so ordered.  Okay.

16           MR. LAMPE:  Nothing further for the defendants, Your

17   Honor.

18           MR. THOMAS:  Thank you, Your Honor.

19           MR. LAMPE:  Thank you, Your Honor.

20           MR. SOLOMON:  Thank you, Your Honor.

21           THE DEPUTY CLERK:  All rise.

22

23                        - - -

24

25           (Whereupon, the hearing was adjourned on the eighth

1    day of June, 2007.)

2

3

4

5

6                              C E R T I F I C A T E

7                                   - - -

8            I certify by my original signature herein that the

9    forgoing is a correct transcript from the record of

10   proceedings in the above-entitled matter.

11

12                              Sandra Wenger
                                Official Reporter
13

14

15            *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

16

17

18

19

20

21

22

23

24

25

**EXHIBIT B**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY
*on behalf of themselves and all*
*employees similarly situated,*

                                        *Plaintiffs,*

                - vs -

ALDERWOODS GROUP, INC. and SERVICE
CORPORATION INTERNATIONAL,

                                        *Defendants.*

Civil Action No. 06-1641
Judge Joy Flowers Conti

ELECTRONICALLY FILED

<u>PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND TO STRIKE CLASS ACTION
ALLEGATIONS AND CERTIFICATION REQUEST IN PLAINTIFFS' CLASS ACTION
COMPLAINT</u>

**DOLIN, THOMAS & SOLOMON LLP**
*Attorneys for Plaintiff*
693 East Avenue
Rochester, New York 14607
(585) 272-0540

**MARGOLIS EDELSTEIN**
*Attorneys for Plaintiffs*
525 William Penn Place, Suite 3300
Pittsburgh, Pennsylvania 15219
(412) 281-4256

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in opposition to defendants' motion to dismiss certain claims and to strike class action allegations and certification request in plaintiffs' class action complaint. Dismissal of plaintiffs' claims is not appropriate in this case for four reasons. First, the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, discussed below, is directly controlling in this case and requires that issues of class certification under Federal Rule of Civil Procedure ("Rule") 23 should be addressed prior to Article III standing issues when a defendant is challenging only a plaintiff's representative standing to bring claims under the laws of various states. Defendants' attempts to minimize the importance of the Supreme Court's decision in *Ortiz* should be disregarded by this Court.

Second, contrary to defendants' argument, for the reasons set forth below, the FLSA does not preempt the state common law causes of action set forth in plaintiffs' complaint.

Third, contrary to defendants' argument, for the reasons set forth below, this Court can exercise supplemental jurisdiction over plaintiffs' state law wage claims.

Finally, this Court should hear plaintiffs' collective action FLSA claims and class action Rule 23 claims in a single action because such a decision would promote judicial economy and efficiency and prevent at least 50 separate lawsuits, all with the same factual basis, from being filed across the country.

For these reasons, and as further set forth in this memorandum of law, defendants' motion to dismiss should be denied.

## FACTS

On December 8, 2006 plaintiffs Deborah Prise and Heather Rady filed a Class Action Complaint on behalf of themselves and all others similarly situated against Alderwoods Group, Inc. and Service Corporation International (collectively referred to as "Defendants") as a collective action under the FLSA, 29 U.S.C. § 216(b). The Complaint further alleged violations of state law in the states where

1

defendants do business including breach of contract, state wage and hour laws, unjust enrichment, fraud and deceit, quantum meruit, negligent misrepresentation, and negligence.

Currently, there are 136 individuals who have opted into this lawsuit. (Docket Nos. 5-23, 24-56, 57-88, 114-116, 126-150) Individuals are continually opting into this lawsuit every day. The 136 current opt-in plaintiffs represent 23 different states in which defendants do business including: Alaska, Arizona, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Indiana, Kansas, Maryland, Massachusetts, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, Pennsylvania, Rhode Island, Tennessee, Texas, and Washington. Further, thirty five of the above-referenced opt-ins are current or former employees of SCI.

On February 1, 2007 defendants filed a Motion to Dismiss Certain Claims and to Strike Class Action Allegations and Certification Request in Plaintiffs' Class Action Complaint. (Docket No. 111) On February 20, 2007, plaintiff's filed a Motion for an Extension of their Time to Respond to Defendants' Motion to Dismiss. (Docket No. 118) On March 13, 2007, that Motion was granted. (Docket No. 123)

On March 6, 2007 plaintiffs filed a Motion with this Court requesting that Plaintiffs' Time to File a Class Certification Motion be Extended Pursuant to Local Rule 23.1 until a time after defendants' motion to dismiss is decided by this Court and the parties have had the opportunity to meet and confer regarding the date the motion should be due and report their opinion to the court. (Docket No. 120) Defendants did not oppose plaintiffs' motion. On March 13, 2007, plaintiffs' Motion was granted. (Docket No. 124) Accordingly, plaintiffs have not yet filed their Motion for Class Certification.

ARGUMENT

I.    THE COURT SHOULD ADDRESS RULE 23 CERTIFICATION ISSUES BEFORE RULING ON ISSUES OF STANDING.

Defendants assert that plaintiffs lack standing to bring a claim against defendants under the laws of the states set forth in plaintiffs' complaint. Plaintiffs, however, assert both class and collective

2

action claims that will apply to participants in all of the states named in plaintiffs' complaint where defendants do business, not just Pennsylvania - where the named plaintiffs undisputedly have individual standing.[1]

Defendants' motion papers attempt to play down the directly controlling authority from the United States Supreme Court which refutes defendants' arguments. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). In *Ortiz*, the Court held that a district court should *first* address Rule 23 certification issues *before* ruling on standing issues. *Ortiz*, 527 U.S. at 831 ("[T]he class certification issues are, as they were in *Amchem*, 'logically antecedent' to...statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first."); *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) ("We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing."); *In re Buspirone Patent Litig.* 185 F. Supp.2d 363 (S.D.N.Y. 2002) (holding that the certification issue must first be determined before the issue of standing); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp.2d 172, 194 (D. Mass. 2003) (invoking the "logically antecedent" language of *Ortiz* and declining to consider the defendants' standing challenge, concluding that "the issue will be decided at a later stage in the litigation.").

This rule only makes sense. If standing were considered first, multi-state class actions would require that there be at least 50 named plaintiffs in the action, one from each state. Without them, the case would cover only those jurisdictions with named plaintiffs until 50 motions to amend were made to add named plaintiffs from each jurisdiction, during which time discovery would backtrack to cover the newly added jurisdictions. Finally, a defendant would not have notice of the ultimate scope of the

---

1. It should be noted that defendant's motion does not challenge plaintiff's standing to bring this action under the FLSA or the Pennsylvania Wage Law. Defendants challenge only plaintiffs' standing to bring claims under the laws of the states in which defendant does business which are specifically listed in plaintiffs' complaint.

3

claims against them in the complaint because only claims from the named plaintiffs' states could be brought.

In *In re Buspirone Patent Litig.*, the Southern District of New York applied *Ortiz* and held that defendants cannot move to dismiss class action allegations in states in which a plaintiff does not reside. 185 F. Supp.2d 363, 377 (S.D.N.Y. 2002). The court first noted that "there is no question that this Court has jurisdiction over [the lawsuit] and that each of the named plaintiffs has standing to bring at least some claims." *Id.* Under *Oritz*, the issue of standing, though, is not to be considered "unless certification is granted." *Id.* And, "If certification is granted, the proposed class would contain plaintiffs who have personal standing to raise claims under the laws...in all of the fifty states," therefore mooting any standing argument. *Id.*

In reverse, if certification is denied, the problem evaporates because the claim proceeds as an individual matter for the named plaintiffs based on the laws of the jurisdictions in which their claims are based. Thus, defendant's standing argument is without merit and expressly rejected by the United States Supreme Court.

Although some courts have interpreted the language of *Ortiz* as creating only a "limited exception," this is true only in so far as it goes. *See Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329 (5th Cir. 2002). When a plaintiff does not have standing to assert a violation under any state statue, courts are to complete the standing analysis prior to a class certification motion. A Rule 23 decision will not cure such a defect. Thus, *Ortiz* is correctly seen as a limited exception because it has no applicability in cases in which the plaintiff has no standing under any statute.

Here, defendants have not moved for judgment on plaintiffs' individual standing but instead only on plaintiffs' representative standing to bring claims against defendants for violations of various states law. Therefore, because defendants are not contesting plaintiffs' individual standing under their FLSA and Pennsylvania Wage Law claims the "limited exception" of *Ortiz* applies and the class

4

certification issues are "logically antecedent" to statutory standing issues and should therefore be treated before Article III standing. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 268-269 (D. Mass. 2004) (holding that where defendant did not challenge the representatives' standing to assert personal claims under the laws of states in which they resided, the issue of certification was "logically antecedent" to the issue of standing because defendant's standing challenge would not arise but for the proposed certification).

Thus, because under this Court's most recent Order plaintiffs are not yet required to move for Rule 23 class certification defendants' current motion is premature and should therefore be denied.

Defendants further argue that the Western District of New York's decision in *Parks v. Dick Sporting Goods,* No. 05-CV-6590 (CJS), 2006 WL 1704477 (W.D.N.Y. Jun. 15, 2006), supports their argument that plaintiffs' lack standing to bring state law claims other than those claims under Pennsylvania Wage Law and that plaintiffs' argument under *Ortiz* should fail. Defendant's reliance on *Parks* is misguided.

Most notably, this case has a much different posture than the case in *Parks* had at the time of defendant's motion there. In *Parks*, there was only one named plaintiff and no opt-in plaintiffs. *Id.* The named plaintiff Dan Parks, who resided only in New York, was the only plaintiff in the action. *Id.* The Court's decision in *Parks* relied heavily upon the fact that there was only the one plaintiff in the action who therefore lacked standing to bring suit under the laws of other states. *Id.* at *1-3.

Here, unlike in *Parks*, there are 136 opt-in plaintiffs who represent twenty three states in which defendants do business including Alaska, Arizona, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Indiana, Kansas, Maryland, Massachusetts, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, Pennsylvania, Rhode Island, Tennessee, Texas, and Washington. These opt-in plaintiffs have also worked for both Alderwoods and SCI. Additionally, plaintiffs continue to opt-in to this lawsuit daily.

5

Further, in the *Parks* decision the court recognized that there is a split in the courts as to whether *Ortiz* creates a general rule that in all class action cases challenges to standing are to be decided after the motion for class certification. *Id.* at * 2 ("Courts are divided as to whether this statement in the *Ortiz* decision requires that, in all putative class action cases, challenges to standing are to be decided after the motion for class certification."). Although the court decided to rule in accordance with courts that have held that *Ortiz* does not create such a general rule, as discussed above, the court's decision was heavily persuaded by the fact that there was only one plaintiff in the action. *Id.* at *1-3. Whereas here, there are currently twenty three states represented by opt-in plaintiffs, this Court should rule in accordance with the cases which hold that as in *Ortiz* standing issues should not be decided until after a certification motion has been made.

Additionally, defendant cites *Carnevale v. GE Aircraft Engines*, No. C-1-02-600, slip op. (S.D. Ohio Feb. 11, 2003) in support of its position. *Carnevale*, however, is also distinguishable from the instant matter. Although *Carnevale* was decided after the Supreme Court's decision in *Ortiz*, the Southern District of Ohio Court failed to even address the Supreme Court's decision. This fact renders the opinion in *Carnevale* useless and unpersuasive to this Court.

