1  STEVEN H. GURNEE, ESQ. SB# 66056
   DAVID M. DANIELS, ESQ. SB# 170315
2  NICHOLAS P. FORESTIERE, SB# 125118
   GURNEE & DANIELS LLP
3  2240 Douglas Boulevard, Suite 150
   Roseville, CA  95661-3805
4  Telephone     (916) 797-3100
   Facsimile     (916) 797-3131
5
   Attorneys for Defendants
6
7  SERVICE CORPORATION INTERNATIONAL,
   SCI FUNERAL AND CEMETERY PURCHASING
8  COOPERATIVE, INC., SCI EASTERN MARKET
   SUPPORT CENTER, L.P. SCI WESTERN
9  MARKET SUPPORT CENTER, L.P., SCI
   HOUSTON MARKET SUPPORT CENTER, L.P.,
10 JANE D. JONES, GWEN PETTEWAY, THOMAS
   RYAN and CURTIS BRIGGS
11

12                 UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                  (SAN FRANCISCO DIVISION)

15

16 CLAUDE BRYANT, JOSEPH BIERNACKI,      ) No.'s  CV 08-01190 SI and CV 08-01140SI
   GORDON FARMER, RHEALYN              )
17 HOLLAND, JAMES STICKLE, ELEANOR     ) **DEFENDANTS' CONSOLIDATED**
   RIGGIO, FRANK ACCUNA, RICHARD       ) **REQUEST FOR JUDICIAL NOTICE IN**
18 LAMASTERS, KENNETH ALLEN, CRAIG     ) **SUPPORT OF THEIR RESPECTIVE**
   FULCHER, SANFORD LEVINE and         ) **MOTIONS TO TRANSFER VENUE**
19 THOMAS THOMPSON, et al., on behalf of ) **PURSUANT TO 28 U.S.C.A. § 1404(a)**
20 themselves and all other employees and former )
   employees similarly situated,          )
21                                        )
22          Plaintiffs,                    )
        vs.                                )
23                                        )
   SERVICE CORPORATION                    )
24 INTERNATIONAL, SCI FUNERAL AND         )
   CEMETERY PURCHASING                    )
25 COOPERATIVE, INC., SCI EASTERN         )
   MARKET SUPPORT CENTER, L.P. SCI       ) Date:        June 20, 2008
26 WESTERN MARKET SUPPORT CENTER,         ) Time:        9:00 a.m.
27 L.P. a/k/a SCI WESTERN MARKET          ) Dept.:       10
   SUPPORT CENTER, INC., SCI HOUSTON      )
28 MARKET SUPPORT CENTER, L.P. JANE D.)    **TRIAL DATE:      NONE SET**

JONES, GWEN PETTEWAY, THOMAS   )
RYAN and CURTIS BRIGGS          )
                                )
              Defendants.        )
_____ )

Defendants in this action and in the related action of *Helm v. Alderwoods, Inc. et al.*, Case No. Case No. CV 08-1184-SI hereby file this consolidate request for judicial notice and further jointly request that the Court take judicial notice pursuant to FRE 201(b) of the following documents and rulings attached hereto (*See also, International Board of Teamsters v. Zantop Air Transportation Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("[A] court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"); *U.S. v. City of St. Paul*, 258 F.3d 750, 753 (8th Cir. 2001) *cert. denied*, 535 U.S. 904 (writing showing an agency's interpretation of its own regulations is entitled to judicial notice absent showing the interpretation is unreasonable or inconsistent with the statutory authority):

**Exhibit A**      Transcript of Hearing on Thursday, April 19, 2007 in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01641-JFC, United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit B**      Transcript of Hearing on September 6, 2007 in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01641-JFC,  United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit C**      Transcript of Nov. 15, 2007 Hearing Plaintiffs.' Motion for Leave to File Second Amended Complaint in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01641-JFC, United States District Court for the Western District of Pennsylvania.

**Exhibit D**      Judith M. Marshall filed in the matter of *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01641-JFC, United States District Court for the Western District of Pennsylvania.

**Exhibit E**      Class Action Complaint in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01641-JFC, United States District Court for the Western District of Pennsylvania.

**Exhibit F**      Proposed First Amended Complaint attached as Exhibit A to attorney

1  Annette Gifford's affirmation in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No.

2  2:06-cv-01641-JFC, United States District Court for the Western District of Pennsylvania.

3  **Exhibit G**    Class Action Complaint filed in the matter of *Stickle et al. v. SCI Western*

4  *Market Support Center, L.P.*, Case No. 08-CV-83, United States District Court for the Phoenix

5  Division of Arizona.

6  **Exhibit H**    Order To Show Cause filed in *Bryant v. Alderwoods*, Case No. 07-05696-SI.

7  **Exhibit I**    Joint Response To Order To Show Cause filed in *Bryant v. Alderwoods*,

8  Case No. 07-05696-SI.

9  **Exhibit J**    Plaintiffs' Statement In Support of Related Cases filed in the case of *Helm,*

10  *et al. v. Alderwoods Group, Inc. et al.*, Case No. CV 08-1184-SI.

11  **Exhibit K**    Order on Plaintiffs Administrative Motions and Scheduling Order filed in

12  *Bryant, et al. v. Alderwoods Group, Inc., and Service Corporation International, et al.*, Case No.

13  3:07-CV-5696-SI.

14  **Exhibit L**    Partial Docket in *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No.

15  2:06-cv-01641-JFC, United States District Court for the Western District of Pennsylvania listing

16  the initially named listing parties and their attorneys.

17  **Exhibit M**    Partial Docket in *Stickle et al. v. SCI Western Market Support Center, L.P.*,

18  Case No. 08-CV-83, United States District Court for the Phoenix Division of Arizona listing the

19  initially named listing parties and their attorneys.

20  **Exhibit N**    Liana Jensen Declaration and Exhibit 1 filed in *Bryant v. Alderwoods*, Case

21  No. 07-05696-SI.

22  Dated:  May 16, 2008                    GURNEE & DANIELS LLP

23                                    By

24                                    STEVEN I. GURNEE, ESQ.
                                          DAVID M. DANIELS, ESQ.
25                                    NICHOLAS P. FORESTIERE, ESQ.
                                          Attorneys for Defendants
26                                    SERVICE CORPORATION INTERNATIONAL, SCI
                                          FUNERAL AND CEMETERY PURCHASING
                                          COOPERATIVE, INC., SCI EASTERN MARKET
27                                    SUPPORT CENTER, L.P., SCI WESTERN MARKET
                                          SUPPORT CENTER, L.P., SCI HOUSTON MARKET
28                                    SUPPORT CENTER, L.P., JANE D. JONES, GWEN
                                          PETTEWAY, THOMAS RYAN and CURTIS BRIGGS

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al

                                        Plaintiffs

            vs.                          Civil Action No. 06-1641

ALDERWOODS GROUP, INC., et al

                                        Defendants

## PROCEEDINGS

        Transcript of Hearing on Thursday, April 19, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Honorable Joy Flowers Conti, District Judge.

APPEARANCES:

For the Plaintiffs:          J. Nelson Thomas, Esq.
                             Charles H. Saul, Esq.
                             Patrick J. Solomon, Esq.
                             Liberty J. Weyandt, Esq.
                             Justin Cordello, Esq.
                             Michael Lingle, Esq.

For the Defendants:          Matthew W. Lampe, Esq.
                             Amy E. Dias, Esq.


                             Reported by:
                             Michael D. Powers
                             Official Court Reporter
                             Room 5335 USPO & Courthouse
                             Pittsburgh, Pennsylvania 15219
                             (412) 208-7572


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

1          P R O C E E D I N G S

2     (Court reconvened on Thursday, April 19, 2007, at 4:00 p.m.)

3              THE COURT:  This is a hearing on a motion for

4     expedited collective action notification and a motion to

5     strike in the civil action Prise versus Alderwoods Group

6     Inc., Civil Action No. 06-1641.

7              Will counsel please enter your appearance.

8              MR. THOMAS:  Yes, Your Honor.  Nelson Thomas on

9     behalf of the plaintiffs.

10             MR. SOLOMON:  Patrick Solomon on behalf of the

11    plaintiffs.

12             MR. SAUL:  Charles Saul on behalf of the

13    plaintiffs.

14             MS. WEYANDT:  Liberty Weyandt on behalf of the

15    plaintiffs.

16             THE COURT:  I am sorry?

17             MS. WEYANDT:  Liberty Weyandt on behalf of the

18    plaintiffs.

19             MR. CORDELLO:  Justin Cordello on behalf of

20    plaintiffs.

21             MR. LINGLE:  Michael Lingle on behalf of the

22    plaintiffs.

23             THE COURT:  Who is going to be speaking for the

24    plaintiffs?

25             MR. THOMAS:  Your Honor, I will be.  Nelson Thomas.

3

1          THE COURT:  Nelson Thomas.

2          MR. LAMPE:  Matthew Lampe on behalf of the

3    defendants.

4          MS. DIAS:  Amy Dias on behalf of the defendants.

5          THE COURT:  Who will be speaking on behalf of the

6    defendants?

7          MR. LAMPE:  I will, Your Honor.  Matthew Lampe.

8          THE COURT:  This is a hearing on a motion for an

9    expedited collective action notice to go out, and I have

10   already had sort of a preliminary hearing on this previously,

11   and that was held on January 31st, 2007, of this year.

12         And the standards that the Court went through there

13   in considering a motion for expedited class notification

14   pursuant to Section 216(b) of the Fair Labor Standards Act --

15   and I will call that throughout this hearing the FLSA -- the

16   potential plaintiffs must opt into a collective action suit

17   and affirmatively notify the Court of their intentions to

18   join the suit.

19         In order to facilitate that notice, the

20   representative plaintiffs must show that the potential

21   plaintiffs are similarly situated to the representative

22   plaintiffs and that the action should go forward as a

23   representative action.  To establish that the absent

24   collective action member is similarly situated, plaintiffs

25   must, one, be or have been employed in the same corporate

1    department, division and location; two, have advanced similar

2    claims; and, three, have sought substantially the same form

3    of relief.

4          And that is from Asencio versus Tyson Foods, Inc.,

5    130 F.Supp. 660, Eastern District of Pa., 2001, citing

6    Lockhart versus Westinghouse Credit Corp., 879 F.2d 43,

7    Third Circuit, 1989.

8          There is a two-tier approach that courts often use

9    with respect to determining whether plaintiffs are similarly

10   situated.  Mooney versus Aramco Service Company,

11   54 F.3d 1207, Fifth Circuit, 1995.  The first stage or the

12   first tier is what is called the notice phase.  And that

13   begins when the plaintiff seeks authorization to issue notice

14   to the other prospective class members which would permit

15   them to be notified that they could opt into the action.

16         This notice usually occurs at an early stage and

17   the Court will determine the viability of a possible class

18   based upon the claim and affidavits in support of that claim.

19         Morisky versus Public Service Electric and Gas

20   Company, 111 F.Supp.2d 493, District of New Jersey, 2000.  At

21   this first tier, there is a relatively low burden to show the

22   similarly situated requirement.

23         And from Asencio, 130 F.Supp.2d at 663, the Court

24   may conditionally certify the class for the purposes of

25   notice and discovery under a comparatively liberal standard,

1   that is, by showing that or by determining that the members

2   of the punitive class, quote, were together the victims of a

3   single decision, policy or plan, close quote.

4        Sperling versus Hoffmann-LaRoche, 118 F.R.D. 392,

5   District New Jersey affirmed 862 F.2d 439, Third Circuit,

6   1988.

7        And after the first tier, then the second tier will

8   occur where all the consents have come in and there will be

9   further discovery to determine whether or not the defendant

10  violated the FLSA and the matter is ready for trial.  And at

11  that second tier, the Court will reconsider the class

12  certification issue in light of the similarly situated

13  standard.  And will conduct a specific fact review with

14  respect to the class members who have opted in, and will look

15  at matters such as employment setting, defenses and other

16  procedural issues.

17       The Court finds that at the second tier, if they

18  are not similarly situated, then the conditional class is

19  de-certified.

20       At this stage, we are at what I would classify the

21  first tier.  It's a question of whether the notice should go

22  out.  And given that this is a collective action under

23  Section 216(b) of the FLSA, there is potential prejudice if

24  notice doesn't go out because as the clock goes on,

25  individuals will lose their rights because they may be barred

6

1    in whole or in part for some claims that they may
2    legitimately have if, down the road after discovery is
3    completed, or whatever discovery is relevant to what we would
4    normally do in a Rule 23 class action situation, having a
5    more robust hearing and a more lengthy time prior to the
6    determination of class certification, valuable rights could
7    be lost.
8           So, I think that's why the courts do take an
9    approach at this stage to be fairly liberal in approaching
10   the decision-making process.
11          My preliminary sense, having read the various
12   briefing, is that at least with respect to Alderwoods, the
13   questions of whether there is a common policy with respect to
14   the five classes, I think there would have to be some
15   refinement of the notice that would go out and a refinement
16   of the punitive classes that, at this preliminary stage
17   without really looking at the merits, just looking at some of
18   the filings that were made and the allegations, that there is
19   arguably enough to move forward on.
20          And the things that the Court would look to at this
21   stage would be the affidavits.  I know there is a motion to
22   strike that is there, but -- and some of it is set forth as
23   being hearsay.  But, some of the things that are hearsay --
24   and I will hear some argument on this -- I am not sure is
25   hearsay.  It may be admissions if a manager is making a

7

1   statement.  If it would fall within that party admission, it
2   is not hearsay.

3          I can tell you if a superior or representative of
4   the company tells me something and that is adverse to the
5   company, I can certainly put that in an affidavit because it
6   might be a party admission and, therefore, could come in.

7          So, you know, it may not be -- everything that was
8   arguably set forth as hearsay doesn't necessarily fall within
9   that.  And then there is an affidavit from someone who is or
10  was a manager and had a familiarity and said that they were
11  familiar with the corporate policies across the board, and
12  whether, on cross-examination, if they are deposed and it
13  comes out that they really lack a complete foundation for
14  that, I think that's a different story.  But, just to take
15  the affidavit at face valid may be enough at this stage to
16  move forward.

17         I am more troubled about the issues with respect to
18  Service Corporation International.  There is, in the
19  defendant's response, a statement that Service Corporation
20  International is, itself, just a holding company and that has
21  no employees.  That's typically the way -- or if they do have
22  employees, they are generally the very high-up officers of
23  the company, would not be the hourly employees of the nature
24  that would be the punitive class members in this case.

25         So, if that is the case, even though you have a

1    10K, a 10K is usually, you know, is usually done on a

2    consolidated basis where they are representing a multiple

3    tier of companies.  And I know, and I did look over the 10K

4    where it used the words, we have this and we have that.  But,

5    as a legal matter, maybe they don't have employees.  And I

6    have sufficient concerns about that, but I don't think I can

7    rely purely on a 10K in making that assessment.

8              So, my question would be if you have -- if you

9    operate as a holding company and you have fifty subsidiaries,

10   say, you have a subsidiary in each state, you have a separate

11   entity in each state, do you have to sue each separate

12   subsidiary and then you can bring them all together?  Or can

13   you just, in this context, sue the parent and make them

14   liable for the overtime or FLSA infractions that are at issue

15   here?  I don't know.

16             I don't have an answer to that and it wasn't

17   robustly briefed by the parties, but I am troubled by that.

18   So, I am not sure that I would be able to move forward and

19   certify a class of employees if the defendant is merely a

20   holding company and really wouldn't have those type of

21   employees.

22             So, what good have we done to send out the notice?

23   We will get a flurry of people coming back.  But, if you tell

24   the defendants to send it out to your employees, you know,

25   they will send it out maybe to the head officers who won't be

9

1   within that class.

2           So, those are sort of the issues that I see here
3   today.

4           So, I will let the defendants be heard first on the
5   Alderwoods situation because my preliminary assessment would
6   be in favor of the plaintiffs, albeit I think there is some
7   refinements that have to be made to the punitive classes, as
8   well as to the form of notice that they are proposing to
9   send.

10          MR. LAMPE:  Thank you, Your Honor.  Good afternoon.
11  I am not sure if this is on or if I am speaking loudly
12  enough.  May I address the SCI issue first?

13          THE COURT:  Yes.  I am sort of going in your favor
14  that way.

15          MR. LAMPE:  I understand.  I wasn't sure if
16  procedurally you wanted me to speak second to him on that.

17          THE COURT:  I sort of found for you.  I would like
18  to hear from the other side if I have it wrong unless you
19  know something I don't.

20          MR. LAMPE:  I would like to point out there was an
21  allegation made in the plaintiff's reply brief as to Service
22  Corporation International relying on, and you alluded to it,
23  relying on the annual report and the 10K.  And what I think
24  is important to point out to Your Honor is, I have the -- all
25  three of them here and would be happy to submit them, but in

1  the annual report, there is the annual report and then the
2  10K is right behind, it's a booklet.
3          And if you open the annual report and look at the
4  very first page, there is a reference to the Service
5  Corporation International and it goes on to speak about it,
6  and there is an asterisk after Service Corporation
7  International.  If you go down to the bottom of the page, you
8  will see the very point that you were making, and that is
9  that, as used here, SCI and the company refer to Service
10 Corporation International and companies owned directly or
11 indirectly by Service Corporation International.
12         So, there is simply nothing inconsistent with our
13 affidavit that we submitted indicating that this is a holding
14 company that has no employees.  It's not just a few.  It has
15 none.  And these annual reports -- because, as you said, this
16 is a consolidated report and the footnote very specifically
17 says that at the top --
18         THE COURT:  That would be -- my understanding would
19 be consistent with how public companies handle their 10K
20 reporting requirements.
21         MR. LAMPE:  So, as to SCI, it is a holding company.
22 It has no employees.  It would be pointless to issue notice
23 to its employees.  There are none.
24         And you are right that there was no briefing or
25 discussion of the other question that you raised about

1   whether or not --

2          THE COURT:  You could just sue the parent and bring

3   them all in?

4          MR. LAMPE:  Right.

5          THE COURT:  In a normal case, you wouldn't be able

6   to do that.  I don't know if there is some exception in these

7   circumstances.

8          MR. LAMPE:  Under the FLSA, there is a doctrine

9   called the single employer, also referred to as the joint

10  employer doctrine.  It is, as you would expect, the parent

11  can be held liable based on the fact of the -- based on the

12  six factor test, whether there is interlocutory boards,

13  whether the formalities are observed --

14         THE COURT:  We don't have any of that.

15         MR. LAMPE:  Right, Your Honor.  There has been no

16  evidence at all to suggest that the parent could be liable

17  for the acts of these various and myriad subsidiaries spread

18  around the country.

19         So, we would submit that your tentative views on

20  the issue of SCI are correct and that no notice to the order

21  should be issued at this time.

22         THE COURT:  At this time.

23         MR. LAMPE:  I am going to try convince you that

24  your preliminary views to Alderwoods is not right.  In a case

25  like this, as you said again, you previewed the law.  The

1    issue is, is there evidence of a common unlawful policy?

2         THE COURT:  Right.  And you have a number of

3    affidavits, some of which is hearsay.  So, the hearsay, I

4    will tell you I will disregard the hearsay or give it very

5    little weight.

6         It is very different at this stage where it is

7    not -- I am not making factual findings, so there are a

8    number of other cases, none that are precedential for this

9    Court, that have discussed the motion to strike in this

10   context.  That's Crawford versus Lexington-Fayette Urban

11   County Government, 2007 Westlaw 293865, Eastern District

12   Kentucky, January 26, 2007, showing the relaxed standard.

13        But, I think most Judges would say at this stage

14   when you are reviewing this type of information, if it is

15   true hearsay, you give it very little weight, if at all, and

16   I can disregard it and I can treat each of those affidavits

17   in an appropriate fashion.

18        There is some other aspect of the affidavits,

19   however, that I don't find would be hearsay and would have

20   some evidential value with respect to these matters and I

21   just commented on a few of those aspects.

22        MR. LAMPE:  In these cases, they set up, as you

23   said, is there evidence of a common unlawful policy?  And

24   there is a distinction in the cases between, on the one hand,

25   evidence of wage problems that could suggest a common,

1  unlawful corporate policy.

2         On the other hand, there is cases that deal with

3  allegations of wage problems that were very apparently

4  violations of company policy and certainly not the sum and

5  substance of company policy.

6         THE COURT: I understand that there are. I

7  understand from the record, and I will put this on there,

8  that there are corporate policies that Alderwoods have that

9  would be clearly in compliance with the law. So, the formal

10 policies are in compliance with the law.

11        The question is whether, notwithstanding the

12 corporate policy, there was an unwritten policy to, in

13 effect, violate the written policies and to, say, disregard

14 that and do something different which the plaintiffs argue is

15 violative of the FLSA.

16        MR. LAMPE: And that was exactly what I was going

17 to say, and let me move to the next step.

18        What we have then is, we have lawful policies that

19 state employees are to be paid for all of their hours. We

20 have allegations from five affiants, there was a sixth

21 Alderwoods affiant included in the plaintiff's reply brief

22 that said your order said they weren't allowed. There are

23 five Alderwoods affiants; three of them are from the

24 Pittsburgh area, two others are from other areas. All five

25 are in one of twenty-five nonexempt positions represented and

1    these five individuals do, in fact, claim that they

2    experienced wage problems.

3            In the context of the evidence before the Court,

4    and there is the cases such as Harrison versus McDonald's and

5    Flores versus Lifeway and England versus New Century, they

6    say that the mere fact that there are some allegations is not

7    sufficient to justify conditional certification.

8            And the Flores case, for instance, dealt with a

9    situation where there were two allegations out of fifty

10   employees and the Court said that is not enough.

11           The England case, in that case, there were two

12   hundred affidavits, but it did not show any kind of a nexus

13   to any sort of corporate policy.  And the Court said that is

14   not enough.  These are local complaints.  They are

15   insufficient to establish a company policy.

16           THE COURT:  That is why I made reference to the one

17   fellow that was the manager.  That was the one that was most

18   compelling.  Let's talk about him.

19           MR. LAMPE:  McDonald's -- Harrison versus

20   McDonald's, this is a case where there were comments

21   attributed to a manager who supposedly said that there was

22   improper wage violations going on in that unit and the Court

23   said -- the Court did not find that to be sufficient to

24   justify notice and denied the motion.  And there is only one

25   manager here and this is a manager whose name is --

1        THE COURT:  Deborah Prise?

2        MR. LAMPE:  Prise is the plaintiff, right.

3        THE COURT:  Who was the manager?

4        MR. LAMPE:  There is a manager.

5        THE COURT:  In this case.

6        MR. LAMPE:  There is a manager named --

7        THE COURT:  She says as a manager, she was aware of

8 the defendant's company-wide policy, policies, and was

9 responsible for the enforcement of those policies at her

10 facility and the policies were issued from the defendant's

11 Cincinnati, Ohio headquarters and most were contained in the

12 defendant's policy and procedures binder.  Then goes on to

13 describe those.

14        So, I am not -- you know, so this, what is the one

15 that is speaking to company-wide policy?

16        MR. LAMPE:  Let me raise -- address the very point

17 that you mentioned.  She said that there are policies kept in

18 a binder.  She does not say that the policies that she is

19 about to describe were among those in the binder.

20        THE COURT:  Says most were contained.

21        MR. LAMPE:  And she goes on to describe policies.

22 She does not say they are in the binder.  There is a policy

23 that says you have to work in the community.  So, I think

24 that there is -- I think that is a little misleading.  There

25 are no written policies that reflect these five supposedly

1  unlawful policies and she -- saying she enforced those

2  policies at other her locations.

3      I would pose this question: If there is a written

4  policy everyone needs to get paid for all of their hours of

5  work and there is some unwritten company policy that says you

6  violated the written policy, what foundation is there in the

7  record that this woman, who worked at one location in the

8  Pittsburgh area, would have knowledge of these practices that

9  occurred in other locations throughout the forty states where

10  this company operates?

11      It would be different if she had a written policy

12  that said you are supposed to work off --

13      THE COURT:  But, then you will never, ever have a

14  case based on an unwritten policy.  A lot of the things may

15  be fodder for depositions and cross-examination of the

16  witness.  But, this is a person who purports, because of the

17  position that she held, to be aware of company-wide policies.

18      MR. LAMPE:  Yeah.

19      THE COURT:  So, I don't know what more -- and then

20  goes on with some specificity to talk about those and some of

21  the indications that they have.

22      MR. LAMPE:  We would submit that in a case where

23  there is a written policy that's lawful where there is no

24  production of an unlawful written policy and where there is

25  no explanation in the record for how this individual, who

1  worked in one place, supposedly had knowledge of practices

2  across the country, and that is insufficient, and it is a

3  very isolated instance.

4          And this case does line up with the other ones in

5  which notice was denied because in the context of how many

6  employees and how many states there are operations, the

7  allegations are insufficient to justify notice at this point.

8          Let me move to another point.  You mentioned the

9  class definition.

10          THE COURT:  Before you go there, you would agree

11  with me then, wouldn't you, at least as to the locale in

12  which she was operating, whether it would be Pennsylvania or

13  the areas that she would be in, as well as some of the other

14  employees that are here, that you could have class issues

15  with respect to -- you could have at least a subclass that

16  may survive?

17          MR. LAMPE:  We would say that, at the very most,

18  notice would issue for two locations, Brandt and Hirsch.

19  Those are two facilities where she was involved.

20          THE COURT:  Before we move off of that, I would

21  like to hear from the plaintiffs with respect to this

22  particular affidavit and this particular manager because this

23  is the most compelling support for the class, the nationwide

24  notification.

25          MR. THOMAS:  To the podium it is better?

18

1    THE COURT:  You don't have anything further on this
2    issue, on this affidavit?

3    MR. LAMPE:  I have more on Alderwoods, but not on
4    this one.

5    THE COURT:  On this one, right.  It is easier for
6    me if I keep the issues together.

7    MR. THOMAS:  Your Honor, I would note several
8    things.

9    First of all, the vast majority of cases, as this
10   Court has cited and held, go contrary to the very few
11   outliners on which defendants rely and, in fact, even the
12   cases on which they rely, they are patently distinguishable
13   from this case here.

14   But, let me leave that aside because I think the
15   standard has been set by the Court and we are in agreement
16   with that.

17   In terms of Alderwoods, it is not correct to say
18   that we have one manager's testimony.  We have Deborah Prise,
19   who is a manager.

20   THE COURT:  But, I think his issue -- and this is
21   what you need to focus on.  You need somebody that is going
22   to speak to company-wide things.

23   It would be one thing if you had a hundred
24   affidavits that would include several from each state or
25   locale that you would be involved with.  But, his argument

1    is, your affidavits are discretely tied to just certain

2    locations, and then the one that has the real company-wide

3    issues is Miss Prise.

4         MR. THOMAS:  Actually, that is not true.  There is

5    Miss Prise as a manager.  There is Bob Pramik, who is a

6    general market manager and a location manager.  We also have

7    Michael Lanza from Puyallup, Washington State, where I

8    heard -- where the regional manager and his manager admitted

9    the same policy existed.  We have --

10         THE COURT:  Those are the admissions that I was

11    talking about that arguably the Court could consider.

12         MR. THOMAS:  Jack Reddick from Independence,

13    Kansas, where his manager and the district manager made the

14    same admissions about company policies.

15         At this stage, where we are, without any discovery

16    and given the great bridges to the people out there, to say

17    that we have two managers directly stating that these are the

18    policies, followed up by affiants and managers in multiple

19    other locations, Kansas, Washington State, making the same

20    points, as well as all of those employees confirming that all

21    of the locations all across the country were experiencing the

22    same violations, that is well more than enough to meet the

23    lenient standards.

24         It is not the case that we need to go to each state

25    or each location and solicit an affidavit from each of them

20

1   saying that's what this is.  But, when the company managers

2   say repeatedly this is our policy and it is enforced

3   nationwide, that meets the lenient standard that is here.

4            THE COURT:  Okay.

5            MR. THOMAS:  Would you --

6            THE COURT:  That is fine.

7            MR. THOMAS:  Should I go on to any points I have or

8   step down?

9            THE COURT:  How about SCI?

10           MR. THOMAS:  SCI.  Two responses on SCI.

11           First of all, leaving aside their 10K and annual

12  report, perhaps more damaging are the additional exhibits we

13  have submitted from their own website which they refer to as

14  having employees.  You can apply for their jobs, on this

15  website to SCI jobs.  They say that we have one of the most

16  diverse and dedicated workforces in the county.  It says our

17  people, employees of SCI continually strive to exceed

18  expectations.

19           THE COURT:  That is all sort of that colloquial way

20  that holding companies often hold themselves out because they

21  all talk about we, us, our, and it would not be uncommon for

22  them to have a website that would be reflecting the same

23  kinds of things that you saw in the 10K.

24           But, as a matter of law, when we have to ask, who

25  is the employee who is going to be responsible for any FLSA

1    violations, that's what I need to look at. And at this
2    stage, I have some sufficient concerns that SCI may not be
3    the right defendant unless, you know, when you go through the
4    other tests that were articulated to see if they are a single
5    employer, you can impose that burden on them.
6           But, there is no evidentiary support for that here.
7           MR. THOMAS: Two things.
8           First of all, the standard under the Supreme Court
9    is that the FLSA -- and this is in our papers -- that a
10   broader or more comprehensive coverage of employees would be
11   difficult to frame, and that anybody who has suffered or
12   permitted to work, whose work benefits a company or
13   individual, is considered that person's employer.
14          I will be glad to brief this in more depth on the
15   joint employer issue, but it is a standard that is even more
16   liberal than the Title VII standard for consideration of who
17   the employer is, and Courts routinely say that you are.
18          THE COURT: The holding company is routinely held
19   liable just because they are the holding company?
20          MR. THOMAS: Correct. Because they suffer for or
21   permit the people to work.
22          MR. LAMPE: We completely disagree with that. As I
23   mentioned, there is a test that deals with this very
24   situation.
25          THE COURT: It's sort of like piercing the

22

1  corporate veil.  That's what I was hearing.  I don't have it

2  in front of me, but it just struck me when I was reading

3  through this, because it really wasn't briefed in any fashion

4  when the issue was raised.

5       And the response was, well, look at the 10K.  To my

6  mind, knowing something, not an extensive amount about 10K's,

7  it's just they are consolidated documents and you can't, I

8  don't think, point to someone being an employer just because

9  there is a 10K, and I think that would be the same thing for

10 a website.

11      Now, it may be evidence when you get into this

12 other issues as to how they are holding themselves out, but

13 how do they hold themselves out to these employees?  How were

14 their checks written?  Who did they understand the employer

15 to have been?  Where are the personnel directors and the bank

16 accounts?

17      These are the types of issues, and if you have some

18 evidence that would indicate that, maybe it would be enough

19 to get the initial notification going out.

20      But, on the record before the Court today, I don't

21 have that evidential base, even though it's a somewhat

22 liberal standard as I indicated, that I would be comfortable

23 in staying that I am going to send out a notice to SCI's --

24 anyone who may have been on call during that period of time.

25      MR. THOMAS:  Your Honor, if I understand what you

1   have said, I think, you will see the good news is -- at least
2   the good news for us and maybe the good news for the Court in
3   dealing with this -- it is not a piercing-the-veil standard.
4   It is a very low standard.
5           THE COURT:  I don't have that in front of me and I
6   am not prepared to rule on it and -- if a 10K is enough to
7   get you there, I would be probably surprised if that were the
8   case, but I would have to withhold judgment on that.
9           MR. THOMAS:  With Your Honor's permission, could we
10  submit supplemental briefing or a motion to reconsider on an
11  expedited fashion on the joint employer position?
12          THE COURT:  What I would do is, I would deny the
13  motion with respect to SCI, but it would be without prejudice
14  for you to file a subsequent motion if you feel that you have
15  the support to do it.
16          So, it is not going to be a reconsideration.  It
17  just would be a new motion and it would take on -- it would
18  have its own life.
19          MR. THOMAS:  Thank you, Your Honor.
20          THE COURT:  Okay.
21          MR. LAMPE:  So, back to Alderwoods then.
22          The sum and substance of the record before the
23  Court is that there are two managers.  Mr. Thomas mentioned
24  them.  There is Pramik and Prise; prise at two locations in
25  the Pittsburgh area; Pramik at two locations; one in

1  Harrisburg; the other one in Camp Hill. And that is it in

2  terms of managerial evidence in this case.

3      THE COURT: See, a manager -- and at this lenient

4  standard, you know, if the manager at that level has certain

5  knowledge of and exposure to the corporate policies on a

6  nationwide basis, that may be enough at this stage.

7      MR. LAMPE: I would just say the "if" that you just

8  said is not presented in the form of evidence before the

9  Court. There is no evidence that these two local managers

10  had knowledge of what was going on --

11      THE COURT: They said they have personal knowledge

12  because of their position.

13      MR. LAMPE: That takes us all the way back to the

14  hearing on January 31st where you said conclusory allegations

15  wouldn't be enough.

16      And I think all this needs to be looked at in the

17  context of a company whose formal pay policies are completely

18  lawful and necessary individuals. They are speaking of some

19  unwritten policy that is supposedly in effect throughout the

20  entire country.

21      How do they know that when they have only been

22  responsible for applying these practices in their own locale?

23  Our view is, there isn't sufficient evidence beyond the four

24  locations.

25      And let me move to another point, and that is the

25

1  class definition issue that you raised.  We think it's an

2  important issue.

3      When the brief was filed, the request was that

4  notice issued to these five subclasses, and we pointed out

5  that it is impossible to know which employees are within

6  these subclasses because they are built on the allegations in

7  the case.

8      And there is good authority from this Court in

9  Mueller versus CBS that indicates that a class cannot be

10  certified where you have to do a little mini-adjudication on

11  the merits to find out who is the class member.

12      There is a very practical problem here.  If you

13  order us to issue a notice, we need to know which employees

14  to issue the notice to.  And the way the class definition

15  reads is, for instance, class number one, the people in the

16  class are those people who have been required to work in the

17  community but have not been paid for that.

18      In our view, there is no one that meets that

19  definition.  That's what's in dispute in the case.

20      THE COURT:  I think the response there would be --

21  and this is a problem.  I said there had to be some

22  refinement.

23      My understanding is that the people that had

24  required that were the funeral directors around the country

25  who were hourly employers and the theory would be that it is

26

1   all of those people who worked during that period of time are
2   punitive class members.
3        MR. LAMPE:  Well, I think that would have been a
4   more reasonable position for the plaintiff to take, and I can
5   I can see that the Court might reach that view, but that is
6   not what the plaintiffs argued in their papers.
7        We raised this issue of the --
8        THE COURT:  I think someone who is an hourly
9   employee at one of these funeral homes who is doing
10  janitorial work is not going to be required to do community
11  service work.  So, I think that is the type of refinement
12  that is necessary here, although I can read enough of the
13  papers that have been prepared to discern what they are
14  really looking at.
15       MR. LAMPE:  Well, their explicit response, when we
16  pointed out the class definition problem was, if that
17  definition is wrong, we actually mean all nonexempt
18  employees.
19       THE COURT:  I don't think that is the case either.
20       MR. LAMPE:  No, Your Honor.  In fact, we would
21  encourage the Court to look at our exhibits and, in
22  particular, we have an Exhibit F, and this exhibit lists all
23  of the different nonexempt positions within Alderwoods.
24  There is twenty-five of them and there is many of these
25  positions that you have assumed.  There is grave digger,

1    grounds keeper, maintenance --

2        THE COURT:  Those people are not going to fall

3    within this, and I am not sure they are on call, those

4    people.  Maybe they are.  I don't know.

5        Let me hear from the plaintiff's side.

6        MR. LAMPE:  One other point.

7        THE COURT:  Yes.

8        MR. LAMPE:  In the chart that is Exhibit F, what we

9    have done is, we have taken the position descriptions for

10   these twenty-five positions and we put a check next to any

11   position that lines up with any of these policies that are

12   supposedly at issue in the case.

13       THE COURT:  Just for future reference, any time

14   there are going to be any lengthy documents like this filed,

15   if you could supply the Court with a courtesy copy that's

16   tabbed and marked, I would really appreciate it.

17       MR. LAMPE:  We will certainly do that, Your Honor.

18   I apologize.

19       THE COURT:  It is tough to find it here because I

20   don't have it tabbed.

21       MR. LAMPE:  The last piece of paper in our brief is

22   the summary of those position descriptions, none of the

23   nonexempt employees whose job description --

24       THE COURT:  Okay.

25       MR. LAMPE:  You are exactly right.  Look at the

1   on-call responsibility of the twenty-five positions.  There

2   are only three that have that.  There are only three that are

3   involved in selling insurance, only three that are

4   commissioned, and there are six that are involved --

5          THE COURT:  And the notice would not go out to

6   everybody, because somebody is going to get a notice, you

7   hope, gee, I am going to get a big benefit here.  If I opt

8   in, I am going to get money, but they are not going to ever

9   be in at one of those classes.

10          MR. LAMPE:  Our position is that there should be no

11   notice --

12          THE COURT:  It has to be tailored to those that are

13   affected and there is going to have to be some way to

14   identify which class they are in.

