Sanford Jay Rosen, State Bar No. 62566
Maria V. Morris, State Bar No. 223903
Lori E. Rifkin, State Bar No. 244081
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
srosen@rbg-law.com

[Additional Counsel Listed on Following Page]

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CLAUDE BRYANT, JOSEPH BIERNACKI, GORDON FARMER, RHEALYN HOLLAND, JAMES STICKLE, ELEANOR RIGGIO, FRANK ACUNA, RICHARD LAMASTERS, KENNETH ALLEN, CRAIG FULCHER, SANFORD LEVINE and THOMAS THOMPSON, on behalf of themselves and all other employees and former employees similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI EASTERN MARKET SUPPORT CENTER, L.P., SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., SCI HOUSTON MARKET SUPPORT CENTER, L.P., JANE D. JONES, GWEN PETTEWAY, THOMAS RYAN, and CURTIS BRIGGS,<br><br>Defendants. | Case Nos. CV 08-1190 SI and CV 08-1184 SI<br><br>**PLAINTIFFS' CONSOLIDATED DECLARATION OF ANNETTE GIFFORD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER** |

1  Additional Attorneys for Plaintiffs, who have been
   admitted *pro hac vice* or who will submit applications
2  for admission *pro hac vice*:

3  J. Nelson Thomas, NY Attorney No. 2579159
   Patrick J. Solomon, NY Attorney No. 2716660
4  Annette Gifford, NY Attorney No. 4105870
   DOLIN, THOMAS & SOLOMON LLP
5  693 East Avenue
   Rochester, NY 14607
6  Telephone: (585) 272-0540
   Facsimile:  (585) 272-0574
7  nthomas@theemploymentattorneys.com

8  Charles H. Saul, PA State Bar No. 19938
   Liberty J. Weyandt, PA State Bar No. 87654
9  Kyle T. McGee, PA State Bar No. 205661
   MARGOLIS EDELSTEIN
10 525 William Penn Place
   Suite 3300
11 Pittsburgh, PA 15219
   Telephone: (412) 281-4256
12 Facsimile: (412) 642-2380
   csaul@margolisedelstein.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF ANNETTE GIFFORD IN OPPOSITION TO MOTION TO TRANSFER

Case Nos. CV 08-1190 SI and CV 08-1184 SI

1   I, Annette Gifford, under penalty of perjury, declare:

2       1.      I am associated with the law firm Dolin, Thomas & Solomon LLP, lead counsel for

3   Plaintiffs in these actions, as well as in the other litigation raised in defendants' motions for

4   transfer, and, as such, I am fully familiar with the facts and circumstances giving rise to this

5   motion.  I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Motion for

6   Transfer.  The facts contained herein are based upon my own personal knowledge, and if called to

7   do so, I could and would competently testify to their truth.

8   ***Procedural History***

9       2.      Defendants' claim that plaintiffs "have engaged in blatant forum shopping" is

10  simply wrong and wholly unsupported by either the procedural history of this and related matters

11  or by the rulings of other courts—both of which are mischaracterized in defendants' brief.

12      3.      In fact, it is *defendants* who attempt to engage in forum shopping or, more

13  accurately, to shift these claims from one venue to another venue to yet another venue in hopes of

14  delaying litigation regarding the underlying merits.

15      4.      As defendants concede, plaintiffs' initial complaint in *Prise* asserted both the

16  federal and state claims of employees who were employed at funeral homes owned by Alderwoods

17  Group, Inc. ("Alderwoods employees") and those employed at other funeral homes owned by SCI

18  or entities it owned in whole or in part ("SCI employees").  *See* Parties' Joint Response to Order to

19  Show Cause, *Bryant* 08-cv-01190-SI, Docket No. 41 at 2-3 ("Joint Response").

20
21      5.      Defendants also concede that the state law claims asserted in that action were

22  dismissed at defendants' own request on June 8, 2007, when the *Prise* court declined to exercise

23  supplemental jurisdiction over those claims.  *See* Joint Response at 3.

24      6.      Upon the dismissal of the state law claims of the Alderwoods and SCI employees,

25  plaintiffs did not—as defendants apparently hoped they would—simply abandon those claims, but

26  instead sought to reassert their claims, honoring the *Prise* Court's declination of supplemental

27  jurisdiction by filing those claims in an appropriate state court forum.

28

---
1

DECL. OF ANNETTE GIFFORD IN OPPOSITION TO MOTION TO TRANSFER

Case Nos. CV 08-1190 SI and CV 08-1184 SI

7.      As plaintiffs sought to assert the claims of both Alderwoods and SCI employees, they selected a forum in which both groups of employees had suffered violations.  Plaintiffs' selection of California as the forum in which they brought their state law claims was not the result of forum shopping, or even an effort to avoid the *Prise* Court (which, in any event, had already ruled it will not hear the state law claims), but was instead based on the fact that numerous Alderwoods and SCI employees suffered violations in California, including several individuals who were willing to serve as named plaintiffs.  Thus, plaintiffs filed a new action in Superior Court of Alameda County (which defendants subsequently removed) asserting the state law claims of both Alderwoods and SCI employees.  *Prise II*, 07-05140-MJJ (N.D. Cal.).

8.      Plaintiffs' conclusion that California was the most appropriate forum is unsurprising based upon defendants' publicly filed documents which reflect that both SCI and Alderwoods have far more locations in California than in Pennsylvania.  SCI's Form 10-K filed March 3, 2008 at 5-6 (SCI has 144 locations in CA, 35 locations in PA); Alderwoods Group, Inc.'s Form 10-Q filed October 7, 2006 at 48 (Alderwoods has 44 locations in CA; 5 locations in PA).

9.      Thus, as of July, 2007, two lawsuits existed: the initial *Prise* complaint which, at that time, asserted FLSA claims of both Alderwoods and SCI employees; and the *Prise II* complaint asserting the state law claims of Alderwoods and SCI employees.  The existence of these two lawsuits was solely a result of defendants' motion and the *Prise* Court's subsequent ruling.

10.     Defendants, however, mischaracterize that ruling, claiming the *Prise* Court ruled it would "clearly be inappropriate and too confusing to have claims brought against Defendants based upon both state and federal claims in the same action."  Defs' Memorandum and Points of Authorities in Support of Defendants Motion to Transfer, *Bryant* 08-cv-01190-SI, Docket No. 57 at 1, n.1.  That was simply not the Court's ruling, and defendants' reliance upon a November, 2007 hearing—which occurred more than five months after the Court dismissed plaintiffs' state

DECL. OF ANNETTE GIFFORD IN OPPOSITION TO MOTION TO TRANSFER

Case Nos. CV 08-1190 SI and CV 08-1184 SI

1  law claims and after those claims had already been re-filed in Alameda County court as *Prise II*—

2  is, at best, misplaced.

3         11.    Instead, the Court's statement at the November, 2007 hearing responded directly to

4  defendants' argument that the claims of Alderwoods employees should not be heard together with

5  the claims of SCI employees.  At the November, 2007 hearing, the *Prise* Court ruled that the

6  claims of those two groups of employees would not be heard jointly and, thus, plaintiffs were

7  compelled to assert the SCI employees' claims in a separate action.

8         12.    Defendants, however, mischaracterize the interaction between plaintiffs' counsel

9  and the *Prise* Court regarding the refiling of the SCI claims.  Although the parties and the Court

10  tentatively discussed some theoretical aspects of plaintiffs' refiling at that hearing, the *Prise* Court

11  never held nor relied upon any presumption that the SCI employees' claims would necessarily be

12  filed in the Western District of Pennsylvania.  In fact, following that hearing, defense counsel

13  informed plaintiffs that defendants would likely oppose having the refiled action heard before the

14  *Prise* Court.

15         13.    Thus, following that hearing, upon reviewing the claims of the SCI employees who

16  had indicated an interest in pursuing their claims and in light of defendants' stated intention to

17  object to having those claims heard by the *Prise* Court, plaintiffs refiled the claims in Arizona

18  where a number of SCI employees who sought to assert claims had been employed.

19

20         14.    Anticipating that defendants would argue the state law claims of SCI and

21  Alderwoods employees should be heard separately—raising further motions and causing further

22  delay to these claims—plaintiffs voluntarily refiled the state law action as two separate actions,

23  one (*Helm*, N.D. Cal. Case no. 08-01184-SI) asserting state law claims of Alderwoods employees

24  and the other (*Bryant*, N.D. Cal. Case no. 08-01190-SI) asserting those claims for SCI employees.

