# GURNEE & DANIELS LLP
ATTORNEYS AT LAW
2240 DOUGLAS BOULEVARD, SUITE 150
ROSEVILLE, CALIFORNIA 95661
WWW.GURNEELAW.COM

STEVEN H. GURNEE
DAVID M. DANIELS
JOHN A. MASON

NICHOLAS P. FORESTIERE
TOBY M. MAGARIAN
ELLEN C. ARABIAN-LEE
CANDACE H. SHIRLEY
WILLIAM J. FERGUSON

OF COUNSEL
JERRY M. DUNCAN

TELEPHONE (916) 797-3100
FACSIMILE (916) 797-3131

May 18, 2010

Honorable Susan Illston
United States District Judge
Courtroom 10, 19th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

> RE:   *Bryant, et al. v. Service Corporation Int'l, et al.*, No. *08-CV-1190 SI*

Dear Judge Illston:

This letter responds to Plaintiffs' letter brief dated May 11, 2010 [Dkt. 278]. As an initial matter, it is critical to consider Plaintiffs' motive for submitting their brief to the Court in connection with the timing of their upcoming Motion for Class Certification. Although Plaintiffs received Defendants' discovery responses on or before March 17, 2010, they waited to raise the issues addressed in their letter brief until April 29, 2010, just weeks before the deadline to re-file their previously withdrawn Motion for Class Certification.

## Plaintiffs are Not Entitled to Liability-Related Information Beyond the Statutory Liability Period

Plaintiffs demand documents and information going back to January 1, 2000, which is well beyond the liability period in this case. Defendants have agreed to produce liability-related information during the liability period, and, in the interest of compromise, have produced certain policy and procedure documents prior to the liability period. However, Plaintiffs' proposed time period for discovery is unreasonable for at least two reasons. First, discovery beyond the liability period has been disallowed in FLSA cases, and Plaintiffs have failed to cite any law supporting their position. Second, Plaintiffs' blanket request for ten years' worth of documents is inconsistent with their rationale for obtaining the same.

Plaintiffs distort the documents that Defendants have produced. Defendants have reviewed the statute of limitations period for all named Plaintiffs. The longest period of the named Plaintiffs is four (4) years. Defendants have produced documents relating to each of the named parties for a period beyond the statutory period at issue. As it relates to general documents such as policies, procedures and training materials, Defendants have not limited the

scope of the documents produced, and have provided Plaintiffs with documents dating back to as early as 2002. Although Plaintiffs claim that the longest limitation period is six years, that does not apply to any of the named Plaintiffs which is the parameter for the current discovery.

Plaintiffs cite three employment discrimination cases - but no FLSA/wage and hour cases - for the proposition that courts allow discovery pre-dating the liability period. In *Paige v. California*, 291 F.3d 1141, 1149 (9th Cir. 2002) the court found that it was appropriate to admit pre-liability data into evidence in a disparate impact case if promotional practices remain similar over a long period of time. The same holding was reached in *Zamora v. D'Arrrigo Bros Co. of Cal.*, 2007 WL 806518 (N.D. Cal. Mar. 15, 2007), another disparate impact case, and defendants were ordered to produce documents prior to the liability period that tabulated defendant's employees by gender, race and/or national origin, including Form EEO-1 Reports. In *Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648, 652 (D. Kan. 2006), another discrimination lawsuit, the court observed that discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence. The court ordered the defendants to produce information prior to the liability period, finding that it may be relevant to demonstrate the pattern and practice of discriminatory conduct alleged by the plaintiffs.

Plaintiffs fail to cite any FLSA or wage and hour cases in which discovery was allowed prior to the liability period. At least one case suggests that, while pre-liability period discovery is allowed in employment liability cases, the same rule does not apply to FLSA cases. In *Long v. Landvest Corp.*, No. 04-2025-CM-DJW (D. Kan. Mar. 31, 2006), an FLSA action, the court rejected plaintiff's request for documents going back ten years. The court ruled:

> The Court agrees with Respondents that the ten-year period is overly broad. Courts in employment and employment discrimination cases typically allow discovery for a reasonable period prior to, and following, the claimed violations or discrimination. As the FLSA allows for recovery for willful violations for a period of three years, the Court finds that discovery covering the three-year period prior to Plaintiffs' termination to be a reasonable discovery period. Respondents are thus required to produce only those management agreements presently in existence or in existence within the three years preceding Plaintiffs' termination.

