

One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Tel 602.229.5200
Fax 602.229.5690
www.quarles.com

*Attorneys at Law in:*
Phoenix and Tucson, Arizona
Naples, Florida
Chicago, Illinois
Milwaukee and Madison, Wisconsin

Writer's Direct Dial: 602.229.5300
Writer's Fax: 602.420.5001
E-Mail: lonnie.williams@quarles.com

May 27, 2010

Honorable Susan Illston
United States District Judge
Courtroom 10, 19th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

    RE: *Bryant, et al. v. Service Corporation Int'l, et al., No. 08-CV-1190 SI*

Dear Judge Illston:

  This letter responds to Plaintiffs' letter brief dated May 20, 2010, in which Plaintiffs demand an order requiring Defendants to disclose all statements, and the identities of any persons who gave statements, to defense counsel during their investigation of this case. Plaintiffs' demand should be rejected because it seeks information that is attorney work product. Moreover, if Defendants are compelled to produce these declarations before Plaintiffs re-file their Motion for Class Certification on June 11, 2010, Plaintiffs will unfairly be allowed to preview the evidence Defendants plan to use in their opposition to Plaintiff's Motion. In order to understand the motive behind Plaintiffs' demand, and why their demand is both unreasonable and contrary to law, certain background information is necessary.

  On September 28, 2009, Plaintiffs filed their Motion for Class Certification in which they sought to certify a nationwide class of employees and former employees who claim that they were not paid in accordance with applicable wage and hour laws. [Dkt. 199]. In support of that motion, Plaintiffs produced over 20 employee affirmations, many of which had never been disclosed before. *See e.g.*, Affirmations of Acuna, Allen, Biernacki, Brown [Dkt. 200-3]. Thereafter, defense counsel began to prepare their opposition to Plaintiffs' Motion for Class Certification, and in doing so defense counsel undertook an investigation in which they interviewed certain employees regarding the allegations contained in Plaintiffs then-filed Motion for Class Certification. The employees who were interviewed were specifically selected by defense counsel as part of their strategy for defending against Plaintiffs' Motion. Defense counsel prepared draft declarations based upon their interviews with certain employees, which, in most cases, were finalized and signed by the employees. Those declarations were obtained for

May 27, 2010
Page 2

the purpose of rebutting allegations in Plaintiffs' then-filed Motion for Class Certification, and Defendants had planned to disclose the declarations with their opposition to Plaintiffs' Motion.[1]

On January 6, 2010 Plaintiffs learned that defense counsel had been interviewing employees and obtaining statements to be used in their Opposition to Plaintiffs' Motion due on January 15, 2010. *See e.g.,* Declaration of A. Gifford in support of Plaintiff's Motion for Protective Order and Sanctions [Dkt. 250 ¶ 4] ("Plaintiffs' counsel learned on or about January 6, 2010 that defense counsel, Quarles & Brady LLP, contacted *Stickle* opt-in plaintiff Steven Figenshaw without any prior notice to or consent from plaintiffs' counsel."). Days later, and on the same day that Defendants' Opposition was due, Plaintiffs withdrew their Motion for Class Certification and served discovery requests on Defendants seeking all statements, and the identities of any persons who gave statements, to defense counsel during their investigation and interviews. *See* January 15, 2010 Notice of Withdrawal [Dkt. 248]; discovery responses [Dkt. 278-3]. Clearly, this was a tactical decision geared toward obtaining the evidence that Defendants planned to use in their opposition once Plaintiffs re-filed their Motion. On March 17, 2010, Defendants responded to Plaintiffs' requests, specifically claiming the attorney-client privilege and/or the attorney-work product privilege. [Dkt. 278-3]. Plaintiffs accepted Defendants' responses regarding statements made to defense counsel and they did not raise any concerns or further objections at that time.

On April 29, 2010, this Court denied Plaintiffs' request for another six months to file their Motion for Class Certification. The Court ordered Plaintiffs to re-file their Motion by June 11, 2010. Out of an abundance of caution (prompted by Plaintiff's scorched-Earth attempt to disqualify defense counsel through their Motion for Protective Order and Sanctions) defense counsel wrote Plaintiffs a letter on May 13, 2010, reminding them that defense counsel had interviewed employees and obtained declarations. Defense counsel explained that those interviews and statements occurred as part of their preparation to oppose Plaintiffs' Motion for Class Certification, which Plaintiffs later voluntarily withdrew. Because that motion was no longer pending, the purpose for which the declarations were obtained no longer existed. Defendants reiterated their position that those declarations, and the names of employees who were interviewed, remain attorney work product. Nevertheless, Defendants agreed to, and did, provide Plaintiffs with a privilege log. *See* <u>Exhibit A</u>. Despite learning on January 6, 2010, that defense counsel had interviewed employees and obtained statements, and despite learning on March 17, 2010, that Defendants believed the same to be attorney work product, Plaintiffs waited two months or until May 17, 2010, to challenge Defendants' position. [Dkt. 283-1]. This letter brief followed.

