United States District Court
For the Northern District of California

1

2

3

4

5      IN THE UNITED STATES DISTRICT COURT

6      FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   CLAUDE BRYANT, et al.                        No. C 08-01190 SI

9             Plaintiffs,                        **ORDER DENYING PLAINTIFFS'
                                                 MOTION FOR CLASS CERTIFICATION**
10      v.

11   SERVICE CORPORATION
     INTERNATIONAL, et al.
12
               Defendants.
13   _____/

14

15         On September 10, 2010, the Court heard argument on plaintiffs' motion for class certification.

16   Having considered the arguments of counsel and the papers submitted, including supplemental briefing

17   filed after the September 10 hearing, the Court hereby rules as follows.

18

19                                       **BACKGROUND**

20         This litigation concerns a wage and hour dispute brought by current and former hourly

21   employees of Service Corporation International ("SCI"), a nationwide provider of funerary services.[1]

22   Plaintiffs allege that, contrary to SCI's verbal and written assurances, they were not compensated at the

23   legally required rate of pay for all hours worked, in particular hours spent performing community

24   service work on behalf of SCI and hours during which plaintiffs were "on call."

25         This action is related to another case currently pending in this Court, *Helm, et al. v. Alderwoods*

26   _____

27         [1] The other defendants in this action are SCI Funeral and Cemetery Purchasing Cooperative, Inc.,
     SCI Western Market Support Center, L.P., Jane D. Jones (SCI's VP of Human Resources), Gwen
     Petteway (SCI's Human Resources Director), Thomas Ryan (SCI's President and CEO), and Curtis
28   Briggs (President or VP of various SCI entities).  All defendants are referred to collectively as "SCI."

United States District Court
For the Northern District of California

1    *Group, Inc.*, No. 08-1184 SI.  Both the *Helm* action and this case originated with a complaint filed in

2    the United States District Court for the Western District of Pennsylvania, *Prise, et al. v. Alderwoods*

3    *Group, Inc.*, No. 06-1641.  The *Prise* action originally included state and federal wage and hour claims

4    against SCI and Alderwoods Group, Inc., which was acquired by SCI in 2006.  The district court in

5    *Prise*, however, declined to exercise supplemental jurisdiction over the state law claims, and as a result,

6    plaintiffs instituted the *Helm* case and the present case by filing class action complaints in the Alameda

7    County Superior Court.  The *Helm* action asserts state law wage and hour claim against Alderwoods for

8    the period prior to its 2006 acquisition by SCI, and the present action asserts wage and hour claims

9    against SCI.  SCI removed this case to this Court on February 28, 2008.

10        The operative version of the complaint is the Third Amended Complaint ("TAC"), filed on July

11   21, 2010.  (Docket No. 312).  The TAC states that plaintiffs bring suit on behalf of a putative class

12   consisting of "those employees and former employees of defendants who were suffered or permitted to

13   work by defendants and not paid their regular or statutorily required rate of pay for all hours worked."

14   TAC ¶ 19.  Plaintiffs allege that the putative class includes approximately 10,000 current and former

15   SCI employees, "a significant percentage of whom are within California."  *Id.* ¶ 229.  Plaintiffs assert

16   ten causes of action for violations of the California Labor Code; violations of the wage and hour laws

17   of 31 other states, the District of Columbia, and Puerto Rico; unlawful business practices in violation

18   of California's Unfair Competition Law; and common law claims for unjust enrichment/restitution,

19   conversion, fraud and deceit, misrepresentation, breach of contract, breach of the implied covenant of

20   good faith and fair dealing, and quantum meruit.

21        Plaintiffs seek to represent three classes of current and former SCI employees.[2]  The three

22   proposed classes are as follows:

23

24   [2] Plaintiffs and defendants in this action are represented by the same lawyers, respectively, as are the plaintiffs and defendants in the related *Helm v. Alderwoods* action.  Motions to certify were filed

25   both in this action and in *Helm v. Alderwoods* action on September 28, 2009.  The motions in *Helm* were heard first, and on December 29, 2009, certification in *Helm* was denied.  At that point, plaintiffs

26   withdrew the then-pending class motion in this case.  Six months later, in June, 2010, plaintiffs filed a renewed motion for certification in *Helm,* and the instant motion to certify was filed a month later, in

27   July, 2010.  Both the renewed motion in *Helm* and the instant motion for certification have now been argued and fully briefed.  The cases raise similar issues and present similar and sometimes overlapping

28   factual backgrounds.  The Court has decided the motions in this case first, and relies on the analysis in *Helm* this order as foundational to the decision in *Helm.*

## I.      On-Call Lump Sum Class

Plaintiffs define the first proposed class as follows:

> Class I (On-Call Lump Sum): Current and former hourly employees of defendants who worked at any SCI location and were paid lump sum payments for certain tasks performed during their on-call shift without basing the payment on the actual time spent performing such tasks.