Accordingly, this Court should first address plaintiffs' class certification issues before ruling on defendants' standing arguments. If, contrary to plaintiffs' argument, this Court were to rule on defendants' standing argument the standing requirement would be met in at least 23 of the states in which defendants do business and accordingly this Court should not dismiss those claims. Therefore, defendants' motion should fail.

## II.    PLAINTIFFS' STATE COMMON LAW CLAIMS ARE NOT PREEMPTED BY THE FLSA AND THEREFORE SHOULD NOT BE DISMISSED.

Defendants further argue that plaintiffs' state common law claims are preempted by the FLSA and therefore must be dismissed. Defendants' argument is misguided.

6

At least two Circuit Court of Appeals opinions hold that state common law claims are not preempted by FLSA claims.[2]  *See Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000) (holding that fraud claims are not preempted based upon the FLSA's savings clause which indicates that the FLSA does not provide an exclusive remedy); *see also Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1298 (11th Cir. 1998) ("[T]he FLSA does not preempt state law contract provisions that are more generous than the FLSA demands").

Moreover, there are numerous district court decisions which likewise hold that state common law claims are not preempted by FLSA claims.  *See Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551 (D. Md. 2003) (holding that plaintiff's negligence claims were not preempted by the FLSA despite the fact they were based on same set of facts because the FLSA does not explicitly preempt tort claims, FLSA contemplated coextensive FLSA and state law coverage, and negligence claims do not conflict with FLSA's remedial scheme); *see also Washington v. Fred's Stores of Tennessee*, 427 F.Supp.2d 725 (S.D. Miss. 2006) (holding that plaintiff's negligence and conversion claims were not preempted by the FLSA  based upon analysis of the preemption framework of express, implied and conflict preemption).

In *Paukstis*, the Court held that despite the fact that plaintiffs' negligence claims arose from the same set of operative facts as their FLSA claims, because plaintiff's negligence claims did not necessarily conflict with the purpose of the FLSA's remedial scheme, the FLSA did not preempt the common law negligence claim.  241 F.Supp.2d at 559-60.

Here, plaintiffs' complaint alleges state common law violations of breach of contract, unjust enrichment, fraud and deceit, quantum meruit, negligent misrepresentation, and negligence in the states

---

[2]     Although the Tenth Circuit Court of Appeals held in *Connor v. Schnuck Markets*, 121 F.3d 1390 (10th Cir. 1997), that a common law exception to the employment at will doctrine is precluded by the alternative statutory remedy available under the FLSA, the instant matter does not assert any such common law retaliation claims.

in which defendants do business. Although the claims arise out of a similar set of facts as plaintiffs' FLSA claim, as set forth above, numerous courts have held that the FLSA does not preempt such claims.

Given the split among the district courts on this issue and the two Circuit court decisions that fail to support defendants' preemption argument, defendants' reliance on the unpublished decision of *Moeck v. Gray Supply Corp.* is unpersuasive. No. 03-1590 (WGB), 2006 WL 42368 (D.N.J. Jan. 6, 2006).

First, the court in *Moeck* cited no Third Circuit case in support of its decision. Moreover, the court recognized that the law is unsettled in this area, and then proceeded to ignore the only two Circuit Court of Appeals decisions on point; indeed the Court failed to address any contrary authority. *Id.* at *2.

Likewise, the Court in *Johnston v. Davis Security* was unable to cite to any authority in support of its decision. 217 F.Supp.2d 1224, 1228 (D. Utah 2002). In fact, it had to distinguish the Ninth Circuit *Williamson* decision which explicitly found no FLSA preemption of state common law fraud claims.

Accordingly plaintiffs' state common law claims should not be dismissed.

## III.    PLAINTIFFS' STATE LAW CLASS ACTION CLAIMS ARE NOT INCOMPATIBLE WITH THEIR FLSA CLAIMS.

Defendants further argue that plaintiffs cannot maintain a Rule 23 opt-out class action in the same litigation as an FLSA § 16(b) opt-in collective action because the two claims are "legally incompatible with their FLSA Section 16(b) collective action request." (Defendants' Memorandum of Law, p. 14). This argument has been implicitly rejected by the Third Circuit Court of Appeals in its decision *De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003). Moreover, district courts, including courts in this Circuit, routinely exercise supplemental jurisdiction over related state labor law claims when plaintiffs are bringing an FLSA representative action. Accordingly, defendants' argument should be rejected.

8

In *DeAsencio*, the plaintiffs asserted both FLSA claims and Pennsylvania state law claims. *Id.* at 301. In dismissing the state law claims, the Third Circuit found that the state law claims predominated over the FLSA claims and that the specific state law claims in that case were novel and complex, using the language of section 1367(c)(1) and (2), concerning supplemental jurisdiction. *Id.* at 311. The Court concluded that exercising supplemental jurisdiction *in those circumstances* would render the FLSA claim "an appendage to the more comprehensive state action" and therefore disallowed the exercise of supplemental jurisdiction. *Id.* at 312.

However, the Court in two very important footnotes disavowed defendants' argument here that the FLSA and Rule 23 actions are incompatible because of the "opt-in" nature of FLSA claims and the "opt-out" nature of rule 23 claims. First, the Court in footnote 14 acknowledged that the mere fact that one federal claim is opt-in, while another federal claim is opt-out, does not divest the court of jurisdiction, or make the claims mutually incompatible. In fact, the Court identified two claims under federal law where this might happen. Next, the Court suggested only that if one claim is a federal claim, and one is state, the Court can exercise supplemental jurisdiction:

> A federal court could have subject matter jurisdiction over two federal claims, one requiring opt-in and the other opt-out. For example, a federal employment discrimination action might be brought by a plaintiff class that also maintains an FLSA overtime pay action against their employer. But the outcome may be different where one of the claims is based in state law. Federal courts are courts of limited jurisdiction. Where a party seeks supplemental jurisdiction of a state-law action, we will evaluate jurisdiction under the statutory principles of 28 U.S.C. § 1367.

*Id.* at 310. This clearly defeats defendants' argument that a district court may never hear an opt-in and opt-out claim in the same action. Instead, it is a question of supplemental jurisdiction only, a claim that is not ripe at this time (see discussion below).

Next, in footnote 18, the Court dealt an even stronger blow to defendants' argument. There, the Court explicitly acknowledged that there are circumstances where a district court could allow a FLSA collective action claim and state wage and hour claim to proceed in the same action:

9

> Consistent with our holding, we will deny certification of the WPCL class with respect to all plaintiffs, including those who opted into the FLSA class. *Our decision does not necessarily preclude the exercise of supplemental jurisdiction where all plaintiffs with state law claims have opted into the FLSA class.* These matters are committed to the sound discretion of the District Court. See 28 U.S.C. § 1367.

*Id.* at 312 (internal citations omitted)(emphasis added).

Tellingly, defendants' motion to dismiss fails to cite to this Court the Third Circuit's decision in *De Ascencio v. Tyson Foods, Inc.* 342 F.3d 301 (3d Cir. 2003). While the analysis of supplemental jurisdiction in *De Ascencio* resulted in the Court dismissing plaintiffs' state law claims, such a result would not be appropriate here. First, defendant has failed to make any argument as to the appropriateness of this Court exercising supplemental jurisdiction. Second, in ruling to dismiss plaintiffs' state law wage claims in *DeAscencio,* the Court relied heavily on the fact that there were unique circumstances surrounding that litigation. *Id.* at 312. Most notably, the Court looked to the fact that plaintiffs did not move for class certification until 17 months after the suit was filed and the FLSA class period had been closed and discovery had been completed. *Id.*

Here, plaintiffs have not yet filed their motion for class certification pursuant to this Court's Order allowing plaintiff to file after defendants' motion to dismiss has been decided. Further, discovery has not yet begun in the instant litigation, let alone been completed, so there is no risk of prejudice to any members of the potential opt-out class.

Additionally, the *DeAscencio* decision was decided before the Class Action Fairness Act of 2005 ("CAFA") was enacted. CAFA explicitly vests this Court with original jurisdiction over plaintiffs' state law wage claims. In CAFA Congress legislated that federal courts have "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000...and is a class action in which (A) any member of a class of plaintiffs is a citizen of a state different from any defendant." CAFA (a)(2)(A). In footnote 14 of the *DeAscencio* decision, the Third Circuit acknowledged that under such a situation, this Court could thus exercise jurisdiction over both claims.

10

Numerous courts, including courts in this Circuit, have held that plaintiffs can maintain an FLSA opt-in class and Rule 23 opt-out class in the same action. *See Trotter v. Perdue Farms, Inc.*, No. CIV.A. 99-893-RRM, 2001 WL 1002448 (D. Del. Aug. 16, 2001) (certifying both FLSA claims and state wage claims from five states using subdivisions for the separate classes); *see also Goldman v. Radioshack Corp.*, No. Civ. A. 2:03-CV-0032, 2003 WL 21250571, *4 (E.D. Pa. Apr. 16, 2003) ("District Courts routinely exercise supplemental jurisdiction over related state labor law claims when the original jurisdiction is founded on 28 U.S.C. 1331 and the plaintiffs are bringing an FLSA representative action.") In *Trotter*, plaintiffs sought certification of their FLSA claims and of their Rule 23 class action claims in eight states. *Id.* The Court certified both the FLSA and Rule 23 classes holding that "plaintiffs have appropriately addressed potential differences in the state wage and hour laws by proposing subdivisions for the potential classes." *Id.* at 2. The Court went on to define the classes as an FLSA class and as subclasses for each of the states plaintiff was asserting state law claims. *Id.*

Similarly, courts outside the Third Circuit have held that plaintiffs can maintain an FLSA opt-in class and Rule 23 opt-out class in the same action. *See Frank v. Goldn Plump Poultry Inc.*, No. Civ. 041018JNERLE, 2005 WL 2240336, *5 (D. Minn. Sept. 14, 2005) ("[C]ourts routinely certify FLSA opt-in classes and Rule 23 opt-out classes in the same action.") *citing Chavez v. IBP, Inc.*, No. CT-0105093-EFS, 2002 WL 31662302 (E.D. Wash. Oct. 28, 2002) (certifying 2 classes - one consisting of 1,100 individuals pursuing FLSA claims and a second class of 3,900 individuals pursuing state law claims); *McLaughlin v. Liberty Mutual Ins. Company*, 224 F.R.D. 304, 308 (2004) ("[T]he FLSA action and state law remedies are entirely separate rights that may be pursued by the plaintiffs...Nothing in the [FLSA] limits available remedies under state law."); *Ladegaard v. Hard Rock Concrete Cutters*, No. 00 C 5755, 2000 WL 1774091, *7 (N.D. Ill. Dec. 1, 2000) ("The presence of both FLSA and state claims has not prevented courts from certifying state claims under Rule 23(b)(3)."); *Brzychnalski v. Unesco, Inc.*,

11

35 F.Supp.2d 351, 354 (1999) ("The creation of two classes is not an impediment to the exercise of supplemental jurisdiction over the state law claims because the claims are essentially the same and the members of both classes performed the same type of work for the same employers and were deprived of the same overtime compensation as the result of the same alleged scheme. There is no reason why the claims should be separately litigated."); *Ramirez v. Nutrasweet Co.*, No. 95 C 130, 1996 WL 529413, *3 (N.D. Ill., Sept. 11, 1996) (granting class certification of common law breach of contract claims where plaintiff also bought FLSA claims and hold that "a class action method of prosecution' would be the most fair and efficient method to adjudicate the instant controversy"); *Smellie v. Mount Sinai Hospital*, 2004 WL 2725124 at * 7 (S.D.N.Y. Nov. 29, 2004) (holding that FLSA and Rule 23 class could be heard in same action as the court was "confident...that with appropriate attention from able counsel and the Court, class members can be afforded effective notice that will appropriately protect their rights and make clear their opportunities in connection with this litigation.").