15          MR. LAMPE:  The only evidence before the Court as

16   to all of these positions, with the exception of funeral

17   director, is the evidence that we put forward.  There are no

18   affiants who are not funeral directors or assistant funeral

19   directors, and that simply is not spoken to in the record.

20          THE COURT:  They may be the bulk of the class

21   because those are the ones that are in all categories.

22          MR. LAMPE:  The funeral directors is, but a

23   fraction of the potential all nonexempt employee group, you

24   are absolutely right about that.

25          THE COURT:  It is not going to be all nonexempt

29

1    employees, it can't be, because I don't think the facts would
2    support that.
3            MR. LAMPE:  So, we think it should be four
4    locations and limited to funeral directors or funeral
5    director types as indicated on our chart here that could
6    possibly have been involved in these policies.
7            But, again, we think that, in light of the fact
8    that we have written lawful policies and we are talking about
9    such a very few, five affidavits out of over thousands and
10   thousands of employees, it's just insufficient under the
11   standards to justify any notice.  Thank you.
12           MR. THOMAS:  Your Honor, I think there is probably
13   less disagreement about this point than most of the other
14   issues in the case.
15           We don't have any desire to send notice out to
16   people who I think there were two competing -- we don't have
17   any desire to send out notice to people who do not fall
18   within --
19           THE COURT:  Who have the responsibilities which
20   would have generated these FLSA issues?
21           MR. THOMAS:  Correct.  It is not in our good or the
22   Court's.
23           The other practical problem though, in having dealt
24   with these cases many, many, many of these cases is, the
25   clock is ticking right now.  And the problem is, if we spend

30

1  years, months, weeks sorting out who could potentially be in

2  the class and who could not, the time could run out on these

3  people.

4        THE COURT:  But, you can't send it out to

5  everybody.  There got to be a practical solution here where

6  you get a list and see who had these positions during this

7  period of time and that's who the notice goes to.

8        MR. THOMAS:  The problem is, I am not sure that

9  the -- this is the bigger concern.  And the other concern is,

10  if you don't send it out to everyone who is supposed to get

11  notice, you have people hanging out there whose claims are

12  lost because of a mistake.

13        THE COURT:  There is not much we can do unless you

14  want to give a notice in a national newspaper, or something

15  like that.  But, I don't think that that is cost justified in

16  this type of case.

17        What do you want to have happen here?

18        MR. THOMAS:  What I would like to have happen is

19  notice to go to anybody who could potentially have a claim.

20        THE COURT:  If you are the defendant -- that is too

21  broad.  I mean, that's putting a terrible burden on them.

22  You have to have some -- I am sympathetic to the individuals

23  who are losing rights.

24        But, on the other hand, you can't tell a defendant,

25  at your own peril, you better notify everybody in the world

31

1  that they may have it.  You have people on your side who are

2  knowledgeable about the structuring of these entities and who

3  did what and how they did it.  And if this exhibit is

4  correct, these are the people that would get it.  And if one

5  or two are lost, you have a lot of word of mouth among these

6  people, I am sure, all around the country, or you put out

7  some notification in a journal, or something, that would

8  attract their attention, some other way to deal with that

9  concern that you have.

10        MR. THOMAS:  I think what I would suggest is this:

11  Here's another concern I have --

12        THE COURT:  I am not going to have you put a burden

13  on the defendant that is too broad-based and makes them

14  having to flail around and spend a lot of time and money when

15  it has to be more focused.

16        MR. THOMAS:  What I would propose is this:

17        First of all, I am concerned about relying on job

18  titles alone because often in these locations, you have

19  issues where the person may be listed as an embalmer.  That's

20  what their official job title is.  That's what they are coded

21  as.  But, they are, in fact, doing funeral director

22  responsibilities and always have been and sort of known for

23  doing that, but just for the sake of internal company

24  documents, they are referred to differently.

25        I think that if we did two things, one is liberally

32

1  see anybody who could be within the group and, number two,

2  make sure that the notices are posted at the funeral homes to

3  say, listen, notices have gone out to people who appear to be

4  within this group.  However, if you didn't receive a notice

5  but you were doing these type of things, we are informing you

6  that you may have a claim and you need to do something about

7  it, and put that posting up for ninety days.

8          THE COURT:  I just have to take a break because I

9  have a criminal matter -- I have to just go off the bench for

10 a moment.

11         Talk about, when I am out of here, if there is a

12 way to refine how you can identify these individuals.

13 (Court recessed at 4:40 p.m.)

14 (Court reconvened at 4:45 p.m.)

15         THE COURT:  Okay.  Please be seated.  Okay.

16         MR. THOMAS:  Your Honor, I had a chance to confer

17 briefly with my side on this, but I haven't had a chance to

18 talk the other side, but I think we may have -- let me put a

19 proposal here that may make some sense.

20         What we would be prepared to do is to talk -- speak

21 to Mr. Lampe over the next, I would say -- first, while the

22 toll is in effect, so people aren't losing their rights, we

23 have a toll in effect.

24         THE COURT:  I thought the total was over --

25         MR. THOMAS:  It started again if we are cutting

33

1   people's time off --

2         THE COURT:  I think the defendants said no to that

3   in the past and I think they would say no again.

4         My preliminary assessment -- and it is going to be

5   my final assessment -- is that a collective action notice

6   would be appropriate to go out, but I have to have an

7   appropriate class and the notice has to be appropriate.

8         I have trouble with the breadth of the parties, we

9   just talked about that, I have trouble with, how do we say

10  who is in which class, you know, the five subclasses.  The

11  notice that was attached to your form doesn't deal with any

12  of that.  It seems to talk broadly in terms of the hourly

13  employees, and all of that.

14        So, I will permit the class notification to go out,

15  but I need you to re-submit a form of notice and a

16  redefinition of the classes that is more narrowly drawn, and

17  some of the -- I just want to get to --

18        You have, like, number one for Alderwoods current

19  and former hourly employees of defendants.

20        Well, that's not going to be the case.  It is going

21  to be some discrete subset of those hourly -- it is not all

22  hourly employees.  So, it is how do you define those hourly

23  employees who would be in the community work policy?  And

24  there appear to be five categories.  So, you are going to

25  have to refine that.

1        Then you go on to say who were suffered or

2  permitted.  I think it has to be who were required because I

3  don't think it is a violation if somebody just permitted you

4  to do community work service.  I think that would be --

5        MR. THOMAS:  Tied more to the regulation.

6        THE COURT:  Right.  So, it has to be -- because

7  there is no violation if they weren't required as part of

8  their job to --

9        MR. THOMAS:  I think the regulation is encouraged.

10        THE COURT:  Okay.

11        MR. THOMAS:  We can tailor that to the regulation.

12        THE COURT:  Whatever it is.  I mean, it is

13  something where it is -- as a condition of their employment,

14  there was something that they were expected to do if they

15  were going to keep their job.  That's the way I understand

16  it, you get paid for that, if there is a violation, and the

17  same thing as with two.  And then they -- the training

18  policy, that's the same issue, and the people that would be

19  in that, and four and five.  So, those are -- all have the

20  same similar kinds of issues.

21        And then when you look at the form of the notice, I

22  didn't have attached to it the form of consent that they

23  would be -- at least my copy didn't have a consent form so we

24  could see what they would be sending back.  And the question

25  is, who sends out the notice?  You know, does that -- do you

35

1   give the notice to the defendant?

2           MR. THOMAS:  We would bear the burden of the cost

3   for that, unless they want to pay for it.

4           THE COURT:  But, you need to coordinate how you are

5   going to get the list, the mailing list, you just give that

6   to them and they certify that they sent it, however you want

7   to do it, but I need that process done, so I need a

8   restatement of the classes that comport with what I discussed

9   here today.

10          We need the revised notice, you know, that it would

11  be appropriate.  And the notice, how it is going to go.  Is

12  it going to go by mail to these individuals?  How do you get

13  the list?  Do you turn it over to the defendants?

14          You need to coordinate with the defendant so I have

15  a way of understanding that.  And then I need to see the form

16  of the consent that they are signing, that they will be

17  expected to sign as well.

18          So, the sooner you get that in, the sooner the

19  order will be able to go out, because my order won't become

20  final until I have the refined classes and the appropriate

21  form of notice that I feel is appropriate.

22          MR. THOMAS:  Your Honor, we sincerely appreciate

23  all of your efforts to issue quick decisions when I know

24  there is a lot on your docket.

25          One request, which is typically done in these

1   cases, and I request that we do it here, that is within

2   fourteen days, the sides either submit to you an agreed --

3   mutually agreed notice and form.  If that's not done --

4       THE COURT:  It would be without prejudice to the

5   other side's right to preserve -- but, I mean, they are going

6   to be objecting to what I have done here today, I am

7   assuming.

8       MR. LAMPE:  In part.

9       THE COURT:  So, if you can agree that whatever that

10  is produced is consistent with my order, it does not mean

11  that you are agreeing that I made the right decision, but if

12  you can mutually agree that this comports with what I have

13  ordered today, that would be helpful and we can move on.

14      MR. THOMAS:  If there are issues that we can't

15  agree on, both sides --

16      THE COURT:  Then you have to come back here

17  promptly.

18      MR. THOMAS:  We'd submit our notice, their proposed

19  notice so you can see the difference.

20      MR. LAMPE:  That makes sense to us.  If there is a

21  disagreement, it may go to the content or manner of

22  distribution.  We will try to work that out, both sides.

23      THE COURT:  And I am going to impose on both sides

24  an obligation to work diligently because I am finding that it

25  is the collective notice -- I will say there will be a

1   determination at the first tier that the class will be

2   conditionally certified along the lines that I described.

3   They have to be narrowly limited to those employees who would

4   fit within the work issues that were raised, and the workers

5   have to be, the classes have to be refined to reflect that

6   and to be more consistent with the regulations, and then we

7   need to work out how the notifications will go out and the

8   form of the notice has to be changed to reflect what we have

9   talked about.

10          MR. THOMAS:  Your Honor, one last issue on the

11  joint employer SCI issue.  We may be able to submit that

12  briefing to you without any additional discovery, but we

13  would request an order today that if we need limited

14  discovery on that issue, that that be expedited and begin

15  immediately and be turned around in less than fifteen days.

16          THE COURT:  It depends on what kind of volume of

17  material you are asking for.

18          MR. THOMAS:  I don't think much.  But, we have had

19  disagreements with defense counsel about whether discovery

20  can proceed.  But, we would request that the Court's

21  direction be that it be done immediately and in an expedited

22  basis.  We will try to work cooperatively with them, but we

23  would like there to be an understanding that discovery on

24  that issue is to be going forward as quickly as possible

25  since it is so important.

1          MR. LAMPE:  Your Honor recalls from the hearing in

2   January that Mr. Thomas indicated he did not need any

3   discovery and he was confident he could settle with what he

4   had --

5          THE COURT:  At least I am concerned today that at

6   SCI, that that's not the case.

7          MR. LAMPE:  If he wants to go take discovery,

8   obviously as you said in the hearing, it has to be a two-way

9   street and there can't be any parameters on how many days

10  because they don't know what we want and I don't know what

11  they want.  We need to discuss it before there is any sort of

12  restriction.

13         THE COURT:  You meet and confer on a discovery

14  plan, okay?  And find out what you are going to need, what

15  you are going to be asking for.  You should have a meet and

16  confer sometime next week as to what the parameters are.  It

17  is a two-way street when you are going down there.  That way,

18  if you feel you need some limited discovery with respect to

19  this issue that is contemplated, that can happen.

20         So, you need to do that.  And if you want to get

21  together again, if you can agree on it, you can just start.

22  If you have to know something, say what you want and how long

23  you need to take it, and the other side can respond.  We will

24  let you file something like that, but you have to notify the

25  other side that you are asking for an expedited hearing.  The

1  response turn-around should be two business days, and I will
2  try to have a hearing within a week on that.

3         So, that the sooner you get working and seeing what
4  you need to do, you know, you will be protecting the interest
5  of the parties that you are seeking to represent as class
6  members here.  But, so it is up to you really to do that.
7  So, just work together, to the extent that you can, if they
8  want discovery.

9         On the other hand, to be responding to it, you are
10 going to have to make that available as well.

11        MR. THOMAS:  Certainly, Your Honor.

12        MR. LAMPE:  We just would reserve the right to
13 object to having to turn anything around in two days.  If
14 there is a brief we have to file within two days of getting
15 their brief, it may not be possible.  We may be asking for
16 additional time to do that.

17        THE COURT:  It is going to depend.  But, I think
18 that should be the goal.  If they can get something out two
19 days from now and you can respond in two days, I think if it
20 is somewhat short, that is fine.  We can have a more full
21 dialogue and a telephone conference if necessary.

22        MR. THOMAS:  Your Honor, those issues --

23        THE COURT:  That is the goal, is what I am saying.
24 I am not ordering that that is the case.  That would be the
25 goal.  Because if they are going to ask for an expedited

1    hearing, you have to ask for it.

2         MR. LAMPE:  Right.

3         THE COURT:  If you feel you can't do it, you

4    respond that way.

5         THE COURT:  Okay?  So, we need to set a time for

6    the argument on the motion to dismiss.  There just wasn't

7    enough time to get all of this in today.

8         How about June 8th at two o'clock?

9         MR. THOMAS:  That's fine with us, Your Honor.

10         MR. LAMPE:  That is fine with us, Your Honor.

11         THE COURT:  That's a Friday at two o'clock.  Okay?

12    And so I will look for you, and it is so ordered on the

13    record today that the findings that I made with respect to

14    the evidentiary materials that support the plaintiffs'

15    motion, as well as the lack thereof with respect to

16    Alderwoods, and the lack thereof with respect to SCI, the

17    Court will conditionally certify the class as reflected on

18    the record today, and it's subject though to the plaintiffs'

19    filing with the Court the revised class description, a

20    revised notice that comports with what the Court has said

21    today, as well as a plan for notice which would include how

22    the notice is going to go out, and I will need to see the

23    consent form that's an exhibit to the file.

24         Anything else I overlooked?

25         MR. LAMPE:  Your Honor, I wanted to ask one

41

1    question.

2            Have you reached a conclusion yet about the

3    geographic scope?

4            THE COURT:  The geographic scope, I am going to say

5    is national.  I think the -- I am sufficiently -- at this

6    stage of the proceedings, applying the liberal standard

7    looking at the managers who are professing to have personal

8    knowledge in their positions of the corporate policies, the

9    Court finds at this stage that that is sufficient.

10           MR. THOMAS:  Thank you, Your Honor.

11           THE COURT:  Okay?  It is all subject to

12   reconsideration at the second stage.

13           MR. LAMPE:  Yes, Your Honor.  Thank you.

14   (Court adjourned on Thursday, April 19, 2007, at 4:30 p.m.)

15

16                    *  *  *  *  *

17           I certify that the forgoing is a correct transcript

18   from the record of proceedings in the above-entitled matter.

19

20                              S/Michael D. Powers
                                Michael D. Powers
21                              Official Reporter

22       *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

23

24

25

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al.,

      Plaintiffs,

        vs.

ALDERWOODS GROUP, INC., et al.,

      Defendants.

Civil Action

No. 06-1641

Transcript of proceedings on September 6, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge

APPEARANCES:

For the Plaintiffs:
      J. Nelson Thomas, Esq.
      Patrick J. Solomon, Esq.
      Charles H. Saul, Esq.
      Liberty J. Weyandt, Esq.
      Justin M. Cordello, Esq.

For the Defendants:
      Matthew W. Lampe, Esq.
      Amy E. Dias, Esq.

Court Reporter:
      Richard T. Ford, RMR, CRR
      619 U.S. Courthouse
      Pittsburgh, PA 15219
      (412) 261-0802

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

2

1          (Proceedings held in open court; September 6, 2007).

2          THE COURT:  This is a hearing in Prise versus

3     Alderwoods Group, Inc., Civil Action No. 06-1641.  The hearing

4     concerns a question as to whether or not notice should be sent

5     to employees of Service Corporation International.

6          Will counsel please enter your appearance.

7          MR. THOMAS:  Yes, Your Honor, Nelson Thomas, Dolin,

8     Thomas & Solomon.

9          MR. LAMPE:  Matt Lampe, Your Honor, Jones Day, on

10    behalf of the Defendants.

11         THE COURT:  I notice a number of other people are

12    present here.  Are the two that have just entered your

13    appearance the ones who will make the argument?

14         MR. THOMAS:  Yes, Your Honor.

15         THE COURT:  Would the others just like to be on the

16    record so we know who is present.

17         MR. SOLOMON:  Patrick Solomon for the Plaintiffs.

18         MR. SAUL:  Charles Saul of the firm Margolis

19    Edelstein for the Plaintiffs.

20         MR. CORDELLO:  Justin Cordello.

21         MS. WEYANDT:  Liberty Weyandt from the firm

22    Margolis Edelstein.

23         MS. DIAS:  Amy Dias for the Defendant.

24         THE COURT:  Thank you.  The briefing of the parties

25    is, quite frankly, like two ships passing in the night because

3

1    the views of the law are just dramatically different from each
2    side.  So I just want to take a moment and reset the framework
3    for this.
4            The Plaintiffs are requesting that a collective
5    action notification be sent as a result of alleged violations
6    of the Fair Labor Standards Act, the FLSA.  The subclass
7    proposed as to the Defendant that is at issue here -- because
8    one notification has already gone out with respect to the
9    Alderwoods Group, Inc., I might be mistaken on that, there are
10   some other issues coming up on that.  The question concerns
11   the ultimate parent of the organization, which is Service
12   Corporation International.
13           The class would be current and former hourly
14   employees of Defendants who were suffered or permitted to
15   perform work by handling calls and other work related issues
16   after hours, but not compensated by Defendant for such work
17   performed after the workday off-site from the funeral home --
18   the on-call pay policy.
19           The Plaintiffs are asserting that the Defendant --
20   we will call the Defendant SCI for ease of reference -- is
21   their employer under the FLSA.  The Defendant says no, it is a
22   mere holding company and has no employees.
23           The problem I had was that the Plaintiff in the
24   briefing set forth a lot of factors which, if they were true,
25   would implicate an employment/employer relationship, which is

1   a very broad concept for purposes of the Fair Labor Standards
2   Act.
3           But Defendant has set forth affidavits, which have
4   not been contradicted to this Court's knowledge, showing that
5   those allegations are simply not true.
6           Just to give a preview, the definition of employer
7   under the FLSA, as set forth in 29 United States Code,
8   Section 203(d), provides that an employer includes any person
9   acting directly or indirectly in the interest of an employer
10  in relation to an employee.
11          The courts have to look at an economic reality test
12  and a totality of the circumstances test that the courts look
13  at, and the courts have noted that there's a broad definition,
14  it's broader than what would normally be the case in a
15  traditional common-law sense.  Those cases are Rutherford Food
16  Corp. versus McComb, 331 US 722, 1947; Zavala versus Wal-Mart
17  Stores, Inc., 393 Fed Supp. 2d 295, District of New Jersey,
18  2005.  There are a number of others that stand for that same
19  proposition.
20          The cases -- and I have read all of the seminal
21  Supreme Court cases that were decided, as well as the other
22  cases cited by the Plaintiffs in this situation, and also the
23  regulation which is set forth in 29 Code of Federal
24  Regulations, Section 791, and I think it's (b) -- I have to
25  get my copy of that.  The one that has the applicability in

1    this case is (b)(3), but I did want to quote for purposes of
2    the record the exact language of (b)(3), which I had printed.
3    Can you reprint that for me?

4              THE LAW CLERK:  I will.

5              THE COURT:  Thank you.

6              I also read the cases that were cited in the
7    WESTLAW version of the Code of Fed Regulations that are cited
8    under that section.  Quite frankly, the cases that are
9    implicated here mainly deal with individuals who are
10   shareholders or officers of a corporation.  As the
11   shareholder, they may have been the majority shareholder or
12   controlling shareholder.  The courts have found those
13   individuals in certain circumstances to be employers.

14             But there was generally some affirmative conduct
15   that was involved, direct involvement in the operations of the
16   business such that the courts could find some relationship,
17   more than just being a shareholder.  That there was direction
18   and control actually being exercised.

19             When I looked at the cases that the Plaintiff has
20   cited, the cases of the Plaintiff generally dealt with
21   situations where there was some affirmative action being taken
22   by the person sought to be held as the employer.

23             For example, in the Alba versus Loncar case, which
24   was 2004 WESTLAW 1144052, Northern District of Texas,
25   May 20, 2004, the Court there was considering whether an

1    individual's control over the employees of a corporation were
2    sufficient to warrant a finding of an employer/employee
3    status.
4         The Court there found that there were certain
5    managerial responsibilities and substantial control over the
6    terms and conditions of the employment.  So they were looking
7    for operational control in some sense.  I don't think it had
8    to be complete, but it had to be substantial.
9         Indeed the seminal decision of the Supreme Court,
10   and they all seem to be fairly old cases going back into the
11   1940s and the most recent being the 1973 decision of the
12   Supreme Court in Falk versus Brennan, 414 US 190.  In that
13   case there was a partnership that was providing management
14   services for a number of real estate apartment complexes, and
15   the Supreme Court there found that even though the individuals
16   may have been paid by the separate -- at issue may have been
17   paid by the separate apartment complexes, the partnership
18   could actually be an employer as well, and what they looked
19   for was -- this is on Page 431 -- they looked at the extent of
20   the managerial responsibility at each of the buildings, which
21   gave that partnership substantial control of the terms and
22   conditions of the work of the employees.  So they were looking
23   really to the actions.
24        When you look at the regulation that's been raised
25   here, there were two things that I wanted to bring to bear

1    here.  The first is that the Plaintiffs cite Section 791.2(a)
2    for the proposition that there has to be some kind of a
3    showing that they are completely disassociated.  But if you
4    read that phrase in context, what the entire sentence says is:
5    If all the relevant facts establish that two or more employers
6    are acting entirely independently of each other and are
7    completely disassociated with respect to the employment of a
8    particular employee who during the same work week performs
9    work for more than one employer, each employer may disregard
10   all work performed by the employee for the other employer.
11        So in (a) they are not dealing with a
12   parent/subsidiary relationship we have here; they were talking
13   about someone who works part-time for one entity in a week and
14   part-time for someone else in a week.
15        The question is when can you lump those two
16   employers together, and the Court in that circumstance -- I
17   mean the regulation in that circumstance was looking for some
18   kind of complete disassociation because of the nature of how
19   the work was being performed during the same week.  So I think
20   you can't take that completely disassociated just out of
21   context in terms of what was the concern being addressed in
22   Section 791.2(a).
23        Then when you get to (b), because I think this is
24   the one that is more directly relevant here, because what
25   they're concerned with in (b) is a benefit.  It is where the

8

1   employee performs work which simultaneously benefits two or
2   more employers or works for two or more employers at different
3   times during the work week, a joint employment generally --
4   relationship generally will be considered to exist in
5   situations such as.
6           So at best what you have here is, arguably,
7   performing work which will simultaneously benefit two entities
8   because you could argue going up the chain that whoever is
9   working at the lowest tier subsidiary, there could be some
10  indirect benefit flowing up to the parent level.
11          Then when you get to subpart (1), it has to deal
12  with if there is an agreement to share, and I don't think
13  there is any issue here that there is any sharing of the
14  employee.
15          The second aspect of that regulation is where one
16  employer is acting directly or indirectly in the interest of
17  the other employer in relation to the employee.  And I think
18  that's probably the management kind of services.  If you are
19  stepping in and providing management services and you're doing
20  that in relation to the particular employer, maybe you could
21  be caught up in the parameters of the regulation.
22          The final one, which is the only one I think that
23  has some, arguably, applicability here, is (3), where the
24  employers are not completely disassociated with respect to the
25  employment of a particular employee.  And I don't know what

1    completely disassociated means in this context, and it could

2    mean that you're providing some services for one, some

3    services to another.

4         But it goes on to say that:  May be deemed to share

5    control of the employee, directly or indirectly, by reason of

6    the fact that one or more employer controls or is controlled

7    by or is under common control with the other employer.

8         The cases that are cited there are the same kinds

9    of cases that the Plaintiff was citing where there was some

10   individual generally who was actually providing the hands-on

11   management and was interfacing and making decisions, directs

12   decisions, relevant to the particular employee or employees in

13   question.

14        So these were not the cases where you have a parent

15   company and a subsidiary, and that's the sole relation that

16   you have, and you don't have the parent actually managing the

17   business of human relations or anything else like that.

18        So that's why when you first read the Plaintiffs'

19   brief, the Plaintiff is making all the arguments, they're

20   providing human relations services, they're providing the

21   benefits, they're providing policies, all of that type thing.

22        The response by the Defendant shown by affidavit

23   said that was not the case.  That there were other entities.

24   So there may be other employers here who may be appropriate to

25   be brought in, but it doesn't appear that it would be SCI if

1    SCI as the corporate board is not doing something overtly to
2    be involved in the management or the operational control of
3    the businesses.
4            So that's the problem that I see here for the
5    Plaintiffs.  So I will hear from the Plaintiffs first.
6            MR. THOMAS:  Your Honor, you -- I understand your
7    position on that, and I don't think -- I will leave it be.  I
8    understand where you are coming out on that.  I think that
9    probably what makes the most sense is for us to, if the test
10   is going to be focusing on the operational control, they have
11   certainly listed those entities in their papers and we will
12   either file a new complaint or amend this one to bring those
13   in, and then we will tee up the issue on that score.
14           THE COURT:  Right.  One other thing I wanted to
15   mention, when you look at the definition in Section 203(d)
16   where it defines the person, and it says any person acting
17   directly, so that in itself connotes there has to be some
18   affirmative action.  It can't be just totally passive.
19           There are a number of lower court decisions where
20   you have just the pure parent/subsidiary relationship where
21   the parent really is a pure holding company and has no
22   operational functions of any kind.  The lower courts that have
23   considered this view that as not being an employer for
24   purposes of this statute.
25           MR. THOMAS:  That's fine.  We can bring in those

1    individuals potentially and we will see where we go.  But the
2    operational people have been identified and the operational
3    entities, and that may be a better approach, and we have that
4    in their papers and I think that would be the next step.
5                    THE COURT:  So I will deny this motion.  And I
6    think also that would give me the grounds to grant the summary
7    judgment at this stage without prejudice if you are going to
8    continue to try -- are you going to continue to try to keep
9    SCI in?
10                    MR. THOMAS:  Yes, Your Honor, and maybe I would
11    make the motion now for leave to amend the complaint to add in
12    the -- at least the entities they have identified in their
13    papers, which are the SCI Eastern Market Support Center LLP,
14    SCI Western Market Support Center, Houston Market Support
15    Center, and the SCI Funeral and Cemetery Publishing -- or
16    Purchasing Cooperative.
17                    So we request that that be deferred until we make
18    our motion to amend and motion for notice for those people.
19    We may be adding in individuals or different entities, I don't
20    know.
21                    THE COURT:  Because that seems to be what they are
22    looking for.  In all the cases -- and I did read the
23    Defendants' cases and the Plaintiffs, and particularly the
24    Supreme Court cases, and they were all looking for some kind
25    of exercise of control, not just the mere power to control,

1   but somebody that was actually an entity or a person that was

2   actually, you know, involved with the employee.

3            MR. THOMAS:  And I think from their papers you have

4   that there.  They say these were the ones that did the HR

5   functions, these are the ones that interfaced.  If it is

6   simply a question of putting in the new party that has that,

7   we request leave to amend and put those in.

8            THE COURT:  Okay.  I will hear from the Defendant.

9            MR. LAMPE:  Well, since the Court has decided to

10  deny the motion, I am not going to speak to that.

11           I think the two issues that you want to hear from

12  me on is, first of all, you raised the point about the summary

13  judgment motion.

14           THE COURT:  Right.  I specifically said it wouldn't

15  be argued today here.  But in light of their statement that

16  they're willing to -- or they want to amend the complaint, I

17  just don't know if that should be denied without prejudice at

18  this time because I don't know -- it is really difficult when

19  you have serial summary judgments and that type of thing.  So

20  that for judicial economy would be my question where to go

21  from here.

22           MR. LAMPE:  The two named Plaintiffs, Prise and

23  Rady, they never worked for SCI or even an affiliate of SCI.

24  During the time that they were employed by Alderwoods,

25  Alderwoods was a competitor.

1        THE COURT:  So they would have to amend the
2   complaint to bring in another Plaintiff too then.
3        MR. LAMPE:  Right.  We think as to SCI, the named
4   Defendant in this case, these two named Plaintiffs couldn't
5   possibly have a claim against them.  You have already
6   determined that SCI is not an employer, and even if it were --
7        THE COURT:  At least they haven't presented
8   anything to get the notification.
9        MR. LAMPE:  Correct.  But even if they were an
10  employer, they certainly wouldn't be Ms. Prise and Rady's
11  employer because those two people left Alderwoods before there
12  was any association of any kind between Alderwoods and SCI.
13  We think -- we do think it makes sense to dismiss SCI from the
14  case.  There certainly aren't any facts that would suggest the
15  two named Plaintiffs could have any kind of a claim against
16  them.
17        Then as to the request to amend the complaint, I
18  think -- I would need to look to see whether we would have
19  grounds in the law to oppose that.  I know the rules on
20  amendments are fairly liberal, but I am also sort of struck by
21  the fact that we were together back in April and Mr. Thomas
22  raised back then the fact that he needed to take some
23  discovery to find out what the interrelationships were among
24  these various corporate entities.  We agreed to that, and they
25  have taken no discovery.  A half a year has now passed and it

1    seems to me that the time to investigate which corporate
2    Defendants should be brought into the case was a half a year
3    ago, not now.  This case is coming up on a year old and we're
4    talking about trying to bring two completely separate
5    corporations into this lawsuit.
6           This class period, if you go back three years, to
7    the vast majority of this class period, Alderwoods and SCI are
8    competitors.  There is no relationship at all.  As of November
9    of last year they became related.  But there's no request for
10   injunctive relief in this case.  This is a damages case.
11          Again, I would want to research this and be able to
12   formally respond, but I think our inclination would be it is
13   too late to try to continue to dredge up some SCI entity to
14   drag into this case which is an Alderwoods case.
15          THE COURT:  If at the time -- I think what they are
16   saying is if at the time in issue, unless you have some other
17   Plaintiffs that come up later, their argument is that these
18   Plaintiffs don't have anything to do with any SCI entity.
19          MR. THOMAS:  Your Honor, that was addressed in our
20   summary judgment papers, which is --
21          THE COURT:  I haven't really spent a lot of time on
22   that.
23          MR. THOMAS:  Exactly.  I was not prepared today to
24   be dealing with that based on the Court's decision.
25          However, what we point out in those papers is there

1   is currently over 50 Plaintiffs in this case who are -- and

2   actually substantially more -- who are SCI employees and who

3   under --

4          THE COURT:  I think what you need to address is

5   whether you need additional -- you can amend to add Plaintiffs

6   as well.  But if they are not -- if they don't have the same

7   basis, I mean, if this all happened under Alderwoods and SCI

8   just inherited them because of their acquisition, they may

9   have inherited the liabilities through the Alderwoods entity

10  that they acquired and they may have to be indirectly

11  financially responsible.  But as a separate entity, maybe they

12  don't have a role to play here.

13          MR. THOMAS:  Actually, Your Honor, when I

14  referred -- there is over 500 Plaintiffs in this lawsuit.

15  Under the FLSA, they are actually party Plaintiffs, they

16  actually become parties, so there is actually over 500 party

17  Plaintiffs here.  Over 50 of those are direct SCI employees.

18  So I think that Mr. Lampe's point is not well-founded in terms

19  of this.  We do have over 50 SCI Plaintiffs.

20          That said, based on what I just heard, we will have

21  to evaluate all of our options.

22          I guess another -- I too am concerned about -- I

23  want to get this case moving forward.

24          THE COURT:  Right.

25          MR. THOMAS:  It may be easier for us, and we will

16

1    evaluate everything, I don't know what we conclude, we may
2    conclude just simply filing another complaint against SCI and
3    name these people officially, we may choose that.  We may
4    speak to Mr. Lampe to see if he consents.  We may bring a
5    motion to amend.
6            THE COURT:  Is there any concern the same activity
7    is still continuing?
8            MR. THOMAS:  Yes, Your Honor, it is.  Again, the
9    statute of limitations of people is dropping off and we are
10   very concerned about that.  So, again, much like Mr. Lampe, I
11   don't want to answer today not having done the research on the
12   statute of limitations and the parties and the best course,
13   but I think that really whether it's by -- this issue is not
14   going to disappear, it is either going to be by separate
15   complaint or motion to amend, we will get this teed up as soon
16   as possible so we can get these employees -- and, you know,
17   the Defendants, although they say they are concerned about the
18   length of the case, they have knocked off a third of their
19   liability by the length that has gone on already and we want
20   to put that -- we want to put that to an end now.  So we are
21   going to move as quickly as we can so that these employees
22   shouldn't be bearing the cost of what has --
23           THE COURT:  So this motion will be denied on the
24   notification for the reason that there wasn't sufficient
25   evidence presented to the Court to implicate an

1    employer/employee relationship with SCI.  And I will cite the
2    standards of the Falk decision and -- there is a recent
3    Maryland case, Glunt versus GES Exposition Services, Inc., 123
4    Fed Supp. 2d, 847, District of Maryland, 2000.  There's a
5    couple other decisions like this that are cited.  Those are
6    the lower courts I said that have considered this, just a
7    simple parent/subsidiary relationship.

8         But if you wish to amend the complaint, you will
9    file a motion to do that and it can be responded to in due
10   course.  If you want to meet and confer to try to expedite
11   this, it isn't good for either party to have these issues
12   languishing.  So I think we need to move on from there so that
13   the case can progress.

14        MR. THOMAS:  Your Honor, we would like to get, once
15   the motion is made, as expedited a schedule as possible to get
16   that done.  Procedurally how would you prefer us to request
17   when we file the motion that there be --

18        THE COURT:  Ask for an expedited hearing.  File a
19   separate motion asking for an expedited hearing and a
20   shortened briefing schedule.  The other side has to have an
21   opportunity to respond.  So if you ask for an expedited
22   briefing schedule and an expedited hearing, I will see those
23   as they come in.

24        MR. THOMAS:  Thank you, Your Honor.
25        THE COURT:  Okay.  Anything further?

18

1          MR. LAMPE:  Not from me, Your Honor, thank you.

2          THE COURT:  Thank you all.

3      (Record closed).

4

5

6

7                    *      *      *      *      *

8

9

10

11              C E R T I F I C A T E

12          I, Richard T. Ford, certify that the foregoing

13  is a correct transcript from the record of proceedings in the

14  above-titled matter.

15  S/Richard T. Ford    _____

16

17

18

19

20

21

22

23

24

25

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al.,

     Plaintiffs,

    vs.

ALDERWOODS GROUP, INC., et al.,

     Defendants.

Civil Action

No. 06-1641

_____

Transcript of proceedings on November 15, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge

APPEARANCES:

For the Plaintiffs:
    J. Nelson Thomas, Esq.
    Patrick J. Solomon, Esq.
    Charles H. Saul, Esq.
    Annette M. Gifford, Esq.
    Michael J. Lingle, Esq.
    Kyle T. McGee, Esq.

For the Defendants:
    Matthew W. Lampe, Esq.
    Amy E. Dias, Esq.

Court Reporter:
    Richard T. Ford, RMR, CRR
    619 U.S. Courthouse
    Pittsburgh, PA  15219
    (412) 261-0802

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1          (Proceedings held in open court; November 15, 2007).

2               THE COURT:  This is a hearing on various motions

3     that have been filed in the Prise versus Alderwoods Group,

4     Inc., Civil Action 06-1641.

5               Will counsel please enter your appearance.

6               MR. THOMAS:  Your Honor, Nelson Thomas on behalf of

7     the Plaintiffs.

8               MR. SOLOMON:  Patrick Solomon on behalf of the

9     Plaintiffs.

10              MR. SAUL:  Charles Saul on behalf of the

11    Plaintiffs.

12              MS. GIFFORD:  Annette Gifford on behalf of

13    Plaintiffs.

14              MR. LINGLE:  Mike Lingle on behalf of Plaintiffs.

15              THE COURT:  Who is going to be arguing for the

16    Plaintiffs?

17              MR. THOMAS:  Your Honor, I will be, Mr. Thomas.

18              THE COURT:  Thank you.

19              MR. LAMPE:  Matt Lampe, Your Honor, from Jones Day,

20    for the Defendants, and I will be doing the argument.

21              MS. DIAS:  And Amy Dias as well for the Defendants,

22    Your Honor.

23              THE COURT:  Thank you.  There were a number of

24    motions that have been filed.  The first motion has to do with

25    the motion for summary judgment that was filed by the

1   Defendants.  It essentially related to whether or not SCI is a

2   proper Defendant.

3           It strikes the Court that that matter is really

4   moot now in terms of the ultimate parent group.  Not -- they

5   are not seeking to pursue SCI as the ultimate parent.

6           MR. LAMPE:  I think, Your Honor, that in the

7   amended complaint that they are proposing to file SCI is

8   listed as a Defendant.  So I don't think that --

9           THE COURT:  I thought it was all different

10  subsidiaries.