25         15.    Thus the existence of separate state and federal lawsuits, as well as separate

26  proceedings for Alderwoods and SCI employees, is solely a result of defendants' own positions

27  and litigation tactics.  Moreover, the fact that those proceedings are asserted in various

28

3

DECL. OF ANNETTE GIFFORD IN OPPOSITION TO MOTION TO TRANSFER

Case Nos. CV 08-1190 SI and CV 08-1184 SI

1    jurisdictions is a result of variations in the claims asserted in each action, as well as the varying

2    information available to plaintiffs at the time each action was filed which, due to defendants'

3    successive motions, occurred over a period of time.

4

5    ***Named Plaintiffs' Claims Arose in this District***

6        16.    At least four of the named plaintiffs in the instant *Bryant* action have reported that

7    they were employed by defendants in this district and suffered violations.

8        17.    At least two of the named plaintiffs in the instant *Helm* action have reported that

9    they were employed by defendants in this district and suffered violations.

10

11   ***Documents Attached as Exhibits***

12       18.    Excerpts from defendant SCI's Form 10-K filed March 3, 2008 are attached hereto

13   as Exhibit A.  According to that document, the SCI defendants have 144 operating locations in

14   California.  In contrast, those defendants have only 35 operating locations in Pennsylvania and 41

15   operating locations in Arizona.  *See* Exhibit A at 5-6.

16       19.    Excerpts from defendant Alderwoods Group, Inc.'s Form 10-Q filed October 7,

17   2006, shortly before that company's acquisition by SCI in November 2006, are attached hereto as

18   Exhibit B.  According to that document, prior to its acquisition by SCI, Alderwoods maintained 51

19   operating locations in California.  In contrast, Alderwoods maintained only 5 operating locations

20   in Pennsylvania.  *See* Exhibit B at 51 of 64.

21       20.    Attached hereto as Exhibit C are copies of Defendants' Motion to Dismiss Certain

22   claims and to Strike Class Action Allegations and Certification Request in Plaintiffs' Class Action

23   Complaint and supporting memorandum, filed as Docket Nos. 111 and 112 in *Prise.*

24   //

25   //

26   //

27

28
                                              4
_____
DECL. OF ANNETTE GIFFORD IN OPPOSITION TO MOTION TO TRANSFER
                                         Case Nos. CV 08-1190 SI and CV 08-1184 SI

1    ***Defendants' Statements Regarding Motions to Dismiss and Personal Jurisdiction***

2        21.    During multiple telephone conferences with myself and other attorneys at my firm,

3    defendants' counsel have stated that, in the event the *Helm* matter is transferred to the Western

4    District of Pennsylvania, some or all of the defendants intend to move for dismissal on the basis of

5    lack of personal jurisdiction.

6        Executed this 3rd day of July, 2008 in Rochester, New York.

7

8                                            /s/ Annette Gifford

9                                            Annette Gifford

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF ANNETTE GIFFORD IN OPPOSITION TO MOTION TO TRANSFER
Case Nos. CV 08-1190 SI and CV 08-1184 SI

EXHIBIT A



# FORM 10-K

## SERVICE CORPORATION INTERNATIONAL - sci

**Filed: March 03, 2008 (period: December 31, 2007)**

Annual report which provides a comprehensive overview of the company for the past year

# Table of Contents

10-K - FORM 10-K - ANNUAL REPORT

## PART I

| | |
|---|---|
| Item 1. | Business. |
| Item 1A. | Risk Factors. |
| Item 1B. | Unresolved Staff Comments. |
| Item 2. | Properties. |
| Item 3. | Legal Proceedings. |
| Item 4. | Submission of Matters to a Vote of Security Holders. |

## PART II

| | |
|---|---|
| Item 5. | Market for Registrant s Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities. |
| Item 6. | Selected Financial Data. |
| Item 7. | Management s Discussion and Analysis of Financial Condition and Results of Operations. |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk. |
| Item 8. | Financial Statements and Supplementary Data. |
| Item 9. | Changes In and Disagreements with Accountants on Accounting and Financial Disclosure |
| Item 9A. | Controls and Procedures |
| Item 9B. | Other Information |

## PART III

| | |
|---|---|
| Item 10. | Directors, Executive Officers and Corporate Governance |
| Item 11. | Executive Compensation |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence |
| Item 14. | Principal Accountant Fees and Services |

## PART IV

| | |
|---|---|
| Item 15. | Exhibits and Financial Statement Schedule |
| SIGNATURES | |
| EXHIBIT INDEX | |
| EX-10.5 (AMENDMENT TO EMPLOYMENT AND NONCOMPETITION AGREEMENT - R. L. WALTRIP) | |

EX-10.8 (AMENDMENT TO EMPLOYMENT AND NONCOMPETITION AGREEMENT - THOMAS L. RYAN)

EX-10.11 (AMENDMENT TO EMPLOYMENT AND NONCOMPETITION AGREEMENT - MICHAEL R. WEBB)

EX-10.13 (AMENDMENT TO EMPLOYMENT AND NONCOMPETITION AGREEMENT - ERIC D. TANZBERGER)

EX-10.18 (AMENDMENT TO EMPLOYMENT AND NONCOMPETITION AGREEMENT - NON-SENIOR OFFICERS)

EX-10.30 (FIFTH AMENDMENT TO 401(K) RETIREMENT SAVINGS PLAN)

EX-10.49 (FORM OF AMENDMENT TO EXECUTIVE DEFERRED COMPENSATION PLAN)

EX-12.1 (RATIO OF EARNINGS TO FIXED CHARGES)

EX-21.1 (SUBSIDIARIES)

EX-23.1 (CONSENT OF PRICEWATERHOUSECOOPERS LLP)

EX-24.1 (POWERS OF ATTORNEY)

EX-31.1 (CERTIFICATION OF PEO PURSUANT TO SECTION 302)

EX-31.2 (CERTIFICATION OF PFO PURSUANT TO SECTION 302)

EX-32.1 (CERTIFICATION OF PEO PURSUANT TO SECTION 906)

EX-32.2 (CERTIFICATION OF PFO PURSUANT TO SECTION 906)

Source: SERVICE CORPORATION , 10-K, March 03, 2008

**Table of Contents**

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549
# Form 10-K

☑    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the fiscal year ended December 31, 2007**

**OR**

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the transition period from        to**

**Commission file number 1-6402-1**

# Service Corporation International
*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Texas** | **74-1488375** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. employer identification no.)* |
| **1929 Allen Parkway Houston, Texas** | **77019** |
| *(Address of principal executive offices)* | *(Zip code)* |

**Registrant's telephone number, including area code:**
**713/522-5141**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock ($1 par value) | New York Stock Exchange |
| Preferred Share Purchase Rights | New York Stock Exchange |

**Securities registered pursuant to Section 12(g) of the Act:**
**None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.  Yes ☑    No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.  Yes ☐    No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☑    No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.  ☑

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑

Accelerated filer ☐

Non-accelerated filer ☐ (Do not check if a smaller reporting company)

Smaller Reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in the Securities Exchange Act of 1934 Rule 12b-2).  Yes ☐    No ☑

The aggregate market value of the common stock held by non-affiliates of the registrant (assuming that the registrant's only affiliates are its officers and directors) was $3,455,228,251 based upon a closing market price of $12.78 on June 30, 2007 of a share of common stock as reported on the New York Stock Exchange — Composite Transactions Tape.

The number of shares outstanding of the registrant's common stock as of February 22, 2008 was 261,814,225 (net of treasury shares)

### DOCUMENTS INCORPORATED BY REFERENCE
Portions of the registrant's Proxy Statement in connection with its 2008 Annual Meeting of Shareholders (Part III)