*Id.* at *9. Similar to *Long*, Plaintiffs here have sought documents and information going back ten (10) years. However, as the court in *Long* held, the discovery period in a wage and hour action should be confined to the applicable statute of limitations.

Finally, Plaintiffs make various blanket requests for documents dating back to January 1, 2000. During their May 6, 2010 meet and confer, Defendants explained to Plaintiffs that their blanket requests were objectionable on the grounds that liability-related documents (such as

paystubs and time sheets) created prior to the liability period are not reasonably calculated to lead to the discovery of admissible evidence, and were overbroad and unduly burdensome. The only purpose of such documents is to prove liability and the amount thereof. Yet because they were created prior to the liability period those documents are not reasonably calculated for the purpose of certification discovery.

Plaintiffs' rational for seeking pre-liability documents, however, does not contemplate the liability-related documents to which Defendants object. Rather, Plaintiffs argue that they are entitled to the disclosure of pre-liability documents because "**[p]olicies and practices** may have been in effect prior to the liability period and remained in effect thereafter." Letter brief, p. 2 (emphasis added). Defendants do not dispute that such policies and procedures may be reasonably calculated because they go to the issue of whether class members were "similarly situated." To that extent, Defendants have produced non-liability related policies and practices that pre-date the liability period. *See e.g.,* SCI(BRY) 272-305. Defendants have not withheld any nationwide policies as alleged in the Complaint that pre-date the liability period. Had Plaintiffs discussed this issue with Defendants during the meet and confer, they would have learned that the very documents they seek have, in fact, been produced. According, this Court's involvement is unnecessary.

### Defendants' Objection to the Definition of "The SCI Companies" is Proper

In certain discovery requests, Plaintiffs seek information relating to "The SCI Companies," which they define to include, *inter alia*, Service Corporation International's "affiliates", "present or former partners", "attorneys or representatives", "and all other persons or entities acting, purporting to act or authorized to act on its behalf." Defendants objected to Plaintiffs' definition of "The SCI Companies" as overbroad, unduly burdensome and irrelevant to any party's claim or defense because it seeks information from people/entities over which SCI has no legal right to obtain information. [Dkt. 278-1]. Plaintiffs' decision to insert this issue in their Letter brief verifies Defendants' suspicion that the motive behind the filing of this document is related to challenging the Court's time limits at its most recent status conference. [Dkt. 277]. It is respectfully submitted that based upon Plaintiffs' letter dated April 29, 2010 [Dkt. 278-5, p. 5] and Defendants' response thereto [Dkt. 278-5. p. 49 of 54], there is no current dispute for the Court to resolve.

In their Letter Brief, Plaintiffs acknowledge and Defendants agree, as stated in their May 10, 2010 letter, that they are obligated to produce responsive documents within the custody and control of the Defendants. This is the exact same position taken by Plaintiffs.

The problem is that following Plaintiffs' concession, they indicate that Defendants have refused to produce relevant documents and information based on their objection to its definition of SCI Companies. Plaintiffs are incorrect.

Defendants' objection to Plaintiffs' original definition of "the SCI Companies" stems from the definition that includes not only current individuals and entities related to any of the

Defendants, but former partners, employees, etc. None of the defendants have control or custody over those entities and thus, they have no ability to produce documents, i.e., from a former partner or employee. The real dispute is not related to the definition of SCI Companies, but on the breadth and scope of the discovery request having nothing to do with the specific allegations of the Complaint, which is discussed in the next section below.

Here, Defendants do not have the legal right to obtain documents from all of the entities included in Plaintiff's definition of The SCI Companies (e.g., "present or former partners", "attorneys or representatives", "and all other persons or entities acting, purporting to act or authorized to act on its behalf."). Accordingly, Defendants cannot produce the same and cannot be compelled to produce the same. Defendants have not withheld documents from entities over which they have the legal authority to obtain documents. Likewise, Defendants have not attempted to obtain documents from entities over which they do not have legal authority to obtain documents. Defendants renew their proposal that if Plaintiffs revise their definition of "The SCI Companies" to include only those entities over which the respective Defendants have the legal right to obtain documents, Defendants will withdraw their objection.