 (1) <u>**The Declarations Are Attorney Work Product**</u>
Plaintiffs cite several district court cases outside of the Northern District of California for the proposition that declarations drafted by an attorney are not work product. Judges within the

---

[1] Because Plaintiff withdrew their Motion before Defendants filed their opposition, Defendants had not yet made a final decision on which declarations would be disclosed, although it is likely that most would have been.

May 27, 2010
Page 3

Northern District of California have refused to follow that line of cases and have held that <u>a declaration drafted by an attorney is clearly work product right up until the moment it is filed</u>. *Intel Corp. v. VIA Technologies, Inc.*, 204 F.R.D. 450, 452 (N.D.Cal. 2001) (declaration drafted by attorney is "clearly work product right up until the moment it [is] filed"); *Tierno v. Rite Aid Corp.*, 2008 WL 2705089 (N.D.Cal. July 8, 2008) (holding that attorney-drafted declarations are work product); *see also Lamer v. Williams Communications, LLC*, 2007 WL 445511, *2 (N.D.Okla. Feb. 6, 2007) (refusing to order production of witness affidavits, which were attorney work product). Defendants previously advised Plaintiffs of these cases [Dkt. 283-1] so that Plaintiffs could meet their duty of candor toward the tribunal (*see* ABA Model Rules of Professional Conduct, Rule 3.3), but Plaintiffs failed to bring these cases to the Court's attention in their letter brief. Instead, Plaintiffs cite several cases out of this district regarding the disclosure of confidential witnesses cited in a claimant's complaint, which are therefore not on point and not determinative. *See Miller v. Ventro Corp.*, 2004 WL 868202 (N.D.Cal. April 21, 2004); *In re Harmonic, Inc. Securities Lit.*, 245 F.R.D. 424 (N.D.Cal 2007); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555 (N.D.Cal. June 21, 2005).

Judge Henderson's decision in *Tierno v. Rite Aid Corp.*, 2008 WL 2705089 (N.D.Cal. July 8, 2008) is squarely on point with the facts in this case. Like here, *Rite Aid* was a wage and hour class action. Rite Aid sought discovery of employee declarations. Plaintiffs' counsel refused to produce nearly 200 declarations of store managers in their possession on the grounds that the declarations were protected attorney work product, which would reveal counsel's mental processes and strategy by showing whose testimony Plaintiffs planned to rely on and what facts counsel found critical. Like Plaintiffs here, Rite Aid argued that the declarations did not constitute work product because there had been no showing as to how the declarations revealed attorney thought processes. The court rejected Rite Aid's argument and found that the declarations, which had been prepared by counsel, were "clearly work product right up until the moment [they were] filed." *Tierno v. Rite Aid Corp.*, 2008 WL 2705089, at *4 (quoting *Intel*, 204 F.R.D. at 452). Accordingly, Rite Aid could not compel their production absent a showing of rare or extraordinary circumstances. *Id.* The court found that Rite Aid had failed to make such a showing, noting that there was no looming discovery cutoff, no witnesses had been identified, and the plaintiffs had not relied on the declarations in any way.

Similarly here, defense counsel obtained certain employee declarations for the purpose of supporting their opposition to Plaintiff's Motion for Class Certification, which Plaintiffs later withdrew. Those declarations, if disclosed, would reveal defense counsel's mental processes and strategy by showing whose testimony Plaintiffs planned to rely on to oppose Plaintiffs' motion and what facts counsel found critical in opposing Plaintiffs' Motion. As Judge Henderson found in *Rite Aid*, a declaration drafted by an attorney "could easily reveal the same thought processes as a summary or memorandum of a statement," and it is therefore work product until the moment it is filed. *Id.* at *4. As discussed more fully below, Plaintiff has failed to show any rare or extraordinary circumstances that would warrant production of Defendants' work product.

May 27, 2010
Page 4

      In addition to the *Rite Aid* rationale supporting non-disclosure of work product, the circumstances of this case present an important policy reason that the employee declarations should not be disclosed. Specifically, if this Court were to require Defendants to disclose their declarations <u>before</u> Plaintiffs re-file their Motion for Class Certification, it would give Plaintiffs an unfair advantage by allowing them to preview evidence that will be used by Defendants to oppose Plaintiffs' Motion. This is an issue that is unique to the Northern District of California, and it stems from Local Rule 7-7(e), which allows a party to withdraw their motion without penalty within seven days after service of an opposition. *Id*. Plaintiffs made a tactical decision to withdraw their Motion on the same day that Defendants' opposition was due, and then serve discovery requests demanding the evidence that Defendants had obtained to oppose Plaintiffs' Motion. If the Court orders Defendants to disclose the employee declarations now, Plaintiffs will obtain an unfair advantage by being able to prepare their re-filed motion with that evidence. Such a result would essentially allow Plaintiffs to preview Defendants' opposition brief, and then revise their motion to counter Defendants' facts and rebut Defendants arguments before they are even presented.

      (2)    <u>**Plaintiffs Have Not Demonstrated "Substantial Need" for the Declarations**</u>

      Like their four other last-minute letter briefs currently pending before this Court Plaintiffs' motivation behind this letter brief is to delay the June 11, 2010 deadline to re-file their Motion for Class Certification. Nowhere is that goal more apparent than in Plaintiffs' disingenuous argument that there is "substantial need" for the employee declarations. Specifically, Plaintiffs allege that their need for the declarations before the June 11, 2010 deadline to re-file their Motion outweighs any work-product protection.