*Id.* ¶ 231.  Plaintiffs allege that, prior to a July 2007 policy change, SCI required the prospective class members to be on-call for certain periods of time outside the normal workday.  Plaintiffs were called upon to perform certain tasks during these periods, including removals and embalmings of bodies.  Plaintiffs allege that SCI paid them on a lump sum rather than an hourly basis for some of these tasks, and that SCI failed to include these lump sum payments in plaintiffs' "regular rate of pay" for the purpose of calculating overtime rates of pay.  *Id.* ¶ 242(a).  Plaintiffs acknowledge that the July 2007 policy change brought SCI's "policy regarding lump sum payments [in]to compl[iance] with wage and hour laws."  Pl. Mot. at 8.

In support of their allegations regarding the pre-July 2007 policy, plaintiffs cite declarations by several putative class members stating that they were paid on a lump sum basis for specific on-call tasks and were instructed by management not to record their actual hours.  *See* Acuna Decl., Pl. Ex. 43, ¶¶ 7-10 (Funeral Director/Embalmer employed in Arizona until 2006 was paid a lump sum for removals, embalmings, and transfers of bodies, and was not directed to record the time spent on these tasks); Allen Decl., Pl. Ex. 44, ¶¶ 8-11 (Funeral Director/Embalmer employed in Oregon until 2004 was paid lump sums for removals, and was instructed not to record his hours for these tasks); Fort Decl., Pl. Ex. 45, ¶¶ 6-8 (Family Service Counselor employed in California until September 2007 was paid lump sums for removals,  and was instructed not to record his hours).  Plaintiffs also cite payroll records reflecting lump sum compensation.  *See* Pl. Exs. 13-15; Allen Decl., Pl. Ex. 44, Ex. A.

At the September 10 hearing, the Court stated that it was skeptical that a nationwide class could be certified.  Plaintiff responded that, in the alternate, it would be willing to have a California-only class certified.  Defendant requested the opportunity to brief this question, which was granted.

3

**United States District Court**
For the Northern District of California

## II. California On-Call Continuous Work Day Class

Plaintiffs' second proposed class is defined as follows:

> Class II (California On-Call Continuous Work Day): Current and former hourly employees of defendants who worked at an SCI location in California and performed removals after hours while on-call but were not compensated for their time in between taking the phone call and arriving at the funeral home to pick up the company car to go to the removal site.

TAC ¶ 231. Plaintiffs allege that, when they received removal calls during on-call periods, SCI did not pay them for the time they spent between receiving the phone call and the time they arrived at the funeral home to retrieve a company car. *Id.* ¶ 242(b). Plaintiffs assert that, under California law, this time constitutes "hours worked" and is thus compensable.

Plaintiffs cite the deposition testimony of Jane Riley, SCI's Director of HR Compliance and Policies, in support of their allegation that SCI maintains a policy of not compensating employees for the time between receiving a removal call and picking up the company car to drive to the removal site. *See* Riley Depo., Pl. Ex. 52, at 151:24-152:4 ("[I]f they have to, for instance, do a removal, . . . drive to the funeral home, pick up a car, go do the removal, they're paid from the time they pick up the car to the time they return with the deceased and leave the funeral home. All that is paid time."). Ms. Riley also testified that SCI's policy regarding the recording of work performed during on-call periods was set forth in the company's employee training program, known as Dignity University. *Id.* at 152:25-153:5.

## III. California Community Work Class

Plaintiffs' third proposed class includes the following two subclasses:

> Subclass 1: Current and former hourly employees of defendants who worked as Funeral Directors, Embalmers or Family Service Counselors at an SCI location in California prior to July 2007 and who were encouraged or required to perform community service work so as to increase revenue for defendants but were not compensated for their time spent engaging [in] community work outside regular work hours.