In any event, Defendants' motion to dismiss plaintiffs' state law Rule 23 claims is premature. The appropriate time at which to address whether it is appropriate for the court to address the question of simultaneous collective action and class action is when plaintiffs seek certification of the class action. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *see Oetringer v. First Residential Mortgage Network*, No. 3:06CV-381-H, 2007 WL 734859, *2 (W.D. Ky. March 6, 2007) ("First, the Court is fully aware of the potential difficulties posed by a simultaneous collective action under Section 216(b) of the FLSA (with its 'opt-in' language) and a Rule 23 class action (with its 'opt-out' provisions). However, the appropriate time to address that question is whenever Plaintiffs actually attempt to certify this case as a class action."). As set forth above, at this stage of the litigation plaintiffs are not currently seeking certification. Plaintiff is merely asking for notice to potential plaintiffs.

Defendants' reliance on *Moeck v. Gray Supply Co.*, 2006 WL 42368 (D.N.J. Jan. 6, 2006), *Himmelman v. Continental Casualty Co.*, 2006 WL 2347873 (D.N.J. Aug. 11, 2006), *Herring v. Hewitt*

12

*Assoc.*, and *Otto v. Pocono Health Sys.*, 457 F.Supp. 2d 522 (M.D. Pa. 2006), is unpersuasive as each of these cases - although post-dating both the Third Circuit's *DeAscencio* decision, as well as the enactment of CAFA - fail to address the issues raised in *DeAscencio* as well as the issue of whether CAFA allows the court to exercise original jurisdiction over plaintiffs' state law wage claims.

Defendants' reliance on *Moeck v. Gray Supply Company* is further misguided because in *Moeck* the court refused to exercise jurisdiction over plaintiffs' state law wage claims because plaintiffs failed to show that common issues predominated. 2006 WL 42368 at *5. Here, however, many of the state wage law claims brought by plaintiffs have statute of limitations periods that exceed the three year willful statute of limitations period provided in the FLSA. Further, plaintiffs have not yet moved for class certification and therefore this Court has not had occasion to rule on whether plaintiffs met the prerequisites of commonality and typicality required for class certification under Rule 23.

Additionally, defendants' reliance on *Himmelman, Herring* and *Otto* is similarly misguided as each of those cases relies solely on *Moeck* in support of their conclusion that plaintiffs' state law wage claims should be dismissed. As set forth above, because *Moeck* is distinguishable from the instant case, defendants' reliance on cases citing *Moeck* is similarly unpersuasive. Again, perhaps most damning is each of the above decisions' failure to discuss the Court of Appeals *DeAscencio* decision, and or the impact of CAFA. Accordingly, defendants' motion to dismiss should be denied.

IV.    **EFFICIENCY REQUIRES THAT THE CLAIMS BE HEARD IN THE SAME FORUM.**

Finally, judicial efficiency dictates that plaintiffs' FLSA and Rule 23 claims, which arise out of the same set of facts, should be heard in the same forum.

Courts have reasoned that permitting both a FLSA collective action and a Rule 23 class action in the same forum is desirable based on judicial efficiency. *See O'Brien v. Encotech Construction Services*, 203 F.R.D. 346, 352 (N. D. Ill. 2001) ("It would be desirable to concentrate all litigation related to plaintiffs' common set of facts in this forum."); *Ladegaard v. Hard Rock Concrete Cutters*, No. 00 C 5755,

13

2000 WL 1774091 at 7 (N.D. Ill. Dec. 1, 2000) (holding that to avoid plaintiffs bringing an action in state court for state claims and to further judicial economy it is desirable to concentrate litigation in one forum); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001) (stating, in certifying class action on state claims together with FLSA collective action, that "[t]hese common questions [in the state law class action] are best litigated in a single forum, and given the proceedings already undertaken in this case, any separate actions in this and other forums to be wasteful and inefficient."); *Brzychnalski v. Unesco, Inc.*, 35 F.Supp.2d 351, 354(1999) (granting authorization to pursue collective action for FLSA claims and class certification under Rule 23...find that under Rule 23 "a class action is superior to other methods for the fair and efficient adjudication for the claims in question.").

Here, defendants' argument fails to recognize that the simultaneous litigation of both claims in the same forum is the most efficient use of judicial resources in this matter. There are potentially thousands of individuals who worked for defendants that are affected by plaintiffs' lawsuit. If this Court were to hold that the state law claims cannot be heard with the FLSA claims, those thousands of potential plaintiffs would be forced to file separate lawsuits in the different states in which defendants do business. If that were to happen, the same claims based on the same facts would be litigated in hundreds of different court rooms around the country despite the fact that the parties have already begun to litigate the claims in this Court.

Because the basis of potential plaintiffs' state wage claims are the same as the basis for plaintiffs' FLSA claims, judicial economy and efficiency require that these claims all be heard in the same forum. Further, this Court could also separate the individuals affected by this lawsuit into additional subclasses to further assist in the management of the Rule 23 and FLSA claims.

Accordingly, defendants' motion to dismiss should be denied.

14

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that defendants' motion to dismiss certain claims and to strike class action allegations and certification request in plaintiffs' class action complaint be denied.

Dated: March 21, 2007

By:     **DOLIN, THOMAS & SOLOMON LLP**
        /s/ Patrick J. Solomon
        J. Nelson Thomas, Esq.
        Patrick J. Solomon, Esq.
        Kimberly A. Glennon, Esq.
        *Admitted Pro Hac Vice*
        693 East Avenue
        Rochester, New York 14607
        Telephone: (585) 272-0540

        **MARGOLIS EDELSTEIN**
        Charles H. Saul, Esq.
        Pa. I.D. No. 19938
        Liberty H. Weyandt, Esq.
        Pa. I.D. No. 87654
        Attorneys for Plaintiffs
        525 William Penn Place, Suite 3300
        Pittsburgh, Pennsylvania 15219
        Telephone: (412) 281-4256

15

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE AND HEATHER RADY | Civil Action No. 06-1470 |
| Plaintiffs, | |
| v. | Judge Joy Flowers Conti |
| ALDERWOODS GROUP, INC., BURTON L. HIRSCH FUNERAL HOME, INC., H. P. BRANDT FUNERAL HOME, INC., H. SAMSON, INC., NEILL FUNERAL HOME, INC, & SERVICE CORPORATION INTERNATIONAL | JURY TRIAL DEMANDED |
| Defendants. | |

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

NOW COME, the Plaintiffs, Deborah Prise and Heather Rady, by and through their attorneys, MARGOLIS EDELSTEIN, CHARLES H. SAUL, ESQUIRE and LIBERTY J. WEYANDT, ESQUIRE, and file the following Motion for Leave to File Second Amended Complaint and aver as follows:

1.    This civil action was originally filed by Plaintiffs Prise and Rady on November 6, 2006, which sought relief against Defendants Alderwoods Group, Inc., Burton L. Hirsch Funeral Home, Inc., H. P. Brandt Funeral Home, Inc., H. Samson, Inc., Neill Funeral Home, Inc., under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e), *et. seq* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206 ("EPA").

2.    Plaintiffs filed an Amended Complaint on February 23, 2007, in which Plaintiffs added Service Corporation Inc., as a Defendant in the case. Upon information and belief, Plaintiffs

1

averred that Alderwoods and SCI merged on or about November 28, 2006, via an "Agreement and Plan of Merger," dated April 2, 2006 (see Exhibit 1), which occurred after the filing of Plaintiffs' original Complaint.

3.     It was Plaintiffs' intention to include SCI as a Defendant under a theory of successor liability. However, Defendants interpreted Plaintiffs' Amended Complaint differently, and believed that Plaintiffs' claimed that SCI was the actual employer of Plaintiffs during the time period of the alleged incidents.

4.     Defendants' interpretations of what Plaintiffs' Complaint alleges are hypo-technical and exaggerated, in light of this Court's liberal notice-pleading requirements. It has been confirmed to Defendants that Plaintiffs do not claim that SCI was their employer during the time period in which the incidents alleged in the Complaint occurred, but that SCI is alleged to be liable under a successor liability theory.

5.     Plaintiffs' counsel offered to amend the Complaint to clarify Plaintiffs' position with respect to Defendant SCI in order to resolve this conflict. However, Defendants' counsel refused to consent to Plaintiffs' filing of a Second Amended Complaint, (to resolve the problems which Defendants complained of), but instead demanded the Complaint be withdrawn, or Defendants would request Rule 11 sanctions[1].

6.     Defendants' counsel then claimed that Alderwods and SCI did not merge. Defendants asserted that Alderwoods and SCI are two separate and distinct corporations, and, therefore, Defendants claim that SCI is not a proper party in this action.

---

[1] Plaintiffs believe that Defendants wanted Plaintiffs to withdraw their Complaint, such that when a new Complaint was filed, Defendants could then assert that the statute of limitations had expired.

7.    The parties appeared before the Court on May 23, 2007, for a status conference, during which the above issues were discussed. The Court permitted Plaintiffs the opportunity to file a Motion requesting leave to file a Second Amended Complaint and also permitted Defendants to file a response thereto[2].

8.    Upon information and belief, Plaintiffs aver that Alderwoods and SCI effectively merged on or about November 28, 2006, through the use of a subsidiary corporation, Coronado Acquisition Corporation ("Coronado"), created solely for the purpose of SCI's acquisition of Alderwoods. The merge of SCI's interests with that of Alderwoods has been scrutinized at length by the Federal Trade Commission. The two entities signed what has been publically referred to as "Agreement and Plan of Merger." (Exhibit 1). Public records also state that SCI acquired Alderwoods. The merger of the two entities is somewhat complicated, and without the benefit of discovery, Plaintiffs are unable to ascertain for certain the true relationship between Alderwoods, SCI and SCI's wholly owned subsidiary, Coronado.

9.    SCI has already legitimately been named as a party in Plaintiffs' First Amended Complaint. In all fairness, Plaintiffs' request to amend the Complaint again, with respect to Defendant SCI, stems from Defendants' complaints about the amendment. In all fairness, the relationship between the two entities is complicated and confusing with numerous filings with the SEC. Defendants have stated that another entity, namely Coronado Acquisition Group ("Coronado"), was created to effectuate the acquisition of Alderwoods. Coronado is believed to be a wholly owned subsidiary of SCI. According to documents filed by SCI with the SEC, Alderwoods

_____

[2] Should the Court grant Plaintiffs' Motion, new deadlines for Responsive pleadings and responses thereto will need to be set.

and Coronado merged, and became a wholly owned subsidiary of SCI, which is now called Alderwoods (see Exhibit 1). Plaintiffs contend that this makes SCI a successor in interest to Alderwoods.