11          MR. THOMAS:  Your Honor, we do have SCI listed as a

12  Defendant in the amended complaint, but we are not doing it --

13  we are not seeking to hold them liable as a shareholder.

14          THE COURT:  What's the purpose --

15          MR. THOMAS:  Your Honor, it would be as a successor

16  in interest; however, I know this Court has ruled on that

17  issue.

18          THE COURT:  Right, I have already ruled on it.  I

19  will make that ruling that they cannot be a Defendant, I will

20  grant the motion for summary judgment.

21          MR. THOMAS:  Your Honor, in the Prise versus

22  Alderwoods discrimination matter you also said that discovery

23  would be liberally granted.  We would just ask that the --

24  their removal from the amended complaint or their dismissal be

25  under the same terms that was in the discrimination case,

1    which, Your Honor, I believe was --

2        THE COURT:  That will be true.  It will be without

3    prejudice.  If you find some basis through the discovery that

4    would warrant reconsideration, the Court will consider that at

5    the appropriate time.

6        So the Court will grant the motion for summary

7    judgment and it will be without prejudice at a later time to

8    raise additional information if you find things in discovery.

9        MR. THOMAS:  Thank you, Your Honor.

10        THE COURT:  Okay.  So the motion for summary

11    judgment will be granted as stated.

12        The motion to amend the complaint -- I am going to

13    take up some of the matters that I think are less

14    controversial first.  The motion to amend the complaint, there

15    are several claims that are being amended.  One would be to

16    include the -- include allegations relating to a violation of

17    the FLSA by requiring employees to obtain certifications and

18    participate in training.

19        I don't see a problem with adding that expansion of

20    the allegations in the complaint.  So that would be my

21    preliminary assessment on that.  There are some other

22    corrections and revisions to the complaint along those lines

23    that would be permitted.

24        Another thing is to include all of these opt-in

25    Plaintiffs.  The Defendant has filed a -- Defendants have

1    filed a motion saying that all of those opt-in Plaintiffs,

2    some of them are not proper.  But really for the Court at this

3    stage to get into that, it would be akin to having a summary

4    judgment motion and it would be very -- we are going to be

5    moving forward with this case one way or the other, so I would

6    deny that motion without prejudice to raise this issue on who

7    the proper Plaintiffs are at a time when summary judgment

8    motions are filed.

9         MR. THOMAS:  Your Honor, you granted the motion to

10   amend on that issue.

11        THE COURT:  I will let you put all of those

12   Plaintiffs in.  I don't see any great prejudice.  For me not

13   to do that now, I would have to have a hearing, because we are

14   dealing with other people's rights and there may be some other

15   discovery that has to be done with respect to those

16   individuals, and at this stage of the proceedings I think it's

17   best just to move on without prejudice to deal with those

18   individuals subsequently.

19        MR. LAMPE:  Does that mean then you are also

20   denying the separately filed motion to strike?  Are we at that

21   point yet?

22        THE COURT:  Yes, because I think those are less

23   controversial.  It seems to me the big issues are who should

24   be the Defendants in this case.

25        MR. LAMPE:  If I could just have a few words on the

1    issue.

2         THE COURT:    Sure.

3         MR. LAMPE:    We really think that a number of these

4    Plaintiffs that are identified in our motion to strike aren't

5    even colorably, arguably, possibly capable of being in this

6    case.    For instance, in the list of the people whose claims

7    are time barred, the first person on the list was terminated

8    in 1995, Adams I think his name is.    So those sorts of

9    people --

10        THE COURT:    This is the kind of thing, quite

11   frankly, that counsel, if you are doing, you know, diligence

12   going through here, you should meet and confer over these

13   things.    If people don't want to be here, they should be

14   eliminated.

15        MR. THOMAS:    Your Honor, we have sent to Mr. Lampe

16   over 42 stipulations of dismissal.    They have not been

17   returned to us.    As we find people, we send them to him on

18   almost a weekly basis.    We have not heard from him on any of

19   those.    They have not been signed.

20        We would be glad to meet and confer on any of it.

21   But we have been doing our best to get people out of the case

22   who don't belong here.

23        THE COURT:    Why should you move to include them as

24   a named Plaintiff?

25        MR. THOMAS:    I don't believe we are moving to

1   include.  We are only moving to include people who we -- if we
2   have information they should not be included, we are asking --
3              THE COURT:  Why don't you meet and confer.  Why
4   don't you go through the list of the ones you think are
5   absolutely not proper and if -- because it's not that they are
6   excluded.  If they turn out to be properly named and they have
7   properly opted in, they are in.  It is a question of whether
8   we have this expansive listing.
9              MR. THOMAS:  They opted into the lawsuit, I am not
10  saying we moved to dismiss them from the caption of the case.
11  Those people who we sent --
12             THE COURT:  Why would they get to be a Plaintiff
13  here -- why should we list them as a Plaintiff?
14             MR. THOMAS:  We are not asking they be listed as
15  Plaintiffs.  We ask they be dismissed because they filed
16  opt-ins, so we have --
17             THE COURT:  They will not be listed as a Plaintiff.
18  That's what I am talking about.
19             MR. LAMPE:  That is a very, very small number.  Of
20  the people they you sent us dismissal entries for, there are
21  only eight that are subject to our motion.  What I would
22  propose is, to Mr. Thomas, he needs to tell us for everybody
23  listed in our motion, does he in fact feel he has a claim that
24  could surpass Rule 11 standards.
25             THE COURT:  So you have eight individuals.

1          MR. LAMPE:  There's eight individuals among the

2  hundreds that we are asking to be struck that Plaintiffs have

3  actually sent us a dismissal entry for.  There are hundreds

4  still outstanding that we think never worked for either of the

5  Defendants.

6          THE COURT:  You can have an ongoing process here to

7  go through those; and as some people should not be in here,

8  then there can be just a simple motion to strike them from the

9  caption.

10          MR. THOMAS:  Your Honor, the problem is the list

11  that the Defendants filed with this Court, which they

12  represented as true and accurate, turns out it wasn't.  They

13  included people on that list who they had already said were

14  within the time period and held the job titles.

15          THE COURT:  I think we need to move this case

16  forward and it is not -- it isn't going to end the case.  I

17  don't think it is going to duly expand it.  I would have to

18  sit through and hear -- have some kind of an evidentiary

19  hearing essentially on each one of those people.  I just don't

20  think it's efficient use of the Court's time.

21          I think you do need to meet and confer in good

22  faith.  People that should not be included in the caption

23  shouldn't be there.  People should be dismissed from the case

24  as you go forward and you will have an ongoing duty to meet

25  and confer over that.

1           MR. THOMAS:  Thank you, Your Honor.

2           MR. LAMPE:  I just have one idea, you might find

3    this to be a good idea.

4           THE COURT:  Okay.

5           MR. LAMPE:  We would propose that within a certain

6    set period of time, to be determined by the Court, the

7    Plaintiffs have to tell us for all the people that are subject

8    to our motion, that they have had a conversation with the

9    person and can say, satisfactory with Rule 11, that in fact

10   that person has a claim, has a timely claim.  Because I think

11   that would weed out a great number of people that are

12   otherwise in the case, we have retention obligations with

13   respect to them.  And if they haven't even had a conversation

14   with these clients yet, I think there should be a deadline

15   imposed on them to come forward yes or no.  Not ultimately if

16   they are going to agree we have a good argument on the merits,

17   but if they are going to continue forward with those people.

18   The ones they want to continue forward with, we can have

19   discovery.  But two-thirds of them probably will not and then

20   they can be dismissed and we can move on.

21          MR. THOMAS:  Your Honor, we believe that there

22   certainly is a process that needs to occur here, conferring in

23   good faith.  We need to see the employee records, we need to

24   get contact info.

25          THE COURT:  Why don't you meet and confer and set

1  up a timetable where this can be accomplished and the Court

2  will approve the timetable for a review of each of the

3  Plaintiffs listed in the caption.

4          MR. LAMPE:  Thank you, Your Honor.

5          MR. THOMAS:  Thank you, Your Honor.

6          THE COURT:  So I will deny that motion to strike

7  without prejudice because what we will do is the parties are

8  required to meet and confer to set forth a process and a

9  timeline to complete the process for review of the named

10  Plaintiffs to determine whether each of the Plaintiffs has a

11  colorable claim to move forward with.  You can file that with

12  the Court.  When do you think, right after Thanksgiving, would

13  that be good, because we are coming on the heels of

14  Thanksgiving?

15          MR. LAMPE:  I think that sounds like a good date,

16  the earlier the better from our perspective.

17          THE COURT:  How about by the 29th if you could have

18  that filed just by what time frame you will use and what

19  process.

20          MR. THOMAS:  The other thing, Your Honor, it may be

21  helpful to have that part of a proposed discovery plan for the

22  case in general.

23          THE COURT:  Right.

24          MR. THOMAS:  With that still -- because the case

25  has sort of moved in different directions, we have not

1   submitted that to the Court.  My proposal would be that the
2   parties sit down and formulate a joint discovery plan on all
3   outstanding issues, including this.
4           THE COURT:  That would make sense to me by the
5   29th.  Because we have to start moving the case forward.
6           MR. LAMPE:  We agree with that.
7           THE COURT:  So it will be the whole -- you will
8   have to have that refinement in there about the process for
9   identifying the Plaintiffs that don't belong.
10          MR. THOMAS:  Thank you, Your Honor.
11          THE COURT:  So that takes two of those.  The other
12  two motions relate to motion to certify the class for
13  expedited collective action notification.
14          I don't know if you are familiar with the
15  Bell Atlantic versus Twombly case.  Have you reviewed that
16  case from the Supreme Court?
17          MR. THOMAS:  Yes, Your Honor.
18          THE COURT:  In that case the Supreme Court
19  clarified I think what has been an issue in the federal courts
20  for many years.  That is, what is the import of Federal Rule
21  of Civil Procedure 8, which requires that a plain statement be
22  filed.  That's the threshold requirement.
23          Now, the Supreme Court in Bell Atlantic Corporation
24  versus Twombly, 127 Supreme Court 1955, decided May 21, 2007,
25  stated that -- these are things that have been recognized for

1   a number of years -- that:  While a complaint attacked by a
2   Rule 12(b)(6) motion to dismiss does not need detailed factual
3   allegations, a Plaintiff's obligation to provide the grounds
4   of his entitlement to relief requires more than labels and
5   conclusions, and a formulaic recitation of the elements of a
6   cause of action will not do.

7           It also went on to state, quote:  The pleading must
8   contain something more than a statement of facts that merely
9   creates a suspicion of a legally cognizable right of action on
10  the assumption that all the allegations in the complaint are
11  true, even if doubtful in fact.

12          So you can move forward even if you have some
13  doubt, but you have to have enough factual allegations to
14  raise a right to relief above a speculative level.

15          And the Court referred specifically to its decision
16  in Conley versus Gibson, 355 US 41, 1957.  In that case, it
17  was famous for the statement that a complaint should not be
18  dismissed for failure to state a claim unless it appears
19  beyond doubt that the Plaintiff can prove no set of facts in
20  support of his claim which would entitle him to relief.

21          That no set of facts has been interpreted I think
22  by many district courts over the years to mean you can conjure
23  up any number of things and almost any claim could pass muster
24  on a rule to dismiss.

25          I think what is particularly telling about the

1    Twombly case is the statement that the Court -- that the Court
2    made:  That phrase about no set of facts is best forgotten as
3    being -- and it stated that this famous observation has earned
4    its retirement.  The phrase is best forgotten as an
5    incomplete, negative gloss on an accepted pleading standard:
6    Once a claim has been stated adequately, it may be supported
7    by showing any set of facts consistent with the allegations in
8    the complaint.

9          So what the Court is doing now is saying, we look
10   for plausibility, are there enough factual allegations set
11   forth in the complaint that go beyond mere factual
12   allegations, you know, which are disguised legal conclusions,
13   so you have to look for some plausibility in the actual
14   factual allegations from which the Court could determine that
15   there is a claim for relief which is stated.

16         Now, the Court noted:  This is not Rule 9, you
17   don't have to a heightened pleading standard.  However, you do
18   have to have enough in the complaint that the Court can apply
19   an appropriate standard.

20         And I have to say, going through this complaint,
21   this proposed amended complaint with respect to the new
22   Defendants, it doesn't meet the standard, it's just replete
23   with conclusion after conclusion after conclusion.  I went
24   through it and when you go through paragraph by paragraph
25   going through there, it's all essentially saying:  At all

1    relevant times -- this is Paragraph 45 -- SCI and SCI managing
2    entities are or have been Plaintiffs' employers.
3         It goes on and make conclusions that, in
4    Paragraph 50, that they comprise a single integrated
5    enterprise.  I think that's a disguised legal conclusion,
6    there is no factual support for that.
7         Just paragraph after paragraph saying that they
8    exercise control, they do this, they do that.  But it is
9    stated as really a very broad-based conclusion.  There's no
10   factual underpinning from which the Court could find any
11   plausible claim here.
12        I am always very troubled because, as pointed out
13   by the Defendants in there opposition to the filing of this
14   amended complaint, Alderwoods was acquired by SCI.  Many of
15   the Plaintiffs, especially the named Plaintiffs here, never
16   worked when SCI was in control of Alderwoods, even if we
17   assume there could be some control.  So you have an extended
18   period of time where we are going to be looking at what
19   Alderwoods was doing -- I will put Alderwoods in quotes, I
20   will call it the old Alderwoods was doing.  So you have all
21   these facts relating to Alderwoods.
22        In the complaint it talks about at all relevant
23   times SCI was in control of them.  That simply can't be true
24   from what the Court has seen from the other motion to dismiss
25   where the merger documents were attached.  There isn't any

1   question here about the point in time at which Alderwoods was

2   acquired by SCI.  You cannot have a successor in interest

3   during those periods except for the entity that was acquired,

4   what I will call the new Alderwoods.

5        So you have the Alderwoods Group as a stand-alone,

6   you have SCI as a stand-alone entity and group of companies.

7   SCI acquired Alderwoods through a triangular merger where

8   Alderwoods wound up being a wholly owned, essentially a

9   wholly -- the new Alderwoods was a wholly owned subsidiary of

10  SCI.  That new Alderwoods is a proper Defendant, they are a

11  successor in interest because it just changed shareholders,

12  it's the same entity, it's the same business operation.  So

13  that is proper, yes.

14       To the extent actions continued in the new

15  Alderwoods like in the old Alderwoods and you had any

16  individuals directly involved in that continuation, you know,

17  involved in that action, so you can say these individuals who

18  are the employers for FLSA purposes because they had hands-on

19  involvement in that or if another subsidiary of SCI for that

20  subsequent conduct specifically related to the Alderwoods

21  entity had some of that type of involvement, maybe they could

22  be if the Defendant's conduct is ongoing to some of the

23  Plaintiffs.

24       So beyond that, to pluck out all of these

25  subsidiaries, I work for SCI, and -- and I am particularly

1   worried about the individuals.  Because the individuals, I
2   looked at some of the references to them and they say they
3   worked for SCI for years prior to the acquisition of
4   Alderwoods.  So how could they have been involved at all
5   relevant times with Alderwoods?  It doesn't make any sense to
6   me.

7          And you can't be a successor in interest in the way
8   I think you want them to be to pick up all of these other
9   entities.

10          So I just can't see, one, under Twombly, I don't
11  think it passes muster.

12          Two, under -- even if it would, I don't see under
13  Rule 20 that you can have this joinder where you have really
14  discrete transactions involved.  What SCI was doing prior to
15  the acquisition with its subsidiaries and other subsidiaries,
16  it just doesn't mesh.  You are going to be too confusing here.

17          If you want to bring a separate lawsuit against
18  what SCI was doing with its other -- or I guess any SCI entity
19  that was operating outside of the Alderwoods context, you can
20  bring another lawsuit.  I just don't know that it's proper
21  here.

22          MR. THOMAS:  Your Honor, if I can -- I understand
23  your concerns.  If I can make several comments.

24          First of all, you picked up the allegations at
25  Paragraph 45, and I understand what you are saying about

1   those.  However, from Paragraphs 7 through 43, that's where we

2   lay out the factual allegations involving the different

3   entities.  So, for instance --

4              THE COURT:  But this all gets back to, these are

5   SCI people, they had nothing to do during the bulk of the

6   time.  How does that work?

7              MR. THOMAS:  Your Honor, maybe we need to be --

8   maybe I need to be making this clearer in the complaint.  The

9   violations -- there are industry-wide practices in the funeral

10  home industry.  Both Alderwoods and SCI were engaging in

11  similar pay practices in the industry.  We know that from our

12  conversations with SCI people.

13             THE COURT:  It doesn't cut it, though, because the

14  conduct in question has to do with what Alderwoods was doing.

15  Whether SCI was doing the same thing doesn't make them liable

16  for the Alderwoods people for that period of time.

17             MR. THOMAS:  It doesn't, but there are SCI people

18  in this case who never worked for Alderwoods.

19             THE COURT:  They shouldn't be here.

20             MR. THOMAS:  And, Your Honor, here is the issue --

21  and I will be glad to split the cases up.  But when we were

22  doing the case for case management purposes, our view is --

23  and if the Court disagree, I don't have any problem.  We

24  ourselves have wrestled with the issue, is it better to be

25  done in one lawsuit or separate lawsuits.

1      The reason we concluded that one lawsuit made more
2   sense was that you have people, you take an Alderwoods
3   employee who became employed by SCI. If there were two
4   lawsuits, they would file claims in one and then in the other.
5   That's okay. But our thought was it's easier if you have an
6   employee who has continued in both and who has violations
7   under both, that they be in the same lawsuit together.
8      I would also say --
9      THE COURT: That would be true if that was all just
10  the same Alderwoods people who then became employed by SCI.
11  But now you are picking up all these other SCI people who had
12  no connections with Alderwoods.
13     MR. THOMAS: There are probably three universes of
14  employees, at least three universes of employees we are
15  dealing with:
16     People who worked for SCI who never worked for
17  Alderwoods and have their own violations and who now are
18  working for SCI side-by-side with people who used to work with
19  Alderwoods and they both have the same violations, so you have
20  that universe.
21     You have the universe of people who worked for
22  Alderwoods, but never became employed by SCI.
23     And you have the universe of people who worked for
24  Alderwoods and then ended up working for SCI.
25     Our thought had been and the reason we are putting

1    those together is at least at the initial stage it is easier
2    for the case to be managed with all of those together.
3    However, as we noted in our papers, if the Defendants' concern
4    is and the Court's concern is that those should be in separate
5    lawsuits, the problem then becomes -- the solution for that is
6    a motion to sever and to say, there should be an SCI suit --
7         THE COURT:  There is not and SCI suit now, so you
8    just need to file a new one.
9         MR. THOMAS:  Correct.  Well, yes, I guess with
10   SCI's dismissal, correct, if the motion to amend is not
11   granted, that's correct.
12        But then I would say to Your Honor, I would be
13   glad -- we are glad to file them as separate lawsuits and
14   really --
15        THE COURT:  See, I think it would just be so
16   confusing for the Court and for the jury because people will
17   be talking out of both things.  What we need to focus on here,
18   because that's the thrust of this, what was Alderwoods doing.
19   There may be some continuation issues with SCI; and if you
20   could pin the continuation for Alderwoods to SCI, to some
21   other entity other than the new Alderwoods, that's something
22   that the Court could consider later.
23        But right now I think you have to focus on
24   Alderwoods because that's what it is and you can't have
25   Alderwoods being tainted by what SCI was doing at the same

1  time with separate employees and totally unconnected entities.

2          MR. THOMAS:  That is fine, Your Honor, we will file

3  a separate lawsuit against SCI.  Would Your Honor prefer that

4  that -- for the -- we have the Alderwoods --

5          THE COURT:  See, we have to get this case moving.

6          MR. THOMAS:  Correct.  Let's assume there is a

7  person who has opted into the Alderwoods action, an Alderwoods

8  Plaintiff.  They have worked at Alderwoods.  They then worked

9  with the SCI employing entities.  Would Your Honor think that

10 from a confusion and case management perspective it is better

11 to take the post-merger claims and those would be in the

12 lawsuit against SCI or a totally separate lawsuit?  Or -- what

13 would be the -- we are glad to do it any way --

14         THE COURT:  I think anybody that has continued in

15 the new Alderwoods, they should all stay together.

16         MR. THOMAS:  Okay.

17         THE COURT:  People who have never worked for

18 Alderwoods should not be included in this.

19         What's the thought of the Defendant?

20         MR. LAMPE:  We agree completely with that.

21 Alderwoods continues.  It's still Alderwoods.  It was before

22 the merger and after.

23         THE COURT:  You can find some of this is

24 continuing, you can have some good factual grounds to bring in

25 an individual who is currently employed and through one of the

1    SCI entities where you can have a plausible claim against

2    their employer, I will consider that if you can file a motion

3    to amend that has the sufficient factual background that takes

4    it beyond the realm of the conclusions.

5         MR. THOMAS:  What I would -- Your Honor, at that

6    point, just so I'm sure I am not going to do something that

7    confuses things more, at that point you will have in the

8    Alderwoods lawsuit, because it does continue and these

9    individuals that we have named would be -- we would seek to

10   add them, those individuals will now be named in two lawsuits.

11   One is the Alderwoods and continuation --

12        THE COURT:  I am not going to permit them at this

13   stage to be named in this lawsuit because I don't see enough

14   facts in here to bring them in.  So I am not going to permit

15   the amendment to bring up the additional Defendants, whether

16   they're the corporate entities or the individuals.  But it's

17   going to be without prejudice if through your discovery you

18   can discern that there are some facts or something that would

19   give rise to a proper amendment that could be made.

20        MR. THOMAS:  The amendment, Your Honor, we know

21   enough already to know the practices are continuing when they

22   have gone over to SCI, so we will be adding those SCI

23   individuals.  So those SCI individuals and those entities will

24   be in two lawsuits.

25        THE COURT:  I am going to remind you when you talk

1   about somebody being an employer, you have to talk about

2   somebody hands-on.  Somebody at a higher level, just because

3   they are the CEO, they have control over everything, that

4   would mean every CEO through every chain or subsidiary of

5   every corporation in America is going to be a Defendant in one

6   of these cases.  That's not what is contemplated.  You are

7   talking about somebody who is hands-on, that has -- that is

8   involved.  Am I mistaken on what the law is?

9            MR. THOMAS:  Your Honor, generally CEOs of

10  companies are almost always found to be employers.  That is, I

11  think -- I have yet to see a case where a CEO was not found to

12  meet --

13           THE COURT:  The CEO of Alderwoods, if they have

14  some --

15           MR. THOMAS:  If they have an active management of

16  the company, they are not a figurehead CEO, but actively

17  managing the company --

18           THE COURT:  We are talking about the CEOs of all of

19  these other entities you are trying to bring in.

20           MR. THOMAS:  But also too, I mean, I believe -- we

21  can cite the cases and we will go through that.  I understand

22  your concerns about a CEO.  Certainly in terms of the Western

23  Market Support Center, Eastern Market Support Center, they

24  have said that all the HR functions flow to them, they are

25  separate corporations, I believe that those certainly meet the

1  active hands-on.  We have the director of HR, active hands-on
2  management.  I guess the CEO and other --
3           THE COURT:  The active hands-on management, that is
4  a conclusion.  So you have to have, what did they do.
5           MR. THOMAS:  We have their affidavits saying that
6  Eastern Market Support Center administered all HR
7  administrative functions for employees in that area.  I think
8  that's more than a conclusion, that's an affidavit from them
9  saying that's what they did.  So that would be our basis for
10  it.  That would be our basis.
11           That's fine, we will file the new complaint against
12  SCI --
13           THE COURT:  I think you need to meet and confer.
14  You will probably have the same counsel on the other side too.
15  So you can try to achieve some efficiencies and economies in
16  terms of doing discovery.  But I have to try to keep the cases
17  separate because this one has Alderwoods, the old and the new.
18  The other one would just have whatever SCI entity would be
19  appropriate.
20           MR. THOMAS:  And particularly, Your Honor, that's
21  why, because of discovery, among other things, that's why we
22  thought it would be better, not at trial or post-discovery --
23           THE COURT:  You can consolidate things for purposes
24  of discovery, but they have to be discrete cases.  You can
25  certainly meet and confer about that.  But we have to move

1    this case forward.  This is an '06 case.  We are now coming to
2    the end of '07.  It doesn't get any better and you haven't
3    really started -- when are you going to have the amended
4    complaint filed?

5              MR. THOMAS:  I would think by the 29th as well we
6    would try to have an amended complaint in and probably try to
7    file a new complaint by then as well, maybe two new
8    complaints.

9              THE COURT:  Okay.  So then the answer should be due
10   20 days after the filing.

11             MR. THOMAS:  Your Honor, we would move immediately
12   for notice --

13             THE COURT:  Mr. Lampe, is that right?

14             MR. LAMPE:  Yes, Your Honor, 20 days would be fine.

15             THE COURT:  Do you wish to be heard about the other
16   issues the Court said would be okay to amend?

17             MR. LAMPE:  No, Your Honor.

18             THE COURT:  Okay.

19             MR. THOMAS:  Your Honor, we will refile the SCI
20   notice motion immediately upon --

21             THE COURT:  So the amended complaint will be filed
22   on the 29th.  Your discovery plan, the 26(f) plan will be
23   filed on the 29th.  We will have a conference to schedule the
24   discovery, let's pick a date for that so we can schedule that
25   all right now.  Can we do that at 5 o'clock on December 5th?

1          MR. LAMPE:  That day, Your Honor, I am going to be
2     on the west coast.
3          THE COURT:  Okay.  How about the 10th at 5 o'clock?
4          MR. LAMPE:  That works fine for me, Your Honor.
5          THE COURT:  I am sorry, let me check.
6          MR. THOMAS:  Your Honor --
7          THE COURT:  You can't do it at that time?
8          MR. THOMAS:  I have an appearance in federal court
9     that day.
10          THE COURT:  At 5 o'clock?
11          MR. THOMAS:  That morning.  But to get down here
12     might be tough.  I could certainly try.
13          THE COURT:  You are in town here?
14          MR. THOMAS:  No, the one I have the oral argument
15     for is in Rochester.
16          THE COURT:  Let's do another date then.  Just a
17     second.  We can do this by phone call too.  We have seen each
18     other enough now, I don't need to worry about whether the
19     lawyers are talking and we can set up discussions for
20     settlement.
21          MR. THOMAS:  That will be fine then.
22          THE COURT:  We will do telephone for everyone.
23     Also, this is the type of situation where the Court at this
24     stage would say, have the parties talked seriously about
25     mediation or an alternative dispute mechanism?  That's going

1   to be part of our discussions in getting ready for the

2   Rule 26(f).  So really think about how that should come about.

3          New cases that are filed in January will all be

4   subject to mandatory ADR, the Court has approved that.  So we

5   are really intent upon having parties speaking as early as

6   possible to see if there can be an amicable resolution.  So

7   talk seriously about what vehicle would be appropriate in this

8   case.

9          We will do it 5 o'clock on the 10th.  We will do it

10  by conference call, that way we won't be delaying things.

11         And you should start implementing your discovery

12  plan as soon as you have agreed on it.  Don't wait for the

13  Court to order it, you can start your discovery.  You could

14  have had discovery prior to this, but I understand there

15  hasn't been a lot done.

16         So the motion for collective action, the Court is

17  not going to approve, that's moot because the Court did not

18  permit the amendment.

19         MR. THOMAS:  Your Honor, could we get a schedule in

20  place because we will be moving against SCI on the same,

21  largely the same affidavits and same basis for the new

22  lawsuit.  Could -- we can file that motion probably

23  simultaneously with the complaint on the 29th, and their

24  answer and their response to that 20 days later?

25         MR. LAMPE:  I think it is completely inappropriate

1    to talk about the schedule for a motion in a case that hasn't
2    even been filed yet.
3         THE COURT:  Well, what I am going to ask you to do
4    is meet and confer.  You are going to be filing that.  As soon
5    as you file it, you should be talking with the other side
6    about this and you will be filing your motion for expedited
7    hearing on the notice.  And the Court will set a schedule, if
8    that is filed, for them to respond to that and we will have a
9    hearing.  It will probably be sometime in early January will
10   probably be about the best that will happen, just from a sense
11   of timing.
12         MR. THOMAS:  Thank you, Your Honor.
13         THE COURT:  Okay.
14         MR. THOMAS:  Very good.
15         THE COURT:  Anything else to come before the Court?
16         MR. LAMPE:  Not from us, Your Honor.
17         THE COURT:  Thank you.
18         MR. THOMAS:  Thank you.
19         (Record closed).
20
21              C E R T I F I C A T E
22         I, Richard T. Ford, certify that the foregoing
23   is a correct transcript from the record of proceedings in the
24   above-titled matter.
25   S/Richard T. Ford    _____

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE and HEATHER RADY on behalf of themselves and all employees similarly situated, | |
| Plaintiffs, | Civil Action No. 06-1641 |
| v. | Judge Joy Flowers Conti |
| ALDERWOODS GROUP, INC. and SERVICE CORPORATION INTERNATIONAL, | |
| Defendants. | |

## DECLARATION OF JUDITH M. MARSHALL

I, Judith M. Marshall, do hereby declare and state as follows:

1.      I am over 21 years of age, have personal knowledge of the facts set forth in this declaration, and could testify to them competently if called to do so.

2.      I am currently employed by SCI Funeral & Cemetery Purchasing Cooperative, Inc. in the position of Senior Legal Assistant. I have held this position since January, 2003.

3.      As Senior Legal Assistant, I have served as Corporate Secretary for SCI Funeral & Cemetery Purchasing Cooperative, Inc. As part of my job duties, I am familiar with the corporate structure of Service Corporation International ("Service Corp"), which is the ultimate parent company of my employer. Based upon my own personal knowledge, Service Corp is a holding company that has no employees.

4.      As a holding company without any employees, Service Corp does not provide direction or issue policies and procedures to its subsidiary companies. It does not have a human resources function. Rather, day-to-day human resources services and support for individual

1

locations are provided by three separate companies – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., and SCI Houston Market Support Center, L.P. Each of these entities has a Management Services Agreement with the locations in their region of the country that states that they will provide all executive, management, administrative, accounting, data processing, and human resources services for the locations. Consistent with the Management Services Agreement, these entities are responsible for fielding questions related to human resources issues for the companies for which they provide services. In turn, each of these companies has entered into a separate contract with SCI Funeral & Cemetery Purchasing Cooperative, Inc. to provide additional human resources services and support for Service Corp's subsidiaries.

5.    Service Corp also does not distribute any employee handbooks or manuals, nor has it sponsored any employee benefit plans within the time frame of this lawsuit, or provide any services to its subsidiaries. Service Corp has no payroll system. Service Corp does not have any management, or control over the labor relations of its subsidiaries. Service Corp is not responsible for, and plays no role in, hiring and terminating any employees.

6.    Service Corp does not provide training to employees of its subsidiaries and affiliated companies. Rather, on-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with the various human resources providers – SCI Eastern Market Support Center, L.P., SCI Western Market Support Center, Inc., SCI Houston Market Support Center, L.P., and SCI Funeral & Cemetery Purchasing Cooperative, Inc. Service Corp also does not provide Dignity University training programs – Dignity University training is provided by SCI Funeral & Cemetery Purchasing Cooperative, Inc.

2

7.    Service Corp does not issue communications to employees of its subsidiaries and affiliated companies. The weekly newsletter "Frontline," is a publication of SCI Funeral & Cemetery Purchasing Cooperative, Inc. (A copy of "Frontline" is attached hereto as Ex. A.) Likewise, the "Global Village" intranet site also is operated and maintained by SCI Funeral & Cemetery Purchasing Cooperative, Inc. Moreover, while I understand that Plaintiffs claim that Service Corp communicated to employees through e-mails from "President Tom Ryan," Tom Ryan is not an employee of Service Corp, but rather an employee of SCI Executive Services, Inc. Mr. Ryan holds the title of President and Chief Executive Officer of Service Corp

8.    I am aware that four individuals have submitted affirmations in this case asserting that they were non-exempt employees of Service Corp. Consistent with my statements above, none of these individuals were Service Corp employees. Rather, Johnny Coleman was employed by SCI Kansas Funeral Services, Inc.; James Stickle was employed by SCI Arizona Funeral Services, Inc.; James Stark was an employee of SCI Washington Funeral Service, Inc.; and Scott Gullett was an employee of SCI Funeral Services of Florida, Inc. These entities are just four of approximately 180 Service Corp subsidiaries and affiliated companies nationwide that directly own and operate funeral service locations.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

July 5, 2007

Judith M. Marshall

3

**EXHIBIT E**

1      IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
on behalf of themselves and all other
employees similarly situated,

                    *Plaintiffs,*

v.

ALDERWOODS GROUP, INC. and
SERVICE CORPORATION
INTERNATIONAL,

                    *Defendants.*

Civil Action No.

Judge:

COMPLAINT-CLASS ACTION
JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

      **AND NOW** come Plaintiffs Deborah Prise and Heather Rady, on behalf of themselves

and all others similarly situated, by and through their attorneys, Margolis Edelstein, Charles H.

Saul, Esquire, and Liberty J. Weyandt, Esquire, and file the following Class Action Complaint:

## I.      INTRODUCTION

      1.     This is a proceeding for declaratory relief and monetary damages to redress the

           deprivation of rights secured to Named Plaintiffs Deborah Prise and Heather Rady

           individually, as well as all other employees similarly situated, under the Fair

           Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); and

           other laws of the various States in which defendant does business.

## II.      JURISDICTION AND VENUE

      2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C.

           1343 (3) and (4) conferring original jurisdiction upon this Court of any civil

           action to recover damages or to secure equitable relief under any Act of Congress

providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring

jurisdiction of any civil action arising under any Act of Congress regulating

interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201,

and under 29 U.S.C. § 216 (b).

3.    This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant

to 28 U.S.C. §1367.

4.    Venue is appropriate in the Western District of Pennsylvania since some of the

unlawful acts alleged were committed in this district and plaintiffs reside in this

district.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

## III.    CLASS ACTION ALLEGATIONS

5.    The claims arising under the state wage laws set forth above are properly

maintainable as a class action under Federal Rule of Civil Procedure 23.

6.    The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.    The class consists of current and former employees of defendants who were

suffered or permitted to work time for which they were not compensated,

including time for which premium pay was owed but not paid.

8.    The class size is believed to be over 50 employees.

9.    The Named Plaintiffs will adequately represent the interests of the class members

because they are similarly situated to the class members and their claims are

typical of, and concurrent to, the claims of the other class members.

10.    There are no known conflicts of interest between the Named Plaintiffs and the

other class members.

11.    The class counsel, Margolis Edelstein, is qualified and able to litigate the class members' claims.

12.    The class counsel is experienced in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

13.    Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' practice of not paying nonexempt employees for all hours worked and/or statutory overtime for hours worked over 40 per week violates Pennsylvania State law and the state laws of the various other states in which defendants do business.

14.    The class action is maintainable under subsections (2) and (3) of Rule 23(b) because plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## IV.    PARTIES

### A.    Defendants

15.    At all relevant times, Defendants Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI") has suffered or permitted the plaintiffs to perform work for them.

16.    At all relevant times, Defendants Alderwoods and SCI have been plaintiffs' employers.

17.    Upon information and belief, Alderwoods, through its shareholders, has adopted the merger agreement by and between Alderwoods and Defendant Service

Corporation International ("SCI") (collectively, "Merged Entities" or "Defendants").

18.   Upon information and belief, the Merged Entities, under the merger agreement, continue business operations in substantially the same form as before the merger.

19.   Upon information and belief, the Merged Entities, under the merger agreement, continue to use substantially the same workforce as before the merger, with substantially the same supervisors and same working conditions.

20.   Upon information and belief, the Merged Entities, under the merger agreement, provide essentially the same services as before the merger and use the same facilities, equipment and method of proving services.

21.   Upon information and belief, thus, SCI is a successor-in-interest to Defendant Alderwoods's liability.

22.   Upon information and belief, the Merged Entities, under the merger agreement, operate interrelated business operations.

23.   Upon information and belief, the Merged Entities, exercise central control of labor relations.

24.   Upon information and belief, the Merged Entities operate under common management.

25.   Upon information and belief, the Merged Entities have common ownership and financial control.

26.   In light of the economic realities of the Merged Entities' enterprise, defendants constitute joint, single, and/or successor employers of plaintiffs for purposes of

the federal and state laws.

27.     Collectively, all of defendants named herein and all of their funeral service

locations comprise a single, integrated enterprise, as they perform related

activities through common control for a common business purpose.

28.     Upon information and belief, SCI, under the merger agreement, exercises

complete dominion and control over Alderwoods and their funeral service

locations.

29.     SCI, Alderwoods and their funeral service locations constitute alter egos of the

other.

30.     At all relevant times, defendants have suffered or permitted plaintiffs to perform

work for them. At all relevant times, Alderwoods' and SCI's funeral service

locations have been plaintiffs' employer.

31.     The Class Members are jointly employed by Alderwoods and SCI and their

funeral service locations; and/or Alderwoods and SSI are successor employers of

each other's employees.