# SERVICE CORPORATION INTERNATIONAL

## INDEX

| | | Page |
|---|---|---|
| **PART I** | | |
| Item 1. | Business | 4 |
| Item 1A. | Risk Factors | 8 |
| Item 1B. | Unresolved Staff Comments | 12 |
| Item 2. | Properties | 12 |
| Item 3. | Legal Proceedings | 12 |
| Item 4. | Submission of Matters to a Vote of Security Holders | 12 |
| **PART II** | | |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters, and Issuer Purchases of Equity Securities | 16 |
| Item 6. | Selected Financial Data | 17 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 19 |
| Item 7A. | Quantitative and Qualitative Disclosures about Market Risk | 40 |
| Item 8. | Financial Statements and Supplementary Data | 41 |
| Item 9. | Changes In and Disagreements with Accountants on Accounting and Financial Disclosure | 111 |
| Item 9A. | Controls and Procedures | 111 |
| Item 9B. | Other Information | 114 |
| **PART III** | | |
| Item 10. | Directors, Executive Officers, and Corporate Governance | 114 |
| Item 11. | Executive Compensation | 114 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 114 |
| Item 13. | Certain Relationships, Related Transactions, and Director Independence | 114 |
| Item 14. | Principal Accountant Fees and Services | 114 |
| **PART IV** | | |
| Item 15. | Exhibits and Financial Statement Schedule | 115 |
| Signatures | | 116 |
| Exhibit Index | | 118 |
| | Amendment to Employment and Noncompetition Agreement - R. L. Waltrip | |
| | Amendment to Employment and Noncompetition Agreement - Thomas L. Ryan | |
| | Amendment to Employment and Noncompetition Agreement - Michael R. Webb | |
| | Amendment to Employment and Noncompetition Agreement - Eric D. Tanzberger | |
| | Amendment to Employment and Noncompetition Agreement - Non-Senior Officers | |
| | Fifth Amendment to 401(k) Retirement Savings Plan | |
| | Form of Amendment to Executive Deferred Compensation Plan | |
| | Ratio of Earnings to Fixed Charges | |
| | Subsidiaries | |
| | Consent of PricewaterhouseCoopers LLP | |
| | Powers of Attorney | |
| | Certification of PEO Pursuant to Section 302 | |
| | Certification of PFO Pursuant to Section 302 | |
| | Certification of PEO Pursuant to Section 906 | |
| | Certification of PFO Pursuant to Section 906 | |

2

Table of Contents

interment rights, including mausoleum spaces, lots, and lawn crypts, and sell cemetery related merchandise and services, including stone and bronze memorials, burial vaults, casket and cremation memorialization products, merchandise installations, and burial openings and closings. We also sell preneed funeral and cemetery preneed products and services whereby a customer contractually agrees to the terms of certain products and services to be delivered and performed in the future.

Funeral service/cemetery combination locations are those businesses in which a funeral service location is physically located within or adjoining a cemetery that we own. Combination locations allow certain facility, personnel, and equipment costs to be shared between the funeral service location and cemetery. Such combination facilities typically can be cost competitive and have higher gross margins than if the funeral and cemetery operations were operated separately. Combination locations also create synergies between funeral and cemetery sales force personnel and give families added convenience to purchase both funeral and cemetery products and services at a single location. With the acquisition of Alderwoods, we acquired Rose Hills, which is the largest combination operation in the United States, performing approximately 5,000 funeral services and 8,000 interments per year.

Our operations in the United States and Canada are organized into 37 major markets and 45 middle markets (including eight Hispana markets). Each market is led by a market director with responsibility for funeral and/or cemetery operations and preneed sales. Within each market, the funeral homes and cemeteries share common resources such as personnel, preparation services, and vehicles. There are four market support centers in North America to assist market directors with financial, administrative, pricing, and human resource needs. These support centers are located in Houston, Miami, New York, and Los Angeles. The primary functions of the support centers are to help facilitate the execution of corporate strategies, coordinate communication between the field and corporate offices, and serve as liaisons for the implementation of policies and procedures.

See Part II, Item 8. Financial Statements and Supplementary Data, Note 17 of this Form 10-K for financial information related to our reportable segments and geographic areas.

The following table (which includes businesses held-for-sale at December 31, 2007) provides the number of our funeral homes and cemeteries by country, and by state, territory, or province:

| Country, State/Territory/Province | Number of Funeral Homes | Number of Cemeteries | Total |
|---|---|---|---|
| United States | | | |
| Alabama | 33 | 9 | 42 |
| Arizona | 30 | 11 | 41 |
| Arkansas | 9 | — | 9 |
| California | 113 | 31 | 144 |
| Colorado | 24 | 11 | 35 |
| Connecticut | 18 | — | 18 |
| District of Columbia | 1 | — | 1 |
| Florida | 117 | 52 | 169 |
| Georgia | 42 | 20 | 62 |
| Hawaii | 2 | 1 | 3 |
| Idaho | 3 | 1 | 4 |
| Illinois | 42 | 25 | 67 |
| Indiana | 27 | 8 | 35 |
| Iowa | 4 | 2 | 6 |
| Kansas | 9 | 2 | 11 |
| Kentucky | 12 | 3 | 15 |
| Louisiana | 28 | 5 | 33 |
| Maine | 10 | — | 10 |

5

Source: SERVICE CORPORATION , 10-K, March 03, 2008

Table of Contents

| Country, State/Territory/Province | Number of Funeral Homes | Number of Cemeteries | Total |
|---|---|---|---|
| Maryland | 13 | 7 | 20 |
| Massachusetts | 29 | — | 29 |
| Michigan | 25 | — | 25 |
| Minnesota | 10 | 2 | 12 |
| Mississippi | 23 | 3 | 26 |
| Missouri | 17 | 3 | 20 |
| Montana | 4 | — | 4 |
| Nebraska | 2 | — | 2 |
| Nevada | 3 | 1 | 4 |
| New Hampshire | 7 | — | 7 |
| New Jersey | 20 | — | 20 |
| New York | 84 | 1 | 85 |
| North Carolina | 42 | 11 | 53 |
| Ohio | 17 | 11 | 28 |
| Oklahoma | 16 | 7 | 23 |
| Oregon | 14 | 5 | 19 |
| Pennsylvania | 17 | 18 | 35 |
| Puerto Rico | 4 | 5 | 9 |
| Rhode Island | 4 | — | 4 |
| South Carolina | 3 | 6 | 9 |
| Tennessee | 27 | 14 | 41 |
| Texas | 139 | 48 | 187 |
| Utah | 3 | 3 | 6 |
| Virginia | 29 | 12 | 41 |
| Washington | 34 | 12 | 46 |
| West Virginia | 4 | 6 | 10 |
| Wisconsin | 8 | — | 8 |
| Canada | | | |
| Alberta | 24 | — | 24 |
| British Columbia | 34 | 7 | 41 |
| Manitoba | 4 | 3 | 7 |
| New Brunswick | 5 | — | 5 |
| Nova Scotia | 12 | — | 12 |
| Ontario | 47 | — | 47 |
| Quebec | 57 | — | 57 |
| Saskatchewan | 24 | — | 24 |
| Germany | 13 | — | 13 |
| Total | 1,342 | 366 | 1,708(1) |

(1) Includes businesses held for sale at December 31, 2007.

We believe we have satisfactory title to the properties owned and used in our business, subject to various liens, encumbrances, and easements, which are incidental to ownership rights and uses and do not materially detract from

6

Source: SERVICE CORPORATION , 10-K, March 03, 2008

Table of Contents

the value of the property. We also lease a number of facilities that we use in our business under both capital and operating leases.

At December 31, 2007, we owned approximately 90% of the real estate and buildings used at our facilities, and the remainder of the facilities were leased. At December 31, 2007, our 366 cemeteries contained a total of approximately 28,362 acres, of which approximately 62% was developed.

A map of our locations in North America is presented below:



○ Funeral Homes
□ Cemeteries

## Competition

Although there are several public companies that own funeral homes and cemeteries, the majority of deathcare businesses are locally-owned, independent operations. We estimate that our funeral and cemetery market share in North America is approximately 13% based on estimated total industry revenues. The position of a single funeral home or cemetery in any community is a function of the name, reputation, and location of that funeral home or cemetery, although competitive pricing, professional service and attention, and well-maintained locations are also important.

We believe we have an unparalleled network of funeral service locations and cemeteries that offer high quality products and services at prices that are competitive with local competing funeral homes, cemeteries, and retail locations. Within this network, the funeral service locations and cemeteries operate under various names as most operations were acquired as existing businesses. We have branded our funeral operations in North America under the name Dignity Memorial®. We believe our national branding strategy gives us a strategic advantage and identity in the industry. While this branding process is intended to emphasize our seamless national network of funeral service locations and cemeteries, the original names associated with acquired operations, and their inherent goodwill and heritage, generally remain the same. For example, Geo. H. Lewis & Sons Funeral Directors is now Geo. H. Lewis & Sons Funeral Directors, a Dignity Memorial® provider.