**Plaintiffs' Requests for Policies Originating at the Local Level are Inconsistent with The Allegations in the Complaint**

The last issue raised in Plaintiffs' letter brief is the key issue in dispute. First, Plaintiffs challenge Defendants' objections to Plaintiffs' discovery requests based upon Defendants' position that there are no nationwide, illegal policies as alleged in the Complaint. Importantly, Defendants did not withhold any pay policy documents involving the Defendants. Defendants simply cannot provide a response to a request that assumes the existence of a non-existent policy. *See e.g., Schroeder v. Kaleo-Lum*, 1991 U.S. App. LEXIS 7919 at **11-12 (9th Cir. Apr. 25, 1991) ("Denial of a motion to compel discovery is proper if the evidence sought was almost certainly non-existent or the object of pure speculation."). For example, Plaintiffs' Interrogatory No. 1 requests the following: "For each of the alleged policies in Paragraph 241(a-h) of the Second Amended Complaint, identify all Employee job titles that performed or that were required, expected or encouraged to perform the type of work encompassed by each alleged policy...." Defendants objected to this request because it assumes the existence of nationwide illegal policies that do not exist. *See e.g.,* Complaint ¶ 241(c): "Defendants implemented a 'Training Compensation Policy,'" where "Defendants did not pay for such training, despite suffering or permitting employees to perform such work." (Emphasis added). No such policy exists. Accordingly, Defendants cannot produce the same. Defendants' objection is proper because it sets forth the flaws in Plaintiffs' request, and explains why no responsive documents exist.

Next, Plaintiffs challenge Defendants' objection to producing local-level policies. The one thing that is undisputed in this lawsuit is that Plaintiffs are seeking recovery against three corporations and numerous individuals based upon their involvement. [Dkt. 184 ¶¶ 43, 56, 78, 91, 110 and 123]. Likewise, Plaintiffs' own Motion for Class Certification [Dkt. 199] makes it clear that, "Plaintiffs in this case challenge Defendants' implementation of eight distinct

**nationwide company policies** that deprive employees of pay for the time they work. These policies violate the wage and hour statutes of the various states where Defendant does business, and the common law of those states." [*Id.* p. 19] (Emphasis added). The issue is that Plaintiffs' discovery requests attempt to ignore the claims in this lawsuit, and instead, attempt to force Defendants to conduct extensive investigations at over 1500 individual mortuary and cemetery locations to determine the existence of policies that have nothing to do with these Defendants, but may have been implemented orally by local managers.

Plaintiffs' request for policies that originated at the local managerial level is inconsistent with their allegations of "company-wide policies or procedures that deprived employees of adequate compensation," which Plaintiffs admit is the "factual allegation at the heart of the certification inquiry on which plaintiffs are entitled to discovery."[1] [Dkt. 278-5] (Emphasis added). Moreover, Plaintiffs have not named their employers in this lawsuit. Rather, they have sued certain national entities and holding companies under the theory that those entities created unlawful pay policies, which were followed by managers and employees at the local level. Any such nationwide policies would be available through the national entities named as Defendants. Thus, there is no need to seek such policies at a local level. In any event, a search of all locations for the local policies requested by Plaintiffs would be prohibitively expensive and unduly burdensome. By requesting policies that were created and implemented at a local level, Plaintiffs are essentially amending the allegations in their Complaint in order to permit them to inspect policies that are not at issue in this lawsuit. Defendants have agreed to produce all nationwide pay policies that affect all employees. However, any local-level policies are not germane to the allegations in the Complaint, and do not implicate the defendants named in this lawsuit.

Very truly yours,

GURNEE & DANIELS LLP

/S/ JOHN A. MASON

John A. Mason

JAM:cfn

---

[1] Plaintiffs allege that they are indeed similarly situated because "[t]he named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for all hours worked." [Dkt. 184, ¶ 232]. Specifically, Plaintiffs claim that they were all subject to "a single, integrated set of operations across the SCI network" and to "centralized management directions and decisions" that were made at a national level. [Dkt. 184, ¶¶ 108-09].