      Plaintiffs are correct that Rule 26(b)(3)(A)(ii) allows disclosure of work product materials where a party shows that it has "substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means." However, any "substantial need" for these declarations was totally manufactured by Plaintiffs in an effort to delay the current briefing schedule. First, Plaintiffs would have received these declarations months ago had they not withdrawn their motion days before Defendants' opposition was due. As explained above, Plaintiffs' decision to withdraw their Motion was a tactical attempt to improperly preview the evidence gathered in support of Defendants' opposition prior to re-filing their Motion. When Defendants initially refused to turn over the declarations once Plaintiffs withdrew their Motion Plaintiffs did nothing. It was not until Defendants themselves re-raised the issue with Plaintiffs on May 13, 2010, that Plaintiffs became interested in obtaining the protected declarations. At that point, the deadline to re-file their Motion was less than one month away. Plaintiffs now argue that the declarations, which they made no effort to obtain for months, are critical to their ability to investigate and develop the facts necessary for their Motion for Class Certification. [Dkt. 283]. The reality is that Plaintiffs are using this issue as an opportunity to try to delay the briefing schedule. The fact that Plaintiffs waited months to address the issue of the protected

May 27, 2010
Page 5

declarations proves that Plaintiffs indeed do <u>not</u> have substantial need for the same.[2] Furthermore, Plaintiffs have had months to conduct their own investigation as to the issues at bar in their Motion for Class Certification. Accordingly, Plaintiffs cannot argue that they are unable to obtain the information contained in the declarations through other means.

### (3)  **Plaintiffs Are Not Entitled to Disclosure of the Identities of the Affiants**

As a mere afterthought, Plaintiffs argue in one sentence that they "are at least entitled to disclosure of the identities of the individuals defendants contacted." [Dkt. 283]. Plaintiffs cite two cases, which are both distinguishable. In *Miller*, 2004 WL 868202 and *In re Harmonic, Inc.*, 245 F.R.D. 424, the plaintiffs filed complaints stating allegations supported by various "confidential witnesses." The defendants moved to compel disclosure of the identities of said witnesses. Both courts ordered plaintiffs to disclose the identities of these individuals, finding that it would be unfair to permit the plaintiffs to rely heavily on the witnesses in their complaint, but to keep those identities from the defendants. *Miller*, 2004 WL 868202, at *2; *In re Harmonic, Inc.*, 245 F.R.D. at 428 (the defendants' need for the information outweighs its protection). In contrast, Defendants here have not identified any confidential witnesses, nor have they relied at all on the information divulged by the employees that were interviewed. In the event that Plaintiffs do not re-file their Motion for Class Certification, Defendants may never utilize the employee declarations obtained during their investigations. Accordingly, the reasons compelling disclosure of witnesses' identities in *Miller* and *In re Harmonic* do not apply here.

Plaintiffs' argument that they are entitled to disclosure of the identities of the employees contacted was raised and rejected in *Rite Aid*. Rite Aid argued that it was entitled to a privilege log listing the names of the employee declarants because the names themselves were not privileged. Plaintiffs argued, and the court agreed, that the names of the declarants were protected work product because revealing the names would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements by the witnesses with the opposing party's legal theories. *Rite Aid Corp.*, 2008 WL 2705089, at *3 (citing *In re Ashworth, Inc. Securities Litigation*, 213 F.R.D. 385, 387-89 (S.D.Cal. 2002)); *see also Ferruza v. MTI Technology*, 2002 WL 32344347, *3 (C.D.Cal. June 13, 2002) (identity of witnesses interviewed by counsel is protected). The court allowed plaintiffs to provide a privilege log in which the employee declarants were identified by number rather than name. Here, the same result should be reached. As the court held in *Rite Aid*, the names of those witnesses would necessarily reveal counsel's opinions regarding their relative importance, which is protected work product. Accordingly, Defendants should not be forced to disclose their names. Defense counsel has provided

---

[2] The only case cited by Plaintiffs regarding "substantial need," *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555 (N.D.Cal. June 21, 2005), cuts against Plaintiffs' argument that substantial need exists here. In that case, there was an upcoming discovery cutoff that would have foreclosed the defendants' ability to investigate plaintiffs' witnesses. Here, there is no looming discovery cutoff, rather this case is in its relative infancy. Moreover, once Defendants disclose the declarations in support of their opposition brief, Plaintiffs will have an opportunity to conduct discovery regarding the same.

May 27, 2010
Page 6

Plaintiffs with a privilege log that includes each of the elements of the privilege log that was ordered to be produced in *Rite Aid*. *Id*. at *2; Exhibit A.

Very truly yours,

Lonnie J. Williams, Jr.

LJW:dm

Enclosure

Cc:   Sarah Cressman, Esq.
      Nicholas Forestiere, Esq.
      John Mason, Esq.

QB\850774.00021\10462423.1