> Subclass 2: Current and former hourly employees of defendants who worked as Funeral Directors, Embalmers or Family Service Counselors at an SCI location in California since July 2007 and who were encouraged or required to perform community service work so as to increase revenue for defendants but were not compensated for their time spent engaging in non-company sponsored community work that occurred outside regular work hours and off-site.

4

TAC ¶ 231.  Plaintiffs allege that California employees in the Funeral Director, Embalmer, and Family Service Counselor positions were encouraged or required to perform community work on SCI's behalf in order to increase its revenues, but were not compensated for performing such work after their normal work hours.  *Id.* ¶ 242(c).

To support their allegation that SCI maintains a community work policy for its California locations, plaintiffs have submitted copies of the job descriptions for the Funeral Director, Embalmer and Family Service Counselor ("FSC") positions.  *See* Funeral Director Description, Pl. Ex. 19, at 7335 (required to "actively participate[] in community organizations"); Embalmer Description, Pl. Ex. 20, at 7345 (community work "not required," but is "considered a 'plus'"); FSC Description, Pl. Ex. 21, at 7924 (must "be involved in community functions and civic associations").  Plaintiffs have also presented evidence that SCI puts on certain company-sponsored community events known as Dignity Memorial Community Outreach programs.  *See* Pl. Exs. 22-23.

Plaintiffs seek to represent two subclasses within the California Community Work Class, one consisting of employees who performed uncompensated community work prior to July 2007, and the other consisting of those who performed such work since July 2007.  According to plaintiffs, prior to July 2007, SCI had no written policy in place which specifically instructed employees to record time spent on community work.  Plaintiffs have submitted declarations from numerous prospective class members who state that they were encouraged or required to perform community work, but were not paid for any work that took place after hours and outside the funeral home.  *See, e.g.*, Fort Decl., Pl. Ex. 45, ¶¶ 9-11 (FSC told he "must be involved in community activities" and "felt pressured by management to participate" in such activities, but was not paid for his time); Biernacki Decl., Pl. Ex. 42, ¶ 35 (Funeral Director/Embalmer told that SCI's policy "required employees to actively participate in community activities but not record or be compensated for community work time we spent outside of our normal workday"); Bryant Decl., Pl. Ex. 36, ¶¶ 29-32 (same).

As of July 2007, however, SCI implemented new Dignity University training programs regarding the recording of hours.  *See* Pl. Ex. 7.  The new policy regarding community work stated:

There are two categories of civic and charitable activities: activities for Company-sponsored programs and activities for non-Company sponsored programs . . . . [which] include . . . Hospice Care, Rotary, and Lions Club.

. . . . If you spend time on civil or charitable activities that are not Company-sponsored or Company-directed, you may be compensated for these activities if: the Company has asked you to participate in such activities as a Company representative; or you performed the activities during normal work hours; or you are required to be on Company premises during the performance of the activities.

You should not record time and will not be compensated for time spent on non-Company sponsored civic or charitable activities if you perform such activities voluntarily outside of normal working hours and off company premises; and as long as the volunteer activities are not the same as or similar to the activities you are employed to perform.

*Id.* at 11145-47.   Plaintiffs assert that the written policy still left prospective class members uncompensated for some of the time they spent performing community work on SCI's behalf.

Now before the Court is plaintiffs' motion for certification of these three classes.

**LEGAL STANDARD**

The decision whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* Fed. R. Civ. P. 23; *Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, as well as at least one of the requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

A plaintiff seeking certification must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the court must focus solely on whether the requirements of Rule 23 are met, not whether the plaintiff has stated a cause of action or will prevail on

**United States District Court**
For the Northern District of California

the merits. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). Accordingly, the court must accept as true the substantive allegations made in the complaint. *In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). However, although the court may not require preliminary proof of the substance of the plaintiff's claims, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements," but may also "consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.26 (4th ed. 2005). The court should conduct an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