10. Upon information and belief SCI has acquired all the stock and assets of Alderwoods. It is also Plaintiffs understanding that SCI agreed to assume all of Alderwood's liabilities, based upon a review of limited documents which have been available for review. Since the merger between Alderwoods and SCI took place after the filing of this suit, and after the EEOC investigation, SCI either knew, or should have known of the action and, therefore, should have been aware that they would also be taking on responsibility for the liabilities of Alderwoods that have been alleged in the Complaint.

11. A true and correct copy of Plaintiff's proposed Second Amended Complaint is attached hereto and marked as Exhibit 2.

12. Additionally, Plaintiffs also wish to amend their Complaint to include allegations under the Pennsylvania Human Relations Act. Subsequent to the filing of the First Amended Complaint, Plaintiffs received Notices of Rights from the Pennsylvania Human Relations Commission, dated April 17, 2007. Therefore, Plaintiffs wish to amend their Complaint to include causes of action which arise under the Pennsylvania Human Relations Act ("PHRA"), of which this Court has supplement jurisdiction. See attachments to Exhibit 2.

13. No party is prejudiced by the filing of the Second Amended Complaint. Defendant SCI has already been named as a party to the action via Plaintiffs' First Amended Complaint. The Amendment with respect to SCI is to clarify Plaintiffs' position that SCI is liable under a successor

4

liability theory. which is being done in part to rectify Defendants' complaints with respect to the pleading. The amendment with respect to the PHRA claims is the type of amendment which is routinely granted by the Court, in light of the fact that Plaintiffs could not have included such causes of action in their Complaint until they were given the right to do so by the PHRC. Furthermore, the PHRA claim, mirrors the claims already pled under Title VII.

WHEREFORE, Plaintiffs, respectfully requests that this Court grant the instant Motion for Leave to Amend Complaint.

Respectfully submitted,

MARGOLIS EDELSTEIN

Date:  6/8/07

/s/ Liberty J. Weyandt

CHARLES H. SAUL, ESQUIRE
PA I.D. #19938

LIBERTY J. WEYANDT, ESQUIRE
P.A. I.D. #87654

525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256

Attorneys for Plaintiff

5

**EXHIBIT D**

*5929379*

1  Sanford Jay Rosen, State Bar No. 62566
2  Maria V. Morris, State Bar No. 223903
   Lori E. Rifkin, State Bar No. 244081
3  ROSEN, BIEN & GALVAN, LLP
   315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com

6  [Additional Counsel Listed on Following Page]

7

8  Attorneys for Plaintiffs

FILED
ALAMEDA COUNTY

DEC - 5 2007

CLERK OF THE SUPERIOR COURT
By _____
                          Deputy



**SUMMONS ISSUED**

9       SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF ALAMEDA

11  CLAUDE BRYANT, CRAIG FULCHER,    )  Case No.    **07359593**
    SANFORD LEVINE and THOMAS        )
12  THOMPSON, on behalf of themselves and all  )  **CLASS ACTION**
    other employees and former employees  )
13  similarly situated,              )  **COMPLAINT**
                                     )
14              Plaintiffs,          )  **(1) VIOLATION OF CALIFORNIA**
                                     )      **LABOR LAWS**
15  v.                               )  **(2) STATE WAGE AND HOUR LAWS**
                                     )  **(3) UNJUST ENRICHMENT/**
16  SERVICE CORPORATION              )      **RESTITUTION**
    INTERNATIONAL, SCI FUNERAL AND   )  **(4) CONVERSION**
17  CEMETERY          PURCHASING        **(5) FRAUD AND DECEIT**
    COOPERATIVE,    INC.,    SCI   EASTERN   **(6) MISREPRESENTATION**
18  MARKET SUPPORT CENTER, L.P., SCI     **(7) BREACH OF CONTRACT**
    WESTERN    MARKET    SUPPORT   CENTER,   **(8) BREACH OF IMPLIED COVENANT**
    L.P.   a/k/a   SCI   WESTERN   MARKET        **OF GOOD FAITH AND FAIR**
19  SUPPORT CENTER, INC., SCI HOUSTON         **DEALING**
    MARKET SUPPORT CENTER, L.P., JANE     **(9) QUANTUM MERUIT**
20  D. JONES and THOMAS RYAN,            **(10)   UNLAWFUL BUSINESS**
                                              **PRACTICES**
21              Defendants.

22  _____     **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28

Additional Attorneys for Plaintiffs, who will
submit applications for admission *pro hac vice*:

J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870
DOLIN, THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540
Facsimile: (585) 272-0574
nthomas@theemploymentattorneys.com

Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
MARGOLIS EDELSTEIN
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256
Facsimile: (412) 642-2380
csaul@margolisedelstein.com

## CLASS ACTION COMPLAINT

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, and file the following Class Action Complaint:

### I.    INTRODUCTION

1.    This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, under the laws of California and other laws of the various States in which defendants do business.

2.    Plaintiffs' state law claims asserted herein were initially filed together with claims under the Fair Labor Standards Act in an action pending in the United States District Court for the Western District of Pennsylvania (the "FLSA Action").

3.    The FLSA Action initially named as defendants Alderwoods Group, Inc. ("Alderwoods") and its parent corporation Service Corporation International ("SCI"). Two groups of individuals opted-in to the FLSA action: (1) those who had worked only for Alderwoods, both prior to and after its acquisition by SCI (the "Alderwoods Employees"); and (2) those who worked at funeral locations owned by SCI or its subsidiaries or affiliates *other than* Alderwoods (the "SCI Employees").

4.    On or about June 8, 2007, the Court presiding over the FLSA Action declined to exercise supplemental jurisdiction over any of the state law claims alleged in that action. Therefore, on or about July 9, 2007, both the Alderwoods Employees and the SCI Employees reasserted their state law claims in a Class Action Complaint filed in the Superior Court of the State of California for the County of Alameda, Case No. RG 07334642 (the "Combined State Law Action").

5.    Subsequently, the Court in the FLSA Action ruled that it would not hear claims of the SCI Employees, dismissing those claims from the FLSA Action.

6.    Based on the defendants' position that resulted in that ruling, the Combined State Law Action was voluntarily dismissed so that the state law claims of the Alderwoods

1  Employees who are asserting FLSA claims in the FLSA Action may be heard separately from
2  those of the other employees.

3      7.      In the instant action, the SCI Employees assert violations of various state laws
4  based upon defendants' failure to pay the SCI Employees their regular or statutorily required
5  rate of pay for all hours worked.

6  **II.    JURISDICTION AND VENUE**

7      8.      This Court has jurisdiction over defendants because defendants conduct business
8  in this State.

9      9.      Venue as to each defendant is proper in this judicial district, pursuant to Code of
10  Civil Procedure § 395.5 and Corporations Code § 2105.

11      10.      Upon information and belief, defendant Service Corporation International, Inc. is
12  a foreign corporation which has not obtained a certificate of qualification to do business in
13  California.

14      11.      Upon information and belief, defendant Alderwoods Group, Inc. is a foreign
15  corporation which has obtained a certificate of qualification to do business in California, but
16  which has not designated a principal place of business within the State of California.

17      12.      Venue is also proper in this judicial district because defendants maintain and
18  operate one or more business locations, transact business, and/or have agents in Alameda
19  County, as well as in other counties in the State of California, and are otherwise within this
20  Court's jurisdiction for purposes of service of process. Obligations and/or liabilities of the
21  defendants arose in this County because defendants have contracted to employ or have
22  employed plaintiffs in Alameda County, as well as in other counties in the State of California.
23  Some of the claims in this matter arose from contracts for employment which were to be
24  performed, at least in part, in Alameda County, as well as in other counties in the State of
25  California. Some of the unlawful acts alleged herein occurred in Alameda County, as well as
26  in other counties in the State of California, and have a direct effect on plaintiffs within
27  Alameda County and within the State of California.

28

## III.    PARTIES

### A. Plaintiffs

13.    The class members ("Class Members") are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked. As more fully set forth in paragraphs 8 and 12, which Class Members incorporate by reference as if fully set forth herein, Class Members' claims are connected to Alameda County as some of those claims arose from contracts to be performed in Alameda County, some of the unlawful acts alleged herein occurred in Alameda County, and some of those acts have a direct effect on Class Members within Alameda County.

### B. Defendants

14.    Defendant Service Corporation International ("SCI") is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019, which does business in the State of California, and in the County of Alameda.

15.    Defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative") is a Delaware corporation which is owned by SCI.

16.    Defendant SCI Eastern Market Support Center, L.P. ("SCI Eastern") is a limited partnership which is owned by SCI.

17.    Defendant SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western") is a limited partnership or corporation which is owned by SCI.

18.    Defendant SCI Houston Market Support Center, L.P. ("SCI Houston") is a limited partnership which is owned by SCI.

19.    Defendants SCI Eastern, SCI Western and SCI Houston are referred to herein collectively as the "SCI Support Centers." The SCI Support Centers and the SCI Cooperative are referred to herein collectively as the "SCI Managing Entities."

20.    Upon information and belief, the SCI Managing Entities conduct human resources and other employment-related functions for defendants and their funeral locations.

-3-
COMPLAINT-CLASS ACTION
JURY TRIAL DEMANDED

21.     Upon information and belief, the SCI Support Centers provide all executive, management, administrative, accounting, data processing, and human resources services for defendants and their funeral locations.

22.     Upon information and belief, the field personnel and training departments of the SCI Managing Entities provide on-site training for defendants and their funeral locations.

23.     Upon information and belief, the SCI Cooperative, through agreements with the SCI Support Centers, provides additional human resources services and support for defendants and their funeral locations.

24.     Upon information and belief, the SCI Cooperative creates and distributes employee handbooks for defendants and their funeral locations.

25.     Upon information and belief, the SCI Cooperative provides Dignity University training for defendants and their funeral locations.

26.     Upon information and belief, the SCI Cooperative produces communications to employees of defendants and their funeral locations, including the weekly newsletter "Frontline," and the intranet site "Global Village."

27.     Upon information and belief, the SCI Cooperative administers benefit plans for the employees and has contracted with third-party benefit providers to respond to questions related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information.

28.     Upon information and belief, the SCI Managing Entities facilitate implementation of corporate strategies, policies and procedures.

29.     Upon information and belief, the SCI Managing Entities are directly involved in the operations of defendants' business with respect to plaintiffs' employment.

30.     Upon information and belief, the SCI Managing Entities exercise or have exercised managerial responsibilities and substantial control over the terms of plaintiffs' employment.

31.     Upon information and belief, the SCI Managing Entities provided management services to SCI and its affiliates in relation to plaintiffs' employment.

-4-
COMPLAINT-CLASS ACTION
JURY TRIAL DEMANDED

32.    Upon information and belief, the SCI Managing Entities are not completely disassociated from SCI and its affiliates with respect to plaintiffs' employment.

33.    Upon information and belief, the SCI Managing Entities are controlled by or are under common control with SCI and its affiliates.

34.    Defendant Jane D. Jones has acted as Vice President of Human Resources for defendant SCI since 2005.

35.    Upon information and belief, Ms. Jones oversees human resources, training and education, and payroll and commission services for approximately 20,000 employees in North America.