32.     Business operations of the funeral service locations are centrally controlled by

Alderwoods and SCI.

33.     At all relevant times, Alderwoods and SCI maintained centralized control of

employment relations.

34.     At all relevant times, the human resource functions of the funeral service locations

report directly or indirectly to Alderwoods and/or SCI.

35.     In addition to centralized control of employment relations, Alderwoods and SCI

exercises common management of their various funeral service locations.

36.     Further, Alderwoods and SCI own all of their funeral service locations and exercise financial control over the business operations of those locations.

37.     Alderwoods is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202 and does business in the Western District of Pennsylvania.

38.     Service Corporation International is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019 and does business in the Western District of Pennsylvania.

39.     Defendants are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

**B.      Plaintiffs**

***Named Plaintiffs***

40.     Named Plaintiff Deborah Prise is a resident of the Commonwealth of Pennsylvania and resides within this judicial district.

41.     Named Plaintiff Heather Rady is a resident of the Commonwealth of Pennsylvania and resides within this judicial district.

***Class and Collective Action Members***

42.     The class and collective action members ("Class Members") are those employees of defendants similarly situated to Named Plaintiffs who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

**V.      FACTUAL BACKGROUND**

43.    Named Plaintiffs and the other Class Members worked for defendants and were

not paid their regular or statutorily required rate of pay for all hours worked and

were not paid at time and one-half for hours they worked over 40 in a week.

44.    Defendants' policy and/or practice was to not compensate Named Plaintiffs and

Class Members for work it suffered or permitted the Named Plaintiffs and Class

Members to perform.

45.    Defendants knew plaintiffs were supposed to receive such wages, however,

defendants willfully failed to pay for all hours when Named Plaintiffs and Class

Members worked.

46.    Defendants' practice is to be deliberately indifferent to these violations of the

statutory overtime requirements.

47.    The failure to pay overtime is willful.

48.    Examples of defendants' policies and practices to deprive the Named Plaintiffs

and Class Members of their earned wages and wage premiums are set forth below:

a.    **Subclass A:** Defendants implemented a "Community Work Policy." Under
the policy, defendants suffered or permitted their employees to perform
"Community Work" so as to increase revenues for defendants. Defendants did
not compensate the employees for such time spent in Community Work in
furtherance of the employer's business under the "Community Work Policy."

b.    **Subclass B:** Defendants implemented an "On Call Pay Policy." Under the
policy, employees were suffered or permitted to perform work by handling
calls and other work related issues after normal business hours, but defendants
would not compensate employees for work performed outside the regular
workday, off-site from the funeral home.

c.    **Subclass C:** Defendants policy required that certain hourly employees train
for and become licensed insurance agents. Defendants did not pay for the
training, test taking and continuing education requirements for those positions
despite suffering or permitting employees to perform such work.

d.    **Subclass D:** Defendants implemented a "Pre-Needs Appointment Policy."

Defendants suffered or permitted employees to meet with clients to discuss
pre-need purchases. To the degree that such appointments were beyond the
employees' schedule, the employees were suffered or permitted to continue
the appointments, but were not to be paid for such time worked under the
"Pre-Needs Appointment Policy." Defendants' management would
sometimes attempt to justify this policy on the grounds that the employee
would likely receive a commission if the client purchased a pre-needs product.

e.  **Subclass E:** Defendants implemented a "Meal Break Deduction Policy."
Under the policy, defendants no longer paid for lunch breaks. Defendants did,
however, suffer and permit its employees to perform work during such meal
breaks, but pursuant to defendant's "Meal Break Deduction Policy" time spent
on meal "breaks" was still to be deducted from the employee's pay even when
defendants suffered or permitted work to be performed during such "breaks."

f.  **Subclass F:** Defendants implemented a "Pre-Approval for Overtime Pay
Policy." Under this policy, defendants only permitted payments for overtime
if the overtime was pre-approved. Defendants suffered or permitted their
employees to work overtime and therefore, the employees were entitled to
overtime payments. However, defendants refused to make the legally required
payments because the time was not "pre-approved" as required under the "Pre-
Approval for Overtime Pay Policy."

g.  **Subclass G:** Defendants implemented an "Unrecorded Work Time Policy."
Under this policy, defendants suffered or permitted plaintiffs to perform work,
but directed that such work not be recorded. Defendants then refused to pay
for the time worked under the "Unrecorded Work Time Policy" because, even
though defendants knew that such time had been worked, it had not been
"recorded."

h.  **Subclass H:** Defendants policy was to not include all remuneration (such as
bonuses and commissions) in the calculation of the plaintiffs' overtime.

49.  Defendants also failed to make, keep and preserve adequate and accurate records

of the employment of Named Plaintiffs concerning their wages, hours and other

conditions of employment.

50.  More specifically, the records kept by defendants failed to adequately and

accurately disclose among other things, hours worked each work day, the total

hours worked each work week and/or the total overtime compensation for each

work week.

## COUNT I
**FLSA**

51. The preceding paragraphs are incorporated herein as if fully set forth herein.

52. Defendants willfully violated their obligations under the FLSA and are liable to

plaintiffs.

## COUNT II
**FAILURE TO MAINTAIN PROPER RECORDS**

53. The preceding paragraphs are incorporated herein as if fully set forth herein.

54. Defendants violated provisions of the FLSA by failing to make, keep, and

preserve adequate and accurate records of the employment of Named Plaintiffs

concerning their wages, hours and other conditions of employment; more

specifically, the records kept by defendants failed to adequately and accurately

disclose among other things, hours worked each work day, the total hours worked

each work week, and/or the total overtime compensation for each work week and

are liable to plaintiffs.

## COUNT III

**BREACH OF CONTRACT**

55. Plaintiffs reallege the above paragraphs as if fully restated herein.

56. Defendants willfully violated their obligations under the state laws of Alabama,

Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia,

Idaho, Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan,

Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New

Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania,

Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia,

Washington, and West Virginia and are liable to plaintiffs.

## COUNT IV
## STATE WAGE AND HOUR LAWS

57.    Plaintiffs reallege the above paragraphs as if fully restated herein.

58.    Defendants willfully violated their obligations under the wage laws of the states in

which defendants do business including; Pennsylvania Wage Law including, but

not limited to, PMWA and PWPCL; Alaska Law including, but not limited to, the

Alaska Wage and Hour Act; Arizona Wage Law; Arkansas Wage Law including,

but not limited to, the Arkansas Minimum Wage Act;  California Law, including,

but not limited to, the California Labor Code; Colorado Wage Law;  Connecticut

Wage Law; Illinois Wage Law; Indiana Wage Law; Kansas Law including, but

not limited to, the Kansas Minimum Wage and Maximum Hours Act; Maryland

Wage Law; Massachusetts Wage Law; Michigan Wage Law; Minnesota Fair

Labor Standards Act; Montana Wage Law; Nebraska Wage Law; Nevada Wage

Law; New Hampshire Wage Law including, but not limited to, New Hampshire

Minimum Wage Law; New Mexico Wage Law including, but not limited to, New

Mexico Minimum Wage Law; New York Labor Law; North Carolina Law

including, but not limited to, the North Carolina Wage and Hour Act; Ohio Wage

Law; Oregon Wage Law; Puerto Rico Law including, but not limited to, the

Puerto Rico Working Hours and Days Act; Rhode Island Wage Law; Washington

Wage Law; and West Virginia Wage Law and are therefore liable to plaintiffs.

## COUNT V
## UNJUST ENRICHMENT

59. Plaintiffs reallege the above paragraphs as if fully restated herein.

60. Defendants willfully violated their obligations and have been unjustly enriched to

the determinant of plaintiffs and others similarly situated for worked performed

for defendants under the common laws and state laws of Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho,

Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan,

Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New

Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania,

Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia,

Washington, and West Virginia and are liable to plaintiffs.

## COUNT VI
## FRAUD AND DECEIT

61. Plaintiffs reallege the above paragraphs as if fully restated herein.

62. Defendants willfully violated its obligations by committing fraud against plaintiffs

and others similarly situated under the common laws and the state laws of

Alabama, Alaska, Arizona, Arkansas, California (including the California Unfair

Competition Law, California Business and Professions § 17200), Colorado,

Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska,

Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio,

Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina,

Tennessee, Texas, Virginia, Washington, and West Virginia and are liable to

plaintiffs.

## COUNT VII
## QUANTUM MERUIT

63.    Plaintiffs reallege the above paragraphs as if fully restated herein.

64.    Defendants willfully violated their obligations by failing to pay plaintiffs for the

reasonable value of the services performed by plaintiffs for defendants under the

common laws and the state laws of Alabama, Alaska, Arizona, Arkansas,

California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana,

Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi,

Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North

Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island,

South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia and

are liable to plaintiffs under quantum meruit.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

65.    Plaintiffs reallege the above paragraphs as if fully restated herein.

66.    Defendants willfully violated their obligations under the common laws and the

state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia by misrepresenting to plaintiffs that they would be fully compensated for all services performed and are liable to plaintiffs.

**COUNT IX**
**NEGLIGENCE**

67.   Plaintiffs reallege the above paragraphs as if fully restated herein.

68.   Defendants willfully violated their obligations under the common laws and the state laws of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia by negligently failing to properly compensate plaintiffs and are liable to plaintiffs.

**WHEREFORE**, plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award of the value of plaintiffs' unpaid wages;

(c)   liquidated, compensatory, consequential and punitive damages;

(d)     an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e)     an award of pre- and post-judgment interest; and

(f)     such other and further legal or equitable relief as  this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact.

Respectfully Submitted,

MARGOLIS EDELSTEIN

Date: 12/8/06

___/s/  Charles H. Saul_____
Charles H. Saul, Esquire
PA ID No. 19938

___/s/ Liberty J. Weyandt_____
PA ID No. 87654
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256
Attorney for Plaintiffs

**EXHIBIT F**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY,
*on behalf of themselves and all other employees
similarly situated,*

                                        *Plaintiffs,*

                    v.

ALDERWOODS GROUP, INC. and SERVICE
CORPORATION INTERNATIONAL,
                              *Defendants.*

**AFFIRMATION**

Civil Action No. 06-1641
Judge Joy Flowers Conti

I, **Annette Gifford,** under penalty of perjury depose and say:

1.    I am associated with the law firm Dolin, Thomas & Solomon LLP, and I make this affirmation in support of plaintiffs' motion to amend the complaint.

### Plaintiffs' Proposed First Amended Complaint – Collective Action

2.    Plaintiffs' proposed First Amended Complaint – Collective Action is attached hereto as **Exhibit A**.

### Current Opt-In Plaintiffs

3.    As of the current date, more than 600 individuals having opted-in to this collective action by filing a consent form with the Court.

4.    Of those plaintiffs, more than 50 individuals who have been interviewed by my office have informed us that they worked directly for defendant Service Corporation International or one of its affiliates.   This number includes individuals who worked for Alderwoods Group, Inc. after the date that it became an SCI subsidiary, but it does *not* include individuals who worked for Alderwoods only prior to the merger.

## Status of This Action: Discovery and State Law Claims

5.     This lawsuit is still in its early stages.  Although the parties have exchanged some limited discovery, including initial disclosures, the parties have not yet engaged in full fact discovery, nor has any discovery scheduling order been entered.  Instead, the parties agreed to delay proceeding on such issues until after the opt-in period closed.

6.     This Court previously declined to exercise jurisdiction over plaintiffs' state law claims and, therefore, dismissed those claims.  Plaintiffs continue to believe that those claims may properly be heard, together with plaintiffs' Fair Labor Standards Act claims, before this Court.  However, in light of the Court's ruling, plaintiffs have revised the proposed First Amended Complaint – Collective Action to redact those claims and allegations.  Plaintiffs do not, however, waive their right to argue that those claims could be heard as part of the instant action.

## Attached Documents

7.     Attached hereto as **Exhibit B** is the Affirmation of Scott Gullett dated June 7, 2007.

8.     Attached hereto as **Exhibit C** is the Affirmation of Johnny Coleman dated June 2007.

9.     Attached hereto as **Exhibit D** is the Affirmation of Brett Moreland dated June 2007.

10.     Attached hereto as **Exhibit E** are excerpts from the Transcript of Proceedings before Honorable Joy Flowers Conti dated September 6, 2007.

I affirm under penalty of perjury that the foregoing is true and correct.

Executed on October 3, 2007

/s/ Annette Gifford_____
**Annette Gifford**

3

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, HEATHER RADY,
ROBERT A. ACEVEZ, BENSON ACKERMAN,
ROBERT ACOSTA, LYLE J. ADAMS, KIMBERLEY
ADAMS, GARY ADDISON, BYRON ADKINS,
THOMAS M. ADKINS, MARCO AGUILERA,
DARRELL L. ALDER, FREDERICK R. ALDRICH,
MERLIN ALEXANDER, JESSIE W. ALEXIS,
KENNETH R. ALLEN, FRANK A. ACUNA, ELIAS
ALVIDREZ, WILLIAM AMATO, MICHAEL J.
AMESQUITA SR., MITCHELL P. AMOS,
MICHAEL E. ANDERSON, NELSON ANDERSON,
ROBIN ANDREWS, ROBERT J. APODACA,
BRENDA A. ARNOLD, STEVEN A. ARNOLD,
LESLIE S. ASCHE-THACKERY, JAMES W.
ATKINS, CHARLES AUSTIN, JENNY I. AVILES
GOMEZ, JEFFREY T. AYDELOTTE, JAMES A.
BAASCH, BILLY B. BAKER, JOHN C. BAKER,
JULIUS BARANY, DOUGLAS BARNES, THOMAS
H. BARNETTE, DALE R. BART, NEELA BASU,
DORTHY BATH, JAMES V. BELL, REGINA BELL,
THOMAS S. BELL, MARLA BELYEW,
CHARLOTTE BILLIOT, JOEL BLADY, PHILIP
BOCKETTI, RONALD BOHLMAN, GEORGE H.
BOISSE III, CHRISTINE BOJARCZYK, DANIEL
BORDELON, GEORGE R. BORTH, ROBERT
BOWEN, TAMMY J. BOWERMAN, OSWALD R.
BOYKINS, GREGORY BRADLEY, ROBERT S.
BRANUM JR., BILLY J. BREEDLOVE, ROBERT
BREEN, MICHELE BREINDEL, EUGENE
BREINIG, ALBERT J. BRIGNAC JR., HARRY W.
BRITT III, MARC BROOKS, JULIE K. BROUGH,
WILLIAM B. BROUGH, JENNIFER BROWN,
JOHN BROWN, LINDA BROWN, THOMAS A.
BROWN, JENNIFER BRUYETTE, MARSHALL
BRYANT JR., BENNIE BUFFAMANTE, JASON
BURGESS, CLARK BURKLE, RUTH BURKS, LEN
R. BURTON-HARDIN, JERRY W. BUSH,
MICHAEL S. BUTLER, MATTHEW BYRNE,
LINCOLN CABRERA, ANTHONY CALABRESE,
CLAYTON L. CALLAWAY, RAMON CAMARA,
PETER D. A. CAMERON, LAWRENCE F. CAMP,
JILL D. CAMPBELL, BRADLEY A. CARDINI,
TODD CARMICHAEL, BRIAN CARR, MICHAEL

Civil Action No. 06-1641
Judge Joy Flowers Conti

FIRST AMENDED
COMPLAINT – COLLECTIVE
ACTION
JURY TRIAL DEMANDED

CARRY, RAYMOND CARSON, SHANE M.
CARSWELL, SCOTT CARVER, GABRIEL T.
CASAUS, GINA CASERIA, WILLIAM
CASTELLARIN, SEAN J. CAVALIERE,
MICHELLE CAVANAUGH, RALPH V.
CERASUOLO, DUANE CHAMBERS, WESLEY
CHARLES, ERIC CHARLSON, DEBBIE K.
CHATMAN (BRANDT), JAMES R. CHEATHAM,
ROBERT CHERNETSKY, VALDEN
CHRISTENSEN, COREY W. CLARY, DARRELL
CODY, JOHNNY W. COLEMAN, DARRELL R.
COLLINS, MICHAEL R. COMBS, JOSETTE A.
CONSIGLIO-HOUGH, DANIEL COOK, ROBERT
CORBALLY, MAX D. CORMACK, KATHRYN
COSPER, JASON COSTIN, SHANE B. COUTINHO,
GARY A. COWGER, DIANE CRAIG, JOAN
CRANE, DONALD CRANSTON, GARY D.
CRAVEN, COLIN CRAWFORD, LESLIE A.
CREECH, THOMAS A. CREECH, JAMES
CROUCH, MILLARD J. DAIGLE, PERCY R.
DAIGLE, BRIAN DANIEL, ASHLEY
DAUGHDRILL, LAURIE DAVIS, TERRELL W.
DAVIS, WANDA DAVIS, SUSAN DAVIS-PETERS,
TERESA DEARAUJO, KELLY DEITZEL, RACHEL
DELANEY, ROY DENTLINGER, KATHY DEPERI,
STEVEN DETSCHNER, MICHAEL DEVITO,
LAWRENCE DEVLIN, JESUS M. DIAZ DIAZ,
JAMES J. DICKSON, JEFFREY A. DIGGS,
KATHRYN DILDY, NANETTE DIMOND, EFREN L.
DOMINGUEZ, LOUIE DOMINGUEZ, REBECCA J.
DONAHUE, BENJAMIN DRABING, CLAYTON
DRAGGOO, SHARON DRENNING, JOHN
DROULLARD, ROSALIN DUGDALE-NORTON,
MARC A. DUMONT, JAMES DURBIN, JAMES C.
DURDEN, APRIL DWYER, SCOTT J ECKERT,
ALAN EDWARDS, JERRY EISENHOUR,
CHRISTOPHER S. ELLIS, DEBRA ELMORE-
NESHEIM, CRAIG EMMICK, PAUL ENGLISH,
STEPHEN ESCOBAR, FRANKLIN ESSARY,
LARRY FAIR, JOSEPH W. FAIRLESS, ANTHONY
FALLETTA, BRIAN FARMER, HEIDI FERGUSON,
JOHN R. FERGUSON, BRIAN M. FIELD,
JONATHAN FIELD, HECTOR J. FIGUEROA-
RAMOS, MARY FISHER, AMY FLANAGAN,

-2-

RICHARD FLEMING, HEIDI FONTAINE, DARIN
D. FORAN, AARON T. FOREMAN, ELISABETH
FORGES, ELIZABETH FOURNIER, DAVID FOX,
STEVEN L. FRAZIER, STEPHEN FREI,
STROTHER T. FULCHER JR., LISA FULTON,
WILLIAM FUSCO, DWIGHT GAHM, RONNIE
GALINDO, ANGEL L. GARCIA, BENJAMIN
GARDNER, ELAINE M. GARLEY, JOE R. GARZA,
RUBEN R. GARZA JR., RONALD E. GAUCHER,
MICHAEL R. GEORGE, KENNETH GIACONE,
BRANDY GIRDNER, MATTHEW GLADYSZ,
ROBERT GLASSHEIM, EDGAR C. GLEIM,
RAYMOND A. GLOSSER, ERIC GOAD, JUAN
GODINEZ, DONNA F. GONZALES, NOLA
GONZALES, BOLIVIA GONZALEZ, JON D.
GOOD, ROGER GOOLSBY, MARVIN E GORBETT,
ELIZABETH M. GRANT, JUDONA M. GREEN,
TERESA GREENE, CARL GREENOCKLE, PAGE
E. GREER, LISA M. GREGOR, KENNETH
GRIFFIN, VANESSA GROOMS, ROBERT GRUNN,
DAVID A. GUDZINAS, SCOTT GULLETT,
WILLIAM O. GWYN, ANNE HAAS, LINDA T.
HAGERTY, JOHN B. HALLORAN, MURRAY M.
HAM, RICK HAMILTON, DANIELLE HAMMACK,
LARRY HAMMOCK, DANIEL HANLON JR.,
STEVE HAPPEL, ROMAN HARASYMIAK,
DOUGLAS S. HARPOLD, RONNIE HARRELL,
DAVID HARRIS, LLOYD W. HARRIS, THOMAS H.
HARRIS JR., TED B. HASKELL,WALTER
HATFIELD, DON HATZ, LOUIS HAUSLER,
MICHAEL L. HAWKINS, DOUGLAS HAZEN,
CHRISTOPHER M. HEATER, HEIDI HEIL,
WILLIAM HELM, LINDA J. HEMPERLEY,
CARRIE HENDERSON, JAMES HENDERSON,
RONALD HENDERSON, HENRY HESS, DOCK
HINES, BERNARD M. HIRREL, LOAN HOANG,
MARY H. HOLDEN, JAMES HOLDER, RHEALYN
HOLLAND, MARION HOLLEY, MATTHEW
HOLLIS, PHILLIP J. HOLLIS, DARRYL HOLMAN,
STANLEY M. HORN, JUDSON HORNER, LEEROY
HORNING, BIANCA HORTON, GARY L. HUDSON
II, RENITA J. HUDSON, WILLIAM HUDSON III,
TOM R. HUGHES, ROGER H. HUGO, AARON
HURT, DANIEL HURT, DOUGLAS E. HUTTER,

-3-

DANIEL R. HYATT, ROBERT IDEMOTO, FRANK JACKSON, JAN S. JACOB, BOBBY J. JARRETT, DAVE R. JARRETT, JASON JIMMIE, JEFF JOHNSON, JOHNNY W. JOHNSON, JULIUS E. JOHNSON, LINDA JOHNSON, LOUISE JOHNSON, NEAL JOHNSON, SHANE B. JOHNSON, WILLIAM JOHNSON, WILLIAM C. JOHNSTON, MICHAEL D. JOINES, JAMES JONES JR., JASON C. JONES, KEISHA E. JONES, ROBERT G. JONES, BARBARA JOY, MICELLE M. KAMIENSKI, KENNIE KARBINER, ANGELA KEATH, JOHN KEATH, ANNA L. KELLER, EILEEN N. KENNEDY, LORI C. KENNEY, CHARLES A. KERN, TIMOTHY KIDA, RANDALL L. KIMBRO, BRIAN A. KING, WILTON KING, ELISABETH KINGERY, JOHNNIE KIRKLING, EDDIE KIRKPATRICK, HENRY A KLEIN, BETTY KNIGHT, ROBERT KOLESKI, W. SCOTT KOLWYCK, CHRISTINE KOORNDYK, MICHAEL D. KOPERA, RICHARD T. KUHTA, PAUL T. LA MOY, NICKOL LADD, BRIGETTE LAFAUCI, JAMES LAMARCA, RICHARD A. LAMASTERS, CHARMIAN LAMB, SANDRA LANG, RONALD LANGLEY, STEVE G. LANNOM, MICHAEL LANZA, KENNETH J. LASSMAN, KHANG LE, ADRIAN F. LEAL, JOHN W. LEASMAN, TIM LEE, NOEL LEON FIGUEROA, FRANK LEWIS, DON LIMA, KAREN LIMON, DAVID A. LITHGOW, FRANCIS L. LOC, KASI LONG, MARVIN LONG, MICHAEL A. LONGO JR., HECTOR LOPEZ BRITO, MIGUEL A. LOPEZ TORRES, CHARLES LOWTHER, MIGUEL A. LUJAN, TONY LUJAN, DANIEL LUTON, ROBERT LUTTRELL, UBALDO MACHUCA CASTILLO, EMILY MADDEN, SCOTT MADDOX, CYNTHIA MADRIGAL, BECKI MAIN, JESUS MALDONADO, PAUL MALLAR, SARAH MALMI, DAVID E. MANES, NORMAND MARCHAND, LUPE MARTINEZ, MARIA E. MARTINEZ, PATRICIA MARTINEZ, PHIL E. MARTINEZ, STEVEN L. MARTZ, BRENDA K. MASSAQUOI, BENJAMIN MATTHEWS, EUGENIA C. MATTHEWS, RODNEY E. MAY, MARIA T. MAYER, WILLIAM MCCAUGHAN, RALPH MCCLURE, HARRY C. MCCOY, SHANNA MCCRARY, BEVERLY

-4-

MCDONALD, DONALD MCFADDEN, NICK
MCFERRAN, LARRY A. MCGEE, LOKEY
MCKINNEY, THOMAS MCLAUGHLIN, ROBBIE
MCMAHAN, WILLIAM M. MCPHERSON, DANIEL
G. MEAD, TAMELA J. MEASE, CASEY MEDART,
ANGEL MEDINA, JOSE B. MEDINA FONSECA,
RENNIA MEEK, PAUL D. MEIZLER, WILLIAM
MELTON, PERRY H. MERZ, MELVIN G.
MESNEKOFF, JUSTIN MESTAZ, HAROLD E.
METCALF, GERALD MICKELSON, BARRY
MILES, DAVID MILLANG, CHARLES W. MILLER,
EMILE MIRANDETTE, SUSAN MOEN, ROBERT F.
MOHR, CLARIBEL MONTOYA, DUANE MOORE,
MALCOLM MOORE, JOEL J. MORELAND,
CRAIG R. MORGAN, ERNEST MORIN,
ELIZABETH MORRIS-BROWN, JOLENE
MOSLER, DOUGLAS M. MOSTYN, MARLENE A.
MURDOCK, JERRY MURRAY, CHERYL NALITT,
MICHAEL NAPERALSKY, MARVIN L. NEVEU,
JOHN NIEDERBERGER, JAMES W. NOLAND,
SHERRY NORMAN, MICHAEL S. NORMAN SR.,
EDWARD OAKES, SEAN J. OBERSKI, ARI B.
OBERSTEIN, ANN O'CANTO, DAVID J. ORD,
WILLIAM ORE, SMITH P. OURSO, MICHAEL G.
OVANDO, DONNA E. OWEN, JOE P. OWEN,
ROBERT PARRYMORE, BARTON A. PARSHALL,
JACKIE D. PARTON, MATTHEW A. PASCUA,
RUPERT PATRICK, SERENA PATTON, DONALD
PAYNE, JULIE PAYNE, MONICA D. PAYNE,
GRANT PEDERSON, DAVID PERLMAN, JOHN
PETERS, RICHARD E. PETERSEN, MARK
PETRATIS, TOMMY W. PETTY, SUZANNE
PFUHL, KENNETH N. PHIFER, LORI A.
PHOENIX, STEVEN PIERCE, ERIC PIERSE,
EDWARD T. PIGG, RAYMOND C. PIKE,
VERONICA I. PINA, EDMUND PINNELL, BRENT
L. PITTMAN, JERRY PLYMEL, STEVEN
POLLARD, J.D. POOL, STEPHEN POPE, BOBBY
POTTER, GREGORY POTTER, ROBERT J.
PRAMIK, CYNTHIA PREDMORE, MICHAEL R.
PUCKETT, ROBERT QUANDT, MICHAEL RAINS,
RYAN RASMUSSEN, ROGER RATHBUN, ANDY
RAY, MELISSA RAY, JACK L. REDDICK,
PHILOMENA REDELLA, MELODIE B. REEVES,

-5-

LARRY REID, JIMMIE REMSEY, MICHAEL RENO, ORLANDO RENTERIA, JAMES M. REYNOLDS, MICHAEL J. REYNOLDS, MARYANN RHOADES, JEANINE L. RICO, DAVID B. RIETBERG, MANFORD C. RIFE, ELAENOR RIGGIO, JAMES RIGGS, MICHAEL RIGGS, STEPHANIE RIGGS, CHARLENE RILEY, RICHARD L. RILEY, LOYAL RITTER, MARK RITTER, ISMAEL RIVERA BURGOS, ANGEL RIVERA MERCED, ANDY RIVERA NIEVES, LANDON ROBERSON, CHRIS ROBERTO, DENNIS ROBERTSON, SHARON ROCAMONTES, JIMMY C. ROGERS, WARREN ROITMAN, CARLOS ROJAS, CHRISTINA ROJAS, ELIDETH ROJAS, MELANIE ROSARIO, BRUCE E. ROSENBAUM, JACK A. ROSENBERG, EDWARD ROSS, JAMES RUBINO, MARIAN RUE, SCOTT R. RUFF, ANTHONY RUIZ, ED RUSNAK, ROBERT RUSSELL, KENNETH J. RYMISZEWSKI, JEFFERY N. SACHS, SALLY SADARO, CATHERINE SAGARINO, GERALD SALAZAR, SANTIAGO SALAZAR III, RICHARD E. SALHUS, ERNIE SALMON, CATHERINE E. SAMUELSON, WALTER L. SANDERS, JOHN SCHABLOSKI, STEPHEN SCHANDT, LOREN SCHLEINING, DAVID SCHNELL, REBECCA SCHUMACHER, MARGARET M. SCOTT, STANLEY B. SCOTT, KEVIN L. SCROGGS, MARGIE SCROGGS, SHIRLEY SEARCY, KENNETH SEARLE, WARREN L. SEIZ, BEN F. SERNA, ROBERT M. SHAFFER, TINA SHAMBAUGH, BERNARD L. SHARUM, ROBERT SHAW, ANNE M. SHELTON, ROBERT B. SHOOTS, WILLIAM H. SHUFF, REGINALD SHUTE, RICHARD SIECKMANN, DANIEL SIFERD, MARK SILEO, ALFRED SILVA, ROBERT W. SIMMONS, CHRISTINE SIMPSON, PHILLIP W. SISK, DANNY J. SKALICKY, HOLLY SLAMOWITZ, BILL S. SLAUGHTER, MYRA S. SLOAN, JAMES R. SMILEY, FELIX SMITH, LARKUS SMITH, MONECIA SMITH, PAUL S. SMITH, HAROLD E. SMITHSON, JOHN SNIDER, CARLOS M. SOLIS DIAZ, JONATHAN SORBEL, REX SORROW, MICHAEL SPAULDING, GENEVA R. SPENCE, JODY P. SPIESE, JERRY SPINKS,

-6-

KEVIN SQUIRES, MIKAL STAMPKE, JAMES D. STARK, VERNON C. STARNES, JAMES E. STEARNS, FRANCIS STEINHOFF, JOE STENNETT, ROBERT L. STEPHENS, JAMES W. STICKLE, KEN STINSON, MALCOLM STOCKTON, WILLIAM STONE JR., DARRYL M. STRANGE, STEVEN J. STRUCK, WALTER STUETZ, GREGORY STUMP, TORREY SUMMERS, WILLIAM T. SUTTER III, ALBERT E. SUTTON, JEFFERY N. SUTTON, JON TABOR, JOSEPH G. TAFOYA JR., STEPHEN TAKESIAN, VICKI TATUM, JERRY TAWNEY, TORI TAYLOR, VICKI L. TAYLOR, EDWARD E. TAYLOR JR., MARK THEMIS, JEREMIE R. THIBAULT, JOHN THOMAS, MARILYN THOMAS, SANDY C. THOMAS, VANCE E. THOMAS, TIMOTHY L. THUESON, STEVEN TIBBITTS, STEVE TILLER, PHILIP R. TILLMAN, TALLEY O. TIMMENS, CHARLES TOMLINSON, ROBERT TOPA, CHAMELY TORO, TODD R. TRACY, FLORINDA D. TREJO, TRACIE TREVATHAN, WILLIAM D. TROUTMAN, JAMES W. TWIDDY JR., MATTHEW TWISS, PAUL S. ULOTH, EVELYN M. UNDERWOOD, JAMES R. UNDERWOOD, LUIS E. VALDIVIA, VAUGHN VANZANT, EDWIN VARGAS GONZALEZ, CODY VAUGHN, JACK G. VAUGHN, EVARISTO VIEIRA, JULIE VILLALOVOS, ANDREW A. VITELLO, H. ALLISON VOGT, KEITH P. VONQUALEN, ERNEST E. WALKER, FRED E. WALKER, GAYLE WALKER, DAVID W. WALLACE, ERIC WALLAND, RICKY WALTER, SCOTT J. WALTERS, SHANNON E. WALTERS, JEREMY WARD, CHARLES WATSON, JEFFREY WEARY, BRADLEY B. WEBB, STACEY WEINSTEIN, SHANNON WELLS, DENISE WESTBROOKS, JAMES WHALEY, GEORGE T. WHITE, KEVIN WHITE, RAYMOND E. WHITE JR., CHAD A. WICKHAM, EUTEVA WIDENER, BARRY WEIN, TIMOTHY E. WILBUR, JACK WILKINSON, EDWIN R. WILLEMS, DAVID C. WILLIAMS JR., LESLIE R. WILLSEY, JEFFREY WILSON, JOSEPH W. WILSON JR, LOUIS B. WILSON, TINA WINEINGER, SUSAN WINKELSTEIN, DONOVAN

-7-

S. WINKLEY, ROBERT WOLF, JAMES WOLVERTON, BRYAN WOOD, GEORGE L. WOOD, GREGORY M. WOOD, HAROLD E. WOOD, JASON WORMAN, DAVID F. WYATT, JUSTIN YODER, CLAUDINE T. YOUNG, EDWARD S. ZABORSKI, JOHN S. ZALESKI, BENJAMIN ZAPATA, JOY ZEMBELLAS, DANIEL P. ZERTUCHE, DAVID ZULICK
*on behalf of themselves*
*and all employees similarly situated,*

                                                                        *Plaintiffs,*

- VS -

ALDERWOODS GROUP, INC., SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI EASTERN MARKET SUPPORT CENTER, L.P., SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., SCI HOUSTON MARKET SUPPORT CENTER, L.P., JANE D. JONES, GWEN PETTEWAY, THOMAS RYAN, PAUL A. HOUSTON and CURTIS BRIGGS

                                                         *Defendants.*

## CLASS ACTION COMPLAINT

    **AND NOW** come Plaintiffs Deborah Prise, Heather Rady, et al., on behalf of themselves and all others similarly situated, by and through their attorneys, Margolis Edelstein and Dolin, Thomas & Solomon LLP, and file the following amended Class Action Complaint:

## I.    INTRODUCTION

    1.    This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to Plaintiffs Deborah Prise, Heather Rady, et al., as well as all other

-8-

employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); and other laws of the various States in which defendant does business.

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S. C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, and under 29 U.S.C. §216 (b).

3.    Venue is appropriate in the Western District of Pennsylvania since some of the unlawful acts alleged were committed in this district and some plaintiffs reside in this district. Venue is proper before this Court under 28 U.S.C. § 1391(b).

## III.    PARTIES

### A.    Plaintiffs

4.    The plaintiffs ("Plaintiffs") are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked. Plaintiffs expressly include each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action. Any individual who opts-in to this action after the date of this amended complaint has full party status pursuant to 29 U.S.C. § 216 (b).

5.    All of the defendants except for Alderwoods Group, Inc. are liable to all plaintiffs

-9-

either directly as an employer or as successor-in-interest to plaintiffs' direct employer.

6.      Defendant Alderwoods Group, Inc. ("Alderwoods") is liable to those plaintiffs who worked at funeral locations owned by Alderwoods and/or its affiliates prior to the time Alderwoods was acquired by defendant Service Corporation International (the "Alderwoods Employees").

**B.      Defendants**

7.      Defendant Alderwoods Group, Inc. ("Alderwoods") is a corporation with its headquarters being at 311 Elms Street, Suite 1000, Cincinnati, Ohio 45202.

8.      Defendant Service Corporation International ("SCI") is a corporation with its headquarters being at 1929 Allen Parkway, Houston, Texas 77019.

9.      Defendant SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative") is a Delaware corporation which is owned by SCI.

10.      Defendant SCI Eastern Market Support Center, L.P. ("SCI Eastern") is a limited partnership which is owned by SCI.

11.      Defendant SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western") is a limited partnership or corporation which is owned by SCI.

12.      Defendant SCI Houston Market Support Center, L.P. ("SCI Houston") is a limited partnership which is owned by SCI.

13.      Defendants SCI Eastern, SCI Western and SCI Houston are referred to herein collectively as the "SCI Support Centers."

14.      The SCI Support Centers and the SCI Cooperative are referred to herein

-10-

collectively as the "SCI Managing Entities."

15.    Defendants Alderwoods, SCI, and the SCI Managing Entities are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

16.    Upon information and belief, the SCI Managing Entities conduct human resources and other employment-related functions for defendants and their funeral locations.

17.    Upon information and belief, the SCI Support Centers provide all executive, management, administrative, accounting, data processing, and human resources services for defendants and their funeral locations.

18.    Upon information and belief, the field personnel and training departments of the SCI Managing Entities provide on-site training for defendants and their funeral locations.

19.    Upon information and belief, the SCI Cooperative, through agreements with the SCI Support Centers, provides additional human resources services and support for defendants and their funeral locations.

20.    Upon information and belief, the SCI Cooperative creates and distributes employee handbooks for defendants and their funeral locations.

21.    Upon information and belief, the SCI Cooperative provides Dignity University training for defendants and their funeral locations.

22.    Upon information and belief, the SCI Cooperative produces communications to employees of defendants and their funeral locations, including the weekly newsletter "Frontline," and the intranet site "Global Village."

23.    Upon information and belief, the SCI Cooperative administers benefit plans for the employees and has contracted with third-party benefit providers to respond to questions

-11-

related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information.

24.    Upon information and belief, the SCI Managing Entities facilitate implementation of corporate strategies, policies and procedures.