## Employees

At December 31, 2007, we employed 13,499 (13,456 in North America) individuals on a full time basis and 7,092 (7,088 in North America) individuals on a part time basis. Of the full time employees, 12,845 were employed in the funeral and cemetery operations and 654 were employed in corporate or other overhead activities and

7

Source: SERVICE CORPORATION , 10-K, March 03, 2008

# EXHIBIT B

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

## Alderwoods Group Inc · 10-Q · For 10/7/06

Filed On 11/15/06 5:21pm ET · SEC File 0-33277 · Accession Number 1047469-6-14242

| Find | | in this entire Filing. | Show Docs searched and every "hit". |

Help.. *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | As/For/On Docs:Pgs | Issuer | Agent |
|-------|-------|--------|--------------------|--------|-------|
| 11/15/06 | Alderwoods Group Inc | 10-Q | 10/07/06  4:101 | | Merrill Corp/New/- FA |

### Quarterly Report · Form 10-Q
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: 10-Q | Quarterly Report | HTML | 712K |
| 2: EX-31.1 | Certification per Sarbanes-Oxley Act (Section 302) | HTML | 8K |
| 3: EX-31.2 | Certification per Sarbanes-Oxley Act (Section 302) | HTML | 8K |
| 4: EX-32.1 | Certification per Sarbanes-Oxley Act (Section 906) | HTML | 5K |

### 10-Q · Quarterly Report
### Document Table of Contents

*Page*    (sequential)    (alphabetic)    Top

1 1st Page
" Alderwoods Group, Inc
" Part I Financial Information
" ALDERWOODS GROUP, INC. CONSOLIDATED BALANCE SHEETS Expressed in thousands of dollars except number of shares
" ALDERWOODS GROUP, INC. CONSOLIDATED STATEMENTS OF OPERATIONS (unaudited) Expressed in thousands of dollars except per share amounts and number of shares
" ALDERWOODS GROUP, INC. CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY (unaudited) Expressed in thousands of dollars except number of shares
" ALDERWOODS GROUP, INC. CONSOLIDATED STATEMENTS OF CASH FLOWS (unaudited) Expressed in thousands of dollars
" Condensed Consolidating Balance Sheets (unaudited)
" Condensed Consolidating Balance Sheets
" Condensed Consolidating Statement of Operations (unaudited)
" Condensed Consolidating Statement of Cash Flows (unaudited)
" Part Ii Other Information
" Signatures
" Index to Exhibits
" QuickLinks

- Alternative Formats (RTF, XML, et al.)
- Alderwoods Group, Inc
- ALDERWOODS GROUP, INC. CONSOLIDATED BALANCE SHEETS Expressed in thousands of dollars except number of shares
- ALDERWOODS GROUP, INC. CONSOLIDATED STATEMENTS OF CASH FLOWS (unaudited) Expressed in thousands of dollars
- ALDERWOODS GROUP, INC. CONSOLIDATED STATEMENTS OF OPERATIONS (unaudited) Expressed in thousands of dollars except per share amounts and number of shares
- ALDERWOODS GROUP, INC. CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY (unaudited) Expressed in thousands of dollars except number of shares
- Condensed Consolidating Balance Sheets (unaudited)
- Condensed Consolidating Balance Sheets
- Condensed Consolidating Statement of Cash Flows (unaudited)
- Condensed Consolidating Statement of Operations (unaudited)
- Index to Exhibits
- Part I Financial Information
- Part Ii Other Information
- QuickLinks
- Signatures

*This is an EDGAR HTML document rendered as filed.* [ *Alternative Formats* ]

QuickLinks -- Click here to rapidly navigate through this document

### UNITED STATES
### SECURITIES AND EXCHANGE COMMISSION
#### Washington, D.C. 20549

# FORM 10-Q

(Mark One)

ý    **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934**
For the 16 weeks (fiscal quarter) ended October 7, 2006

OR

o

**TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**
For the transition period from      to

Commission file number 000-33277

# ALDERWOODS GROUP, INC.
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| Delaware | 52-1522627 |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| 311 Elm Street, Suite 1000, Cincinnati, Ohio | 45202 |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: 513-768-7400

Former name, former address and former fiscal year, if changed since last report: **N/A**

Indicate by check mark whether the registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ý No o

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of *"accelerated filer and large accelerated filer"* in Rule 12b-2 of the Exchange Act (check one).

Large Accelerated filer o Accelerated filer ý Non-accelerated filer o

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes o No ý

**APPLICABLE ONLY TO ISSUERS INVOLVED IN BANKRUPTCY PROCEEDINGS**
**DURING THE PRECEDING FIVE YEARS**

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Section 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by a court. Yes ý    No o

**APPLICABLE ONLY TO CORPORATE ISSUERS**

At November 14, 2006, there were 40,678,098 shares of Common Stock outstanding.

**ALDERWOODS GROUP, INC.**

| | | | Page |
|---|---|---|---|
| **Part I.** | **FINANCIAL INFORMATION** | | |
| | Item 1. | **FINANCIAL STATEMENTS:** | |
| | | CONSOLIDATED BALANCE SHEETS | 1 |
| | | as of October 7, 2006 and December 31, 2005 | |
| | | CONSOLIDATED STATEMENTS OF OPERATIONS | 2 |
| | | for the 16 and 40 weeks ended October 7, 2006 and October 8, 2005 | |
| | | CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY | 3 |
| | | for the 40 Weeks Ended October 7, 2006 | |
| | | CONSOLIDATED STATEMENTS OF CASH FLOWS | 4 |
| | | for the 16 and 40 weeks ended October 7, 2006 and October 8, 2005 | |
| | | NOTES TO THE INTERIM CONSOLIDATED FINANCIAL STATEMENTS | 5 |
| | Item 2. | MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | 33 |
| | Item 3. | QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK | 49 |
| | Item 4. | CONTROLS AND PROCEDURES | 49 |
| | | FORWARD-LOOKING STATEMENTS | 49 |
| **Part II.** | **OTHER INFORMATION** | | |
| | Item 1. | LEGAL PROCEEDINGS | 50 |
| | Item 1A. | RISK FACTORS | 50 |
| | Item 6. | EXHIBITS | 51 |
| SIGNATURES | | | 55 |

i

PART I

FINANCIAL INFORMATION

ITEM 1.   FINANCIAL STATEMENTS

ALDERWOODS GROUP, INC.

CONSOLIDATED BALANCE SHEETS

Expressed in thousands of dollars
except number of shares

| | October 7, 2006 | December 31, 2005 |
|---|---|---|
| | (unaudited) | |
| **ASSETS** | | |
| Current assets | | |
| Cash and cash equivalents | $ 8,616 | $ 7,455 |
| Receivables, net of allowances | 56,796 | 52,862 |
| Inventories | 14,583 | 15,784 |
| Other | 7,631 | 6,885 |
| | 87,626 | 82,986 |
| Pre-need funeral receivables and trust investments | 329,462 | 334,427 |
| Pre-need cemetery receivables and trust investments | 322,200 | 307,322 |
| Cemetery property | 117,193 | 116,467 |
| Property and equipment | 544,343 | 542,901 |
| Insurance invested assets | 322,154 | 294,598 |
| Deferred income tax assets | 16,563 | 13,057 |
| Goodwill | 296,211 | 295,890 |
| Cemetery perpetual care trust investments | 248,919 | 243,805 |
| Other assets | 42,509 | 42,850 |
| | $ 2,327,180 | $ 2,274,303 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities | | |
| Accounts payable and accrued liabilities | $ 118,012 | $ 119,734 |
| Current maturities of long-term debt | 2,185 | 2,435 |
| | 120,197 | 122,169 |
| Long-term debt | 362,282 | 371,040 |
| Deferred pre-need funeral and cemetery contract revenue | 70,730 | 91,618 |
| Non-controlling interest in funeral and cemetery trusts | 575,634 | 548,497 |
| Insurance policy liabilities | 302,298 | 266,729 |
| Deferred income tax liabilities | 12,436 | 10,552 |
| Other liabilities | 29,232 | 21,983 |
| | 1,472,809 | 1,432,588 |
| Non-controlling interest in perpetual care trusts | 248,980 | 243,962 |
| Stockholders' equity | | |
| Common stock, $0.01 par value, 100,000,000 shares authorized, 40,678,098 issued and outstanding (December 31, 2005—40,458,864) | 407 | 405 |
| Capital in excess of par value | 746,799 | 743,126 |
| Accumulated deficit | (166,945) | (172,405) |
| Accumulated other comprehensive income | 25,130 | 26,627 |
| | 605,391 | 597,753 |
| | $ 2,327,180 | $ 2,274,303 |

*See accompanying notes to the interim consolidated financial statements*

1

*Operating Locations*

The Company's number of operating locations by country, state and province as of October 7, 2006, and the overall totals as of October 7, 2006, and December 31, 2005, are summarized in the table below.