## DISCUSSION

### I.     Nationwide On-Call Lump Sum class

Plaintiffs' first proposed class consists of SCI employees throughout the country who "were paid lump sum payments for certain tasks performed during their on-call shift without basing the payment on the actual time spent performing such tasks." TAC ¶ 231. Plaintiffs seek certification of this nationwide class under Rule 23(b)(3), which requires a showing that the requirements of Rule 23(a) are met and that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs have presented an overarching common question of fact under Rule 23(a)(2) with respect to the On-Call Lump Sum class: whether SCI had a nationwide policy of compensating its employees for specific on-call tasks on a lump sum rather than an hourly basis. Rule 23(b)(3)'s predominance requirement, however, is "far more demanding" than the "minimal" commonality requirement of Rule 23(a)(2). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). To assess predominance, the Court must go beyond asking whether any common questions of fact or law exist and instead inquire whether these common issues predominate over any issues that may arise based on the individual differences between class members. *Id.* at 1022. "Common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable

United States District Court
For the Northern District of California

variety of individual legal and factual issues." *Clausnitzer v. Fed. Express Corp.*, 248 F.R.D. 647, 657 (S.D. Fla. 2008) (quotation marks, alterations, and citation omitted).  In this case, the Court finds that individualized questions of both law and fact will overwhelm any issues amenable to common proof.

Plaintiffs seek to assert claims for violations of the wage and hour laws of 34 jurisdictions (32 states, the District of Columbia, and Puerto Rico) and the common laws of 47 jurisdictions.  The claims include (1) off-the-clock violations, (2) denial of overtime premium payments, and (3) improper regular rate of pay calculations.

Where the named plaintiffs in a class action seek to represent a nationwide class of persons whose claims will be subject to the laws of multiple states, they must show that "predominance is not destroyed and the case is still manageable as a class action despite the application of the law of multiple jurisdictions." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).  In other words, plaintiffs must demonstrate "that the differences in state laws . . . are nonmaterial." *In re Paxil Litig.*, 212 F.R.D. 539, 545 (C.D. Cal. 2003).  "Variations in state law do not necessarily preclude a 23(b)(3) action, but class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members." *Hanlon*, 150 F.3d at 1022.

Plaintiffs offer the following analysis of the various state laws raised by their claims.  First, with respect to the off-the clock claims, plaintiffs state that 41 of the 47 states at issue use a "similar" standard for determining when off-the-clock work is compensable, while the remaining 6 states "have not adopted any contrary standard."  Pl. Mot. at 17 & App'x C.  Second, with respect to the overtime premium payment claim, plaintiffs state in their motion that 33 of the 47 states at issue require premium payments for overtime work.  They note that of these 33 states, 28 require time-and-a-half and 4 are more generous.  Pl. Mot. at 16 & App'x A.  Plaintiffs then inconsistently argue in their reply brief that 32 of the 47 states at issue require overtime premium payments, and the remaining 15 states have no overtime law.  Plaintiffs note in their reply that because any common law overtime claims for these remaining 15 states are preempted by the FLSA, *see* Docket No. 181 at *22-23, the overtime premium claims would not be asserted on behalf of plaintiffs from these 15 states. Pl. Reply at 19-20. Third, with respect to the regular rate of pay calculations, plaintiffs assert in their motion that 24 states use the same standard for calculating an employee's regular rate of pay.  Pl. Mot. at 16 & App'x B.  Plaintiffs then

state in their reply that 26 states use the same standard for calculating rates of pay, that 3 states which have more generous protections "can be easily managed through subclasses," and that the remaining 21 states with no applicable statutory law would not be part of the rate of pay claim.  Pl. Reply at 20.

Plaintiffs' own analysis of the laws of the 47 jurisdictions at issue demonstrates that a class trial of the on-call lump sum claims would mire the Court in an individualized analysis of the standards applicable to each class member's claim.  Even assuming plaintiffs are correct that a certain subset of the jurisdictions at issue share similar standards regarding off-the-clock compensation, overtime premiums, and rate of pay calculations, plaintiffs fail to account for the complexities introduced by the fact that plaintiffs from 6 of the 47 states at issue have no off-the-clock claim, plaintiffs from 15 states have no overtime premium claim, and plaintiffs from 21 states have no rate of pay claim.  Thus, within this single class, the Court would be required to instruct the jury regarding the law of varying numbers of states on three distinct but partially overlapping groups of claims.  In addition, although plaintiffs suggest that the differences among the states which do have overtime laws may be handled through subclasses, plaintiffs have not defined these subclasses, named subclass representatives, nor demonstrated that each subclass would meet all of Rule 23's requirements.  *See Zinser*, 253 F.3d at 1190.  Plaintiffs' analysis also ignores the additional individualized legal question of whether each state credits lump sum payments toward the overtime compensation otherwise due to an employee, and the individualized factual determinations that would have to be made to determine liability under the law of each state that permits such credits.