36.    Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

37.    Upon information and belief, Mr. Ryan's responsibilities include actively managing SCI.

38.    Defendants maintain and operate one or more business locations, transact business and/or have agents in Alameda County. Defendants' obligations and/or liabilities arose in this County, defendants employ or have employed Class Members in Alameda County, as well as in other counties in California. Defendants employed Class Members pursuant to contracts for employment which were to be performed, at least in part, in Alameda County, as well as in other counties in California. Some the unlawful acts alleged herein occurred in Alameda County, as well as in other counties in the State of California, and have a direct effect on Class Members within Alameda County and within the State of California.

39.    At all relevant times, defendants have suffered or permitted Class Members to perform work for them.

**Defendants Are Liable to All Class Members**

40.    At all relevant times, defendants have suffered or permitted Class Members to perform work for defendants at their funeral service locations.

41.    Class Members are or have been employed by defendants and their funeral service locations and/or have been jointly employed by defendants and their funeral service locations.

42.    Defendants operate locations, either directly or through their affiliates, and therefore are the employers of Class Members who are or were employed at all locations.

43.    At all relevant times, defendants have suffered or permitted Class Members to perform work for them.

44.    Business operations of the funeral service locations are centrally controlled by defendants.

45.    At all relevant times, defendants maintain centralized control of employment relations.

46.    At all relevant times, the human resource functions of the funeral service locations report directly or indirectly to defendants.

47.    In addition to centralized control of employment relations, defendants exercise common management of their various funeral service locations.

48.    Further, SCI owns all of defendants' funeral service locations and exercises financial control over the business operations of those locations.

49.    Class Members are informed and believe, and therefore allege, that defendants operate interrelated business operations.

50.    Class Members are informed and believe, and therefore allege, that defendants exercise central control of labor relations.

51.    Class Members are informed and believe, and therefore allege, that defendants operate under common management.

52.    Class Members are informed and believe, and therefore allege that defendants have common ownership and financial control.

53.    In light of the economic realities of the enterprise operated by defendants, defendants are joint employers of all Class Members for purposes of state laws.

54.     Collectively, defendants and all of their funeral service locations, comprise a single, integrated enterprise, as they perform related activities through common control for a common business purpose.

## IV.    CLASS ACTION ALLEGATIONS

55.     The claims arising under the state wage laws set forth below are properly maintainable as a class action under Cal. Civ. Proc. § 382.

56.     Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

57.     The class size is believed to be over 10,000 employees, a significant percentage of whom are within California.

58.     Common questions of law and fact predominate in this action because the claims of all Class Members are based on whether defendants' practice of not paying nonexempt employees their regular or statutorily required rate of pay for all hours worked violates California state law and the state laws of the various other states in which defendants do business.

59.     Common questions of law and fact include, but are not limited to, the following:

a.  Whether Class Members are entitled to payment for all of the time they worked for defendants.

b.  Whether Class Members are entitled to payment at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

c.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members for all of the time they worked for defendants.

d.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

60.    The named plaintiffs' claims are typical of, and concurrent to, the claims of Class Members, because they are similarly situated.  The named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for overtime work.

61.    The named plaintiffs will fairly and adequately represent and protect the interests of Class Members.  The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members' claims.  The class counsel are experienced in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

62.    There are no known conflicts of interest between and among Class Members.

63.    A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each Class Member has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering, and/or failing to pay employees their regular or statutorily required rate of pay for all hours worked.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

## V.    FACTUAL BACKGROUND

64.    Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

65.    Defendants' policy and/or practice was to not compensate Class Members their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

66.    Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

67.    Defendants' practice is to be deliberately indifferent to violations of the statutory overtime requirements.

68.    The failure to pay overtime is willful.

69.    Examples of defendants' policies and practices to deprive Class Members of their earned wages and wage premiums are set forth below:

a.    Defendants implemented a "Community Work Policy." Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

b.    Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

c.    Defendants' policy required that certain hourly employees train for and obtain certain licenses. Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

d.    Defendants' policy required that certain hourly employees take other types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

e.    Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were beyond the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not to be paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f.    Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants no longer paid for lunch breaks. Defendants did, however, suffer and permit its employees to perform work during such meal breaks, but

pursuant to defendant's "Meal Break Deduction Policy" time spent on meal "breaks" was still to be deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g. Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h. Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted Class Members to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i. Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of the Class Members' overtime.

70.    Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

71.    More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

72.    Defendants failed to pay full compensation to Class Members who are no longer employed by defendants promptly after those Class Members were discharged, laid off or resigned. In fact, defendants' failure to fully compensate those Class Members is continuing.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)

73.    Class Members hereby incorporate by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

**Failure to Pay Overtime Compensation**

74.    Defendants willfully violated their obligations under California law, including those under California Labor Code §1194, *et seq.*, by failing to pay Class Members the legal overtime compensation applicable to Class Members.

75.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation**

76.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, *et seq.*, by willfully failing to pay Class Members who have been discharged or laid off all wages earned and unpaid at the time of discharge or layoff.

77.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours thereafter.

78.    Defendants did not pay Class Members who were discharged, were laid off or resigned their regular or statutorily required rate of pay for all hours worked, as required by California law. Defendants' failure to pay those amounts is ongoing.

79.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

80.    Defendants are liable to Class Members for statutory penalties, pursuant to California Labor Code § 203, in the amounts set forth therein.

**Failure to Provide Required Meal  and Rest Periods**

81.    Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226.7 and 512, *et seq.*, by willfully failing to provide Class Members with legally required meal and rest periods.

82.    Defendants repeatedly and regularly interrupted Class Members' meal and rest periods and/or required Class Members to forego their meal and rest periods.

83.    Defendants failed to compensate Class Members for missed meal and rest breaks.

84.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

**Failure to Furnish Timely and Accurate Wage Statements**

85.    Defendants willfully violated their obligations under California law, including those under California Labor Code §§ 226(a) and 226.3, *et seq.*, by willfully failing to provide Class Members with timely and accurate wage statements as required by California law.

86.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

87.    Wherefore, Class Members request relief as described below.

## SECOND CAUSE OF ACTION

### STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)

88.    Class Members hereby incorporate by reference paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.    Defendants willfully violated their obligations to properly compensate Class Members under the wage laws of the states in which defendants do business including:

a.    Alaska Stat. § 23.10.050, *et seq.*;

b.    Arizona Rev. Stat. § 23-201, *et seq.*;

c.    Arkansas Code § 11-4-201, *et seq.*;

d.    Colorado Rev. Stat. § 8-6-101, *et seq.*;  Colorado Code Regs. § 1103-1, *et seq.*;

e.    Connecticut Gen. Stat. § 31-58, *et seq.*;

f.    820 Illinois Comp. Stat. 105/1, *et seq.*;  820 Illinois Comp. Stat. 105/12(a); 820 Illinois Comp. Stat. 115/1, *et seq.*;

g.    Indiana Code § 22-2-2-1, *et seq.*;  Indiana Code § 22-2-2-4, *et seq.*;  Indiana Code § 22-2-5-1, *et seq.*;  Indiana Code § 22-2-9-2, *et seq.*;

h.    Kansas Stat. § 44-1201, *et seq.*;

i.    Louisiana Rev. Stat. § 23:631, *et seq.*;

j.  Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

k.  Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 148, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

l.  Michigan Comp. Laws § 408.381, *et seq.*;

m.  Minnesota Stat. § 177.21, *et seq.*;  Minnesota Stat. § 181.13, *et seq.*;

n.  Montana Code § 39-3-401, *et seq.*;

o.  Nevada Rev. Stat. § 608.005, *et seq.*;

p.  New Jersey Stat. § 34.11-56a, *et seq.*;

q.  New Mexico Stat. § 50-4-1, *et seq.*;

r.  New York Lab. Law § 160, *et seq.*;

s.  North Carolina Gen. Stat. § 95-25.1, *et seq.*;

t.  Ohio Rev. Code § 4111.01, *et seq.*;

u.  Oregon Rev. Stat. § 653.005, *et seq.*;

v.  43 Pennsylvania Stat. § 333.101, *et seq.*;  43 Pennsylvania Stat. § 206.3, *et seq.*;

w.  29 Laws of Puerto Rico §250, *et seq.*;

x.  Rhode Island Gen. Laws § 28-12-1, *et seq.*;

y.  South Carolina Code § 41-10-10, *et seq.*;

z.  Washington Rev. Code § 49.46.005, *et seq.*;

aa.  West Virginia Code § 21-5C-1, *et seq.*;

bb.  Wisconsin Stat. § 104.001, *et seq.*

90.  As a direct and proximate cause of defendants' violations of these statutes, Class Members have suffered damages.

91.  Wherefore, Class Members request relief as described below.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)

92.    Class Members hereby incorporate by reference paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.    Defendants have received financial gain at the expense of Class Members.

94.    Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

95.    Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members.  As a result of this conduct,  the common laws and state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

96.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

97.    Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION

### CONVERSION (by all plaintiffs against all defendants)

98.    Class Members hereby incorporate by reference paragraphs 1 through 97 of this Complaint as if fully set forth herein.

99.    At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due.  The wages belong to Class Members as of

the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Class Members.

100.    In refusing to pay wages and overtime to Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Class Members for defendants' own use, purpose and benefit. At the time the conversion took place, Class Members were entitled to immediate possession of the amount of wages and overtime earned. As a result, Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial. This conversion was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Class Members. This conversion was concealed from Class Members.

101.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

102.    As a result of defendants' actions, Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

103.    Wherefore, Class Members request relief as described below.

## FIFTH CAUSE OF ACTION

### FRAUD AND DECEIT (by all plaintiffs against all defendants)

104.    Class Members hereby incorporate by reference paragraphs 1 through 103 of this Complaint as if fully set forth herein.

105.    Defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable federal and state laws.

106.    Defendants, however, at all times intended to violate applicable federal and state laws by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

107.    These misrepresentations were material to the terms of Class Members' employment contracts, and Class Members relied on the misrepresentations in agreeing to accept and continue employment with defendants. This reliance was reasonable, as Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable federal and state law.

108.    Defendants willfully violated their obligations by committing fraud against Class Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

109.    As a direct and proximate cause of the fraud committed by defendants, Class Members did not receive the statutorily mandated wages for overtime and suffered damages.

110.    Defendants acted maliciously when they committed the wrongful acts which constitute this cause of action such that it warrants the imposition of punitive and exemplary damages.

111.    Wherefore, Class Members request relief as described below.

## SIXTH CAUSE OF ACTION
### MISREPRESENTATION (by all plaintiffs against all defendants)

112.    Class Members hereby incorporate by reference paragraphs 1 through 111 of this Complaint as if fully set forth herein.

113.    In particular, Class Members incorporate and refer to paragraphs 105 through 107 above, regarding the material misrepresentations made by defendants.

114.   When defendants hired Class Members, they represented to Class Members that they would be fully compensated for all services performed, as more fully set forth above.

115.   There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees their regular or statutorily required rate of pay for all hours worked.

116.   Class Members relied upon defendants' representations by performing work and services for defendants.  This reliance was reasonable, as Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable federal and state law.

117.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia by misrepresenting to Class Members that they would be fully compensated for all services performed and are liable to Class Members.

118.   As a result of their reliance upon defendants' misrepresentations, Class Members suffered damages because they were not appropriately compensated with the regular or statutorily required rate of pay for all hours worked.

119.   As a direct and proximate result of defendants' negligent misrepresentation, Class Members suffered damages.

120.   Wherefore, Class Members request relief as described below.

## SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT (by all plaintiffs against all defendants)

121.   Class Members hereby incorporate by reference paragraphs 1 through 120 of this Complaint as if fully set forth herein.