25.    Upon information and belief, the SCI Managing Entities are directly involved in the operations of defendants' business with respect to plaintiffs' employment.

26.    Upon information and belief, the SCI Managing Entities exercise or have exercised managerial responsibilities and substantial control over the terms of plaintiffs' employment.

27.    Upon information and belief, the SCI Managing Entities provided management services to SCI and its affiliates in relation to plaintiffs' employment.

28.    Upon information and belief, the SCI Managing Entities are not completely disassociated from SCI and its affiliates with respect to plaintiffs' employment.

29.    Upon information and belief, the SCI Managing Entities are controlled by or are under common control with SCI and its affiliates.

30.    Defendant Jane D. Jones has acted as Vice President of Human Resources for defendant SCI since 2005.

31.    Upon information and belief, Ms. Jones oversees human resources, training and education, and payroll and commission services – activities that assist approximately 20,000 employees in North America.

32.    Defendant Gwen Petteway has acted as Human Resources Director of defendant SCI Houston since February 2005.

-12-

33.     Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising human resources services to the subsidiary and affiliate companies of SCI, as well as training and benefits provided to those companies.

34.     Upon information and belief, Ms. Petteway's job responsibilities include providing and/or supervising day-to-day human resources service and support for defendants' funeral home locations.

35.     Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

36.     Upon information and belief, Mr. Ryan's responsibilities include actively managing SCI.

37.     Defendant Paul A. Houston is President, Chief Executive Officer and a Director of Alderwoods.

38.     Upon information and belief, Mr. Houston has been Chief Executive Officer of Alderwoods since in or around 2002.

39.     Upon information and belief, Mr. Houston's responsibilities include actively managing Alderwoods.

40.     Defendant Curtis Briggs is President and/or Vice President of various entities owned by SCI.

41.     Upon information and belief, Mr. Briggs is:

    a.   Vice President for the General Partner of SCI Eastern

    b.   Vice President for the General Partner of SCI Houston

    c.   President and/or Vice President of the SCI Cooperative

-13-

d. President and/or Vice President of SCI Western

42.    Upon information and belief, Mr. Briggs's responsibilities include actively managing the SCI Managing Entities.

43.    Defendants Jones, Petteway, Ryan, Houston and Briggs are referred to herein collectively as the "Individual Defendants."

***SCI and the SCI Managing Entities Are Liable to Plaintiffs***

44.    Plaintiffs are employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  Plaintiffs expressly include each individual identified in the caption, together with any similarly situated current or former employees who may file consent forms to opt-in to this collective action.  Any individual who opts-in to this action after the date of this amended complaint has full party status pursuant to 29 U.S.C. § 216 (b).

45.    At all relevant times, SCI and the SCI Managing Entities are or have been Plaintiffs' employers.

46.    At all relevant times, SCI and/or the SCI Managing Entities have suffered or permitted Plaintiffs to perform work for them.

47.    At all relevant times, SCI and/or the SCI Managing Entities are or have been liable for the employment of Plaintiffs.

48.    At all relevant times, Plaintiffs have acted directly or indirectly in the interest of SCI and/or the SCI Managing Entities.

49.    At all relevant times, SCI and/or the SCI Managing Entities have operated locations, either directly or through the SCI Affiliates, and therefore are the employers of

-14-

Plaintiffs who are or were employed at all locations.

50.    Collectively, SCI, the SCI Affiliates, the SCI Managing Entities and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

51.    Upon information and belief, SCI and the SCI Affiliates exercise complete dominion and control over the various funeral service locations.

52.    At all relevant times, Plaintiffs are or have been jointly employed by SCI, the SCI Affiliates and/or the SCI Managing Entities at their funeral service locations.

53.    At all relevant times, the funeral service locations of SCI, the SCI Affiliates and/or the SCI Managing Entities are or have been the Plaintiffs' employer.

54.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities operate interrelated business operations.

55.    At all relevant times, business operations of the funeral locations are or have been centrally controlled by SCI and/or the SCI Managing Entities.

56.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities exercise common control of labor relations.

57.    Upon information and belief, SCI and/or the SCI Managing Entities own all of the funeral service locations and exercise financial control over the business operations of those locations.

58.    At all relevant times, SCI and/or the SCI Managing Entities maintain or have maintained centralized control of employment relations.

59.    At all relevant times, the human resource functions of the funeral service

-15-

locations report or have reported directly or indirectly to SCI and/or the SCI Managing Entities.

60. Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities operate under common management.

61. Upon information and belief, SCI and/or the SCI Managing Entities exercise common management of the various funeral locations.

62. Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities have common ownership and financial control.

63. In light of the economic realities of the enterprise operated by SCI, the SCI Affiliates and the SCI Managing Entities, SCI and the SCI Managing Entities are joint employers of all Plaintiffs.

64. At all relevant times, Plaintiffs' work simultaneously benefited all of SCI, the SCI Affiliates and the SCI Managing Entities.

65. At all relevant times, the SCI Managing Entities acted directly or indirectly in the interest of SCI in relation to Plaintiffs.

66. At all relevant times, SCI acted directly or indirectly in the interest of the SCI Managing Entities in relation to Plaintiffs.

67. SCI and the SCI Managing Entities are not completely disassociated with respect to the employment of Plaintiffs and the SCI Managing Entities are controlled by and/or are under common control with SCI.

68. In light of the economic realities of SCI, the SCI Affiliates and the SCI Managing Entities' enterprise, at all relevant times SCI and the SCI Managing Entities were integrated enterprises, employers, joint employers and/or single employers of Plaintiffs for purposes of

-16-

federal laws.

***All Defendants Are Liable to the Alderwoods Employees***

69.    All defendants are liable to those plaintiffs who worked at funeral locations owned by Alderwoods and/or its affiliates prior to the time Alderwoods was acquired by defendant Service Corporation International (the "Alderwoods Employees"), either directly or as successors-in-interest.

70.    At all relevant times, Alderwoods has been the employer of the Alderwoods Employees.

71.    At all relevant times, Alderwoods has suffered or permitted the Alderwoods Employees to perform work for Alderwoods.

72.    At all relevant times, Alderwoods has been liable for the employment of the Alderwoods Employees.

73.    At all relevant times, the Alderwoods Employees have acted directly or indirectly in the interest of Alderwoods.

74.    At all relevant times, Alderwoods has operated locations, either directly or through the Alderwoods Affiliates, and therefore is the employer of Plaintiffs who were employed at all Alderwoods locations.

75.    Collectively, Alderwoods, the Alderwoods Affiliates and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

76.    Upon information and belief, Alderwoods has exercised complete dominion and control over the Alderwoods funeral service locations.

-17-

77.    At all relevant times, the Alderwoods Employees have been jointly employed by Alderwoods and the Alderwoods Affiliates at their funeral service locations.

78.    At all relevant times, the funeral service locations of Alderwoods and the Alderwoods Affiliates have been the Alderwoods Employees' employer.

79.    Upon information and belief, Alderwoods and the Alderwoods Affiliates operate interrelated business operations.

80.    At all relevant times, business operations of the funeral locations have been centrally controlled by Alderwoods.

81.    Upon information and belief, Alderwoods has exercised common control of labor relations.

82.    Upon information and belief, Alderwoods has owned all of the Alderwoods funeral service locations and has exercised financial control over the business operations of those locations.

83.    At all relevant times, Alderwoods has maintained centralized control of employment relations.

84.    At all relevant times, the human resource functions of the Alderwoods funeral service locations have reported directly or indirectly to Alderwoods.

85.    Upon information and belief, Alderwoods and the Alderwoods Affiliates operate under common management.

86.    Upon information and belief, Alderwoods has exercised common management of the various Alderwoods funeral home locations.

87.    Upon information and belief, Alderwoods and the Alderwoods Affiliates have

-18-

common ownership and financial control.

88.    In light of the economic realities of the enterprise operated by Alderwoods and the Alderwoods Affiliates, Alderwoods is a joint employer of the Alderwoods Employees.

89.    At all relevant times, the Alderwoods Employees' work simultaneously benefited Alderwoods and the Alderwoods Affiliates.

90.    At all relevant times, the Alderwoods Affiliates acted directly or indirectly in the interest of Alderwoods in relation to the Alderwoods Employees.

91.    Alderwoods and the Alderwoods Affiliates have not been completely disassociated with respect to the employment of the Alderwoods Employees and the Alderwoods Affiliates have been controlled by and/or under common control with Alderwoods.

92.    Although SCI and the SCI Managing Entities were not the Alderwoods Employees' employers at the time of the FLSA violations alleged herein, Plaintiffs assert that SCI and the SCI Managing Entities, as further described below, are liable under a successor liability theory.

93.    Upon information and belief, Coronado Acquisition Group ("Coronado"), at relevant times hereto, was a wholly owned subsidiary of SCI, which was formed by SCI for the sole purpose of merging with Alderwoods. At relevant times hereto, SCI and Coronado had the same offices, telephone numbers, and corporate officers.

94.    Upon information and belief, Alderwoods, through its shareholders, has adopted a merger agreement by and between Alderwoods, Coronado and/or SCI.

95.    Upon information and belief, SCI, through its shareholders, has adopted a merger agreement between Alderwoods, Coronado and/or SCI.

-19-

96.     Upon information and belief, as of approximately November 2006, Alderwoods and/or Coronado ("Merged Entities") became a wholly owned subsidiary of SCI.

97.     Upon information and belief, the Merged Entities, under the merger agreement, continue business operations in substantially the same form as before the merger.

98.     Upon information and belief, the Merged Entities, under the merger agreement, continue to use substantially the same workforce as before the merger, with substantially the same supervisors and same working conditions as Alderwoods.

99.     Upon information and belief, the Merged Entities, under the merger agreement, provide essentially the same services as before the merger and use the same facilities, equipment and method of providing services as Alderwoods.

100.    Upon information and belief, SCI and the SCI Managing Entities are successors-in-interest to Alderwoods' liability.  As a successors-in-interest, SCI and the SCI Managing Entities are jointly and severally liable for all of the unlawful conduct of Alderwoods alleged herein.

101.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are or have been the employer of the Alderwoods Employees.

102.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have suffered or permitted the Alderwoods Employees to perform work for them.

103.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities are or have been liable for the employment of the Alderwoods Employees.

104.    At all relevant times, the Alderwoods Employees have acted directly or indirectly in the interest of SCI, the SCI Managing Entities and the Merged Entities.

-20-

105.    At all relevant times, SCI, the SCI Managing Entities and the Merged Entities have operated locations, either directly or through the SCI Affiliates, and therefore are the employers of the Alderwoods Employees.

106.    Collectively, SCI, the SCI Managing Entities and the Merged Entities and their funeral service locations comprise a single, integrated enterprise, as they perform related activities through unified operation or common control for a common business purpose.

107.    Upon information and belief, SCI and/or the SCI Managing Entities, under the merger agreement, exercise complete dominion and control over Alderwoods and its funeral service locations.

108.    At all relevant times, the Alderwoods Employees are or have been jointly employed by SCI, the SCI Managing Entities and the Merged Entities at their funeral service locations.

109.    At all relevant times, the funeral service locations of Alderwoods are or have been the Alderwoods Employees' employer.

110.    Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities operate interrelated business operations.

111.    At all relevant times, business operations of the funeral locations are or have been centrally controlled by SCI, the SCI Managing Entities and the Merged Entities.

112.    Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities exercise common control of labor relations.

113.    Upon information and belief, SCI, the SCI Managing Entities and/or the Merged Entities own all of the funeral service locations and exercise financial control over the business

-21-

operations of those locations.

114.    At all relevant times, SCI, the SCI Managing Entities and/or the Merged Entities maintain or have maintained centralized control of employment relations.

115.    At all relevant times, the human resource functions of the funeral service locations report or have reported directly or indirectly to SCI, the SCI Managing Entities and/or the Merged Entities.

116.    Upon information and belief, SCI, the SCI Managing Entities and the Merged Entities operate under common management.

117.    Upon information and belief, SCI, the SCI Managing Entities and/or the Merged Entities exercise common management of the various funeral home locations.

118.    Upon information and belief, SCI, the SCI Affiliates and the SCI Managing Entities have common ownership and financial control.

119.    In light of the economic realities of the enterprise operated by SCI, the SCI Managing Entities and the Merged Entities, each of the defendants are joint employers of the Alderwoods Employees.

120.    At all relevant times, the Alderwoods Employees' work simultaneously benefited all of SCI, the SCI Managing Entities and the Merged Entities.

121.    At all relevant times, the Merged Entities acted directly or indirectly in the interest of SCI and the SCI Managing Entities in relation to the Alderwoods Employees.

122.    SCI, the SCI Managing Entities and the Merged Entities are not completely disassociated with respect to the employment of the Alderwoods Employees and the SCI Managing Entities and the Merged Entities are controlled by and/or are under common control

-22-

with SCI.

123.    In light of the economic realities of SCI, the SCI Managing Entities and the Merged Entities' enterprise, at all relevant times SCI, the SCI Managing Entities and the Merged Entities were integrated enterprises, employers, joint employers, single employers and/or successor employers of Plaintiffs for purposes of federal laws and/or SCI and the SCI Managing Entities constitute successors-in-interest to Alderwoods.

*The Individual Defendants Are Liable to Plaintiffs*

124.    At all relevant times, the Individual Defendants are or have been the employer of Plaintiffs.

125.    At all relevant times, the Individual Defendants have suffered or permitted the Plaintiffs to perform work for them.

126.    At all relevant times, the Individual Defendants are or have been liable for the employment of Plaintiffs.

127.    At all relevant times, the Individual Defendants were responsible for defendants' human resources and employment functions with respect to Plaintiffs.

128.    Upon information and belief, Individual Defendants' responsibilities for defendants' human resources and employment functions included drafting, approving, distributing, supervising, enforcing and/or monitoring defendants' human resources and employment policies, including those related to the hours Plaintiffs worked, the recordkeeping associated with those hours, and the compensation Plaintiffs received.

129.    Upon information and belief, Individual Defendants were directly involved in the operations of defendants' business with respect to these human resources and employment

-23-

functions.

130.    Upon information and belief, Individual Defendants exercised direction and control with respect to the defendants' human resources and employment functions.

131.    Upon information and belief, Individual Defendants actively managed defendants' human resources and employment policies, interfaced with the other defendants and their funeral locations regarding those policies, and made decisions regarding the policies and the manner in which the policies were applied to Plaintiffs.

132.    At all relevant times, Plaintiffs have acted directly or indirectly in the interest of the Individual Defendants.

133.    At all relevant times, Plaintiffs are or have been jointly employed by the Individual Defendants.

134.    At all relevant times, the Individual Defendants acted directly or indirectly in the interest of SCI and/or the SCI Managing Entities in relation to Plaintiffs.

**IV.    FACTUAL BACKGROUND**

135.    Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

136.    Defendants' policy and/or practice was to not compensate Plaintiffs for work it suffered or permitted Plaintiffs to perform.

137.    Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

138.    Defendants' practice is to be deliberately indifferent to these violations of the

-24-

statutory overtime requirements.

139.    The failure to pay overtime is willful.

140.    Examples of defendants' policies and practices to deprive Plaintiffs of their earned wages and wage premiums are set forth below:

  a.  **Subclass A:**  Defendants implemented a "Community Work Policy."  Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

  b.  **Subclass B:**  Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for work performed outside the regular workday, off-site from the funeral home.

  c.  **Subclass C:**  Defendants' policy required that certain hourly employees train for and obtain certain licenses.  Defendants did not pay for the training, test taking and continuing education requirements for those licenses despite suffering or permitting employees to perform such work.

  d.  **Subclass D:**  Defendants' policy required that certain hourly employees take other types of training.  Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

  e.  **Subclass E:**  Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases.  To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

  f.  **Subclass F:**  Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for lunch breaks. Defendants did, however, suffer and permit their employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time

-25-

spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

g.  **Subclass G:** Defendants implemented a "Pre-Approval for Overtime Pay Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted their employees to work overtime and therefore, the employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

h.  **Subclass H:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted plaintiffs to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew that such time had been worked, it had not been "recorded."

i.  **Subclass I:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

141.  Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

142.  More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

## COUNT I
### FLSA

143.  The preceding paragraphs are incorporated herein as if fully set forth herein.

144.  Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs.

-26-

## COUNT II
## FAILURE TO MAINTAIN PROPER RECORDS

145.    The preceding paragraphs are incorporated herein as if fully set forth herein.

146.    Defendants violated provisions of the FLSA by failing to make, keep, and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment; more specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week, and/or the total overtime compensation for each work week and are liable to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award of the value of Plaintiffs' unpaid wages;

(c)    liquidated, compensatory, consequential and punitive damages;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact.

-27-

Respectfully Submitted,

MARGOLIS EDELSTEIN

Date: _____

_____
Charles H. Saul, Esquire
PA ID No. 19938
Attorney for Plaintiffs
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256

-28-

**EXHIBIT G**

Tod F. Schleier, State Bar No. 004612
Bradley H. Schleier, State Bar No. 011696
SCHLEIER LAW OFFICES, P.C.
3101 N. Central Avenue
Suite 1090
Phoenix, AZ 85012
Telephone: (602) 277-0157
Facsimile:  (602) 230-9250
tod@schleierlaw.com
brad@schleierlaw.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Following Page]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PHOENIX DIVISION

JAMES STICKLE; ELEANOR RIGGIO;
FRANK ACUNA; JOSEPH BIERNACKI;
GORDON FARMER; RHEALYN
HOLLAND; RICHARD LAMASTERS;
KENNETH ALLEN, et. al,
on behalf of themselves
and all employees similarly situated,

     Plaintiffs,

       - vs -

SCI WESTERN MARKET SUPPORT
CENTER, L.P. a/k/a SCI WESTERN
MARKET SUPPORT CENTER, INC.; SCI
EASTERN MARKET SUPPORT CENTER,
L.P.; SCI HOUSTON MARKET SUPPORT
CENTER, L.P.; SCI FUNERAL AND
CEMETERY PURCHASING
COOPERATIVE, INC.; SERVICE
CORPORATION INTERNATIONAL; JANE
D. JONES; GWEN PETTEWAY; THOMAS
RYAN; CURTIS BRIGGS; THE SCI 401K
RETIREMENT SAVINGS PLAN; and JULIE
DOUGLAS,

     Defendants.

Case No.

**COMPLAINT— Class Action
DEMAND FOR JURY TRIAL**

1    Additional Attorneys for Plaintiffs, who will
     submit applications for admission *pro hac vice*:

2
     J. Nelson Thomas, NY Attorney No. 2579159
3    Patrick J. Solomon, NY Attorney No. 2716660
     Michael J. Lingle, NY Attorney No. 3925765
4    Annette Gifford, NY Attorney No. 4105870
     Justin Cordello, NY Attorney No. 4131447
5    DOLIN, THOMAS & SOLOMON LLP
     693 East Avenue
6    Rochester, NY 14607
     Telephone: (585) 272-0540
7    Facsimile: (585) 272-0574
     nthomas@theemploymentattorneys.com
8
     Charles H. Saul, PA State Bar No.19938
9    Liberty J. Weyandt, PA State Bar No. 87654
     Kyle T. McGee, PA State Bar No. 205661
10   MARGOLIS EDELSTEIN
     525 William Penn Place
11   Suite 3300
     Pittsburgh, PA 15219
12   Telephone: (412) 281-4256
     Facsimile: (412) 642-2380
13   csaul@margolisedelstein.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

**CLASS ACTION COMPLAINT**

**AND NOW** come plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Schleier Law Offices, P.C., Dolin, Thomas & Solomon LLP, and Margolis Edelstein, and file the following Class Action Complaint:

## I.  INTRODUCTION

1.     This is a proceeding for declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1332(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1059(a)(1), for defendants' failure to maintain accurate payroll records and credit plaintiffs' 401(k) plans with their non-reduced weekly wages and correct overtime compensation; and under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, for defendants' pattern of activity in employing the mails to pursue a scheme of improperly obtaining plaintiffs' property by means of false or fraudulent pretenses or representations.

## II.  JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under 28 U.S.C. §1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. §2201, under 29 U.S.C. §216 (b), and under 18 U.S.C. § 1964(a) and (c).

3.     Venue is appropriate in the District of Arizona because unlawful acts alleged in this complaint were committed in this district and because defendants conduct business in this District.  Additionally, several plaintiffs, including James Stickle, Eleanor Riggio and Frank Acuna, were employed by defendants, suffered violations, and currently reside

1   in this District.  Venue is proper before this Court under 28 U.S.C. § 1391(b).

2   **III.    PROCEDURAL HISTORY**

3        4.    On December 12, 2006, Service Corporation International ("SCI"), a named

4   defendant in this action, was named in a complaint filed in the Western District of

5   Pennsylvania.

6        5.    The Western District of Pennsylvania complaint also named Alderwoods

7   Group, Inc. ("Alderwoods") as a defendant in that action.

8        6.    Prior to the filing of the Pennsylvania complaint, SCI had acquired

9   Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary.

10       7.    After the merger, SCI continued to operate the vast majority of both its own

11  funeral homes and those of Alderwoods.

12       8.    The Pennsylvania complaint was filed as a class and collective action

13  alleging, *inter alia*, that employees who worked at defendants' funeral home locations

14  were not properly paid for all the time they worked for defendants.

15       9.    The employees (whether they worked only at an Alderwoods location that

16  became an SCI location, or at any other SCI location) shared a number of factual

17  similarities: they suffered similar pay violations; SCI and/or its agents were their joint

18  employers; SCI was liable for the violations of the entities it had acquired.

19       10.    Because of the overlapping legal liability of defendants, as well as the

20  overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in

21  the interests of judicial efficiency for defendants to be named in a common action.

22       11.    The Court in the Western District of Pennsylvania certified a class of

23  employees and directed that notice be sent to those individuals who worked at an

24  Alderwoods location.

25       12.    In response to that notice, hundreds of current and former employees opted-

26  in to the Pennsylvania action.

27       13.    Eventually, the Court in the Western District of Pennsylvania determined it

3

1  would only hear claims on behalf of employees who worked only for Alderwoods, and that
2  claims of employees who had worked only at other SCI locations should be heard in a
3  separate action.

4      14.    Therefore, plaintiffs bring this separate action for SCI employees who did
5  not work at an Alderwoods location.

6      15.    In the instant action, employees who worked at funeral locations owned by
7  SCI and its subsidiaries and affiliates allege violations of certain federal laws, including
8  the Fair Labor Standards Act, against SCI as well as its holdings and employees who were
9  responsible for the policies which resulted in the violations and which, therefore, are liable
10  as employers under federal law.

11      16.    The plaintiffs in this lawsuit include employees who worked at all SCI
12  funeral locations.

13  **IV.   CLASS ACTION ALLEGATIONS**

14      17.    The claims arising under ERISA and RICO are properly maintainable as a
15  class action under Federal Rule of Civil Procedure 23.

16      18.    The class action is maintainable under subsections (1), (2) and (3) of Rule
17  23(b).

18      19.    The class consists of current and former employees of defendants whose
19  401(k) plans were not credited with their non-reduced weekly wages and correct overtime
20  compensation.   Additionally, the class consists of current and former employees of
21  defendants who were injured by defendants' scheme to cheat employees out of their
22  property and to convert the employees' property, including their wages and/or overtime
23  pay, by misleading employees about their rights under the FLSA.

24      20.    The class size is over 50 employees.

25      21.    Plaintiffs will adequately represent the interests of the class members
26  because they are similarly situated to the class members and their claims are typical of, and
27  concurrent to, the claims of other class members.

1   22.    There are no known conflicts of interest between Named Plaintiffs and other

2   class members.

3   23.    The class counsel, Schleier Law Offices, P.C., Dolin, Thomas & Solomon

4   LLP and Margolis Edelstein, are qualified and able to litigate the class members' claims.

5   24.    The class counsel is experienced in employment litigation, and its attorneys

6   are experienced in class action litigation, including class actions arising under federal

7   statutes.

8   25.    Common questions of law and fact predominate in this action because the

9   claims of all class members are based on whether defendants' policy of not crediting

10  employees with their non-reduced weekly wages and correct overtime compensation is a

11  violation of ERISA or was part of a scheme to defraud plaintiffs in violation of RICO.

12  26.    The class action is maintainable under subsections (2) and (3) of Rule 23(b)

13  because plaintiffs seek injunctive relief, common questions of law and fact predominate

14  among the class members and the class action is superior to other available methods for the

15  fair and efficient adjudication of the controversy.

16  **V.    PARTIES**

17  **A.    Plaintiffs**

18  27.    The plaintiffs ("Plaintiffs") are employees and former employees of

19  defendants who were suffered or permitted to work by defendants and not paid their

20  regular or statutorily required rate of pay for all hours worked.  "Plaintiffs" expressly

21  includes each individual identified in the caption, together with any similarly situated

22  current or former employees who may file consent forms to opt-in to this collective action.

23  28.    Attached to this complaint in its **Appendix A** are the current Plaintiffs'

24  consent forms seeking recovery against their employers in an FLSA action.  Each of these

25  individuals, as well as any individual who opts-in to this action, has full party status

26  pursuant to 29 U.S.C. § 216 (b).

27  29.    Defendants are liable to Plaintiffs as employers, joint employers, single

1  employers, alter egos and/or otherwise according to federal and state common law.

2  **B.    Defendants**

3      30.    Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc.

4  (the "SCI Cooperative"), SCI Western Market Support Center, L.P. a/k/a SCI Western

5  Market Support Center, Inc. ("SCI Western"), SCI Eastern Market Support Center, L.P.

6  ("SCI Eastern"), and SCI Houston Market Support Center, L.P. ("SCI Houston")

7  (collectively, SCI Western, SCI Eastern and SCI Houston are referred to as the "SCI

8  Support Centers"), are enterprises engaged in interstate commerce with an annual gross

9  volume of sales not less than $500,000.

10      31.    Defendant The SCI 401K Retirement Savings Plan (the "Plan") is a 401(k)

11  plan in which Plaintiffs are or were eligible to participate.

12      32.    Defendant SCI sponsors the Plan and defendants the SCI Cooperative and

13  the SCI Support Centers benefit from the Plan.

14      33.    Defendant Julie Douglas is the administrator of the Plan.

15      34.    Upon information and belief, defendants are Plaintiffs' fiduciaries with

16  respect to the Plan.

17      35.    At all times relevant to this action, defendants are employers of Plaintiffs

18  within the meaning of 29 U.S.C. § 203 (d) and comprise an "enterprise" engaged in

19  commerce as defined in 20 U.S.C. §§ 203(r), 203(s).

20  ***The SCI Support Centers Are Liable to Plaintiffs***

21      36.    SCI Western is a limited partnership or corporation which is owned, directly

22  or indirectly, by SCI.

23      37.    SCI Eastern is a limited partnership which is owned, directly or indirectly, by

24  SCI.

25      38.    SCI Houston is a limited partnership which is owned, directly or indirectly,

26  by SCI.

27      39.    The primary functions of the SCI Support Centers are to help facilitate the

execution of corporate strategies, coordinate communications between the field and corporate offices, and serve as liaisons for the implementation of policies and procedures.

40.    The SCI Support Centers provide "day-to-day human resources services and support for individual locations," including "**all** executive, management, administrative, accounting, data processing, and **human resources services** for [defendants'] locations." **Appendix B**, declaration of Judith M. Marshall dated July 5, 2007, at ¶4 (emphasis added).

41.    "[O]n-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with" the SCI Support Centers.  Appendix B at ¶ 6.

42.    Each SCI Support Center has an ownership interest in the SCI Cooperative and together the SCI Support Centers collectively own a majority of the SCI Cooperative.

43.    The SCI Support Centers, through their controlling interest in the SCI Cooperative, provide "Dignity University training programs" by which defendants ensure uniform services at their nationwide locations, publish and maintain the weekly newsletter "Frontline," and the "Global Village" intranet site, through which defendants communicate with their nationwide employees, and administer benefit plans for employees and contract with third-party benefit providers to respond to questions related to day-to-day benefits services.  Appendix B at ¶¶6-7; **Appendix C**, declaration of Gwen Petteway dated July 9, 2007, at ¶5.

44.    Additionally, the SCI Support Centers, through their controlling interest in the SCI Cooperative, maintain a payroll department and database which centralize information regarding Plaintiffs, including employment records and payroll information. **Appendix D**, declaration of Liana Jensen dated October 4, 2007, at ¶3.

45.    Defendants' public filings reflect that SCI and the entities it owns, directly or indirectly, including the SCI Support Centers, employ "a single line management model in an effort to streamline the organization and ensure that operational efficiencies [are] achieved throughout the SCI network."

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    46.    Defendants' public filings reflect that the funeral home locations that SCI

2    owns, directly or indirectly, "are organized into various regions and within each region the

3    funeral home locations share common resources including personnel, preparation services

4    and vehicles."

5    47.    Upon information and belief, including defendants' admissions, the SCI

6    Support Centers, due in part to their role of providing all human resources services for

7    defendants' locations, in concert with others, are actively involved in the creation of the

8    illegal policies complained of in this case, including, but not limited to, the On Call Pay

9    Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment

10    Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded

11    Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

12    48.    Upon information and belief, including defendants' admissions, the SCI

13    Support Centers, due in part to their role of providing all human resources services for

14    defendants' locations, in concert with others, actively advise defendants' agents on the

15    enforcement of the illegal policies complained of in this case, including, but not limited to,

16    the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-

17    Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

18    Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of

19    Plaintiffs' overtime.

20    49.    Upon information and belief, including defendants' admissions, the SCI

21    Support Centers, due in part to their role of providing all human resources services for

22    defendants' locations, in concert with others, actively ensure defendants' compliance or

23    non-compliance with federal law, including the requirements of the FLSA, ERISA and

24    RICO.

25    50.    Upon information and belief, including defendants' admissions, the SCI

26    Support Centers, in concert with others, play a central role in reviewing and counseling

27    defendants regarding employment decisions, including hiring and firing of Plaintiffs.

51.     Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set employees' schedules, hours and standard benefit levels.

52.     Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set standard pay scales.

53.     Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, determine and draft policies, answer questions regarding human resources issues and policies, resolve issues regarding policies and their application, counsel locations on human resources issues, and communicate with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

54.     Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

55.     Upon information and belief, including defendants' admissions, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

56.     Upon information and belief, including defendants' admissions, the SCI Support Centers' primary function of facilitating the execution of corporate strategies includes maintaining and directing a single, integrated set of operations across the SCI

1   network.

2       57.    Upon information and belief, including defendants' admissions, the SCI

3   Support Centers are responsible for, and subject to, centralized management directions and

4   decisions.

5       58.    The SCI Support Centers are owned, directly or indirectly, by defendant SCI.

6   Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI

7   Cooperative that is owned by the SCI Support Centers.

8       59.    Upon information and belief, the SCI Support Centers are part of an

9   extensive and complex network of corporations which SCI has created and owns in an

10  effort to operate its nationwide locations in a unified, consistent manner.  This network

11  promotes a fraud or injustice, in that it attempts to avoid liability for paying its common

12  employees and prevents employees from accurately identifying their employers.

13      60.    Because the SCI Support Centers have authority to hire or fire employees,

14  provide day-to-day support regarding human resources issues, including the hiring and

15  firing of employees, and control the drafting and enforcement of the policies which govern

16  the hiring and firing of employees, the SCI Support Centers have the power to hire and fire

17  employees.

18      61.    Because the SCI Support Centers have authority to establish employees'

19  work schedules and/or conditions of employment, provide day-to-day support regarding

20  human resources issues, including employees' work schedules and/or conditions of

21  employment, control the drafting and enforcement of the policies which govern

22  employees' schedules and/or conditions of employment, and administer employees'

23  benefit programs, the SCI Support Centers supervise and control employees' work

24  schedules and/or conditions of employment.

25      62.    Because the SCI Support Centers have authority to establish employees' rate

26  and method of payment and centrally control payroll functions, the SCI Support Centers

27  determine the rate and method of employees' payment.

63. Because the SCI Support Centers play a central role in the keeping of centralized records, including a database, regarding employees' employment records, the SCI Support Centers maintain employees' employment records.

64. For all of the foregoing reasons, among others, including the SCI Support Centers' services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, the SCI Support Centers provide centralized control over defendants' labor relations.

65. Because the SCI Support Centers provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employee's benefit programs, they are affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in relation to the employment of Plaintiffs.

66. Because the SCI Support Centers are actively involved in the creation of the illegal policies complained of in this case, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensure defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, the SCI Support Centers actively participate in the violations complained of in this action.

67. Because the SCI Support Centers, together with the SCI Cooperative, are owned by SCI, directly or indirectly, the SCI Support Centers and other defendants share common ownership.

68. Because the SCI Support Centers are subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Support Centers and other defendants share common management.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

69.    Because the SCI Support Centers are subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Support Centers and other defendants share functional integration of operations.

70.    Because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to employees, centrally control the payroll functions related to employees' employment, provide services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, and are subject to a network-wide single line management model, the SCI Support Centers are not completely disassociated with respect to employees' employment.

71.    The SCI Support Centers may be deemed to share control of employees, directly or indirectly, by reason of the fact that they are under common control with the SCI Cooperative and the funeral home locations because they are all owned by SCI, directly or indirectly, and because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to Plaintiffs, centrally control the payroll functions related to employees' employment, provide services and support with respect to "all executive, management, administrative, accounting, data processing, and human resources services," training, and nationwide communications with employees, and are subject to a network-wide single line management model.

72.    Because the SCI Support Centers are part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Support Centers are an alter ego of SCI and the other entities SCI owns.

73.    Based upon the foregoing, the SCI Support Centers are liable to Plaintiffs because of their active role in operating the business, their role in the violations

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    complained of in this action, their status as employer, joint employer, single employer,

2    alter ego, or otherwise according to federal and state common law.

3    ***The SCI Cooperative Is Liable to Plaintiffs***

4    74.    The SCI Cooperative is a Delaware corporation which is owned, directly or

5    indirectly, by SCI and the SCI Support Centers.

6    75.    The SCI Cooperative, through agreements with the SCI Support Centers,

7    "provide[s] additional human resources services and support" for the funeral home

8    locations.  Appendix B at ¶4.

9    76.    "[O]n-site training at funeral homes and cemeteries is provided by field

10   personnel and training departments affiliated with" the SCI Cooperative.  Appendix B at

11   ¶6.

12   77.    The SCI Cooperative publishes and maintains the weekly newsletter

13   "Frontline," and the "Global Village" intranet site, publications through which defendants

14   communicate with their nationwide employees.  Appendix B at ¶7.

15   78.    The SCI Cooperative administers benefits by "contract[ing] with third-party

16   benefit providers to respond to questions related to day-to-day benefits services, such as

17   local provider questions, access to online services, and benefits provider contact

18   information.  To the extent that those third-party providers cannot respond to questions,

19   [the SCI Cooperative] will respond."  Appendix C at ¶5.

20   79.    The SCI Cooperative maintains a payroll department and "a database that

21   contains information on current and former employees of SCI subsidiaries."  Appendix D

22   at ¶3.

23   80.    Defendants' public filings reflect that SCI and the entities it owns directly or

24   indirectly, including the SCI Cooperative, employ "a single line management model in an

25   effort to streamline the organization and ensure that operational efficiencies [are] achieved

26   throughout the SCI network."

27   81.    Defendants' public filings reflect that the funeral home locations that SCI

1  owns, directly or indirectly, "are organized into various regions and within each region the

2  funeral home locations share common resources including personnel, preparation services

3  and vehicles."

4    82.    Upon information and belief, including defendants' admissions, the SCI

5  Cooperative, due in part to its role of providing additional human resources services and

6  support, in concert with others, is actively involved in the creation of the illegal policies

7  complained of in this case, including, but not limited to, the On Call Pay Policy,

8  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,

9  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work

10  Time Policy, and the policy regarding the calculation of plaintiffs' overtime.

11    83.    Upon information and belief, including defendants' admissions, the SCI

12  Cooperative, due in part to its role of providing additional human resources services and

13  support, in concert with others, actively advises defendants' agents on the enforcement of

14  the illegal policies complained of in this case, including, but not limited to, the On Call

15  Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs

16  Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

17  Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of

18  plaintiffs' overtime.

19    84.    Upon information and belief, including defendants' admissions, the SCI

20  Cooperative, due in part to its role of providing additional human resources services and

21  support, in concert with others, actively ensures defendants' compliance or non-

22  compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

23    85.    Upon information and belief, including defendants' admissions, the SCI

24  Cooperative, in concert with others, plays a central role in reviewing and counseling

25  defendants regarding employment decisions, including hiring and firing of Plaintiffs.

26    86.    Upon information and belief, including defendants' admissions, the SCI

27  Cooperative, in concert with others, has the authority to, and does, through its agents,

1 make decisions that set employees' schedules, hours, and standard benefit levels.

2      87.    Upon information and belief, including defendants' admissions, the SCI
3 Cooperative, in concert with others, has the authority to, and does, through its agents,
4 make decisions that set standard pay scales.

5      88.    Upon information and belief, including defendants' admissions, the SCI
6 Cooperative determines and drafts policies, answers questions regarding human resources
7 issues and policies, resolves issues regarding policies and their application, counsels
8 locations on human resources issues, and communicates with employees about company
9 issues and human resources issues and policies, including issues related to hours worked
10 and payment for such hours worked.