| Country, State/Province | Funeral | Cemetery | Combination | Total Number of Operating Locations |
|---|---|---|---|---|
| **Canada** | | | | |
| British Columbia | 17 | — | 1 | 18 |
| Alberta | 11 | — | — | 11 |
| Saskatchewan | 22 | — | — | 22 |
| Manitoba | 3 | 1 | 2 | 6 |
| Ontario | 22 | — | — | 22 |
| Quebec | 14 | — | — | 14 |
| Nova Scotia | 6 | — | — | 6 |
| **Total Canadian** | **95** | **1** | **3** | **99** |
| **United States** | | | | |
| Alabama | 7 | — | 1 | 8 |
| Alaska | 3 | — | — | 3 |
| Arizona | 5 | — | 1 | 6 |
| Arkansas | 3 | — | — | 3 |
| California | 44 | 1 | 6 | 51 |
| Colorado | 3 | 1 | 1 | 5 |
| Connecticut | 1 | — | — | 1 |
| Florida | 32 | 7 | 8 | 47 |
| Georgia | 23 | 5 | 6 | 34 |
| Idaho | 3 | 1 | — | 4 |
| Illinois | 6 | 16 | 3 | 25 |
| Indiana | 10 | 4 | 1 | 15 |
| Kansas | 7 | — | — | 7 |
| Louisiana | 18 | 1 | 1 | 20 |
| Maryland | 2 | — | — | 2 |
| Massachusetts | 13 | — | — | 13 |
| Michigan | 12 | — | — | 12 |
| Minnesota | 9 | 1 | 1 | 11 |
| Mississippi | 17 | 1 | 3 | 21 |
| Montana | 4 | — | — | 4 |
| Nevada | 2 | — | 1 | 3 |
| New Hampshire | 4 | — | — | 4 |
| New Mexico | 5 | — | — | 5 |
| New York | 36 | 1 | — | 37 |
| North Carolina | 25 | 7 | 4 | 36 |
| Ohio | 13 | 4 | 1 | 18 |
| Oklahoma | 18 | 1 | 1 | 20 |
| Oregon | 18 | 1 | 3 | 22 |
| Pennsylvania | 5 | — | — | 5 |
| Rhode Island | 3 | — | — | 3 |
| South Carolina | 6 | 3 | 4 | 13 |
| Tennessee | 31 | 2 | 5 | 38 |
| Texas | 52 | 4 | 4 | 60 |
| Virginia | 18 | — | — | 18 |
| Washington | 19 | 3 | 3 | 25 |
| West Virginia | 3 | — | — | 3 |
| Puerto Rico | 3 | 5 | 2 | 10 |
| **Total United States** | **483** | **69** | **60** | **612** |
| **Overall total, as of October 7, 2006** | **578** | **70** | **63** | **711** |
| **Overall total, as of December 31, 2005** | **594** | **72** | **60** | **726** |

48

**ITEM 3.    QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK**

For information regarding the Company's exposure to certain market risks, see Item 7A. "—*Quantitative and Qualitative Disclosures About Market Risk*" in the Company's Annual Report on Form 10-K for the 52 weeks ended December 31, 2005, as filed with the SEC. As of October 7, 2006, there were no material changes in such matters disclosed in the Form 10-K.

**ITEM 4.    CONTROLS AND PROCEDURES**

**Disclosure Controls and Procedures**

The Company maintains a set of disclosure controls and procedures designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in SEC rules and forms. As of the end of the period covered by this report, an evaluation was carried out, under the supervision and with the participation of the Company's management, including the Chief Executive Officer, the Company's principal executive officer (the "*CEO*"), and the Chief Financial Officer, the Company's principal financial officer (the "*CFO*"), of the effectiveness of the Company's disclosure controls and procedures as of October 7, 2006. Based on that evaluation, as of the date of the evaluation, the CEO and CFO have concluded that the Company's disclosure controls and procedures are effective.

**Changes In Internal Controls Over Financial Reporting**

During the 16 weeks ended October 7, 2006, the Company continued implementing a new pre-need trust accounting software system. The implementation has involved changes to processes, and accordingly, has required changes to internal controls.

Other than the changes discussed above, there have not been any changes in the Company's internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) promulgated by the SEC under the Securities Exchange Act of 1934) during the Company's most recently completed fiscal quarter that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

**FORWARD-LOOKING STATEMENTS**

Certain statements contained in this Quarterly Report on Form 10-Q, including, but not limited to, information regarding the status and progress of the Company's operating activities, the plans and objectives of the Company's management, assumptions regarding the Company's future performance and plans, the expected closing of the merger with Service Corporation International, and any financial guidance provided in this Quarterly Report on Form 10-Q, are forward-looking statements within the meaning of Section 27A(i) of the Securities Act of 1933 and Section 21E(i) of the Securities Exchange Act of 1934. The words "*believe*," "*may*," "*will*," "*estimate*," "*continue*," "*anticipate*," "*intend*," "*expect*" and similar expressions identify these forward-looking statements, although not all forward-looking statements contain such identifying words. These forward-looking statements are made subject to certain risks and uncertainties that could cause actual results to differ materially from those stated. Risks and uncertainties that could cause or contribute to such differences include, without limitation, those discussed elsewhere in this Quarterly Report on Form 10-Q and particularly below under "*Risk Factors*" and under "*Management's Discussion and Analysis of Financial Condition and Results of Operations.*"

The information appearing in this Quarterly Report on Form 10-Q is accurate only as of the date hereof, as the Company's business, financial condition, results of operations or prospects may have changed after that date. Except as required by law, the Company undertakes no obligation to publicly release any revisions to these forward-looking statements to reflect events or circumstances after the date hereof or to reflect the occurrence of unanticipated events. All subsequent written and oral forward-looking statements attributable to the Company and persons acting on its behalf are qualified in their entirety by the cautionary statements contained in this section and elsewhere in this Quarterly Report on Form 10-Q.

49

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DEBORAH PRISE and HEATHER RADY** on behalf of themselves and all employees similarly situated, | |
| **Plaintiffs,** | **Civil Action No. 06-1641** |
| **v.** | **Judge Joy Flowers Conti** |
| **ALDERWOODS GROUP, INC. and SERVICE CORPORATION INTERNATIONAL,** | **ELECTRONICALLY FILED** |
| **Defendants.** | |

---

**DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND TO STRIKE CLASS ACTION ALLEGATIONS AND CERTIFICATION REQUEST IN PLAINTIFFS' CLASS ACTION COMPLAINT**

---

Pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure, Defendants, Alderwoods Group, Inc. and Service Corporation International (collectively "Defendants"), hereby move the Court to dismiss certain claims in Plaintiffs' Class Action Complaint and to strike their request for class certification of claims under Rule 23 of the Federal Rules of Civil Procedure.  Specifically, Defendants move the Court to (1) dismiss Counts III-IX to the extent they assert claims under the laws of states other than Pennsylvania; (2) dismiss all state common law claims (Counts III and V-IX) in their entirety; and (3) strike Plaintiffs' Rule 23 class action allegations and certification request (Compl. ¶¶ 5-14).

The basis of this Motion is more fully set forth in Defendant's supporting memorandum, which is being filed contemporaneously with this Motion.

A proposed order is attached hereto.

PII-1151519v1

Dated: February 1, 2007

Respectfully submitted,

/s/ Amy E. Dias
Amy E. Dias (Pa. Bar No. 52935)
JONES DAY
500 Grant Street, Suite 3100
Pittsburgh, PA 15219-2502
Telephone: (412) 391-3939
Facsimile: (412) 394-7959

Matthew W. Lampe (Admitted *pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
P.O. Box 165017
Columbus, Ohio 43216-5017
Telephone: (614) 469-3939
Facsimile: (614) 461-4198

Counsel for Defendants
ALDERWOODS GROUP, INC. AND
SERVICE CORPORATION
INTERNATIONAL

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE and HEATHER RADY
on behalf of themselves and all employees
similarly situated,

        Plaintiffs,

        v.

ALDERWOODS GROUP, INC. and
SERVICE CORPORATION
INTERNATIONAL,

        Defendants.