In sum, plaintiffs' analysis of the variations in state law is too superficial to carry plaintiffs' burden of showing how the issues relating to lump sum payments may be handled on a classwide basis.  The motion for certification of the nationwide On-Call Lump Sum class is DENIED.

## II.   California Classes

Plaintiffs also seek to represent other classes: an alternate California-only On-Call Lump Sum class; a California On-Call Continuous Work Day class; and a California Community Work class.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.      Rule 23(a) Requirements**

        **1.      Numerosity**

Rule 23(a)'s first requirement is that a class be sufficiently numerous that it would be impracticable to join all members individually.  Where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002).  Plaintiffs estimate that "there are at least hundreds, if not thousands, of non-exempt hourly employees who were potentially subject to the identified unlawful policies," based on the fact that SCI had 4,173 hourly non-exempt employees in California during the class period.  Pl. Mot. at 14.  SCI contends that plaintiffs' showing of numerosity is insufficient, but cites no pertinent authority requiring plaintiffs to do more than provide a reasonable estimate of the number of class members based on the information in their possession at this time.  *See Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008).  The Court is satisfied that the proposed classes will be sufficiently numerous to make joinder impracticable.

        **2.      Commonality**

Rule 23(a)(2) requires plaintiffs to demonstrate the existence of questions of law or fact that are common to all members of the class.  The commonality requirement has been "construed permissively" and its requirements deemed "minimal."  *Hanlon*, 150 F.3d at 1019.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*

Within each of the proposed classes, plaintiffs have posed several overarching common questions.  First, the California On-Call Lump Sum Class raises a common factual question regarding SCI's method of calculating employees' regular rate of pay when those employees have been paid both hourly and lump sum wages, and a common legal question of whether SCI is therefore liable for underpayment of overtime wages.  Second, the California On-Call Continuous Work Day Class raises a common factual question regarding whether SCI failed to compensate California employees for the time they spent driving to pick up a company car to go out on removals.  The California Community Work Class raises the common factual question of whether the prospective class members were

1    encouraged or required to perform after-hours community service work without compensation.  Both

2    of these classes also present the common legal question of whether such on-call and community work

3    constitutes "hours worked" and is thus compensable under California law.

4         The Court finds that plaintiffs have satisfied the "minimal" requirements of Rule 23(a)(2).

5

6         **3.    Typicality**

7         Rule 23(a)(3) requires the named plaintiffs to show that their claims are typical of those of the

8    class.  To satisfy this requirement, the named plaintiffs must be members of the class and must "possess

9    the same interest and suffer the same injury as the class members."  *Gen. Tel. Co. of Sw. v. Falcon*, 457

10   U.S. 147, 156 (1982) (quotation marks and citation omitted).  The typicality requirement "is satisfied

11   when each class member's claim arises from the same course of events, and each class member makes

12   similar legal arguments to prove the defendant's liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124

13   (9th Cir. 2010) (quotation marks, alteration, and citation omitted).  Rule 23(a)(3) is "permissive" and

14   only requires that the named plaintiffs' claims be "reasonably co-extensive with those of absent class

15   members."  *Hanlon*, 150 F.3d at 1020.

16        SCI argues that plaintiffs are not typical of the proposed class members because not all

17   employees suffered the injuries complained of by the named plaintiffs.  However, SCI has pointed to

18   no particular reason why plaintiffs are atypical of the proposed members of the California classes.  The

19   Court is satisfied that plaintiffs meet the requirements of Rule 23(a)(3).

20

21        **4.    Adequacy**

22        Rule 23(a)(4) requires the named plaintiffs to show that they will adequately represent the

23   interests of the class.  "Resolution of two questions determines legal adequacy: (1) do the named

24   plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

25   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150

26   F.3d at 1020.  SCI does not challenge the qualifications of plaintiffs' counsel, and the Court finds that

27   counsel is qualified and able to litigate this case.  Additionally, SCI does not raise, and the Court has

28   not found, any conflict between the interests of the California representative plaintiffs and the interests

of prospective class members.