122.    By entering into an employment relationship, defendants and each Class Member entered into a contract for employment.

123.    Each such contract included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable state and federal law.

124.    Defendants willfully breached the implied contract term by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

125.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

126.    As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

127.    Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(by all plaintiffs against all defendants)**

128.    Class Members hereby incorporate by reference paragraphs 1 through 127 of this Complaint as if fully set forth herein.

129.    The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state or federal law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract.

130.    Defendants breached the implied covenant of good faith and fair dealing by failing to pay Class Members the wages and overtime that was due to Class Members.

131.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

132.    As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Class Members have suffered damages.

133.    Wherefore, Class Members request relief as described below.

## NINTH CAUSE OF ACTION

### QUANTUM MERUIT (by all plaintiffs against all defendants)

134.    Class Members hereby incorporate by reference paragraphs 1 through 133 of this Complaint as if fully set forth herein.

135.    Defendants willfully violated their obligations by failing to pay Class Members for the reasonable value of the services performed by Class Members for defendants under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members under quantum meruit.

136.    As a direct and proximate cause of defendants' failure to pay Class Members for the reasonable value of services performed by Class Members for defendants, Class Members suffered damages.

137.    Wherefore, Class Members request relief as described below.

-19-
COMPLAINT-CLASS ACTION
JURY TRIAL DEMANDED

### TENTH CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)

138.  Class Members hereby incorporate by reference paragraphs 1 through 137 of this Complaint as if fully set forth herein.

139.  Defendants' failure to pay Class Members for all time worked constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code § 17200, *et seq.*

140.  The conduct of defendants in failing to pay Class Members for all time worked constitutes and was intended to constitute unfair competition and unlawful unfair and fraudulent business acts and practices within the meaning of California Business and Professional Code § 17200, *et seq.*

141.  As a result of defendants' violations of California Business and Professional Code § 17200, *et seq.*, defendants have unjustly enriched themselves at the expense of Class Members.

142.  To prevent their unjust enrichment, defendants should be required, pursuant to California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains for purpose of making full restitution to all injured Class Members.  Defendants should also be permanently enjoined from continuing their violations of California Business and Professional Code § 17200, *et seq.*

143.  Defendants willfully violated their obligations under the California Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

144.  Wherefore, Class Members request relief as described below.

### PRAYER FOR RELIEF

**WHEREFORE**, Class Members demand judgment against defendants in their favor and that they be given the following relief:

    (a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

    (b)    an award of the value of Class Members' unpaid wages;

1 (c) liquidated, compensatory, consequential and punitive damages;

2 (d) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred
3    in vindicating Class Members' rights;

4 (e) an award of pre- and post-judgment interest; and

5 (f) such other and further legal or equitable relief as this Court deems to be just and
6    appropriate.

7

## JURY DEMAND

Class Members demand a jury to hear and decide all issues of fact.

8

9           Respectfully Submitted,

10          ROSEN, BIEN & GALVAN, LLP

11

12 Date: December 5, 2007    By:_____

13          Sanford Jay Rosen, State Bar No. 62566
           Maria V. Morris, State Bar No. 223903
14          Lori E. Rifkin, State Bar No. 244081
           315 Montgomery Street, Tenth Floor
15          San Francisco, CA 94104
           Telephone: (415) 433-6830
16

17          DOLIN, THOMAS & SOLOMON LLP
           J. Nelson Thomas, NY Attorney No. 2579159
18          Patrick J. Solomon, NY Attorney No. 2716660
           Michael J. Lingle, NY Attorney No. 3925765
19          Justin Cordello, NY Attorney No. 4131447
           Annette Gifford, NY Attorney No. 4105870
20          693 East Avenue
           Rochester, NY 14607
21          Telephone: (585) 272-0540

22          MARGOLIS EDELSTEIN
           Charles H. Saul, PA State Bar No. 19938
23          Liberty J. Weyandt, PA State Bar No. 87654
           Kyle T. McGee, PA State Bar No. 205661
24          525 William Penn Place, Suite 3300
           Pittsburgh, PA 15219
25          Telephone: (412) 281-4256
           Attorneys for Plaintiffs

26

27

28

# Exhibit E



*5939149*

1  Sanford Jay Rosen, State Bar No. 62566
2  Maria V. Morris, State Bar No. 223903
   Lori E. Rifkin, State Bar No. 244081
3  ROSEN, BIEN & GALVAN, LLP
   315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
5  srosen@rbg-law.com

6  [Additional Counsel Listed on Following Page]

7
   Attorneys for Plaintiffs
8

FILED
ALAMEDA COUNTY

DEC 0 5 2007

CLERK OF THE SUPERIOR COURT
By_____
                        Deputy

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF ALAMEDA

11  WILLIAM HELM, DEBORAH PRISE,        )  Case No.
    HEATHER P. RADY, [see Complaint and )      RG07359602
12  Appendices for a listing of plaintiffs] et al., on )
    behalf of themselves and all other employees )  CLASS ACTION
13  and former employees similarly situated, )
                                          )  COMPLAINT
14              Plaintiffs,              )
                                          )  (1) VIOLATION OF CALIFORNIA
15  v.                                   )     LABOR LAWS
                                          )  (2) STATE WAGE AND HOUR LAWS
16  ALDERWOODS    GROUP,    INC.    and  )  (3) UNJUST ENRICHMENT/
    SERVICE CORPORATION                 )     RESTITUTION
17  INTERNATIONAL,                       )  (4) CONVERSION
                                            (5) FRAUD AND DECEIT
18              Defendants.                 (6) MISREPRESENTATION
                                            (7) BREACH OF CONTRACT
19                                          (8) BREACH OF IMPLIED COVENANT
                                               OF GOOD FAITH AND FAIR
20                                             DEALING
                                            (9) QUANTUM MERUIT
21                                          (10)  UNLAWFUL BUSINESS
                                               PRACTICES
22  _____
                                            DEMAND FOR JURY TRIAL
23

24

25

26

27

28

COMPLAINT-CLASS ACTION
JURY TRIAL DEMANDED

1

Additional Attorneys for Plaintiffs, who will
submit applications for admission *pro hac vice*:

2

J. Nelson Thomas, NY Attorney No. 2579159

3

Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765

4

Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870

5

DOLIN, THOMAS & SOLOMON LLP
693 East Avenue

6

Rochester, NY 14607
Telephone: (585) 272-0540

7

Facsimile:  (585) 272-0574
nthomas@theemploymentattorneys.com

8

9

Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661

10

MARGOLIS EDELSTEIN
525 William Penn Place

11

Suite 3300
Pittsburgh, PA 15219

12

Telephone: (412) 281-4256
Facsimile: (412) 642-2380

13

csaul@margolisedelstein.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION COMPLAINT

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, and file the following Class Action Complaint:

## I.    INTRODUCTION

1.    This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, under the laws of California and other laws of the various States in which defendants do business.

2.    Plaintiffs' state law claims asserted herein were initially filed together with claims under the Fair Labor Standards Act in an action pending in the United States District Court for the Western District of Pennsylvania (the "FLSA Action").

3.    The FLSA Action initially named as defendants Alderwoods Group, Inc. ("Alderwoods") and its parent corporation Service Corporation International ("SCI"). Two groups of individuals opted-in to the FLSA action: (1) those who had worked only for Alderwoods, both prior to and after its acquisition by SCI (the "Alderwoods Employees"); and (2) those who worked at funeral locations owned by SCI or its subsidiaries or affiliates *other than* Alderwoods (the "SCI Employees").

4.    On or about June 8, 2007, the Court presiding over the FLSA Action declined to exercise supplemental jurisdiction over any of the state law claims alleged in that action. Therefore, on or about July 9, 2007, both the Alderwoods Employees and the SCI Employees reasserted their state law claims in a Class Action Complaint filed in the Superior Court of the State of California for the County of Alameda, Case No. RG 07334642 (the "Combined State Law Action").

5.    Subsequently, the Court in the FLSA Action ruled that it would not hear claims of the SCI Employees, dismissing those claims from the FLSA Action.

6.    Based on the defendants' position that resulted in that ruling, the Combined State Law Action was voluntarily dismissed so that the state law claims of the Alderwoods

1  Employees who are asserting FLSA claims in the FLSA Action may be heard separately from
2  those of the other employees.

3      7.    In the instant action, the Alderwoods Employees assert violations of various state
4  laws based upon defendants' failure to pay the Alderwoods Employees their regular or
5  statutorily required rate of pay for all hours worked.  The Alderwoods Employees raise these
6  claims against Alderwoods as a direct or joint employer and against SCI as an integrated
7  enterprise, successor-in-interest and/or alter ego of Alderwoods.

8  **II.    JURISDICTION AND VENUE**

9      8.    This Court has jurisdiction over defendants because defendants conduct business
10 in this State.

11     9.    Venue as to each defendant is proper in this judicial district, pursuant to Code of
12 Civil Procedure § 395.5 and Corporations Code § 2105.

13     10.    Upon information and belief, defendant Service Corporation International, Inc. is
14 a foreign corporation which has not obtained a certificate of qualification to do business in
15 California.

16     11.    Upon information and belief, defendant Alderwoods Group, Inc. is a foreign
17 corporation which has obtained a certificate of qualification to do business in California, but
18 which has not designated a principal place of business within the State of California.

19     12.    Venue is also proper in this judicial district because defendants maintain and
20 operate one or more business locations, transact business, and/or have agents in Alameda
21 County, as well as in other counties in the State of California, and are otherwise within this
22 Court's jurisdiction for purposes of service of process.  Obligations and/or liabilities of the
23 defendants arose in this County because defendants have contracted to employ or have
24 employed plaintiffs in Alameda County, as well as in other counties in the State of California.
25 Some of the claims in this matter arose from contracts for employment which were to be
26 performed, at least in part, in Alameda County, as well as in other counties in the State of
27 California.  Some of the unlawful acts alleged herein occurred in Alameda County, as well as

28

in other counties in the State of California, and have a direct effect on plaintiffs within Alameda County and within the State of California.

## III.    PARTIES

### A. Plaintiffs

13.    The class members ("Class Members") are those employees and former employees of defendant Alderwoods who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  Class Members expressly include, among others, those identified in the caption, together with Appendix A and Appendix B to this Complaint.  As more fully set forth in paragraphs 8 and 12, which Class Members incorporate by reference as if fully set forth herein, Class Members' claims are connected to Alameda County as some of those claims arose from contracts to be performed in Alameda County, some of the unlawful acts alleged herein occurred in Alameda County, and some of those acts have a direct effect on Class Members within Alameda County.

### B. Defendants

14.    Defendant Service Corporation International ("SCI") is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019, which does business in the State of California, and in the County of Alameda.

15.    Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202, which does business in the State of California, and in the County of Alameda.

16.    Defendants maintain and operate one or more business locations, transact business and/or have agents in Alameda County.  Defendants' obligations and/or liabilities arose in this County, defendants employ or have employed Class Members in Alameda County, as well as in other counties in California.  Defendants employed Class Members pursuant to contracts for employment which were to be performed, at least in part, in Alameda County, as well as in other counties in California.  Some the unlawful acts alleged herein occurred in Alameda County, as well as in other counties in the State of California, and have a direct effect on Class Members within Alameda County and within the State of California.