11      89.    Upon information and belief, including defendants' admissions, the SCI
12 Cooperative provides employees with information regarding benefit plans and providers,
13 oversees the implementation and execution of benefit plans, retains ultimate authority for
14 providing information and responding to questions regarding the benefit plans, maintains
15 records regarding the benefit plans, makes determinations, either directly or indirectly,
16 regarding the scope and amount of benefits available to employees, and is responsible for
17 providing employees, directly or indirectly, with information regarding their benefits,
18 including benefits statements and information regarding their 401(k) plans.

19      90.    Upon information and belief, including defendants' admissions, the SCI
20 Cooperative maintains payroll records regarding employees and, in concert with others, the
21 SCI Cooperative has the authority to, and does, through its agents, make decisions
22 concerning the issuance of payroll checks, directly or indirectly.

23      91.    Upon information and belief, including defendants' admissions, the SCI
24 Cooperative's functions in providing services and support regarding human resources,
25 training, benefits administration, and payroll include a function maintaining and directing a
26 single, integrated set of operations across the SCI network.

27      92.    Upon information and belief, including defendants' admissions, the SCI

1    Cooperative is responsible for, and subject to, centralized management directions and
2    decisions.

3        93.    The SCI Cooperative is owned, directly or indirectly, by defendants SCI and
4    the SCI Support Centers.  Additionally, SCI owns the SCI Support Centers, directly or
5    indirectly.

6        94.    Upon information and belief, the SCI Cooperative is part of an extensive and
7    complex network of corporations which SCI has created and owns in an effort to operate
8    its nationwide locations in a unified, consistent manner.  This network promotes a fraud or
9    injustice, in that it attempts to avoid liability for paying its common employees and
10   prevents employees from accurately identifying their employers.

11       95.    Because the SCI Cooperative has authority to hire or fire Plaintiffs, provides
12   day-to-day support regarding human resources issues, including the hiring and firing of
13   Plaintiffs, and controls the drafting and enforcement of the policies which govern the
14   hiring and firing of employees, the SCI Cooperative has the power to hire and fire
15   employees.

16       96.    Because the SCI Cooperative has authority to establish employees' work
17   schedules and/or conditions of employment, provides day-to-day support regarding human
18   resources issues, including employees' work schedules and/or conditions of employment,
19   controls the drafting and enforcement of the policies which govern employees' schedules
20   and/or conditions of employment, and administers employees' benefit programs, the SCI
21   Cooperative supervises and controls employees' work schedules and/or conditions of
22   employment.

23       97.    Because the SCI Cooperative has authority to establish employees' rate and
24   method of payment and centrally control payroll functions, the SCI Cooperative
25   determines the rate and method of employees' payment.

26       98.    Because the SCI Cooperative keeps centralized records, including a
27   database, regarding employees' employment records, the SCI Cooperative maintains

1  employees' employment records.

2      99.    For all of the foregoing reasons, among others, including the SCI

3  Cooperative's human resources services and support, training function, publication of

4  communications across the SCI network, administration of benefit programs, and

5  maintenance of the payroll department, the SCI Cooperative provides centralized control

6  over defendants' labor relations.

7      100.   Because the SCI Cooperative provides day-to-day support regarding human

8  resources issues, including employees' work schedules and/or conditions of employment,

9  controls the drafting and enforcement of the policies which govern employees' schedules

10  and/or conditions of employment, and administers employees' benefit programs, it is

11  affirmatively, directly, and actively involved in operations of the defendants' business

12  functions, particularly as it relates to the employment of the plaintiffs.

13     101.   Because the SCI Cooperative is actively involved in the creation of the

14  illegal policies complained of in this case, actively advises defendants' agents on the

15  enforcement of the illegal policies complained of in this case and actively ensures

16  defendants' compliance or non-compliance with federal law, including the requirements of

17  the FLSA, ERISA and RICO, the SCI Cooperative actively participates in the violations

18  complained of in this action.

19     102.   Because the SCI Cooperative, together with the SCI Support Centers, is

20  owned by SCI, directly or indirectly, the SCI Cooperative and other defendants share

21  common ownership.

22     103.   Because the SCI Cooperative is subject to centralized management directions

23  and decisions that govern the entities owned by SCI, including a single line management

24  model applicable to the entire SCI network, the SCI Cooperative and other defendants

25  share common management.

26     104.   Because the SCI Cooperative is subject to a single line management model

27  applicable to the entire SCI network for the purpose of streamlining the organization and

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  achieving operational efficiencies, the SCI Cooperative and other defendants share
2  functional integration of operations.

3      105.   Because the SCI Cooperative controls the drafting and enforcement of the
4  employment and human resources policies related to employees, centrally controls the
5  payroll functions related to employees' employment, provides services and support with
6  respect to human resources, training, and nationwide communications with employees, and
7  is subject to a network-wide single line management model, the SCI Cooperative is not
8  completely disassociated with respect to employees' employment.

9      106.   The SCI Cooperative may be deemed to share control of employees, directly
10  or indirectly, by reason of the fact that it is under common control with the SCI Support
11  Centers and the funeral home locations because they are all owned by SCI, directly or
12  indirectly, and because the SCI Cooperative controls the drafting and enforcement of the
13  employment and human resources policies related to employees, centrally controls the
14  payroll functions related to employees' employment, provides services and support with
15  respect to human resources, training, and nationwide communications with employees, and
16  is subject to a network-wide single line management model.

17      107.   Because the SCI Cooperative is part of an extensive and complex network
18  through which SCI promotes a fraud or injustice in attempting to shield from liability itself
19  and other entities which are responsible for employees' employment and in preventing
20  employees from accurately determining the identity of their employers, the SCI
21  Cooperative is an alter ego of SCI and the other entities SCI owns.

22      108.   Based upon the foregoing, the SCI Cooperative is liable to Plaintiffs because
23  of its active role in operating the business, its role in the violations complained of in this
24  action, its status as employer, joint employer, single employer, alter ego, or otherwise
25  according to federal and state common law.

26  ***SCI Is Liable to Plaintiffs***

27      109.   Defendant SCI is a corporation with its headquarters being at 1929 Allen

1  Parkway, Houston, Texas 77019.

2      110.    SCI owns, directly or indirectly, various funeral home locations and various

3  other companies or entities, including the SCI Cooperative and the SCI Support Centers, in

4  a nationwide enterprise.

5      111.    Defendants' public filings reflect that SCI and the entities it owns directly or

6  indirectly, including the SCI Cooperative and the SCI Support Centers, employ "a single

7  line management model in an effort to streamline the organization and ensure that

8  operational efficiencies [are] achieved throughout the SCI network."

9      112.    Defendants' public filings reflect that the funeral home locations that SCI

10 owns, directly or indirectly, "are organized into various regions and within each region the

11 funeral home locations share common resources including personnel, preparation services

12 and vehicles."

13      113.    Upon information and belief, including defendants' admissions, at all

14 relevant times all functions at all entities in the SCI network, including the SCI

15 Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

16      114.    Upon information and belief, including defendants' admissions, at all

17 relevant times SCI maintained control and authority, directly or indirectly, over all

18 functions at the entities in the SCI network, including the SCI Cooperative and the SCI

19 Support Centers.

20      115.    Upon information and belief, including defendants' admissions, SCI, in

21 concert with others, has the authority to, and does, through its agents, make decisions

22 concerning the creation of the illegal policies complained of in this case, including, but not

23 limited to, the On Call Pay Policy, Community Work Policy, Training Compensation

24 Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for

25 Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the

26 calculation of Plaintiffs' overtime.

27      116.    Upon information and belief, including defendants' admissions, SCI, in

concert with others, has the authority to, and does, through its agents, make decisions concerning advising defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

117. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

118. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

119. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' schedules, hours and standard benefit levels.

120. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning standard pay scales.

121. Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the determination and drafting of policies, answering questions regarding human resources issues and policies, resolving issues regarding policies and their application, counseling locations on human resources issues, and communicating with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

122.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning providing employees with information regarding benefit plans and providers, overseeing the implementation and execution of benefit plans, providing information and responding to questions regarding the benefit plans, maintaining records regarding the benefit plans, making determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

123.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

124.   SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning maintaining and directing a single, integrated set of operations across the SCI network.

125.   Upon information and belief, including defendants' admissions, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized management directions and decisions.

126.   Upon information and belief, SCI is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.  This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

127.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning hiring or firing employees, providing support regarding human resources issues, including the hiring and firing of Plaintiffs, and controlling the drafting and enforcement of the policies which govern the hiring and firing

1    of employees, SCI has the power to hire and fire employees.

2         128.    Because SCI, in concert with others, has the authority to, and does, through

3    its agents, make decisions concerning employees' work schedules and/or conditions of

4    employment, providing support regarding human resources issues, including Plaintiffs'

5    work schedules and/or conditions of employment, controlling the drafting and enforcement

6    of the policies which govern employees' schedules and/or conditions of employment, and

7    administering employees' benefit programs, SCI supervises and controls employees' work

8    schedules and/or conditions of employment.

9         129.    Because SCI, in concert with others, has the authority to, and does, through

10   its agents, make decisions concerning employees' rate and method of payment and

11   centrally controlling payroll functions, SCI determines the rate and method of employees'

12   payment.

13        130.    Because SCI, in concert with others, has the authority to, and does, through

14   its agents, make decisions concerning centralized records, including a database, regarding

15   employees' employment records, SCI maintains employees' employment records.

16        131.    For all of the foregoing reasons, among others, including SCI's authority and

17   exercise of authority with respect to human resources services and support, training

18   function, publication of communications across its network, administration of benefit

19   programs, and maintenance of the payroll department, SCI provides centralized control

20   over defendants' labor relations.

21        132.    Because SCI, in concert with others, has the authority to, and does, through

22   its agents, make decisions concerning human resources issues, including employees' work

23   schedules and/or conditions of employment, controlling the drafting and enforcement of

24   the policies which govern employees' schedules and/or conditions of employment, and

25   administering employees' benefit programs, it plays a central role in operations of

26   defendants' business functions, particularly in regards to the employment of Plaintiffs.

27        133.    Because SCI, in concert with others, has the authority to, and does, through

1    its agents, make decisions concerning the illegal policies complained of in this case,

2    advising of defendants' agents on the enforcement of the illegal policies complained of in

3    this case and ensuring defendants' compliance or non-compliance with federal law,

4    including the requirements of the FLSA, ERISA and RICO, SCI plays a central role in the

5    violations complained of in this action.

6        134.    Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI

7    Support Centers, SCI and the other defendants share common ownership.

8        135.    Because SCI maintains and is subject to centralized management directions

9    and decisions that govern the entities it owns, directly or indirectly, including a single line

10    management model applicable to the entire SCI network, SCI and the other defendants

11    share common management.

12        136.    Because SCI maintains and is subject to a single line management model

13    applicable to the entire SCI network for the purpose of streamlining the organization and

14    achieving operational efficiencies, SCI and the other defendants share functional

15    integration of operations.

16        137.    Because SCI, in concert with others, has the authority to, and does, through

17    its agents, make decisions concerning drafting and enforcing employment and human

18    resources policies related to employees, centrally controlling the payroll functions related

19    to employees' employment, providing services and support with respect to human

20    resources, training, and nationwide communications with employees, and is subject to a

21    network-wide single line management model, SCI is not completely disassociated with

22    respect to employees' employment.

23        138.    SCI may be deemed to share control of employees, directly or indirectly, by

24    reason of the fact that it is under common control with the SCI Cooperative, the SCI

25    Support Centers and the funeral home locations, all of which are owned by SCI, directly or

26    indirectly, and because SCI plays a central role in the drafting and enforcement of the

27    employment and human resources policies related to employees, centrally controlling the

1   payroll functions related to employees' employment, providing services and support with

2   respect to human resources, training, and nationwide communications with employees, and

3   maintains and is subject to a network-wide single line management model.

4       139.   Because SCI maintains and is part of an extensive and complex network

5   through which it promotes a fraud or injustice in attempting to shield from liability itself

6   and other entities which are responsible for employees' employment and in preventing

7   employees from accurately determining the identity of their employers, SCI is an alter ego

8   of the other defendants and the other entities it owns.

9       140.   Based upon the foregoing, SCI is liable to employees because of its central

10  role in operating the business, its role in the violations complained of in this action, its

11  status as employer, joint employer, single employer, alter ego, or otherwise according to

12  federal and state common law.

13  ***Jane D. Jones Is Liable to Plaintiffs***

14      141.   Defendant Jane D. Jones has acted as Vice President of Human Resources

15  for SCI since 2005.

16      142.   Defendants' public filings reflect that Ms. Jones "oversees human resources,

17  training and education, and payroll and commission services – activities that assist

18  approximately 20,000 employees in North America."

19      143.   Upon information and belief, including defendants' admissions, Ms. Jones is

20  responsible for, provides direction and control over, and is authorized to direct all aspects

21  of human resources functions across SCI's network.

22      144.   Upon information and belief, including defendants' admissions, due in part

23  to her role of overseeing human resources, training and education, and payroll and

24  commission services, in concert with others, Ms. Jones is actively involved in the creation

25  of the illegal policies complained of in this case, including, but not limited to, the On Call

26  Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs

27  Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

145.    Upon information and belief, including defendants' admissions, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

146.    Upon information and belief, including defendants' admissions, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

147.    Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

148.    Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

149.    Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved decisions that set standard pay scales.

150.    Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and

communications with employees about human resources issues and policies.

151.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

152.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in training and education functions across SCI's network.

153.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

154.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in payroll and commission functions across SCI's network.

155.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

156.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in benefit plans across SCI's network.

157.   Upon information and belief, including defendants' admissions, Ms. Jones, in concert with others, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

158.   Because Ms. Jones has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees,

1    and control the drafting and enforcement of the policies which govern the hiring and firing

2    of employees, Ms. Jones has the power to hire and fire employees.

3        159.    Because Ms. Jones has authority to establish work schedules and/or

4    conditions of employment, provide and direct support regarding human resources issues,

5    including work schedules and/or conditions of employment, control the drafting and

6    enforcement of the policies which govern employees' schedules and/or conditions of

7    employment, establish the type and scope of training employees receive, and administer

8    employees' benefit programs, including standard benefit levels and the type and scope of

9    benefits available to employees, Ms. Jones supervises and controls employees' work

10   schedules and/or conditions of employment.

11       160.    Because Ms. Jones has authority to establish employees' rate and method of

12   payment and centrally control payroll functions, including standard pay scales, the

13   provision of payroll information, and the timing of payment, Ms. Jones determines the rate

14   and method of employees' payment.

15       161.    Because Ms. Jones has authority with respect to defendants' centralized

16   records, including a database regarding employees' employment records, and systems for

17   keeping and maintaining payroll, benefits, and other employment-related records, Ms.

18   Jones maintains employees' employment records.

19       162.    Because Ms. Jones provides day-to-day support regarding human resources

20   issues, including employees' work schedules and/or conditions of employment, controls

21   the drafting and enforcement of the policies which govern employees' schedules and/or

22   conditions of employment, and administers employees' benefit programs, she is

23   affirmatively, directly, and actively involved in operations of defendants' business

24   functions, particularly in regards to the employment of Plaintiffs.

25       163.    Because Ms. Jones is actively involved in the creation of the illegal policies

26   complained of in this case, actively advises defendants' agents on the enforcement of the

27   illegal policies complained of in this case and actively ensures defendants' compliance or

1  non-compliance with federal law, including the requirements of the FLSA, ERISA and

2  RICO, Ms. Jones actively participates in the violations complained of in this action.

3    164.   Based upon the foregoing, Ms. Jones is liable to Plaintiffs because of her

4  active role in operating the business, her role in the violations complained of in this action,

5  her status as an employer, or otherwise according to federal and state common law.

6  ***Gwen Petteway Is Liable to Plaintiffs***

7    165.   Defendant Gwen Petteway has acted as Human Resources Director of

8  defendant SCI Houston since 2005.

9    166.   Ms. Petteway's job responsibilities include familiarity "with the human

10  resources services of the subsidiary and affiliate companies of SCI, as well as training and

11  benefits provided to those companies." Appendix C at ¶3.

12    167.   As Human resources Director, Ms. Petteway's job responsibilities include

13  providing and/or supervising "day-to-day human resources services and support for

14  [defendants'] funeral home locations." Appendix C at ¶3.

15    168.   Upon information and belief, including defendants' admissions, due in part

16  to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively

17  involved, and plays a central role, in the creation of the illegal policies complained of in

18  this case, including, but not limited to, the On Call Pay Policy, Community Work Policy,

19  Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction

20  Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the

21  policy regarding the calculation of Plaintiffs' overtime.

22    169.   Upon information and belief, including defendants' admissions, due in part

23  to her role as Human Resources Director, Ms. Petteway, in concert with others, actively,

24  and in a central role, advises defendants' agents on the enforcement of the illegal policies

25  complained of in this case, including, but not limited to, the On Call Pay Policy,

26  Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy,

27  Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work

1 │ Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

2 │    170.    Upon information and belief, including defendants' admissions, due in part

3 │ to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively

4 │ involved, and plays a central role, in ensuring defendants' compliance or non-compliance

5 │ with federal law, including the requirements of the FLSA, ERISA and RICO.

6 │    171.    Upon information and belief, including defendants' admissions, Ms.

7 │ Petteway, in concert with others, is actively involved, and plays a central role, in human

8 │ resources functions across SCI's network.

9 │    172.    Upon information and belief, including defendants' admissions, Ms.

10 │ Petteway, in concert with others, is actively involved, and plays a central role, in day-to-

11 │ day human resources services and support.

12 │    173.    Upon information and belief, including defendants' admissions, Ms.

13 │ Petteway, in concert with others, is actively involved, and plays a central role, in reviewing

14 │ and counseling defendants regarding employment decisions, including hiring and firing of

15 │ Plaintiffs.

16 │    174.    Upon information and belief, including defendants' admissions, Ms.

17 │ Petteway, in concert with others, is actively involved, and plays a central role, in decisions

18 │ that set employee's schedules, hours and standard benefit levels.

19 │    175.    Upon information and belief, including defendants' admissions, Ms.

20 │ Petteway, in concert with others, is actively involved, and plays a central role, in decisions

21 │ that set standard pay scales.

22 │    176.    Upon information and belief, including defendants' admissions, Ms.

23 │ Petteway, in concert with others, is actively involved, and plays a central role, in

24 │ defendants' human resources policies, resolving issues and disputes regarding policies and

25 │ their applications, counseling locations receive regarding human resources issues,

26 │ providing day-to-day services and support regarding human resources issues, and

27 │ communications with employees about human resources issues and policies.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1   177.   Upon information and belief, including defendants' admissions, Ms.

2   Petteway, in concert with others, is actively involved in defendants' employment and

3   human resources records, including the systems for keeping and maintaining those records.

4   178.   Upon information and belief, including defendants' admissions, Ms.

5   Petteway, in concert with others, is actively involved, and plays a central role, in training

6   and education functions across SCI's network.

7   179.   Upon information and belief, including defendants' admissions, Ms.

8   Petteway, in concert with others, is actively involved, and plays a central role, in decisions

9   that determine the type and scope of training employees must attend as well as any

10  compensation they receive for attending training.

11  180.   Upon information and belief, including defendants' admissions, Ms.

12  Petteway, in concert with others, is actively involved, and plays a central role, in payroll

13  and commission functions across SCI's network.

14  181.   Upon information and belief, including defendants' admissions, Ms.

15  Petteway, in concert with others, is actively involved in the system for keeping and

16  maintaining employees' payroll records, the timing and method with which payment is

17  conveyed to employees, and the manner and method in which employees receive payroll

18  information including their payroll checks.

19  182.   Upon information and belief, including defendants' admissions, Ms.

20  Petteway, in concert with others, is actively involved, and plays a central role, in

21  defendants' benefit plans.

22  183.   Upon information and belief, including defendants' admissions, Ms.

23  Petteway, in concert with others, is actively involved, and plays a central role, in the type

24  and scope of benefits available to employees, the method and manner in which information

25  regarding those plans is conveyed to employees, and the system for keeping and

26  maintaining records related to employees' benefits.

27  184.   Because Ms. Petteway has authority to hire or fire employees, provide and

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1  direct support regarding human resources issues, including the hiring and firing of

2  Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring

3  and firing of employees, Ms. Petteway has the power to hire and fire employees.

4      185.  Because Ms. Petteway has authority to establish work schedules and/or

5  conditions of employment, provide and direct support regarding human resources issues,

6  including work schedules and/or conditions of employment, control the drafting and

7  enforcement of the policies which govern employees' schedules and/or conditions of

8  employment, establish the type and scope of training employees receive, and administer

9  employees' benefit programs, including standard benefit levels and the type and scope of

10  benefits available to employees, Ms. Petteway supervises and controls employees' work

11  schedules and/or conditions of employment.

12      186.  Because Ms. Petteway has authority to establish employees' rate and method

13  of payment and centrally control payroll functions, including standard pay scales, the

14  provision of payroll information, and the timing of payment, Ms. Petteway determines the

15  rate and method of employees' payment.

16      187.  Because Ms. Petteway has authority with respect to defendants' centralized

17  records, including a database regarding employees' employment records, and systems for

18  keeping and maintaining payroll, benefits, and other employment-related records, Ms.

19  Petteway maintains employees' employment records.

20      188.  Because Ms. Petteway is actively involved, or plays a central role, in day-to-

21  day support regarding human resources issues, including employees' work schedules

22  and/or conditions of employment, controls the drafting and enforcement of the policies

23  which govern employees' schedules and/or conditions of employment, and administers

24  employees' benefit programs, she is affirmatively, directly, and actively involved in

25  operations of defendants' business functions, particularly in regards to the employment of

26  Plaintiffs.

27      189.  Because Ms. Petteway is actively involved, or plays a central role, in the

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1    creation of the illegal policies complained of in this case, actively advises defendants'

2    agents on the enforcement of the illegal policies complained of in this case and actively

3    ensures defendants' compliance or non-compliance with federal law, including the

4    requirements of the FLSA, ERISA and RICO, she actively participates, or plays a central

5    role, in the violations complained of in this action.

6        190.    Based upon the foregoing, Ms. Petteway is liable to Plaintiffs because of her

7    status as an employer according to federal and state common law.

8    ***Thomas Ryan Is Liable to Plaintiffs***

9        191.    Defendant Thomas Ryan has acted as President and Chief Executive Officer

10   of SCI since in or around 2003.

11       192.    Upon information and belief, including defendants' admissions, Mr. Ryan's

12   responsibilities include actively managing SCI and its network.

13       193.    Upon information and belief, including defendants' admissions, in concert

14   with others, Mr. Ryan has the authority to, and does, make decisions that concern the

15   policies defendants adopt and the implementation of those policies.

16       194.    Upon information and belief, including defendants' admissions, in concert

17   with others, Mr. Ryan has the authority to, and does, make decisions that concern

18   defendants' operations, including functions related to employment, human resources,

19   training, payroll, and benefits.

20       195.    Upon information and belief, including defendants' admissions, due in part

21   to his role as President and Chief Executive Officer, Mr. Ryan is actively involved in the

22   creation of the illegal policies complained of in this case, including, but not limited to, the

23   On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs

24   Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay

25   Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of

26   Plaintiffs' overtime.

27       196.    Upon information and belief, including defendants' admissions, due in part

1    to his role as President and Chief Executive Officer, Mr. Ryan actively advises defendants'

2    agents on the enforcement of the illegal policies complained of in this case, including, but

3    not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation

4    Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for

5    Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the

6    calculation of Plaintiffs' overtime.

7        197.    Upon information and belief, including defendants' admissions, due in part

8    to his role as President and Chief Executive Officer, Mr. Ryan actively ensures defendants'

9    compliance or non-compliance with federal law, including the requirements of the FLSA,

10   ERISA and RICO.

11       198.    Upon information and belief, including defendants' admissions, in concert

12   with others, Mr. Ryan has the authority to, and does, make decisions that concern the

13   reviewing and counseling of defendants regarding employment decisions, including hiring

14   and firing of Plaintiffs.

15       199.    Upon information and belief, including defendants' admissions, in concert

16   with others, Mr. Ryan has the authority to, and does, make decisions that concern

17   employees' schedules, hours and standard benefit levels.

18       200.    Upon information and belief, including defendants' admissions, in concert

19   with others, Mr. Ryan has the authority to, and does, make decisions that concern standard

20   pay scales.

21       201.    Upon information and belief, including defendants' admissions, in concert

22   with others, Mr. Ryan has the authority to, and does, make decisions that concern

23   defendants' human resources policies, the resolution issues and disputes regarding policies

24   and their applications, the counsel locations receive regarding human resources issues, and

25   communications with employees about human resources issues and policies.

26       202.    Upon information and belief, including defendants' admissions, in concert

27   with others, Mr. Ryan has the authority to, and does, make decisions that concern

defendants' employment and human resources records, including the systems for keeping and maintaining those records.

203.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern training and education functions across SCI's network.

204.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

205.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern payroll and commission functions across SCI's network.

206.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

207.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern benefit plans across SCI's network.

208.   Upon information and belief, including defendants' admissions, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

209.   Because Mr. Ryan has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and

1  control the drafting and enforcement of the policies which govern the hiring and firing of

2  employees, Mr. Ryan has the power to hire and fire employees.

3      210.   Because Mr. Ryan has authority to establish work schedules and/or

4  conditions of employment, provide and direct support regarding human resources issues,

5  including work schedules and/or conditions of employment, control the drafting and

6  enforcement of the policies which govern employees' schedules and/or conditions of

7  employment, establish the type and scope of training employees receive, and administer

8  employees' benefit programs, including standard benefit levels and the type and scope of

9  benefits available to employees, Mr. Ryan supervises and controls employees' work

10  schedules and/or conditions of employment.

11      211.   Because Mr. Ryan has authority to establish employees' rate and method of

12  payment and centrally control payroll functions, including standard pay scales, the

13  provision of payroll information, and the timing of payment, Mr. Ryan determines the rate

14  and method of employees' payment.

15      212.   Because Mr. Ryan has authority with respect to defendants' centralized

16  records, including a database regarding employees' employment records, and systems for

17  keeping and maintaining payroll, benefits, and other employment-related records, Mr.

18  Ryan maintains employees' employment records.

19      213.   Because Mr. Ryan provides day-to-day support regarding human resources

20  issues, including employees' work schedules and/or conditions of employment, controls

21  the drafting and enforcement of the policies which govern employees' schedules and/or

22  conditions of employment, and administers employees' benefit programs, he is

23  affirmatively, directly, and actively involved in operations of the defendants' business

24  functions, particularly in regards to the employment of Plaintiffs.

25      214.   Because Mr. Ryan is actively involved in the creation of the illegal policies

26  complained of in this case, actively advises defendants' agents on the enforcement of the

27  illegal policies complained of in this case and actively ensures defendants' compliance or

1  non-compliance with federal law, including the requirements of the FLSA, ERISA and

2  RICO, he actively participates in the violations complained of in this action.

3      215.   Based upon the foregoing, Mr. Ryan is liable to Plaintiffs because of his

4  active role in operating the business, his status as an employer, or according to federal and

5  state common law.

6  ***Curtis Briggs Is Liable to Plaintiffs***

7      216.   Defendant Curtis Briggs is President and/or Vice President of various entities

8  owned by SCI, some of which are also related to the SCI Cooperative and/or the SCI

9  Support Centers.

10     217.   Mr. Briggs is Vice President for the General Partner of SCI Eastern; Vice

11  President for the General Partner of SCI Houston; President and/or Vice President of the

12  SCI Cooperative; President and/or Vice President of SCI Western.

13     218.   Additionally, Mr. Briggs has executed employment contracts with various

14  executives in his role as Vice President of SCI Executive Services, Inc.

15     219.   Upon information and belief, including defendants' admissions, Mr. Briggs's

16  responsibilities include actively managing the entities for which he is an officer and the

17  defendants' network.

18     220.   Upon information and belief, including defendants' admissions, in concert

19  with others, Mr. Briggs has the authority to, and does, make decisions that concern the

20  policies defendants adopt and for the implementation of those policies.

21     221.   Upon information and belief, including defendants' admissions, in concert

22  with others, Mr. Briggs has the authority to, and does, make decisions that concern

23  defendants' operations, including functions related to employment, human resources,

24  training, payroll, and benefits.

25     222.   Upon information and belief, including defendants' admissions, due in part

26  to his numerous roles, Mr. Briggs is actively involved in the creation of the illegal policies

27  complained of in this case, including, but not limited to, the On Call Pay Policy,

Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

223.    Upon information and belief, including defendants' admissions, due in part to his numerous roles, Mr. Briggs actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Training Compensation Policy, Pre-Needs Appointment Policy, Meal Break Deduction Policy, Pre-Approval for Overtime Pay Policy, Unrecorded Work Time Policy, and the policy regarding the calculation of Plaintiffs' overtime.

224.    Upon information and belief, including defendants' admissions, due in part to his numerous roles, Mr. Briggs actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

225.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

226.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern the setting of employees' schedules, hours and standard benefit levels.

227.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern  the setting of standard pay scales.

228.    Upon information and belief, including defendants' admissions, in concert with others, Mr. Briggs has the authority to, and does, make decisions that concern defendants' human resources policies, issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and

1 communications with employees about human resources issues and policies.

2      229.   Upon information and belief, including defendants' admissions, in concert

3 with others, Mr. Briggs has the authority to, and does, make decisions that concern

4 defendants' employment and human resources records, including the systems for keeping

5 and maintaining those records.

6      230.   Upon information and belief, including defendants' admissions, in concert

7 with others, Mr. Briggs has the authority to, and does, make decisions that concern training

8 and education functions across defendants' network.

9      231.   Upon information and belief, including defendants' admissions, in concert

10 with others, Mr. Briggs has the authority to, and does, make decisions that concern the

11 type and scope of training employees must attend as well as any compensation they receive

12 for attending training.

13      232.   Upon information and belief, including defendants' admissions, in concert

14 with others, Mr. Briggs has the authority to, and does, make decisions that concern payroll

15 and commission functions across defendants' network.

16      233.   Upon information and belief, including defendants' admissions, in concert

17 with others, Mr. Briggs has the authority to, and does, make decisions that concern the

18 system for keeping and maintaining employees' payroll records, the timing and method

19 with which payment is conveyed to employees, and the manner and method in which

20 employees receive payroll information including their payroll checks.

21      234.   Upon information and belief, including defendants' admissions, in concert

22 with others, Mr. Briggs has the authority to, and does, make decisions that concern benefit

23 plans across defendants' network.

24      235.   Upon information and belief, including defendants' admissions, in concert

25 with others, Mr. Briggs has the authority to, and does, make decisions that concern the

26 type and scope of benefits available to employees, the method and manner in which

27 information regarding those plans is conveyed to employees, and the system for keeping

1 ‖ and maintaining records related to employees' benefits.

2 ‖     236.  Because Mr. Briggs has authority to hire or fire employees, provide and

3 ‖ direct support regarding human resources issues, including the hiring and firing of

4 ‖ employees, and control the drafting and enforcement of the policies which govern the

5 ‖ hiring and firing of employees, Mr. Briggs has the power to hire and fire employees.

6 ‖     237.  Because Mr. Briggs has authority to establish work schedules and/or

7 ‖ conditions of employment, provide and direct support regarding human resources issues,

8 ‖ including work schedules and/or conditions of employment, control the drafting and

9 ‖ enforcement of the policies which govern employees' schedules and/or conditions of

10 ‖ employment, establish the type and scope of training employees receive, and administer

11 ‖ employees' benefit programs, including standard benefit levels and the type and scope of

12 ‖ benefits available to employees, Mr. Briggs supervises and controls employees' work

13 ‖ schedules and/or conditions of employment.

14 ‖     238.  Because Mr. Briggs has authority to establish employees' rate and method of

15 ‖ payment and centrally control payroll functions, including standard pay scales, the

16 ‖ provision of payroll information, and the timing of payment, Mr. Briggs determines the

17 ‖ rate and method of employees' payment.

18 ‖     239.  Because Mr. Briggs has authority with respect to defendants' centralized

19 ‖ records, including a database regarding employees' employment records, and systems for

20 ‖ keeping and maintaining payroll, benefits, and other employment-related records, Mr.

21 ‖ Briggs maintains employees' employment records.

22 ‖     240.  Because Mr. Briggs provides support regarding human resources issues,

23 ‖ including employees' work schedules and/or conditions of employment, controls the

24 ‖ drafting and enforcement of the policies which govern employees' schedules and/or

25 ‖ conditions of employment, and administers employees' benefit programs, he is

26 ‖ affirmatively, directly, and actively involved in operations of defendants' business

27 ‖ functions, particularly in regards to the employment of Plaintiffs.

241.  Because Mr. Briggs is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, Mr. Briggs actively participates in the violations complained of in this action.

242.  Based upon the foregoing, Mr. Briggs is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to federal and state common law.

## VI.    FACTUAL BACKGROUND

243.  Plaintiffs worked for defendants and were not paid their regular or statutorily required rate of pay for all hours worked and were not paid at time and one-half for hours they worked over 40 in a week.

244.  Defendants' policy and/or practice was to not compensate Plaintiffs for work they suffered or permitted Plaintiffs to perform.

245.  Defendants knew Plaintiffs were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Plaintiffs worked.

246.  Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

247.  The failure to pay overtime is willful.

248.  Examples of defendants' policies and practices to deprive Plaintiffs of their earned wages and wage premiums are set forth below:

a.  **Subclass A:**  Defendants implemented an "On Call Pay Policy."  Under the policy, employees were suffered or permitted to perform work by handling calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed outside.

b.  **Subclass B:**  Defendants implemented a "Community Work Policy."

Under the policy, defendants suffered or permitted their employees to perform "Community Work" so as to increase revenues for defendants. Defendants did not compensate the employees for such time spent in Community Work in furtherance of the employer's business under the "Community Work Policy."

c. **Subclass C:** Defendants' implemented a "Training Compensation Policy." Under the policy, defendants suffered or permitted their employees to take various types of training. Defendants did not pay for such training, despite suffering or permitting employees to perform such work.

d. **Subclass D:** Defendants implemented a "Pre-Needs Appointment Policy." Defendants suffered or permitted employees to meet with clients to discuss pre-need purchases. To the degree that such appointments were not considered part of the employees' schedule, the employees were suffered or permitted to continue the appointments, but were not paid for such time worked under the "Pre-Needs Appointment Policy." Defendants' management would sometimes attempt to justify this policy on the grounds that the employee would likely receive a commission if the client purchased a pre-needs product.

e. **Subclass E:** Defendants implemented a "Meal Break Deduction Policy." Under the policy, defendants did not pay for meal breaks. Defendants did, however, suffer and permit employees to perform work during such meal breaks, but pursuant to defendants' "Meal Break Deduction Policy," time spent on meal "breaks" was still deducted from the employee's pay even when defendants suffered or permitted work to be performed during such "breaks."

f. **Subclass F:** Defendants implemented a "Pre-Approval for Overtime Pay

41

Policy." Under this policy, defendants only permitted payments for overtime if the overtime was pre-approved. Defendants suffered or permitted employees to work overtime and therefore, employees were entitled to overtime payments. However, defendants refused to make the legally required payments because the time was not "pre-approved" as required under the "Pre-Approval for Overtime Pay Policy."

g. **Subclass G:** Defendants implemented an "Unrecorded Work Time Policy." Under this policy, defendants suffered or permitted employees to perform work, but directed that such work not be recorded. Defendants then refused to pay for the time worked under the "Unrecorded Work Time Policy" because, even though defendants knew such time had been worked, it had not been "recorded."

h. **Subclass H:** Defendants' policy was to not include all remuneration (such as bonuses and commissions) in the calculation of Plaintiffs' overtime.

249. Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Plaintiffs concerning their wages, hours and other conditions of employment.

250. More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

251. Defendants failed to keep accurate records of all time worked by employees. By failing to keep such records, defendants' records are legally insufficient to determine benefits.

252. Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits. Defendants, while acting as fiduciaries exercising discretion over the administration of the Plan, breached their duties to act

1  prudently and solely in the interest of the Plan's participants by failing to credit them with
2  all of the hours of service for which they were entitled to be paid, including overtime or to
3  investigate whether such hours should be credited. Under ERISA, crediting hours is a
4  fiduciary function, independent of the payment of wages, necessary to determine
5  participants' participation vesting and accrual of rights.

6      253.  As used in this Complaint, "mailed" means: (1) placing in any post office or
7  authorized depository for mailed matter, any matter or thing to be delivered by the United
8  States Postal Service; (2) causing to be deposited any matter or thing to be delivered by
9  any private or commercial interstate carrier; (3) taking or receiving therefrom any such
10 matter or thing; and/or (4) knowingly causing to be delivered by any such means any such
11 matter.

12     254.  Plaintiffs allege that Defendants devised, intended to devise, and carried out
13 a scheme to cheat Plaintiffs out of their property and to convert Plaintiffs' property,
14 including their wages and/or overtime pay (the "Scheme"). Defendants' Scheme consisted
15 of illegally, willfully and systematically withholding or refusing to pay Plaintiffs their
16 regular or statutorily required rate of pay for all hours worked in violation of federal law,
17 employing the various policies described previously in this Complaint.