Civil Action No. 06-1641

Judge Joy Flowers Conti

ELECTRONICALLY FILED

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND TO STRIKE CLASS ACTION ALLEGATIONS AND CERTIFICATION REQUEST IN PLAINTIFFS' CLASS ACTION COMPLAINT**

---

Dated: February 1, 2007

Respectfully submitted,

/s/ Amy E. Dias
Amy E. Dias (Pa. Bar No. 52935)
JONES DAY
500 Grant Street, Suite 3100
Pittsburgh, PA  15219-2502
Telephone:  (412) 391-3939
Facsimile:  (412) 394-7959

Matthew W. Lampe (Admitted *pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
P.O. Box 165017
Columbus, Ohio  43216-5017
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198

Counsel for Defendants
ALDERWOODS GROUP, INC. AND
SERVICE CORPORATION
INTERNATIONAL

In Counts I and II of this case, Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA") and seek certification of those claims as a collective action under 29 U.S.C. § 216(b). In their remaining counts (Counts III-IX), Plaintiffs purport to assert state law claims, not just under the laws of the state in which they lived and worked, Pennsylvania, but also under the laws of 37 other states and territories in which they never lived or worked. As to their state law claims, moreover, Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure, which has an "opt-out" class mechanism (*i.e.,* class members are bound by the judgment *unless* they opt *out*) that is fundamentally at odds with the FLSA's "opt-in" mechanism (*i.e.,* class members are bound by this judgment *only* if they opt *in*) that Plaintiffs also invoke. In multiple respects, Plaintiffs' state law claims (Counts III-IX) and their request for Rule 23 certification (Compl. ¶¶ 5-14) are exposed as legally defective on the face of their Complaint and should be dismissed and/or struck under Rules 12(b)(1), (b)(6), and (f) of the Federal Rules of Civil Procedure.

*First*, Plaintiffs lack standing to bring claims under the laws of states other than Pennsylvania. It is well established under federal law that a plaintiff does not have standing to assert claims under state laws that do not apply to her. Because Plaintiffs did not live, work, or earn a salary from Service Corporation International ("SCI") or Alderwoods Group, Inc. ("Alderwoods") (collectively "Defendants") in any of the other 37 states and territories in which Plaintiffs seek to assert claims – indeed, they never worked for SCI at all – they have no standing to assert claims under the laws of those states and territories and such claims must be dismissed.

*Second*, Plaintiffs' state common law claims set forth in Counts III and V through IX are preempted by the FLSA. It is well established that the FLSA is the exclusive remedy for violations of the statute's overtime laws. Common law claims that seek to create additional

remedies for purported FLSA violations frustrate the intent of the statute.  Accordingly, federal courts routinely dismiss common law claims where, as here, they are based on identical facts and circumstances as FLSA claims for unpaid overtime wages.

*Finally,* Plaintiffs' request for class certification of their state law claims pursuant to Rule 23 of the Federal Rules of Civil Procedure is, as district courts in the Third Circuit recently have confirmed, "inherently incompatible" with their request for FLSA collective action certification under 29 U.S.C. § 216(b).  Courts routinely deny Rule 23 class certification where Plaintiffs also allege FLSA violations, and this Court likewise should strike Plaintiffs' Rule 23 certification allegations and request.

Accordingly, as discussed in detail below, this Court should (1) dismiss Counts III-IX to the extent they assert claims under the laws of states other than Pennsylvania; (2) dismiss all state common law claims (Counts III and V-IX); and (3) strike Plaintiffs' Rule 23 class certification allegations and request (Compl. ¶¶ 5-14).

## FACT BACKGROUND[1]

In November 2006, SCI completed its merger with Alderwoods.  The merged entity is known as SCI.  (*See* Compl. ¶¶ 17, 28.)  SCI does business in 38 states and territories: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington and West Virginia.  (*See* Compl. ¶¶ 56, 58, 60, 62, 64, 66, 68.)

---

1 The facts set forth herein are taken as true for purposes of this Motion only.

On December 8, 2006, Plaintiffs Deborah Prise and Heather Rady filed a Class Action Complaint against Defendants. Plaintiffs allege that they are former employees of the Defendants (Compl. ¶ 43), and that Defendants violated the FLSA by failing to pay overtime wages and failing to adequately maintain employment and compensation records. (Counts I-II.) Plaintiffs also allege violations of the wage laws and common laws of the 38 states and territories in which Defendants do business. (Counts III-IX.) Plaintiffs seek to bring a class action pursuant to Fed. R. Civ. P. 23 for their alleged state wage law claims. (*See* Compl. ¶¶ 5-14.)

Plaintiffs are residents of the Commonwealth of Pennsylvania. (Compl. ¶ 41.) They do not allege in their Complaint that they worked for Alderwoods in any state other than Pennsylvania. Also, Plaintiffs never were employed by SCI, ever, and Plaintiffs do not allege to the contrary. In fact, Plaintiffs have admitted to this Court that they worked for Alderwoods only in the state of Pennsylvania.

Specifically, Prise claimed that she worked at Alderwoods' Hirsch Funeral Home in Pittsburgh, Pennsylvania between approximately December 2002 and November 2005. (*Prise & Rady v. Alderwoods Group, Inc., et al*, No. 06-1470 (W.D. Pa.) (J. Conti), Docket No. 1, ¶¶ 13, 26-28, 27, 31, 47.) Rady claimed that she worked at Alderwoods' Samson Funeral Home and Brandt Funeral Home in the Pittsburgh metropolitan area between approximately July 2002 and April 2006. (No. 06-1470, Docket No. 1, ¶¶ 14, 15, 18, 20, 23.)

Pursuant to the Stipulation for Extension of Time for Defendants to Respond to the Class Action Complaint, filed on December 21, 2006, Defendants' answer or other response to the Complaint is due on or before February 1, 2007. This Motion thus is timely.

## ARGUMENT

I.  **PLAINTIFFS LACK STANDING TO ASSERT STATE LAW CLAIMS FOR STATES OTHER THAN PENNSYLVANIA, AND THUS COUNTS III THROUGH IX MUST BE DISMISSED.**

As a threshold matter, Plaintiffs lack standing to bring state law claims for states other than Pennsylvania. Plaintiffs, as the parties seeking to invoke federal jurisdiction, bear the burden of demonstrating that they have standing to assert each and every claim raised in their Complaint. *See, e.g., Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (holding that "the party who invokes the court's authority" must demonstrate standing); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) ("Plaintiffs bear the burden of proving standing.") (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To carry this burden, Plaintiffs must demonstrate that they satisfy both the constitutional and prudential dimensions of standing. *Valley Forge*, 454 U.S. at 471. Because Plaintiffs do not – and cannot – allege that they worked for either Defendant outside of Pennsylvania, Counts III through IX must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of constitutional and prudential standing to the extent they assert claims under the laws of other states and territories. *See, e.g., Sampath v. Concurrent Techs. Corp.*, No. 03-264J, 2006 U.S. Dist. LEXIS 25907, at *5 n.2 (W.D. Pa. May 3, 2006) (dismissing plaintiff's claim for lack of subject matter jurisdiction and stating "[l]ack of standing is properly challenged in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.").

A.  **Plaintiffs Cannot Satisfy Constitutional Standing Requirements.**

First, Plaintiffs cannot demonstrate constitutional standing to assert state law claims for states other than Pennsylvania. The Third Circuit Court of Appeals has held that the

"'irreducible constitutional minimum of standing'" mandates that plaintiffs satisfy "'the case-or-controversy requirement of Article III'" of the U.S. Constitution. *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998) (quoting *Lujan,* 504 U.S. at 560). The Court of Appeals has further stated that, to satisfy the requirements of Article III, a plaintiff must demonstrate:

> (1) [she] suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) . . . a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484-485 (3d Cir. 1998) (*citing Lujan,* 504 U.S. at 560-561). In other words, a plaintiff must demonstrate that she has "a personal stake" in the outcome of her claims. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

In this regard, it is well-settled that a plaintiff cannot satisfy the constitutional standing requirements where she attempts to sue under state or local laws that, because she is a non-resident, do not apply to her. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 504 (1975) (holding that plaintiffs lacked standing to challenge a city's zoning ordinance where "none . . . has a present interest in any . . . property [in the city]; none is himself subject to the ordinance's strictures; and none has even been denied a variance or permit by [city] officials"); *Barnes v. Burger King Corp.*, 932 F. Supp. 1441, 1443 (S.D. Fla. 1996) (finding plaintiff without standing to sue under Florida's Franchise Act because plaintiff was not doing business in the state). On this basis, the Southern District of Ohio recently granted a Rule 12 motion to dismiss a wage count brought by Ohio residents under the wage laws of Kansas, Kentucky, Massachusetts, New Hampshire, New Mexico, North Carolina, and Vermont. *See Carnevale v. GE Aircraft Engines*, Case No. C-1-02-

600, slip op. at 5 (S.D. Ohio Feb. 11, 2003) (dismissing claims due to lack of constitutional

standing, noting that "[l]ike the plaintiffs in *Warth*, Plaintiffs here do not demonstrate that they

are subject to the labor laws of states other than Ohio").