### B.      Rule 23(b)(3) Predominance

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citation omitted).  The predominance analysis assumed the existence of some common questions of law or fact and asks whether these issues predominate over any individual questions. *Id.*

### 1.      California On-Call Lump Sum class

Plaintiffs ask for certification of an alternative California-only On-Call Lump Sum class. Plaintiffs argue that the shared experiences of California employee Angelo Fort, and non-California plaintiffs Frank Acuna, Kenneth Allen, and James Stickle, show that SCI applied illegal lump sum payment policies in California just as they did country-wide.

Plaintiffs face insurmountable problems of individualized factual questions with regard to their off-the-clock violation claim and denial of overtime premium claim.  Plaintiffs do not claim that SCI maintained a policy affirmatively directing employees *not* to record time spent on removals, embalmings, and other on-call tasks, but rather plaintiffs claim that there was no policy in place which directed employees *to* record such time.  Thus, plaintiffs' off-the-clock allegations and denial of overtime premium payment allegations raise individual questions as to the timekeeping instructions each prospective class member received from his or her manager.  That is to say, plaintiffs are attempting to bring a class action where different locations may have implemented a corporate policy in different legal and illegal manners within the state of California.

The evidence on the record supports the Court's conclusion that plaintiffs would present evidence of inconsistent policies from location to location, some of which might violate wage and hour laws and some of which might not.  Fort says that he was instructed not to record his on call hours associated with removals. Fort Decl., Pl. Ex. 45, ¶¶ 6-8. Plaintiff Bryant says that he was "instructed

United States District Court

For the Northern District of California

not to at times" and therefore only recorded the hours sometimes.  Bryant Depo., Def. Ex. 55, TR 148:16–148:21.  Joseph Biernacki stated that he was instructed not to record on call hours at first, but later he was instructed that he could report a full hour for a phone call taken while on call.  Biernacki Depo., Def. Ex. 53, TR 174:2–174:13.  Carlos Bran was never instructed or encouraged not to record time that he spent performing after-hours removals and he was paid for all of the time he spent on them. Bran Decl., Def. Ex. 12, ¶¶ 14–15.  Similarly, Alicia Cunningham recorded all of the time she spent performing removals and was paid for the time as well, and was never requested or encouraged to do otherwise.  Cunningham Decl., Def. Ex. 16, ¶¶ 11–12.; *see also* Heller Decl., Def. Ex. 28, ¶¶ 12–13 (same, Kathleen Heller).  Malinda Hutchinson always recorded and reported her on call hours; for two years she was paid only a flat fee per task performed, and then starting in 2006 she was paid both an hourly wage and an additional lump sum amount.  Hutchinson Decl., Def. Ex. 29, ¶¶ 7–10.

Plaintiffs call much of this evidence "irrelevant" because employees such as Bran, Heller, and Hutchinson are not class members.  Pl. Supp. Reply at 4.  While the evidence itself may not make SCI more or less likely to be liable to Fort for a wage and hour violation, it does show that there would be individualized inquiries at the liability phase and not merely at the damages or class identification phases.  This is because, under plaintiffs' theory, whether or not the payments were illegal depends on *why* the employees failed to record their actual hours worked: because they were told not to or for another reason.

Plaintiffs also argue that SCI's payroll and timekeeping records will show a uniform policy of not recording hours associated with lump sum payments as time worked, and that this policy resulted in performance of off-the-clock work.  *Id.* at 5.  Plaintiffs argue that this is per se illegal, even if the employees were paid more than their regular hourly rate.  Contrary to plaintiffs' assertions, it is not at all clear from the face of the payroll and timekeeping records that the on call hours worked were not recorded.  Rather, it appears that employees noted when they performed specific tasks that entitled them to lump sum payment, without necessarily recording the amount of time it took to perform these tasks immediately next to the description of the task.  *See, e.g.,* Allen Timesheets, Pl. Ex. 15; Fort Timesheets, Pl. Suppl. Ex 2.  In turn, the payroll records list lump sum payments separately from overtime hours worked—but it is not clear from the records whether the time spent performing the tasks for which lump

United States District Court
For the Northern District of California

sum premiums were paid was omitted from the payroll record or whether it was simply listed elsewhere. *See, e.g.,* Allen Payroll Records, Pl. Ex. 14. It is only by considering the testimony of employees as to whether the hours were recorded elsewhere that the payroll records come to mean what plaintiffs say they mean (or not). Even if employees such as Heller, who say that they did report their overtime hours, are not actually members of the class, their testimony is important inasmuch as it shows that plaintiffs will not be able to use the timecard or payroll records to prove a uniform policy. This in turn undermines plaintiffs' argument that common issues will predominate.