17.    At all relevant times, defendants have suffered or permitted Class Members to perform work for them.

*SCI Is Liable to All Class Members*

18.    Upon information and belief, on or about November, 2006, Alderwoods was acquired by SCI through a merger agreement between Alderwoods and another subsidiary of SCI.

19.    Thus, subsequent to the acquisition of Alderwoods by SCI, to the extent that Alderwoods is not adequately funded to compensate plaintiffs for the damages asserted in this action because some or all of its assets were diverted to SCI, SCI is Alderwoods's successor in interest.

20.    Following the acquisition of Alderwoods by SCI, the two entities have common ownership.

21.    Following the acquisition of Alderwoods by SCI, upon information and belief, SCI imposed its management, control of labor relations and financial control over Alderwoods. Thus, following the merger, Alderwoods's human resources and other employment functions have been directed and controlled by SCI and/or its agents.

22.    Thus, in light of the economic realities of the integrated enterprise operated by SCI and Alderwoods, following the merger SCI is a joint employer of all Class Members for purposes of state laws.

23.    Alternatively, following the merger, there is a unity of interest and ownership between SCI and Alderwoods such that an inequitable result would follow if SCI were not held liable for Alderwoods's violations alleged herein and therefore SCI is liable as an alter ego of Alderwoods.

*Alderwoods Is Liable to All Class Members*

24.    At all relevant times, Alderwoods has suffered or permitted Class Members to perform work for it. This includes Class Members employed by Alderwoods's affiliates (the "Alderwoods Affiliates").

25. Class Members are or have been employed by Alderwoods and Alderwoods's funeral service locations.

26. Alderwoods operates locations, either directly or through the Alderwoods Affiliates, and therefore is the employer of Class Members who are or were employed at all Alderwoods locations.

27. At all relevant times, the funeral service locations of Alderwoods and the Alderwoods Affiliates have employed Class Members.

28. Class Members who are or have been employed by Alderwoods and/or its funeral service locations have been jointly employed by SCI, Alderwoods and the Alderwoods funeral service locations.

29. Collectively, following the merger, defendants and the Alderwoods funeral service locations comprise a single, integrated enterprise, as they perform related activities through common control for a common business purpose.

30. Business operations of the Alderwoods funeral service locations are centrally controlled by Alderwoods and, following the merger, by SCI.

31. At all relevant times, SCI or Alderwoods maintained centralized control of employment relations at the Alderwoods funeral service locations.

32. At all relevant times, the human resource functions of the Alderwoods funeral service locations report directly or indirectly to SCI or Alderwoods.

33. In addition to centralized control of employment relations, Alderwoods or SCI exercise common management of the Alderwoods funeral service locations.

34. Further, Alderwoods and SCI own all of the Alderwoods funeral service locations and exercise financial control over the business operations of those locations.

IV.   **CLASS ACTION ALLEGATIONS**

35. The claims arising under the state wage laws set forth below are properly maintainable as a class action under Cal. Civ. Proc. § 382.

36.     Class Members are those employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

37.     The class size is believed to be several thousands of employees, a significant percentage of whom are within California.

38.     Common questions of law and fact predominate in this action because the claims of all Class Members are based on whether defendants' practice of not paying nonexempt employees their regular or statutorily required rate of pay for all hours worked violates California state law and the state laws of the various other states in which defendants do business.

39.     Common questions of law and fact include, but are not limited to, the following:

    a.  Whether Class Members are entitled to payment for all of the time they worked for defendants.

    b.  Whether Class Members are entitled to payment at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

    c.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members for all of the time they worked for defendants.

    d.  Whether defendants' employment policies violated defendants' legal obligation to pay Class Members at overtime rates for all of the time they worked for defendants in excess of 40 hours per week and/or in excess of 8 hours per day.

40.     The named plaintiffs' claims are typical of, and concurrent to, the claims of Class Members, because they are similarly situated.  The named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for overtime work.

41.     The named plaintiffs will fairly and adequately represent and protect the interests of Class Members.  The class counsel, Rosen, Bien & Galvan, LLP, Dolin, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members'

1    claims.  The class counsel are experienced in employment litigation, and their attorneys are

2    experienced in class action litigation, including class actions arising under federal and state

3    wage and hour laws.

4        42.    There are no known conflicts of interest between and among Class Members.

5        43.    A class action is superior to other available means for the fair and efficient

6    adjudication of this controversy.  Individual joinder of all Class Members is not practicable,

7    and questions of law and fact common to the Class predominate over any questions affecting

8    only individual members of the Class.  Each Class Member has been damaged and is entitled

9    to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering,

10   and/or failing to pay employees their regular or statutorily required rate of pay for all hours

11   worked.  Class action treatment will allow those similarly situated persons to litigate their

12   claims in the manner that is most efficient and economical for the parties and the judicial

13   system.

14   **V.    FACTUAL BACKGROUND**

15       44.    Class Members are those employees and former employees of defendant

16   Alderwoods who were suffered or permitted to work by defendants and not paid their regular

17   or statutorily required rate of pay for all hours worked.

18       45.    Defendants' policy and/or practice was to not compensate Class Members their

19   regular or statutorily required rate of pay for work defendants suffered or permitted Class

20   Members to perform.

21       46.    Defendants knew Class Members were supposed to receive such wages,

22   however, defendants willfully failed to pay for all hours when Class Members worked.

23       47.    Defendants' practice is to be deliberately indifferent to violations of the statutory

24   overtime requirements.

25       48.    The failure to pay overtime is willful.

26       49.    Examples of defendants' policies and practices to deprive Class Members of

27   their earned wages and wage premiums are set forth below:

28       a.   Defendants implemented a "Community Work Policy."  Under the policy,

-7-
COMPLAINT-CLASS ACTION
JURY TRIAL DEMANDED

defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

b.  Defendants implemented an "On Call Pay Policy." Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

c.  Defendants' policy required that certain hourly employees train for and obtain certain licenses. Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

d.  Defendants' policy required that certain hourly employees take other types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

e.  Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were beyond the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not to be paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

f.  Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants no longer paid for lunch breaks. Defendants did, however, suffer and permit its employees to perform work during such meal breaks, but pursuant to defendant's "Meal Break Deduction Policy" time spent on meal "breaks" was still to be deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g.  Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h. Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted Class Members to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i. Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of the Class Members' overtime.

50.    Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

51.    More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

52.    Defendants failed to pay full compensation to Class Members who are no longer employed by defendants promptly after those Class Members were discharged, laid off or resigned. In fact, defendants' failure to fully compensate those Class Members is continuing.

## FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA LABOR LAWS (by all plaintiffs against all defendants)

53.    Class Members hereby incorporate by reference paragraphs 1 through 52 of this Complaint as if fully set forth herein.

### Failure to Pay Overtime Compensation

54.    Defendants willfully violated their obligations under California law, including those under California Labor Code §1194, et seq., by failing to pay Class Members the legal overtime compensation applicable to Class Members.

55.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

### Failure to Immediately Pay Wages Upon Discharge/Layoff/Resignation

56.    Defendants willfully violated their obligations under California law, including those under California Labor Code § 201, et seq., by willfully failing to pay Class Members

1    who have been discharged or laid off all wages earned and unpaid at the time of discharge or
2    layoff.

3        57.    Defendants willfully violated their obligations under California law, including
4    those under California Labor Code § 202, *et seq.*, by willfully failing to pay Class Members
5    who have resigned all wages earned and unpaid at the time of resignation, or within 72 hours
6    thereafter.

7        58.    Defendants did not pay Class Members who were discharged, were laid off or
8    resigned their regular or statutorily required rate of pay for all hours worked, as required by
9    California law.  Defendants' failure to pay those amounts is ongoing.

10        59.    As a direct and proximate cause of defendants' actions, Class Members have
11    suffered damages.

12        60.    Defendants are liable to Class Members for statutory penalties, pursuant to
13    California Labor Code § 203, in the amounts set forth therein.

14    **Failure to Provide Required Meal  and Rest Periods**

15        61.    Defendants willfully violated their obligations under California law, including
16    those under California Labor Code §§ 226.7 and 512, *et seq.*, by willfully failing to provide
17    Class Members with legally required meal and rest periods.

18        62.    Defendants repeatedly and regularly interrupted Class Members' meal and rest
19    periods and/or required Class Members to forego their meal and rest periods.

20        63.    Defendants failed to compensate Class Members for missed meal and rest breaks.

21        64.    As a direct and proximate cause of defendants' actions, Class Members have
22    suffered damages.

23    **Failure to Furnish Timely and Accurate Wage Statements**

24        65.    Defendants willfully violated their obligations under California law, including
25    those under California Labor Code §§ 226(a) and 226.3, *et seq.*, by willfully failing to provide
26    Class Members with timely and accurate wage statements as required by California law.

27        66.    As a direct and proximate cause of defendants' actions, Class Members have
28    suffered damages.

67.    Wherefore, Class Members request relief as described below.

## SECOND CAUSE OF ACTION

### STATE WAGE AND HOUR LAWS (by all plaintiffs against all defendants)

68.    Class Members hereby incorporate by reference paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.    Defendants willfully violated their obligations to properly compensate Class Members under the wage laws of the states in which defendants do business including:

a.   Alaska Stat. § 23.10.050, *et seq.*;

b.   Arizona Rev. Stat. § 23-201, *et seq.*;

c.   Arkansas Code § 11-4-201, *et seq.*;

d.   Colorado Rev. Stat. § 8-6-101, *et seq.*;  Colorado Code Regs. § 1103-1, *et seq.*;

e.   Connecticut Gen. Stat. § 31-58, *et seq.*;

f.   820 Illinois Comp. Stat. 105/1, *et seq.*;  820 Illinois Comp. Stat. 105/12(a); 820 Illinois Comp. Stat. 115/1, *et seq.*;

g.   Indiana Code § 22-2-2-1, *et seq.*;  Indiana Code § 22-2-2-4, *et seq.*;  Indiana Code § 22-2-5-1, *et seq.*;  Indiana Code § 22-2-9-2, *et seq.*;

h.   Kansas Stat. § 44-1201, *et seq.*;

i.   Louisiana Rev. Stat. § 23:631, *et seq.*;

j.   Maryland Code, Lab. & Empl. § 3-401, *et seq.*;

k.   Massachusetts Gen. Laws Ch. 151, § 1, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 148, *et seq.*;  Massachusetts Gen. Laws Ch. 149, § 100, *et seq.*;

l.   Michigan Comp. Laws § 408.381, *et seq.*;

m.   Minnesota Stat. § 177.21, *et seq.*;  Minnesota Stat. § 181.13, *et seq.*;

n.   Montana Code § 39-3-401, *et seq.*;

o.   Nevada Rev. Stat. § 608.005, *et seq.*;

p.   New Jersey Stat. § 34.11-56a, *et seq.*;

q. New Mexico Stat. § 50-4-1, *et seq.*;

r. New York Lab. Law § 160, *et seq.*;

s. North Carolina Gen. Stat. § 95-25.1, *et seq.*;

t. Ohio Rev. Code § 4111.01, *et seq.*;

u. Oregon Rev. Stat. § 653.005, *et seq.*;

v. 43 Pennsylvania Stat. § 333.101, *et seq.*; 43 Pennsylvania Stat. § 206.3, *et seq.*;

w. 29 Laws of Puerto Rico §250, *et seq.*;

x. Rhode Island Gen. Laws § 28-12-1, *et seq.*;

y. South Carolina Code § 41-10-10, *et seq.*;

z. Washington Rev. Code § 49.46.005, *et seq.*;

aa. West Virginia Code § 21-5C-1, *et seq.*;

bb. Wisconsin Stat. § 104.001, *et seq.*

70.    As a direct and proximate cause of defendants' violations of these statutes, Class Members have suffered damages.

71.    Wherefore, Class Members request relief as described below.

### THIRD CAUSE OF ACTION

**UNJUST ENRICHMENT/RESTITUTION (by all plaintiffs against all defendants)**

72.    Class Members hereby incorporate by reference paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.    Defendants have received financial gain at the expense of Class Members.