18     255. Defendants'    Scheme    involved    the    employment    of    material
19 misrepresentations and/or omissions and other deceptive practices reasonably calculated to
20 deceive Plaintiffs. The Scheme involved depriving Plaintiffs of their lawful entitlement to
21 overtime.

22     256.  In executing or attempting to execute the Scheme and to receive the financial
23 benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to
24 Plaintiffs or between defendants' business locations. These mailings occurred on a regular
25 basis and more than 100 such mailings occurred in the last 10 years.

26     257.  The payroll checks were false and deceptive because they mislead Plaintiffs
27 about the amount of wages to which they were entitled, as well as their status and rights

1   under the FLSA. Plaintiffs relied to their detriment on the misleading payroll checks that

2   defendants mailed and those misleading documents were a proximate cause of Plaintiffs'

3   injuries.

4       258.   Defendants' predicate acts of mailing the misleading payroll checks in

5   furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C.

6   § 1961(5) based upon both the relationship between the acts and continuity over the period

7   of time of the acts. The relationship was reflected because the acts were connected to each

8   other in furtherance of the Scheme. Continuity was reflected by both the repeated nature

9   of the mailings during and in furtherance of the Scheme and the threat of similar acts

10  occurring in the future. The threat was reflected by the continuing and ongoing nature of

11  the acts.

12      259.   Defendants' predicate acts were related, because they reflected the same

13  purpose or goal (to retain wages and overtime pay due to Plaintiffs for the economic

14  benefit of defendants and members of the enterprise); results (retention of wages and

15  overtime pay); participants (defendants and other members of the enterprise); victims

16  (Plaintiffs); and methods of commission (the Scheme and other acts described in the

17  Complaint). The acts were interrelated and not isolated events, since they were carried out

18  for the same purposes in a continuous manner over a substantial period of time.

19      260.   At all relevant times, in connection with the Scheme, defendants acted with

20  malice, intent, knowledge, and in reckless disregard of Plaintiffs' rights.

21      261.   Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. §§

22  1961(3) and 1964.

23      262.   Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3)

24  and 1962(c).

25      263.   Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4)

26  and 1962(a), which was engaged in or the activities of which affected interstate and

27  foreign commerce.

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

264. Each defendant received income from a pattern of conduct unlawful under RICO, in which defendants participated through continuous instances of providing Plaintiffs with misleading documents which defendants mailed and upon which Plaintiffs relied to their detriment.

265. Plaintiffs were injured in their business and property under 18 U.S.C. § 1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

## CLAIM I

### FLSA

266. The preceding paragraphs are incorporated herein as if fully set forth herein.

267. Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs.

## CLAIM II

### ERISA

268. The preceding paragraphs are incorporated herein as if fully set forth herein.

269. Plaintiffs bring these claims under 29 U.S.C. § 1132(a)(3), which confers on Plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

270. Defendants failed to keep accurate records of all time worked by Plan participants. By failing to keep such records, defendants' records are legally insufficient to determine benefits. Defendants failed to keep records "sufficient to determine the benefits due or which may become due" under the terms of the Plan as required by ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

## CLAIM III

### ERISA

271. The preceding paragraphs are incorporated herein as if fully set forth herein.

272. Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

1

### CLAIM IV

2

### RICO

3    273.    The preceding paragraphs are incorporated herein as if fully set forth herein.

4    274.    Plaintiffs bring these claims under 18 U.S.C. § 1964(c), which confers on

5    private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C.

6    § 1962.

7    275.    Defendants' conduct, and the conduct of other members of the enterprise,

8    injured Plaintiffs by refusing to pay their regular or statutorily required rate of pay for all

9    hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct

10    of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme

11    to obtain Plaintiffs' property by means of false or fraudulent representations, at least some

12    of which were made in the misleading payroll checks which defendants mailed.

13    **WHEREFORE**, Plaintiffs demand judgment against defendants in their favor and

14    that they be given the following relief:

15    (a)    an order preliminarily and permanently restraining defendants from engaging

16            in the aforementioned pay violations;

17
18    (b)    an award of the value of Plaintiffs' unpaid wages;

19    (c)    liquidated, compensatory, consequential, punitive and treble damages;

20
21    (d)    an award of reasonable attorneys' fees, expenses, expert fees and costs

22            incurred in vindicating Plaintiffs' rights;

23    (e)    an award of pre- and post-judgment interest; and

24
25    (f)    such other and further legal or equitable relief as this Court deems to be just

26            and appropriate.

27

---

46

COMPLAINT— Collective Action, DEMAND FOR JURY TRIAL

1

2

**JURY DEMAND**

3

Plaintiffs demand a jury to hear and decide all issues of fact.

4

5

Respectfully Submitted,
SCHLEIER LAW OFFICES, P.C.

6

7

Date: January 15, 2008

By: /s/ Tod F. Schleier

8

Tod F. Schleier
Bradley H. Schleier
3101 N. Central Avenue
Suite 1090
Phoenix, AZ 85012
Telephone: (602) 277-0157

9

10

11

12

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Annette Gifford, NY Attorney No. 4105870
Justin Cordello, NY Attorney No. 4131447
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

13

14

15

16

17

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256

18

19

20

21

22

Attorneys for Plaintiffs

23

24

25

26

27

47

**EXHIBIT H**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLAUDE BRYANT, et al.,                          Nos. C 07-05696 SI; C 08-01190 SI

        Plaintiffs,                          **ORDER TO SHOW CAUSE**

    v.

ALDERWOODS GROUP, INC., et al.,

        Defendants.
_____/

A case management conference in case number 07-5696 is currently scheduled for Friday, April 4, 2008. In advance of that conference, counsel for both parties are ordered to file a joint statement informing the Court of the status and background of all pending and closed wage-related cases, in both state and federal court, brought by plaintiffs or similarly-situated plaintiffs against these defendants. The parties shall also show cause why case numbers 07-5696 and 08-1190 should not be transferred to the Western District of Pennsylvania, where a federal judge has already been overseeing a nearly identical case. The parties shall file the joint statement by Friday, March 28, 2008.

**IT IS SO ORDERED.**

Dated: March 18, 2008

                              SUSAN ILLSTON
                              United States District Judge

**United States District Court**
For the Northern District of California



**EXHIBIT I**

1   Sanford Jay Rosen, No. 62566
    Maria V. Morris, No. 223903
2   Lori E. Rifkin, No. 244081
    ROSEN BIEN & GALVAN, LLP
3   315 Montgomery Street, 10th Floor
    San Francisco, CA 94104
4   Telephone: 415-433-6830
    Facsimile: 415-433-7104
5   Email: srosen@rbg-law.com

6   *[Additional Attorneys listed on*
    *signature page]*

7

8   Attorneys for Plaintiffs
    CLAUDE BRYANT, ET. AL.

9

Steven Hazard Gurnee, No. 66056
David Merrill Daniels, No. 170315
John A. Mason
Nicholas Pierre Forestiere, No. 125118
GURNEE & DANIELS LLP
2240 Douglas Blvd, Suite150
Roseville, CA 95648
Telephone: 916-797-3100
Facsimile: 916-797-3131
david@gurneelaw.com

Attorneys for Defendant
ALDERWOODS GROUP, INC.,
ET AL.

10

11                     UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13

14  Claude Bryant, et al.,                 Case No. C 07-05696 SI; C 08-01190
                                           SI
15              Plaintiffs,
                                           **JOINT RESPONSE TO ORDER
16       v.                                TO SHOW CAUSE (DOCKET NO.
                                           32)**
17  Alderwoods Group, Inc., et al.,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

All of the actions described in this Joint Response relate to the claims of current and former employees who assert violations of federal and state laws resulting from their allegations that they were not properly compensated for all hours worked. The defendants in these matters include Alderwoods Group, Inc. ("Alderwoods"), Service Corporation International ("SCI"), subsidiaries of SCI and employees of the various corporate defendants. Prior to November, 2006, Alderwoods and SCI were competitors in the funeral services industry. In November, 2006, however, Alderwoods was merged with a subsidiary of SCI.

On March 18, 2008, the Court issued an Order to Show Cause requiring counsel for the parties, in advance of the April 7, 2008 Case Management Conference[1], to submit a joint statement "informing the Court of the status and background of all pending and closed wage-related cases, in both state and federal court, brought by plaintiffs or similarly situated plaintiffs against these defendants." In addition, the Court ordered that the parties "show cause why case numbers 07-5696 [*Bryant I*] and 08-1190 [*Bryant II*] should not be transferred to the Western District of Pennsylvania, where a federal judge has been overseeing a nearly identical case." (*Bryant I* Docket No. 32.) Counsel for the respective parties have met and conferred and submit the following Joint Statement in compliance with the Court's order.

II.    **STATUS AND BACKGROUND OF ALL PENDING AND CLOSED WAGE-RELATED CASES**

On December 8, 2006, Plaintiffs' counsel filed a complaint against Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI") in the U.S. District Court for the Western District of Pennsylvania on behalf of Deborah Prise and Heather Rady, captioned *Prise, et al. v. Alderwoods Group, Inc. and Service Corporation*

---

[1] On March 27, 2008, plaintiffs filed an Administrative Motion requesting that the scheduled conference be delayed until after the Court's ruling on the threshold issues raised in plaintiffs' pending motions for remand. (*Bryant I* Docket No. 40.) Defendants are opposed to this request and will file a timely opposition brief.

1    *International*, W.D. Pa. Case No. 06-1641 ("*Prise I*"), asserting claims under the Fair

2    Labor Standards Act of 1938 ("FLSA") and various state laws. As a result of

3    determinations made in that case granting motions by defendants to dismiss certain claims,

4    Plaintiffs' counsel subsequently filed five additional actions on behalf of various plaintiffs

5    against Alderwoods and/or SCI and/or certain SCI subsidiaries and employees of those

6    subsidiaries.[2] These actions are described below in chronological order.

7         *Prise I.* Deborah Prise and Heather Rady filed this action on December 8, 2006

8    alleging violations of the FLSA and the wage and hour laws of 38 states and territories.

9    Plaintiffs claimed that Alderwoods and SCI failed to pay overtime to employees for

10   certain types of alleged off-the-clock work – specifically, work allegedly performed while

11   on call, community service work, time spent studying for insurance licenses, time spent

12   receiving other required training, work allegedly performed during meal breaks,

13   unapproved overtime, appointments that were not considered part of employees'

14   scheduled hours, and unrecorded work – and sought compensatory damages, liquidated

15   damages, and attorneys' fees, among other forms of relief. Plaintiffs also alleged that

16   defendants failed to include all remuneration in employees' overtime calculations.

17   Plaintiffs brought the case as a collective action pursuant to FLSA Section 216(b) and also

18   sought Fed. R. Civ. P. 23 certification with respect to their state law claims. On April 19,

19   2007, Judge Joy Flowers Conti authorized FLSA collective action notice to employees in

20   seven Alderwoods job titles, and denied notice with respect to SCI. On June 8, 2007, the

21   Court granted defendants' motion to dismiss plaintiffs' state law class action claims,

22   declining to assert supplemental jurisdiction. On November 15, 2007, the Court granted

23   defendants' motion to dismiss SCI from the case without prejudice, and denied leave to

24   amend the complaint to add certain SCI subsidiaries as defendants, finding that those

25

26         [2] Plaintiffs assert one of those actions, described below as "*Prise II*", was voluntarily
     dismissed and refiled as two separate actions, *Helm* and *Bryant II*, in deference to one such
27   determination by the *Prise I* Court with respect to defendants' argument that claims of
     Alderwoods employees should be heard separately from claims of those employed at other SCI
28   subsidiaries. Thus, although five actions were filed, only four remain pending.

1    entities could not properly be joined in an action with Alderwoods. (Defendants assert,

2    but plaintiffs disagree, that the Court also found that plaintiffs' allegations against SCI and

3    its subsidiaries were too conclusory to state a claim.) Plaintiffs' FLSA claims against

4    Alderwoods remain pending.

5        *Prise, et al. v. Alderwoods Group, Inc. and Service Corporation International*, N.D.

6    Cal. Case No. 07-cv-5140-MJJ ("*Prise II*"). Deborah Prise, Heather Rady, and other

7    plaintiffs filed this action against Alderwoods and SCI in the Alameda County Superior

8    Court on July 9, 2007. Plaintiffs brought claims on behalf of both Alderwoods employees

9    and employees who worked for other SCI subsidiaries for violations of wage and hour

10   laws of 38 states and territories alleging that defendants failed to pay overtime for certain

11   types of alleged off-the-clock work – specifically, work allegedly performed while on call,

12   community service work, time spent studying for insurance licenses, time spent receiving

13   other required training, work allegedly performed during meal breaks, unapproved

14   overtime, appointments that were not considered part of employees' scheduled hours, and

15   unrecorded work. Plaintiffs also alleged that defendants failed to include all remuneration

16   in employees' overtime calculations. The complaint sought Rule 23 class certification of

17   those claims. Defendants removed the case to the U.S. District Court for the Northern

18   District of California and moved to dismiss the complaint. On December 5, 2007,

19   Plaintiffs voluntarily dismissed the case.

20       *Bryant I.* Claude Bryant, along with other plaintiffs, filed this action on November

21   8, 2007. Plaintiffs filed an amended complaint on March 5, 2008. Plaintiffs in this case

22   are individuals who did not assert claims in the *Prise I* case, including those who did not

23   timely file consent forms pursuant to notice issued by the *Prise I* Court to a subset of

24   employees. They allege that Alderwoods, SCI, certain SCI subsidiaries, and employees of

25   those subsidiaries violated the FLSA by failing to pay overtime for certain types of

26   alleged off-the-clock work – specifically, work allegedly performed while on call,

27   community service work, time spent studying for insurance licenses, time spent receiving

28   other required training, work allegedly performed during meal breaks, unapproved

1   overtime, appointments that were not considered part of employees' scheduled hours, and

2   unrecorded work. Plaintiffs also allege that defendants failed to include all remuneration

3   in employees' overtime calculations. Plaintiffs seek compensatory, punitive, and

4   liquidated damages; injunctive relief; and attorneys' fees and costs, among other forms of

5   relief. Plaintiffs also assert that they are entitled to send collective action notice under

6   FLSA Section 216(b) to other individuals who did not timely opt in to the *Prise I* case.

7   Plaintiffs served their complaint on the various defendants on or about March 7, 2008.

8   Defendants filed motions to dismiss the complaint and strike certain allegations on March

9   27, 2008.

10       *Bryant II*. Claude Bryant, along with other plaintiffs, filed this action against SCI,

11   certain SCI subsidiaries, and certain employees of those subsidiaries in Alameda County

12   Superior Court on December 5, 2007. The complaint alleges that defendants violated the

13   laws of California and 33 other states and territories by failing to pay overtime to

14   employees for certain types of alleged off-the-clock work – specifically, work allegedly

15   performed while on call, community service work, time spent studying for insurance

16   licenses, work allegedly performed during meal breaks, unapproved overtime,

17   appointments that were not considered part of employees' scheduled hours, and

18   unrecorded work. Plaintiffs also allege that defendants failed to include all remuneration

19   in employees' overtime calculations. Plaintiffs seek compensatory damages and penalties

20   under the various states' laws, and also bring claims for conversion, fraud and deceit,

21   misrepresentation, breach of contract, quantum meruit, and other theories. The complaint

22   also requested class certification of plaintiffs' claims. On February 27, 2008, defendants

23   removed the case to the U.S. District Court for the Northern District of California. On

24   March 5, 2008, defendants filed motions to dismiss the complaint. On March 24, 2008,

25   plaintiffs moved to remand the case to Alameda County Superior Court. These motions

26   remain pending before the Court.

27       *Helm, et al. v. Alderwoods Group, Inc., et al.*, N.D. Cal. Case No. 08-cv-1164-SI

28   ("*Helm*"). William Helm, Deborah Prise, and Heather Rady, along with other plaintiffs,

1    filed this action in Alameda County Superior Court on December 5, 2007. The complaint

2    asserts claims against Alderwoods – and against SCI as a successor-in-interest. Plaintiffs

3    later amended the complaint to add certain SCI subsidiaries and an individual defendant,

4    Paul Houston. The complaint asserts that defendants violated the laws of California and

5    28 other states and territories by failing to pay overtime to employees for certain types of

6    alleged off-the-clock work – specifically, work allegedly performed while on call,

7    community service work, time spent studying for insurance licenses, work allegedly

8    performed during meal breaks, unapproved overtime, appointments that were not

9    considered part of employees' scheduled hours, and unrecorded work. Plaintiffs also

10    allege that defendants failed to include all remuneration in employees' overtime

11    calculations. Plaintiffs seek compensatory damages and penalties under the various

12    states' laws, and also bring claims for conversion, fraud and deceit, misrepresentation,

13    breach of contract, quantum meruit, and other theories. The complaint seeks class

14    certification of plaintiffs' claims. On February 27, 2008, defendants removed the case to

15    the U.S. District Court for the Northern District of California. On March 5, 2008,

16    defendants filed motions to dismiss plaintiffs' complaint, with the exception of Paul

17    Houston, whose motion to dismiss and strike was filed on March 28, 2008. On March 24,

18    2008, plaintiffs moved to remand the case to Alameda County Superior Court. These

19    motions remain pending before the Court.

20        *Stickle, et al. v. SCI Market Support Center, LP, et al.*, D. Ariz. Case No. 08-cv-83-

21    MHM ("*Stickle*"). On January 15, 2008, James Stickle and other named plaintiffs filed

22    this action against SCI, various SCI subsidiaries, and certain employees of SCI

23    subsidiaries, asserting claims for violations of the FLSA, the Employee Retirement

24    Income Security Act ("ERISA"), and the Racketeer Influenced and Corrupt Organizations

25    Act ("RICO"). The complaint alleges that defendants failed to pay overtime to employees

26    for certain types of alleged off-the-clock work – specifically, work allegedly performed

27    while on call, community service work, time spent receiving required training,, work

28    allegedly performed during meal breaks, unapproved overtime, appointments that were

1    not considered part of employees' scheduled hours, and unrecorded work. Plaintiffs also

2    allege that defendants failed to include all remuneration in employees' overtime

3    calculations. Plaintiffs seek to certify an FLSA collective action for those overtime claims

4    and have filed a motion for collective action notification which is currently pending

5    before the Court. Plaintiffs' ERISA claims allege that defendants failed to keep records of

6    all time worked by plaintiffs sufficient to determine ERISA benefits due, and also allege

7    the defendants breached their fiduciary duties. Plaintiffs' RICO claims are based on

8    allegations of mail fraud for placing purportedly inaccurate payroll checks in the U.S.

9    mail. Plaintiffs seek compensatory damages, liquidated damages, punitive damages, and

10   attorneys' fees and costs. The complaint seeks collective action certification under FLSA

11   Section 216(b), and Rule 23 class certification of the ERISA claims and RICO claims.

12   Defendants moved to dismiss plaintiffs' complaint in motions filed on February 8, 2008,

13   and the motions remain pending, as do plaintiffs' pending motion for collective action

14   notification.

15   **III.    THE PARTIES' POSITION ON TRANSFER**

16        **A.    The Parties' Joint Position Regarding *Bryant I***

17        As noted above, *Bryant I* asserts the same FLSA claims of Alderwoods employees

18   currently asserted in the *Prise I* action, and neither case currently involves any state law

19   claims. The *Bryant I* action differs only in that it was brought by individuals who have

20   not asserted claims in the *Prise I* case, including those who did not timely file consent

21   forms pursuant to notice issued by the *Prise I* Court to a subset of employees.[3] The

22   parties agree that, in light of the similarity of the claims asserted in *Prise I* and *Bryant I*, it

23   is in the interests of both the judiciary and the parties to have both of those actions heard

24   in the same court, and neither party would oppose the transfer of this action to the

25   Western District of Pennsylvania.

26

27        [3] Plaintiffs note that *Bryant I* was not initially filed in the Western District of Pennsylvania
     because, at the time that action had filed, none of the plaintiffs in that action had been employed
28   in Pennsylvania.

1    The parties differ only with respect to plaintiffs' position that any such transfer

2    should prohibit either party from asserting objections to the jurisdiction, forum or venue

3    following such transfer. Defendants assert that no defendant should be forced to abandon

4    a timely-asserted and valid objection to personal jurisdiction on account of a transfer of

5    the case if such objection is still valid after the transfer.

6    **B.    Plaintiffs' Position**

7        Plaintiffs submit that neither the *Helm* matter (asserting state law claims on behalf

8    of Alderwoods employees) nor the *Bryant II* matter (asserting state law claims on behalf

9    of employees who worked for SCI affiliates other than Alderwoods—hereinafter "SCI

10    employees") should be transferred to the Western District of Pennsylvania.[4]

11        As an initial matter, neither the *Helm* nor *Bryant* matters should be pending before

12    a federal court at all, as set out in plaintiffs' pending motions to remand each of those

13    matters. The issue of this Court's subject matter jurisdiction over those two actions is a

14    threshold issue which must be determined before any other action, including the transfer

15    of these matters, is effectuated. Both of these actions should be remanded to Alameda

16    County Superior Court, where they were initially filed.

17        Furthermore, even if these matters were not subject to remand, their transfer to the

18    Western District of Pennsylvania would not be appropriate in light of the *Prise I* Court's

19    prior rulings that it was not the appropriate court to exercise jurisdiction over these state

20    law claims. Plaintiffs are unaware of any authority which would permit a District Court to

21    compel a sister court to change its prior holding regarding regarding jurisdiction,

22    particularly where the sister court previously ruled that it chose not exercise jurisdiction.

23    Instead, the interests of judicial comity and respect for the *Prise I* Court's prior rulings

24    weigh strongly against returning either *Helm* or *Bryant II* to that Court.

25        Moreover, the transfer of these matters to the *Prise I* Court would also be

26    inappropriate in light of defendants' prior motions and arguments. Defendants previously

27    _____

28        [4] In light of the parties' agreement regarding the *Bryant I* action, only the *Helm* and *Bryant II* matters are at issue.

CHI-1639883v1                                                   Joint Response to Order to Show Cause -

- 8 -

1   moved the *Prise I* Court, requesting that Court decline to hear these state law claims.

2   Having succeeded on that motion when the *Prise I* Court declined to exercise jurisdiction

3   over these claims, defendants apparently hoped plaintiffs would not follow the *Prise I*

4   Court's directive to refile these matters in state court. When plaintiffs did so, defendants

5   first removed the action from state to federal court. Now, defendants seek to return the

6   matter to the *Prise I* Court – despite the fact that defendants themselves previously

7   convinced that same Court to decline to hear these claims. Defendants have effectively

8   sent these claims on an unnecessary detour, delaying these claims from moving forward

9   for more than 8 months.

10          Finally, the *Bryant II* actions should not be transferred to the Western District of

11  Pennsylvania for the additional reason that it asserts only state law claims of SCI

12  employees, and there are currently no claims of SCI employees pending before the *Prise I*

13  Court. Again, the *Prise I* Court previously ruled on defendants' motion that the claims of

14  Alderwoods employees could not be joined with and should be heard separately from

15  those of SCI employees. For example, in opposing plaintiffs' motion for the *Prise I* Court

16  to send collective action notification to SCI employees, defendants themselves argued that

17  these claims should not be heard together:

18          the most fundamental justification for Section 216(b) collective actions is
19          the "benefit" to both the parties and the judicial system from the "efficient
            resolution in one proceeding of common issues of law and fact arising from
20          the same alleged ...activity." Such "common issues of law and fact" are
            not present here where Alderwoods and the 180 SCI subsidiaries operated
21          completely independently of each other, using their own policies and
22          procedures, for most if not all of the liability period.

23  *Prise I*, W.D. Pa. Case No. 2:06-cv-01641-JFC, Docket No. 808 at 8 (internal citations

24  omitted). The *Prise I* Court granted defendants' request to dismiss the claims of SCI

25  employees from *Prise I* and ruled that those claims should be brought in a separate action

26  That action, *Stickle*, is currently pending before the District of Arizona, where both

27  parties' motions are currently pending before the Court, including defendants' expedited

28

1  motions to dismiss.[5]

2     **C.    Defendants' Position**

3        Defendants agree with the Court that, for purposes of judicial economy and

4  efficiency, *Bryant II* and the related *Helm* case[6], should be transferred to the U.S. District

5  Court for the Western District of Pennsylvania, though it would not be appropriate to

6  consolidate those cases with the pending *Prise I* matter.  As discussed below with only a

7  few exceptions, the claims and allegations in each of these cases were, or are, pending

8  before Judge Conti in some fashion, and it would be in the interests of both the courts and

9  the parties to have these matters proceed in a single court, with a judge familiar with the

10 posture and background of each case, rather than have the cases proceed on parallel tracks

11 in different jurisdictions.

12       Plaintiffs argument that this Court should decline to transfer these cases to Judge

13 Conti based on her decision to not exercise supplemental jurisdiction over the state law

14 claims asserted in *Prise I* is a complete red herring.  Here, Defendants have removed the

15 *Bryant II* and *Helm* cases on the basis of **CAFA** jurisdiction, not supplemental jurisdiction.

16 Ironically, as defendants will discuss in detail in their oppositions to plaintiffs' remand

17 motions in *Helm* and *Bryant II*, plaintiffs took the position in *Prise I* that the Western

18 District of Pennsylvania **did** have jurisdiction over the state law claims in light of CAFA..

19 However, because this was not pled in the complaint as a basis for jurisdiction, Judge

20 Conti declined to consider this argument.

21

22       [5] Defendants' mischaracterize statements of plaintiffs' counsel and the *Prise I* Court in
   asserting that Court "contemplated" that *Bryant II* would be re-filed in the Western District of
23 Pennsylvania.  Although the parties and the Court tentatively discussed some theoretical aspects
   of plaintiffs' refiling at the time the SCI employees were dismissed from *Prise I*, that Court
24 certainly had not held or relied upon any presumption that the claims would necessarily be filed
   before that same Court—in fact, defense counsel stated to plaintiffs' counsel after the oral
25 argument that defendants would likely oppose having the refiled action brought before the *Prise I*
   Court.  Following that hearing, upon reviewing the claims of the SCI employees and in light of
26 defendants' stated intention to object to having the SCI employees' claims heard by the *Prise I*
   Court, plaintiffs refiled those claims in Arizona where, at that time, a significant number of the
27 SCI employees who sought to assert claims had been employed.

28       [6] On March 25, 2008, this Court issued a Related Case Order finding that *Helm* was
   related to *Bryant I* and *Bryant II*.  (*Helm* Docket No. 39.)

1    Plaintiffs' position that the *Bryant II* case should not be transferred to Pennsylvania

2    based on Judge Conti's holding in *Prise I* that the SCI employees' claims should not be

3    joined with Alderwoods is also without merit. Defendants still maintain that these claims

4    should be kept separate, and this Court has not asked the parties to address the issue of

5    consolidating *Bryant II* with *Prise I*. Rather, the issue at hand is whether *Bryant II* should

6    be transferred to Judge Conti in light of the familiarity she has gained with the SCI entities

7    based on her involvement *Prise I*. As discussed below, Defendants agree that transfer

8    would be appropriate for that very reason.

9

10        1.    *Bryant II* – Case No. 08-cv-1190-SI

11    Though defendants do not agree that *Bryant II* is nearly identical to the *Prise I* case

12    (as the Court indicated might be the case), defendants agree with the Court that it would

13    be in the interests of judicial economy to transfer *Bryant II* to the Western District of

14    Pennsylvania. As discussed above, *Bryant II* asserts state law claims against SCI, certain

15    SCI subsidiaries, and certain employees of those subsidiaries; it does not assert claims

16    against Alderwoods, which is the only remaining defendant in the *Prise I* action. While

17    Alderwoods merged with an SCI subsidiary in November 2006, for the majority of the

18    liability period in both *Prise I* and *Bryant II*, they were competitors – indeed, they were

19    the two largest entities in the funeral home industry and directly competed with each other

20    in almost every state in which each entity operated.

21        Nonetheless, defendants acknowledge that there may be significant efficiencies in

22    having these cases heard in the same court. Most notably, Judge Conti in the Western

23    District of Pennsylvania has significant familiarity with SCI as a result of the fact that SCI

24    was a defendant in the *Prise I* case for nearly a year before being dismissed from that case

25    in November 2006. Indeed, these very same claims – allegations of state law violations

26    by SCI – were before Judge Conti before she declined to assert supplemental jurisdiction

27    over state law claims and dismissed them from the *Prise I* action (in contrast, federal

28    jurisdiction in *Bryant II* is based on the Class Action Fairness Act). It also is worth noting

1   that, when the Court dismissed SCI and the remaining FLSA claims against it from the

2   case, plaintiffs' counsel informed the Court, and Judge Conti contemplated, that the *Prise*

3   *I* plaintiffs would re-file their claims against SCI in the Western District of Pennsylvania.

4          Given Judge Conti's familiarity with the parties and the issues, defendants agree

5   that *Bryant II* should be transferred as a separate case.[7] Consolidation of the cases would

6   not be appropriate in light of the Western District of Pennsylvania's previous

7   determination that claims against SCI and Alderwoods should not be heard in the same

8   action.

9                   3.      *Helm* – Case No. 08-cv-1164-JSW.

10          *Helm* is the companion case to *Prise I*, asserting state law claims against

11  Alderwoods for the exact same types of alleged off-the-clock violations, and asserting the

12  exact same injuries, alleged in *Prise I*. In fact, plaintiffs' state law claims in *Helm*

13  previously were before Judge Conti before she declined to assert supplemental jurisdiction

14  and dismissed those claims without prejudice (in contrast, federal jurisdiction in *Helm* is

15  based on the Class Action Fairness Act). Thus, transfer to the Western District of

16  Pennsylvania serves the interests of judicial economy due to Judge Conti's familiarity

17  with the issues and the parties.

18

19

20

21

22

23

24

25

26

---

27   [7] The *Stickle* case currently pending in the U.S. District Court for the District of Arizona
     also asserts claims against SCI, SCI subsidiaries, and employees of those subsidiaries, although
28   the claims are brought under federal law, not state law. The same reasons that support transfer of
     *Bryant II* also would support transfer of the *Stickle* case.

1    Dated: March 28, 2008

2

3    Respectfully submitted,

4

5    By: _____        By: _____
       Sanford Jay Rosen                    Steven Hazard Gurnee
6      Maria V. Morris                      David Merrill Daniels
       Lori E. Rifkin                       John A. Mason
7      ROSEN BIEN & GALVAN, LLP             Nicholas Pierre Forestiere
       315 Montgomery Street, 10th Floor    GURNEE & DANIELS LLP
8      San Francisco, CA 94104              2240 Douglas Blvd, Suite 150
       Telephone: 415-433-6830             Roseville, CA 95648
9      Facsimile: 415-433-7104             Telephone: 916-797-3100
                                            Facsimile: 916-797-3131
10     Additional Attorneys for Plaintiffs, who
       will submit applications for admission   Counsel for Defendants
11     pro hac vice:

12     J. Nelson Thomas
       Patrick J. Solomon
13     Michael J. Lingle
       Annette Gifford
14     Justin Cordello
       Dolin, Thomas & Solomon LLP
15     693 East Avenue
       Rochester, NY 14607
16     Telephone: 585-272-0540
       Facsimile: 585-272-0574
17
       Charles H. Saul
18     Liberty J. Weyandt
       Kyle T. McGee.
19     MARGOLIS EDELSTEIN
       525 William Penn Place
20     Suite 3300
       Pittsburgh, PA 15219
21     Telephone: 412-281-4256
       Facsimile: 412-642-2380
22
       Counsel for Plaintiffs
23

24

25

26

27

28

**EXHIBIT J**

1  Sanford Jay Rosen, State Bar No. 62566
   Maria V. Morris, State Bar No. 223903
2  Lori E. Rifkin, State Bar No. 244081
   ROSEN, BIEN & GALVAN, LLP
3  315 Montgomery Street, Tenth Floor
   San Francisco, CA 94104
4  Telephone: (415) 433-6830
   Facsimile:  (415) 433-7104
5  srosen@rbg-law.com

6  [Additional Counsel Listed on Following Page]

7
   Attorneys for Plaintiffs
8
                  UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10
                SAN FRANCISCO/OAKLAND DIVISION
11

12  WILLIAM HELM, DEBORAH PRISE,            )  Case No. CV 08-1184 JSW
    HEATHER P. RADY, et al., on behalf of   )
13  themselves and all other employees and former )  **PLAINTIFFS' STATEMENT IN**
    employees similarly situated,           )  **SUPPORT OF RELATING CASES**
14                                          )
                   Plaintiffs,              )
15                                          )
    v.                                      )
16                                          )
    ALDERWOODS GROUP, INC., PAUL A.         )
17  HOUSTON, SERVICE CORPORATION            )
    INTERNATIONAL, SCI FUNERAL AND          )
18  CEMETERY PURCHASING                     )
    COOPERATIVE, INC., SCI EASTERN          )
19  MARKET SUPPORT CENTER, L.P., SCI        )
    WESTERN MARKET SUPPORT CENTER,          )
20  L.P. a/k/a SCI WESTERN MARKET           )
    SUPPORT CENTER, INC., and SCI           )
21  HOUSTON MARKET SUPPORT CENTER,          )
    L.P.,                                   )
22                                          )
                   Defendants.              )
23  _____)

24

25

26

27

28

                              -1-

1

2

Additional Attorneys for Plaintiffs, who will
submit applications for admission *pro hac vice*:

3

J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660

4

Michael J. Lingle, NY Attorney No. 3925765
Annette Gifford, NY Attorney No. 4105870

5

Justin Cordello, NY Attorney No. 4131447
DOLIN, THOMAS & SOLOMON LLP

6

693 East Avenue
Rochester, NY 14607

7

Telephone: (585) 272-0540
Facsimile:  (585) 272-0574

8

nthomas@theemploymentattorneys.com

9

Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654

10

Kyle T. McGee, PA State Bar No. 205661
MARGOLIS EDELSTEIN

11

525 William Penn Place
Suite 3300

12

Pittsburgh, PA 15219
Telephone: (412) 281-4256

13

Facsimile: (412) 642-2380
csaul@margolisedelstein.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT IN SUPPORT OF RELATING CASES

Plaintiffs submit this Statement in Support of Relating Cases in response to Judge Jeffrey S. White's *sua sponte* Judicial Referral for Purposes of Determining Relationship of Cases (*see* Case No. 08-1184, Docket No. 26). Plaintiffs respectfully submit that, in light of the prior decision relating two other actions currently pending in the District Court for the Northern District of California—*Bryant v. Alderwoods Group, Inc.*, Case No. 07-5696 ("*Bryant I*") and *Bryant v. Service Corporation International*, Case No. 08-1190 ("*Bryant II*")—the instant action ("*Helm*") should be related to those other actions.

Plaintiffs initially filed the claims asserted in *Helm*, *Bryant I* and *Bryant II* together with other claims in an action in the District Court for the Western District of Pennsylvania captioned *Prise v. Alderwoods Group, Inc.*, Case No. 06-1641 ("*Prise*"). All of the claims in each of these actions are based upon the allegation that employees who worked at defendants' funeral home locations were not properly paid their regular or statutorily required rates for all the time they worked for defendants.

At defendants' request, however, the *Prise* Court determined that certain claims would not be heard together in that action. Based upon the *Prise* Court's rulings, as well as defendants' position which resulted in those rulings, plaintiffs refiled certain claims separately in the *Helm*, *Bryant I* and *Bryant II* actions.

However, consistent with plaintiffs' initial filing and in light of the prior determination that *Bryant I* and *Bryant II* are related, plaintiffs submit that the *Helm* action should also be related.

## PROCEDURAL HISTORY

### Plaintiffs File All Claims Together in the Western District of Pennsylvania

On December 12, 2006, Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI"), both named defendants in this action, were named in the *Prise* complaint filed in the Western District of Pennsylvania. Prior to the filing of *Prise*, SCI had acquired Alderwoods and Alderwoods had become SCI's wholly-owned

1  subsidiary. After the merger, SCI continued to operate the vast majority of both its own

2  funeral homes and those of Alderwoods.

3      The *Prise* complaint was filed as a class and collective action alleging, *inter alia*,

4  that employees who worked at defendants' funeral home locations were not properly paid

5  for all the time they worked for defendants. It asserted violations of both the Fair Labor

6  Standards Act ("FLSA") and state wage and hour laws. The *Prise* Court conditionally

7  certified an FLSA class of employees and directed that notice be sent to certain individuals

8  who worked or had worked at an Alderwoods location. In response to that notice,

9  hundreds of current and former employees opted-in to the *Prise* action, including

10  employees who had worked only at Alderwoods locations, before and/or after SCI's

11  acquisition ("Alderwoods employees"), and employees who had worked at other SCI

12  locations unrelated to Alderwoods ("SCI employees").

13

14      Both Alderwoods and SCI employed a set of practices or policies whereby

15  employees were not paid their regular or statutorily required rate for all hours worked.

16  Thus, because of the overlapping legal liability of defendants, as well as the overlapping

17  factual issues in the matter, plaintiffs believed it was legally appropriate and in the

18  interests of judicial efficiency for defendants to be named in a common action and for all

19  of the employees' claims to be brought together.