Indeed, Plaintiffs' counsel is well aware of this fundamental limitation on standing,

because the Western District of New York recently rejected their attempt to assert wage claims

on behalf of their New York-based client under the laws of states where he never lived or

worked. *See Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590, 2006 U.S. Dist. LEXIS

39763, at *1 (W.D.N.Y. June 15, 2006). Specifically, in *Parks*, the plaintiff brought class action

claims pursuant to the FLSA, New York State Labor Law, "and the laws of various [other] States

in which defendant [did] business." *Id.* The defendant moved for partial judgment on the

pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, based on the fact that the

sole named plaintiff was only employed by the defendant in New York and thus lacked standing

to sue for alleged violations of laws of states other than New York. *Id.* The court agreed with

the defendant and held that plaintiff lacked standing "to assert state-law claims arising under the

laws of states other than New York, since he was never employed by defendant anywhere other

than New York." *Id.* at *5.

As in *Warth*, *Barnes*, *Carnevale*, and *Parks*, Plaintiffs here have failed to meet their

burden to demonstrate standing to assert the state law claims contained in Counts III through IX

to the extent such claims are based on alleged violations of laws of states other than

Pennsylvania. Prise and Rady claim to be Pennsylvania residents. (Compl. ¶ 41.) They do not

claim to be residents of, nor do they claim to have been employed by either of the Defendants in,

any state other than Pennsylvania. In fact, Plaintiffs have affirmatively asserted in other

litigation that they were employed by Alderwoods only in Pennsylvania. (No. 06-1470, Docket

No. 1, ¶¶ 13, 14, 15, 18, 20, 23, 26-28, 27, 31, 47.)  Plaintiffs never were employed by SCI in

any state, and Plaintiffs have not alleged – nor can they – any facts to demonstrate otherwise.

Plaintiffs therefore have failed to demonstrate how the laws of states in which they were not

employed governed their employment or now provide them with a cause of action.

Indeed, both the U.S. Constitution's Commerce Clause and fundamental principles of due

process embodied in the Fourteenth Amendment preclude states other than Pennsylvania from

applying their wage or employment laws to the relationship between Defendants and Plaintiffs.

*See, e.g., Asahi Metal Indus. Co., Ltd. v. Sup. Court*, 480 U.S. 102, 108-09 (1987) (plurality

opinion) (holding that the Due Process Clause of the Fourteenth Amendment "limits the power

of a state court" to render a valid personal judgment against a non-resident defendant); *World-*

*Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980) (same); *Mitchell v. Abercrombie &*

*Fitch*, 2005 WL 1159412 at *4 (S.D. Ohio May 17, 2005) (holding that "[a]pplication of the

Ohio Minimum Fair Wage Standards Act to [plaintiff's] employment in Pennsylvania would

impermissibly burden interstate commerce").  Where, as here, Plaintiffs cannot even allege that

they are covered by the application of wage laws outside of Pennsylvania, claims under such

wage laws must be dismissed.  *See, e.g., Compare Glass v. Kemper Corp.*, 133 F.3d 999, 1000

(7th Cir. 1998) (affirming dismissal of claim under Illinois' Wage Payment and Collection Act

brought by employee who "is not, and at no time relevant to this suit was . . . a resident of

Illinois" and who never "perform[ed] any work in Illinois"); *Mitchell*, 2005 WL 1159412 at *4

(dismissing claim of Pennsylvania employee under Ohio wage laws, noting that plaintiff "has

failed to address the insurmountable state sovereignty and constitutional barriers that are

implicated by applying Ohio's law outside of its territorial boundary").

Plaintiffs have not – and cannot – demonstrate that they suffered an injury in fact under the laws of any state outside of Pennsylvania, that any alleged violation of a non-Pennsylvania law caused them harm, or that an award under such a law could somehow provide them relief. Thus, as a constitutional matter, Plaintiffs lack standing to assert the claims they raise in Counts III through IX to the extent such claims relate to alleged violations of laws of other states. This Court lacks subject matter jurisdiction over those claims, and this Court should dismiss Counts III through IX to the extent they relate to states other than Pennsylvania.

**B.    Plaintiffs Cannot Satisfy Prudential Standing Requirements.**

Second, Counts III through IX of Plaintiffs' Complaint fail because Plaintiffs cannot satisfy prudential standing requirements. As noted above, a court's inquiry regarding a plaintiff's standing involves both constitutional limitations and prudential limitations. *Valley Forge*, 454 U.S. at 473; *Trump Hotels & Casino Resorts*, 140 F.3d at 485. To meet the "prudential" standing requirements, a plaintiff must show: (1) that she is asserting her own legal rights and interests, and not the legal rights or interests of third persons; (2) that the claim involves more than a generalized grievance that is pervasively shared by a large class of citizens; and (3) in statutory cases, that her claim falls within the zone of interests regulated by the statute in question. *See Valley Forge*, 454 U.S. at 474-75; *Warth*, 422 U.S. at 499; *Trump Hotels & Casino Resorts*, 140 F.3d at 485; *Lifrak v. New York City Council*, 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005). These additional restrictions – which likewise provide "a limitation on federal court jurisdiction," *Lifrak*, 389 F. Supp. 2d at 503 (internal citation and quotation omitted) – enforce the principle that, "as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (internal quotation omitted). Like constitutional standing, prudential standing requirements mandate dismissal where a plaintiff seeks to assert a claim

under laws that do not provide her with a cause of action. *See, e.g., Lifrak*, 389 F. Supp. 2d at 506 (holding that plaintiff "lacks statutory standing to pursue her Equal Pay Act claim and it need be dismissed for lack of subject matter jurisdiction.").

Here, as noted, Defendants employed Plaintiffs in the Commonwealth of Pennsylvania, and both Ms. Rady and Ms. Prise lived in Pennsylvania during this time period. Further, Plaintiffs have not demonstrated – nor could they – that their employment was subject to the laws of other states. As such, Plaintiffs cannot demonstrate that they fall within the zone of interest of the laws of states outside of Pennsylvania or that, in Counts III through IX, they are attempting to assert personal rights or interests. *See, e.g., Carnevale*, Slip Op. at 5 (finding that Ohio-employed plaintiffs lacked standing to sue under the wage laws of other states because "Plaintiffs are not within the zone of interest protected by any of those other state wage and hour laws"). Therefore, Counts III through IX of Plaintiffs' Complaint fail on prudential standing grounds, as well as on constitutional standing grounds, and this Court should dismiss those counts to the extent they relate to states other than Pennsylvania.

### C.    Plaintiffs Cannot Avoid Dismissal By Attempting To Assert Class Claims.

Finally, Plaintiffs cannot bootstrap their way to standing with regard to Counts III through IX by asserting that they are pursuing class claims under Rule 23 and serving as representatives of class members who lived, worked, and earned salary in states other than Pennsylvania. For one thing, as discussed below (*see* Section III, *infra*), Plaintiffs' Rule 23 class certification request should be stricken from the Complaint because it is inherently incompatible with the opt-in procedural mechanism under which they bring their FLSA claims. In any event, the Supreme Court has long held that standing requirements are "no less true with respect to class actions than with respect to other suits." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see*

*also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a

class action, however, adds nothing to the question of standing . . . ."). Thus, "if none of the

named plaintiffs purporting to represent a class establishes the requisite of a case or controversy

with the defendant[], none may seek relief on behalf of himself or any other member of the

class." *O'Shea*, 414 U.S. at 494; *see also Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) ("[A]

named plaintiff cannot acquire standing to sue by bringing the action on behalf of others who

suffered the injury which would have afforded them standing had they been plaintiffs. . . .");

*Parks*, 2006 U.S. Dist. LEXIS 39763 at *4 ("the filing of a suit as a class action does not relax

[the] jurisdictional requirement [of standing]") (citation omitted).  As demonstrated above,

Plaintiffs lack standing to assert claims under the laws of states other than Pennsylvania, and any

attempt to style Counts III though IX as class claims cannot cure this defect.  *See, e.g.*,

*Carnevale*, Slip Op. at 7 (holding that Ohio-employed plaintiffs, who lacked standing to sue

under the wage laws of other states, "do not have standing to assert claims under other state laws

for the putative class").

   Nor can Plaintiffs avoid dismissal at this stage by asserting that class certification must be

addressed prior to standing.  Indeed, in *Parks*, Plaintiffs' counsel recently attempted – and failed

– to avoid dismissal of state law claims by asserting that the Supreme Court's decision in *Ortiz v.

Fibreboard Corp.*, 527 U.S. 815 (1999), required consideration of class certification questions

prior to the determination of standing issues.  The *Parks* court rejected that argument, under

circumstances nearly identical to those present here, and awarded the defendant judgment on the

pleadings with respect to the state law wage claims that the named plaintiff lacked standing to

assert, noting that it "fail[ed] to see what impact a motion for class certification would have on

the pending motion." *Parks*, 2006 U.S. Dist. LEXIS 39763 at *8.