Similar problems attend plaintiffs' claim that defendants improperly calculated their regular rates of pay, on account of defendants' treatment of lump sum/on-call payments. Plaintiffs argue that California law requires lump sum payments to be included in any regular rate of pay calculation, regardless whether the premium was paid for regular or overtime work, and regardless whether the premium was paid instead of or in addition to a regular wage. SCI argues that the question of whether the overtime pay was calculated correctly is highly individualized, and the Court agrees. Determining whether and to what extent any employee's rate of pay was affected by a lump sum payment can only be done on an individualized basis, which means that liability, not just damages, would require individualized inquiry.[3]

The Court therefore DENIES certification to the newly-proposed California-only On-Call Lump Sum class.

### 2. California On-Call Continuous Work Day class

#### a. Variations in factual issues

Plaintiffs' second proposed class consists of current and former hourly SCI employees in California who were called upon to perform after-hours removals and were not compensated for the time between receiving the removal call and picking up the company car to go to the removal site. TAC ¶

---

[3] SCI also argues that plaintiffs have presented no evidence that any incorrect overtime calculation even occurred as to any California employee, and in particular that no such incorrect calculation has been demonstrated since December 15, 2003, when the statute of limitations began running. Given the Court's finding that individual issues predominate, the Court need not resolve the statute of limitations question.

United States District Court
For the Northern District of California

231.  This California-only class does not present individualized legal questions, as the only legal question is whether, under California law, this time is compensable.  However, SCI contends, and the Court agrees, that resolution of the claims raised by the proposed class will require the Court to undertake so many individualized factual inquiries that common question cannot be said to predominate.

First, SCI asserts that the Court must make individualized factual inquiries into the "level of control" SCI exercised over each on-call employee, as this is the dispositive question in determining whether commute time is compensable under California law.  *See Morillion v. Royal Packing Co.*, 995 P.2d 139, 146-47 (Cal. 2000).  Plaintiffs uniformly stated that SCI did not impose restrictions on their travel from their own homes to the funeral homes to pick up the company car.  *See* Acuna Depo., Def. Ex. 67, at 95:12-22, 101:3-17 (sometimes stopped on the way to the funeral home to pick up a soda); Allen Depo., Def. Ex. 68, at 108:20-109:14 (was permitted to stop for gas or to get coffee or food, and sometimes did so); Stickle Depo., Def. Ex. 69, at 62:3-8 (no restrictions on time spent driving to funeral home); Fort Depo., Def. Ex. 57, at 214:11-17, 226:12-21 (did not stop to pick up coffee or get gas, but was not prohibited from doing so).  Thus, the plaintiffs will not be able to show a common policy imposing a "level of control" sufficient to make plaintiffs' travel time compensable.

Second, SCI points to evidence that some employees drove directly to the removal site or were picked up from their homes by another employee who had previously picked up the company car.  *See* Acuna Depo., Pl. Ex. 43, 97:4–97:22 (would sometimes drive directly to removal site to meet partner who had driven in company car); Stickle Depo., Pl. Ex. 69, 61:3–61:20 (same; also would sometimes have assistant pick up company car and meet him at the removal site); Faruggio Decl., Def. Ex. 20, ¶ 7 (sometimes takes removal vehicle home and drives directly to on-call removals); Forrey Decl., Def. Ex. 22, ¶ 12 (General Manager instructs employees to take removal vehicle home with them and respond directly to calls).  Such variations in conduct both underscore the lack of a company-wide policy with respect to such travel, undermining the "level of control" showing which would be required, and demonstrate that individualized questions would be required to make a liability determination.

Third, SCI points to evidence that some employees actually were compensated for the time spent driving to pick up the company car.  *See* Hutchinson Decl., Def. Ex. 29, ¶ 12 (in the past, sometimes recorded time spent driving to funeral home to pick up company car); Forrey Decl. ¶ 12 (instructs

1   employees to record driving time); Moreland Depo., Def. Ex. 60, 144:18–144:23 (same).   Such

2   employees would not be members of the class, but that determination could not be made absent

3   individualized analysis.