74.    Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

75.    Defendants' willful failure to pay overtime wages for work performed for defendants has unjustly enriched defendants to the detriment of Class Members. As a result of this conduct, the common laws and state laws of Alabama, Alaska, Arizona, Arkansas,

California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

76.    As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

77.    Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION
### CONVERSION (by all plaintiffs against all defendants)

78.    Class Members hereby incorporate by reference paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.    At all relevant times, defendants had and continued to have a legal obligation to pay Class Members all earnings and overtime due.  The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Class Members.

80.    In refusing to pay wages and overtime to Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Class Members for defendants' own use, purpose and benefit.  At the time the conversion took place, Class Members were entitled to immediate possession of the amount of wages and overtime earned.  As a result, Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial.  This conversion was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Class Members.  This conversion was concealed from Class Members.

81.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,

Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

82.    As a result of defendants' actions, Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

83.    Wherefore, Class Members request relief as described below.

### FIFTH CAUSE OF ACTION

### FRAUD AND DECEIT (by all plaintiffs against all defendants)

84.    Class Members hereby incorporate by reference paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.    Defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable federal and state laws.  Some examples include defendants' statements in their policy manuals that "[a]ll non-exempt employees will be compensated for all hours worked" and that defendants "will comply with all applicable federal, state and local laws.  If any of the provisions of this policy conflict with any federal, state or local laws or regulations, then the laws or regulations will supersede the Company's policy in those specific locations."

86.    Defendants, however, at all times intended to violate applicable federal and state laws by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

87.    These misrepresentations were material to the terms of Class Members' employment contracts, and Class Members relied on the misrepresentations in agreeing to accept and continue employment with defendants. This reliance was reasonable, as Class

1  Members had every right to believe that defendants would abide by their obligations pursuant

2  to applicable federal and state law.

3      88.    Defendants willfully violated their obligations by committing fraud against Class

4  Members under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

5  California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas,

6  Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

7  Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,

8  Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia,

9  Washington, and West Virginia and are liable to Class Members.

10      89.    As a direct and proximate cause of the fraud committed by defendants, Class

11  Members did not receive the statutorily mandated wages for overtime and suffered damages.

12      90.    Defendants acted maliciously when they committed the wrongful acts which

13  constitute this cause of action such that it warrants the imposition of punitive and exemplary

14  damages.

15      91.    Wherefore, Class Members request relief as described below.

16               **SIXTH CAUSE OF ACTION**

17      **MISREPRESENTATION (by all plaintiffs against all defendants)**

18      92.    Class Members hereby incorporate by reference paragraphs 1 through 91 of this

19  Complaint as if fully set forth herein.

20      93.    In particular, Class Members incorporate and refer to paragraphs 85 through 87

21  above, regarding the material misrepresentations made by defendants.

22      94.    When defendants hired Class Members, they represented to Class Members that

23  they would be fully compensated for all services performed, as more fully set forth above.

24      95.    There was no reasonable basis for defendants to believe these representations

25  because defendants had a continuing practice and policy of failing to pay their employees their

26  regular or statutorily required rate of pay for all hours worked.

27      96.    Class Members relied upon defendants' representations by performing work and

28  services for defendants. This reliance was reasonable, as Class Members had every right to

1  believe that defendants would abide by their obligations pursuant to applicable federal and
2  state law.

3      97.     Defendants willfully violated their obligations under the common laws and the
4  state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida,
5  Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts,
6  Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico,
7  New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode
8  Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia by
9  misrepresenting to Class Members that they would be fully compensated for all services
10 performed and are liable to Class Members.

11     98.     As a result of their reliance upon defendants' misrepresentations, Class Members
12 suffered damages because they were not appropriately compensated with the regular or
13 statutorily required rate of pay for all hours worked.

14     99.     As a direct and proximate result of defendants' negligent misrepresentation,
15 Class Members suffered damages.

16     100.    Wherefore, Class Members request relief as described below.

17                        **SEVENTH CAUSE OF ACTION**
18          **BREACH OF CONTRACT (by all plaintiffs against all defendants)**

19     101.    Class Members hereby incorporate by reference paragraphs 1 through 100 of this
20 Complaint as if fully set forth herein.

21     102.    By entering into an employment relationship, defendants and each Class Member
22 entered into a contract for employment.

23     103.    Each such contract included an implied or express term that defendants agreed to
24 fulfill all of their obligations pursuant to applicable state and federal law.

25     104.    Defendants willfully breached the implied contract term by failing to pay Class
26 Members for all of the time Class Members worked and by failing to pay Class Members their
27 regular or statutorily required rate of pay for all hours worked.

28

105.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

106.    As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

107.    Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
#### (by all plaintiffs against all defendants)

108.    Class Members hereby incorporate by reference paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state or federal law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract.

110.    Defendants breached the implied covenant of good faith and fair dealing by failing to pay Class Members the wages and overtime that was due to Class Members.

111.    Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode

Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members.

112.    As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Class Members have suffered damages.

113.    Wherefore, Class Members request relief as described below.

### NINTH CAUSE OF ACTION

### QUANTUM MERUIT (by all plaintiffs against all defendants)

114.    Class Members hereby incorporate by reference paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115.    Defendants willfully violated their obligations by failing to pay Class Members for the reasonable value of the services performed by Class Members for defendants under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and West Virginia and are liable to Class Members under quantum meruit.

116.    As a direct and proximate cause of defendants' failure to pay Class Members for the reasonable value of services performed by Class Members for defendants, Class Members suffered damages.

117.    Wherefore, Class Members request relief as described below.

### TENTH CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES (by all plaintiffs against all defendants)

118.    Class Members hereby incorporate by reference paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    Defendants' failure to pay Class Members for all time worked constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code § 17200, *et seq.*

120.    The conduct of defendants in failing to pay Class Members for all time worked constitutes and was intended to constitute unfair competition and unlawful unfair and fraudulent business acts and practices within the meaning of California Business and Professional Code § 17200, *et seq.*

121.    As a result of defendants' violations of California Business and Professional Code § 17200, *et seq.*, defendants have unjustly enriched themselves at the expense of Class Members.

122.    To prevent their unjust enrichment, defendants should be required, pursuant to California Business and Professional Code §§ 17203 and 17204, to disgorge their illegal gains for purpose of making full restitution to all injured Class Members.  Defendants should also be permanently enjoined from continuing their violations of California Business and Professional Code § 17200, *et seq.*

123.    Defendants willfully violated their obligations under the California Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.) and are liable to Class Members.

124.    Wherefore, Class Members request relief as described below.

## PRAYER FOR RELIEF

**WHEREFORE**, Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award of the value of Class Members' unpaid wages;

(c)    liquidated, compensatory, consequential and punitive damages;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Class Members' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Class Members demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

ROSEN, BIEN & GALVAN, LLP

Date: December 5, 2007

By: _____

Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Justin Cordello, NY Attorney No. 4131447
Annette Gifford, NY Attorney No. 4105870
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256
Attorneys for Plaintiffs

1

## APPENDIX A

2

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

3

ROBERT CHERNETSKY, JEFFREY AYDELOTTE, ROBERT JONES, JAMES STICKLE,
4  HENRY KLEIN, STACEY WEINSTEIN, JEFFREY SACHS, JOHNNY COLEMAN, JOHN
KEATH, CHAD WICKHAM, CLAYTON CALLOWAY, LORI PHOENIX, JAMES
5  CROUCH, JOHNNY JOHNSON, RICKIE HAMILTON, SANDY THOMAS, ROGER
HUGO, ROBERT SHAW, BETTY KNIGHT, STEPHANIE RIGGS, LARRY HAMMOCK,
6  STEVEN TILLER, STROTHER FULCHER, MARY HOLDEN, JAMES STARK

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX B

**Due to local rules requiring that the caption fit onto a single page, not all plaintiffs have been listed in the caption.**

Consent forms are attached in this Appendix for the following individuals:

ROBERT A. ACEVEZ, FREDERICK R. ALDRICH, MERLIN ALEXANDER, KENNETH R. ALLEN, ELIAS ALVIDREZ, STEVEN A. ARNOLD, JAMES A. BAASCH, ROBERT BOWEN, MICHELE BREINDEL, MARC BROOKS, LAWRENCE F. CAMP, WILLIAM CASTELLARIN, DEBBIE K. CHATMAN (BRANDT), COREY W. CLARY, KATHRYN COSPER, DIANE CRAIG, JEFFREY A. DIGGS, KATHRYN DILDY, LOUIE DOMINGUEZ, MARC A. DUMONT, JAMES C. DURDEN, SCOTT J. ECKERT, STEPHEN ESCOBAR, LARRY FAIR, JOHN R. FERGUSON, DARIN D. FORAN, ROBERT IDEMOTO, KENNETH GIACONE, ELIZABETH M. GRANT, JUDONA M. GREEN, WILLIAM O. GWYN, LINDA T. HAGERTY, DOUGLAS HAZEN, CARRIE HENDERSON, JAMES HENDERSON, BERNARD M. HIRREL, JAMES HOLDER, RHAELYN HOLLAND, WILLIAM HUDSON III, JULIUS E. JOHNSON, WILTON KING, EDDIE KIRKPATRICK, W. SCOTT KOLWYCK, RONALD LANGLEY, FRANK LEWIS, CHARLES LOWTHER, SARAH MALMI, STEVEN L. MARTZ, EUGENIA C. MATTHEWS, NICK MCFERRAN, PAUL D. MEIZLER, HAROLD E. METCALF, MICHAEL NAPERALSKY, MARVIN L. NEVEU, SEAN J. OBERSKI, RICHARD E. PETERSEN, STEVEN PIERCE, J.D. POOL, MELISSA RAY, JACK L. REDDICK, DENNIS ROBERTSON, RICHARD E. SALHUS, JOHN SCHABLOSKI, DAVID SCHNELL, WARREN L. SEIZ, WILLIAM H. SHUFF, MARK SILEO, HOLLY SLAMOWITZ, MYRA S. SLOAN, MONECIA SMITH, JODY P. SPIESE, MIKAL STAMPKE, FRANCIS STEINHOFF, TORREY SUMMERS, WILLIAM T. SUTTER III, JOSEPH G. TAFOYA JR., STEPHEN TAKESIAN, JERRY TAWNEY, TORI TAYLOR, PHILIP R. TILLMAN, FLORINDA D. TREJO, GAYLE WALKER, DAVID W. WALLACE, ERIC WALLAND, JAMES WHALEY, GEORGE T. WHITE, BARRY WIEN, DAVID WYATT, JOHN S. ZALESKI