20  ***Defendants Move to Have Certain Claims Heard Separately***

21      Based on defendants' requests in their motions, the *Prise* Court determined that

22  certain claims would not be heard together in the *Prise* action. Following these rulings,

23  plaintiffs refiled those claims in the *Bryant I*, *Helm* and *Bryant II* actions.

24      As an initial matter, in granting plaintiffs' motion for notice the *Prise* Court also

25  provided a deadline by which individuals who wished to join that action must opt-in.

26  Employees who asked to assert claims against defendants but could not join the *Prise*

27  action because of the deadline were joined together with certain other individuals in the

28  *Bryant I* action.

-4-

1    In June, 2007, the *Prise* Court declined to exercise supplemental jurisdiction over

2  any of the state law claims alleged in the *Prise* action.  Therefore, on or about July 9, 2007,

3  the Alderwoods employees and the SCI employees jointly reasserted their state law claims

4  in a Class Action Complaint filed in the Superior Court of the State of California for the

5  County of Alameda.  Defendants removed that action to federal District Court for the

6  Northern District of California as *Prise v. Alderwoods Group, Inc.*, 07-05140 (the

7  "Combined State Law Action").

8    Subsequently, the *Prise* Court determined it would only hear claims on behalf of

9  Alderwoods employees, and that claims of employees who had worked only at other SCI

10  locations should be heard in a separate action.  Based on that ruling, the federal claims of

11  those SCI employees were refiled in a separate action in the District of Arizona.

12    Based upon defendants' position that resulted in that ruling, the Combined State

13  Law Action was voluntarily dismissed so that the state law claims of the Alderwoods

14  employees could be heard separately from those of the SCI employees—just as the *Prise*

15  Court had ruled that their federal claims would be filed separately.  Those state law claims

16  were refiled by the Alderwoods employees in *Helm*, while the SCI employees filed their

17  state law claims in *Bryant II*.  Both *Helm* and *Bryant II* were initially filed in state court

18  and removed to federal district court by defendants.

19    Thus, three actions are now pending in the Northern District of California: *Bryant I*,

20  which asserts FLSA claims on behalf of Alderwoods employees who were unable to join

21  the *Prise* action; *Helm*, which asserts the state law claims of Alderwoods employees; and

22  *Bryant II*, which asserts the state law claims of SCI employees.  On March 11, 2008, the

23  Court ruled that the *Bryant I* and *Bryant II* actions are related.  *See Bryant II*, Case No. 08-

24  1190, Docket No. 27.  On March 13, 2008, the *Helm* matter was referred for determination

25  as to whether it, too, should be related to the *Bryant* actions.  *See Helm*, Case No. 08-1184,

26  Docket No. 26.

27

28

### *HELM* SHOULD BE RELATED TO THE OTHER ACTIONS

As discussed above, plaintiffs initially filed all of the claims at issue in a single action because plaintiffs believed that the overlapping legal liability of defendants, as well as the overlapping factual issues in the matter, rendered it legally appropriate and in the interests of judicial efficiency for these claims to be brought together. The claims were filed in separate actions only in response to defendants' arguments and positions.

There is significant overlap in the parties to these actions. Although some of the plaintiffs may be neatly defined as either Alderwoods employees or SCI employees, other plaintiffs fall into both categories. Moreover, with the exception of Alderwoods, which is not named in *Bryant II*, there is complete overlap in the corporate defendants in these actions, although individual defendants vary somewhat. Finally, there is significant factual overlap in these cases, which involve similar or identical policies and practices.

Most importantly, the ruling relating the *Bryant I* and *Bryant II* actions weighs in favor of relating the *Helm* action. The plaintiffs in the *Helm* action include the plaintiffs in the *Bryant I* action (and may, to a lesser extent, overlap with the plaintiffs in *Bryant II*). The state law claims at issue in *Helm* are nearly identical to those at issue in *Bryant II*.

Thus, plaintiffs submit that, in light of the determination that *Bryant I* and *Bryant II* are related, *Helm* should also be related in the interest of judicial efficiency.

Respectfully Submitted,
ROSEN, BIEN & GALVAN, LLP


Date: March 17, 2008                    By:*/s/ Lori Rifkin*

Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOLIN, THOMAS & SOLOMON LLP
J. Nelson Thomas, NY Attorney No. 2579159
Patrick J. Solomon, NY Attorney No. 2716660
Michael J. Lingle, NY Attorney No. 3925765
Annette Gifford, NY Attorney No. 4105870
Justin Cordello, NY Attorney No. 4131447
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540

MARGOLIS EDELSTEIN
Charles H. Saul, PA State Bar No.19938
Liberty J. Weyandt, PA State Bar No. 87654
Kyle T. McGee, PA State Bar No. 205661
525 William Penn Place, Suite 3300
Pittsburgh, PA 15219
Telephone: (412) 281-4256

Attorneys for Plaintiffs

-7-

**EXHIBIT K**

1   STEVEN H. GURNEE, ESQ. SB# 66056
    DAVID M. DANIELS, ESQ. SB# 170315
2   NICHOLAS P. FORESTIERE, ESQ. SB# 125118
    GURNEE & DANIELS LLP
3   2240 Douglas Boulevard, Suite 150
    Roseville, CA  95661-3805
4   Telephone    (916) 797-3100
    Facsimile    (916) 797-3131
5
    Attorneys for Defendants
6   ALDERWOODS GROUP, INC.,
    SERVICE CORPORATION INTERNATIONAL,
7   SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC.,
    SCI EASTERN MARKET SUPPORT CENTER, L.P.
8   SCI WESTERN MARKET SUPPORT CENTER, L.P.
9   a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC.,
    SCI HOUSTON MARKET SUPPORT CENTER, L.P.,
10  THOMAS RYAN, PAUL A. HOUSTON, JANE JONES,
11  CURTIS BRIGGS, AND GWEN PETTEWAY

12
                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14

15  CLAUDE BRYANT, CRAIG FULCHER,          )  No.  3:07-CV-5696-SI ("*Bryant I*")
16  SANFORD LEVINE and THOMAS              )
    THOMPSON et al., on behalf of themselves )  Including The Related Cases of:
17  and all other employees similarly situated, )
18                                         )  *Helm et al v. Alderwoods Group, Inc. et al.*
                         Plaintiffs,       )  Case No. 3:08-cv-01184-SI
19              vs.                        )
20                                         )  And
    ALDERWOODS GROUP, INC., PAUL A.        )
21  HOUSTON, SERVICE CORPORATION           )  *Bryant et al v. Service Corporation*
    INTERNATIONAL, SCI FUNERAL AND         )  *International et al.* Case No. 3:08-cv-01190-SI
22  CEMETERY PURCHASING                    )
    COOPERATIVE, INC., SCI EASTERN         )  **ORDER ON PLAINTIFFS'**
23  MARKET SUPPORT CENTER, L.P. SCI        )  **ADMINISTRATIVE MOTIONS AND**
24  WESTERN MARKET SUPPORT CENTER,         )  **SCHEDULING ORDER**
    L.P. a/k/a SCI WESTERN MARKET          )
25  SUPPORT CENTER, INC., SCI HOUSTON      )  Date:    April 3, 2008
26  MARKET SUPPORT CENTER, L.P., and       )  Time:    11:00 a.m.
    JOHN DOES 1-3, et al.                  )  Dept:    10
27                                         )
                         Defendants.       )
28                                         )
    _____)

ORDER ON PLAINTIFFS' ADMINISTRATIVE MOTIONS AND SCHEDULING ORDER      1
Case No. 3:07-CV-5696-SI

On the date, time and department set forth above, Plaintiffs' Administrative Motions[1] for an Extension of Time to File a Response\Reply to Defendants' currently pending motions, including Motions to Dismiss, Strike, Request a More Definite Statement, and/or for Attorneys' Fees and Stay[2] in this case, *Bryant et al v. Alderwoods*, Case No. 07-5695 SI ("*Bryant I*"), and in the related cases of *Helm et al v. Alderwoods Group, Inc. et al.* Case No. 08-01184-SI ("*Helm*") and *Bryant et al v. Service Corporation International et al.* Case No. 08-01190-SI ("*Bryant II*"), came on for a telephonic hearing before the Honorable Susan Illston. Defendants filed oppositions to plaintiffs' Administrative Motions.[3] Annette Gifford and Sanford Rosen appeared on behalf of all the plaintiffs. Nick Forestiere and John Mason appeared on behalf of all of the defendants.

After consideration of the briefs and arguments of counsel, agreement of the parties as to the transfer of *Bryant I*, and all other matters presented to this Court:

IT IS HEREBY ORDERED as follows:

1.     All of the plaintiffs' Administrative Motions in the three related cases *Bryant I*, *Bryant II* and *Helm* (*Bryant I* Docket No. 60; *Bryant II* Docket No. 36; *Helm* Docket Nos. 45 and 53.) are hereby terminated.

2.     Defendants hereby withdraw without prejudice all of their pending motions in the three related cases of *Bryant I, Bryant II* and *Helm* (*Bryant I* Docket Nos. 43 and 47; *Bryant II* Docket Nos. 29, 30 and 31; *Helm* Docket Nos. 40, 41,42 and 50), subject to those motions being re-filed as set forth herein below.  The April 25, 2008 and May 9, 2008 hearing dates for those motions are hereby vacated.   Plaintiffs shall not attempt to take the defaults of any of the Defendants in *Bryant I, Bryant II* or *Helm* as a result of the withdrawals of those motions.

3.     As to *Bryant I*, the case is ordered to be transferred to the U.S. District Court for the Western District of Pennsylvania effective June 20, 2008.  The transfer is made pursuant to the stipulation of the parties, and the Court finds that it is in the interests of justice and judicial economy.  The Court further finds that the *Bryant I* case is related to the action pending before Judge Joy Flowers Conti in the U.S. District Court for the Western District of Pennsylvania captioned *Prise, et al. v. Alderwoods Group, Inc. and Service Corporation International*, W.D. Pa.

---

[1] *Bryant I* Docket No. 60; *Bryant II* Docket No. 36; and *Helm* Docket Nos. 45 and 53.
[2] *Bryant I* Docket Nos. 43 and 47; *Bryant II* Docket Nos. 29, 30 and 31; and *Helm* Docket Nos. 40, 41,42 and 50.
[3] *Helm* Docket Nos. 48 and 56; *Bryant II* Docket 39.

**ORDER ON PLAINTIFFS' ADMINISTRATIVE MOTIONS AND SCHEDULING ORDER**     **2**
**Case No. 3:07-CV-5696-SI**

1  Case No. 06-1641 ("*Prise I*"), and that *Bryant I* should be assigned to Judge Conti's courtroom for

2  further proceedings.  Defendants shall be allowed to move, plead or otherwise respond to the

3  amended complaint within 30 days from the date that the case has been docketed in the court for

4  the Western District of Pennsylvania and assigned a case number.  The transfer is without waiver

5  of any of Defendants' objections, arguments, or requests for relief, including those in Defendants'

6  previously filed motions that would still be valid after the case is transferred, except for any venue,

7  forum, or jurisdictional objection that arises solely because of the transfer.

8      4.      As to *Bryant II and Helm,* the court will proceed with the plaintiffs' motions for

9  remand (*Helm* Docket No. 43; *Bryant II* Docket No. 34) that are presently set for hearing on May

10  9, 2008.  The parties will file their briefs regarding those motions as required by this court's local

11  rules.

12      5.      A Case Management Conference for the related cases is presently set for 2:00 p.m.

13  on June 20, 2008 in Department 10.  The parties are required to file a joint case management

14  conference statement on or before June 13, 2008.  The court will review the status and disposition

15  of the related cases at that time.  Should the court deny the motions for remand in *Helm* and/or

16  *Bryant II*, then the parties shall meet and confer to discuss whether they should be transferred to

17  another district.  If the parties cannot reach agreement regarding their transfer, then the parties

18  seeking a transfer shall file a motion to transfer that will heard at 9:00 a.m. on June 20, 2008.

19  Should either *Helm* and\or *Bryant II* not be remanded or transferred to another district, then the

20  court will then a set a date for the Defendants to move, plead or otherwise respond to the amended

    complaints in those actions.

21      IT IS SO ORDERED.

22  Dated:_____          _____

23                                          United States District Court Judge

    Approved as to Form:

24
    ROSEN BIEN & GALVAN, LLP
25

26   /s/ Sanford Jay Rosen
    By: Sanford Jay Rosen
27  Attorneys For Plaintiffs
    ////
28

1   Dolin, Thomas & Solomon LLP

2

3   __/s/ Annette Gifford_____
    By: Annette Gifford
4   Attorneys For Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER ON PLAINTIFFS' ADMINISTRATIVE MOTIONS AND SCHEDULING ORDER**    4
Case No. 3:07-CV-5696-SI

**EXHIBIT L**

# U.S. District Court
## Western District of Pennsylvania (Pittsburgh)
### CIVIL DOCKET FOR CASE #: 2:06-cv-01641-JFC

PRISE et al v. ALDERWOODS GROUP, INC. et al
Assigned to: Joy Flowers Conti
related Case: 2:06-cv-01470-JFC
Cause: 29:201 Denial of Overtime Compensation

Date Filed: 12/08/2006
Jury Demand: Defendant
Nature of Suit: 710 Labor: Fair
Standards
Jurisdiction: Federal Question

**Plaintiff**

**DEBORAH PRISE**                represented by    **Annette M. Gifford**
Dolin, Thomas & Solomon
693 East Avenue
Rochester, NY 14607
(585) 272-0540
Email:
agifford@theemploymentattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles H. Saul**
Margolis Edelstein
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256
Email: csaul@margolisedelstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. Nelson Thomas**
Dolin, Thomas & Solomon
693 East Avenue
Rochester, NY 14607
(585) 272-0540
Fax: (585) 272-0574
Email:
nthomas@theemploymentattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin M. Cordello**
Dolin, Thomas & Solomon
693 East Avenue
Rochester, NY 14607

(585) 272-0540
Email:
jcordello@theemploymentattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly A. Glennon**
Dolin, Thomas & Solomon
693 East Avenue
Rochester, NY 14607
(585) 272-0540
Fax: (585) 272-0574
Email:
kglennon@theemploymentattorneys.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kyle T. McGee**
Margolis Edelstein
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256
Email: kmcgee@margolisedelstein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Liberty J. Weyandt**
Margolis Edelstein
525 William Penn Place
Suite 3300
Pittsburgh, PA 15219
(412) 281-4256
Email: lweyandt@margolisedelstein.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lingle**
Dolin, Thomas & Solomon
693 East Avenue
Rochester, NY 14607
(585) 272-0540
Email:
mlingle@theemploymentattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick J. Solomon**

Dolin, Thomas & Solomon
693 East Avenue
Rochester, NY 14607
(585) 272-0540
Fax: (585) 272-0574
Email:
psolomon@theemploymentattorneys.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HEATHER RADY**                          represented by   **Annette M. Gifford**
*on behalf of themselves and all other*                    (See above for address)
*employees similarly situated*                             *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Charles H. Saul**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **J. Nelson Thomas**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Justin M. Cordello**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Kimberly A. Glennon**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Kyle T. McGee**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Liberty J. Weyandt**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael J. Lingle**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Patrick J. Solomon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ALDERWOODS GROUP, INC.**          represented by   **Amy E. Dias**
Jones Day
One Mellon Center
31st Floor
Pittsburgh, PA 15219
(412) 391-3939
Email: aedias@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew W. Lampe**
Jones Day
325 John H. McConnell Boulevard
Suite 600
Columbus, OH 43215-2673
(614) 469-3939
Email: mwlampe@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SERVICE CORPORATION**          represented by   **Amy E. Dias**
**INTERNATIONAL**                                  (See above for address)
*TERMINATED: 11/30/2007*                           *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Matthew W. Lampe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/08/2006 | 1 | COMPLAINT against ALDERWOODS GROUP, INC. and SERVICE CORPORATION INTERNATIONAL, filed by DEBORAH PRISE and HEATHER RADY. (Filing fee $350 paid, Receipt #07001317) (Attachments: # 1 Civil Cover Sheet; # 2 Receipt)(sjs ) (Entered: 12/08/2006) |
| | | |

**EXHIBIT M**

STD

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CIVIL DOCKET FOR CASE #: 2:08-cv-00083-MHM

| | |
|---|---|
| Stickle et al v. SCI Western Market Support Center, L.P. et al | Date Filed: 01/15/2008 |
| Assigned to: Judge Mary H Murguia | Jury Demand: Plaintiff |
| Cause: 15:1938 Fair Labor Standards Act | Nature of Suit: 710 Labor: Fair Standards |
| | Jurisdiction: Federal Question |

**Plaintiff**

**James Stickle**
*on behalf of himself and all employees similarly situated*

represented by   **Tod F Schleier**
Schleier Law Offices PC
3101 N Central Ave
Ste 1090
Phoenix, AZ 85012
602-277-0157
Fax: 602-230-9250
Email: tod@schleierlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annette M Gifford**
Dolin Thomas & Solomon LLP
693 East Ave
Rochester, NY 14607
585-272-0540
Fax: 585-272-0574
Email:
agifford@theemploymentattorneys.com
*ATTORNEY TO BE NOTICED*

**Bradley Hugh Schleier**
Schleier Law Offices PC
3101 N Central Ave
Ste 1090
Phoenix, AZ 85012
602-277-0157
Fax: 602-230-9250
Email: brad@schleierlaw.com
*ATTORNEY TO BE NOTICED*

**Charles H Saul**
Margolis Edelstein
525 William Penn Pl
Ste 3300
Pittsburgh, PA 15219

412-281-4256
Fax: 412-642-2380
Email: csaul@margolisedelstein.com
*ATTORNEY TO BE NOTICED*

**J Nelson Thomas**
Dolin Thomas & Solomon LLP
693 East Ave
Rochester, NY 14607
585-272-0540
Fax: 585-272-0574
Email:
nthomas@theemploymentattorneys.com
*ATTORNEY TO BE NOTICED*

**Justin M Cordello**
Dolin Thomas & Solomon LLP
693 East Ave
Rochester, NY 14607
585-272-0540
Fax: 585-272-0574
Email:
jcordello@theemploymentattorneys.com
*ATTORNEY TO BE NOTICED*

**Kyle Tice McGee**
Margolis Edelstein
525 William Penn Pl
Ste 3300
Pittsburgh, PA 15219
412-281-4256
Fax: 412-642-2380
Email: kmcgee@margolisedelstein.com
*ATTORNEY TO BE NOTICED*

**Liberty Jane Weyandt**
Margolis Edelstein
525 William Penn Pl
Ste 3300
Pittsburgh, PA 15219
412-281-4256
Fax: 412-642-2380
Email: lweyandt@margolisedelstein.com

*ATTORNEY TO BE NOTICED*

**Michael J Lingle**
Dolin Thomas & Solomon LLP
693 East Ave
Rochester, NY 14607

585-272-0540
Fax: 585-272-0574
Email:
mlingle@theemploymentattorneys.com
*ATTORNEY TO BE NOTICED*

**Patrick J Solomon**
Dolin Thomas & Solomon LLP
693 East Ave
Rochester, NY 14607
585-272-0540
Fax: 585-272-0574
Email:
psolomon@theemploymentattorneys.com

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eleanor Riggio**
*on behalf of herself and all employees*
*similarly situated*

represented by **Tod F Schleier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annette M Gifford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Hugh Schleier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles H Saul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**J Nelson Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin M Cordello**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Tice McGee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Liberty Jane Weyandt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J Lingle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick J Solomon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Frank Acuna**                                    represented by  **Tod F Schleier**
*on behalf of himself and all employees*                          (See above for address)
*similarly situated*                                              *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Annette M Gifford**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Bradley Hugh Schleier**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Charles H Saul**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **J Nelson Thomas**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Justin M Cordello**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Kyle Tice McGee**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Liberty Jane Weyandt**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Michael J Lingle**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Patrick J Solomon**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph Biernacki**                          represented by   **Tod F Schleier**
*on behalf of himself and all employees*                        (See above for address)
*similarly situated*                                            *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Annette M Gifford**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Bradley Hugh Schleier**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Charles H Saul**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **J Nelson Thomas**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Justin M Cordello**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Kyle Tice McGee**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Liberty Jane Weyandt**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Michael J Lingle**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Patrick J Solomon**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gordon Farmer**                             represented by   **Tod F Schleier**
*on behalf of himself and all employees*                        (See above for address)
*similarly situated*                                            *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Annette M Gifford**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Hugh Schleier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles H Saul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**J Nelson Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin M Cordello**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Tice McGee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Liberty Jane Weyandt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J Lingle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick J Solomon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rhealyn Holland**
*on behalf of herself and all employees
similarly situated*

represented by **Tod F Schleier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annette M Gifford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Hugh Schleier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles H Saul**

(See above for address)
*ATTORNEY TO BE NOTICED*

**J Nelson Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin M Cordello**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Tice McGee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Liberty Jane Weyandt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J Lingle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick J Solomon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard LaMasters**                          represented by    **Tod F Schleier**
*on behalf of himself and all employees*                        (See above for address)
*similarly situated*                                            *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Annette M Gifford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Hugh Schleier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles H Saul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**J Nelson Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin M Cordello**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Tice McGee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Liberty Jane Weyandt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J Lingle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick J Solomon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth Allen**          represented by **Tod F Schleier**
*on behalf of himself and all employees*          (See above for address)
*similarly situated*          *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Annette M Gifford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Hugh Schleier**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles H Saul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**J Nelson Thomas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin M Cordello**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle Tice McGee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Liberty Jane Weyandt**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J Lingle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick J Solomon**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SCI Western Market Support Center, L.P.**
*also known as*
SCI Western Market Support Center, Inc.

represented by **Amy E Dias**
Jones Day
500 Grant St
Ste 3100
1 Mellon Ctr
Pittsburgh, PA 15219
412-391-3939
Fax: 412-394-7959
Email: aedias@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lonnie James Williams**
Quarles & Brady LLP
1 Renaissance Sq
2 N Central Ave
Phoenix, AZ 85004-2391
602-229-5300
Fax: 602-420-5001
Email: lwilliams@quarles.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew W Lampe**
Jones Day
222 E 41st St
New York, NY 10017
212-326-7883
Fax: 212-755-7306
Email: mwlampe@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carrie Marie Francis**
Quarles & Brady LLP
1 Renaisance Sq

2 N Central Ave
Phoenix, AZ 85004-2391
602-229-5728
Fax: 602-420-5028
Email: cfrancis@quarles.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**SCI Eastern Market Support
Center, L.P.**                    represented by    **Amy E Dias**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Lonnie James Williams**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Matthew W Lampe**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Carrie Marie Francis**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**SCI Houston Market Support
Center, L.P.**                    represented by    **Amy E Dias**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Lonnie James Williams**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Matthew W Lampe**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Carrie Marie Francis**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**SCI Funeral and Cemetery
Purchasing Cooperative, Inc.**    represented by    **Amy E Dias**
                                                    (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lonnie James Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew W Lampe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carrie Marie Francis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Service Corporation International**   represented by   **Amy E Dias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lonnie James Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew W Lampe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carrie Marie Francis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jane D. Jones**   represented by   **David M Daniels**
Gurnee & Daniels LLP
2240 Douglas Blvd
Ste 150
Roseville, CA 95648
916-797-3100
Fax: 916-797-3131
Email: david@gurneelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas P Forestiere**

Gurnee & Daniels LLP
2240 Douglas Blvd
Ste 150
Roseville, CA 95661
916-797-3100
Fax: 916-797-3131
Email: nicholas@gurneelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven H Gurnee**
Gurnee & Daniels LLP
2240 Douglas Blvd
Ste 150
Roseville, CA 95661
916-797-3100
Fax: 916-797-3131
Email: steve@gurneelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin John Naylor**
Quarles & Brady LLP
2 N Central Ave
Phoenix, AZ 85004-2391
602-229-5453
Fax: 602-417-2952
Email: bnaylor@quarles.com

**Defendant**

**Gwen Petteway**                    represented by **David M Daniels**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas P Forestiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven H Gurnee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin John Naylor**
(See above for address)

**Defendant**

**Thomas Ryan**                    represented by **David M Daniels**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas P Forestiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven H Gurnee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin John Naylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Curtis Briggs**                          represented by   **David M Daniels**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas P Forestiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven H Gurnee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin John Naylor**
(See above for address)

**Defendant**

**The SCI 401K Retirement Savings
Plan**                                    represented by   **Amy E Dias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lonnie James Williams**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew W Lampe**
(See above for address)

**EXHIBIT N**

1  STEVEN H. GURNEE, ESQ. SB# 66056
   DAVID M. DANIELS, ESQ. SB# 170315
2  NICHOLAS P. FORESTIERE, ESQ. SB# 125118
   GURNEE & DANIELS LLP
3  2240 Douglas Boulevard, Suite 150
   Roseville, CA  95661-3805
4  Telephone    (916) 797-3100
   Facsimile    (916) 797-3131
5
   Attorneys for Defendants
6
   ALDERWOODS GROUP, INC., PAUL A.
7  HOUSTON, SERVICE CORPORATION
   INTERNATIONAL, SCI FUNERAL AND
8  CEMETERY PURCHASING COOPERATIVE, INC.,
   SCI EASTERN MARKET SUPPORT CENTER, L.P.,
9  SCI WESTERN MARKET SUPPORT CENTER, L.P.
   a/k/a SCI WESTERN MARKET SUPPORT CENTER, L.P.
10

11

12                      UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14

15  CLAUDE BRYANT, CRAIG FULCHER,      )  No. **3:07-CV-5696-SI**
16  SANFORD LEVINE and THOMAS          )
    THOMPSON et al., on behalf of themselves )
17  and all other employees and former employees )  **DECLARATION OF LIANA JENSEN IN**
    similarly situated,                )  **SUPPORT OF MOTION TO DISMISS**
18                                     )  **AMENDED COMPLAINT PURSUANT**
                                       )  **TO FRCP 12(b)(2) AND FRCP 12(b)(6)**
19              Plaintiffs,            )
20        vs.                          )
                                       )
21  ALDERWOODS GROUP, INC., PAUL A.    )
    HOUSTON, SERVICE CORPORATION       )
22  INTERNATIONAL, SCI FUNERAL AND     )
    CEMETERY PURCHASING                )
23  COOPERATIVE, INC., SCI EASTERN     )
    MARKET SUPPORT CENTER, L.P. SCI    )
24  WESTERN MARKET SUPPORT CENTER,     )
    L.P. a/k/a SCI WESTERN MARKET      )
25  SUPPORT CENTER, INC., SCI HOUSTON  )
    MARKET SUPPORT CENTER, L.P., and   )
26                                     )
27  JOHN DOES 1-3, et al.              )
                                       )
28              Defendants.            )
    _____

    **LIANA JENSEN'S DECLARATION RE MOTION TO DISMISS**                         1
    Case No. 3:07-CV-5696-SI

1    I, Liana Jensen, hereby specially appear in this matter for the sole purpose of

2    moving to dismiss the Complaint and, in support of that motion, submit the following

     Declaration under penalty of perjury:

3       1.    I am currently employed by SCI Funeral & Cemetery Purchasing

4    Cooperative, Inc. in the position of legal assistant.  I have held his position since

5    September 2003.

6       2.    I am the legal assistant assigned to work on the above caption case.  As

7    part of my job responsibilities related that case, I obtained copies of the Plaintiffs' W-2's

8    they received for their employment.  Attached hereto as collectively as Exhibit 1 are true

9    and correct copies of those documents.

        I declare under penalty of perjury under the laws of the United States of America

10   that the foregoing is true and correct.  Executed this 24th day of March, 2008, at Houston,

11   Texas.

12

13                                        _Liana Jensen_____

14                                          Liana Jensen

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LIANA JENSEN'S DECLARATION RE MOTION TO DISMISS**                    2
Case No. 3:07-CV-5696-SI

# EXHIBIT 1

| a Control number 0000040241 | | | OMB No. 1545-0008 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| b Employer identification number 83-0344693 | | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| c Employer's name, address, and ZIP code | | SC2 | 623 | 5 Medicare wages and tips | 6 Medicare tax withheld |
| SCI FUNERAL & CEMETERY PURCHASING COOP I AGENT FOR SCI ARIZONA FUN P.O. BOX 130548 HOUSTON TX 77219-0548 | | | | 7 Social security tips | 8 Allocated tips |
| | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial          Last name | | | | 11 Nonqualified plans | 12a  d          D |
| JAMES W          STICKLE 4667 WEST 19TH PLACE YUMA, AZ 85364-0000 | | | | 14 Other | |
| f Employee's address and ZIP code | | | | 13 Statutory employee ☐  Retirement plan ☐  Third-Party Sick Pay ☒ | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| AZ | 0741907163 | | | | | |

Form **W-2** Wage and Tax Statement **2006**

**REISSUE**

| a Control number | | | | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| 0000036780 | | | OMB No. 1545-0008 | | |
| b Employer identification number | | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| 63-0344693 | | | | | |
| c Employer's name, address, and ZIP code | SC2 | | 533 | 5 Medicare wages and tips | 6 Medicare tax withheld |
| SCI FUNERAL & CEMETERY PURCHASING COOP I | | | | 7 Social security tips | 8 Allocated tips |
| AGENT FOR SCI ARIZONA FUN | | | | | |
| P.O. BOX 130548 | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| HOUSTON TX 77219-0548 | | | | | |
| e Employee's first name and initial | Last name | | | 11 Nonqualified plans | 12 a·d |
| ELEANOR R RIGGIO | | | | 14 Other | |
| 8414 N. 80TH PL | | | | | |
| SCOTTSDALE, AZ 85258 | | | | | |
| f Employee's address and ZIP code | | | | 13 Statutory employee ☐  Retirement plan ☐  Third-Party Sick Pay ☐ | |
| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
| AZ | 0741907163 | | | | | |

Form **W-2** Wage and Tax Statement **2006**    **REISSUE**

| a Control number | | | | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| 0000075689 | | | OMB No. 1545-0008 | | |
| b Employer identification number | | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| 83-0344693 | | | | | |
| c Employer's name, address, and ZIP code | | SC2 | 3 | 5 Medicare wages and tips | 6 Medicare tax withheld |
| SCI FUNERAL & CEMETERY PURCHASING COOP I | | | | 7 Social security tips | 8 Allocated tips |
| AGENT FOR SCI ARIZONA FUN | | | | | |
| P.O. BOX 130548 | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| HOUSTON TX 77219-0548 | | | | | |
| e Employee's first name and initial    Last name | | | | 11 Nonqualified plans | 12 a-d |
| | | | | | |
| FRANK A      ACUNA | | | | 14 Other | |
| 2810 S 1ST AV | | | | | |
| #B | | | | | |
| YUMA, AZ 85364-0000 | | | | | 13 Statutory employee ☐  Retirement plan ☐  Third-Party Sick Pay ☐ |
| f Employee's address and ZIP code | | | | | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| AZ | 0741907163 | | | | | |

Form **W-2**  Wage and Tax Statement  **2006**    REISSUE

| a Control number 0000086464 | | OMB No. 1545-0008 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|
| b Employer identification number 83-0344693 | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| c Employer's name, address, and ZIP code | SD4 | 233 | 5 Medicare wages and tips | 6 Medicare tax withheld |

c Employer's name, address, and ZIP code

SCI FUNERAL & CEMETERY PURCHASING COOP I
AGENT FOR CALIFORNIA CEME

P.O. BOX 130548
HOUSTON TX 77219-0548

| 7 Social security tips | 8 Allocated tips |
|---|---|
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12 a    d         D |

e Employee's first name and initial    Last name

JOSEPH W        BIERNACKI
189 ATHERTON AVE.
PITTSBURG, CA 94565-0000

| 14 Other    CASDI | |
|---|---|

f Employee's address and ZIP code

13 Statutory employee ☐  Retirement plan ☐  Third-Party Sick Pay ☒

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| CA | 122-2859-9 | | | | | |

Form **W-2**  Wage and Tax Statement  **2006**        **REISSUE**

| a Control number | | | | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| 0000111529 | | | OMB No. 1545-0008 | | |
| b Employer identification number | | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| 83-0344693 | | | | | |
| c Employer's name, address, and ZIP code | | SD4 | 1045 | 5 Medicare wages and tips | 6 Medicare tax withheld |
| SCI FUNERAL & CEMETERY PURCHASING COOP I AGENT FOR CALIFORNIA CEME | | | | 7 Social security tips | 8 Allocated tips |
| P.O. BOX 130548 HOUSTON TX 77219-0548 | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial       Last name | | | | 11 Nonqualified plans | 12 a d        D |
| RHEALYN          HOLLAND 1011 YGNACIO VALLEY RO APT. 26 WALNUT CREEK, CA 94598 | | | | 14 Other CASDI | |
| f Employee's address and ZIP code | | | | 13 Statutory employee ☐   Retirement plan ☐   Third-Party Sick Pay ☒ | |
| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locally name |
| CA | 122-2859-9 | | | | | |

Form **W-2** Wage and Tax Statement **2006**      **REISSUE**

| a Control number | | | | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|---|
| 0000068800 | | | OMB No. 1545-0008 | | |
| b Employer identification number | | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| 83-0344693 | | | | | |
| c Employer's name, address, and ZIP code | | SK6          77 | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| SCI FUNERAL & CEMETERY PURCHASING COOP I | | | | 7 Social security tips | 8 Allocated tips |
| AGENT FOR SCI IOWA FUNERA | | | | | |
| P.O. BOX 130548 | | | | 9 Advance EIC payment | 10 Dependent care benefits |
| HOUSTON TX 77219-0548 | | | | | |
| e Employee's first name and initial    Last name | | | | 11 Nonqualified plans | 12 a-d        C |
| RICHARD          LAMASTERS | | | | | D |
| 1711 S. 3RD STREET | | | | 14 Other | |
| MARSHALLTOWN, IA 50158-0000 | | | | | |
| f Employee's address and ZIP code | | | | 13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☒ | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| IA | 42-1186703001 3 | | | | | |

Form **W-2** Wage and Tax Statement **2006**          **REISSUE**

| a Control number<br>0000050447 | | OMB No. 1545-0008 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|
| b Employer identification number<br>B3-0344693 | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| c Employer's name, address, and ZIP code<br><br>SCI FUNERAL & CEMETERY PURCHASING COOP I<br>AGENT FOR CALIFORNIA CEME<br><br>P.O. BOX 130548<br>HOUSTON TX 77219-0548 | | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | | | 7 Social security tips | 8 Allocated tips |
| | | | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial     Last name     SD4     782<br><br>GORDON E     FARMER<br>151 SHADY LANE<br>VALLEJO, CA 94591-0000 | | | 11 Nonqualified plans | 12 a-d     D |
| | | | 14 Other<br>CASDI | 13 Statutory employee ☐  Retirement plan ☐  Third Party Sick Pay ☒ |
| f Employee's address and ZIP code | | | | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| CA | 005-0348-2 | | | | | |

Form **W-2** Wage and Tax Statement **2005**     REISSUE

| a Control number 0000076982 | | OMB No. 1545-0008 | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|---|
| b Employer identification number 83-0344693 | d Employee's social security number | | 3 Social security wages | 4 Social security tax withheld |
| c Employer's name, address, and ZIP code | | | 5 Medicare wages and tips | 6 Medicare tax withheld |
| SCI FUNERAL & CEMETERY PURCHASING COOP I AGENT FOR SCI OREGON FUNE P.O. BOX 130548 HOUSTON TX 77219-0548 | | | 7 Social security tips | 8 Allocated tips |
| | | | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial    Last name    SQ2    49 | | | 11 Nonqualified plans | 12 a-d    D |

KENNETH R    ALLEN
PO BOX 2742
EUGENE, OR 97402-0000

| f Employee's address and ZIP code | | | | 13 Statutory employee ☐  Retirement plan ☐  Third Party Sick Pay ☒ |
|---|---|---|---|---|
| 15 State OR | Employer's state ID number 0002937-4 | 16 State wages, tips, etc | | |
| | | | tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement    **2004**

REPLACEMENT COPY

1    I hereby certify that on the 15th day of May, 2008,
     I electronically transmitted the attached document to
2    the Clerk's Office using the CM/ECF System for
     filing and transmittal of a Notice of Electronic
3    Filing to the following CM/ECF registrants:

4

5    Maria V. Morris
     mmorris@rbg-law.com

6

7    Lori Rifkin
     lrifkin@rbg-law.com

8

9    Sanford J. Rosen
     srosen@rbg-law.com

10

11   and by mail to:

12   Justin Cordello
     Annette Gifford
13   Michael J. Lingle
14   Patrick J. Solomon
     J. Nelson Thomas
15   Dolin Thomas & Solomon LLP
16   693 East Ave.
     Rochester, NY  14607
17

18   Kyle T. McGee
     Charles H. Saul
19   Liberty J. Weyandt
20   Margolis Edelstein
     525 William Penn Pl, Ste. 3300
21   Pittsburg, PA  15219

22

23

24   _____
25   Deseree C. Rosebrock

26

27

28