The *Parks* decision is consistent with *Ortiz*, which, to the limited extent that it addresses standing, stands for the principle that "this or any other Article III court must be sure of its own jurisdiction before getting to the merits." *Ortiz*, 527 U.S. at 831. *See also In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 165 (D. Mass. 2004) (observing that "the Supreme Court has never adopted a broad exception to jurisdictional requirements"). It is also consistent with the determination of federal courts throughout the country, which consistently hold that it is appropriate to address class certification issues prior to standing only in "extremely complex" cases, that "defy[] customary judicial administration." *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005). *See also Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (holding that *Ortiz* "does not require courts to consider class certification before standing"); *Eaton Vance*, 220 F.R.D. at 166 (finding it "apparent from examining the context of *Ortiz* that its reach is limited"); *Landmann v. Bann-Cor*, No. 01-CV-00417, 2004 WL 1944789, at *5 (S.D. Ill. Feb. 26, 2004) (holding that it was appropriate to decide standing issues prior to class certification issues). Plaintiffs here have not – and cannot – establish standing with respect to non-Pennsylvania claims in Counts III through IX or that these clear-cut standing issues are not ripe for consideration. Accordingly, those claims should be dismissed.

## II.    PLAINTIFFS' STATE COMMON LAW CLAIMS IN COUNTS III AND V THROUGH IX ARE PREEMPTED BY THE FLSA AND SHOULD BE DISMISSED.

This Court also should dismiss Plaintiffs' state common law claims, asserted in Counts III and V through IX of the Complaint, for all states – including Pennsylvania – under Fed. R. Civ. P. 12(b)(6) because they are preempted by the FLSA. Federal courts have held that state common law claims – including claims for fraud, negligence, breach of contract, and misrepresentation – are preempted by FLSA claims where "the FLSA and common law claims

are grounded in the same facts." *Moeck v. Gray Supply Corp.*, No. 03-1950 (WGB), 2006 U.S.

Dist. LEXIS 511, at *4 (D. N.J. Jan. 6, 2006). *See also Frey v. Spokane County Fire Dist., No.*

*8*, No. CV-05-289, 2006 WL 2597956, at *11 (E.D. Wash. Sept. 11, 2006) (dismissing plaintiff's

claim for overtime compensation based on breach of contract as preempted by FLSA); *Johnston*

*v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002) (dismissing plaintiff's state

common law claims, including, among others, unjust enrichment, fraud, negligent

misrepresentation, gross negligence, and breach of contract, as preempted by the FLSA where

"[p]laintiff's common law claims are based on the same facts and circumstances as her FLSA

claims"); *Alexander v. Vesta Ins. Group, Inc.*, 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001)

(granting summary judgment with respect to common law fraud claims because plaintiffs were

"merely attempting to recast what are clearly FLSA overtime claims").  This is because the

FLSA is the "exclusive remedy" for violations of federal overtime laws, and attempts to create

additional remedies through common law causes of action frustrate the purpose of the statute.

*See, e.g., Petras v. Johnson*, No. 92 CIV 8298 (CSH), 1993 WL 228014, at *2-3 (S.D.N.Y. June

22, 1993).  Time and again, courts have dismissed state common law claims brought in

conjunction with the FLSA.  *See, e.g., Moeck*, 2006 U.S. Dist. LEXIS 511 at *4-6; *Johnston*, 217

F. Supp. 2d at 1227-28.

Here, Counts III and V through IX assert state common law claims for, among other

things, breach of contract, fraud and deceit, negligent misrepresentation, and negligence, based

on the exact same allegations asserted as bases for Plaintiffs' FLSA claims.  Indeed, Counts III

and V through IX do not state *any* additional facts as bases for the state common law claims

other than those stated as the bases for the FLSA claims in Counts I and II – Counts III and V

through IX merely incorporate as their factual basis the previous allegations of the Complaint.

Accordingly, because they "are grounded in the same facts" as Plaintiffs' FLSA claims, these

state common law claims – including Pennsylvania common law claims – are preempted by the

FLSA and must be dismissed.

**III.    PLAINTIFFS' STATE LAW CLASS ACTION REQUEST MUST BE STRICKEN BECAUSE IT IS LEGALLY INCOMPATIBLE WITH THEIR FLSA SECTION 16(B) COLLECTIVE ACTION REQUEST.**

This Court also should strike Plaintiffs' class action allegations and certification request

(Compl. ¶¶ 5-14) under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure,

because Plaintiffs cannot maintain a Rule 23 opt-out action in the same litigation as an FLSA

§ 16(b) opt-in collective action.  Courts in the Third Circuit have noted that "Congress created

the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to

employees who asserted claims in their own right and freeing employers from the burden of

representative actions."  *Moeck*, 2006 U.S. Dist. LEXIS 511 at *15-16.  *See also Himmelman v.*

*Continental Cas. Co.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D. N.J. Aug. 11, 2006).

Thus, "allowing the plaintiff 'to circumvent the opt-in requirement and bring unnamed parties

into federal court by calling upon state statutes similar to the FLSA would undermine Congress's

intent to limit these types of claims to federal actions.'"  *Himmelman*, 2006 U.S. Dist. LEXIS

56187, at *5 (*quoting Moeck*, 2006 U.S. Dist. LEXIS 511, at *15.).  Third Circuit courts

accordingly hold that Rule 23 class actions "are inherently incompatible" with Section 16(b)

claims and must be dismissed and/or stricken from the complaint.  *Himmelman*, 2006 U.S. Dist.

LEXIS 56187, at *5.  *See also Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist.

LEXIS 56189, at *5 (D. N.J. Aug. 11, 2006) ("[T]hese two schemes are inherently

incompatible."); *Otto v. Pocono Health Sys.*, 457 F Supp. 2d 522, 523-24 (M.D. Pa. 2006) ("To

allow a Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class

action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.").

Courts in other jurisdictions concur, holding that "allowing [plaintiffs] to use supplemental state-law claims to certify an opt-out class in federal court would undermine Congress' intent to limit these types of claims to collective actions." *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D 574, 577 (N.D. Ill. 2004). *See also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (observing that the "two types of class actions are mutually exclusive and irreconcilable" and stating "[i]t is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits"). Indeed, in addition to frustrating the purpose of the FLSA's opt-in mechanism, requiring prospective plaintiffs simultaneously to opt-in to a collective action and opt-out of a class action would cause significant confusion. *See Edwards v. City of Long Beach*, No. 05-8990, 2006 U.S. Dist. LEXIS 93141, at *15 (C.D. Cal. Dec 12, 2006) (noting that "confusion would result from requiring potential plaintiffs to both opt-in and opt-out of the claims in the suit"); *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004) (same). Such confusion could result in the loss of rights by Rule 23 plaintiffs because those who do not opt-out of a Rule 23 class are bound by the judgment. *See LaChapelle*, 513 F.2d at 288.

Plaintiffs' attempt here to bring a Rule 23 opt-out class based on state law claims is precisely the type of certification request found by the courts in *Moeck*, *Himmelman*, and *Otto* to be impermissible and incompatible with FLSA claims. This Court should follow the lead of its sister courts in the Third Circuit – and federal courts nationwide – and strike Plaintiffs' state law class action allegations and certification request (Compl. ¶¶ 5-14).

**CONCLUSION**

For the foregoing reasons, this Court should dismiss Counts III through IX to the extent

they allege violations of laws of states other than Pennsylvania due to Plaintiffs' lack of standing,

and, as to Counts III and V through IX, should dismiss them in their entirety because they are

preempted by the FLSA. This Court also should strike Plaintiffs' Rule 23 class action

allegations and certification request (Compl. ¶¶ 5-14) because they are "inherently incompatible"

with their FLSA opt-in collective action claims.

Dated: February 1, 2007                    Respectfully submitted,


                                           /s/ Amy E. Dias
                                           Amy E. Dias
                                           Pa. Bar No. 52935
                                           JONES DAY
                                           500 Grant Street, Suite 3100
                                           Pittsburgh, PA  15219-2502
                                           Telephone:  (412) 391-3939
                                           Facsimile:  (412) 394-7959

                                           Matthew W. Lampe
                                           Admitted *pro hac vice*
                                           JONES DAY
                                           325 John H. McConnell Boulevard, Suite 600
                                           P.O. Box 165017
                                           Columbus, Ohio  43216-5017
                                           Telephone:  (614) 469-3939
                                           Facsimile:  (614) 461-4198

                                           Counsel for Defendants
                                           ALDERWOODS GROUP, INC. AND
                                           SERVICE CORPORATION
                                           INTERNATIONAL