4          In sum, the Court finds that individualized questions of fact would defeat the predominance of

5   common issues.

6

7                          **b.      Ascertainability**

8          The individualized questions of fact discussed above also affect whether the class is

9   ascertainable.  A class is ascertainable if the description of the class is "definite enough so that it is

10  administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v.*

11  *Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.1998). "The identity of class members must be

12  ascertainable by reference to objective criteria."  5 James W. Moore, *Moore's Federal Practice*, §

13  23.21[1].  Barring the individualized inquiries outlined above, it will not be "administratively feasible"

14  to ascertain in advance whether any former or current employee is a member of the proposed class.

15

16                         **3.      California Community Work class**

17         Plaintiffs' third proposed class consists of employees in the Funeral Director, Embalmer, and

18  FSC positions who were encouraged or required to perform community work on SCI's behalf but were

19  not compensated for performing such work after their normal work hours.  This class is divided into two

20  subclasses.  The first subclass asserts claims prior to July 2007, when SCI changed its time recording

21  policy.   The second subclass asserts claims for the time period since July 2007 with respect to

22  uncompensated "non-company sponsored community work that occurred outside regular work hours

23  and off-site."  TAC ¶ 231.[4]

24

25

26

27         _____

           [4] With respect to both subclasses, SCI argues that time spent on community service work does
28  not constitute "hours worked" under California law.  However, this argument goes to the merits of
    plaintiffs' claim and does not overlap with the certification inquiry.

United States District Court
For the Northern District of California

### a.      Pre-July 2007 subclass

Plaintiffs assert that, prior to July 2007, SCI failed to provide employees with "any directive whatsoever indicating that community work performed after regular work hours should be recorded and that after hours community work is compensable time," despite the fact that the written descriptions for the Funeral Director, Embalmer and FSC job descriptions included a community work component.  Pl. Reply at 16.  However, plaintiffs acknowledge that SCI Employee Handbooks prior to July 2007 generally instructed employees that overtime was defined as "any hours worked in excess of 40 hours per week," and that "no employee should willfully record or approve inaccurate or misleading information on a . . . time card at any time."  *See* 2004 Employee Handbook, Pl. Ex. 4, at 24-25.  SCI points to evidence that some SCI employees never performed community work outside work hours, and that other employees were compensated for performing such work.

Thus, plaintiffs cannot point to a company-wide written policy, and do not point to a company-wide practice, regarding payment for community service work.  Liability for underpayment of any class member could only be demonstrated after individualized inquiry as to that employee's work history, and would reflect specific – and potentially idiosyncratic – instructions by location managers.  Under these circumstances, common questions do not predominate.

### b.      Post-July 2007 subclass

The second subclass relates to SCI's July 2007 implementation of a policy providing that employees would be compensated for "company-sponsored" community work and certain non-company sponsored work, but not for "non-Company sponsored civic or charitable activities if you perform such activities voluntarily outside of normal working hours and off company premises; and as long as the volunteer activities are not the same as or similar to the activities you are employed to perform."  Pl. Ex. 7 at 11147.  Plaintiffs' theory is that "SCI's corporate culture" and the inclusion of community work in the descriptions for the Funeral Director, Embalmer, and FSC positions essentially made all community work non-voluntary and thus compensable.

SCI points to a number of factual differences in employees' community work experiences following the implementation of the July 2007 policy.  Fundamentally, in the face of written corporate

17

policy to the contrary, it will not be possible for plaintiffs to prove that any given employee's community service activity – a particularly personal decision -- was "non-voluntary," and thus compensable, absent individualized inquiry. Common questions will not predominate.

**C.      Rule 23(b)(3) Superiority**

Finally, under Rule 23(b)(3), plaintiffs must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino*, 97 F.3d at 1234.

Here, the liability of SCI for any of the claims made will depend on the resolution of factual questions employee-by-employee, office-by-office. Trial of all these claims together would neither reduce litigation costs nor promote greater efficiency. To the contrary, any jury trial of this matter would devolve into an endless series of mini-trials, with respect to liability as well as damages. Accordingly, plaintiffs' motion for certification of these classes is denied.

**CONCLUSION**

For the foregoing reason and for good cause shown, the Court DENIES the motions for class certification. (Dkt. #302)

**IT IS SO ORDERED.**

Dated: March 9, 2011

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California